# In the United States Court of Appeals for the Third Circuit

No. 25-2598

---

ICON PSG 1 FL, LLC,
Appellee

v.

JENKINS COURT REALTY CO., L.P.,
Appellant

---

On Appeal from the Order of the U.S. District Court for the Eastern District of Pennsylvania, No. 2:25-cv-00044, Entering Default Judgment In Favor of Appellee (Hon. Gerald Austin McHugh, U.S.D.J.)

---

BRIEF FOR APPELLANT AND
VOLUME ONE OF THE JOINT APPENDIX
(Pages Appx1-Appx11)

---

Shawn M. Rodgers
Michael Yanoff
GOLDSTEIN LAW PARTNERS, LLC
610 Old York Road, Suite 340
Jenkintown, PA 19046
(267) 627–2485

Counsel for Appellant/Defendant

**CORPORATE DISCLOSURE STATEMENT**

Pursuant to Fed. R. App. P. 26.1, appellant Jenkins Court Realty Co., L.P. ("Jenkins" or "Appellant") is a single member limited liability company formed under the laws of the Commonwealth of Pennsylvania and states that it has no parent corporation and that no publicly traded corporation owns 10% or more of its stock.  Jenkins further states, in accordance with Third Circuit L.A.R. 26.1.1(b), that there is no publicly held corporation, which is not a party to the proceeding before this Court, that has a financial interest in the outcome of the proceeding

# TABLE OF CONTENTS

**Page**

I.   STATEMENT OF SUBJECT–MATTER AND APPELLATE JURISDICTION ................................................................................. 1

II.  STATEMENT OF THE ISSUES ON APPEAL ........................................ 2

III. STATEMENT OF RELATED CASES AND PROCEEDINGS ................ 3

IV.  STATEMENT OF THE CASE ................................................................. 4

   A. Relevant Factual History ................................................................... 4

   B. Relevant Procedural History ............................................................. 7

   C. Rulings Presented For Review .......................................................... 16

V.   SUMMARY OF THE ARGUMENT ....................................................... 17

VI.  ARGUMENT ............................................................................................ 20

   A. The District Court Erred in Denying Appellant's Motion to Set Aside Default and to Permit Answer, and instead Entering Judgment in favor of Appellee for $22,056,659.26. ............................... 20

   1. Standard of review ......................................................................... 20

   2. Appellant's Proposed Answer Contained a Meritorious Defense, which – if Proven – Would Enable Appellant to Prevail against the Foreclosure Action. ............................................. 22

   3. The District Court Erred in Rejecting or Failing to Consider Certain Offset Amounts Submitted by Appellant ......................... 28

B. The District Court Erred or Abused Its Discretion in Granting the Receiver's Motion to Modify the Lease Agreements for SBG Management Services, Inc. and Jenkins Storage .....................................29

   1. Standard of review..............................................................................29

   2. In a Foreclosure Action, the Party in Possession of the Property Does Not Have the Right to Modify Existing Lease Agreements that have Been Reviewed and Accepted by a Disinterested Lender .........................................................................30

   3. The District Court Erroneously Modified the Lease Agreements, although the Receiver Failed to Provide Notice to the Tenants .......................................................................................36

C. The District Court Erred or Abused Its Discretion in Holding Appellant and Its Principal, Philip Pulley, in Contempt .....................38

   1. Standard of review..............................................................................38

   2. Appellant Substantially Complied with the District Court's Orders, or otherwise Compliance was Impossible .........................40

VII. CONCLUSION .................................................................................................46

# TABLE OF AUTHORITIES

**Page**

**Cases**

*Am. Eagle Outfitters v. Lyle & Scott Ltd.,*
   584 F.3d 575 (3d Cir. 2009) .................................................................. 29-30

*Baldwin v. Univ. of Pittsburgh Med. Ctr.,*
   636 F.3d 69 (3d Cir. 2011) ...................................................................29

*Biddle v. Johnsonbaugh,*
   664 A.2d 159 (Pa. Super. 1995)..................................................................32

*Bohler–Uddeholm Am., Inc. v. Ellwood Grp., Inc.,*
   247 F.3d 79 (3d Cir. 2001) ........................................................................30

*Budget Blinds, Inc. v. White,*
   536 F.3d 244 (3d Cir. 2008) ......................................................................20

*Citronelle–Mobile Gathering, Inc. v. Watkins,*
   943 F.2d 1297 (11th Cir. 1991) ................................................................40

*Emcasco Ins. Co. v. Sambrick,* 834 F.2d 71 (3d Cir. 1987) .............................20,22

*Fogarty v. Shamokin & Mount Carmel Transit Co.,*
   80 A.2d 727 (Pa. 1951) ...............................................................................37

*Freeman v. Pittsburgh Glass Works, LLC,*
   709 F.3d 240 (3d Cir. 2013) ......................................................................29

*F.T.C. v. Lane Labs-USA, Inc.,*
   624 F.3d 575 (3d Cir. 2010) ........................................................ 39-40,42-43

*Goldilocks Corp. of S. California v. Ramkabir Motor Inn Inc.,*
   26 F. App'x 693 (9th Cir. 2002) .................................................................32

*Halderman v. Pennhurst State Sch. & Hosp.*,
673 F.2d 628 (3d Cir. 1982) (*en banc*) ......................................................39

*Harley–Davidson, Inc. v. Morris*,
19 F.3d 142 (3d Cir. 1994) .........................................................................39

*Harris v. City of Phila.*, 47 F.3d 1311 (3d Cir. 1995) .................................... 38-40

*Harris v. Martin*, 834 F.2d 361 (3d Cir. 1987) ......................................................20

*In re 400 Walnut Assocs. LP*,
454 B.R. 601 (Bankr. E.D. Pa. 2011) ..................................................... 36-37

*In re Linerboard Antitrust Litig.*,
2012 WL 2912332 (E.D. Pa. July 16, 2012) ...............................................43

*John T. v. Del. Cnty. Intermediate Unit*,
318 F.3d 545 (3d Cir. 2003) .......................................................................42

*Marshak v. Treadwell*, 595 F.3d 478 (3d Cir. 2009) ..............................................38

*Norfolk S. Ry. Co. v. Pittsburgh & W. Virginia R.R.*,
870 F.3d 244 (3d Cir. 2017) .......................................................................30

*Robin Woods Inc. v. Woods*, 28 F.3d 396 (3d Cir. 1994) ......................................39

*Roe v. Operation Rescue*, 919 F.2d 857 (3d Cir. 1990) .........................................39

*Shillitani v. United States*, 384 U.S. 364 (1966) ..................................................38

*Tozer v. Charles A. Krause Milling Co.*,
189 F.2d 242 (3d Cir. 1951) .......................................................................21

*United States v. $55,518.05 in U.S. Currency*,
728 F.2d 192 (3d Cir. 1984) .................................................................. 21-22

*United States v. Ryan*, 402 U.S. 530 (1971) .......................................................40

## Statutes

28 U.S.C. §1291 ...............................................................................................1

28 U.S.C. §1332 ...............................................................................................1

## Court Rules

Fed. R. Civ. P. 55 ..........................................................................................20

Fed. R. Civ. P. 60 ...................................................................................... 20-21

## Secondary Sources

Robert D. Feinstein & Sidney A. Keyles,
> *Foreclosure: Subordination, Non-Disturbance*
> *and Attornment Agreements*, 3 Probate & Property 38 (1989) ................32

## I. STATEMENT OF SUBJECT–MATTER AND APPELLATE JURISDICTION

The U.S. District Court for the Eastern District of Pennsylvania possesses subject matter jurisdiction over this action pursuant to 28 U.S.C. §1332 because this matter involves a dispute between citizens of different states and the amount in controversy exceeds $75,000.

This Court possesses appellate jurisdiction over this appeal pursuant to 28 U.S.C. §1291, which grants all United States Courts of Appeal "jurisdiction of appeals from all final decisions of the district courts of the United States … except where a direct review may be had in the Supreme Court."  Here, on July 18, 2025, District Judge Gerald Austin McHugh entered a final judgment against Appellant and in favor of Appellee in the amount of $22,056,659.26.  Appellants filed a timely notice of appeal to this Court on August 18, 2025.

## II. STATEMENT OF THE ISSUES ON APPEAL

1.       Whether the District Court erred or abused its discretion in refusing to allow leave for Appellant, Jenkins Court Realty Co., L.P., to file an answer to the Complaint, and rather entered a default judgment against Appellant in the amount of $22,056,659.26"?

**Where preserved:** Appellants preserved this issue in their Motion to Set Aside Default, and in their Response (including the Affidavit of Philip Pulley) to Appellee's Request for Entry of Default Judgment.  Appx392-400.

2.       Whether the District Court erred or abused its discretion in granting the Receiver's Motion to Modify the Lease Agreements with respect to the Property?

**Where preserved:**   Appellants preserved this issue in their response to the Motion to Modify Lease Agreements.  Appx1213-1348.

3.       Whether the District Court erred or abused its discretion in holding Appellant and its principal, Philip Pulley, in contempt?

**Where preserved:**   Appellants preserved this issue in their response to the Motion for Contempt.  Appx1349-1369.

## III.   STATEMENT OF RELATED CASES AND PROCEEDINGS

Appellants are not aware of the existence of any related cases or proceedings in the Courts of the United States.  Appellee filed an action against Appellant and Philip Pulley in Maryland state court, and confessed judgment for the amount of the mortgage (plus interests and costs). *See ICON PSG 1 FL, LLC v. Jenkins Ct. Realty Co., L.P., et al.*, No. C-03-CV-25-000263 (Md. Baltimore Cnty. Cir. Ct.).

## IV.    STATEMENT OF THE CASE

### A. Relevant Factual History

On September 27, 2023, Plaintiff-Appellee, ICON PSG 1 FL, LLC ("Appellee" or "ICON PSG"), is a Maryland Limited Liability Company. It entered into a loan agreement with Appellant-Defendant, Jenkins Court Realty Co., L.P. ("Appellant" or "Jenkins") in the principal amount of $20,500,000.00 (the "Loan"). Jenkins sought the Loan for two reasons: (i) to refinance the then-existing debt on the property situated at 610 Old York Road, Jenkintown, PA ("Property") with Parcel ID # 10-00-05364-00-8; and (ii) to fund certain construction projects at the Property. Appellant executed a Secured Promissory Note on the same date, and other Loan documents. Appellant secured its obligations under the Loan Documents by executing in favor Appellee an Open-End Mortgage, Assignment of Leases and Rents, Security Agreement and Fixture, dated September 22, 2023. These documents, collectively with the Loan Agreement and the Note, are referenced as the Mortgage. Appellee recorded the Mortgage on October 3, 2023 with the Montgomery County Recorder of Deeds.

The terms of the Loan Documents required Appellant, *inter alia*, to make monthly interest payments, in arrears, on the first of each calendar

– 4 –

month. An "Event of Default" occurs under the Loan Documents if and when Appellant fails to make any such monthly payment within five (5) days of the date on which it is due (i.e., by the sixth of the applicable calendar month). The Loan Documents do not obligate Appellee to provide Appellant with any notice of the purported "Event of Default[.]" Section 2.3.3 of the Loan authorizes Appellant to, *inter alia*, assess late fees and interest at a Default Rate upon occurrence of any Event of Default. Furthermore, when an Event of Default occurs, the Loan Documents authorize Plaintiff to immediately declare all obligations under the Loan Documents to become due and payable, including, without limitations, the entire principal of the Loan, all unpaid interest, and all other charges due to Plaintiff under the Loan Documents.

Appellee alleged that Appellant completely failed and refused to pay the monthly payments due under the Loan Documents on November 1, 2024, December 1, 2024, and January 1, 2025. Each alleged late payment constitutes a defined "Event of Default," which entitled Appellee to foreclose on the Property for the full amount due under the Mortgage and Loan Agreement.

On December 3, 2024, Appellee's counsel sent a notice letter to Appellant ("Acceleration Notice"), which declared the full amount of the Loan, together with all other amounts due under the Loan Documents, due and payable.  The Acceleration Notice also demanded that Appellant surrender payment for all amounts no later than December 13, 2024.  As of the date of the Acceleration Notice, Appellee alleged that the following amounts were due and owing under the Loan Documents:

| | |
|---|---|
| Unpaid Principal: | $20,500,000.00 |
| Accrued Interest: | $1,408,741.66 |
| Fees and Expenses: | $41,122.36 |
| Less Construction Escrow Balance: | ($1,493,052.88) |
| **Total Due:** | **$20,456,811.14** |

As these calculations indicate, Appellee had withheld $1,493,052.88 in an escrow account for disbursements for construction advances due and payable under the Loan Documents.  Appellant maintained that Appellee wrongly withheld these disbursements, and that no "Event of Default" had occurred when Appellee began refusing to disburse the construction advances per the terms of the parties' Loan Agreement.

## B. Procedural History

On January 6, 2025, Appellee filed the underlying foreclosure action in the U.S. District Court for the Eastern District of Pennsylvania. The Complaint alleges, as specified above, that Appellant failed to make three consecutive monthly payments and failed to pay the balance of the Loan after receiving the Acceleration Notice. Appellee sought the entire principal amount, plus interest, costs and expenses. On January 10, 2025, Appellee filed an emergency Motion for the Immediate Appointment of a Receiver to oversee the Property. Appellant filed a response opposing the appointment of a Receiver on January 31, 2025. Thereafter, on or about February 21, 2025, the District Court granted Appellee's Moption and appointed Trigild IVL, LLC as a receiver for the Property pursuant to the Order entered on the same date (the "Receiver Order").

On March 12, 2025, Appellee requested the ministerial entry of default when Appellant did not file a timely answer to the foreclosure complaint. The District Court entered default the following day, on March 13, 2025. Appellant immediately moved to Set Aside the Default and to Permit the filing of an Answer. Appellants explained that extenuating circumstances existed insofar as the principal of Jenkins Court, Philip Pulley, had been

– 7 –

hospitalized for a severe bacterial infection and had received numerous surgical procedures in the preceding four (4) to six (6) weeks. Appellants also submitted a proposed Answer, which, *inter alia*, pleaded several meritorious affirmative defenses. These defenses included Appellee's "[f]ailure to approve or fund construction work for the Property[,]" which constituted a breach of Appellee's obligations under the Loan Documents and Mortgage. The District Court, nevertheless, denied Appellant's Motion to Set Aside and allowed the Default.

<u>*Motion for Contempt*</u>

On or about June 6, 2025, the Receiver filed a Motion for Contempt against Appellant for failure of Appellant to comply of the Court's Order entered on May 12, 2025 (ECF 28), compelling compliance with the Court's prior Order entered February 21, 2025 (ECF 13) (the "Compliance Order"). The Compliance Order required Appellant to provide an accounting and ten (10) enumerated categories of information, comprising of (a) Financial Reports for the years 2024 and 2025; (b) General Ledgers for the years 2024 and 2025; (c) Tenant Ledgers for the years 2024 and 2025; (d) A current Rent Roll; (e) Annual Testing documentation for the fire alarm and sprinkler system for the years 2024 and 2025; (f) Bank Statements for the operating

account for the years 2024 and 2025; (g) Access to the building access control systems; (h) admin password to the DVR / camera system; (i) Verizon phone line account information for the base building system communication; and (j) CAM reconciliations for 2023 and 2022.

On May 16, 2025, Appellant filed a Response in Compliance with the May 12, 2025 Order (the "May 16th Response"). Appellant maintained that it provided all the information in its possession and provided detailed responses as to each of the ten (10) enumerated categories. In particular, on March 10, 2025, Appellant provided Appellee and Receiver with 8,400 pages of documents in response to the Receiver's request. The Receiver received nearly 280 documents and receipt was acknowledged by the Receiver. Appellant provided everything in its possession.

Unfortunately, due to a pipe break in 2022, much of the historical data and documents requested by the Receiver were destroyed. Despite producing nearly 280 documents, the Receiver claimed in its Motion for Contempt that it still required the following: (1) Financial Reports for 2023 and 2024; (2) Tenant Ledgers showing rents as of February 21, 2025; (3) Rent Rolls as of February 21, 2025; (4) Bank Statements as of February 21, 2025; (5) Access and Login Information for control system and DVR; (6) Phone line

account information for line serving the elevators; and (7) CAM Reconciliations for 2023. The Receiver's Motion asserts that failure to provide this information constitutes contempt of the District Court's Order.

Counsel for Receiver sent a letter to Appellant dated May 28, 2025 seeking a demand for formal compliance. The Receiver's demand continued to seek information that was not Appellant's possession or the possession of Philip Pulley, Appellant's principal. For example, the Receiver asked Appellant to provide access and login information for the control system and DVR. The Receiver disregarded Appellant's May 16th Response, which explained that Appellant was disconnected from the system and no longer has access. Likewise, the Receiver demanded that Appellant produce phone line account information for the Property's elevators, but Appellant had already provided this information to the Receiver. In addition, in an effort to more fully comply with the reporting and production requests, Appellant has requests that the Receiver allow access to certain information currently in its possession. Appellee and the Receiver rebuffed all such overtures made by Appellant.

*Motion to Modify Existing Lease Agreements*

On or about June 2, 2025, the Receiver filed a Motion to Modify Certain Lease Provisions of tenants to the Property. The Receiver's Motion concerned the notice and cure provisions in two leases: (i) the Lease made as of November 1, 2017, between Appellant and SBG Management Services, Inc. ("SBG Management") (as amended, the "SBG Management Lease"); and (ii) the Lease made as of February 1, 2019, between Defendant and Jenkins Storage, LLC ("Jenkins Storage") (the "Jenkins Storage Lease," and, together with the SBG Management Lease, the "Leases"). The Receiver sought to unilaterally modify the Leases to delete the phrase "one thousand (1000) days" from Section 17.01 and replace it with "ten (10) days."

In filing its Motion, the Receiver failed to notice or serve a copy of either the Receiver Order or the Motion to Modify on either SBG Management or Jenkins Storage. Appellant opposed the effort to modify the Leases, arguing that the Receiver should be estopped from modifying the Leases. Appellant argued that Appellee previously accepted the Leases during the due diligence phase of the Mortgage and Loan Agreement, and the Leases contain specific attornment language prohibiting modification in this fashion.

– 11 –

The Receiver moved to modify the Leases as a further attempt to collect rents. The Receiver failed to notify the tenants or to make any effort to negotiate with the tenants. Instead, the Receiver sought to modify the Leases without any notice or participation of the tenants, thus bypassing the tenants entirely. The Receiver's Motion sought unilateral authority to modify pre-existing Leases that Appellee reviewed and modified prior to the appointment of the Receiver.

As a justification for its ability to unilaterally modify the Lease terms without notice to the tenant, the Receiver pointed to Sections 6(b), 6(e) and Section 6(f) of the Receiver Order as authority for its ability to modify the Leases. The Receiver also directed the Court's attention to Section 25. Specifically, Section 6(b) is entitled "Exclusion of Defendant," provides in part that "[t]he Receiver is authorized to exclude Defendant, its agents, management companies, employees, representatives, owners, affiliates, subsidiaries, and parent companies from possessing or operating the Property."

Section 6(e) of the Receiver Order, entitled "Authority to Contract," provides in part that "[t]he Receiver may make, cancel, enforce, or modify contracts, leases, or licenses relating to any part of the Property or the

– 12 –

Construction Projects." And Section 6(f) of the Receiver Order, entitled "Collection of Revenues," provides in part that "[t]he Receiver shall demand, collect, and receive any and all rents, sub-rents, lease and sublease payments, fees, debts, or other proceeds, profits, or income of any type or nature and however denominated that may arise from the use or operation of the Property or are generated from the Receivership Estate." Lastly, Section 25 of the Receiver Order, entitled "Retention of Jurisdiction," provides in part that "[t]his Court retains jurisdiction to modify the terms of this Order and to expand or contract the rights, duties, and obligations of the Receiver or any other party affected by this Order, and to enter such other orders as may from time to time, during the pendency of this action, be deemed necessary, just, and proper."

In responding to the Motion to Modify, Appellant argued that none of the cited provisions permits the Receiver to modify the Leases *without expressly noticing the tenant and/or providing the tenants with an opportunity to respond to the Motion*. Although the Order permits Receiver to exclude Appellant and its agents from the Property generally, the Receiver cannot exclude SBG Management or Jenkins Storage from the Lease modification

– 13 –

process – or from the Property. The Receiver treated SBG Management and Jenkins Storage as extensions of Appellant, but both are separate entities.

Prior to the appointment of the Receiver, Appellee performed in-depth and exhaustive due diligence as part of the underwriting process for the Loan and Mortgage. Appellees utilized both in-house and outside counsel to review the loan and underlying Leases, which included the law firm of Blank Rome. As part of the due diligence for the Loan, both the SBG Management Lease and Jenkins Storage Lease were provided to Appellee and Counsel for Appellee. Specifically, Appellee's in-house counsel and Counsel at Blank Rome were provided more than three (3) dozen emails concerning the topic from June 2, 2023 through September 27, 2023. These communications included detailed review of the subject Leases. Appellee and Appellee's Counsel had specific questions with regard to the Leases, but no questions or comments with regard to the Notice and Cure provisions – that is, the provisions the Receiver asked the District Court to modify.

The Leases were also provided as part of the due diligence process and were on the ten (10) day closing checklists. The record indicates that the Leases were amended through the closing checklists to include estoppel certificates and to extend the SBG Management Lease to January 30, 2028.

– 14 –

Additionally, as part of the closing, Appellee entered into Subordination, Non-disturbance and Attornment Agreements with Appellant and with tenants, SBG Management and Jenkins Storage (the "SDNAs"). The SDNAs were recorded and were both made effective as to August 25, 2023. Appellant attached these documents to its response for the District Court's consideration.

The SDNAs both specifically state the following under Section 3 of those agreements.

> Attornment. If the Landlord's interest is transferred to and owned by Lender or any success of Lender ("Acquiring Party") because of foreclosure or other proceedings brought by the Lender, or by any manner, and Acquiring Party succeeds to Landlords interest under the Lease, Tenant shall be bound to the Acquiring Party and Acquiring Party shall be bound to Tenant under all terms, covenants and conditions of the Lease for the balance of the remaining terms, including any extensions or renewals, with the same effect as if Acquiring Party were Landlord under the Lease.

(quoting Section 3 of Ex. E to Appellant's Response) (same for both Leases). Per the SONAs, the Receiver is bound to the terms of the Leases. The plain language provides that the Receiver and Appellee cannot _unilaterally_ modify the Leases.

## C. Rulings Presented for Review

*Resolution of the Pending Motions and Entry of Default Judgment*

The District Court held a hearing on July 1, 2024, regarding the pending Motions for Contempt and to Modify the Lease Agreements, as well as Appellee's request to enter Default Judgment. During the proceeding, Mr. Pulley testified on behalf of Appellant, and Jonathan Lakner testified as a representative of the Receiver. Thereafter, on July 18, 2025, the District Court entered Default Judgment in the amount of $22,056,659.26, which includes interest and late fees. The District Court refused to entertain any discussion concerning possible offsets or credits to this amount, which would derive from rents paid by tenants since the Receiver had been appointed. The District Court also entered orders (i) holding Appellant and its principal, Mr. Pulley in contempt for failing to comply with the Receiver and Compliance Orders; and (ii) modifying the terms of the Lease Agreements for tenants, SBG Management and Jenkins Storage.

On August 18, 2025, Appellant filed a timely notice of appeal with this Court from the final judgment entered by the District Court.

– 16 –

## V. SUMMARY OF THE ARGUMENT

The District Court erred in denying Appellant's Motion to Set Aside Default and to Permit Answer, and instead entering judgment in favor of Appellee for $22,056,659.26.   Appellant's proposed answer set forth a meritorious defense that, if established, would entitle Appellant to prevail in the foreclosure action.  Specifically, the proposed answer contained, *inter alia*, an affirmative defense that Appellee initially breached the Loan Agreement and Mortgage by failing to provide contractually require advances for construction projects.   The proposed answer avers that Appellee "interfere[d] with leasing and construction" and "fail[ed] to approve or fund construction work for the property[.]" Accordingly, any purported "Event of Default" cited by Appellee derives from its own breach of contract, causing delays in construction projects and the withholding of rents.

Next, the District Court erred or abused its discretion in granting the Receiver's Motion to Modify the Lease Agreements for SBG Management Services, Inc. and Jenkins Storage.  During the due diligence phase of the Mortgage and Loan Agreement, Appellant provided all proposed lease agreements to Appellee and its counsel for review and approval.  This

includes the Leases that the Receiver moved to modify, which contain a provision allowing a 1000-day grace period.  The District Court disregarded evidence that the Leases at issue were reviewed and accepted by an arm's length lender, Appellee.  Therefore, even though the Receiver does not act as an agent for Appellee, it should be estopped from moving to modify the terms of Lease Agreements that Appellee approved.  Moreover, the Receiver Order does not displace well-settled Pennsylvania contract law, and the District Court offered no legal basis to modify or rescind the Lease agreements.  Although Mr. Pulley is the principle of SBG Management Services, Inc. and Appellant, a disinterested lender reviewed and accepted the terms of the Leases.

Finally, The District Court erred or abused its discretion in holding Appellant and its principal, Philip Pulley, in Contempt.  Contrary to the District Court's determination, Mr. Pulley and Appellant substantially complied with the Receiver Order and the Compliance Order.  They furnished all documents and information within their possession to the Receiver.  The documents and accounting or reconciliation required by the Contempt Order do not exist.  Appellant and Mr. Pulley are not capable of

providing the information within this order. Compliance is, therefore, impossible. The District Court erred in holding otherwise.

## VI.  ARGUMENT

### A. The District Court Erred in Denying Appellant's Motion to Set Aside Default and to Permit Answer, and instead Entering Judgment in favor of Appellee for $22,056,659.26.

#### 1.  Standard of review

The Third Circuit reviews grants or denials of relief to open and set aside a default judgment under an abuse of discretion standard. *See Budget Blinds, Inc. v. White*, 536 F.3d 244, 251 (3d Cir. 2008); *Harris v. Martin*, 834 F.2d 361, 364 (3d Cir. 1987).  "This court has time and again reiterated that '[i]n exercising our appellate function to determine whether the trial court has abused its discretion in dismissing, or refusing to lift a default, we will be guided by the manner in which the trial court balanced [certain enumerated] factors.'" *Emcasco Ins. Co. v. Sambrick*, 834 F.2d 71, 73 (3d Cir. 1987) (citations omitted).

Federal Rule of Civil Procedure 55(c) states that a district court "may set aside a default judgment under Rule 60(b)." Fed. R. Civ. P. 55(c).  Rule 60(b) contains six (6) delineated reasons for which a "court may relieve a party or its legal representative from a final judgment, order, or proceeding[.]" Fed. R. Civ. P. 60(b).  The rule includes a catch-all provision, which allows a court to relieve a party from a judgment for "any other reason that justifies relief"

aside from the more specific circumstances described under the prior five (5) categories.  Fed. R. Civ. P. 60(b)(6).

"A decision to set aside the entry of default pursuant to Fed. R. Civ. P. 55(c) and a default judgment pursuant to Fed. R. Civ. P. 60(b) is left primarily to the discretion of the district court."  *United States v. $55,518.05 in U.S. Currency*, 728 F.2d 192, 194 (3d Cir. 1984 (citations omitted). But "this court does not favor entry of defaults or default judgments. [The Third Circuit] require[s] doubtful cases to be resolved in favor of the party moving to set aside the default judgment 'so that cases may be decided on their merits.'" *Id*. at 194-195 (quoting *Tozer v. Charles A. Krause Milling Co.*, 189 F.2d 242, 244 (3d Cir. 1951)).  Rule 60(b)(1) allows the district court to set aside the judgment based on "mistake, inadvertence, surprise, or excusable neglect[.]"Fed. R. Civ. P. 60(b).  The Third Circuit has provided the following guidance.

> Nevertheless, we do not set aside the entry of default and default judgment unless we determine that the district court abused its discretion. We require the district court to consider the following factors in exercising its discretion in granting or denying a motion to set aside a default under Rule 55(c) or a default judgment under Rule 60(b)(1): (1) whether the plaintiff will be prejudiced; (2) whether the defendant has a meritorious defense; (3) whether the default was the result of the defendant's culpable conduct.

– 21 –

The threshold question in this case is whether Golden has established a meritorious defense. This is the critical issue because without a meritorious defense Golden could not win at trial. Therefore, there would be no point in setting aside the default judgment and remanding for a forfeiture hearing if Golden could not demonstrate the possibility of his winning.

*$55,518.05 in U.S. Currency*, 728 F.2d at 195 (internal citations omitted).

"In order that we may properly exercise our function of reviewing for abuse of discretion, we have further required the district court to make explicit findings concerning the factors it must consider in rendering judgment by default or dismissal, or in declining to reopen such judgment." *Emcasco*, 834 F.2d at 74 (citations omitted).

## 2. Appellant's Proposed Answer Contained a Meritorious Defense, which – if Proven – Would Enable Appellant to Prevail against the Foreclosure Action.

Appellant's Proposed Answer included several affirmative defenses, which "if established at trial, would constitute a complete defense." *See 55,518.05 in U.S. Currency*, 728 F.2d at 195. The District Court, therefore, erred and abused its discretion in denying Appellant's Motion to Set Aside Default, and to allow the case to proceed on the merits. Appellee would not suffer prejudice if the District Court permitted Appellant to file its answer, as Appellee's expectation is to litigate the controversy – not to execute on a default judgment due to an excusable mistake and extenuating

circumstances by Appellant.

Appellant's proposed Answer avers that Appellee "interfere[d] with leasing and construction" and "fail[ed] to approve or fund construction work for the property[.]" Proposed Ans. at Affirmative Defenses. The Loan Documents and Mortgage include provisions that require Appellee to make advances to Appellant for specific delineated construction projects. In the Proposed Answer, Appellant alleges that Appellee failed to comply with its contractual obligations and refused to provide advances in order to finance the contemplated construction projects. This breach, in turn, caused many tenants to withhold rent payments, and thus adversely affected Appellant's long-term ability to meet its payment obligations under the Loan Documents.

Under Section 6.1 and 6.2, Appellee had an obligation to advance Appellant the capital funds necessary for the construction projects delineated in the Loan Agreement. *Id.* at §§ 6.1-6.2.

> 6.2    Advances. Lender shall, subject to compliance with all of the other terms, conditions and provisions of this Agreement, and in accordance with the Budget, make advances of the Loan proceeds as follows and in accordance with all of the terms and conditions of this Agreement:
>
> (a) Closing Date Advance. In the amount of $16,948,706.41 on the Closing Date.

– 23 –

> (b) <u>Advances for Capital Improvements, Tenant Improvements and Leasing Commissions</u>. Lender agrees to make advances of the Loan Proceeds for (x) Capital Improvements in an amount not to exceed $1,476,293.59, (y) Tenant Improvements with respect to the Tiny Town Lease in the amount of $1,125,000.00, Dogtopia Lease in the amount of $300,000.00 and the Precious One Lease in the amount of $300,000.00, in an aggregate amount not to exceed $1,725,000.00, and (z) certain leasing commissions with respect to the Tiny Town Lease in the amount of $150,000.00, provided each of the following conditions precedent and all of the terms and conditions of this Agreement are satisfied…

*Id*. at p. 24, § 6.2 *Advances*. Appellant maintains that Appellee failed to satisfy its obligations to provide the necessary funding for the construction projections set forth above, which were designed to improve the Subject Property. Appellee's breach of its contractual obligations negatively impacted these construction projects, rendering the projects virtually impossible to complete and thus poisoning Appellant's relationship with existing tenants. Although Appellant denies the so-called "Events of Default" cited in Appellee's Complaint, any such defaults were the direct result of Appellee's actions – its decision to withhold financing for construction projects under the Loan and, therefore, breach the terms of the parties' agreements.

– 24 –

The record indicates that Appellant and SBG, its agent, were actively in the process of refinancing the current Mortgage with Prime Haven Capital. *See* Opposition to Receiver Motion, Ex. B (Prime Haven Letter, 12/30/2024). "I want to assure you[,]" David Horn wrote to Philip Pulley in December 2024, "that Prime Haven Capital is fully committed to ensuring that your loan is funded by the end of January 2025." *Id*. Horn indicated that, if Plaintiff would halt any default proceeding, the refinancing process would proceed more smoothly. *Id*. In other words, Appellee's decision to file foreclosure and seek the appointment of a receiver is the only reason Appellant was unable to satisfy and pay off – as of January 31, 2025 – all outstanding amounts under the Mortgage and Loan Agreement. Appellant communicated these facts to Plaintiff, including the status of its refinance with Prime Haven Capital. Plaintiff responded by filing the instant action.

Appellant's response is typical of how it operates. Appellant's actions caused the so-called "Events of Default" that it cites in both the instant Motion and the Foreclosure Complaint. Under Section 6.1, 6.2 and 6.3 of the Loan Agreement, Plaintiff had an obligation to fund the capital construction projects described in the Agreement. *See* ECF 5, Ex. 1 (Loan Agreement at p. 23-27, § 6 *Project Completion and Loan Advances*). In particular, Section 6.2(b)

required Appellee to provide Appellant with over $3 million in construction funds.

> (b) <u>Advances for Capital Improvements, Tenant Improvements and Leasing Commissions</u>. Lender agrees to make advances of the Loan Proceeds for (x) Capital Improvements in an amount not to exceed $1,476,293.59, (y) Tenant Improvements with respect to the Tiny Town Lease in the amount of $1,125,000.00, Dogtopia Lease in the amount of $300,000.00 and the Precious One Lease in the amount of $300,000.00, in an aggregate amount not to exceed $1,725,000.00, and (z) certain leasing commissions with respect to the Tiny Town Lease in the amount of $150,000.00 …

*Id.* at p. 24, § 6.2(b) *Advances for Capital Improvements, Tenant Improvements and Leasing Commissions*.  When Appelle failed to provide the specified advances, the projects stalled and could not be completed.  This poisoned the relationship between Appellant and those tenants identified above, who were relying upon these construction improvements to operate their businesses.  Appellant, therefore, "[**did not**] misuse [ ] project funds[;]" rather, Appellee did so. *See Wells Fargo*, 905 F. Supp. 2d at 614.  Appellee's Complaint and December Default Notice acknowledge that Appellee stored $1,493,053.88 in unreleased construction funds in escrow. *See* ECF 1 (Complaint).  Appellee may contend that it refused to release these funds due to Appellant's failures to pay, but the Proposed Answer contained affirmative defenses averring that Appellee withheld the required advances

long before Appellant missed any required monthly payments. Appellee's actions, therefore, commenced a chain events ultimately culminating in Appellee's Default Letter, dated December 3, 2024.

The proposed answer (as well as Appellant's opposition to the appointment of a receiver) demonstrated that the facts were in dispute and do not, on their face, support the entry of default judgment. The District court erred and abused its discretion in analyzing the Proposed Answer and the facts of record to conclude Appellant failed to set forth a meritorious defense. A prior breach of the Loan Agreement, which Appellant alleges in the Proposed Answer, is adequate – if proven – to prevail on the merits. In that instance, Appellee's own actions would be responsible for the alleged "Events of Default."

At a minimum, an evidentiary hearing was necessary in order to explore Appellee's own breaches of the parties' Loan Agreement. Any and all "Events of Default" cited by Appellee trace directly to Appellee's decision to withhold millions of dollars in construction funds. Combined with Appellee's refusal to allow Appellant time to refinance and discharge the Mortgage, Appellee's actions and motivations should be explored during an evidentiary hearing *before* this Court denied the Motion to Set Aside Default.

The District Court entirely disregarded Appellant's assertion that Motion Appellee declined to disburse the funds necessary to complete the delineated construction projects and, thus materially breached the Loan Agreement.  In doing so, the District Court committed a reversible error.

### 3. The District Court Erred in Rejecting or Failing to Consider Certain Offset Amounts Submitted by Appellant.

The District Court entered Default Judgment against Appellant and in favor of Appellee on July 18, 2025, in the amount $20,456,811.14, plus contractual interest calculated at $1,599,848.12 as of May 27, 2025.  In opposing entry of this judgment amount, Appellant argued that Appellee failed to reduce the outstanding balance by rents collected following the Receiver's appointment.  Appellant maintained that any judgment amount must be reduced by the rent payments made to the Receiver.  The District Court erred by failing to provide Appellant a credit for all rent payments collected while Receiver controlled the Property.

"[N]either the Plaintiff nor the Receiver [ ] provid[ed] any credit for Rent received to the debt of Jenkins since the date of the Assignment of Rents [on or about November 2025]," Mr. Pulley affirmed in his declaration, dated June 26, 2025. *See* ECF No. 37 at ¶10.  Appellant submitted a spreadsheet of all estimated rent payments collected since the Receiver had been appointed,

and submitted this calculation to the District Court for consideration prior to the July 1, 2025 hearing. *Id.* at Ex. A.  Mr. Pulley declared, "[Appellee] must provide Jenkins with a credit for any Rent received that is in excess of the expenses of the Property[,]" and "[n]either [Appellee] nor Receiver should receive a windfall at the expense of [Appellant]."  *Id.* at ¶¶12-13.

The District Court did not conduct an evidentiary hearing to consider evidence of the amount of these rents.  Instead, the Court entered Default Judgment for the full amount that Appellee sought, and afforded no consideration to the obvious and undisputed rents collected by the Receiver. The District Court erred in failing to mold the Default Judgment appropriately.

**B.    The District Court Erred or Abused Its Discretion in Granting the Receiver's Motion to Modify the Lease Agreements for SBG Management Services, Inc. and Jenkins Storage.**

**1.  Standard of review**

This Court reviews the legal conclusions of the District Court *de novo* and its factual findings for clear error.  *See Freeman v. Pittsburgh Glass Works, LLC*, 709 F.3d 240, 250–51 (3d Cir. 2013).  "The paramount goal of contract interpretation is to determine the intent of the parties."  *Baldwin v. Univ. of Pittsburgh Med. Ctr.*, 636 F.3d 69, 75 (3d Cir. 2011) (quoting *Am. Eagle*

– 29 –

*Outfitters v. Lyle & Scott Ltd.*, 584 F.3d 575, 587 (3d Cir. 2009)).  "Pennsylvania

contract law begins with the "firmly settled" principle that the "the intent of

the parties to a written contract is contained in the writing itself."  *Norfolk S.*

*Ry. Co. v. Pittsburgh & W. Virginia R.R.*, 870 F.3d 244, 253 (3d Cir. 2017)

(quoting *Bohler–Uddeholm Am., Inc. v. Ellwood Grp., Inc.*, 247 F.3d 79, 92 (3d

Cir. 2001) (citation omitted).

**2. In a Foreclosure Action, the Party in Possession of the Property Does Not Have the Right to Modify Existing Lease Agreements that have Been Reviewed and Accepted by a Disinterested Lender.**

The District Court granted the Receiver's Motion to Modify the Leases for

SBG Management and Jenkins Storage – voiding the 1000-day grace period

in the SBG Management Lease and, instead, substituting a 10-day period.  It

reasoned that the Leases were not the product of an "arm's length

transaction" and, consequently, could be rescinded.  In its analysis, the

District Court held that Mr. Pulley breached the duty of good faith and fair

dealing "by virtue of [Mr.] Pulley having signed both the landlord and

tenant sides of the [Lease] contract." ECF No. 46, at 2.  The Court also

discounted the Attornment clause contained in the Lease Agreements,

finding "the Receiver acts as an arm of the Court, rather than as a successor

to the landlord, the party that would ostensibly be bound by a valid

attornment clause." *Id.* The Court also cited "unique circumstances warranting the receivership" as justification for granting the Receiver's request to modify the Leases.

The District Court erred in modifying the Leases. It suggested that Appellant engaged in some form of impropriety in constructing these Leases, but it is common for property owners to provide more favorable lease terms to related entities. Appellee, as the lender, reviewed the commercial leases for the Property during the due diligence phase prior to executing the Loan Documents and the Mortgage Note. Appellee was not a related party, and it did not flag any terms contained in the Leases as problematic or unconscionable. These circumstances should estop the Receiver from moving to modify the terms of the Lease Agreements. The District Court did not entertain Appellant's estoppel argument, which constitutes reversible error.

Here, Appellee filed a motion for appointment of the Receiver. Prior to this appointment, Appellee reviewed, modified and accepted the Leases furnished by Appellant during the due diligence phase of its mortgage negotiations. Appellee also entered into the SDNAs. Contrary to the District Court's ruling, the attornment clauses should be binding upon the Receiver

– the same as *any* other party in possession of the Property during a foreclosure action.

In Pennsylvania, "[a] contract may be set aside or rescinded if it can be proven that, at the time of formation of the agreement, the parties did not bargain at an arm's length." *Biddle v. Johnsonbaugh*, 664 A.2d 159, 161 (Pa. Super. 1995). "[Under an attornment clause, t]he tenant covenants with the mortgagee that, in the event of foreclosure, the lease will not be extinguished but will continue as a lease between the mortgagee (or any successor to it) and the tenant." Robert D. Feinstein & Sidney A. Keyles, *Foreclosure: Subordination, NonDisturbance and Attornment Agreements*, 3 Probate & Property 38 (1989); *see e.g., Goldilocks Corp. of S. California v. Ramkabir Motor Inn Inc.*, 26 F. App'x 693, 697 (9th Cir. 2002) (explaining, "both sides agree that attornment clauses generally require a tenant to continue the existing lease under a new landlord after foreclosure …").

The SDNAs provide the following under Section 3:

> Attornment: If the Landlord's interest is transferred to and owned by Lender or any success of Lender ("Acquiring Party") because of foreclosure or other proceedings brought by the Lender, or by any manner, and Acquiring Party succeeds to Landlords interest under the Lease, Tenant shall be bound to the Acquiring Party and Acquiring Party shall be bound to Tenant

under all terms, covenants and conditions of the Lease for the balance of the remaining terms, including any extensions or renewals, with the same effect as if Acquiring Party were Landlord under the Lease."

*See* Appellant's Resp. to Mot. To Modify, Ex. E, Lease Agreements at Section 3 (same for both Leases).

Although the District Court appoints the Receiver, it occupies the same position with respect to the Lease Agreements as that of Appellee. The District Court committed a clear error of law when it granted the Receiver's request to modify valid Lease Agreements, which have been reviewed by Appellee as a disinterested lender. Pennsylvania law and general precepts of contract interpretation bind the Receiver to the terms of the Leases.

As indicated previously, Appellee reviewed, accepted and provided comments to each of the Leases – including the Leases for SBG Management and Jenkins Storage – prior to the recording of the SDNAs. At no point in time did Appellee or its counsel raise any issue or concerns regarding these Lease Agreements – including the Notice and Cure provisions set forth therein. Specifically, in opposing the Receiver's Motion to Modify, Appellant directed the District Court's attention to the communications of Appellee's counsel during the due diligence phase of the Loan Agreement and Mortgage.

Appellee's counsel exchanged more than three (3) dozen emails with Appellant between from June 2, 2023 and September 27, 2023. These communications include a detailed review of the subject Leases. Appellee's counsel raised specific and direct questions concerning the Leases for SBG Management and Jenkins Storage. Notably absent from these discussions is any mention of the Notice and Cure provisions that Receiver now seeks to modify. Appellee's counsel demanded certain modifications be made to the Leases as part of a 10-point closing checklist at the end of the due diligence phase. These modifications included the following comments to the Jenkins Storage Lease, for example, which required minor amendments before closing:

> (a) The rent payments were not consistent. The estoppel stated the rent was $360,00000, whereas the rent role stated $276,000.00;
> (b) The termination dates did not correspond. The estoppel stated April 1, 2029; whereas, the rent roll stated March 1, 2029;
> (c) The Lease also contained inconsistencies about when the EASL will be made available, and when the rent will return to $360,000.00.

The record demonstrates Appellee and its counsel received the Leases for SBG Management and Jenkins Storage; reviewed those Leases extensively; and required Appellant to implement certain changes to the terms of the Leases. It did not request any modification to the Notice or Cure Provisions,

and specifically to the line granting SBG Management and Jenkins Storage a 1000-day grace period.

The District Court erred by allowing Receiver to unilaterally modify the Leases. The Receiver has other methods available to it in order to seek to collect rent from tenants. Pennsylvania law, however, does not afford the Receiver or the District Court the authority to either rescind or modify the Leases, where those Leases had been reviewed and approved in an arm's length transaction with Appellee. The District Court discounts this inconvenient fact, and uses Mr. Pulley's ownership interest in SBG Management as justification for modifying the Lease terms. But Appellee knew of Mr. Pulley's connection to SBG Management when it reviewed and approved the Leases during due diligence. Appellant made no attempts to conceal this fact from Appellee.

Likewise, the District Court does not provide any basis to summarily disregard the Attornment Provision in the Leases. Appellee did not object to this provision. While the Receiver may not be Appellee's agent, there is no basis to toss away well-established contract law when the Lease Agreements had been reviewed and accepted by an arm's length lender. The District Court's action to modify the terms of the Lease Agreements falls

outside the scope of the Receiver Order. The Receiver should have been estopped from seeking to modify the terms of Lease Agreements, which the Lender that moved for the Receiver's appointment had approved.

### 3. The District Court Erroneously Modified the Lease Agreements, although the Receiver Failed to Provide Notice to the Tenants.

The District Court erred in granting the Receiver's Motion to Modify the Leases for SBG Management and Jenkins Storage, even though the Receiver failed to notify either tenant of the pending motion. "Because Mr. Pulley is a Principal of both SBG Management and Jenkins Court Realty, [the District Court deem[ed] notice on SBG Management sufficient." ECF No. 46 at 1, n.1. The tenants affected by the Receiver's proposed modifications to the Leases were not given proper notice. The District Court used Mr. Pulley's ownership of both entities to justify imposing the modification; it should be clear error to use the same ownership to excuse the Receiver from effectuating proper notice of its motion.

"A mortgagee can obtain 'possession' of realty and consequently obtain a present right to receive rents in two ways: (1) by entering into 'actual possession' of the real estate through foreclosure or acting as a mortgagee in possession; or (2) by taking 'constructive possession' of the realty by serving demand notices on the mortgagor's tenants." *In re 400 Walnut Assocs. LP*, 454

B.R. 601,608 (Bankr. E.D. Pa. 2011) (citation omitted); *Fogarty v. Shamokin & Mount Carmel Transit Co.*, 80 A.2d 727, 728-29 (Pa. 1951).

The District Court allowed the Receiver to modify the Leases of SBG Management and Jenkins Storage without providing notice to either tenant. This modification ultimately resulted in the Receiver filing for eviction of the tenants when they failed to provide full payment (including alleged back rent) within the ten (10) days specified in the revised grace period. Lack of notice violates the due process rights of both tenants, as it has a specific and immediate adverse effect on their property rights.

The Receiver argued that it merely intended to conform the contractual cure period with the alleged industry standard, but it provided no case law or legal justification for its ability to unilaterally modify the Leases. Rather, Receiver's sole justification for modifying these two Leases was to collect rent – and, if such rent was not promptly tendered, to ask the District Court to evict the tenant.

The Receiver offers only one response for its failure to provide the tenants notice: both SBG Management and Jenkins Storage are allegedly affiliates of Appellant. Prior to the District Court's order modifying the Leases, there was no finding of fact that either entity is a related affiliate of Appellant.

Regardless, the status of SBG Management and Jenkins Storage as affiliates does not negate corporate formalities and the due process requirement that a tenant be provided notice of both the Receiver's Order and its Motion to Modify. The District Court, accordingly, erred in granting this Motion before requiring the Receiver to take the necessary steps to provide notice to both SBG Management and Jenkins Storage.

**C.    The District Court Erred or Abused Its Discretion in Holding Appellant and Its Principal, Philip Pulley, in Contempt.**

**1.  Standard of review**

District courts "have inherent power to enforce compliance with their lawful orders through civil contempt." *Shillitani v. United States*, 384 U.S. 364, 370, 86 S.Ct. 1531, 16 L.Ed.2d 622 (1966). "To be enforceable by contempt, the order in question must be "specific and definite." *Harris v. City of Phila.*, 47 F.3d 1342, 1350 (3d Cir.1995) (citation omitted). According to the Third Circuit, civil contempt has three elements that must be established by clear and convincing evidence:

> (1) that a valid order of the court existed; (2) that the defendants had knowledge of the order; and (3) that the defendants disobeyed the order.

*Marshak v. Treadwell*, 595 F.3d 478, 486 (3d Cir. 2009) (citation omitted). "[A] party who is alleged to be in contempt of a court order may not challenge

– 38 –

the substantive merits of that order within contempt proceedings." *Id.*
(citations omitted). Accordingly, "the validity of the order may not be
collaterally challenged in a contempt proceeding for violating the order."
*Roe v. Operation Rescue,* 919 F.2d 857, 871 (3d Cir. 1990).

"[G]ood faith is not a defense to civil contempt[,]" and "'willfulness is
not a necessary element of civil contempt[.]'" *Robin Woods Inc. v. Woods,* 28
F.3d 396, 399 (3d Cir. 1994) (*quoting Harley–Davidson, Inc. v. Morris,* 19 F.3d
142, 148–49 (3d Cir. 1994)). Evidence of "good faith does not bar the
conclusion ... that [the violating party] acted in contempt.'" *Id.*

### *Defense of Impossibility*

The Third Circuit has recognized "a valid defense were [the target of
a contempt motion] able to show physical impossibility." *Harris v. City of
Philadelphia,* 47 F.3d 1311, 1324 (3d Cir. 1995) (citing *Halderman v. Pennhurst
State Sch. & Hosp.,* 673 F.2d 628, 638 (3d Cir. 1982) (*en banc*), *cert. denied,* 465
U.S. 1038 (1984)). "There is general support for the proposition that a
defendant may not be held in contempt as long as it took all reasonable steps
to comply." *Id.* (citing decisions from the Fifth, Second and Ninth Circuits).
"The impossibility defense necessarily requires the defending party to assert
a present inability to comply with the relevant court order." *F.T.C. v. Lane*

– 39 –

*Labs-USA, Inc.*, 624 F.3d 575, 590 (3d Cir. 2010) (citations omitted).  This defense "naturally precipitate[s] judicial inquiry into the feasibility of the defendant's compliance."  *Id.* (citations omitted).

The burden rests with the defendant "**to introduce evidence beyond 'a mere assertion of inability,' and to show that it has made 'in good faith all reasonable efforts to comply**.'"  *Harris*, 47 F.3d at 1324 (emphasis added) (quoting *Citronelle–Mobile Gathering, Inc. v. Watkins*, 943 F.2d 1297, 1301 (11th Cir. 1991) (citing *United States v. Ryan*, 402 U.S. 530, 534 (1971))).  Any district court "conclud[ing] that contempt is excused on grounds of impossibility is essentially declaring that the defendant was incapable of compliance in spite of his or her best efforts."  *F.T.C.*, 624 F.3d at 590.  The Third Circuit has distinguished the defense of impossibility from the defense of substantial compliance.  *Id.* at 591.  "[A] party that substantially complies is physically capable of doing so; it has simply erred in a manner for which it would be inequitable to impose contempt sanctions."  *Id.*  The defense of impossibility applies only where no circumstances exist that allow the offending party to adhere to the court's order.  *Id.* at 590-591.

### 2. Appellant Substantially Complied with the District Court's Orders, or otherwise Compliance was Impossible.

The District Court granted the Receiver's Motion to hold Appellant and

Mr. Pulley in Contempt for failing to comply with prior orders directing Appellant to turn over certain records and other information to the Receiver. In holding Appellant and Mr. Pulley in contempt, the District Court erred and abused its discretion. Prior to the July 1, 2025 hearing, Appellant produced all responsive documents within its possession to the Receiver. It substantially complied with the Receiver's Order. Appelland and Mr. Pulley are not capable of producing any additional documents or the accounting that the District Court instructed. Further compliance is impossible, and the District Court erred in deciding otherwise.

Specifically, the District Court ordered, *inter alia*, Mr. Pulley and Appellant (i) "[to] provide a full accounting as required by [the District] Court's prior orders[;]" (ii) to allow the Receiver full access to the "security, access and video surveillance of 610 Old York Road" and to "cooperate in sharing passwords and explaining the operation of any SBG system of service[;]" and "[to] provide all documents and records pertinent" to the pending assessment appeal for Jenkins Court Realty Co., L.P. ECF 44 at 1-2. The District Court rejected "Mr. Pulley's contention that he lack[ed] information to complete the accounting" and, instead, required Mr. Pulley to specifically identify "with precision" the information or access he

required in order to comply with the Court's orders. *Id.* After July 26, 2025, the District Court explained, "failure to comply with any aspect of this Order will result in monetary sanctions commencing at $500 per day." *Id.* at 2.

The District Court wrongly decided to hold Appellant and Mr. Pulley in contempt of the Compliance Order. As set forth above, Proof of contempt requires a movant to demonstrate "(1) that a valid order of the court existed; (2) that the defendants had knowledge of the order; and (3) that the defendants disobeyed the order." *See F.T.C.*, 624 F.3d at 582 (internal citations and quotations omitted). The Receiver failed to meet its burden of proving Appellant's compliance failure "by 'clear and convincing' evidence[.]" *Id.* (citing *John T. v. Del. Cnty. Intermediate Unit*, 318 F.3d 545, 552 (3d Cir. 2003)).

The Receiver does not claim that Appellant failed to produce any documents, or precluded the Receiver's staff from having access to 610 Old York Road. Rather, the Receiver argued that Appellant and Mr. Pulley simply failed to turn over specific items. In response to this Motion, Appellant and Mr. Pulley maintained that they had produced everything within their possession, and that no accounting exists for the time period specified by the Receiver. Since "ambiguities must be resolved in favor of

the party charged with contempt[,]" the District Court erred or abused its discretion in granting the Receiver's Motion and discounting the evidence of compliance presented by Appellant.

Appellant and Mr. Pulley substantially complied with the District Court's Orders, as they "ha[ve] taken all reasonable steps to comply with the valid [outstanding] court order[s]," and – to the extent they "ha[ve] violated the order[s,]" they only did so "in a manner that is merely technical or inadvertent." *See In re Linerboard Antitrust Litig.*, No. CIV.A. 98-5055, 2012 WL 2912332, at *26 (E.D. Pa. July 16, 2012) (citations and quotations omitted). Any remaining non-compliance as of the July 1, 2025 hearing in the District Court resulted solely from impossibility. Appellant and Mr. Pulley "w[ere] incapable of compliance in spite of [their] best efforts." *F.T.C.*., 624 F.3d at 590.

Here, Appellant did not disobey the Compliance Order or any other Order of the District Court. To the contrary, Appellant provided all the documents in its possession and responsive to the initial Receiver's Order on March 10, 2025. Appellant continued to supplement and provide information to the Receiver. Thereafter, Appellant promptly provided a response to the Compliance Order in the May 16th Response, docketed with

the District Court. Appellant provided all the documents in its possession responsive to the Receiver Order and the Compliance Order. In his Declaration and his testimony before the District Court on July 1, 2025, Mr. Pulley explained that Appellant has taken all reasonable steps to comply with those Orders. Appellant cannot produce information that it does not possess. Appellant does not have access to any additional records to create the reconciliations, accountings or information the Receiver demanded. Moreover, in accord with the Contempt Order, Appellant made an inquiry with the Receiver for certain information in the Receiver's possession – information that would assist Appellant in reconciling the records. The Receiver, however, has ignored all requests made by Appellant and Mr. Pulley. Any perceived failure to comply as of the July 1, 2025 hearing is the result of either inadvertence or impossibility. Appellant and Mr. Pulley did not have access to any further records. Mr. Pulley explained that no other records exist, or, at minimum, any historical data not produced previously was destroyed in a pipe break and resulting flood damage in 2022.

Accordingly, the District Court erred and abused its discretion in holding Appellant and Mr. Pulley in contempt.

## VII.   CONCLUSION

For all of the foregoing reasons, this Court should reverse the District Court's order entering Default Judgment in the amount of $22,056,659.26 in favor of Appellee, ICON PSG 1 FL, LLC, and against Appellant, Jenkins Court Realty Co., L.P.   Accordingly, this Court should vacate the Default Judgment – as well as, the ancillary Orders pertaining to Modification of the Lease Agreements and to Contempt – and remand to permit Appellant the ability to file the Proposed Answer.

Respectfully submitted,

Dated: November 24, 2025            /s/ *Shawn M. Rodgers*
                                    Shawn M. Rodgers
                                    GOLDSTEIN LAW PARTNERS, LLC
                                    610 Old York Road, Suite 340
                                    Jenkintown, PA 19046
                                    (267) 627–2485

                                    Counsel for Plaintiffs/Appellants

**CERTIFICATION OF COMPLIANCE WITH TYPE–VOLUME LIMITATION, TYPEFACE REQUIREMENTS, AND TYPE STYLE REQUIREMENTS**

This brief complies with the type–volume limitations of Fed. R. App. P. 32(a)(7)(B) because this brief contains **8,756** words excluding the parts of the brief exempted by Fed. R. App. P. 32(f).

This brief complies with the typeface requirements of Fed. R. App. P. 32(a)(5) and the type style requirements of Fed. R. App. P. 32(a)(6) because this brief has been prepared in a proportionally spaced typeface using Microsoft Word 365 in 14–point Book Antiqua font.

Dated: November 24, 2025                    /s/ *Shawn M. Rodgers*
                                                                  Shawn M. Rodgers

## CERTIFICATION OF BAR MEMBERSHIP

I hereby certify that I am a member of the Bar of the United States Court of Appeals for the Third Circuit.


Dated: November 24, 2025                    /s/ *Shawn M. Rodgers*
                                            Shawn M. Rodgers

**CERTIFICATION OF ELECTRONIC FILING
AND VIRUS CHECK**

Counsel hereby certifies that the electronic copy of this Brief for Appellant

is identical to the paper copies filed with the Court.

A virus check was performed on the PDF electronic file of this brief using

McAfee virus scan software.

Dated: November 24, 2025                    /s/ *Shawn M. Rodgers*
                                            Shawn M. Rodgers

## CERTIFICATE OF SERVICE

I hereby certify that all counsel listed immediately below on this Certificate of Service are Filing Users of the Third Circuit's CM/ECF system, and this document is being served electronically on them by the Notice of Docket Activity:

Gleb Epelbaum
Michael Yanoff
Raymond Quaglia

Dated: November 24, 2025          /s/ *Shawn M. Rodgers*
                                  Shawn M. Rodgers

# In the United States Court of Appeals for the Third Circuit

No. 25-2598

---

ICON PSG 1 FL, LLC,
Appellee

v.

JENKINS COURT REALTY CO., L.P.,
Appellant

---

On Appeal from the Order of the U.S. District Court for the Eastern District of Pennsylvania, No. 2:25-cv-00044, Entering Default Judgment In Favor of Appellee (Hon. Gerald Austin McHugh, U.S.D.J.)

---

VOLUME ONE OF THE JOINT APPENDIX
(Pages Appx1-Appx11)

---

Shawn M. Rodgers
Michael Yanoff
GOLDSTEIN LAW PARTNERS, LLC
610 Old York Road, Suite 340
Jenkintown, PA 19046
(267) 627–2485

Counsel for Appellant/Defendant

# TABLE OF CONTENTS

**Page**

**Volume One of Three**
**(Pages Appx1 - Appx11)**

District Court's Memorandum,
    entered July 18, 2025 ...................................................................................Appx1

District Court's Contempt Order against
    Defendant, entered July 18, 2025 ....................................................Appx4

District Court's Order entering Default Judgment
    against Defendant, entered July 18, 2025.......................................Appx6

District Court's Order Modifying Lease Terms,
    entered July 18, 2025 ......................................................................Appx7

Notice of Appeal filed August 18, 2025......................................................Appx9

**Volume Two of Three**
**(Pages Appx12 – Appx1195)**

District Court Docket Entries................................................................Appx12

Plaintiff's Complaint
    filed January 6, 2025.......................................................................Appx21

Plaintiff's Motion for Expedited Appointment of
    Receiver, filed January 10, 2025.....................................................Appx156

Stipulation Approved
    filed January 16, 2025.....................................................................Appx323

Defendant's Response in Opposition to Appointment
    of Receiver, filed January 31, 2025 .............................................Appx324

Plaintiff's Reply Brief in Support of Receiver Appointment
        filed on February 11, 2025 ............................................................... Appx349

Order Appointing Receiver
        entered on February 21, 2025 ........................................................... Appx379

Plaintiffs' Request for Default
        filed on March 12, 2025 .................................................................. Appx3878

Entry of Default
        filed on March 13, 2025 .................................................................... Appx391

Defendant's Motion to Set Aside and to Permit Answer
        filed on March 13, 2025 .................................................................... Appx392

Affidavit of Philip C. Pulley
        filed on March 28, 2025 .................................................................... Appx401

Receiver's Motion to Compel Compliance
        filed on April 23, 2025 ..................................................................... Appx406

Plaintiff's Brief in Opposition to Motion to Set Aside
        filed on April 25, 2025 ..................................................................... Appx408

Memorandum Opinion, Denying Defendant's Motion to
        Set Aside, entered May 2, 2025 ....................................................... Appx683

Order Denying Defendant's Motion to
        Set Aside, entered May 2, 2025 ....................................................... Appx691

Defendant's Response to Motion to Compel Compliance
        filed on May 7, 2025 ........................................................................ Appx692

Order Granting Motion to Compel Compliance
        entered on May 12, 2025 .................................................................. Appx748

Plaintiff's Response in Compliance with May 12th Order
        filed on May 16, 2025 ...................................................................... Appx750

Plaintiff's Request for Entry of Default Judgment
    filed on May 27, 2025 ..................................................................Appx991

Receiver's Motion to Modify Certain Leases
    filed on June 2, 2025 ..................................................................Appx1002

**Volume Three of Three**
**(Pages Appx1196 - Appx1546)**

Receiver's Motion to Hold Defendant and Its Principal
    in Contempt, filed on June 6, 2025 ..............................................Appx1196

Defendant's Response in Opposition to Motion to Modify
    Certain Leases, filed on June 16, 2025 ......................................Appx1213

Defendant's Response in Opposition to Motion for Contempt
    filed on June 20, 2025 ................................................................Appx1349

Order Scheduling Oral Argument for July 1, 2025
    entered on June 24, 2025............................................................Appx1370

Declaration of Philip C. Pulley in Support of Plaintiff
    filed on June 26, 2025 ................................................................Appx1371

Receiver's Reply Brief in further Support of Motion to Modify
    Certain Leases, filed on June 30, 2025 ......................................Appx1378

Receiver's Reply Brief in further Support of Motion
    for Contempt, filed on June 30, 2025 ........................................Appx1382

Defendant's Notice of Appeal (with Exhibits)
    filed on August 18, 2025............................................................Appx1406

Receiver's Report for May 1, 2025 through July 31, 2025
    filed on August 21, 2025............................................................Appx1417

# IN THE UNITED STATES DISTRICT COURT
# FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| **ICON PSG 1 FL, LLC** | : | |
| | : | **CIVIL ACTION** |
| **v.** | : | **No. 25-44** |
| | : | |
| **JENKINS COURT REALTY CO., L.P.** | : | |

## MEMORANDUM

**McHUGH, J.**                                                      **July 18, 2025**

This is a foreclosure action where the Court previously held that the appointment of a receiver was warranted, as authorized by the controlling loan documents and based upon a showing that the Plaintiff's interest could not be adequately protected if Defendant continued to manage the property at issue.

Defendant was ordered to render an accounting and transfer records when the receivership was established in February, 2025, ECF 13, and when it failed to comply a second order was entered in May, 2025 again directing Defendant to render an accounting and transfer records. ECF 28. The Receiver now returns with a motion seeking a finding of contempt against Defendant and its principal, Phillip Pulley, because no accounting has been rendered, and the records it has received are inadequate to allow for competent management of the property.

"Proof of contempt requires a movant to demonstrate '(1) that a valid order of the court existed; (2) that the defendants had knowledge of the order; and (3) that the defendants disobeyed the order.'" *FTC v. Lane Labs-USA, Inc.*, 624 F.3d 575, 582 (3d Cir. 2010) (citations omitted). These elements must be proven by clear and convincing evidence, but "an alleged contemnor's behavior need not be willful in order to contravene the applicable decree . . . In other words, good

Appx1

faith is not a defense to civil contempt." *Id.* Here, following an evidentiary hearing, Defendant's contempt is self-evident. There is no dispute about the validity of the order requiring an accounting, Defendant's knowledge of it, or the fact that no accounting has been rendered. Defendant's vague excuse that it requires information from the Receiver makes no sense, both because it would appear to have electronic versions of whatever it previously produced, and it has not even attempted to prepare an accounting. Separately, it is clear that critical information was withheld from the Receiver, because there is a pending tax appeal that affects the subject property, and that information was never disclosed. Counsel's attempt to deflect blame from his client by claiming that he viewed the matter inconsequential because it was "dormant" is nonsensical.

Beyond that, from the Court's review of what has been produced, approximately 280 documents, there is substantial reason to believe that critical management documents have been withheld. Among the items identified by the Receiver, it has not received (1) financial reports for 2023 and 2024; (2) tenant ledgers showing rents as of February 21, 2025; (3) rent rolls as of February 21, 2025; (4) bank statements as of February 21, 2025; (5) access and login information for the control system and DVR; (6) phone line account information for the line serving the elevators; and (7) CAM (Common Area Maintenance) Reconciliations for 2023. It is inconceivable that such records do not exit, and vague explanations about records lost because of a plumbing leak in 2022 sheds no light on documents that logically would have existed at a later point in time.

I found Mr. Pulley to be an evasive witness who offered no credible explanation for how the property could have been operated if in fact the documents requested by the Receiver did not exist. And the tone and tenor of his testimony was that the Receiver should have been able to obtain necessary information from what was produced, such as a General Ledger, which strongly

implies that he is being selective in his compliance with this Court's order. In evaluating the credibility of Mr. Pulley's testimony, I also take judicial notice that he is a convicted felon, having pleaded guilty in this Court to one count of voter registration fraud, two counts of voter fraud, and one count of voting more than once in the same federal election. *See United States of America v. Philip C. Pulley*, No. 24-cr-288, ECF 8, 20 (E.D. Pa. 2024).

The contempt order accompanying this memorandum is mild, considering the blatant lack of cooperation on Mr. Pulley's part. In adjusting his behavior, he should take note of the Court's growing impatience with his conduct.

 /s/ Gerald Austin McHugh  
United States District Judge

# IN THE UNITED STATES DISTRICT COURT
## FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| **ICON PSG 1 FL, LLC** | : | |
| | : | **CIVIL ACTION** |
| **v.** | : | **No. 25-44** |
| | : | |
| **JENKINS COURT REALTY CO., L.P.** | : | |

## ORDER

This 18th day of July, 2025, it is hereby **ORDERED** that the Receiver's Motion to Hold Defendant and its Principal in Contempt, ECF 33, is **GRANTED** in part, as follows:

1) Jenkins Court Realty through its principal Phillip Pulley shall provide a full accounting as required by this Court's prior orders within 5 days, irrespective of Mr. Pulley's contention that he lacks information to complete the accounting. As to necessary information as to which he purportedly lacks access, he shall identify with precision the nature of such information, where such information was located, either in physical or electronic form when he last had access to it, and where, to the best of his knowledge such information currently is.

2) Within 5 days of this Order, Mr. Pulley shall admit representatives of the Receiver into the offices of Jenkins Court Realty and any other location where records pertinent to 610 Old York Road may exist and provide direct access to all paper and electronic files pertaining to 610 Old York Road.

3) Within 5 days of this Order, Mr. Pulley shall admit representatives of the Receiver into the offices of SBG Management and any other location where records pertinent to security, access and video surveillance of 610 Old York Road may exist and provide direct access to all paper and electronic files pertinent to security, access and video

surveillance of 610 Old York Road. Mr. Pulley shall also cooperate in sharing passwords and explaining the operation of any SBG system of service pertinent to security, access and video surveillance of 610 Old York Road.

4) Within 5 days of this Order, Mr. Pulley shall provide all documents and records pertinent to *Jenkins Court Realty Co LP v. Montgomery County Board of Assessment Appeals*, Case No. 2023-24837, and any other action by a governmental entity affecting the subject property.

5) As of July 26, 2025, failure to comply with any aspect of this Order will result in monetary sanctions commencing at $500 per day.

     /s/ Gerald Austin McHugh
United States District Judge

**IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA**

ICON PSG 1 FL, LLC                          :

                                       :           **CIVIL ACTION**

           **v.**                       :           **No. 25-44**

                                         :

JENKINS COURT REALTY CO., L.P.        :

## <u>ORDER</u>

This 18th day of July, 2025, it is hereby **ORDERED** that Plaintiff ICON PSG 1 FL, LLC's

Request for Entry of Default Judgment, ECF 30, is **GRANTED** in the amount of $22,056,659.26,

the full payment due pursuant to the terms of the Loan Agreement. This value incorporates the

full amount due to Plaintiff under the Loan Agreement at the time of the filing of the Complaint,

$20,456,811.14, as well as contractual interest calculated to total $1,599,848.12 as of Plaintiff's

May 27 Declaration, ECF 30-2.[1] Any credits or offsets shall be appropriate for resolution at a later

stage of this litigation.

                                   /s/ Gerald Austin McHugh
                                 United States District Judge

---

[1] Pursuant to the Loan Agreement, contractual interest has accrued at a rate of $13,199.27 per diem on the outstanding Loan Balance starting on January 26, 2025, the date on which the actual interest that had accrued on the Loan exceeded the Minimum Earned Interest. ECF 30-2.

# IN THE UNITED STATES DISTRICT COURT
## FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| **ICON PSG 1 FL, LLC** | : | |
| | : | **CIVIL ACTION** |
| **v.** | : | **No. 25-44** |
| | : | |
| **JENKINS COURT REALTY CO., L.P.** | : | |

## ORDER

This 18th day of July, 2025, upon consideration of the Receiver's Motion to Modify Certain Lease Terms, ECF 32, it is hereby **ORDERED** as follows:

The Receiver is **ORDERED** to properly serve Jenkins Storage, LLC with their Motion to comport with due process notice requirements.

The Motion is **GRANTED** as to SBG Management Services, Inc.[1]  Mr. Pulley is the signatory as both landlord and tenant on the SBG Management lease, which allows for a striking 1000-day period of default before the landlord is permitted to seek any recourse for noncompliance.  This is particularly concerning here, where SBG Management has refused to make any payment to the Receiver yet expects impunity, hindering the Receiver's ability to comply with the Receivership Order prescribed by the Court.  ECF 13.

"A contract may be set aside or rescinded if it can be proven that, at the time of formation of the agreement, the parties did not bargain at an arm's length."  *Biddle v. Johnsonbaugh*, 664 A.2d 159, 161 (Pa. Super. 1995); *See also Tech One Assoc. v. Bd. of Prop. Assessment, Appeals, & Rev. of Allegheny Cnty.*, 53 A.3d 685, 703 n.30 (Pa. 2012) (characterizing an "arm's length transaction" as one "untainted by any collusion or fraud.").  It is impossible to negotiate at an arms-

---

[1] Because Mr. Pulley is a Principal of both SBG Management and Jenkins Court Realty, I deem notice on SBG Management sufficient.

length and to protect the interests of two distinct parties where the same principal simultaneously represents both sides, rendering the lease ripe for judicial intervention. Here, the 1000-day term is also unconscionable because it unreasonably favors the tenant, and there can be limited meaningful choice or deliberation to protect the disparate interests of distinct entities in contractual terms where Pulley represents both parties. *Harris v. Green Tree Financial Corp.*, 183 F.3d 173, 181 (3d Cir. 1999). And inherent to any lease contract is a duty of good faith and fair dealing, which would have been breached by virtue of Pulley having signed both the landlord and tenant sides of the contract.

The Attornment clause is also not binding here. Although some leases were purportedly reviewed by the lender's counsel, there is no indication that the attornment clauses were made known to or reviewed by them. Finally, the Receiver acts as an arm of the Court, rather than as a successor to the landlord, the party that would ostensibly be bound by a valid attornment clause. The unique circumstances warranting the receivership also warrant modification of the lease term to accomplish the purposes of the Court's Receivership Order. The Receiver is hereby **AUTHORIZED** to void the 1000-day grace period in the SBG Management Lease and substitute the ten-day period standard for commercial leases.

  /s/ Gerald Austin McHugh  
United States District Judge

2
Appx8

**UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF PENNSYLVANIA**

ICON PSG 1 FL, LLC,

                   Plaintiff,

    v.

JENKINS COURT REALTY CO., L.P.

             Defendants.

Civ. No. 2:25-cv-00044-GAM

## <u>NOTICE OF APPEAL</u>

Notice is hereby given that Jenkins Court Realty Co., L.P., Defendant in the above named case, appeals to the United States Court of Appeals for the Third Circuit pursuant to 28 U.S.C. §1291 and Fed. R. App. P. 4(A)(1)(a) from the order and judgment (Dkt. No. 45)[1] entered in this action on the 18th day of July, 2025[2] (1) granting the Request for Entry of Default Judgment and entering judgment against Defendant in the amount of $22,056,659.26.  This amount incorporates the full amount owed to Plaintiff under the Loan Agreement at the time of filing the Complaint, $20,456,811.14, plus contractual interest calculated in total as $1,599,848.12 as of May 27, 2025.[3] *See* Ex. A (Final Order and Entry of Default Judgment, 7/18/25 (Dkt. No. 45) and Memorandum, 7/28/23 (Dkt. No. 43)).

---

[1] Also on the 18th day of July, 2025, the District Court issued a memorandum (Dkt. No. 43) in support of the order and entry of default judgment.

[2] The deadline to file a notice of appeal after a final order and/or entry of judgment is thirty (30) days, which was Sunday August 17, 2025.  The deadline falls to the next business day, which is Monday August 18, 2025.  Plaintiff's notice of appeal is timely filed.

[3] On July 18, 2025, as part of the decision to enter Default Judgment, the District Court ordered (i) Plaintiff held in contempt, and (ii) the terms of the Lease Agreement modified. *See* Ex. B (Dkt. No. 46 (Order Modifying Lease Agreement); Dkt. No. 44 (Order Holding Plaintiff in Contempt)). These orders, issued the same day as entry of default judgment, are included in this appeal.

GOLDSTEIN LAW PARTNERS, LLC

BY: */s/          Shawn M. Rodgers*
     Michael Yanoff, Esquire (ID No. 19384)
     Shawn M. Rodgers, Esquire (ID No. 307598)
     610 Old York Road Suite 340
     Jenkintown, PA 19046
     (267) 627-2485
     myanoff@goldsteinlp.com
     srodgers@goldsteinlp.com

     *Attorneys for Defendant*

## <u>CERTIFICATE OF SERVICE</u>

      I, Shawn M. Rodgers, Esquire, do hereby certify that on August 18, 2025, I electronically filed

the foregoing Notice of Appeal with the Clerk of the Court for the United States District Court for

the Eastern District of Pennsylvania using the CM/ECF system. Counsel of record for all parties are

registered CM/ECF users and will be served by the District Court's CM/ECF system.

                                    */s/ Shawn M. Rodgers*
                                    SHAWN M. RODGERS, ESQUIRE