# In the United States Court of Appeals for the Third Circuit

No. 25-2598

---

ICON PSG 1 FL, LLC,
Appellee

v.

JENKINS COURT REALTY CO., L.P.,
Appellant

---

On Appeal from the Order of the U.S. District Court for the Eastern District of Pennsylvania, No. 2:25-cv-00044, Entering Default Judgment In Favor of Appellee (Hon. Gerald Austin McHugh, U.S.D.J.)

---

VOLUME THREE OF THE JOINT APPENDIX
(Pages Appx1196-Appx1546)

---

Shawn M. Rodgers
Michael Yanoff
GOLDSTEIN LAW PARTNERS, LLC
610 Old York Road, Suite 340
Jenkintown, PA 19046
(267) 627–2485

Counsel for Appellant/Defendant

# TABLE OF CONTENTS

**Page**

### Volume One of Three
### (Pages Appx1 - Appx11)

District Court's Memorandum,
    entered July 18, 2025 .................................................................................Appx1

District Court's Contempt Order against
    Defendant, entered July 18, 2025 .....................................................Appx4

District Court's Order entering Default Judgment
    against Defendant, entered July 18, 2025.......................................Appx6

District Court's Order Modifying Lease Terms,
    entered July 18, 2025 .........................................................................Appx7

Notice of Appeal filed August 18, 2025........................................................Appx9

### Volume Two of Three
### (Pages Appx12 – Appx1195)

District Court Docket Entries...................................................................Appx12

Plaintiff's Complaint
    filed January 6, 2025.........................................................................Appx21

Plaintiff's Motion for Expedited Appointment of
    Receiver, filed January 10, 2025....................................................Appx156

Stipulation Approved
    filed January 16, 2025.....................................................................Appx323

Defendant's Response in Opposition to Appointment
    of Receiver, filed January 31, 2025 ...............................................Appx324

Plaintiff's Reply Brief in Support of Receiver Appointment
    filed on February 11, 2025 ........................................................... Appx349

Order Appointing Receiver
    entered on February 21, 2025 ..................................................... Appx379

Plaintiffs' Request for Default
    filed on March 12, 2025 .............................................................. Appx3878

Entry of Default
    filed on March 13, 2025 ................................................................ Appx391

Defendant's Motion to Set Aside and to Permit Answer
    filed on March 13, 2025 ................................................................ Appx392

Affidavit of Philip C. Pulley
    filed on March 28, 2025 ................................................................ Appx401

Receiver's Motion to Compel Compliance
    filed on April 23, 2025 ................................................................. Appx406

Plaintiff's Brief in Opposition to Motion to Set Aside
    filed on April 25, 2025 ................................................................. Appx408

Memorandum Opinion, Denying Defendant's Motion to
    Set Aside, entered May 2, 2025 .................................................. Appx683

Order Denying Defendant's Motion to
    Set Aside, entered May 2, 2025 .................................................. Appx691

Defendant's Response to Motion to Compel Compliance
    filed on May 7, 2025 .................................................................... Appx692

Order Granting Motion to Compel Compliance
    entered on May 12, 2025 .............................................................. Appx748

Plaintiff's Response in Compliance with May 12th Order
    filed on May 16, 2025 .................................................................. Appx750

Plaintiff's Request for Entry of Default Judgment
    filed on May 27, 2025 ...................................................................Appx991

Receiver's Motion to Modify Certain Leases
    filed on June 2, 2025 ...................................................................Appx1002

**Volume Three of Three**
**(Pages Appx1196 - Appx1546)**

Receiver's Motion to Hold Defendant and Its Principal
    in Contempt, filed on June 6, 2025..............................................Appx1196

Defendant's Response in Opposition to Motion to Modify
    Certain Leases, filed on June 16, 2025 ......................................Appx1213

Defendant's Response in Opposition to Motion for Contempt
    filed on June 20, 2025 .................................................................Appx1349

Order Scheduling Oral Argument for July 1, 2025
    entered on June 24, 2025.............................................................Appx1370

Declaration of Philip C. Pulley in Support of Plaintiff
    filed on June 26, 2025 .................................................................Appx1371

Receiver's Reply Brief in further Support of Motion to Modify
    Certain Leases, filed on June 30, 2025 ......................................Appx1378

Receiver's Reply Brief in further Support of Motion
    for Contempt, filed on June 30, 2025 .........................................Appx1382

Defendant's Notice of Appeal (with Exhibits)
    filed on August 18, 2025.............................................................Appx1406

Receiver's Report for May 1, 2025 through July 31, 2025
    filed on August 21, 2025.............................................................Appx1417

**IN THE UNITED STATES DISTRICT COURT FOR THE
EASTERN DISTRICT OF PENNSYLVANIA**

| | | |
|---|---|---|
| **ICON PSG 1 FL, LLC,** | : | |
| **Plaintiff,** | : : : | **CIVIL ACTION** |
| **v.** | : : | **NO. 2:25-cv-00044-GAM** |
| **JENKINS COURT REALTY CO., L.P.,** | : : : | |
| **Defendant.** | : : | |

**RECEIVER'S MOTION TO HOLD DEFENDANT AND ITS PRINCIPAL
IN CONTEMPT OF THE COURT'S COMPLIANCE ORDER**

Trigild IVL, LLC, the Court-appointed receiver (the "Receiver"), by its counsel, respectfully moves the Court to hold Defendant and its principal, Philip Pulley, in contempt of the Court's Order entered May 12, 2025 (ECF Doc. No. 28), compelling compliance with the Court's prior Order entered February 21, 2025 (ECF Doc. No. 13).  In support of its motion, the Receiver relies upon its supporting memorandum of law and the Declaration of Jonathan Lakner.

Respectfully submitted,

Dated:  June 6, 2025

*/s/ Raymond A. Quaglia*
Raymond A. Quaglia, Esq.
Brian N. Kearney, Esq.
BALLARD SPAHR LLP
1735 Market Street, 51st Floor
Philadelphia, PA 10103
Mt. Laurel, New Jersey 08054-0015
(215) 665-8500
quaglia@ballardspahr.com
kearneyb@ballardspahr.com

Counsel for Receiver

## CERTIFICATE OF SERVICE

I hereby certify that I caused a copy of the Receiver's Motion to Hold Defendant and its Principal in Contempt of the Court's Compliance Order to be served via ECF upon all counsel of record.

Dated:  June 6, 2025                    */s/ Raymond A. Quaglia*
                                        Raymond A. Quaglia

**IN THE UNITED STATES DISTRICT COURT FOR THE
EASTERN DISTRICT OF PENNSYLVANIA**

| | | |
|---|---|---|
| ICON PSG 1 FL, LLC,<br><br>    **Plaintiff,**<br><br>    v.<br><br>**JENKINS COURT REALTY CO.,<br>L.P.,**<br><br>    **Defendant.** | :<br>:<br>:<br>:<br>:<br>:<br>:<br>:<br>:<br>:<br>:<br>:<br>: | **CIVIL ACTION**<br><br>**NO. 2:25-cv-00044-GAM** |

**RECEIVER'S MEMORANDUM OF LAW IN SUPPORT OF
ITS MOTION TO HOLD DEFENDANT AND ITS PRINCIPAL
IN CONTEMPT OF THE COURT'S COMPLIANCE ORDER**

Trigild IVL, LLC, the Court-appointed receiver (the "Receiver"), by its counsel, respectfully submits this memorandum of law in support of its motion to hold Defendant and its principal, Philip Pulley (together, "Respondents"), in contempt of the Court's Order entered May 12, 2025 (the "Compliance Order") (ECF Doc. No. 28), compelling compliance with the Court's prior Order entered February 21, 2025 (the "Receiver Order") (ECF Doc. No. 13).

## I.    RELEVANT BACKGROUND

This is an action to foreclose a commercial mortgage executed by Defendant to secure repayment of a loan by Plaintiff. The mortgaged property is Jenkins Court, an office building located at 610 Old York Road in Jenkintown, Pennsylvania (the "Property"). The Court entered the Receiver Order upon Plaintiff's Motion for Expedited Appointment of a Receiver (ECF Doc. No. 5). Despite the Receiver's substantial efforts and the express directive of this Court, Respondents have steadfastly failed and refused to comply with their obligations under the Receiver Order.

Rather than move to hold Respondents in contempt of the Receiver Order, the Receiver initially sought the less draconian remedy of moving for an additional Order compelling

Defendant and its agents to comply with the Receiver Order.  The Court granted the Receiver's motion over Defendant's opposition and entered the Compliance Order, which gave Defendant and its agents five days from May 12, 2025, to file and serve an accounting and to deliver 10 enumerated categories of information to the Receiver.  The Compliance Order closed with the warning that "Defendant is cautioned that failure to comply with this Order shall be grounds for potential sanctions for contempt."

The Court's admonition fell on deaf ears.  Although the Compliance Order required that, "within **five (5) days** of the entry of this Order, Defendant shall file with the Court and serve on all parties the accounting required by Section 5 of the Receiver Order," *see* Compliance Order at p. 1, Defendant has not filed or served the required accounting.  *See* Declaration of Jonathan Lakner ("Lakner Dec.") ¶ 4.  Nor has Defendant proffered any excuse for not filing the accounting.

The Compliance Order further required that, "within **five (5) days** of the entry of this Order, Defendant and its agents shall deliver to the Receiver" 10 enumerated categories of information, comprising:

- Financial reports for the years 2024 and 2025;

- General ledgers for the years 2024 and 2025;

- Tenant ledgers for the years 2024 and 2025;

- A current rent roll;

- Annual testing documentation for the fire alarm and sprinkler system for the years 2024 and 2025;

- Bank statements for the operating account for the years 2024 and 2025;

- Access to the building access control system;

- Admin password to the DVR/camera system;

- Verizon phone line account information for base building system communication; and

- CAM reconciliations for 2023 and 2022.

*See* Compliance Order at pp. 1-2.

To date, the only item that Respondents have produced in response to the Compliance Order has been a general ledger, which Defendant has itself described as "accounting records" that are "no[t] complete" and "have not been reviewed or adjusted." *See* Defendant's Response (ECF Doc. No. 29) ¶ 1; Lakner Dec. ¶ 6. Respondents have not produced, among other items that the Receiver requires:

- Any financial reports, *e.g.*, profit and loss statements or other statements of income and expenses, for the year ending 2023 and the entire year 2024;

- Tenant ledgers or other records listing the tenants, charge/payment balances or tabulations of rental payments by tenant as of February 21, 2025;

- Rent rolls as of February 21, 2025;

- Bank statements as of February 21, 2025;

- Access and login information for the access control system and the DVR/camera system;

- Phone line account information for the line serving the elevators; or

- CAM reconciliations for 2023, even assuming that "the information for 2022 and prior was destroyed by a flood in the Building that took place on December 26, 2022," as alleged in Defendant's Response.

*See* Lakner Dec. ¶ 7.

Defendant's adoption of its prior claim that "2023 CAM information was provided on April 16"[1] is not accurate. *See* Lakner Dec. ¶ 7. All that Defendant provided to the Receiver were billing records for five of the Property's 14 tenants. *Id*. Moreover, the limited records provided do not contain or otherwise reflect Defendant's CAM calculations, which has hindered

---

[1] *See* Dfdt's Response to Plaintiff's [sic] Motion to Compel Compliance with Receiver Order (ECF Doc. No. 27) at p. 2.

the Receiver's ability to calculate current CAM charges consistently with historical calculations. *Id*.

Once again, the Receiver attempted to obtain the missing information/documentation from Respondents without having to seek sanctions or otherwise involve the Court. By letter dated May 28, 2025, a copy of which is attached to the Lakner Declaration as Exhibit A, the Receiver's counsel served a Notice and Demand to Cure Noncompliance upon Defendant's counsel of record. *See* Lakner Dec. ¶ 8 & Ex. A. And once again, neither Respondents nor their counsel have even acknowledged, much less honored, that demand for compliance. *See id*. ¶ 9. Under these circumstances, the Receiver is constrained to ask the Court to hold Respondents in contempt of the Compliance Order and impose appropriate sanctions until their contempt is purged. *See id*. ¶ 10.

## II.    ARGUMENT

"Proof of contempt requires a movant to demonstrate '(1) that a valid order of the court existed; (2) that the defendants had knowledge of the order; and (3) that the defendants disobeyed the order.'" *FTC v. Lane Labs-USA, Inc.*, 624 F.3d 575, 582 (3d Cir. 2010) (citations omitted). Here, there can be no dispute that the Compliance Order was a valid court order or that Respondents had knowledge of the Compliance Order by virtue of its entry on the docket and Defendant's submission, including an affidavit from Mr. Pulley, in response thereto. *See* ECF Doc. No. 29. It is equally clear that Respondents have disobeyed the Compliance Order. Indeed, the entirety of Defendant's response to the Compliance Order is on the docket at ECF Doc. No. 29 and does not include either an accounting or the majority of the information that the Court ordered Defendant and its agents to produce.

This Court has broad discretion to fashion an appropriate penalty for civil contempt. *See Del. Valley Citizens' Council for Clean Air v. Commonwealth of Pa.*, 678 F.2d 470, 478 (3d

Cir. 1982).  Accordingly, the Court should hold Respondents in contempt of the Compliance Order and impose appropriate penalties, including but not limited to daily monetary sanctions, if they fail to purge their contempt and comply fully and immediately with the Compliance Order.

III.    **CONCLUSION**

For all of the foregoing reasons, the Receiver respectfully submits that the Court should promptly enter an Order inviting Respondents to show cause why this motion should not be granted, scheduling a hearing on the motion at the Court's earliest convenience and requiring Mr. Pulley to appear personally at that hearing.  Alternatively, or (if appropriate) following the requested hearing, the Court should find Respondents to be in contempt of the Receiver Order, order them to purge their contempt by complying with their obligations thereunder, impose appropriate daily sanctions upon them until their contempt is purged and award to the Receiver such other and further relief as the Court in its discretion may find equitable and just.

Respectfully submitted,

Dated:  June 6, 2025

*/s/ Raymond A. Quaglia*
Raymond A. Quaglia, Esq.
Brian N. Kearney, Esq.
BALLARD SPAHR LLP
1735 Market Street, 51st Floor
Philadelphia, PA 10103
Mt. Laurel, New Jersey 08054-0015
(215) 665-8500
quaglia@ballardspahr.com
kearneyb@ballardspahr.com

Counsel for Receiver

**IN THE UNITED STATES DISTRICT COURT FOR THE**
**EASTERN DISTRICT OF PENNSYLVANIA**

| | | |
|---|---|---|
| ICON PSG 1 FL, LLC,<br><br>     **Plaintiff,**<br><br>     v.<br><br>JENKINS COURT REALTY CO.,<br>L.P.,<br><br>     **Defendant.** | :<br>:<br>:<br>:<br>:<br>:<br>:<br>:<br>:<br>:<br>:<br>: | **CIVIL ACTION**<br><br>**NO. 2:25-cv-00044-GAM** |

**DECLARATION OF JONATHAN LAKNER**

Pursuant to 28 U.S.C. § 1746, Jonathan Lakner hereby declares as follows:

1.     I am over the age of 18 years old and competent to testify in a court of law. I am Senior Vice President at Trigild IVL, LLC ("Trigild," or the "Receiver"), the court-appointed receiver for the improved real property owned by the Defendant in this action (the "Property") pursuant to the Court's Order filed on February 21, 2025 (ECF Doc. No. 13) (the "Receiver Order"). Trigild has successfully handled more than 1,500 court-appointed fiduciary assignments throughout the country, including as receiver and bankruptcy trustee. I have more than 20 years of experience with the management of commercial properties.

2.     I respectfully submit this declaration in support of the Receiver's Motion to Hold Defendant and its Principal in Contempt of the Court's Order Entered May 12, 2025 (ECF Doc. No. 28) (the "Compliance Order").

3.     The Compliance Order granted the Receiver's prior Motion to Compel Compliance with the Receiver Order (ECF Doc. No. 22) and ordered that, "within **five (5) days** of the entry of this Order, Defendant shall file with the Court and serve on all parties the accounting required by Section 5 of the Receiver Order." *See* Compliance Order at p. 1.

4.      To date, Defendant has neither filed nor served the accounting required by Section 5 of the Receiver Order.

5.      The Compliance Order further required that, "within **five (5) days** of the entry of this Order, Defendant and its agents shall deliver to the Receiver" 10 enumerated categories of information, comprising:

(a)      Financial reports for the years 2024 and 2025;

(b)      General ledgers for the years 2024 and 2025;

(c)      Tenant ledgers for the years 2024 and 2025;

(d)      A current rent roll;

(e)      Annual testing documentation for the fire alarm and sprinkler system for the years 2024 and 2025;

(f)      Bank statements for the operating account for the years 2024 and 2025;

(g)      Access to the building access control system;

(h)      Admin password to the DVR/camera system;

(i)      Verizon phone line account information for base building system communication; and

(j)      CAM reconciliations for 2023 and 2022.

*See* Compliance Order at pp. 1-2.

6.      To date, the only item that Defendant and its agents have produced in response to the Compliance Order has been a general ledger, which Defendant has described as "accounting records" that are "no[t] complete" and "have not been reviewed or adjusted." *See* Defendant's Response (ECF Doc. No. 29) ¶ 1.

**Error! Unknown document property name.**                    2

7.    Defendant and its agents have not produced, among other items that the Receiver requires:

- Any financial reports, *e.g.*, profit and loss statements or other statements of income and expenses, for the year ending 2023 and the entire year 2024;

- Tenant ledgers or other records listing the tenants, charge/payment balances or tabulations of rental payments by tenant as of February 21, 2025;

- Rent rolls as of February 21, 2025;

- Bank statements as of February 21, 2025;

- Access and login information for the access control system and the DVR/camera system;

- Phone line account information for the line serving the elevators; or

- CAM reconciliations for 2023, even assuming that "the information for 2022 and prior was destroyed by a flood in the Building that took place on December 26, 2022," as alleged in Defendant's Response.  Defendant's prior claim that "2023 CAM information was provided on April 16" is not accurate.  All that Defendant provided to us were billing records for five of the Property's 14 tenants.  Moreover, the limited records provided do not contain or otherwise reflect Defendant's CAM calculations, which has hindered the Receiver's ability to calculate current CAM charges consistently with historical calculations.

8.    Given Defendant's noncompliance, we directed the Receiver's counsel to serve a formal demand for compliance on Defendant's counsel of record by letter dated May 28, 2025, a copy of which is attached hereto as *Exhibit A*.

9.    Neither Defendant, Mr. Pulley nor defense counsel have acknowledged, much less honored, our counsel's demand for compliance.

10.    Under these circumstances, we are constrained to ask the Court to hold Defendant and its principal, Philip Pulley, in contempt of the Compliance Order and to impose appropriate sanctions for Defendant's continued noncompliance.

**Error! Unknown document property name.**    3

I declare under penalty of perjury that the foregoing is true and correct.

*Jon Lakner*
_____
Jon Lakner

Dated:  June 6 , 2025

# Exhibit A

# Ballard Spahr
### LLP

_ _ _ _ _ _ _ _ _ _ _ _ _ _ _ _ _ _ _

1735 Market Street, 51st Floor
Philadelphia, PA 19103-7599
TEL 215.665.8500
FAX 215.864.8999
www.ballardspahr.com

Raymond A. Quaglia
Tel: 215.864.8530
Fax: 215.864.8999
quaglia@ballardspahr.com

May 28, 2025

*Via Email (aciardi@ciardilaw.com and myanoff@goldsteinlp.com)*

Albert A. Ciardi, III, Esq.
Ciardi Ciardi & Astin
1905 Spruce Street
Philadelphia, PA 19103

Michael Yanoff, Esq.
Goldstein Law Partners LLC
610 Old York Road, Suite 340
Dresher, PA 19025

Re:    NOTICE AND DEMAND TO CURE NONCOMPLIANCE with the Court's Order dated
       May 12, 2025, in *ICON PSG 1 FL, LLC v. Jenkins Court Realty Co., L.P.*, Civil Action No.
       25-0044 (EDPA)

Dear Counsel:

We represent Trigild IVL, LLC, the Court-appointed receiver (the "Receiver") for the subject property (the "Property") pursuant to the Court's Order dated February 21, 2025 (ECF Doc. No. 13) (the "Receiver Order").  By Order dated May 12, 2025 (ECF Doc. No. 28) (the "Compliance Order"), the Court granted the Receiver's motion to compel Defendant's compliance with the Receiver Order and gave Defendant five days to file and serve on all parties the accounting required by Section 5 of the Receiver Order and to deliver to the Receiver ten enumerated categories of information and documentation.

Defendant has materially failed and/or refused to comply with the Compliance Order.  To date, two weeks past the deadline for compliance imposed by the Court, Defendant has not filed or served the accounting required by Section 5 of the Receiver Order or delivered to the Receiver most of the information and documentation required by the Compliance Order.  Indeed, the *only* item that Defendant has delivered since the entry of the Compliance Order is a General Ledger, which Defendant itself characterizes as "accounting records" that are "no[t] complete" and "have not been reviewed or adjusted."

This response is unacceptable.  In addition to the required accounting, Defendant has also failed and/or refused to deliver, among other things:

NG-58S8J20W #4913-4726-3559 v2

Atlanta  |  Baltimore  |  Bethesda  |  Denver  |  Las Vegas  |  Los Angeles  |  New Jersey  |  New York  |  Philadelphia  |  Phoenix  |  Salt Lake City
San Diego  |  Washington, DC  |  Wilmington  |  www.ballardspahr.com

Appx1208

Albert A. Ciardi, III, Esq.
Michael Yanoff, Esq,
May 28, 2025
Page 2

- Any financial reports, *e.g.*, profit and loss statements or other statements of income and expenses, for the year ending 2023 and the entire year 2024;

- Tenant ledgers or other records listing the tenants, charge/payment balances or tabulations of rental payments by tenant as of February 21, 2025;

- Rent rolls as of February 21, 2025;

- Bank statements as of February 21, 2025;

- Access and login information for the access control system and the DVR/camera system;

- Phone line account information for the line serving the elevators; or

- CAM reconciliations for 2023, even assuming that "the information for 2022 and prior was destroyed by a flood in the Building that took place on December 26, 2022," as alleged without support in Defendant's Response.  Defendant's prior claim that "2023 CAM information was provided on April 16" is not accurate.  All that Defendant provided were billing records for five of the Property's 14 tenants.  Moreover, the limited records provided do not contain or otherwise reflect Defendant's CAM calculations, which has hindered the Receiver's ability to calculate current CAM charges consistently with historical calculations.

Pursuant to the Compliance Order, "Defendant is cautioned that failure to comply with this Order shall be grounds for potential sanctions for contempt."  *See* Compliance Order at p. 2.

PLEASE BE ADVISED THAT, IN VIEW OF THE FOREGOING, DEMAND IS HEREBY MADE UPON DEFENDANT AND ITS AGENTS, INCLUDING PHILIP PULLEY, TO COMPLY IMMEDIATELY WITH THEIR OBLIGATIONS UNDER THE COMPLIANCE ORDER AND THE RECEIVER ORDER.

In the event that Defendant and its agents have not fully complied with their obligations by the close of business on **Friday, May 30, 2025**, the Receiver intends to move for further relief from the Court, including but not limited to an Order: (i) holding Defendant and its agents, including Mr. Pulley, in contempt of the Compliance Order and imposing sanctions in a manner deemed appropriate by the Court until such time as their contempt is purged; (ii) awarding the Receiver its attorneys' fees in connection with such motion; and (iii) requiring Defendant and its representatives to turn over their computers and computer drives to a third-party vendor who will search for and extract the information required to be delivered by the Compliance Order and the Receiver Order.  The Receiver reserves all of its other rights and remedies.

NG-58S8J20W #4913-4726-3559 v2

Albert A. Ciardi, III, Esq.
Michael Yanoff, Esq,
May 28, 2025
Page 3


Please contact me if you have any questions regarding this matter.

Sincerely,

*/s/ Raymond A. Quaglia*

Raymond A. Quaglia


cc:    Gleb Epelbaum, Esq. (via email) (gepelbaum@kurtzpartners.com)

NG-58S8J20W #4913-4726-3559 v2

**IN THE UNITED STATES DISTRICT COURT FOR THE
EASTERN DISTRICT OF PENNSYLVANIA**

| | | |
|---|---|---|
| ICON PSG 1 FL, LLC, | : | |
| | : | |
| **Plaintiff,** | : | CIVIL ACTION |
| | : | |
| **v.** | : | NO. 2:25-cv-00044-GAM |
| | : | |
| JENKINS COURT REALTY CO., L.P., | : | |
| | : | |
| **Defendant.** | : | |

**[PROPOSED] ORDER TO SHOW CAUSE**

AND NOW, this ____ day of _____, 2025, upon consideration of the motion by Trigild IVL, LLC, the Court-appointed receiver (the "Contempt Motion"), to hold Defendant and its principal, Philip Pulley, in contempt of the Court's Order entered May 12, 2025 (ECF Doc. No. 28), compelling compliance with the Court's prior Order entered February 21, 2025 (ECF Doc. No. 13), it is ORDERED that:

1.      Respondents shall show cause why the relief sought by the Contempt Motion should not be granted.

2.      A hearing on the Contempt Motion shall be held in Courtroom ___, U.S. Courthouse, 601 Market Street, Philadelphia, Pennsylvania, on _____, 2025, at _____ __.m.

3.      Philip Pulley shall attend the hearing in person.

BY THE COURT:

_____
Gerald Austin McHugh
United States District Judge

**IN THE UNITED STATES DISTRICT COURT FOR THE**
**EASTERN DISTRICT OF PENNSYLVANIA**

| | | |
|---|---|---|
| ICON PSG 1 FL, LLC, | : : : | |
| Plaintiff, | : : | CIVIL ACTION |
| v. | : : | NO. 2:25-cv-00044-GAM |
| JENKINS COURT REALTY CO., L.P., | : : : : | |
| Defendant. | : : | |

**[PROPOSED] ORDER**

AND NOW, this ____ day of _____, 2025, upon consideration of the motion by Trigild IVL, LLC, the Court-appointed receiver, to hold Defendant, Jenkins Court Realty Co., L.P., and its principal, Philip Pulley, in contempt of the Court's Order entered May 12, 2025 (the "Compliance Order") (ECF Doc. No. 28), compelling compliance with the Court's prior Order entered February 21, 2025 (ECF Doc. No. 13), and after due and appropriate notice of the motion to Respondents and a hearing thereon, it is ORDERED that the Contempt Motion be and hereby is GRANTED and that Respondents are found to be in contempt of the Compliance Order.

It is further ORDERED that Respondents shall purge their contempt and fully comply with the Compliance Order within three business days of the entry of this Order or be subject to monetary penalties in the amount of $_____ for each day thereafter that their contempt continues.

BY THE COURT:

_____
Gerald Austin McHugh
United States District Judge

**UNITED STATES DISTRICT COURT**
**FOR THE EASTERN DISTRICT OF PENNSYLVANIA**

| | |
|---|---|
| In re | : |
| | : CIVIL ACTION |
| ICON PSG 1 FL, LLC, | : |
| | : No.: 2:25-cv-44 |
| Plaintiff, | : |
| | : |
| v. | : |
| | : |
| JENKINS COURT REALTY CO., LP. | : |
| | : |
| Defendant. | : |

**JENKINS COURT REALTY CO., LP'S RESPONSE IN OPPOSITION TO RECEIVER'S MOTION TO MODIFY LEASES**

Jenkins Court Realty Co., LP, by and through the undersigned counsel, hereby files its Response to Opposition to the Motion to Modify Certain Lease Provisions for the reasons set forth in its Decleration of Phillip J. Pulley and Memorandum of Law in Support of its Opposition.

Respectfully submitted,

CIARDI CIARDI & ASTIN

1905 Spruce Street
Philadelphia, PA 19103
Telephone: (215) 557-3550

BY: _____

　　Albert A. Ciardi, III
　　Email: aciardi@ciardilaw.com
　　Daniel S. Siedman, Esq.
　　Email: dsiedman@ciardilaw.com

Attorneys for Defendant

Appx1213

UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| In re | : | |
| | : | CIVIL ACTION |
| ICON PSG 1 FL, LLC, | : | |
| | : | No.: 2:25-cv-44 |
| Plaintiff, | : | |
| | : | |
| v. | : | |
| | : | |
| JENKINS COURT REALTY CO., LP. | : | |
| | : | |
| Defendant. | : | |

JENKINS COURT REALTY CO., LP'S MEMORANDUM OF LAW
IN SUPPORT OF ITS OBJECTION TO RECEIVER'S MOTION TO MODIFY LEASES

Jenkins Court Realty Co., LP, by and through its undersigned counsel, hereby submits the following Memorandum of Law in support of its objection to Receiver's Motion to Modify Certain Lease Provisions.

I.      INTRODUCTION

On or about February 21, 2025, the Court appointed Trigild IVL, LLC as a receiver for the improved real property owned by the Defendant in this action (the "Property") pursuant to the Court's Order filed on February 21, 2025 (D.N. 13) (the "Receiver Order"). On or about June 2, 2025, the Receiver filed a Motion to Modify Certain Lease Provisions (the "Motion"). As set forth in the Decleration of Jon Lakner in support of the Motion, the Receiver sets forth that this Motion concerns the notice and cure provisions in two leases: (i) the Lease made as of November 1, 2017, between Defendant and SBG Management Services, Inc. ("SBG Management") (as amended, the "SBG Management Lease"), a copy of which is attached hereto as Exhibit A; and (ii) the Lease made as of February 1, 2019, between Defendant and Jenkins Storage, LLC ("Jenkins Storage") (the "Jenkins Storage Lease," and, together with the SBG

Appx1214

Management Lease, the "Leases"), a copy of which is attached hereto as Exhibit B.  The Receiver seeks to unilaterally modify the Leases to delete the phrase "one thousand (1000) days" from Section 17.01 and replace it with "ten (10) days."  *See* Lakner Dec. ¶ 18.

As an initial matter, the Receiver has failed to notice and/or serve a copy of either the Receiver Order or the Motion on either SBG Management or Jenkins Storage.  Additionally, regardless of the due process issues, the Receiver is estopped from modifying the Leases due to the Plaintiff's previous acceptance of the Leases and the specific attornment language that is recorded as to each of the Leases.

## II.    RELEVANT FACTS

The Receiver seeks to modify the Leases as a further attempt to collect rents.  Rather than go directly to the tenants, the Receiver is back-dooring its efforts by seeking to modify the Leases without any notice or participation of the tenants.  As set forth above, the Receiver was appointed on February 21, 2025.  *See* D.N. 13.  Since that time, the Receiver has sought information from Jenkins.  Now, the Receiver seeks to unilaterally modify pre-existing Leases that the Plaintiff reviewed and modified prior to the appointment of the Receiver.

As a justification for its ability to unilaterally modify the Lease terms without notice to the tenant, the Receiver points to Sections 6(b), 6(e) and Section 6(f) as authority for its ability to modify the Leases. The Receiver also looks to Section 25.  Specifically, Section 6(b) is entitled "Exclusion of Defendant," provides in part that "[t]he Receiver is authorized to exclude Defendant, its agents, management companies, employees, representatives, owners, affiliates, subsidiaries, and parent companies from possessing or operating the Property." *See* D.N. 13.

Section 6(e) of the Receiver Order, entitled "Authority to Contract," provides in part that "[t]he Receiver may make, cancel, enforce, or modify contracts, leases, or licenses relating to

any part of the Property or the Construction Projects." Section 6(f) of the Receiver Order, entitled "Collection of Revenues," provides in part that "[t]he Receiver shall demand, collect, and receive any and all rents, sub-rents, lease and sublease payments, fees, debts, or other proceeds, profits, or income of any type or nature and however denominated that may arise from the use or operation of the Property or are generated from the Receivership Estate." Lastly, Section 25 of the Receiver Order, entitled "Retention of Jurisdiction," provides in part that "[t]his Court retains jurisdiction to modify the terms of this Order and to expand or contract the rights, duties, and obligations of the Receiver or any other party affected by this Order, and to enter such other orders as may from time to time, during the pendency of this action, be deemed necessary, just, and proper."

None of the provisions permit the Receiver to modify the Leases without expressly noticing the tenant and/or providing the tenants with an opportunity to respond to the Motion. Although the Receiver may be permitted to exclude the Defendant, the Receiver cannot exclude SBG Management or Jenkins Storage from the Lease modification process. Prior to the appointment of the Receiver, the Plaintiff performed in-depth and exhaustive due diligence as part of the underwriting of this loan.

The Plaintiff utilized both in-house and outside counsel to review the loan and underlying Leases, which included Blank Rome lawyers. As part of the due diligence for the Loan, both the SBG Management Lease and Jenkins Storage Lease were provided to the Plaintiff and Counsel for the Plaintiff. Specifically, Plaintiff's in-house counsel and Counsel at Blank Rome were provided more than three (3) dozen emails from June 2, 2023 through September 27, 2023 that included detailed review of the subject leases. Plaintiff and Plaintiff's counsel had specific questions with regard to the Leases, but no questions or comments with regard to the Notice

and/or Cure provisions sought to be modified by the Receiver. The Leases were also provided as part of the due diligence and were on the ten (10) closing checklists. In actuality, the Leases were actually amended as part of the closing checklists to include estoppel certificates and to extend the SBG Management Lease to January 30, 2028.

Additionally, as part of the closing, Plaintiff entered into Subordination, Nondisturbance and Attornment Agreements with Jenkins, SBG Management and Jenkins Storage (the "SDNAs"). The SDNAs were recorded and were both made effective as to August 25, 2023. True and correct copies of the SDNAs are attached hereto to the Decleration as Exhibit "E". The SDNAs both specifically state the following under Section 3. Attornment: "If the Landlord's interest is transferred to and owned by Lender or any success of Lender ("Acquiring Party") because of foreclosure or other proceedings brought by the Lender, or by any manner, and Acquiring Party succeeds to Landlords interest under the Lease, Tenant shall be bound to the Acquiring Party and Acquiring Party shall be bound to Tenant under all terms, covenants and conditions of the Lease for the balance of the remaining terms, including any extensions or renewals, with the same effect as if Acquiring Party were Landlord under the Lease." See Section 3 of Exhibit "E" (same for both Leases). Per the SDNAs, the Receiver is bound to the terms of the Leases.

As more fully argued below, Receiver and Plaintiff cannot unilaterally modify the Leases.

III.    **ARGUMENT**

    A.    **Receiver Fails to Provide Notice and/or Opportunity to Respond to Tenant and, Therefore, Motion Must be Denied.**

As an attempt to collect rents, the Receiver is requesting the Court to modify the Leases to delete the phrase "one thousand (1000) days" from Section 17.01 and replace it with ten (10) days. The Receiver has failed to provide notice of either the Receiver Order or the Motion to either SBG Management or Jenkins Storage.

"A mortgagee can obtain 'possession' of realty and consequently obtain a present right to receive rents in two ways: (1) by entering into 'actual possession' of the real estate through foreclosure or acting as a mortgagee in possession; or (2) by taking 'constructive possession' of the realty by serving demand notices on the mortgagor's tenants." *In re 400 Walnut Assocs. LP*, 454 B.R. 601, 608 (Bankr. E.D. Pa. 2011) *citing SeSide*, 152 B.R. at 883 (emphasis added), citing *Fogarty v. Shamokin & Mount Carmel Transit Co.*, 367 Pa. 447, 451, 80 A.2d 727, 728–29 (1951); *Colbassani v. Society of Christopher Columbus*, 159 Pa.Super. 414, 417, 48 A.2d 106, 107 (1946); *Bulger v. Wilderman and Pleet*, 101 Pa.Super. at 176–77; accord, *Mountain View*, 5 F.3d at 38.

The Receiver is attempting to collect rents and seeks to modify the Leases without providing either SBG Management or Jenkins Storage with their due process rights to notice. Here, Receiver has failed to provide notice to either SBG Management or Jenkins Storage. The Receiver seeks to "conform" the contractual cure period with alleged industry standard but provides no case law or legal justification for its ability to unilaterally modify the Leases. Furthermore, Receiver sole justification for modifying the Leases is to collect rent. Per its Memorandum in Support of its Motion, the Receiver states "The Receiver's efforts to collect

rents at the Property pursuant to the Receiver Order are being substantially impeded by the occupation of nearly 40,000 square feet of space by two of Defendant's affiliates that have not made any payment whatsoever to the Receiver and are effectively protected against enforcement by the unusual notice and cure provisions in their respective leases." *See* Memorandum in Support of Motion at Page 1.

The Receiver's only support for failure to provide notice is that the company's are allegedly affiliates of the Defendant. There has been no finding that the companies are affiliates and, regardless, that does not negate corporate formalities and the requirement that a tenant be provided Notice of the Receiver's Order and the Motion.

This Motion should be denied and Receiver should take the necessary steps to provide notice to both SBG Management and Jenkins Storage with a copy of the Receiver's Order and the Motion.

### B.    Receiver Motion Should be Denied as Receiver Is Estopped From Modifying the Leases.

The Plaintiff specifically sought the appointment of the Receiver. Prior to the appointment of the Receiver, Plaintiff reviewed, modified and accepted the Leases. Additionally, the Plaintiff entered into the SDNAs. The attornment clauses are binding upon the Receiver.

Attornment clauses generally require a tenant to continue the existing lease under a new landlord after foreclosure, and that the attornment clause in the original leases was enforceable. *Goldilocks Corp. of S. California v. Ramkabir Motor Inn Inc.*, 26 F. App'x 693, 697 (9th Cir. 2002); *See Miscione v. Barton Dev. Co.,* 52 Cal.App.4th 1320, 61 Cal.Rptr.2d 280 (1997); *Principal Mut. Life Ins. Co. v. Vars, Pave, McCord & Freedman,* 65 Cal.App.4th 1469, 77 Cal.Rptr.2d 479 (1998); Robert D. Feinstein & Sidney A. Keyles, *Foreclosure: Subordination,*

*Non–Disturbance and Attornment Agreements,* 3 Probate & Property 38 (1989) ("[Under an attornment clause, t]he tenant covenants with the mortgagee that, in the event of foreclosure, the lease will not be extinguished but will continue as a lease between the mortgagee (or any successor to it) and the tenant.").

As set forth above, the SDNAs specifically state the following under Section 3. Attornment: "If the Landlord's interest is transferred to and owned by Lender or any success of Lender ("Acquiring Party") because of foreclosure or other proceedings brought by the Lender, or by any manner, and Acquiring Party succeeds to Landlords interest under the Lease, Tenant shall be bound to the Acquiring Party and Acquiring Party shall be bound to Tenant under all terms, covenants and conditions of the Lease for the balance of the remaining terms, including any extensions or renewals, with the same effect as if Acquiring Party were Landlord under the Lease." See Section 3 of Exhibit "E" (same for both Leases).

Here, the Receiver steps into the shoes of the Plaintiff and is bound by the terms of the Leases. Furthermore, the Plaintiff reviewed, accepted and provided comments to each of the Leases prior to the recording of the SDNAs. At **no point in time** did any of the Plaintiff or Plaintiff's Counsel raise any issue or concerns regarding the Notice / Cure provisions of the Leases. As such, Plaintiff and Receiver cannot now seek to unilaterally modify the Leases. The Receiver has other methods to seek to collect rent, but it cannot modify terms of Leases as that is outside the scope of the Receiver Order.

In addition to the SDNAs, Plaintiff's counsel reviewed, modified and accepted the Leases. Plaintiff's in-house counsel and Counsel at Blank Rome were provided more than three (3) dozen emails from June 2, 2023 through September 27, 2023 that included detailed review of the subject Leases. Plaintiff's counsel had specific questions with regard to the Leases, but no

questions or comments with regard to the Notice and/or Cure provisions sought to be modified by the Receiver. The Leases were also provided as part of the due diligence and were on the ten (10) closing checklists. The Plaintiff required the following post-closing requirements to the Jenkins Storage Lease to be resolved by amendment: (a) the rent does not match. The estoppel states it is $360,00000. The rent role states $276,000.00; (b) The termination dates do not match. The estoppel states April 1, 2029. The rent roll states March 1, 2029; (c) When will EASL be made available/ when will rent return to $360,000.00? – construction completion.

It is obvious that the Plaintiff received the Leases, reviewed the Leases extensively and required certain changes to the Leases. Given the SDNAs and the Plaintiff's prior acceptance of the notice / cure provisions, Receiver should be estopped from modifying the Leases.

## IV.    CONCLUSION

For the reasons set forth above, Defendant respectfully requests this Court deny the Motion and to order such additional relief as is just and proper under the circumstances.

Dated: June 16, 2025                    Respectfully submitted,

                                        CIARDI CIARDI & ASTIN

                                        By:_____
                                            Albert A. Ciardi, III, Esquire
                                            Daniel S. Siedman, Esquire
                                            1905 Spruce Street,
                                            Philadelphia, PA 19103
                                            (215) 557-3550 Phone
                                            (215) 557-3551 Fax
                                            *Attorneys for Defendant*

UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| In re | : | |
| | : | CIVIL ACTION |
| ICON PSG 1 FL, LLC, | : | |
| | : | No.: 2:25-cv-44 |
| Plaintiff, | : | |
| | : | |
| v. | : | |
| | : | |
| JENKINS COURT REALTY CO., LP. | : | |
| | : | |
| Defendant. | : | |

DECLARATION OF PHILLIP PULLEY
ON BEHALF OF JENKINS COURT REALTY CO., LP

Pursuant to 28 U.S.C. § 1746, Phillip Pulley hereby declares as follows:

1.      I am an Officer of Old Jenkins Corporation which is an authorized representative for the above-named Defendant, Jenkins Court Realty Co., LP ("Jenkins").

2.      On or about February 21, 2025, the Court appointed Trigild IVL, LLC as a receiver for the improved real property owned by the Defendant in this action (the "Property") pursuant to the Court's Order filed on February 21, 2025 (D.N. 13) (the "Receiver Order").

3.      On or about June 2, 2025, the Receiver filed a Motion to Modify Certain Lease Provisions (the "Motion").

4.      I respectfully submit this declaration in opposition to the Receiver's Motion.

5.      As set forth in the Decleration of Jon Lakner in support of the Motion, the Receiver sets forth that this Motion concerns the notice and cure provisions in two leases: (i) the Lease made as of November 1, 2017, between Defendant and SBG Management Services, Inc. ("SBG Management") (as amended, the "SBG Management Lease"), a copy of which is attached

1

hereto as Exhibit A; and (ii) the Lease made as of February 1, 2019, between Defendant and

Jenkins Storage, LLC ("Jenkins Storage") (the "Jenkins Storage Lease," and, together with the

SBG Management Lease, the "Leases"), a copy of which is attached hereto as Exhibit B.

6. The Receiver seeks to unilaterally modify the Leases to delete the phrase "one thousand (1000) days" from Section 17.01 and replace it with "ten (10) days." *See* Lakner Dec. ¶ 18.

7. As an initial matter, the Motion was served only by ECF upon all counsel of record. *See* D.N. 32.

8. Neither SBG Management nor Jenkins Storage are a party to this action.

9. Neither SBG Management nor Jenkins Storage were served with a copy of the Receiver's Order.

10. As such, the Receiver is attempting to unilaterally modify the SBG Management Lease and the Jenkins Storage Lease without notice to either SBG Management or Jenkins Storage.

11. The Receiver Order provides the Receiver with certain powers as enumerated in paragraph 6 of the Receiver Order.

12. The Receiver Order was also never served on either SBG Management or Jenkins Storage.

13. As a justification for its ability to unilaterally modify the lease terms without notice to the tenant, the Receiver points to Sections 6(b), 6(e) and Section 6(f) as authority for its ability to modify the Leases. The Receiver also looks to Section 25.

14. Specifically, Section 6(b) is entitled "Exclusion of Defendant," provides in part that "[t]he Receiver is authorized to exclude Defendant, its agents, management companies,

2

employees, representatives, owners, affiliates, subsidiaries, and parent companies from possessing or operating the Property." *See* D.N.

15. Section 6(e) of the Receiver Order, entitled "Authority to Contract," provides in part that "[t]he Receiver may make, cancel, enforce, or modify contracts, leases, or licenses relating to any part of the Property or the Construction Projects."

16. Section 6(f) of the Receiver Order, entitled "Collection of Revenues," provides in part that "[t]he Receiver shall demand, collect, and receive any and all rents, sub-rents, lease and sublease payments, fees, debts, or other proceeds, profits, or income of any type or nature and however denominated that may arise from the use or operation of the Property or are generated from the Receivership Estate."

17. Section 25 of the Receiver Order, entitled "Retention of Jurisdiction," provides in part that "[t]his Court retains jurisdiction to modify the terms of this Order and to expand or contract the rights, duties, and obligations of the Receiver or any other party affected by this Order, and to enter such other orders as may from time to time, during the pendency of this action, be deemed necessary, just, and proper."

18. None of the provisions permit the Receiver to modify the Leases without expressly noticing the tenant and/or providing the tenants with an opportunity to respond to the Motion.

19. Although the Receiver may be permitted to exclude the Defendant, the Receiver cannot exclude SBG Management or Jenkins Storage from the modification process.

20. Prior to the appointment of the Receiver, the Plaintiff performed in-depth and exhaustive due diligence as part of the underwriting of this loan.

21.    The Plaintiff utilized both in-house and outside counsel to review the loan, which included Blank Rome lawyers.

22.    As part of the due diligence for the Loan, both the SBG Management Lease and Jenkins Storage Lease were provided to the Plaintiff and Counsel for the Plaintiff.

23.    Specifically, Plaintiff's in-house counsel and Counsel at Blank Rome were provided more than three (3) dozen emails from June 2, 2023 through September 27, 2023 that included detailed review of the subject Leases.

24.    Plaintiff's counsel had specific questions with regard to the Leases, but **no questions or comments** with regard to the Notice and/or Cure provisions sought to be modified by the Receiver.

25.    The Leases were also provided as part of the due diligence and were on the ten (10) closing checklists.

26.    In actuality, the Leases were actually amended as part of the closing checklists to include estoppel certificates and to extend the SBG Management Lease to January 30, 2028.

27.    Specifically, on August 2, 2023, Jonathan Siegal, Esq., General Counsel for PSG Lending, LLC provided an updated closing checklist that provides proof that both the SBG Management Lease and the Jenkins Storage Lease were in the possession of the Plaintiff and were reviewed as part of the closing by the Plaintiff. A true and correct copy of the August 2nd Correspondence is attached as Exhibit "C".

28.    Thereafter, on September 8, 2023, the Checklist was updated to acknowledge that both the SBG Management Lease and Jenkins Storage Lease were received, accepted, and provided certain post-closing requirements. A true and correct copy of the Updated Checklist is attached as Exhibit "D".

4

29.     The Plaintiff required the following post-closing requirements to the Jenkins Storage Lease to be resolved by amendment: (a) the rent does not match. The estoppel states it is $360,00000. The rent role states $276,000.00; (b) The termination dates do not match. The estoppel states April 1, 2029. The rent roll states March 1, 2029; (c) When will EASL be made available/ when will rent return to $360,000.00? – construction completion. *See* Exhibit "D".

30.     It is obvious that the Plaintiff received the Leases, reviewed the Leases extensively and required certain changes to the Leases.

31.     Additionally, as part of the closing, Plaintiff entered into Subordination, Nondisturbance and Attornment Agreements with Jenkins, SBG Management and Jenkins Storage (the "SDNAs"). The SDNAs were recorded and were both made effective as to August 25, 2023. True and correct copies of the SDNAs are attached hereto as Exhibit "E".

32.     The SDNAs both specifically state the following under Section 3. Attornment: "If the Landlord's interest is transferred to and owned by Lender or any success of Lender ("Acquiring Party") because of foreclosure or other proceedings brought by the Lender, or by any manner, and Acquiring Party succeeds to Landlords interest under the Lease, Tenant shall be bound to the Acquiring Party and Acquiring Party shall be bound to Tenant under all terms, covenants and conditions of the Lease for the balance of the remaining terms, including any extensions or renewals, with the same effect as if Acquiring Party were Landlord under the Lease." *See* Section 3 of Exhibit "E" (same for both Leases).

33.     Per the SDNAs, the Receiver is bound to the terms of the Leases.

34.     The Leases were negotiated prior to the loan closing with the Plaintiff and Plaintiff's counsel and Plaintiff had the opportunity to fully review, revise and modify the Leases prior to the Loan.

5

35.    Jenkins did not receive a single comment with regard to either the Notice or the Cure provisions of the Leases.

36.    Jenkins is neither an owner nor affiliate of either SBG Management or Jenkins Storage.

37.    Neither the Plaintiff nor the Receiver can unilaterally modify the Leases.

Philip Pulley as an authorized
Representative of Jenkins Court Realty Co.,
LP

6

# EXHIBIT "A"

Case 2:25-cv-00044-GAM    Document 34-3    Filed 06/16/25    Page 2 of 31
Case 2:25-cv-00044-GAM    Document 32-3    Filed 06/02/25    Page 2 of 31

FILE COPY

FILE COPY

# JENKINS COURT
## SBG MANAGEMENT SERVICES, INC.

### TABLE OF CONTENTS

ARTICLE                                                          PAGE

I       Grant and Term.....................................    2
II      Rent...............................................    3
III     Landlord's Work; Delivery of the Leased Premises...    4
IV      Intentionally Left Blank...........................    5
V       Conduct of Business by Tenant......................    5
VI      Operation and Maintenance of Common Areas..........    7
VII     Alterations and Signs..............................    9
VIII    Maintenance of Leased Premises.....................   11
IX      Taxes, Insurance and Indemnity.....................   12
X       Utility Charges....................................   16
XI      Estoppel Letter, Attornment and Subordination......   16
XII     Assignment and Subletting..........................   17
XIII    Waste..............................................   17
XIV     Advertising........................................   18
XV      Destruction of Leased Premises.....................   18
XVI     Eminent Domain.....................................   19
XVII    Default by Tenant..................................   20
XVIII   Access by Landlord.................................   22
XIX     Tenant's Property..................................   22
XX      Holding Over and Surrender of Leased Premises......   23
XXI     Rules and Regulations..............................   24
XXII    Quiet Enjoyment....................................   24
XXIII   Renewal Options....................................   25
XXIV    Environmental Matters..............................   25
XXV     Miscellaneous......................................   26

### EXHIBITS

Exhibit A - Landlord Scope Of Work

Effective:    11/1/2017

LEASE

THIS LEASE made as of this 1st day of November, 2017 by and between Jenkins Court Realty, Co. L.P., a Pennsylvania Limited Partnership, with an address at P.O. Box 549, Abington, PA 19001 ("Landlord"),and SBG Management Service, Inc., a Pennsylvania corporation with an address of P.O. Box 549, Abington, PA 19001.

ARTICLE I - GRANT AND TERM

Section 1.01    Leased Premises.

A.    Landlord, in consideration of the rent to be paid and the covenants to be performed by Tenant, does hereby demise and lease unto Tenant, and Tenant hereby rents from Landlord, those certain Third floor premises located at the Jenkins Court at 610 Old York Road, Jenkintown, PA 19046, Suite 375 containing 8000 approximately 8000 square feet of space (the "Leased Premises"). The leased premises are subject to change and conformation by Architect and Governmental Authority.

B.    The exterior walls and roof and the area beneath the Leased Premises are not demised hereunder and the use thereof, together with the right to install, maintain, use, repair and replace pipes, ducts, conduits, wires and structural and mechanical elements leading through the Leased Premises are hereby reserved unto Landlord provided that same does not interfere with Tenant's quiet enjoyment.

C.    Tenant acknowledges that the Leased Premises and the office building at Suite 375 Floor Third and Porition of Roof located at 610 Old York Road, Jenkintown, PA 19046 (the "Office Building"), the street or streets, sidewalks, parking areas, curbs and access ways adjoining them, any surface and sub-surface conditions thereof, and the present uses and proposed uses thereof, have been examined by Tenant, or Tenant has been afforded the right to do so, and, except as expressly herein otherwise provided, Tenant accepts them in the condition or state in which they are to be delivered to Tenant, without relying on any representation, covenant or warranty, express or implied by Landlord, except as herein expressly provided Tenant's acceptance of Leased Premises subject to Exhibit A and any other conditions that are not readily apparent upon inspection.

Section 1.02    Commencement/Rent Commencement Date and Ending Day

A.    The term of this Lease shall commence (the "Commencement Date/Rent Commencement Date") on the date Landlord delivers a fully executed copy of the lease to Tenant or their counsel. Tenant's obligation to pay Minimum Rent and all other charges (meaning such state of completion of Landlords Work as to allow Tenant to utilize the Leased Premises for Tenants intended use without interference by reason of final completion) required hereunder shall commence on the ninety day after Landlord delivers the leased premises to Tenant as stated herewith "Rent Commencement Date" February 1, 2018.

B.    Subject to Article XXIII, the term of this Lease shall expire January 30th, 2023 from and after the Rent Commencement Date (Initial Term), unless sooner terminated as hereinafter provided; provided, that if the term commences on a day other than the first day of a month, then the term shall be extended for such fractional month.

ARTICLE II - RENT

Section 2.01    Minimum Rent.

A.    The fixed minimum annual rental ("Minimum Rent") during the term of this Lease is as follows:

| | | | | |
|---|---|---|---|---|
| Year 1 | $ 80,000 | annually - $ | 6,666 | monthly |
| Year 2 | $ 96,000 | annually - $ | 8,000 | monthly |
| Year 3 | $ 104,000 | annually - $ | 8,666 | monthly |
| Year 4 | $ 112,000 | annually - $ | 9,333 | monthly |
| Year 5 | $ 120,000 | annually - $ | 10,000 | monthly |

Minimum Rent shall be payable by Tenant in equal consecutive monthly installments on or before the first day of each month, in advance, at the office of Landlord or such other place as Landlord may designate, without any prior demand therefor. In addition to the Minimum Rent, Tenant shall pay to Landlord all sales or commercial rental tax now or hereafter levied by any governmental body having jurisdiction over the Leased Premises.

B.    Should the Rent Commencement Date be other than the first day of a calendar month, and then the Minimum Rent for the first fractional month of the term shall be prorated upon a daily basis based upon a thirty (30) day calendar month.

Section 2.02    Additional Rent.    Tenant shall pay any and all sums of money or charges required to be paid by Tenant under this Lease promptly when the same are due. All such amounts or charges shall be payable to Landlord at the place where the Minimum Rent is payable and shall be deemed to be additional rent

hereunder.

Section 2.03  Cause and Effect.  If Minimum and Additional Rent is not received by Landlord by the fifth day of the month or post marked by the United States Postal Service by the fifth day of the month, then Tenant shall be considered in breach of this Agreement with all rights and remedies reserved for the benefit of the Landlord.

## ARTICLE III - LANDLORD'S WORK; DELIVERY OF THE LEASED PREMISES

Section 3.01  Landlord's Work.  The Landlord shall perform work as indicated on Exhibit A only at Landlord's sole cost and expense including, but not limited to cost and expense, to ensure that the work performed under Exhibit A are done in a professional workmanlike manner and comply with all applicable laws, regulations, ordinances and rules, including but not limited to the Americans with Disabilities Act and the accessibility guidelines issued there under.  In the event Landlord fails to make such alterations by the Rent Commencement Date, Tenant after written notice and 30 days to cure, shall have the option to make such alterations and deduct the reasonable costs of such alterations from the rent.

Section 3.02  Tenant's Work.  From and after the date of this Lease, Tenant shall install its trade fixtures and inventory ("Tenant's Work").  Tenant's activities shall be conducted so as not to unreasonably interfere operations at the Office Building. Tenant shall, at its expense, remove from the Leased Premises and from the Office Building, all trash that may accumulate in connection with Tenant's activities.  In connection with this work, Tenant shall perform all duties and obligations imposed by this Lease, including, without limitation, those provisions relating to insurance and indemnification, saving and excepting only the obligation to pay Minimum Rent and additional rent (other than any additional rent arising out of any failure of Tenant to perform its obligations under this Lease), which obligation shall commence on the Rent Commencement Date.

Section 3.03  Mechanic's Liens.  No work which Landlord permits Tenant to do pursuant to this Lease, whether in the nature of erection, construction, alteration or repair, shall be deemed to be for the immediate use and benefit of Landlord so that no mechanic's or other lien shall be allowed against the estate of Landlord by reason of any consent given by Landlord to Tenant to improve the Leased Premises.  In the event any mechanic's or other lien shall at any time be filed against the Leased Premises or the Shopping Center by reason of work, labor, services or materials performed or furnished, or alleged to be performed or furnished, to Tenant or to anyone holding the Leased Premises through or under Tenant (other than Landlord's Work), and Tenant shall fail to cause such lien to be discharged or bonded within twenty (20) days after

being notified of the filing thereof, then, in addition to any other right or remedy of Landlord, Landlord may discharge the same by paying the amount claimed to be due, and the amount so paid by Landlord including reasonable attorney's fees incurred by Landlord in procuring the discharge of such lien, together with Interest (as defined in Section 25.12) thereon, shall be due and payable by Tenant to Landlord.

Section 3.04    Tenant's Trade Fixtures.  All trade fixtures (as distinguished from leasehold improvements) and inventory owned by Tenant and installed in the Leased Premises shall remain the property of Tenant and shall be removable at any time, including upon the expiration of the term; provided, that Tenant shall not at such time be in default of any terms or covenants of this Lease; provided, further, that Tenant shall repair any damage to the Leased Premises caused by the removal of said fixtures.

Section 3.05    Changes and Additions to Office Building. Landlord reserves the right from time to time to construct other buildings or improvements by the Office Building, to make alterations thereof or additions thereto or subtractions therefrom, to build additional stories in any building or buildings in the Office Building, to build adjoining the same or to construct double-deck or elevated parking facilities, roads or other improvements, or to acquire additional property or properties which Landlord, at Landlord's sole election, may include within the Office Building as common areas (as hereinafter defined) or otherwise; provided, that such construction or activities resulting from such construction shall not unreasonably (a) interfere with Tenant's use of the Leased Premises, (b) block visibility of the Leased Premises from Huntingdon Pike. (c) Permanently interfere with access to the Leased Premises from Fox Road, or (d) interfere with Tenant's quiet enjoyment of the Leased Premises.

ARTICLE IV -

Intentionally left blank

ARTICLE V - CONDUCT OF BUSINESS BY TENANT

Section 5.01    Use of Premises.  Tenant shall use and occupy the Leased Premises during the term of this Lease solely for the purpose of conducting the business of a   Real Estate and Construction Office or general office use, and for no other purpose or purposes without the prior written consent of Landlord, which consent shall not be unreasonably withheld and in compliance with governmental authority.  Tenant may not use the Leased Premises for any use, which violates any other Tenants use restriction, restrictive covenants or non-compete agreements.

In its use of the Leased Premises, Tenant agrees to comply with the following requirements:

(a)  No truck, trailer or vehicles shall be left overnight in the Common Areas.

(b)  No trucks shall be left idling more than 5 minutes at a time.

(c)  Adjacent to:  No trash, debris, pallets, boxes or the like shall be stored behind the Leased Premises or common acres, other than in the dumpsters and compactors servicing the Leased Premises.

(d)  No dumpster, grease receptors or compactor servicing the Leased Premises will be picked up, emptied or otherwise serviced between 1:00 a.m. and 4:00 a.m.

(e)  Dumpster and compactor lids shall be secured at all times.

(f)  Employees shall park in the employee designated parking areas only.

(g)  Comply with the rules of all governmental agencies.

(h)  All sound shall remain within the Leased Premise.

Section 5.02    Operation of Business.  Tenant agrees to operate one hundred percent (100%) of the Leased Premises during the entire term of this Lease, unless prevented from doing so because of fire, accident, or acts of God, and to conduct its business at all times in a high class and reputable manner. Tenant shall promptly comply with all laws and ordinances and lawful orders and regulations affecting the Leased Premises and the cleanliness, safety, occupancy and use of same.  No auction, liquidation, going out of business, fire or bankruptcy sales may be conducted in the Leased Premises without the prior consent of Landlord.  Tenant agrees that it will conduct its business in the Leased Premises in a lawful manner and in good faith, and will not do any act tending to injure the reputation of the Office Building or the name or logo of the Office Building in its advertising.

Section 5.03    Care of Premises.  Tenant shall keep the Leased Premises (including the service areas adjacent thereto, windows and signs) orderly, neat, safe and clean and free from rubbish and dirt at all times and shall store all trash and garbage within the Leased Premises and arrange for the regular pick up by a private contractor of all trash, garbage and hazardous material at any time generated at or from Leased Premises.

## ARTICLE VI - OPERATION AND MAINTENANCE OF COMMON AREAS

Section 6.01    Construction of Common Areas. Landlord agrees to cause to be operated, managed and maintained during the term of this Lease all parking areas, driveways, sidewalks, landscaping, roads, access roads, and common area lighting facilities in the Office Building and adjoining areas, which are owned by Landlord. The manner in which such areas and facilities shall be maintained and operated and the expenditures therefor shall be performed in a manner at the reasonable discretion and under the absolute control of Landlord and the use of such areas and facilities shall be subject to such reasonable rules and regulations as Landlord shall make from time to time.  Landlord shall give Tenant at least thirty (30)days prior written notice of the effective date of any new rules or regulations.  All such rules and regulations shall be uniformly applied as to all tenants within the Office Building and shall not conflict with any provision of this Lease, decrease any rights of Tenant hereunder, or increase any obligation or liability to Tenant.

Section 6.02    Tenant's Proportionate Share of Common Area Expenses.

### Included in Rent

A.    Tenant agrees to pay Landlord, as additional rent, in the manner and on the dates hereinafter provided, Tenant's Proportionate Share (as hereinafter defined) of all reasonable costs and expenses of every kind and nature paid or incurred by Landlord in operating, equipping, insuring, policing and protecting, lighting, repairing, replacing and maintaining the common areas of the Office Building, including the Leased Premises. Such costs and expenses shall include, but not be limited to: illumination and maintenance of Office Building signs; cleaning, lighting, line painting, patch paving, snow removal, and landscaping; supplies, monthly termite and pest extermination services of the Office Building; the costs of all types of insurance coverage's reasonably carried by Landlord covering the common areas, including, without limitation public liability, personal and bodily injury and property damage liability and courier automobile coverage, rent insurance, fire and extended coverage, vandalism and malicious mischief and all broad form coverage's, sign insurance and any other insurance that may be carried by Landlord covering the Office Building all in limits and with deductibles selected by Landlord; maintenance, repair and replacement utility lines, pipes and conduits; and an amount equal to fifteen percent (15%) of the total of all the foregoing costs and expenses to cover Landlord's administrative costs (collectively, "Costs") as determined in Section B Proportionate Share.  The aforesaid costs shall not include expansion of the existing Office Building or Parking areas, replacement of the roof or other items customarily referred to as "capital improvements" and amortized over a period of time in excess of 5 years, interest

on encumbrances; income taxes; commissions paid to independent brokers; or costs of painting and decorating for individual tenants; or bookkeeping, accounting or other fees related to management of the property.

B.    "Proportionate Share" shall be computed utilizing a fraction, the numerator of which shall be the number of square feet of leaseable floor area in the Leased Premises and the denominator of which shall be the number of leaseable square feet of floor area in the Office Building. Tenant's Proportionate Share shall be equal to   1%  . In no event shall Tenant pay more than  $100   per month in Year 1 and a   1%   compounded annual increase along with the  $100   paid monthly in all other Years of the Lease. All sums shall be paid monthly.

C.    Tenant's Proportionate Share of Costs shall be paid by Tenant in monthly installments in such amounts as are estimated and billed by Landlord at the beginning of each Lease Year, each installment being due on the first day of each month.  Within one hundred twenty (120) days after the end of each Lease Year, Landlord shall deliver to Tenant a statement of Landlord's actual operating costs for such Lease Year and Landlord or Tenant shall, within thirty (30) days after delivery of such statement, pay to the other any overpayment or underpayment, as the case may be. Failure of Landlord to provide the statement called for hereunder within the time prescribed shall not relieve Tenant of its obligations hereunder.    Tenant shall be allowed access to Landlord's records upon request within fifteen (15) days of receipt of a statement from Landlord.

Section 6.03    Use of Common Areas.  The term "common area", as used in the Lease, shall mean the parking areas, roadways, pedestrian sidewalks, driveways, loading docks, delivery areas, access roads, signage, landscaped areas, and all other areas or improvements which may be provided by the Landlord for the convenience and use of all tenants of the Office Building, and their respective sub-tenants, agents, employees, customers, invitees and any other licensees of Landlord.  The use and occupancy by Tenant of the Leased Premises shall include the use, in common with all others to whom Landlord has granted or may hereafter grant rights to use the same, of the common areas of the Office Building, and of such other facilities as may be designated from time to time, subject, however, to reasonable rules and regulations for the use thereof as prescribed from time to time by the Landlord.  Landlord shall maintain all such common areas in a good, clean and safe condition. If Tenant has knowledge of any part of the common areas which are not in a good, clean and safe condition, then Tenant shall have the responsibility to immediately notify the Landlord.

Section 6.04.    Tenant and its employees shall park their vehicle only in areas specifically designated from time to time by Landlord for that purpose.    Automobile license numbers of

employees' vehicle permanently assigned to the Leased Premises shall be furnished to Landlord upon Landlord's written request. Employees who do not park within designated employee parking may, at landlord's sole option, tow these vehicles away at the vehicle owner's expense and risk, after two hours from the time Landlord notifies Tenant of such parking violation. Any vehicles left overnight maybe towed without notice upon the same conditions as above.

Section 6.05.    Landlord may, in its reasonable judgment, at any time close temporarily or permanently any common area to make repairs or changes, to prevent the acquisition of public rights in such area or to discourage non-customer parking; and may do such other acts in and to the common areas as in its reasonable judgment may be desirable to improve the convenience to the Tenants and their invitees thereof.    Notwithstanding the foregoing, Landlord shall not permanently interfere with the visibility of the building or  the Leased Premises nor permanently impede the ingress and egress to the Premises directly from Old York Road , nor decreases the amount of parking spaces servicing the Leased Premises or reduced by more than 75% the available 500  parking spaces servicing the Office Building.

ARTICLE VII - ALTERATIONS AND SIGNS

Section 7.01    Installation by Tenant.  Other than Tenant's Work, Tenant shall not make or cause to be made any alterations, additions or improvements to the Leased Premises, or install or cause to be installed any exterior signs, floor coverings, interior or exterior lighting, plumbing fixtures, shades, canopies or awnings or make any changes to the store front, mechanical, electrical or sprinkler systems without the prior approval of Landlord, which consent shall not be unreasonably withheld, delayed or conditioned.  If the cost of any such work exceeds $10,000.00 or if such work affects structural elements or any electrical or mechanical systems within the Leased Premises, Tenant shall present to Landlord plans and specifications for such work at the time approval is sought.

Section 7.02 Removal by Tenant.  All alterations, decorations, additions and improvements made by Tenant shall be deemed to have attached to the Leased Premises and to have become the property of Landlord upon such attachment, and upon the expiration or earlier termination of this Lease, Tenant shall not remove any such alterations, decorations, additions and improvements, except that trade fixtures installed by Tenant may be removed if all rents due hereunder are paid in full and Tenant is not otherwise in default hereunder; provided, that Landlord may designate in its consent to Tenant those alterations and additions which shall be removed by Tenant at the expiration or termination of this Lease and Tenant shall promptly remove the same and repair any damage to the Leased Premises caused by such removal. Does not apply to any medical or dental fixture or equipment.

Section 7.03  Tenant's Signs.  Tenant will not place or cause to be placed or maintained any sign or advertising matter of any kind anywhere within the Office Building, except in locations in the interior of the Leased Premises which, if visible from outside the Leased Premises must comply with all governmental laws and regulations.  Tenant's exterior sign shall consist of channel or individual letters utilizing the standard logo and colors and shall be subject to the reasonable approval of Landlord, which shall not be unreasonably withheld, conditioned or delayed, and of all applicable governmental authorities.  No change, alteration, or modification of said sign shall be undertaken without Landlord's prior approval.  No symbol, design, name, mark or insignia adopted by the Landlord for the Office Building shall be used without the prior consent of Landlord.  All signs located in the interior of the Leased Premises which are visible by the public or exterior of the Office Building, shall be in good taste so as not to detract from the general appearance of the Leased Premises and the Office Building.  Tenant further agrees to maintain, in good condition and repair at all times, any such sign or advertising matter of any kind which has been approved by Landlord for use by Tenant. All signs shall be at Tenants sole cost and expense.

A.    Office Building Facade. Tenant may not place upon the façade any signage.

Section 7.04  Signage.  All signage shall comply with all governmental regulations and applicable variances and zoning approvals.

Section 7.05  Construction Requirements.

A.    Tenant shall not, in the course of any work, interfere with, hamper, or cause any inconvenience to the use and occupation or the ingress and egress to, in, or from the Office Building or parking lot.

B.    Landlord shall have the right to inspect Tenant's construction work from time to time at Landlord's discretion.

C.    Landlord shall have no responsibility or liability for the adequacy of Tenant's plans and specifications or for the performance of Tenant's work or for the payment of the costs and expenses incurred by Tenant in connection therewith.

D.    Prior to commencement of construction or delivery's, Tenant shall procure and maintain in effect a full coverage all risk policy of casualty insurance with builders risk coverage insuring the Tenant's improvement in Leased Premises and Tenant's work for the full insurable value thereof with general liability coverage of not less than $1,000,000.00.  Such policy shall name Landlord, Landlord mortgagor, as an additional insured.

Case 2:25-cv-00044-GAM   Document 32-3   Filed 06/02/25   Page 13 of 31

E.   All contractors and subcontractors shall procure and maintain liability insurance and workmen's compensation insurance during the period of construction in standard amounts. Such certificates shall name Landlord and Landlord's mortgagor, as additional insured.

F.   The cost of permits and approvals for all Tenant work, furniture, fixtures and equipment is the responsibility of Tenant.

ARTICLE VIII - MAINTENANCE OF LEASED PREMISES

Section 8.01   Landlord's Obligations for Maintenance. Landlord shall keep and maintain the foundation, exterior walls and roof of the building in which the Leased Premises are located and the structural portions of the Leased Premises, including doors, door frames, door checks, locks, door glass, windows, and including of window frames located in exterior building walls, in good repair, except that Landlord shall not be called upon to make such repairs occasioned by the gross negligence of Tenant, its customers, clients, patients, agents, employees, licensees or contractors, except to the extent that Landlord may be reimbursed therefor under any policy of insurance permitting waiver of subrogation in advance of loss.   Landlord shall not be called upon to make any other improvements or repairs of any kind upon said premises, unless as a result of Landlord's failure to comply with its obligations hereunder.

Section 8.02   Maintenance.

A.   Subject to Section 8.01, Tenant shall keep and maintain in good order, condition and repair (including replacement of parts and equipment if necessary) the Leased Premises and every part thereof, excluding, without limitation, the exterior and interior portion of all doors, door checks, locks, windows, blinds, curtains, hanging display fixtures, plate glass, office front, all plumbing and sewage facilities within the Leased Premises, fixtures, heating and air conditioning and electrical systems, (whether or not located in the Leased Premises), sprinkler system, fire alarm systems, fire extinguishers, the internal portion of walls, the internal portion of floors, and the internal portion of ceilings.

B.   Tenant shall keep and maintain the Leased Premises in a clean, sanitary and safe condition in accordance with applicable laws and all directions, rules and regulations of the health officer, fire marshal, building inspector, or other proper officials of the governmental agencies having jurisdiction, at the sole cost and expense of Tenant, and Tenant shall comply with all requirements of law, ordinance or otherwise, affecting the Leased Premises. If Tenant refuses or neglects to commence and to complete repairs promptly and adequately, Landlord may, at its option, after 5 days written notice to Tenant thereof, make and complete said repairs and Tenant shall pay the cost thereof to Landlord upon

Appx1240

demand, together with Interest thereon. At the expiration or earlier termination of this Lease, Tenant shall surrender the Leased Premises in good condition, reasonable wear and tear, loss by fire or other unavoidable casualty excepted. Nothing contained herein is intended to alter the delineation of responsibilities set forth in subparagraphs A & B above.

C.    Prior to commencing any work, Tenant shall record a lien waiver from each contractor in the county in which the Office Building is located. Tenant shall reimburse Landlord for any and all costs and expenses which may be incurred by Landlord by reason of the filing of any such liens and/or the removal of same, together with Interest thereon, such reimbursements to be made within thirty (30) days after the receipt by Tenant from Landlord of a statement setting forth the amount or such costs and expenses. The aforesaid waiver shall not be applicable for decorating work or signage.

D.    Landlord, at its own expense, shall install and maintain fire extinguishers and other fire protection or life safety devices as may be required from time to time by any governmental body having jurisdiction over the Leased Premises and the insurance underwriters insuring the building in which the Leased Premises are located.

E.    Landlord is responsible for all janitorial and extermination services within the Leased Premises.

F.    Landlord shall provide extermination service as part of common area maintenance except that if infestation shall occur in the Leased Premises. Tenant shall reimburse Landlord the cost of such extermination.   Bed Bugs, Lice and Fleas are Tenant responsibility.

G.    Tenant may bag ordinary trash and leave inside Leased Premises for removal by Landlord.  This does not include medical or hazardous waste.

ARTICLE IX - TAXES, INSURANCE AND INDEMNITY

Section 9.01   Tenant's Tax Obligation.

Included in Rent.

A.    Tenant shall be liable for, and shall pay, all taxes levied against personal property and trade fixtures placed by Tenant in or about the Leased Premises, including without limitation, shelves, counters, vaults, wall safes, fixtures, machinery, refrigerators, heating, ventilating and air conditioning equipment. If any such taxes are levied against Landlord or Landlord's property, and if Landlord pays same, or if the assessed value of the Office Building is increased by the inclusion therein of the value placed on such property, and the Landlord makes

payment, based on such increased assessment, Tenant shall repay to Landlord the taxes so paid by Landlord or the proportion of such resulting from such increase in assessment, within thirty (30) days after request, exclusive of any interest, fines or penalties incurred by Landlord except for those incurred directly from Tenant's negligence or nonpayment.

B.    Tenant shall pay for each Lease Year its Proportionate Share of all ad valorem and real estate taxes and assessments levied or assessed by any lawful authority against all of the land, buildings and all other improvements and betterments which now or hereafter become a part of the Office Building (collectively "Taxes"). Nothing herein contained shall be construed to include within the term "Taxes" any inheritance, estate, succession, transfer, gift, franchise, corporation or income taxes that are or may be imposed upon Landlord; provided, that if at any time prior to or during the term the methods of taxation prevailing at the date of this Lease shall be altered so that in addition to, in lieu of or as a substitute for, the whole or any part of the Taxes now levied, assessed or imposed on real estate as such there shall be levied, assessed or imposed (i) a tax on or measured by the rentals received from such real estate, or (ii) a tax or license fee imposed upon Landlord which is otherwise measured by or based in whole or in part upon the Office Building, any portion thereof or the value thereof, then the same shall be included in the computation of Taxes, but only in such amounts as would be payable by Landlord if the Office Building were the only property of Landlord subject to such taxes or fees. Landlord shall estimate the Taxes annually and Tenant shall pay one-twelfth (1/12) of its Proportionate Share thereof monthly in advance, together with its payments of Minimum Rent. After the end of each Lease Year, Landlord shall furnish Tenant a statement of the actual Taxes, and there shall be an adjustment between Landlord and Tenant, with payment to or repayment by Landlord, as the case may require, to the end that Landlord shall receive the entire amount of Tenant's Proportionate Share of Taxes for such period, or at Landlord's option, any overpayment by Tenant shall be credited on account of the next succeeding payment(s) by Tenant of such Taxes.

C.    Should any governmental authority require that a tax, other than the Taxes, be paid by Tenant but collected by Landlord, for and on behalf of such governmental authority, and from time to time forwarded by Landlord to said governmental authority, the same shall be paid by Tenant to Landlord as set forth in Section 9.01 A and B, and be collectible by Landlord, and the payment thereof enforced in the same manner as is provided for the enforcement of payment of additional rent hereunder, and the same shall be payable monthly, as set forth in Section 9.01 A and B.

D.    Landlord shall have the absolute and unrestricted right, but not the obligation, to contest the validity or amount of any Taxes by appropriate proceedings. If Landlord shall institute any such contest, it shall have the sole, absolute and unrestricted

right to settle any such contest, proceeding or action upon whatever terms Landlord may, in its sole reasonable discretion, determine. If Landlord shall receive any refund of such Taxes (and provided Tenant is not then in default of any of the terms of this Lease) Landlord shall credit such proportion of such refund as shall be allocable to the payments of Taxes actually made by Tenant (less all costs, expenses and attorney's fees incurred in connection with such contest) against the next succeeding payment of Taxes due from Tenant for the proceeding period.

Section 9.02    Liability Insurance. Tenant shall, during the term hereof, keep in full force and effect, a policy of public liability and property damage insurance with respect to the Leased Premises and the business operated by Tenant and any subtenants of Tenant in the Leased Premises, in which the limits of public liability shall be not less than $1,000,000.00 combined single limit. The policy shall name Landlord and shall contain a clause that the insurer will not cancel or change the insurance without first giving Landlord thirty (30) days prior written notice. Such insurance may be furnished by Tenant under any blanket policy carried by it or under a separate policy thereof. The insurance shall be with an insurance company with an "A" rating or better and licensed to do business in the state in which the Leased Premises is located. A copy of the paid-up policy evidencing such insurance or a certificate of insurer certifying to the issuance of such policy shall be delivered to Landlord prior to entrance by Tenant upon the Leased Premises.

Section 9.03    Other Insurance.

A.    Tenant shall carry, at its expense, insurance against fire, vandalism, malicious mischief, personal injury, theft, business interruption and such other perils as are from time to time included in a standard extended coverage endorsement, insuring Tenant's merchandise, employees, guests, visitors, invitees, contractors, sub-contractors, trade fixtures, furnishings, equipment and all other items of personal property of Tenant located on or within the Leased Premises.

B.    Tenant shall not carry any stock or goods, or do anything in or about the Leased Premises, which will in any way tend to increase the insurance rates on the Leased Premises and/or the building of which they are a part.

C.    If Tenant installs any equipment that overloads the lines, system or structure in the Leased Premises, or common areas Tenant shall, at its own expense, make whatever changes are necessary to comply with the requirements of the insurance underwriters, Landlord, engineers and governmental authorities having jurisdiction.

Section 9.04    Covenant to Hold Harmless. Tenant shall indemnify, defend and save Landlord harmless from and against any

Case 2:25-cv-00044-GAM    Document 32-3    Filed 06/02/25    Page 17 of 31

and all claims, actions, damages, liability, injuries and expense in connection with loss of life, personal injury and/or damage to property arising from Tenant's use and occupancy of the Leased Premises, other than that resulting from the gross negligence or intentional act of Landlord or its breach of the terms of this Lease Agreement. In case Landlord shall, without fault on its part (as defined as negligence, intentional act or breach), be made a party to any litigation commenced by or against Tenant, Tenant shall protect and hold harmless and shall pay all costs, expenses and reasonable attorney fees incurred or paid by Landlord in connection with such litigation. Similarly, Landlord shall indemnify and save Tenant harmless from and against any and all claims, actions, damages, liability and expense in connection with loss of life, personal injury and/or damage to property arising from Landlord's negligence or intentional act or its breach of the terms of this Lease Agreement. In case Tenant shall, without fault on its own part (as defined as Tenant's own negligence, intentional act or breach of the Lease Agreement), be made a party to any litigation commenced by or against Landlord, Landlord shall protect and hold harmless and shall pay all costs, expenses, and reasonable attorney fees incurred or paid by Tenant in connection with such litigation.

Tenant shall give Landlord prompt notice of any claims asserted. Landlord shall have a choice of the right to defend, selection of counsel and course of defense.

Tenant agrees to reimburse Landlord the cost of all insurance deductibles and attorney fees.

Section 9.05 Landlord's Insurance. Included in Rent. From the Effective Date and continuing throughout the Term and any Extensions, Landlord shall maintain the following insurance on the Office Building including the common areas, parking areas, walkways, and driveways, naming Tenant as an additional insured: (I) commercial general liability and property damage insurance in the amount of not less than $1,000,000.00 for death or bodily injury or property damage of any one person and $1,000,000.00 for any one occurrence, (ii) fire and extended coverage insurance in an amount equal to the full replacement cost of any improvements located on the Office Building (excluding the improvements to the Leased Premises made by Tenant) established by agreed amount endorsement by Tenant, Landlord and the insurer, (iii) if applicable, workers' compensation insurance in statutory amounts, and (iv) contractual liability insurance. Upon notice from Tenant, Landlord, its agents and contractors shall deliver to Tenant a certificate from its insurer declaring such insurance to be in full force and effect. The insurance shall be with an insurance carrier with an "A" rating or better and licensed to do business in the state in which the Leased Premises is located and shall contain a clause that the insurer will not cancel or change the insurance without fist giving Tenant thirty (30) days prior written notice.

Case 2:25-cv-00044-GAM    Document 32-3    Filed 06/02/25    Page 18 of 31

Landlord shall give Tenant prompt notice of any claims asserted. Tenant shall have a choice of the right to defend, selection of counsel and course of defense. If Landlord's insurance carrier shall offer defense, then selection and course of defense shall be dictated by insurance carrier.

## ARTICLE X - UTILITY CHARGES

Section 10.01 Utility Charges. Landlord shall be solely responsible for and promptly pay all charges for gas, heat, electricity, water, sewer, trash and any other utility used upon or furnished to the Leased Premises and common areas. Utility deposits shall be the sole responsibility of Landlord.

Landlord is responsible for all Waste Generation Fees as imposed by The Waste System Authority of Eastern Montgomery County.

Landlord dumpster shall be located in the dumpster coral or as defined by site plan.

Tenant is responsible for disposal of all medical & hazardous waste.

## ARTICLE XI - ESTOPPEL LETTER, ATTORNMENT AND SUBORDINATION

Section 11.01 Estoppel Letter. Tenant agrees, within thirty (30) days after written request therefor by Landlord, to execute in the form provided a recordable form and deliver to Landlord a statement, in writing, certifying (a) that this Lease is in full force and effect, (b) the Commencement Date and the Rent Commencement Date, (c) that all rent is paid currently without any off-set or defense thereto, (d) the amount of rent, if any, paid in advance, (e) the amount of any security deposit held by Landlord hereunder, and (f) that there are no uncured defaults by Landlord or stating those claimed by Tenant; provided, that in fact such facts are accurate and ascertainable or stating any inaccuracies.

Section 11.02 Attornment. Tenant shall, in the event any proceedings are brought for the foreclosure of or in the event of exercise of the power of sale under any mortgage covering the Leased Premises, attorn to the purchaser upon any such foreclosure or sale and recognize such purchaser as the Landlord under this Lease, all at the option of such purchaser.

Section 11.03 Subordination. Tenant agrees that this Lease shall be subordinate to all mortgages that may affect the Office Building and to any and all advances to be made there under, and to the Interest thereon, and all renewals, replacements and extensions thereof; provided, that the holder(s) of such mortgages shall enter into a non-disturbance agreement with Tenant. Tenant also agrees that any mortgagor may elect to have this Lease as a prior encumbrance to its mortgage or deed of trust, and in the event of such election and upon notification by such mortgagor or trustee to

Tenant to such effect, this Lease shall be deemed prior in lien to said mortgage or deed of trust, whether this Lease is dated prior to or subsequent to the date of said mortgage or deed of trust. Tenant agrees that upon the request of Landlord or any mortgagor, it shall execute whatever instruments may be reasonably required to further the intent of this Section 11.03 and Section 11.02.

## ARTICLE XII - ASSIGNMENT AND SUBLETTING

Section 12.01 (a)  Consent Required.  Tenant agrees not to assign or in any manner transfer this Lease or any estate or Interest herein without the prior consent of Landlord, and not to sublet the Leased Premises or any part or parts thereof or allow any one to come in with, through or under it without like consent, which consent shall not be unreasonably withheld.  Notwithstanding the foregoing, Tenant may assign this Lease or sublet the Leased Premises to a person or entity acquiring the Tenant or stock of Tenant or any entity related or affiliated with Temple University of the Commonwealth System of Higher Education at Temple University Health System, Inc., provided it does not violate any other Tenant use restriction, restrictive covenant on non compete agreement without the prior consent of Landlord, provided Landlord is given sixty (60) days prior notice of such proposed assignment or transfer and Tenant demonstrates to Landlord's reasonable satisfaction that the proposed assignee or subtenant has a net worth in excess of $2 million.  If Tenant is a corporation, the issuance or transfer of any shares of stock of said corporation other than by public offering which results in a change in the ownership of (i) the voting control and/or (ii) the majority of the issued and outstanding stock of said corporation, as compared with such ownership on the date of this Lease, shall be deemed to be an assignment as set forth in the preceding sentence not receiving Landlord's consent.  Consent by Landlord to one or more assignments of this Lease or to one or more subletting of the Leased Premises shall not operate to exhaust Landlord's rights under this Article XII.  If Tenant, with or without the previous consent of Landlord, does assign or in any manner transfers this Lease or any estate or Interest herein, Tenant shall in no way be released from any of its obligations under this Lease.

## ARTICLE XIII - WASTE

Section 13.01  Waste or Nuisance.  Tenant shall not commit or suffer to be committed any waste upon the Leased Premises or any nuisance or other act or thing which may disturb the quiet enjoyment of any other tenant in the Office Building.  Tenant shall not use, or permit to be used, any medium that might constitute a nuisance, such as loud speakers, sound amplifiers, phonographs, radios, televisions, or any other sound-producing device which will carry sound outside the Leased Premises.

## ARTICLE XIV - ADVERTISING

Section 14.01 <u>Solicitation of Business</u>. Tenant and Tenant's employees and agents shall not solicit business in the parking lot or other common areas, nor shall Tenant distribute any handbills or other advertising matter in the parking area or in other common areas.

## ARTICLE XV - DESTRUCTION OF LEASED PREMISES

Section 15.01 <u>Reconstruction of Damaged Premises</u>. In the event the Leased Premises shall be partially or totally destroyed by fire or other casualty insured against under the insurance carried by Landlord pursuant to this Lease so as to become partially or totally untenantable, the damage to the Leased Premises shall be repaired by Landlord, unless Landlord or Tenant shall elect to terminate this Lease as hereinafter provided, and a the Minimum Rent and additional rent shall be abated from the date of the casualty until rebuilding is substantially complete meaning such state of completion as to allow Tenant to perform its usual and customary function without interference. The obligation of Landlord hereunder shall be limited to reconstructing the Leased Premises in accordance with the specifications attached hereto as <u>Exhibit B</u> and shall be further limited to the insurance proceeds paid to Landlord respecting the casualty in question. In no event shall Landlord be required to repair or replace Tenant's merchandise, trade fixtures, furnishings or equipment. If, during the last two (2) years of the term hereof, as the same may have been extended previously, more than twenty-five percent (25%) of the Leased Premises or Office Building shall be damaged or destroyed by fire or other casualty, then either Landlord or Tenant may by notice to the other given within 45 days after the date of the casualty, elect to terminate this Lease effective as of the date of the casualty. If Landlord is required to repair or rebuild the Leased Premises as herein provided, Tenant shall repair or replace its merchandise, trade fixtures, furnishings and equipment in a manner and to at least a condition equal to that prior to its damage or destruction. Anything else herein to the contrary notwithstanding, upon report of casualty, Landlord shall have an engineering report performed by a reputable company which regularly performs casualty assessments, based upon the report, in the event of any damage or destruction to the Leased Premises by fire or other casualty wherein such damage or destruction is not substantially repaired with 120 days after Landlord's receipt of insurance proceeds with respect to such damage or destruction, but in no event later than one hundred eighty (180) days following such casualty, Tenant may, upon 30 days' notice to Landlord, terminate this Lease, unless the Leased Premises shall be substantially repaired during such 30-day period.

Section 15.02 <u>Waiver of Subrogation</u>. Each party hereto does remise, release and discharge the other party hereto and any officer, agent, employee or representative of such party, of and

from any liability whatsoever hereafter arising from loss, damage or injury caused by fire or other casualty for which insurance (permitting waiver of liability and containing a waiver of subrogation) is carried by the injured party at the time of such loss, (or is required to be carried pursuant to this Lease). Each party shall obtain such a waiver in all appropriate policies carried by it, if available without additional charge.

ARTICLE XVI - EMINENT DOMAIN

Section 16.01  Total Condemnation of Leased Premises.  If the whole of the Leased Premises shall be taken by any public authority under the power of eminent domain, or by deed in lieu thereof, the term of this Lease shall cease as of the day possession shall be taken by such public authority and all rent shall be paid up to that day with a proportionate refund by Landlord of any rent as may have been paid in advance for a period subsequent to the date of taking.

Section 16.02  Partial Condemnation.  If more than twenty-five percent (25%) of the Leased Premises or more than twenty-five percent (25%) of the common areas shall be taken under eminent domain, or by deed in lieu thereof, Landlord and Tenant shall each have the right to terminate this Lease and declare the same null and void, by notice of such intention to the other party within thirty (30) days after such taking.  In the event neither party exercises said right of termination, the term shall cease only as to the part of the Leased Premises so taken as of the day of possession of such public authority and Tenant shall pay rent respecting such part up to such day, with appropriate refund by Landlord of any rent as may have been paid in advance for a period subsequent to the date of taking, and thereafter all the terms herein provided shall continue in effect, except that the Minimum Rent and Tenant's Proportionate Share shall be reduced in proportion to the amount of any of the Leased Premises taken, and Landlord shall, at its own cost and expense, make all necessary repairs or alterations to the Leased Premises as originally installed by Landlord, so as to constitute the remaining Leased Premises a complete architectural unit, limited, however, as to cost, to the amount of the award received by Landlord on account of such taking.

Section 16.03  Awards.  With respect to any taking by a public authority under the power of eminent domain, or by deed in lieu thereof, Tenant shall be entitled to bring a claim against the condemning authority for a separate award to compensate Tenant for damage to its trade fixtures and inventory, Tenant's business relocation costs and the like; provided, that in no event shall Tenant be entitled to compensation for the loss of its leasehold.

Section 16.04  Notice of Condemnation.  Landlord shall promptly give Tenant written notice of and condemnation proceedings affecting the Leased Premises or the Office Building.

ARTICLE XVII - DEFAULT BY TENANT

Section 17.01 Default. Tenant shall be in default hereunder if (a) Tenant fails to pay, when due, Minimum Rent, Additional Rent or any other sums due under this Lease and such default shall continue for more than one thousand (1000) days after written notice from Landlord to Tenant; or (b) Tenant fails to observe and perform any of the other terms, covenants and/or conditions of this Lease and such default shall continue for more than one thousand (1000) days after written notice from Landlord to Tenant; or (c) Tenant fails to pay when due the Minimum Rent, Additional Rent or any other sums payable under this Lease sixty (60) or more times in a period of sixty (60) consecutive months; or (d) the Leased Premises shall be abandoned, deserted or vacated, or if Tenant fails to take possession of the Leased Premises and initially open for business to the public as required hereunder. If the nature of a default under Section 17.01(b) is such that it cannot reasonably be cured within the aforesaid cure period, and work thereon shall be commenced within said period and diligently prosecuted to completion, then Landlord's rights under Section 17.02 with respect to such default only shall be inapplicable. The Leased Premises and all trade fixtures, equipment and inventory therein shall be conclusively deemed abandoned by Tenant upon (a) three hundred sixty five (365) consecutive days absence from the Leased Premises, together with the failure to pay Minimum Rent, Additional Rent or (b) removal of all or a substantial portion of Tenant's trade fixtures, equipment or inventory from the Leased Premises, together with a failure to pay Minimum Rent. In either such event and in addition to Landlord's remedies set forth in Section 17.02, Landlord may enter the Leased Premises and may remove all remaining trade fixtures, equipment and inventory at Tenant's expense. All such property shall, at Landlord's option, become the property of Landlord, or said property may be placed in storage at Tenant's cost and expense, or sold or otherwise disposed of, in which event the proceeds of such sale or other disposition shall belong to Landlord.

Section 17.02 Rights Upon Default.

A.    In the event of a default by Landlord, Tenant shall after notice to Landlord and 365 days in which to cure; (1) cure the Landlord's default at Landlord's costs and expense, and/or (2) cure the default at Tenant's cost and expense and withhold such amount from the Additional Rent, Proportion Payments or Minimum Rent.

B.    In the event of a breach by Landlord, Tenant shall after notice to Landlord and 30 days to cure, may in addition to any other remedies have the right to invoke any remedy allowed in law or equity to enforce Landlord's rights.

Section 17.03  Non-Waiver Provisions.

A.    The failure of Landlord or Tenant to insist upon a strict performance of any of the terms, conditions or covenants herein shall not be deemed to be a waiver of any rights or remedies that Landlord or Tenant may have and shall not be deemed a waiver of any subsequent breach or default in the terms, conditions and covenants herein contained, except as may be expressly waived in writing.

B.    The maintenance of any action or proceeding to recover possession of the Leased Premises, or any installment or installments of rent or any other monies that may be due or become due from Tenant to Landlord, shall not preclude Landlord from thereafter instituting and maintaining subsequent actions or proceedings for the recovery of possession of the Leased Premises or of any other monies that may be due or become due from Tenant. Any entry or re-entry by Landlord shall not be deemed to absolve or discharge Tenant from liability hereunder.

Section 17.04  Landlord's/Tenant's    Expenses.    If Landlord/Tenant shall at any time be in default hereunder, and if Landlord/Tenant shall deem it necessary to engage attorneys to enforce Landlord's/Tenant's rights hereunder, the determination of such necessity to be in the sole reasonable discretion of Landlord/Tenant. The Tenant shall be reimbursed for the reasonable costs incurred thereby, including but not limited to court costs, administrative expenes and reasonable attorney's fees, both at trial and on appeal in said litigation or meditation.

## ARTICLE XVIII - ACCESS BY LANDLORD

Section 18.01  Right of Entry.  Landlord or Landlord's agent shall not have the right to enter the Leased Premises at any times, upon prior notice to, and accompanied (except where imminent danger to person or property is threatened) by, Tenant to examine the same and to show them to prospective purchasers or mortgagors respecting the Office Building, and to make such repairs, alterations, improvements or additions as Landlord may deem necessary or desirable (without unreasonably disrupting Tenant's business and using its best effort to minimize such disruption) and Landlord shall be allowed to take all material into and upon the Leased Premises that may be required therefor without the same constituting an eviction of Tenant in whole or in part, and the rent reserved shall in no way abate while said repairs, alterations, improvements or additions are being made, by reason of loss or interruption of business of Tenant, or otherwise. During the twelve (12) months prior to the expiration of the term of this Lease, Landlord may exhibit the Leased Premises to prospective tenants and place upon the Leased Premises the usual notice "Available" or "For Rent", which notices Tenant shall permit to remain thereon without molestation.

## ARTICLE XIX - TENANT'S PROPERTY

Section 19.01 <u>Loss and Damage</u>.  Landlord shall not be responsible or liable to Tenant, its employees, customers, guests or invitees for any loss or damage that may be occasioned by or through the acts or omissions of persons occupying adjoining premises or any part of the premises adjacent to or connected with the Leased Premises or any part of the building of which the Leased Premises are a part, or for any loss or damage resulting to Tenant or its property from bursting, stoppage or leakage of water, gas, sewer or steam pipes or for any damage of property within the Leased Premises from any cause whatsoever unless such damage is caused by the intentional act or negligence or breach of this Lease by Landlord, its agents, contractors or employees.

Section 19.02 <u>Notice by Tenant</u>.  Tenant shall give immediate notice to Landlord in case of fire or accidents in the Leased Premises or in the building of which the Leased Premises are a part or in the case of defects therein or in any fixtures or equipment.

## ARTICLE XX - HOLDING OVER AND SURRENDER OF LEASED PREMISES

Section 20.01 <u>Holding Over</u>.  Any holding over by Tenant or anyone acting through Tenant after the expiration of the term with the consent of the Landlord, shall be construed to be a tenancy from month to month (at 1% of the last adjusted monthly Minimum Rent herein specified), and shall otherwise be on the same terms and conditions herein specified so far as applicable.

Section 20.02 <u>Surrender of Premises</u>.

A.    At the expiration of the tenancy hereby created, Tenant shall surrender the Leased Premises in good condition, reasonable wear and tear excepted, and damage by unavoidable casualty excepted to the extent that the same is covered by Landlord's fire insurance policy with extended coverage endorsement, and Tenant shall surrender all keys for the Leased Premises to Landlord at the place then fixed for the payment of rent and shall inform Landlord of all combinations on locks, safes and vaults, if any, in the Leased Premises.  Tenant's obligation to observe and perform this covenant shall survive the expiration or other termination of the term.  If Tenant shall default in so surrendering the Leased Premises, Tenant's occupancy, subsequent to such expiration, shall be deemed to be that of a tenancy at will and in no event shall it be deemed from month to month or from year to year, and it shall be subject to all the terms, covenants and conditions of this Lease applicable thereto, except that Minimum Rent shall be Two hundred percent (150%) the amount payable in the last Lease Year, and no extension or renewal of this Lease shall be deemed to have occurred by such holding over.

B.    Prior to the expiration or sooner termination of this Lease, Tenant shall remove any and all trade fixtures, inventory

and other unattached items which Tenant may have installed, stored or left in the Leased Premises or elsewhere in the Office Building, including but not limited to counters, shelving, showcases, chairs and movable machinery purchased or provided by Tenant and which are susceptible to being moved without damage to the building.  Tenant shall repair any damage to the Leased Premises caused by its removal of such fixtures and movables.  In the event Tenant does not make such repairs, Tenant shall be liable for and agrees to pay Landlord's costs and expenses in making such repairs, together with a sum equal to fifteen percent (15%) of such costs and expenses to cover Landlord's overhead in making such repairs for Tenant. Tenant shall not remove any plumbing or electrical fixtures or equipment, heating or air conditioning equipment, floor coverings (including, but not limited, to wall to wall carpeting), walls or ceilings, all of which shall be deemed to constitute a part of the reversionary Interest of Landlord, nor shall Tenant remove any fixtures or machinery that were furnished or paid for by Landlord (whether initially installed or replaced).  The Leased Premises shall be left in a broom-clean condition.  If Tenant shall fail to remove its trade fixtures or other property as provided for in this Section 20.02, such fixtures and other property not removed by Tenant shall be deemed abandoned by Tenant and at the option of Landlord shall become the property of Landlord, or at Landlord's option may be removed by Landlord at Tenant's expense plus fifteen percent (15%) as herein above provided, or placed in storage at Tenant's expense, or sold or otherwise disposed of, in which event the proceeds of such sale or other disposition shall belong to Landlord, but shall offset any amounts owed by Tenant hereunder. This Section 20.02 shall survive the expiration or termination of the term.

Section 20.03 Successors.  All rights and liabilities herein given to, or imposed upon, the respective parties hereto shall extend to and bind the several respective heirs, legal representatives, successors and assigns of the parties, as the case may be.  If there shall be more than one Tenant, they shall all be bound jointly and severally by the terms, covenants and agreements herein.  No rights, however, shall inure to the benefit of any assignee of Tenant unless the assignment to such assignee has been approved by Landlord as provided in Section 12.01.

ARTICLE XXI - RULES AND REGULATIONS

Section 21.01 Rules and Regulations.  Tenant shall comply with and observe all reasonable rules and regulations established by Landlord from time to time, so long as they apply uniformly to all tenants of the Office Building and do not conflict with the terms of this Lease, increase any liability or obligation of Tenant, or diminish any of its right hereunder.  Landlord shall provide Tenant with copies of any new rules and regulations, or modifications to the same, at least thirty (30) days prior to the effective date of such rules and regulations.  Tenant's failure to keep and observe said rules and regulations shall constitute a

breach of this Lease in the same manner as if the same were contained herein as covenants.

## ARTICLE XXII - QUIET ENJOYMENT

Section 22.01 Landlord's Covenant. Upon payment by Tenant of the rents herein provided, and upon the observance and performance of all the covenants, terms and conditions on Tenant's part to be observed and performed, Tenant shall peaceably and quietly hold and enjoy the Leased Premises for the term without hindrance or interruption by Landlord or any other person or persons lawfully or equitably claiming by, through or under Landlord, subject, nevertheless, to the terms and conditions of this Lease, and (subject to Article XI) any mortgages to which this Lease may be subordinate.

## ARTICLE XXIII - DELETED

Section 23.01 Option Term.   Intentionally Deleted

## ARTICLE XXIV - ENVIRONMENTAL MATTERS

Section 24.01  Definitions

A.    The term "Environmental Law" shall mean any federal, state or local, statute, act, law, ordinance, rule, regulation or order pertaining to the environment whether now or hereafter enacted.

B.    "Hazardous Substance" shall mean any hazardous, toxic or regulated substance within the meaning of any Environmental Law or any rule, regulation or order issued pursuant to any Environmental Law.

Intentionally Left Blank  C.. "Enforcement Agency" shall mean the Environmental Protection Agency or any state, county, municipal or other agency having authority to enforce any Environmental Law.

Section 24.02  Landlord's Responsibilities.

A.    Landlord certifies to Tenant that at the date of this Lease Landlord has no knowledge that the Leased Premises or the Office Building contain any Hazardous Substance or was used to store, manufacture, or dispose of same, other than such as are being used or sold in compliance with applicable Environmental Laws.  Landlord shall indemnify, defend and hold Tenant harmless from and against any and all loss, cost, claims, liabilities or expenses incurred by Tenant as a result of Landlord's certification in the immediately preceding sentence being untrue.  Landlord further certifies to Tenant that the premises shall be delivered to Tenant free of all hazardous substances, including but not limited to asbestos.

B.    If any Environmental Law is promulgated at any time after the date of this Lease for the removal, abatement or containment of a Hazardous Substance in the Leased Premises which existed at the date of this Lease, or which came upon the Leased Premises as a result of Landlord's Work, and, in the reasonable judgment of Landlord, such law requires Landlord to remove, abate or contain such Hazardous Substance, during the course of which it would be hazardous for the Tenant to remain in the Leased Premises., Tenant shall vacate the Leased Premises or that portion of the Leased Premises that is hazardous and, provided that such condition did not result from Tenant's acts, omissions or operations, the Minimum Rent and additional rent shall be abated proportionately for the period of time during which Tenant's use of such portion of the Leased Premises has been interrupted and Tenant's Proportionate Share shall be adjusted accordingly.

Section 24.03  Tenant's Responsibilities.

A.    All alterations made in the Leased Premises by Tenant or any other tenant of the Leased Premises shall be in accordance with and shall comply with all applicable Environmental Laws and the applicable requirements of all Enforcement Agencies.

B.    Tenant shall not intentionally or unintentionally use, store, handle, spill or discharge any Hazardous Substance at, about or in the Leased Premises, other than in compliance with all applicable Environmental Laws.  Tenant's failure to abide by the terms of this Section 24.03(b) shall be restrainable by injunction.

C.    At any time during the term of this Lease, Tenant shall supply to Landlord affidavits of an officer of Tenant setting forth Tenant's SIC number and describing in detail the operations and processes conducted at the Leased Premises.  Such affidavits shall include a certification that no Hazardous Substance is generated, used, stored, handled or disposed of at the Leased Premises or shall state the nature of any such substance and the methods used in handling the same in reasonable detail.  Such affidavits shall be delivered to Landlord within thirty (30) days after request therefor.

D.    Within thirty (30) days after request therefor, Tenant shall provide all information requested from time to time by Landlord, or by any Enforcement Agency, for the preparation of notices, submissions or affidavits.  Within thirty (30) days after request therefor, Tenant shall execute and deliver any document reasonably required in order for Landlord or Tenant to comply with any Environmental Law.

E.    Landlord and Tenant shall promptly deliver to Landlord copies of all notices made by it to, or received by it from, any Enforcement Agency or from the United States Occupational Safety and Health Administration concerning environmental matters or Hazardous Substances at the Leased Premises.

F.    Tenant shall indemnify, defend and hold Landlord harmless of and from any and all claims arising by reason of any violation by Tenant of the provisions of this Article XXIV and this indemnity shall survive the expiration or other termination of this Lease.

ARTICLE XXV - MISCELLANEOUS

Section 25.01  Waiver.  One or more waivers by Landlord of any covenant or condition shall not be construed as a waiver of a subsequent similar act by Tenant.  No breach of a covenant or condition of this Lease shall be deemed to have been waived by Landlord, unless such waiver is in writing and is signed by Landlord.

Section 25.02  Entire Agreement.

A.    This Lease and the Exhibits attached hereto and forming a part hereof, set forth all the covenants, promises, agreements, conditions and understandings between Landlord and Tenant concerning the Leased Premises and there are no covenants, promises, agreements, conditions or understandings, either oral or written, between them other than as are herein set forth.  No alterations, amendments, changes or additions to this Lease shall be binding upon Landlord or Tenant unless reduced to writing and signed by each party.

B.    Both parties have had an opportunity to have counsel review this Agreement, therefore, no party is prejudiced by the drafting of this document.

Section 25.03  Interpretation and Use of Pronouns.  Nothing contained herein shall be deemed or construed by the parties hereto, nor by any third party, as creating the relationship of principal and agent or of partnership or of joint venture between the parties hereto, it being understood and agreed that neither the method of computation of rent, nor any other provisions contained herein, nor acts of the parties hereunder, shall be deemed to create any relationship between the parties hereto other than the relationship of landlord and tenant.  Whenever herein the singular number is used, the same shall include the plural, and the masculine gender shall include the feminine and neuter genders.

Section 25.04  Delays.

A.    In the event that either party shall be delayed or hindered in or prevented from the performance of any act required hereunder by reason of strikes, lockouts, labor troubles, inability to procure materials, failure of power, riots, insurrection, war or other reason of a like nature not the fault of the party delayed in performing work or doing acts required under this Lease, then performance of such act shall be excused for the period of the delay and the period for the performance of any such act shall be extended for a period equivalent to the period of such delay.  The

party entitled to such extension hereunder shall give notice as soon as possible to the other party of its claim of right to such extension and the reason(s) therefor. Notwithstanding the foregoing, the provisions of this Section 25.04 shall not excuse Tenant from prompt payment of rent or any other payments required by this Lease. Notwithstanding the foregoing, the provisions of Section 3.01 shall remain applicable to permit Tenant to terminate this Lease in the event Landlord's Work shall not be substantially completed by 4/1/2017.

Section 25.05 Notices. Any notice, demand, request or other communication which may be or is required to be given under this Lease shall be given by United States certified mail, return receipt requested, postage prepaid and shall be addressed (a) if to Landlord, at the address first herein above given or at such other address as Landlord may designate by notice, and (b) if to Tenant, at its address first herein above specified or at such other address as Tenant shall designate by notice. All such communications shall be deemed given five (5) days from when deposited, properly addressed postage paid, in the United States mail, as herein provided, regardless of whether the same is undelivered or the addressee should refuse to accept delivery thereof for any reason.

Section 25.06 Captions and Section Numbers. The captions, section numbers and article numbers appearing in this Lease are inserted only as a matter of convenience and in no way define, limit, construe or describe the scope or intent of such sections or articles nor in any way affect this Lease.

Section 25.07 Broker's Commission. Each of the parties represents and warrants that there are no claims for brokerage commissions or finder's fees nor has any party dealt with any broker or agent in connection with the execution of this Lease and except Situs Properties each of the parties agrees to indemnify the other against, and hold it harmless from, all liabilities arising from any such claims made through it (including, without limitation, the cost of reasonable counsel fees in connection therewith). The responsibility of payment to Situs Properties , Inc. shall lie solely with the Landlord.

Section 25.08 Recording. Tenant shall not record this Lease without the consent of Landlord.

Section 25.09 Ingress and Egress to Common Areas. Landlord may temporarily or permanently close, block, obstruct, redirect, relocate the means of egress to the common areas as Landlord deems without compensation or offset to Tenant.

Section 25.10 Landlord's Use of Common Areas without Interference to Tenant. Landlord reserves the right from time to time to utilize portions of the common areas for carnival type shows, rides and entertainment, storage, outdoor shows, displays,

automobile and other product shows, or such other uses which in Landlord's reasonable judgment tend to attract the public. Further, Landlord reserves the right to utilize the lighting standards and other areas in the parking lot for advertising purposes. Notwithstanding the foregoing, Landlord shall not unreasonably or more than temporarily interfere with Tenant's quiet enjoyment, business activities ingress and/or egress for Tenant and/or its employees or invitees, or visibility.

Section 25.11    Parking

Landlord may reduce the quantity of parking spaces as Landlord deems without compensation or offset to Tenant.

Landlord may relocate, restripe and change parking field, sizes or traffic patterns without compensation or offset to Tenant.

Section 25.12  Interest on Past Due Obligations. Any amount due from Tenant to Landlord hereunder which is not paid when due shall bear Interest at the rate of eighteen percent (18%) per annum from the default date until paid, but the payment of such Interest shall not excuse or cure any default by Tenant under this Lease.

Section 25.13  Liability of Landlord. If Landlord shall fail to perform any covenant, term or condition of this Lease upon Landlord's part to be performed, and if, as a consequence of such default, may set off such amounts from minimum rent, additional rent or other sums due hereunder provided Tenant incurs and pays such cost or expense. Tenant shall recover a money judgment against Landlord, such judgment shall be satisfied only out of the proceeds of sale received upon execution of such judgment and levied thereon against the right, title and Interest of Landlord in the Office Building and out of rents and other income from such property receivable by Landlord, and neither Landlord nor any of its shareholders and/or partners shall be liable for any deficiency.

Section 25.14  Accord and Satisfaction. No payment by Tenant or receipt by Landlord of a lesser amount than the rents herein stipulated shall be deemed to be other than on account of the earliest stipulated rent, nor shall any endorsement or statement on any check or any letter accompanying any check or payment as rent be deemed an accord and satisfaction and Landlord may accept such check or payment without prejudice to Landlord's right to recover the balance of such rent or pursue any other remedy in this Lease provided.

Section 25.15  Laws of the State Where the Premises are Situated. This Lease shall be governed by, and construed in accordance with, the laws of the State wherein the Leased Premises are situated. If any provision of this Lease or the application thereof to any person or circumstances shall, to any extent, be invalid or unenforceable, the remainder of this Lease shall not be

affected thereby and each provision of the Lease shall be valid and enforceable to the fullest extent permitted by the law

"LANDLORD"

Jenkins Court Realty Co., L.P.
By Its General Partners

By: _____
    Philip Pulley, President
    its General Partner

By: _____
    [Name]

"TENANT"

SBG Management Services, Inc.

By: _____

By: _____
    Philip Pulley, President

# EXHIBIT "B"

Jenkins Storage, LLC
Jenkins Court
Unit G100
610 Old York Road
Jenkintown, PA  19046

## LEASE

THIS LEASE made as of this __1st__ day of February 2019 by and between JENKINS COURT REALTY CO. L.P., a Pennsylvania Limited Partnership, with an address at P.O. BOX 549, ABINGTON, PA 19001 ("Landlord"), and Jenkins Storage, LLC 610 Old York Road, Unit G100 , Jenkintown, PA 19046, ("Tenant").

ARTICLE I - GRANT AND TERM

Section 1.01    Leased Premises.

A.    Landlord, in consideration of the rent to be paid and the covenants to be performed by Tenant, does hereby demise and lease unto Tenant, and Tenant hereby rents from Landlord, those certain Lower Level premises (the "Leased Premises") located at 610 Old York Road, Unit G100, Jenkintown, PA. 19046 Site Plan is subject to change and conformation by Architect and Governmental Authority.

B.    The exterior walls and roof and the area beneath the Leased Premises are not demised hereunder and the use thereof, together with the right to install, maintain, use, repair and replace structural elements leading through the Leased Premises are hereby reserved unto Landlord provided that same does not interfere with Tenant's quiet enjoyment.

C.    Tenant acknowledges that the Leased Premises and the Office Building (as hereinafter defined), the street or streets, sidewalks, curbs and access ways adjoining them, any surface and sub-surface conditions thereof, and the present uses and proposed uses thereof, have been examined by Tenant, or Tenant has been afforded the right to do so, and, except as expressly herein otherwise provided, Tenant accepts them in the condition or state in which they are to be delivered to Tenant, without relying on any representation, covenant or warranty, express or implied by Landlord, except as herein expressly provided.

Section 1.02    Commencement/Rent Commencement Date and Ending Day of Term; Rent Commencement Date.

A.    The term of this Lease shall commence (the "Commencement Date/Rent Commencement Date") on March 1, 2019. Tenant's obligation

to pay Minimum Rent and all other charges (meaning such state of completion of Landlords Work as to allow Tenant to utilize the Leased Premises for Tenants intended use without interference) required hereunder shall commence on the "Rent Commencement Date".

B.    Subject to Article XXIII, the term of this Lease shall expire Ten (10) years from and after the Rent Commencement Date (Initial Term), unless sooner terminated as hereinafter provided; provided, that if the term commences on a day other than the first day of a month, then the term shall be extended for such fractional month.

ARTICLE II – RENT

Section 2.01    Minimum Rent.

A.    The fixed minimum annual rental ("Minimum Rent") during the term of this Lease is as follows:

| | |
|---|---|
| Years 1- 5 | $30,000.00 monthly, $360,000.00 annually |
| Years 5-10 | $40,000.00 monthly, $480,000.00 annually |

Rent to commence on March 1, 2019.

Minimum Rent shall be payable by Tenant in equal consecutive monthly installments on or before the first day of each month, in advance, at the office of Landlord or such other place as Landlord may designate, without any prior demand therefor.

B.    Should the Rent Commencement Date be other than the first day of a calendar month, then the Minimum Rent for the first fractional month of the term shall be prorated upon a daily basis based upon a thirty (30) day calendar month.

Section 2.02    Additional Rent.    Tenant shall pay any and all sums of money or charges required to be paid by Tenant under this Lease promptly when the same are due. All such amounts or charges shall be payable to Landlord at the place where the Minimum Rent is payable and shall be deemed to be additional rent hereunder.

Section 2.03    Cause and Effect.    If Minimum and Additional Rent is not received by Landlord by the fifth day of the month or post marked by the United States Postal Service by the fifth day of the month.

An administrative late fee shall be charged to the Tenant in the amount of $250.00 on the sixth day of the month plus 5% compounded interest monthly.

ARTICLE III - LANDLORD'S WORK; DELIVERY OF THE LEASED PREMISES

Section 3.01    Landlord's Work.  The Landlord shall perform no work. Other than Exhibit A. The space is being rented "As Is".

Section 3.02    Tenant's Work.  From and after the date of this Lease, Tenant shall install its trade fixtures and inventory ("Tenant's Work").  Tenant's activities shall be conducted so as not to unreasonably interfere operations at the Office Building. Within 1 hour Tenant shall, at its expense, remove from the Leased Premises and from the Office Building, all trash debris, recycling or stock which may accumulate in connection with Tenant's activities.  In connection with this work, Tenant shall perform all duties and obligations imposed by this Lease, including, without limitation, those provisions relating to insurance and indemnification, holding harmless, saving and excepting only the obligation to pay Minimum Rent and additional rent (other than any additional rent arising out of any failure of Tenant to perform its obligations under this Lease), which obligation shall commence on the Rent Commencement Date.

Section 3.03    Mechanic's Liens.  No work which Landlord permits Tenant to do pursuant to this Lease, whether in the nature of erection, construction, alteration or repair, shall be deemed to be for the immediate use and benefit of Landlord so that no mechanic's or other lien shall be allowed against the estate of Landlord by reason of any consent given by Landlord to Tenant to improve the Leased Premises.  In the event any mechanic's or other lien shall at any time be filed against the Leased Premises or the Shopping Center by reason of work, labor, services or materials performed or furnished, or alleged to be performed or furnished, to Tenant or to anyone holding the Leased Premises through or under Tenant (other than Landlord's Work), and Tenant shall fail to cause such lien to be discharged or bonded within twenty (20) days after being notified of the filing thereof, then, in addition to any other right or remedy of Landlord, Landlord may discharge the same by paying the amount claimed to be due, and the amount so paid by Landlord including reasonable attorney's and administration fees incurred by Landlord in procuring the discharge of such lien, together with Interest (as defined in Section 25.12) thereon, shall be due and payable by Tenant to Landlord with 5 days of notice.

Section 3.04    Tenant's Trade Fixtures.  All trade fixtures (as distinguished from leasehold improvements) and inventory owned by Tenant and installed in the Leased Premises shall remain the property of Tenant and shall be removable at any time, including upon the expiration of the term; provided, that Tenant shall not at such time be in default of any terms or covenants of this Lease; provided, further, that Tenant shall repair any damage to the

Leased Premises caused by the removal of said fixtures.

Section 3.05  <u>Changes and Additions to Office Building.</u> Landlord reserves the right from time to time to construct other buildings or improvements by and to the Office Building, to make alterations thereof or additions thereto or subtractions there from, to build additional stories in any building or buildings in the Office Building, to build adjoining the same or to construct double-deck or elevated parking facilities, roads or other improvements, or to acquire additional property or properties which Landlord, at Landlord's sole election, may include within the Office Building as common areas (as hereinafter defined) or otherwise; provided, that such construction or activities resulting from such construction shall not unreasonably (a) interfere with Tenant's use of the Leased Premises, (b) permanently interfere with Tenant's quiet enjoyment of the Leased Premises.

<u>ARTICLE IV - SECURITY DEPOSIT</u>

Section 4.01  Security Deposit.  Upon execution of this Lease the Tenant shall give the amount of $0 as a Security Deposit to be used in the event of a default by the Tenant of the obligations under the Lease, including, but not limited to:  (a) for the payment of any Rent, (b) for the payment of added rent, (c) for the payment of any other amount that Landlord may deem due and payable by Tenant.

If security deposit is utilized by Landlord due to any default of Tenant then Tenant shall restore the deducted amount within 30 days of notice by Landlord.

<u>ARTICLE V - CONDUCT OF BUSINESS BY TENANT</u>

Section 5.01  <u>Use of Premises.</u>  Tenant shall use and occupy the Leased Premises during the term of this Lease solely for the purpose of conducting the business of a Climate Control/Self Storage Facility, and related user including retail sales and service and for no other purpose or purposes without the prior consent of Landlord, which consent shall not be unreasonably withheld.

In its use of the Leased Premises, Tenant agrees to comply with the following requirements:

(a)  No trash, debris, pallets or the like shall be stored behind the Leased Premises or upon the property.

(b)  Comply with the rules of all governmental agencies.

(d)  No reserved parking is included.

(e)   No alcoholic beverages illegal substance or cannabis may be sold or consumed on Leased Premises.

(f)   No hazardous materials may be stored upon the premises.

(g)   Tenant agrees to adhere to all other Tenants exclusions and restrictions.

(h)   Tenant agrees to abide by all other rules in the Resident Policy Handbook

(i)   No noise shall exit the Leased Premises or disturb other tenants.

(j)   No overnight parking

(k)   Clearance heights and restrictions shall be adhered to by all vehicles.

(l)   No blocking driveway or drive aisles.

Section 5.02   Operation of Business.   Tenant agrees to operate the Leased Premises during the entire term of this Lease, unless prevented from doing so because of fire, accident, or acts of God, and to conduct its business at all times in a high class and reputable manner, maintaining at all times a full staff of employees.   Tenant shall promptly comply with all laws and ordinances and lawful orders and regulations affecting the Leased Premises and the cleanliness, safety, occupancy and use of same. No auction, liquidation, going out of business, immoral or violation of moral purpitude, fire or bankruptcy sales may be conducted in the Leased Premises without the prior consent of Landlord.   Tenant agrees that it will conduct its business in the Leased Premises in a lawful manner and in good faith, and will not do any act tending to injure the reputation of the Office Building or the name or logo of the Office Building in its advertising.

Section 5.03   Care of Premises.   Tenant shall keep the Leased Premises (including the service areas adjacent thereto, windows and signs), doors, roll down gates, sidewalks orderly, neat, safe and clean and free from rubbish, debris and dirt at all times and shall store all trash and garbage within the Leased Premises and arrange for the regular pick up by a private contractor of all trash, recycling, garbage and hazardous material at any time generated at or from Leased Premises.

If Landlord provides dumpster service, Tenant agrees to pay Landlord as additional rent that amount as billed by Landlord to Tenant.

Tenant is responsible for snow and ice removal and salting.

ARTICLE VI – OPERATION AND MAINTENANCE OF COMMON AREAS

Section 6.01    Construction of Common Areas. Landlord has no responsibility in the maintenance or operation of Common Areas. Landlord shall give Tenant at least thirty (30)days prior written notice of the effective date of any new rules or regulations. All such rules and regulations shall be uniformly applied as to all tenants within the Office Building and shall not conflict with any provision of this Lease, decrease any rights of Tenant hereunder, or increase any obligation or liability to Tenant.

A.    "Proportionate Share" shall be computed utilizing a fraction, the numerator of which shall be the number of square feet of leaseable floor area in the Leased Premises and the denominator of which shall be the number of leaseable square feet of floor area in the Office Building. Tenant's Proportionate Share shall be equal to 10%.

B.    In the event of any unusual increase, Ten percent or greater over the previous year, in any operating expenses or Costs ("The Increase") than Landlord reserves the right to recover from Tenant that Proportionate Share of the increase upon presentation to Tenant a bill including back up. This Increase shall be considered Additional Rent.

Section 6.03    Use of Common Areas. The term "common area", as used in the Lease, shall mean the pedestrian sidewalks, and all other areas or improvements which may be provided by the Landlord for the convenience and use of all tenants of the Office Building, and their respective employees, customers, invitees and any other licensees of Landlord.   The use and occupancy by Tenant of the Leased Premises shall include the use, in common with all others to whom Landlord has granted or may hereafter grant rights to use the same, of the common areas of the Office Building, and of such other facilities as may be designated from time to time, subject, however, to reasonable rules and regulations for the use thereof as prescribed from time to time by the Landlord.   Tenant shall maintain all such common areas in a good, clean and safe condition including but not limited to lighting, snow and ice removal, concrete surfaces, removal of trash and debris. If Tenant has knowledge of any part of the common areas which are not in a good, clean and safe condition, then Tenant shall have the responsibility to immediately notify the Landlord.

Section 6.04.   No Reserved Parking is Included. Tenant shall pay Landlord as additional rent $20 per month for overnight/storage use of parking spaces.

Section 6.05.    Landlord may, in its reasonable judgment, at any time close temporarily or permanently any common area to make repairs or changes, to prevent the acquisition of public rights in such area or to discourage non-customer parking; and may do such other acts in and to the common areas as in its reasonable judgment may be desirable to improve the convenience to the Tenants and their invitees thereof.  Notwithstanding the foregoing, Landlord shall not permanently interfere with the visibility of the Office Building nor impede the ingress and egress to the Premises directly Old York Road.

ARTICLE VII – ALTERATIONS AND SIGNS

Section 7.01    Installation by Tenant.  Other than Tenant's Work, Tenant shall not make or cause to be made any alterations, additions or improvements to the Leased Premises, or install or cause to be installed any exterior signs, exterior lighting, plumbing fixtures, shades, canopies or awnings or make any changes to the exterior of the Office Building or common areas, mechanical, electrical or sprinkler systems without the prior approval of Landlord, which consent shall not be unreasonably withheld, delayed or conditioned.  If the cost of any such work exceeds $5,000.00 or if such work affects structural elements or roof or any electrical or mechanical systems within the Leased Premises, Tenant shall present to Landlord plans and specifications for such work at the time approval is sought.

Tenant is responsible for cost of all permits and approvals.

Section 7.02    Removal by Tenant.    All alterations, decorations, additions and improvements made by Tenant shall be deemed to have attached to the Leased Premises and to have become the property of Landlord upon such attachment, and upon the expiration or earlier termination of this Lease, Tenant shall not remove any such alterations, decorations, additions and improvements, except that trade fixtures installed by Tenant may be removed if all rents due hereunder are paid in full and Tenant is not otherwise in default hereunder; provided, that Landlord may designate in its consent to Tenant those alterations and additions which shall be removed by Tenant at the expiration or termination of this Lease and Tenant shall promptly remove the same and repair any damage to the Leased Premises caused by such removal.

Section 7.03    Tenant's Signs.  Tenant will not place or cause to be placed or maintained any sign or advertising matter of any kind anywhere within the Office Building, except in locations in the interior of the Leased Premises which, if visible from outside the Leased Premises must comply with all governmental laws and regulations and shall be subject to the reasonable approval of Landlord, which shall not be unreasonably withheld, conditioned or

Case: 25-2598   Document: 20   Page: 76   Date Filed: 11/24/2025

Case 2:25-cv-00044-GAM   Document 34-4   Filed 06/16/25   Page 9 of 29
Case 2:25-cv-00044-GAM   Document 32-4   Filed 06/02/25   Page 9 of 29

delayed. No symbol, design, name, mark or insignia adopted by the Landlord for the Office Building shall be used without the prior written consent of Landlord. All signs located in the interior of any commercial space shall be in good taste and secured so as not to detract from the general appearance of the commercial and the Office Building. Tenant further agrees to maintain, in good condition and repair at all times, any such sign or advertising matter of any kind which has been approved by Landlord for use by Tenant. All signs shall be at Tenants sole cost and expense.

A.   Office Building Facade. Tenant may place appropriate signage upon the façade of Office Building to designate the type of business, name and use.

B.   Tenant may not paint exterior of Office Building.

Section 7.04   Signage. All signage shall comply with all governmental regulations and applicable variances and zoning approvals.

A.   Tenant shall be afforded the following signage at Tenants expense.

1.   Parking garage signage at entrance to garage (1 slot).
2.   Main building pylon on Old York Road (1 small slot).
3.   Directional signage at entrance to upper parking deck (1 spot).
4.   Signage at intersection of Spring and Old York Road, area of Old York Road (grass area).

All signage is subject to the written approval of Landlord.

Section 7.05   Construction Requirements.

A.   Tenant shall not, in the course of any work, interfere with, hamper, or cause any inconvenience to the use and occupation or the ingress and egress to, in, or from the Office Building or any common area.

B.   Landlord shall have the right to inspect Tenant's construction work from time to time at Landlord's discretion.

C.   Landlord shall have no responsibility or liability for the adequacy of Tenant's plans and specifications or for the performance of Tenant's work or for the payment of the costs and expenses incurred by Tenant in connection therewith.

D.   Prior to commencement of construction, Tenant shall procure and maintain in effect a full coverage all risk policy of

8

Case: 25-2598    Document: 20    Page: 77    Date Filed: 11/24/2025

Case 2:25-cv-00044-GAM    Document 34-4    Filed 06/16/25    Page 10 of 29
Case 2:25-cv-00044-GAM    Document 32-4    Filed 06/02/25    Page 10 of 29

casualty insurance with builders risk coverage insuring the Tenant's improvement in Leased Premises and Tenant's work for the full insurable value thereof with general liability coverage of not less than $1,000,000.00. Such policy shall name Landlord, Landlord mortgagor, as an holder and additional insured and contain a 30 day notice of cancellation clause.

E. The Tenant shall insure that all contractors and subcontractors shall procure and maintain liability insurance and workmen's compensation insurance during the period of construction in standard amounts. Such certificates shall name Landlord and Landlord's mortgagor, as certificate holder and additional insured.

F. The cost of permits and approvals for all Tenant work is the responsibility of Tenant.

ARTICLE VIII - MAINTENANCE OF LEASED PREMISES

Section 8.01    Landlord's Obligations for Maintenance. Landlord shall keep and maintain the foundation, exterior walls and roof of the building in which the Leased Premises are located and the structural portions of the Leased Premises which were originally installed by Landlord, exclusive of doors, door frames, roll down doors, exterior lighting, door checks, windows, and exclusive of window frames located in interior walls, exterior building walls, in good repair, except that Landlord shall not be called upon to make such repairs occasioned by the negligence of Tenant or any other party, its agents, employees, licensees or contractors, except to the extent that Landlord may be reimbursed therefor under any policy of insurance permitting waiver of subrogation in advance of loss. Landlord shall not be called upon to make any other improvements or repairs of any kind upon said premises, unless as a result of Landlord's failure to comply with its obligations hereunder.

Section 8.02    Tenant's Obligations for Maintenance.

A. Subject to Section 8.01, Tenant shall keep and maintain in good order, condition and repair (including replacement of parts and equipment if necessary) the Leased Premises and every part thereof, including, but without limitation to, the exterior and interior portion of all doors, door checks, roll down doors, fire protection systems, windows, plate glass, commercial store front, all plumbing and sewage facilities within the Leased Premises, toilets, sinks, lavs, fixtures, heating and air conditioning and electrical systems, (whether or not located in the Leased Premises), sprinkler system, fire alarm systems, fire extinguishers, the internal portion of walls, the internal portion of floors, and the internal portion of ceilings.

    B.    Tenant shall keep and maintain the Leased Premises in a clean, sanitary and safe condition in accordance with applicable laws and all directions, rules and regulations of the health commercial, fire marshal, building inspector, or other proper officials of the governmental agencies having jurisdiction, at the sole cost and expense of Tenant, and Tenant shall comply with all requirements of law, ordinance or otherwise, affecting the Leased Premises. If Tenant refuses or neglects to commence and to complete repairs promptly and adequately, Landlord may, at its option, after 5 days written notice to Tenant thereof, make and complete said repairs and Tenant shall pay the cost thereof to Landlord upon demand, together with Interest thereon. At the expiration or earlier termination of this Lease, Tenant shall surrender the Leased Premises in good condition, reasonable wear and tear, loss by fire or other unavoidable casualty excepted. Nothing contained herein is intended to alter the delineation of responsibilities set forth in subparagraphs A & B above.

    C.    Prior to commencing any work, Tenant shall record a lien waiver from each contractor in the county in which the Commercial Building is located. Tenant shall reimburse Landlord for any and all costs and expenses which may be incurred by Landlord by reason of the filing of any such liens and/or the removal of same, together with Interest thereon, such reimbursements to be made within thirty (30) days after the receipt by Tenant from Landlord of a statement setting forth the amount or such costs and expenses. The aforesaid waiver shall not be applicable for decorating work or signage.

    D.    Tenant, at its own expense, shall install and maintain fire extinguishers, exit and emergency lights and other fire protection or life safety devices as may be required from time to time by any governmental body having jurisdiction over the Leased Premises and the insurance underwriters insuring the building in which the Leased Premises are located.

    E.    Tenant is responsible for all janitorial and extermination services within the Leased Premises.

    F.    Tenant shall be responsible for all heating and air conditioning maintenance and agrees to maintain a contract with a licensed company to said work. All work shall be performed in compliance with manufacturer's recommendations.

    G.    Tenant is responsible for its own heat, air-conditioning and hot water from Office Building supply systems.

    H.    Tenant is responsible for all snow, ice removal and salting.

ARTICLE IX - TAXES, INSURANCE AND INDEMNITY

    Section 9.01   Tenant's Tax Obligation.

    A.   Tenant shall not be liable for, and shall not pay, any taxes levied against personal property and trade fixtures placed by Tenant in or about the Leased Premises, including without limitation, equipment, shelves, counters, vaults, wall safes, fixtures, stoves, fryers, refrigeration, seating, machinery, refrigerators, heating, ventilating and air conditioning equipment. If any such taxes are levied against Landlord or Landlord's property, and if Landlord pays same, or if the assessed value of the Office Building is increased by the inclusion therein of the value placed on such property, and the Landlord makes payment, based on such increased assessment, Tenant shall repay to Landlord the taxes so paid by Landlord or the proportion of such resulting from such increase in assessment, within thirty (30) days after request, with Interest on any payments past due, if applicable.

    B.   Tenant shall not pay any Lease Year Proportionate Share of taxes and re-taxes, ad valorem taxes and assessments special or service District taxes levied or assessed by any lawful authority against all of the land, buildings and all other improvements and betterments which now or hereafter become a part of the Office Building (collectively "Taxes"). Nothing herein contained shall be construed to include within the term "Taxes" any inheritance, estate, succession, transfer, gift, franchise, corporation or income taxes that are or may be imposed upon Landlord; provided, that if at any time prior to or during the term the methods of taxation prevailing at the date of this Lease shall be altered so that in addition to, in lieu of or as a substitute for, the whole or any part of the Taxes now levied, assessed or imposed on real estate as such there shall be levied, assessed or imposed (i) a tax on or measured by the rentals received from such real estate, or (ii) a tax or license fee imposed upon Landlord which is otherwise measured by or based in whole or in part upon the Building, any portion thereof or the value thereof, then the same shall be included in the computation of Taxes, but only in such amounts as would be payable by Landlord if the Building were the only property of Landlord subject to such taxes or fees. Landlord shall estimate the Taxes annually and Tenant shall pay one-twelfth (1/12) of its Proportionate Share thereof monthly in advance, together with its payments of Minimum Rent. After the end of each Lease Year, Landlord shall furnish Tenant a statement of the actual Taxes, and there shall be an adjustment between Landlord and Tenant, with payment to or repayment by Landlord, as the case may require, to the end that Landlord shall receive the entire amount of Tenant's Proportionate Share of Taxes for such period, or at Landlord's option, any overpayment by Tenant shall be credited on account of the next succeeding payment(s) by Tenant of such Taxes.

11

C.    Should any governmental authority require that a tax, other than the Taxes, be paid by Tenant but collected by Landlord, for and on behalf of such governmental authority, and from time to time forwarded by Landlord to said governmental authority, the same shall be paid by Tenant to Landlord as set forth in Section 9.01 A and B, and be collectible by Landlord, and the payment thereof enforced in the same manner as is provided for the enforcement of payment of additional rent hereunder, and the same shall be payable monthly, as set forth in Section 9.01 A and B.

D.    Landlord shall have the absolute and unrestricted right, but not the obligation, to contest the validity or amount of any Taxes by appropriate proceedings.  If Landlord shall institute any such contest, it shall have the sole, absolute and unrestricted right to settle any such contest, proceeding or action upon whatever terms Landlord may, in its sole reasonable discretion, determine.  If Landlord shall receive any refund of such Taxes (and provided Tenant is not then in default of any of the terms of this Lease) Landlord shall credit such proportion of such refund as shall be allocable to the payments of Taxes actually made by Tenant (less all costs, expenses and attorney's fees incurred in connection with such contest) against the next succeeding payment of Taxes due from Tenant.

Section 9.02    Liability Insurance.  Tenant shall, during the term hereof, keep in full force and effect, a policy of public liability and property damage insurance with respect to the Leased Premises and the business operated by Tenant and any subtenants of Tenant in the Leased Premises, in which the limits of public liability shall be not less than $1,000,000.00 combined single limit.  The policy shall name Landlord and any other parties in Interest designated by Landlord as holder and additional insured, and shall contain a clause that the insurer will not cancel or change the insurance without first giving Landlord thirty (30) days prior written notice.  Such insurance may be furnished by Tenant under any blanket policy carried by it or under a separate policy thereof.  The insurance shall be with an insurance company with an "A" rating or better and licensed to do business in the state in which the Premises is located. A copy of the paid-up policy evidencing such insurance or a certificate of insurer certifying to the issuance of such policy shall be delivered to Landlord prior to entrance by Tenant upon the Leased Premises.

Section 9.03    Other Insurance.

A.    Tenant shall carry, at its expense, insurance against the following but not limited to: fire, vandalism, malicious mischief, and such other perils as are from time to time included in a standard extended coverage endorsement, insuring Tenant's merchandise, trade fixtures, furnishings, equipment and

all other items of personal property of Tenant located on or within the Leased Premises.

B.    Tenant shall not carry any stock or goods, or do anything in or about the Leased Premises, which will in any way tend to increase the insurance rates on the Leased Premises and/or the building of which they are a part.

C.    If Tenant installs any electrical equipment that overloads the lines in the Leased Premises or Office Building, the following but not limited to, Tenant shall, at its own expense, make whatever changes are necessary to comply with the requirements of the insurance underwriters and governmental authorities having jurisdiction. Tenant shall immediately cure said overloads at Tenant's sole cost and expense.

D.    If Tenant installs fixtures or equipment that overloads the structure in the Leased Premises or Office Building, the following but not limited to, Tenant shall, at its own expense, make whatever changes are necessary to comply with the requirements of the insurance underwriters and governmental authorities having jurisdiction. Tenant shall immediately cure said overloads at Tenant's sole cost and expense.

Section 9.04    Covenant to Hold Harmless.  Tenant shall indemnify, defend and save Landlord harmless from and against any and all claims, actions, damages, liability and expense in connection with loss of life, personal injury and/or damage to property loss of business or loss of stock arising from Tenant's use and occupancy of the Leased Premises and Office Building, other than that resulting from the gross negligence or intentional act of Landlord or its breach of the terms of this Lease Agreement.  In case Landlord shall, without fault on its part (as defined as negligence, intentional act or breach), be made a party to any litigation commenced by or against Tenant, Tenant shall protect and hold harmless and shall pay all costs, expenses and reasonable attorney fees incurred or paid by Landlord in connection with such litigation.  Similarly, Landlord shall indemnify and save Tenant harmless from and against any and all claims, actions, damages, liability and expense in connection with loss of life, personal injury and/or damage to property arising from Landlord's negligence or intentional act or its breach of the terms of this Lease Agreement.  In case Tenant shall, without fault on its own part (as defined as Tenant's own negligence, intentional act or breach of the Lease Agreement), be made a party to any litigation commenced by or against Landlord, Landlord shall protect and hold harmless and shall pay all costs, expenses, and reasonable attorney fees incurred or paid by Tenant in connection with such litigation.

Tenant shall give Landlord prompt notice of any claims

asserted.  Landlord shall have a choice of the right to defend, selection of counsel and course of defense.

Section 9.05 Landlord's Insurance.  From the Effective Date and continuing throughout the Term and any Extensions, Landlord shall maintain the following insurance on the Commercial Building including the common areas, parking areas, walkways, and driveways, naming Tenant as an additional insured: (I) commercial general liability and property damage insurance in the amount of not less than $1,000,000.00 for death or bodily injury or property damage of any one person and $1,000,000.00 for any one occurrence, (ii) fire and extended coverage insurance in an amount equal to the full replacement cost of any improvements located on the Apartment Building (excluding the improvements to the Leased Premises made by Tenant) established by agreed amount endorsement by Tenant, Landlord and the insurer, (iii) if applicable, workers' compensation insurance in statutory amounts, and (iv) contractual liability insurance.  Upon notice from Tenant, Landlord, its agents and contractors shall deliver to Tenant a certificate from its insurer declaring such insurance to be in full force and effect.

## ARTICLE X - UTILITY CHARGES

Section 10.01 Utility Charges.  Tenant shall be solely responsible for and promptly pay all charges for gas, telephone, electricity, cable, trash and any other utility used upon or furnished to the Leased Premises.  Utility deposits shall be the sole responsibility of Tenant.  If Landlord shall elect to supply any of the foregoing utilities used upon or furnished to the Leased Premises, Tenant agrees to purchase and pay for the same within thirty (30) days of the presentation by Landlord to Tenant. The obligation of Tenant to pay for such utilities shall commence as of the date on which possession of the Leased Premises is delivered to Tenant without regard to when the Rent Commencement Date may be. Landlord shall provide necessary utility hook-ups and meters at the Landlord's expense. If Tenant fails to pay utility bills in accordance with the terms of Additional Rent, then Landlord, with out liability, may discontinue utility service at any time in addition to any other remedies available.

Tenant shall be responsible for all fines for dumpster, trash, recycling which shall be considered added rent.

Landlord will supply at Landlord all sole costs and expense hot and cold water for Tenants HVAC systems.

## ARTICLE XI - ESTOPPEL LETTER, ATTORNMENT AND SUBORDINATION

Section 11.01 Estoppel Letter.  Tenant agrees, within thirty

(30) days after written request therefor by Landlord, to execute in the form provided a recordable form and deliver to Landlord a statement, in writing, certifying (a) that this Lease is in full force and effect, (b) the Commencement Date and the Rent Commencement Date, (c) that all rent is paid currently without any off-set or defense thereto, (d) the amount of rent, if any, paid in advance, (e) the amount of any security deposit held by Landlord hereunder, and (f) that there are no uncured defaults by Landlord or stating those claimed by Tenant; provided, that in fact such facts are accurate and ascertainable or stating any inaccuracies.

Section 11.02 Attornment. Tenant shall, in the event any proceedings are brought for the foreclosure of or in the event of exercise of the power of sale under any mortgage covering the Leased Premises, attorn to the purchaser upon any such foreclosure or sale and recognize such purchaser as the Landlord under this Lease, all at the option of such purchaser.

Section 11.03 Subordination. Tenant agrees that this Lease shall be subordinate to all mortgages that may affect the Apartment Building and to any and all advances to be made there under, and to the Interest thereon, and all renewals, replacements and extensions thereof; provided, that the holder(s) of such mortgages shall enter into a non-disturbance agreement with Tenant in substantially the form of Exhibit "C" attached hereto. Tenant also agrees that any mortgagor may elect to have this Lease as a prior encumbrance to its mortgage or deed of trust, and in the event of such election and upon notification by such mortgagor or trustee to Tenant to such effect, this Lease shall be deemed prior in lien to said mortgage or deed of trust, whether this Lease is dated prior to or subsequent to the date of said mortgage or deed of trust. Tenant agrees that upon the request of Landlord or any mortgagor, it shall execute whatever instruments may be reasonably required to further the intent of this Section 11.03 and Section 11.02.

ARTICLE XII - ASSIGNMENT AND SUBLETTING

Section 12.01 (a) Consent Required. Tenant agrees not to assign or in any manner transfer this Lease or any estate or Interest herein without the prior consent of Landlord, and not to sublet the Leased Premises or any part or parts thereof or allow any one to come in with, through or under it without like consent, which consent shall not be unreasonably withheld. Notwithstanding the foregoing, Tenant may assign this Lease or sublet the Leased Premises to a person or entity acquiring the Tenant or stock of Tenant without the prior consent of Landlord, provided Landlord is given sixty (60) days prior notice of such proposed assignment or transfer and Tenant demonstrates to Landlord's reasonable satisfaction that the proposed assignee or subtenant has a net worth in excess of $2 million. If Tenant is a corporation, the

issuance or transfer of any shares of stock of said corporation other than by public offering which results in a change in the ownership of (i) the voting control and/or (ii) the majority of the issued and outstanding stock of said corporation, as compared with such ownership on the date of this Lease, shall be deemed to be an assignment as set forth in the preceding sentence not receiving Landlord's consent. Consent by Landlord to one or more assignments if this Lease or to one or more subletting of the Leased Premises shall not operate to exhaust Landlord's rights under this Article XII. If Tenant, with or without the previous consent of Landlord, does assign or in any manner transfers this Lease or any estate or Interest herein, Tenant shall in no way be released from any of its obligations under this Lease.

## ARTICLE XIII - WASTE

Section 13.01 Waste or Nuisance. Tenant shall not commit or suffer to be committed any waste upon the Leased Premises or any nuisance or other act or thing which may disturb the quiet enjoyment of any other tenant in the Office Building. Tenant shall not use, or permit to be used; any medium that might constitute a nuisance, such as loud speakers, sound amplifiers, phonographs, radios, televisions, or any other sound-producing device which will carry sound outside the Leased Premises.

## ARTICLE XIV - ADVERTISING

Section 14.01 Solicitation of Business. Tenant and Tenant's employees and agents may solicit business in the parking lot or other common areas, and may distribute handbills and other advertising matter in the parking area or in other common areas.

## ARTICLE XV - DESTRUCTION OF LEASED PREMISES

Section 15.01 Reconstruction of Damaged Premises. In the event the Leased Premises shall be partially or totally destroyed by fire or other casualty insured against under the insurance carried by Landlord pursuant to this Lease so as to become partially or totally untenantable, the damage to the Leased Premises shall be repaired by Landlord, unless Landlord or Tenant shall elect to terminate this Lease as hereinafter provided, and a the Minimum Rent shall be abated from the date of the casualty until rebuilding is substantially complete meaning such state of completion as to allow Tenant to perform its usual and customary function without interference. The obligation of Landlord hereunder shall be limited to reconstructing the Leased Premises in accordance with the specifications attached hereto as Exhibit B and shall be further limited to the insurance proceeds paid to Landlord respecting the casualty in question. In no event shall Landlord be required to repair or replace Tenant's merchandise, trade fixtures,

furnishings or equipment. If, during the last three (3) years of the term hereof, as the same may have been extended previously, more than twenty-five percent (25%) of the Leased Premises or Office Building shall be damaged or destroyed by fire or other casualty, then either Landlord or Tenant may by notice to the other given within 45 days after the date of the casualty, elect to terminate this Lease effective as of the date of the casualty. If Landlord is required to repair or rebuild the Leased Premises as herein provided, Tenant shall repair or replace its merchandise, trade fixtures, furnishings and equipment in a manner and to at least a condition equal to that prior to its damage or destruction. Anything else herein to the contrary notwithstanding, upon report of casualty, Landlord shall have an engineering report performed by a reputable company which regularly performs casualty assessments, based upon the report, in the event of any damage or destruction to the Leased Premises by fire or other casualty wherein such damage or destruction is not substantially repaired with 120 days after Landlord's receipt of insurance proceeds with respect to such damage or destruction, but in no event later than one hundred eighty (180) days following such casualty, Tenant may, upon 30 days' notice to Landlord, terminate this Lease, unless the Leased Premises shall be substantially repaired during such 30-day period.

Section 15.02  Waiver of Subrogation. Each party hereto does remise, release and discharge the other party hereto and any commercial, agent, employee or representative of such party, of and from any liability whatsoever hereafter arising from loss, damage or injury caused by fire or other casualty for which insurance (permitting waiver of liability and containing a waiver of subrogation) is carried by the injured party at the time of such loss, (or is required to be carried pursuant to this Lease). Each party shall obtain such a waiver in all appropriate policies carried by it, if available without additional charge.

ARTICLE XVI - EMINENT DOMAIN

Section 16.01  Total Condemnation of Leased Premises. If the whole of the Leased Premises shall be taken by any public authority under the power of eminent domain, or by deed in lieu thereof, the term of this Lease shall cease as of the day possession shall be taken by such public authority and all rent shall be paid up to that day with a proportionate refund by Landlord of any rent as may have been paid in advance for a period subsequent to the date of taking.

Section 16.02  Partial Condemnation. If more than twenty-five percent (25%) of the Leased Premises or more than fifty percent (50%) of the common areas shall be taken under eminent domain, or by deed in lieu thereof, Landlord and Tenant shall each have the right to terminate this Lease and declare the same null and void,

by notice of such intention to the other party within thirty (30) days after such taking. In the event neither party exercises said right of termination, the term shall cease only as to the part of the Leased Premises so taken as of the day of possession of such public authority and Tenant shall pay rent respecting such part up to such day, with appropriate refund by Landlord of any rent as may have been paid in advance for a period subsequent to the date of taking, and thereafter all the terms herein provided shall continue in effect, except that the Minimum Rent and Tenant's Proportionate Share shall be reduced in proportion to the amount of any of the Leased Premises taken, and Landlord shall, at its own cost and expense, make all necessary repairs or alterations to the Leased Premises as originally installed by Landlord, so as to constitute the remaining Leased Premises a complete architectural unit, limited, however, as to cost, to the amount of the award received by Landlord on account of such taking.

Section 16.03 Awards. With respect to any taking by a public authority under the power of eminent domain, or by deed in lieu thereof, Tenant shall be entitled to bring a claim against the condemning authority for a separate award to compensate Tenant for damage to its trade fixtures and inventory, Tenant's business relocation costs and the like; provided, that in no event shall Tenant be entitled to compensation for the loss of its leasehold.

Section 16.04 Notice of Condemnation. Landlord shall promptly give Tenant written notice of and condemnation proceedings affecting the Leased Premises or the Office Building.

ARTICLE XVII - DEFAULT BY TENANT

Section 17.01 Default. Tenant shall be in default hereunder if (a) Tenant fails to pay, when due, Minimum Rent, Additional Rent or any other sums due under this Lease and such default shall continue for more than one thousand (1000) days after written notice from Landlord to Tenant; or (b) Tenant fails to observe and perform any of the other terms, covenants and/or conditions of this Lease and such default shall continue for more than one thousand (1000) days after written notice from Landlord to Tenant; or (c) Tenant fails to pay when due the Minimum Rent, Additional Rent or any other sums payable under this Lease twelve (12) or more times in a period of twelve (12) consecutive months; or (d) the Leased Premises shall be abandoned, deserted or vacated, or if Tenant fails to take possession of the Leased Premises and initially open for business to the public as required hereunder. If the nature of a default under Section 17.01(b) is such that it cannot reasonably be cured within the aforesaid cure period, and work thereon shall be commenced within said period and diligently prosecuted to completion, then Landlord's rights under Section 17.02 with respect to such default only shall be inapplicable. The Leased Premises

and all trade fixtures, equipment and inventory therein shall be conclusively deemed abandoned by Tenant upon (a) five (5) consecutive days absence from the Leased Premises, together with the failure to pay Minimum Rent, Additional Rent or (b) removal of all or a substantial portion of Tenant's trade fixtures, equipment or inventory from the Leased Premises, together with a failure to pay Minimum Rent. In either such event and in addition to Landlord's remedies set forth in Section 17.02, Landlord may enter the Leased Premises and may remove all remaining trade fixtures, equipment and inventory at Tenant's expense. All such property shall, at Landlord's option, become the property of Landlord, or said property may be placed in storage at Tenant's cost and expense, or sold or otherwise disposed of, in which event the proceeds of such sale or other disposition shall belong to Landlord.

Section 17.02  Landlord's Rights Upon Default.

A. In the event of any default by Tenant, Landlord may (1) cure Tenant's default at Tenant's cost and expense, and/or (2) enter the Leased Premises and remove all persons and all or any property there from, by any suitable action or proceeding at law, and repossess and enjoy the Leased Premises, with all additions, alterations and improvements, and Landlord may, at its option, reasonably repair, alter, remodel and/or change the character of the Leased Premises as it may deem fit, and/or (3) at any time relet the Leased Premises or any part or parts thereof, as the agent of Tenant or in Landlord's own right, and/or (4) terminate this Lease upon not less than five (5) days notice to Tenant. The exercise by Landlord of any right granted in this Section 17.02 shall not relieve Tenant from the obligation to make all rental payments, and to fulfill all other covenants required by this Lease, at the time and in the manner provided herein, and if Landlord so desires all current and future rent and other monetary obligations due hereunder, less the fair rental value of the Leased Premises, shall become immediately due and payable, provided that such sum does not exceed twelve (12) months of the current rent. Tenant, throughout the remaining term hereof, shall pay Landlord, no later than the last day of each month during the term, the then current excess, if any, of the sum of the unpaid rentals and costs to Landlord resulting from such default by Tenant over the proceeds, if any, received by Landlord from any reletting of the Leased Premises, but Landlord shall have no liability to account to Tenant for any excess. If Landlord attempts to relet the Leased Premises, Landlord act reasonably with respect to whether or not a proposed tenant is suitable and acceptable. Nothing contained herein shall relieve Landlord of its duty to mitigate damages.

B. In the event of a breach by Tenant of any of the covenants or provisions hereof, Landlord shall have, in addition to

any other remedies which it may have the right to invoke, any remedy allowed at law or in equity to enforce Landlord's rights.

Section 17.03  Non-Waiver Provisions.

A.  The failure of Landlord to insist upon a strict performance of any of the terms, conditions or covenants herein shall not be deemed to be a waiver of any rights or remedies that Landlord may have and shall not be deemed a waiver of any subsequent breach or default in the terms, conditions and covenants herein contained, except as may be expressly waived in writing.

B.  The maintenance of any action or proceeding to recover possession of the Leased Premises, or any installment or installments of rent or any other monies that may be due or become due from Tenant to Landlord, shall not preclude Landlord from thereafter instituting and maintaining subsequent actions or proceedings for the recovery of possession of the Leased Premises or of any other monies that may be due or become due from Tenant. Any entry, re-entry or Lockout by Landlord shall not be deemed to absolve or discharge Tenant from liability hereunder.

Section 17.04  Landlord's Expenses.  If Tenant shall at any time be in default hereunder, and if Landlord shall deem it necessary to engage attorneys to enforce Landlord's rights hereunder, the determination of such necessity to be in the sole reasonable discretion of Landlord, Tenant will reimburse Landlord for the reasonable expenses incurred thereby, including but not limited to court costs, reasonable administrative charges and reasonable attorney's fees, both at trial and on appeal, if Landlord prevails in said litigation.

ARTICLE XVIII - ACCESS BY LANDLORD

Section 18.01  Right of Entry.  Landlord or Landlord's agent shall have the right to enter the Leased Premises at all reasonable times, upon prior notice to, and accompanied (except where imminent danger to person or property is threatened) by, Tenant to examine the same and to show them to prospective purchasers or mortgagors respecting the Office Building, and to make such repairs, alterations, improvements or additions as Landlord may deem necessary or desirable (without unreasonably disrupting Tenant's business and using its best effort to minimize such disruption) and Landlord shall be allowed to take all material into and upon the Leased Premises that may be required therefor without the same constituting an eviction of Tenant in whole or in part, and the rent reserved shall in no way abate while said repairs, alterations, improvements or additions are being made, by reason of loss or interruption of business of Tenant, or otherwise. During the twelve (12) months prior to the expiration of the term of this

Lease, Landlord may exhibit the Leased Premises to prospective tenants and place upon the Leased Premises the usual notice "Available", "For Sale" or "For Rent", which notices Tenant shall permit to remain thereon without molestation.

## ARTICLE XIX - TENANT'S PROPERTY/PERSONS

Section 19.01 Loss and Damage. Landlord shall not be responsible or liable to Tenant, its employees, customers, guests or invitees for any loss, damage or personal injury that may be occasioned by or through the acts or omissions of persons occupying adjoining premises or any part of the premises adjacent to or connected with the Leased Premises or any part of the building of which the Leased Premises are a part, or for any loss or damage resulting to Tenant or its property from bursting, stoppage or leakage of water, gas, sewer or steam pipes or for any damage of property within the Leased Premises from any cause whatsoever unless such damage is caused by the intentional act or negligence or breach of this Lease by Landlord, its agents, contractors or employees.

Section 19.02 Notice by Tenant. Tenant shall give immediate notice to Landlord in case of fire or accidents in the Leased Premises or in the building of which the Leased Premises are a part or in the case of defects therein or in any fixtures or equipment.

## ARTICLE XX - HOLDING OVER AND SURRENDER OF LEASED PREMISES

Section 20.01 Holding Over. Any holding over by Tenant or anyone acting through Tenant after the expiration of the term or default without the consent of the Landlord, shall be construed to be a tenancy from month to month (at 10%) of the last adjusted monthly Minimum Rent herein specified), and shall otherwise be on the same terms and conditions herein specified so far as applicable.

Section 20.02 Surrender of Premises.

A. At the expiration of the tenancy hereby created, Tenant shall surrender the Leased Premises in good condition, reasonable wear and tear excepted, and damage by unavoidable casualty excepted to the extent that the same is covered by Landlord's fire insurance policy with extended coverage endorsement, and Tenant shall surrender all keys for the Leased Premises to Landlord at the place then fixed for the payment of rent and shall inform Landlord of all combinations on locks, safes and vaults, if any, in the Leased Premises. Tenant's obligation to observe and perform this covenant shall survive the expiration or other termination of the term. If Tenant shall default in so surrendering the Leased Premises, Tenant's occupancy, subsequent to such expiration, shall be deemed

Case 2:25-cv-00044-GAM    Document 32-4    Filed 06/02/25    Page 23 of 29

to be that of a tenancy at will and in no event shall it be deemed from month to month or from year to year, and it shall be subject to all the terms, covenants and conditions of this Lease applicable thereto, except that Minimum Rent shall be ten percent (10%) the amount payable in the last Lease Year, and no extension or renewal of this Lease shall be deemed to have occurred by such holding over.

B.    Prior to the expiration or sooner termination of this Lease, Tenant shall remove any and all trade fixtures, inventory and other unattached items which Tenant may have installed, stored or left in the Leased Premises or elsewhere in the Commercial Building, including but not limited to counters, shelving, showcases, chairs and movable machinery purchased or provided by Tenant and which are susceptible to being moved without damage to the building.    Tenant shall repair any damage to the Leased Premises caused by its removal of such fixtures and movables.    In the event Tenant does not make such repairs, Tenant shall be liable for and agrees to pay Landlord's costs and expenses in making such repairs, together with a sum equal to one hundred percent (100%) of such costs and expenses to cover Landlord's overhead in making such repairs for Tenant.    Tenant shall not remove any plumbing or electrical fixtures or equipment, heating or air conditioning equipment, floor coverings (including, but not limited, to wall to wall carpeting), walls or ceilings, all of which shall be deemed to constitute a part of the reversionary Interest of Landlord, nor shall Tenant remove any fixtures or machinery that were furnished or paid for by Landlord (whether initially installed or replaced). The Leased Premises shall be left in a broom-clean condition.    If Tenant shall fail to remove its trade fixtures or other property as provided for in this Section 20.02, such fixtures and other property not removed by Tenant shall be deemed abandoned by Tenant and at the option of Landlord shall become the property of Landlord, or at Landlord's option may be removed by Landlord at Tenant's expense plus fifteen percent (15%) as hereinabove provided, or placed in storage at Tenant's expense, or sold or otherwise disposed of, in which event the proceeds of such sale or other disposition shall belong to Landlord, but shall offset any amounts owed by Tenant hereunder.    This Section 20.02 shall survive the expiration or termination of the term.

Section 20.03 Successors.    All rights and liabilities herein given to, or imposed upon, the respective parties hereto shall extend to and bind the several respective heirs, legal representatives, successors and assigns of the parties, as the case may be.    If there shall be more than one Tenant, they shall all be bound jointly and severally by the terms, covenants and agreements herein.    No rights, however, shall inure to the benefit of any assignee of Tenant unless the assignment to such assignee has been approved by Landlord as provided in Section 12.01.

## ARTICLE XXI - RULES AND REGULATIONS

Section 21.01 <u>Rules and Regulations</u>.  Tenant shall comply with and observe all reasonable rules and regulations established by Landlord from time to time, so long as they apply uniformly to all tenants of the Apartment Building and do not conflict with the terms of this Lease, increase any liability or obligation of Tenant, or diminish any of its right hereunder.  Landlord shall provide Tenant with copies of any new rules and regulations, or modifications to the same, at least thirty (30) days prior to the effective date of such rules and regulations.  Tenant's failure to keep and observe said rules and regulations shall constitute a breach of this Lease in the same manner as if the same were contained herein as covenants.

## ARTICLE XXII - QUIET ENJOYMENT

Section 22.01 <u>Landlord's Covenant</u>.  Upon payment by Tenant of the rents herein provided, and upon the observance and performance of all the covenants, terms and conditions on Tenant's part to be observed and performed, Tenant shall peaceably and quietly hold and enjoy the Leased Premises for the term without hindrance or interruption by Landlord or any other person or persons lawfully or equitably claiming by, through or under Landlord, subject, nevertheless, to the terms and conditions of this Lease, and (subject to <u>Article XI</u>) any mortgages to which this Lease may be subordinate.

## ARTICLE XXIII

### INTENTIONALLY OMITTED

Section 24.03 <u>Tenant's Responsibilities</u>.

A.    All alterations made in the Leased Premises by Tenant or any other tenant of the Leased Premises shall be in accordance with and shall comply with all applicable Environmental Laws and the applicable requirements of all Enforcement Agencies.

B.    Within One Hundred Eighty (180) days after request therefor, Tenant shall provide all information requested from time to time by Landlord, or by any Enforcement Agency, for the preparation of notices, submissions or affidavits.  Within One Hundred Eighty (180) days after request therefor, Tenant shall execute and deliver any document reasonably required in order for Landlord or Tenant to comply with any Environmental Law.

C.    Tenant shall promptly deliver to Landlord copies of all notices made by it to, or received by it from, any Enforcement Agency or from the United States Occupational Safety and Health Administration concerning environmental matters or Hazardous

Substances at the Leased Premises.

D.    Tenant shall indemnify, defend and hold Landlord harmless of and from any and all claims arising by reason of any violation by Tenant of the provisions of any environmental concerns and this indemnity shall survive the expiration or other termination of this Lease.

ARTICLE XXV - MISCELLANEOUS

Section 25.01  Waiver.  One or more waivers by Landlord of any covenant or condition shall not be construed as a waiver of a subsequent similar act by Tenant.  No breach of a covenant or condition of this Lease shall be deemed to have been waived by Landlord, unless such waiver is in writing and is signed by Landlord.

Section 25.02  Entire Agreement.  This Lease and the Exhibits attached hereto and forming a part hereof, set forth all the covenants, promises, agreements, conditions and understandings between Landlord and Tenant concerning the Leased Premises and there are no covenants, promises, agreements, conditions or understandings, either oral or written, between them other than as are herein set forth.  No alterations, amendments, changes or additions to this Lease shall be binding upon Landlord or Tenant unless reduced to writing and signed by each party.

Section 25.03  Interpretation and Use of Pronouns.  Nothing contained herein shall be deemed or construed by the parties hereto, nor by any third party, as creating the relationship of principal and agent or of partnership or of joint venture between the parties hereto, it being understood and agreed that neither the method of computation of rent, nor any other provisions contained herein, nor acts of the parties hereunder, shall be deemed to create any relationship between the parties hereto other than the relationship of landlord and tenant.  Whenever herein the singular number is used, the same shall include the plural, and the masculine gender shall include the feminine and neuter genders.

Section 25.04  Delays.  In the event that either party shall be delayed or hindered in or prevented from the performance of any act required hereunder by reason of strikes, lockouts, labor troubles, inability to procure materials, failure of power, riots, insurrection, war or other reason of a like nature not the fault of the party delayed in performing work or doing acts required under this Lease, then performance of such act shall be excused for the period of the delay and the period for the performance of any such act shall be extended for a period equivalent to the period of such delay.  The party entitled to such extension hereunder shall give notice as soon as possible to the other party of its claim of right

to such extension and the reason(s) therefor.  Notwithstanding the foregoing, the provisions of this Section 25.04 shall not operate to excuse Tenant from prompt payment of rent or any other payments required by this Lease.

Section 25.05  Notices.  Any notice, demand, request or other communication which may be or is required to be given under this Lease shall be given by United States certified mail, return receipt requested, postage prepaid and shall be addressed (a) if to Landlord, at the address first hereinabove given or at such other address as Landlord may designate by notice, and (b) if to Tenant, at its address first hereinabove specified or at such other address as Tenant shall designate by notice.  All such communications shall be deemed given five (5) days from when deposited, properly addressed postage paid, in the United States mail, as herein provided, regardless of whether the same is undelivered or the addressee should refuse to accept delivery thereof for any reason.

Section 25.06  Captions and Section Numbers.  The captions, section numbers and article numbers appearing in this Lease are inserted only as a matter of convenience and in no way define, limit, construe or describe the scope or intent of such sections or articles nor in any way affect this Lease.

Section 25.07  Broker's Commission.  Each of the parties represents and warrants that there are no claims for brokerage commissions or finder's fees nor has any party dealt with any broker or agent in connection with the execution of this Lease and for which each of the parties agrees to indemnify the other against, and hold it harmless from, all liabilities arising from any such claims made through it (including, without limitation, the cost of reasonable counsel fees in connection therewith).

Section 25.08  Recording.  Tenant shall not record this Lease without the consent of Landlord.

Section 25.09  Furnishing of Financial Statement.  Upon Landlord's request, in order to aid Landlord in financing or refinancing the Office Building, Tenant shall promptly furnish Landlords Lender, within One Hundred Eighty (180) days of request from Landlord or Lender, non-certified financial information reflecting Tenant's current financial condition. Tenant is only required to provide once within a 365day period.  Said statements are to held in the strictest confidence and shall only be disclosed to Landlord's accountants and lawyers for purposes of financing or refinancing the Office Building and for no other purpose.

Section 25.10  Transfer of Landlord's Interest.  In the event of any transfer of Landlord's Interest in the Leased Premises, the transferor shall be automatically relieved of any and all

25

obligations and liabilities on the part of the Landlord accruing from and after the date of such transfer.

Section 25.11  Interest on Past Due Obligations.  Any amount due from Tenant to Landlord hereunder which is not paid when due shall bear Interest at the rate of eighteen percent (18%) per annum compounded from the default date until paid, but the payment of such Interest shall not excuse or cure any default by Tenant under this Lease.

Section 25.12  Liability of Landlord.  If Landlord shall fail to perform any covenant, term or condition of this Lease upon Landlord's part to be performed, and if, as a consequence of such default, may set off such amounts from minimum rent, additional rent or other sums due hereunder provided Tenant incurs and pays such cost or expense.  Tenant shall recover a money judgment against Landlord, such judgment shall be satisfied only out of the proceeds of sale received upon execution of such judgment and levied thereon against the right, title and Interest of Landlord in the Office Building and out of rents and other income from such property receivable by Landlord, and neither Landlord nor any of its shareholders and/or partners shall be liable for any deficiency.

Section 25.13  Accord and Satisfaction.  No payment by Tenant or receipt by Landlord of a lesser amount than the rents herein stipulated shall be deemed to be other than on account of the earliest stipulated rent, nor shall any endorsement or statement on any check or any letter accompanying any check or payment as rent be deemed an accord and satisfaction and Landlord may accept such check or payment without prejudice to Landlord's right to recover the balance of such rent or pursue any other remedy in this Lease provided.

Section 25.14  Laws of the State Where the Premises are Situated.  This Lease shall be governed by, and construed in accordance with, the laws of the State wherein the Leased Premises are situated.  If any provision of this Lease or the application thereof to any person or circumstances shall, to any extent, be invalid or unenforceable, the remainder of this Lease shall not be affected thereby and each provision of the Lease shall be valid and enforceable to the fullest extent permitted by the law.

26

"LANDLORD"
Jenkins Court Realty Co. L.P.
By Its General Partner

By: _____
Philip Pulley, President its GP


"TENANT"
Jenkins Storage. LLC

By: _____


"TENANT"

By: _____
LISA MAUKE president

27

## Exhibit A

## Landlord Work

1.    "As Is Where Is"
2.    No Landlord Work

Case 2:25-cv-00044-GAM    Document 34-5    Filed 06/16/25    Page 1 of 15

# EXHIBIT "C"

*Exhibit 5*

## Phil Pulley

| | |
|---|---|
| **From:** | Jonathan Siegel <jon@povernisheikh.com> |
| **Sent:** | Wednesday, August 2, 2023 11:54 AM |
| **To:** | Phil Pulley; avinash |
| **Cc:** | Greg Kostrikin; Jacob Ansbacher |
| **Subject:** | Re: 610 Old York Rd Jenkintown Equity Investment Report & Copies of Draw Request |
| **Attachments:** | Closing Checklist 8.1.23.pdf |

Phil,

In anticipation of our imminent call, please see attached an additional updated checklist. We will discuss a few key items on the call and then let you digest it more fully. I just wanted to get you a copy so we could literally be on the same page.

Best,

Jonathan Siegel, Esq.
General Counsel
PSG Lending, LLC

---

**From:** Jonathan Siegel
**Sent:** Wednesday, August 2, 2023 10:33 AM
**To:** Phil Pulley <ppulley@sbgmanagement.com>; Avinash Ramesh <avinash@psglending.com>
**Cc:** Greg Kostrikin <greg@povernisheikh.com>; Jacob Ansbacher <jansbacher@poverni.com>
**Subject:** RE: 610 Old York Rd Jenkintown Equity Investment Report & Copies of Draw Request

Phil,

We'll reschedule for noon. Thanks.

Best,

Jonathan Siegel, Esq.
General Counsel
PSG Lending, LLC

**From:** Phil Pulley <ppulley@sbgmanagement.com>
**Sent:** Wednesday, August 2, 2023 10:12 AM
**To:** Avinash Ramesh <avinash@psglending.com>
**Cc:** Jonathan Siegel <jon@povernisheikh.com>; Greg Kostrikin <greg@povernisheikh.com>; Jacob Ansbacher <jansbacher@poverni.com>
**Subject:** RE: 610 Old York Rd Jenkintown Equity Investment Report & Copies of Draw Request

**CAUTION:** External Email. Do not click links or open attachments unless you recognize the sender and know the content is safe.

Did you see we declined the meeting?

Have call with Starbucks at 11 will take an hour.

1

Phil

**Philip C. Pulley**
**SBG Management Services, Inc.**
**P.O. Box 549**
**Abington, PA 19001**
**215.938.6665 ext. 2001**
**215.935.6987 fax**
**Email: phil@sbgmanagement.com**
**Web: www.sbgmanagement.com**



**Disclaimer**
The information contained in this communication from the sender is confidential. It is intended solely for use by the recipient and others authorized to receive it. If you are not the recipient, you are hereby notified that any disclosure, copying, distribution or taking action in relation of the contents of this information is strictly prohibited and may be unlawful.

This email has been scanned for viruses and malware, and may have been automatically archived by Mimecast, a leader in email

2

security and cyber resilience. Mimecast integrates email defenses with brand protection, security awareness training, web security, compliance and other essential capabilities. Mimecast helps protect large and small organizations from malicious activity, human error and technology failure; and to lead the movement toward building a more resilient world. To find out more, visit our website.

3

**Updated: 8/1/2023**

## 610 OLD YORK ROAD, JENKINTOWN, PA 19046

### $20,500,000 Term/Construction Loan

### CLOSING CHECKLIST

| | |
|---|---|
| TARGET CLOSING DATE: | [-], 2023 |
| LENDER: | PSG LENDING LLC<br>6711 Columbia Gateway Drive, Suite 130<br>Columbia, MD 21046 |
| MAXIMUM PRINCIPAL LOAN AMOUNT: | $20,500,000.00 |
| BORROWER: | Jenkins Court Realty Co., L.P.<br>c/o SBG Management Services, Inc.<br>P.O. Box 549<br>Abington, PA 19001 |
| GUARANTOR: | Philip Pulley |
| PROPERTY MANAGER: | SBG Management Services Inc. |
| PROPERTY: | 610 Old York Road, Jenkintown, PA 1946 |

1

Updated: 8/1/2023

| REQUIREMENTS | RESPONSIBLE PARTY | STATUS / COMMENTS |
|---|---|---|
| **A.  BASIC LOAN DOCUMENTS** | | |
| 1.  Loan Agreement | Lender | |
| 2.  Promissory Note | Lender | |
| 3.  Open-End Mortgage | Lender | |
| 4.  Assignment of Leases and Rents | Lender | |
| 5.  Guaranty Agreement | Lender | |
| 6.  Environmental Indemnity Agreement | Lender | |
| 7.  Assignment of Management Agreement | Lender | |
| 8.  Assignment of Contracts and Permits | Lender | |
| 9.  Fee Letter | Lender | |
| 10.  Certificate of Business Plan and Budget | Lender | |
| 11.  Cash Management Agreement / Deposit Account Control Agreement | Lender | |
| 12.  Partnership Interest Pledge Agreement | Lender | |
| 13.  UCC-1 Financing Statements | Lender | |
| (a)  Secretary of State | Lender | |
| (b)  County | Lender | |
| 14.  Settlement Statement | Borrower/ Lender | |
| **B.  TITLE DOCUMENTS** | | |
| 1.  Title Commitment | Borrower/TC | Proforma Rec'd 7/17; Under Review |
| 2.  Lender's Title Policy | Borrower/TC | |
| 3.  Insured Closing Letter | Borrower/TC | |
| 4.  Certified Lien Searches on Borrower and Guarantor | Borrower/TC | Rec'd 6/15 and under review |

2

Appx1293

Updated: 8/1/2023

| REQUIREMENTS | RESPONSIBLE PARTY | STATUS / COMMENTS |
|---|---|---|
| **C.** **PROPERTY AND PROPERTY MANAGER INFORMATION** | | |
| 1. Certified current year-to-date operating statement for the Property (to be updated immediately prior to closing) plus 2 years P/L and balance sheet | Borrower | |
| 2. Certified current rent roll for the Property (to be updated immediately prior to closing), including any delinquency history and tenant ledgers | Borrower | |
| 3. Reconciliation of all CapEx and improvements including land acquisition costs to date | Borrower | |
| 4. Other financial statements for the Property | Borrower | Waived |
| 5. (a) Stacking plan<br>(b) Two-year maintenance logs | Borrower | |
| 6. Form Lease, if applicable | Borrower | N/A |
| 7. Utility Bills | Borrower | |
| 8. Copies of Real Estate Bills | Borrower | |
| 9. Full Development Budget (inclusive of all expended costs) and ledge of all cash invested to date | Borrower | |
| 10. Flood Certification/Insurance | Borrower | |

3

Updated: 8/1/2023

| Requirements | Responsible Party | Status / Comments |
|---|---|---|
| 11. Management Agreement | Borrower | |
| 12. ACORD Certificates evidencing insurance coverage acceptable to Lender (including builder's all risk/policy with no exclusion for terrorism; one (1) year premium to be paid at closing; and statement/letter from proposed new insurance agent detailing the terms of coverage, limits of coverage, premium amount and contact person) | Borrower | |
| 13. Any required City/State-Specific Certificates | Borrower | |
| **D. TENANT DOCUMENTS** | | |
| 1. Copies of Existing Leases | Borrower | |
| 2. Subordination, Nondisturbance, and Attornment Agreements | Borrower/ Tenant | |
| 3. Estoppels | Borrower / Tenant | |
| 4. Copies of all tenant underwriting files | Borrower | |
| **E. AUTHORITY DOCUMENTS** | | |
| 1. Authority Documents of Jenkins Court Realty Co., L.P. (Borrower) | | |
| (a) Certificate of Organization (certified by Secretary of State within 30 days of closing) | Borrower | |
| (b) Operating Agreement | Borrower | |
| (c) Certificate of Existence/Good Standing (dated within 30 days of closing) | Borrower | |
| (d) Consent of Members | Borrower | |
| (e) Manager / Officer Certificate with Resolutions and Certificate of Incumbency and Authority | Borrower | |
| (f) Evidence of EIN | Borrower | |
| (g) W-9 for Borrower | | |

4

Updated: 8/1/2023

| REQUIREMENTS | RESPONSIBLE PARTY | STATUS / COMMENTS |
|---|---|---|
| 2. Authority Documents of Old Jenkins Corporation (GP of Borrower) | | |
| (a) Articles of Incorporation (certified by Secretary of State within 30 days of closing) | Borrower | ███ |
| (b) Bylaws | Borrower | ███ |
| (c) Certificate of Existence/Good Standing (dated within 30 days of closing) | Borrower | ███ |
| (d) Omnibus Consent | Borrower | ███ |
| (e) General Partner Certificate with Resolutions and Certificate of Incumbency and Authority | Borrower | ███ |
| (f) Evidence of EIN | Borrower | ███ |
| 3. Authority Documents of Guarantor | | |
| (a) Certified Financial Statements | Borrower | ███ |
| 4. Organizational Chart of Borrower | Borrower | ███ |
| **F. GUARANTOR** | | |
| 1. Liquidity verification of cash equivalents (6 months bank and brokerage statements. | Guarantor | Please provide |
| 2. Personal financial statements | Guarantor | ███ |
| 3. Copies of filed tax returns for the last 2 years and any current extensions | Guarantor | ███ |
| 4. List of three (3) banking references | Guarantor | ███ |
| **G. OPINIONS** | | |

5

<u>**Updated: 8/1/2023**</u>

| REQUIREMENTS | RESPONSIBLE PARTY | STATUS / COMMENTS |
|---|---|---|
| 1. Local Counsel Opinion of Borrower's and Guarantor's Counsel | Borrower/BC | ▓▓▓ |
| **H. GENERAL** | | |
| 1. Property Condition Report | Lender | ▓▓▓ |
| 2. Environmental Site Assessment | Borrower/ Lender | ▓▓▓ |
| 3. Appraisal | Lender | ▓▓▓ |
| 4. Survey | Borrower | ▓▓▓ |
| 5. Copies of Permits (including commercial, zoning and building) | Borrower | ▓▓▓ |
| 6. Copies of Licenses | Borrower | ▓▓▓ |
| 7. Zoning Report <br> (a) ~~Approval of~~ condominium / variance | Borrower/ Lender | ▓▓▓ |
| 8. Litigation Schedule | Borrower | ▓▓▓ |

6

Updated: 8/1/2023

| REQUIREMENTS | RESPONSIBLE PARTY | STATUS / COMMENTS |
|---|---|---|
| 9. Copies of Plans and Specifications *for New Construction*<br><br>(a) Architectural<br>(b) Structural<br>(c) MEP<br>(d) Civil<br><br>NOTE: Plans and Specifications must be permitted and buildable *prior to* Lender funding construction budget; scope of work insufficient | Borrower | |
| 10. General Contractor's Agreement | Borrower | |
| 11. General Contractor's Resume and License Information | Borrower | |
| 12. Construction Schedule | Borrower | |
| 13. Wiring Instructions | Borrower/TC | |

7

Appx1298

Updated: 8/1/2023

ANNEX 1

| | Lease Information | Tenant | Estoppel NEED ALL | Comments |
|---|---|---|---|---|
| 1. | Office Lease Agreement dated October 9, 2017 for 10,083 rentable square feet | Bethany Christian Services of Greater Delaware Valley | | |
| 2. | Letter Memorializing Agreement dated March 19, 2021 for Suites 670 and 676 | Black Leaf Hemp Store | | |
| 3. | Lease Agreement dated April 3, 2017 for Suite 210 (1,436 rentable square feet)  First Amendment to Lease Agreement dated April 1, 2018 | David R. Machek | | |
| 4. | Lease dated 2021  First Amendment to Lease Agreement dated February 1, 2022  Second Amendment to Lease dated February 1, 2023 | Dogtopia | | |
| 5. | License Agreement dated May 25, 2017  First Amendment to Lease dated April 14, 2020 | JJLH of Jenkintown LLC/Faulkner | | |
| 6. | Lease Agreement dated February 2017  First Amendment to Lease Agreement dated April 1, 2018 | Coracias Advance Technologies, LLC | | |
| 7. | Lease dated December 15, 2018 for Suite 340 | Goldstein Law Partners, LLC | | |

8

Updated: 8/1/2023

| | | | | |
|---|---|---|---|---|
| 8. | Lease dated March 2022 for Suite 640 (4,069 rentable square feet) | Helping Hands | | |
| 9. | Lease dated January 2022 for Suite 100 and 300 (39,623 rentable square feet)<br><br>First Amendment dated June 1, 2023 | SSS Education, Inc./Jersey School | | |
| 10. | Office Lease Agreement dated May 4, 2017 for Suite 107 (2,398 rentable square feet) | Loanability, Inc. | | |
| 11. | Fourth Amendment to Agreement of Lease dated October 1, 2013 for Suite 70 (3,640 rentable square feet) | Mark Kress, M.D. | | |
| 12. | Lease dated May 1, 1992 (6,670 rentable square feet)<br><br>First Addendum to Lease dated July 13, 1992<br><br>Second Amendment to Lease dated February 13, 2002<br>Third Amendment to Lease dated May 7, 2010 | Outback Steakhouse of Florida, LLC | | |
| 13. | Lease dated August 1, 2021<br><br>First Amendment to Lease Agreement dated February 1, 2022<br><br>Second Amendment to Lease dated February 1, 2023 | Precious One | | |
| 14. | Lease dated November 1, 2017 for Suite 375 (8,000 square rentable feet) | SBG Management Services, Inc. | | Missing evidence that lease extended past January 2023 |
| 15. | Unexecuted Commercial Lease | Starbucks Corporation | | |
| 16. | Lease dated February 1, 2019 for Suite G100 | Jenkins Storage, LLC | | |
| 17. | Office Lease Agreement dated October 5, 2015 for | RGN-Jenkintown I, LLC | | |

9

Appx1300

Updated: 8/1/2023

| | | | |
|---|---|---|---|
| | Suite 400 (14,133 rentable square feet) | | |
| 18. | Parking Space Rental Agreement dated March 21, 2022 | Trumark | |
| 19. | Unexecuted Lease | Tiny Town | |
| 20. | Letter Memorializing Agreement dated March 19, 2021 for Suites 670 and 676 | Black Leaf Group Aqua | |
| 21. | Letter Memorializing Agreement dated March 19, 2021 for Suites 670 and 676 | Black Leaf Group Plants | |
| 22. | Lease Agreement dated April 1, 2017 <br><br> Letter Memorializing Agreement dated February 15, 2022 | Luv2Knit | |
| 23. | | Nextel Sprint | |
| 24. | | Colum. Tele | |
| 25. | | GTP Towers Am. IX Metro | |
| 26. | Rec'd Letter extension dated February 15, 2022 | GTP Towers IX Zayo Group | |
| 27. | | Verizon | |
| 28. | | Sprint PCS | |
| 29. | Agreement of Lease dated February 28, 2022 | Temple University Health System, Inc./Temple Fox Chase | |
| 30. | Office Lease Agreement dated January 2007 <br><br> First Amendment to Office Lease Agreement dated November 3, 2009 <br><br> Second Amendment to Office Lease Agreement dated March 11, 2013 | Kaplan Nathan & Genter | |

10

Updated: 8/1/2023

| | | | | |
|---|---|---|---|---|
| | Third Amendment to Office Lease Agreement dated April 12, 2016<br><br>Fourth Amendment to Lease Agreement dated March 29, 2018<br><br>Sixth Amendment to Lease Agreement dated March 30, 2022 | | | |
| 31. | Letter Memorializing Agreement dated March 9, 2020 | Sezai Saran | | |
| 32. | Letter Memorializing Agreement dated January 18, 2022 | Grab and Go | | |
| 33. | Display Lease Agreement dated December 6, 2020 | Catalyst | | |

11

Appx1302

# EXHIBIT "D"

*Exhibit 26*

**Phil Pulley**

| | |
|---|---|
| **From:** | Jonathan Siegel <jon@povernisheikh.com> |
| **Sent:** | Friday, September 8, 2023 11:12 AM |
| **To:** | JSchuman; Najafali, Jaleh; Phil Pulley; Jonathan Bodner |
| **Cc:** | Eugene Poverni; Greg Kostrikin; Jacob Ansbacher; Shoumer, Steven; Ketkar, Leena; myanoff@goldsteinlp.com |
| **Subject:** | Re: Jenkins Phil Pulley Final Items |
| **Attachments:** | Closing Checklist 9.8.pdf |

Phil,

In anticipation of our call this afternoon, here is an updated list from last week of the critical items. I have also included the full checklist for your review. At this point, aside from the post-closing items, this list below should be our main focus. Thanks.

TITLE ITEMS (Critical to Lender)

1. **Zoning Report** - Ordered (Rush) - Expected Next Week
2. **Final Survey Certified to Lender** - updated to include Zoning Report and BR minor comments
3. **Mechanic's Liens Waivers** - 5 Received (9/7) - How many more expected?
4. **Authorizing Resolutions** - Borrower Legal to Provide
5. ~~2023 School Tax Paid - Verified orally~~
6. **Budget for Capital Improvements** - (1) Waivers for work done, (2) Vendor Contracts, (3) Cost-to-complete budget - "In process" per Phil
7. **M360 Payoff Quotes** - Phil pushing
8. **Lien Searches** - BR review (no red flags thus far)
9. **Sewer** - current paid balance

UNDERWRITING

10. **Estoppels** - please update Temple leases - Discuss on Call
11. **SNDA** - Jersey College
12. **Equity Reconciliation** - Almost wrapped up. Looking for acquisition settlement and receipts for POC items, if available
13. **Jersey College Financials**
14. ~~Flood Narrative - Please provide a paragraph on the source of the flood, remediation efforts, and current status (including any insurance disputes).~~

PARTNER / DRAW REQUEST

1. **Budget** - Per lender and title, please line-item budget per vendor with: (a) cost spent to date, (b) remaining costs, and (c) estimated completion percentage.
2. **Lien Releases** (as stated above, Rec'd 5 out of X)
3. **Contracts** - Borrower states no contracts
4. **General Contractor Agreement** - Per checklist, required for 2nd Draw any beyond. Ideally in place before closing.

1

## NON-CRITIAL PATH

1. **Loan Docs Negotiated** - lender comments sent today
2. **Opinion of Borrower's Local Counsel**

Jonathan Siegel, Esq.
**General Counsel**
**PSG Lending, LLC**

---

**From:** Jill E. Schuman, Esq. <JSchuman@fsalaw.com>
**Sent:** Tuesday, September 5, 2023 3:37 PM
**To:** Najafali, Jaleh <Jaleh.Najafali@BlankRome.com>; Phil Pulley <ppulley@sbgmanagement.com>; Jonathan Siegel <jon@povernisheikh.com>; Jonathan Bodner <jonathan@twobinscapital.com>
**Cc:** Eugene Poverni <e@poverni.com>; Greg Kostrikin <greg@povernisheikh.com>; Jacob Ansbacher <jansbacher@poverni.com>; Shoumer, Steven <steven.shoumer@blankrome.com>; Ketkar, Leena <leena.ketkar@blankrome.com>; myanoff@goldsteinlp.com <myanoff@goldsteinlp.com>
**Subject:** RE: Jenkins Phil Pulley Final Items

Please see attached. I will diary out September 19th and order new subsistence certificates if we have not closed.

Jill E. Schuman, Esq.          **Direct** 215-690-3820 | **Fax** 215-635-7212



275 Commerce Drive, Suite 210
Fort Washington, PA 19034

**Attorneys at Law**

e-mail | v-card | bio | website in f 



JILL EVANTASH SCHUMAN          2024
**RECOGNIZED BY**
**Best Lawyers**

NOTICE: The information contained in this communication may constitute a confidential or attorney-client privileged communication. If you have received this communication in error, do not read it. It is not intended for transmission to, or receipt by, any unauthorized persons. Please delete it from your system without copying it, and notify the sender by reply email or by calling (215) 635-7200, so that our address record can be corrected. Thank you.

*Please consider the environment before printing this e-mail.*

**From:** Najafali, Jaleh Jaleh.Najafali@BlankRome.com
**Sent:** Tuesday, September 5, 2023 3:15 PM
**To:** Jill E. Schuman, Esq. <JSchuman@fsalaw.com>; Phil Pulley <ppulley@sbgmanagement.com>; Jonathan Siegel <jon@povernisheikh.com>; Jonathan Bodner <jonathan@twobinscapital.com>
**Cc:** Eugene Poverni <e@poverni.com>; Greg Kostrikin <greg@povernisheikh.com>; Jacob Ansbacher <jansbacher@poverni.com>; Shoumer, Steven <steven.shoumer@blankrome.com>; Ketkar, Leena

2

<leena.ketkar@blankrome.com>; myanoff@goldsteinlp.com
**Subject:** RE: Jenkins Phil Pulley Final Items

Hi Jill—

The certificate generally looks okay. Our only comment is to request that you actually list the entity name of the general partner in the Certificate (right now it states that there is a general partner, but does not list the entity name in the body of the Certificate). Additionally, I want to flag that the dates for the subsistence certificates are August 21. Currently, that date is fine, but depending on when we close, we may need them updated (generally must be dated within thirty days of closing).

Best,

Jaleh


**Jaleh Rose Najafali** *(she/her/hers)* | **BLANKROME**
One Logan Square | 130 North 18th Street | Philadelphia, PA 19103
O: 215.569.5382 | F: 215.832.5350 | jaleh.najafali@blankrome.com


**From:** Jill E. Schuman, Esq. <JSchuman@fsalaw.com>
**Sent:** Thursday, August 31, 2023 4:30 PM
**To:** Phil Pulley <ppulley@sbgmanagement.com>; Jonathan Siegel <jon@povernisheikh.com>; Jonathan Bodner <jonathan@twobinscapital.com>
**Cc:** Eugene Poverni <e@poverni.com>; Greg Kostrikin <greg@povernisheikh.com>; Jacob Ansbacher <jansbacher@poverni.com>; Najafali, Jaleh <Jaleh.Najafali@BlankRome.com>; Shoumer, Steven <steven.shoumer@blankrome.com>; Ketkar, Leena <leena.ketkar@blankrome.com>; myanoff@goldsteinlp.com
**Subject:** RE: Jenkins Phil Pulley Final Items

Please see attached Borrower's Certificate.  Exhibit E is the borrowing resolution.

| Jill E. Schuman, Esq. | **Direct** 215-690-3820   |   **Fax** 215-635-7212 |
|---|---|
| **FRIEDMAN** **SCHUMAN** <br> **Attorneys at Law** | 275 Commerce Drive, Suite 210 <br> Fort Washington, PA 19034 <br><br> e-mail | v-card | bio | website |



JILL EVANTASH SCHUMAN        2024
RECOGNIZED BY
**Best Lawyers**

*NOTICE: The information contained in this communication may constitute a confidential or attorney-client privileged communication. If you have received this communication in error, do not read it. It is not intended for transmission to, or receipt by, any unauthorized persons. Please delete it from your system without copying it, and notify the sender by reply email or by calling (215) 635-7200, so that our address record can be corrected. Thank you.*

3

*Please consider the environment before printing this e-mail.*

**From:** Phil Pulley <ppulley@sbgmanagement.com>
**Sent:** Thursday, August 31, 2023 3:51 PM
**To:** Jonathan Siegel <jon@povernisheikh.com>; Jonathan Bodner <jonathan@twobinscapital.com>
**Cc:** Eugene Poverni <e@poverni.com>; Greg Kostrikin <greg@povernisheikh.com>; Jacob Ansbacher <jansbacher@poverni.com>; Najafali, Jaleh <Jaleh.Najafali@BlankRome.com>; Shoumer, Steven <steven.shoumer@blankrome.com>; Ketkar, Leena <leena.ketkar@blankrome.com>; Jill E. Schuman, Esq. <JSchuman@fsalaw.com>; myanoff@goldsteinlp.com
**Subject:** Jenkins Phil Pulley Final Items

## See notes below and attached

Philip C. Pulley
SBG Management Services, Inc.
P.O. Box 549
Abington, PA 19001
215.938.6665 ext. 2001
215.935.6987 fax
Email: phil@sbgmanagement.com
Web: www.sbgmanagement.com

**From:** Jonathan Siegel <jon@povernisheikh.com>
**Sent:** Thursday, August 31, 2023 1:21 PM
**To:** Phil Pulley <ppulley@sbgmanagement.com>; Jonathan Bodner <jonathan@twobinscapital.com>
**Cc:** Eugene Poverni <e@poverni.com>; Greg Kostrikin <greg@povernisheikh.com>; Jacob Ansbacher <jansbacher@poverni.com>; Najafali, Jaleh <Jaleh.Najafali@BlankRome.com>; Shoumer, Steven <steven.shoumer@blankrome.com>; Ketkar, Leena <leena.ketkar@blankrome.com>; JSchuman <JSchuman@fsalaw.com>; myanoff@goldsteinlp.com
**Subject:** Re: Phil Pulley Final Items

Phil,

I wanted to provide you with another snapshot update on critical path items. The full list is reproduced below. Please focus on clearing the title items from Mike, such as waivers, budgets and school taxes. From our perspective, for the initial draw, we have limited Partner's involvement to just verifying the completion of your reimbursement request. (We are also asking them to do a full budget review, but not needed for these first draw/reimbursements.) Just as an option, as soon as title is cleared, we remain willing to fund the takeout at closing and then the draw as soon as Partner signs off. We understand that your strong preference is to close and do the draw simultaneously. I just want to reiterate options. Please let us know if you have comments.

Thank you.

<u>TITLE ITEMS</u> (Critical to Lender)

4

1. **Zoning Report** - Ordered - 7-day turnaround after municipal searches are returned. Partner's expected time is 14 business days. Ok
2. **Final Survey Certified to Lender** - after zoning report comes in need changes requested from Blank
3. **Mechanic's Liens** NONE
4. **Authorizing Resolutions** JILL
5. **2023 School Tax Paid** - $378,364.77 wrong amount see court order... Money 360 is paying court order amount to get discount.
6. **Budget for Capital Improvements** - (1) Waivers for work done, (2) Vendor Contracts, (3) Cost-to-complete budget In process.
7. **M360 Payoff Quotes** still waiting
8. **Lien Searches** - Completed, BR reviewing okay

UNDERWRITING

10. **Estoppels** - the Temple leases - Thank you for submitting. It appears that Temple included the wrong amount of rent on the forms. It seems they are in full possession of the expanded space and should be paying full rents (as set out in your rent roll). Please have them updated to the correct rent amounts. Post closing
11. **SNDA** - Jersey College still waiting ....Floor issue...post-closing
12. **Equity Reconciliation** - Greg and Eric working together, should be wrapped up early next week. ?????????
13. **Jersey College Financials** I will request again.
14. **Flood Narrative** - Please provide a paragraph on the source of the flood, remediation efforts, and current status (including any insurance disputes). Attached also final inspection report is attached.

PARTNER / DRAW REQUEST (Partner will reach out for property inspection) all in process will send later

1. **Budget** see attached
2. **Lien Releases** will upload
3. **Contracts** None all T and M invoices uploaded
4. **General Contractor Agreement** None

NON-CRITIAL PATH

1. **Loan Docs Negotiated** - Lender to provide comments
2. **Opinion of Borrower's Local Counsel** need final loan docs

Jonathan Siegel, Esq.
General Counsel
PSG Lending, LLC

---

From: Phil Pulley <ppulley@sbgmanagement.com>
Sent: Wednesday, August 30, 2023 2:52 PM
To: Jonathan Siegel <jon@povernisheikh.com>; Jonathan Bodner <jonathan@twobinscapital.com>
Cc: Eugene Poverni <e@poverni.com>; Greg Kostrikin <greg@povernisheikh.com>; Jacob Ansbacher <jansbacher@poverni.com>; Najafali, Jaleh <Jaleh.Najafali@BlankRome.com>; Shoumer, Steven <steven.shoumer@blankrome.com>; Ketkar, Leena <leena.ketkar@blankrome.com>; JSchuman

5

<JSchuman@fsalaw.com>; myanoff@goldsteinlp.com <myanoff@goldsteinlp.com>
**Subject:** RE: Phil Pulley Final Items

## Regus estopple uploaded

Philip C. Pulley
SBG Management Services, Inc.
P.O. Box 549
Abington, PA 19001
215.938.6665 ext. 2001
215.935.6987 fax
Email: phil@sbgmanagement.com
Web: www.sbgmanagement.com

**From:** Jonathan Siegel <jon@povernisheikh.com>
**Sent:** Wednesday, August 30, 2023 12:49 PM
**To:** Phil Pulley <ppulley@sbgmanagement.com>; Jonathan Bodner <jonathan@twobinscapital.com>
**Cc:** Eugene Poverni <e@poverni.com>; Greg Kostrikin <greg@povernisheikh.com>; Jacob Ansbacher <jansbacher@poverni.com>; Najafali, Jaleh <Jaleh.Najafali@BlankRome.com>; Shoumer, Steven <steven.shoumer@blankrome.com>; Ketkar, Leena <leena.ketkar@blankrome.com>; JSchuman <JSchuman@fsalaw.com>; myanoff@goldsteinlp.com
**Subject:** Re: Phil Pulley Final Items

Phil,

I am trying to get Parter back today for 2:30. I'm confirming their availability now.  Does that work for you / are you still interested in having the kick-off call?

Thank you,

Jonathan Siegel, Esq.
General Counsel
PSG Lending, LLC

**From:** Phil Pulley <ppulley@sbgmanagement.com>
**Sent:** Tuesday, August 29, 2023 10:56 AM
**To:** Jonathan Siegel <jon@povernisheikh.com>; Jonathan Bodner <jonathan@twobinscapital.com>
**Cc:** Eugene Poverni <e@poverni.com>; Greg Kostrikin <greg@povernisheikh.com>; Jacob Ansbacher <jansbacher@poverni.com>; Najafali, Jaleh <Jaleh.Najafali@BlankRome.com>; Shoumer, Steven <steven.shoumer@blankrome.com>; Ketkar, Leena <leena.ketkar@blankrome.com>; JSchuman <JSchuman@fsalaw.com>; myanoff@goldsteinlp.com <myanoff@goldsteinlp.com>
**Subject:** RE: Phil Pulley Final Items

## Please cancel the call @ 11am today and the 1 pm call with Partner

Philip C. Pulley
SBG Management Services, Inc.
P.O. Box 549
Abington, PA 19001

6

215.938.6665 ext. 2001
215.935.6987 fax
Email: phil@sbgmanagement.com
Web: www.sbgmanagement.com

From: Jonathan Siegel <jon@povernisheikh.com>
Sent: Tuesday, August 29, 2023 10:52 AM
To: Phil Pulley <ppulley@sbgmanagement.com>; Jonathan Bodner <jonathan@twobinscapital.com>
Cc: Eugene Poverni <e@poverni.com>; Greg Kostrikin <greg@povernisheikh.com>; Jacob Ansbacher <jansbacher@poverni.com>; Najafali, Jaleh <Jaleh.Najafali@BlankRome.com>; Shoumer, Steven <steven.shoumer@blankrome.com>; Ketkar, Leena <leena.ketkar@blankrome.com>; JSchuman <JSchuman@fsalaw.com>; myanoff@goldsteinlp.com
Subject: Re: Phil Pulley Final Items

Phil,

Following up on Eugene's comments. Attached is an updated checklist incorporating the new title company items.

Below are the Critical Path Items that expand on Eugene's e-mail this morning:

TITLE ITEMS (Critical to Lender)
1. **Zoning Report** - To clarify, On 8/18 Borrower's counsel confirmed that *Borrower* was working on the updated zoning report, as confirmed multiple times. Last Friday, 8/24, I was asked for the first time to order, which I did immediately. Parter is working on a rush 7-day turnaround after municipal searches are returned. Partner's expected time is 14 business days.
2. **Final Survey Certified to Lender** - after zoning report comes in
3. **Mechanic's Liens**
4. **Authorizing Resolutions**
5. **2023 School Tax Paid - $378,364.77**
6. **Budget for Capital Improvements** - (1) Waivers for work done, (2) Vendor Contracts, (3) Cost-to-complete budget
7. **M360 Payoff Quotes**
8. **Lien Searches**

UNDERWRITING
10. Estoppels - Outback Received. Cell tower lease estoppels a post-closing item.
    a. the Temple leases
    b. RGN-Jenkintown I,
    c. Once balance down under $650,000, we *should* be able to push this to post-closing by verifying 6 months of payment history via cancelled checks or ACH confirmations for remaining tenants.
11. SNDA - Jersey College (Tiny Town post-closing)
12. Equity Reconciliation - Greg and Eric working together
13. Jersey College Financials - This a new request, need to verify due to no current rents
14. Flood Narrative - New request. Please provide a paragraph on the source of the flood, remediation efforts, and current status (including any insurance disputes)

PARTNER / DRAW REQUEST

1. **Budget**
2. **Lien Releases**

7

3. **Contracts**
4. **General Contractor Agreement**
5. **Kick-Off Call** - Parter will provide update on kickoff call

NON-CRITIAL PATH

1. **Loan Docs Negotiated**
2. **Opinion of Borrower's Local Counsel**

Jonathan Siegel, Esq.
General Counsel
PSG Lending, LLC

---

**From:** Phil Pulley <ppulley@sbgmanagement.com>
**Sent:** Monday, August 28, 2023 4:59 PM
**To:** Jonathan Siegel <jon@povernisheikh.com>; Jonathan Bodner <jonathan@twobinscapital.com>
**Cc:** Eugene Poverni <e@poverni.com>; Greg Kostrikin <greg@povernisheikh.com>; Jacob Ansbacher <jansbacher@poverni.com>; Najafali, Jaleh <Jaleh.Najafali@BlankRome.com>; Shoumer, Steven <steven.shoumer@blankrome.com>; Ketkar, Leena <leena.ketkar@blankrome.com>; JSchuman <JSchuman@fsalaw.com>; myanoff@goldsteinlp.com <myanoff@goldsteinlp.com>
**Subject:** RE: Phil Pulley Final Items

**CAUTION:** External Email. Do not click links or open attachments unless you recognize the sender and know the content is safe.

Just as an FYI Money is charging the entire month of interest for September because we missed this month

Phil

Philip C. Pulley
SBG Management Services, Inc.
P.O. Box 549
Abington, PA 19001
215.938.6665 ext. 2001
215.935.6987 fax
Email: phil@sbgmanagement.com
Web: www.sbgmanagement.com

---

**From:** Jonathan Siegel <jon@povernisheikh.com>
**Sent:** Monday, August 28, 2023 4:38 PM
**To:** Phil Pulley <ppulley@sbgmanagement.com>; Jonathan Bodner <jonathan@twobinscapital.com>
**Cc:** Eugene Poverni <e@poverni.com>; Greg Kostrikin <greg@povernisheikh.com>; Jacob Ansbacher <jansbacher@poverni.com>; Najafali, Jaleh <Jaleh.Najafali@BlankRome.com>; Shoumer, Steven <steven.shoumer@blankrome.com>; Ketkar, Leena <leena.ketkar@blankrome.com>; JSchuman <JSchuman@fsalaw.com>; myanoff@goldsteinlp.com
**Subject:** Re: Phil Pulley Final Items

8

Phil,

Partner can do Wednesday at 11 AM or 1 PM for a kickoff call. Plese let us know if either time works for you.

Here is the Agenda for the call that Partner proposed:

MEETING AGENDA:
- Project Scope of Work Review (typically provided by Borrower);
- Documents required for Report and their current availability;
- Report/Closing Schedules.

Best,

Jonathan Siegel, Esq.
General Counsel
PSG Lending, LLC

From: Jonathan Siegel <jon@povernisheikh.com>
Sent: Monday, August 28, 2023 12:43 PM
To: Phil Pulley <ppulley@sbgmanagement.com>; jonathan@twobinscapital.com <jonathan@twobinscapital.com>
Cc: Eugene Poverni <e@poverni.com>; Greg Kostrikin <greg@povernisheikh.com>; Jacob Ansbacher <jansbacher@poverni.com>; Najafali, Jaleh <Jaleh.Najafali@BlankRome.com>; Shoumer, Steven <steven.shoumer@blankrome.com>; Ketkar, Leena <leena.ketkar@blankrome.com>; Jill Schuman - Friedman Schuman et al (JSchuman@fsalaw.com) <JSchuman@fsalaw.com>; Shoumer, Steven <steven.shoumer@blankrome.com>; myanoff@goldsteinlp.com <myanoff@goldsteinlp.com>
Subject: Re: Phil Pulley Final Items

Phil,

Thanks for the call last Friday and thanks for getting the Outback estoppel in. We look forward to speaking tomorrow for our next update. In the meantime, I want to highlight a few items that were flagged by title on Friday and will also be necessary to process your reimbursements/draw at closing, which are the detailed scope of work/contracts for all vendors, lien releases, and remaining budget for the capital improvements.

To date, we have received the attached excel, showing, at a high level, your requests. Would you please confirm that this remains an accurate list of items for the first draw? Also, please provide any contracts for the listed work, as well as a remaining costs to complete budget for each line item. We will look forward to getting the lien waivers when you submit them to title, but our draw reviewer (Partner) will be looking for those as well.

I am working to get a kickoff call with you and Partner ASAP. Please let me know if you have any pressing questions. If not, we can talk in more detail tomorrow when we go over the rest of the list.

Thanks,

Jonathan Siegel, Esq.

9

General Counsel
PSG Lending, LLC

---

**From:** Jonathan Siegel
**Sent:** Wednesday, August 23, 2023 5:06 PM
**To:** Phil Pulley <ppulley@sbgmanagement.com>; jonathan@twobinscapital.com <jonathan@twobinscapital.com>
**Cc:** Eugene Poverni <e@poverni.com>; Greg Kostrikin <greg@povernisheikh.com>; Jacob Ansbacher <jansbacher@poverni.com>; Najafali, Jaleh <Jaleh.Najafali@BlankRome.com>; Shoumer, Steven <steven.shoumer@blankrome.com>; Ketkar, Leena <leena.ketkar@blankrome.com>; Jill Schuman - Friedman Schuman et al (JSchuman@fsalaw.com) <JSchuman@fsalaw.com>; Shoumer, Steven <steven.shoumer@blankrome.com>; myanoff@goldsteinlp.com <myanoff@goldsteinlp.com>
**Subject:** Phil Pulley Final Items

Phil,

Thanks for sending over the P&Ls and bank statements and for working with Greg to settle the CapEx numbers. Given the wealth of records you have provided, we are confident that the CapEx will reconcile. We do ask for your continued cooperation after closing if we require additional information. As we approach the end of this process, I want to provide you with a summary of *critical* items we need to get through internal committee approval, which we hope will be cleared and ready for presentation the middle of next week. We look forward to scheduling the closing five business days after the other remaining items are satisfied.

CRITIAL LOAN COMMITEE ITEMS

1. Estoppels - We understand that we will need to make the cell tower lease estoppels a post-closing item. However, given the weight of the Estoppels for (a) the Temple leases, (b) RGN-Jenkintown I, and (c) Outback, we are unable to *fully* concede here. These four leases account for $1.1mm in operating income and are just too big to waive. However, if we can this outstanding estoppel balance down under $650,000, we *should* be able to push this to post-closing by verifying 6 months of payment history via cancelled checks or ACH confirmations.

2. SNDAs - We need Jersey College and Tiny Town. All others pushed to post-closing.

OTHER REMAINING ITEMS

3. Leases - Mark Kress extension - Please provide an update on the negotiation.

4. Fully Negotiated Loan Docs - BlankRome to circulate today.

5. Title - Negotiated Lender's Policy with proper endorsements and certified Survey with new title company

Lastly, the remaining post-closing items on the checklist will become post-closing in loan docs. Please let me know if you have any questions.

Best regards,

Jonathan Siegel, Esq.
General Counsel
PSG Lending, LLC

10

**Disclaimer**
The information contained in this communication from the sender is confidential. It is intended solely for use by the recipient and others authorized to receive it. If you are not the recipient, you are hereby notified that any disclosure, copying, distribution or taking action in relation of the contents of this information is strictly prohibited and may be unlawful.

This email has been scanned for viruses and malware, and may have been automatically archived by Mimecast, a leader in email security and cyber resilience. Mimecast integrates email defenses with brand protection, security awareness training, web security, compliance and other essential capabilities. Mimecast helps protect large and small organizations from malicious activity, human error and technology failure; and to lead the movement toward building a more resilient world. To find out more, visit our website.

**Disclaimer**
The information contained in this communication from the sender is confidential. It is intended solely for use by the recipient and others authorized to receive it. If you are not the recipient, you are hereby notified that any disclosure, copying, distribution or taking action in relation of the contents of this information is strictly prohibited and may be unlawful.

This email has been scanned for viruses and malware, and may have been automatically archived by Mimecast, a leader in email security and cyber resilience. Mimecast integrates email defenses with brand protection, security awareness training, web security, compliance and other essential capabilities. Mimecast helps protect large and small organizations from malicious activity, human error and technology failure; and to lead the movement toward building a more resilient world. To find out more, visit our website.

**Disclaimer**
The information contained in this communication from the sender is confidential. It is intended solely for use by the recipient and others authorized to receive it. If you are not the recipient, you are hereby notified that any disclosure, copying, distribution or taking action in relation of the contents of this information is strictly prohibited and may be unlawful.

This email has been scanned for viruses and malware, and may have been automatically archived by Mimecast, a leader in email security and cyber resilience. Mimecast integrates email defenses with brand protection, security awareness training, web security, compliance and other essential capabilities. Mimecast helps protect large and small organizations from malicious activity, human error and technology failure; and to lead the movement toward building a more resilient world. To find out more, visit our website.

**Disclaimer**
The information contained in this communication from the sender is confidential. It is intended solely for use by the recipient and others authorized to receive it. If you are not the recipient, you are hereby notified that any disclosure, copying, distribution or taking action in relation of the contents of this information is strictly prohibited and may be unlawful.

This email has been scanned for viruses and malware, and may have been automatically archived by Mimecast, a leader in email security and cyber resilience. Mimecast integrates email defenses with brand protection, security awareness training, web security, compliance and other essential capabilities. Mimecast helps protect large and small organizations from malicious activity, human error and technology failure; and to lead the movement toward building a more resilient world. To find out more, visit our website.

*******************************************************************************************************

This message and any attachments may contain confidential or privileged information and are only for the use of the intended recipient of this message. If you are not the intended recipient, please notify the Blank Rome LLP or Blank Rome Government Relations LLC sender by return email, and delete or destroy this and all copies of this message and all attachments. Any unauthorized disclosure, use, distribution, or reproduction of this message or any attachments is prohibited and may be unlawful.

*******************************************************************************************************

11

**Updated: 9/8/2023**

## 610 OLD YORK ROAD, JENKINTOWN, PA 19046

### $20,500,000 Term/Construction Loan

### CLOSING CHECKLIST

| | |
|---|---|
| TARGET CLOSING DATE: | [-], 2023 |
| LENDER: | PSG LENDING LLC<br>6711 Columbia Gateway Drive, Suite 130<br>Columbia, MD 21046 |
| MAXIMUM PRINCIPAL LOAN AMOUNT: | $20,500,000.00 |
| BORROWER: | Jenkins Court Realty Co., L.P.<br>c/o SBG Management Services, Inc.<br>P.O. Box 549<br>Abington, PA 19001 |
| GUARANTOR: | Philip Pulley |
| PROPERTY MANAGER: | SBG Management Services Inc. |
| PROPERTY: | 610 Old York Road, Jenkintown, PA 1946 |

1

**Updated: 9/8/2023**

| REQUIREMENTS | RESPONSIBLE PARTY | STATUS / COMMENTS |
|---|---|---|
| **A. BASIC LOAN DOCUMENTS** | | |
| 1. Loan Agreement | Lender | **Lender to Comment Expected 9/8** |
| 2. Promissory Note | Lender | |
| 3. Open-End Mortgage | Lender | |
| 4. Assignment of Leases and Rents | Lender | |
| 5. Guaranty Agreement | Lender | |
| 6. Environmental Indemnity Agreement | Lender | |
| 7. Assignment of Management Agreement | Lender | |
| 8. Assignment of Contracts and Permits | Lender | |
| 9. Fee Letter | Lender | |
| 10. Certificate of Business Plan and Budget | Lender | |
| 11. Cash Management Agreement / Deposit Account Control Agreement | Lender | |
| 12. Partnership Interest Pledge Agreement | Lender | |
| 13. UCC-1 Financing Statements | Lender | |
|    (a) Secretary of State | Lender | |
|    (b) County | Lender | |
| 14. Settlement Statement | Borrower/ Lender | |
| **B. TITLE DOCUMENTS** | | |
| 1. Title Commitment | Borrower/TC | |

2

Updated: 9/8/2023

| REQUIREMENTS | RESPONSIBLE PARTY | STATUS / COMMENTS |
|---|---|---|
| 2. Lender's Title Policy | Borrower/TC | |
| 3. Insured Closing Letter | Borrower/TC | |
| 4. Certified Lien Searches on Borrower and Guarantor | Borrower/TC | |
| **C. PROPERTY AND PROPERTY MANAGER INFORMATION** | | |
| 1. Certified current year-to-date operating statement for the Property (to be updated immediately prior to closing) plus 2 years P/L and balance sheet | Borrower | |
| 2. Certified current rent roll for the Property (to be updated immediately prior to closing), including any delinquency history and tenant ledgers | Borrower | |
| 3. Reconciliation of all CapEx and improvements including land acquisition costs to date | Borrower | |
| 4. Other financial statements for the Property | Borrower | |
| 5. (a) Stacking plan <br> (b) Two-year maintenance logs | Borrower | |
| 6. Form Lease, if applicable | Borrower | |
| 7. Utility Bills | Borrower | |
| 8. Copies of Real Estate Bills | Borrower | |
| 9. Full Development Budget (inclusive of all expended costs) and ledger of all cash invested to date | Borrower | |
| 10. Flood Certification/Insurance | Borrower | |
| 11. Management Agreement | Borrower | |

3

Updated: 9/8/2023

| REQUIREMENTS | RESPONSIBLE PARTY | STATUS / COMMENTS |
|---|---|---|
| 12. ACORD Certificates evidencing insurance coverage acceptable to Lender (including builder's all risk/policy with no exclusion for terrorism; one (1) year premium to be paid at closing; and statement/letter from proposed new insurance agent detailing the terms of coverage, limits of coverage, premium amount and contact person) | Borrower | |
| 13. Any required City/State-Specific Certificates | Borrower | |
| **D. TENANT DOCUMENTS** | | |
| 1. Copies of Existing Leases | Borrower | |
| 2. Subordination, Nondisturbance, and Attornment Agreements | Borrower/ Tenant | |
| 3. Estoppels | Borrower / Tenant | |
| 4.Copies of all tenant underwriting files | Borrower | |
| **E. AUTHORITY DOCUMENTS** | | |
| 1. Authority Documents of Jenkins Court Realty Co., L.P. (Borrower) | | |
| (a) Certificate of Organization (certified by Secretary of State within 30 days of closing) | Borrower | |
| (b) Operating Agreement | Borrower | |
| (c) Certificate of Existence/Good Standing (dated within 30 days of closing) | Borrower | |
| (d) Consent of Members | Borrower | |
| (e) Manager / Officer Certificate with Resolutions and Certificate of Incumbency and Authority | Borrower | |
| (f) Evidence of EIN | Borrower | |
| (g) W-9 for Borrower | | |
| 2. Authority Documents of Old Jenkins Corporation (GP of Borrower) | | |

4

<u>Updated: 9/8/2023</u>

| REQUIREMENTS | RESPONSIBLE PARTY | STATUS / COMMENTS |
|---|---|---|
| (a) Articles of Incorporation (certified by Secretary of State within 30 days of closing) | Borrower | |
| (b) Bylaws | Borrower | |
| (c) Certificate of Existence/Good Standing (dated within 30 days of closing) | Borrower | |
| (d) Omnibus Consent | Borrower | |
| (e) General Partner Certificate with Resolutions and Certificate of Incumbency and Authority | Borrower | |
| (f) Evidence of EIN | Borrower | |
| 3. Authority Documents of Guarantor | | |
| (a) Certified Financial Statements | Borrower | |
| 4. Organizational Chart of Borrower | Borrower | |
| **F.  GUARANTOR** | | |
| 1. Liquidity verification of cash equivalents | Guarantor | |
| 2. Personal financial statements | Guarantor | |
| 3. Copies of filed tax returns for the last 2 years and any current extensions | Guarantor | |
| 4. List of three (3) banking references | Guarantor | |
| **G.  OPINIONS** | | |
| 1. Local Counsel Opinion of Borrower's and Guarantor's Counsel | Borrower/BC | |
| **H.  GENERAL** | | |
| 1. Property Condition Report | Lender | |
| 2. Environmental Site Assessment | Lender | |

5

Updated: 9/8/2023

| REQUIREMENTS | RESPONSIBLE PARTY | STATUS / COMMENTS |
|---|---|---|
| 3.  Appraisal | Lender | Rec'd |
| 4.  Survey | Borrower | |
| 5.  Copies of Permits (including commercial, zoning and building) | Borrower | |
| 6.  Copies of Licenses | Borrower | |
| 7.  Zoning Report<br>(a)  ~~Approval of~~ condominium / variance | Borrower/ Lender | |
| 8.  Litigation Schedule | Borrower | |
| 9.  Copies of Plans and Specifications *for New Construction*<br>(a)  Architectural<br>(b)  Structural<br>(c)  MEP<br>(d)  Civil<br><br>NOTE: Plans and Specifications must be permitted and buildable *prior to* Lender funding construction budget | Borrower | |

6

Updated: 9/8/2023

| REQUIREMENTS | RESPONSIBLE PARTY | STATUS / COMMENTS |
|---|---|---|
| 10. General Contractor's Agreement | Borrower | |
| 11. General Contractor's Resume and License Information | Borrower | |
| 12. Construction Schedule | Borrower | |
| 13. Wiring Instructions | Borrower/TC | |

7

Appx1321

Updated: 9/8/2023

ANNEX 1

|  | Lease Information | Tenant | Estoppel and SNDA[1] Status | Comments |
|---|---|---|---|---|
| 1. | Office Lease Agreement dated October 9, 2017 for 10,083 rentable square feet | Bethany Christian Services of Greater Delaware Valley | Rec'd | |
| 2. | Letter Memorializing Agreement dated March 19, 2021 for Suites 670 and 676 | Black Leaf Hemp Store | Rec'd | |

---

[1] SNDA list provided by BlankRome on 8/4

8

Updated: 9/8/2023

| | | | |
|---|---|---|---|
| | | | |
| 3. | Lease Agreement dated April 3, 2017 for Suite 210 (1,436 rentable square feet)<br><br>First Amendment to Lease Agreement dated April 1, 2018<br><br>Rec'd "Letter Agreement Dated 9/1/22 raise rent to $18,000 w/janitorial; UNDER REVIEW | David R. Machek | Rec'd |
| 4. | Lease dated 2021<br><br>First Amendment to Lease Agreement dated February 1, 2022<br><br>Second Amendment to Lease dated February 1, 2023 | Dogtopia | Rec'd Estoppel; Rec'd SNDA |
| 5. | License Agreement dated May 25, 2017 | JJLH of Jenkintown LLC/Faulkner | Rec'd; |

9

Updated: 9/8/2023

| | | | |
|---|---|---|---|
| | First Amendment to Lease dated April 14, 2020 | | |
| 6. | Lease Agreement dated February 2017<br><br>First Amendment to Lease Agreement dated April 1, 2018 | Coracias Advance Technologies, LLC | Rec'd |
| 7. | Lease dated December 15, 2018 for Suite 340<br><br>First Amendment to Lease Agreement dated 1/1/2022 showing 120k rent and termination 11/15/28; | Goldstein Law Partners, LLC | Rec'd; SNDA Rec'd;<br><br>Rec'd Updated Estoppel 120k rent; |
| 8. | Lease dated March 2022 for Suite 640 (4,069 rentable square feet) | Helping Hands | Rec'd |
| 9. | Lease dated January 2022 for Suite 100 and 300 (39,623 rentable square feet)<br><br>First Amendment dated June 1, 2023 | SSS Education, Inc./Jersey School | Rec'd; Please Provide SNDA |
| 10. | Office Lease Agreement dated May 4, 2017 for Suite 107 (2,398 rentable square feet) | Loanability, Inc. | Rec'd |

10

Updated: 9/8/2023

| | | | |
|---|---|---|---|
| 11. | Fourth Amendment to Agreement of Lease dated October 1, 2013 for Suite 70 (3,640 rentable square feet) | Mark Kress, M.D. | Rec'd; Rec'd SNDA (lease expiring 9/30) | |
| 12. | Lease dated May 1, 1992 (6,670 rentable square feet)<br><br>First Addendum to Lease dated July 13, 1992<br><br>Second Amendment to Lease dated February 13, 2002<br>Third Amendment to Lease dated May 7, 2010 | Outback Steakhouse of Florida, LLC | Rec'd Estoppel; Rec'd SNDA | |
| 13. | Lease dated August 1, 2021<br><br>First Amendment to Lease Agreement dated February 1, 2022<br><br>Second Amendment to Lease dated February 1, 2023 | Precious One | Rec'd; Rec'd SNDA<br><br>Rec'd Updated Estoppel showing $135k fixed rent; | |
| 14. | Lease dated November 1, 2017 for Suite 375 (8,000 square rentable feet)<br><br>First Amendment dated Dec 19, 2022 | SBG Management Services, Inc. | Rec'd; Under Review<br>Rec'd SNDA | Lease Amended to extent until Jan 30, 2028 |
| 15. | Unexecuted Commercial Lease | Starbucks Corporation | N/A | |
| 16. | Lease dated February 1, | Jenkins Storage, LLC | Rec'd; Rec'd | UW: post-closing |

11

Updated: 9/8/2023

| | | | | |
|---|---|---|---|---|
| | 2019 for Suite G100<br><br>Letter Agreement dated 4/20/22 reducing rent to $276k while tenant does not have access to EASL; <mark>Under Review</mark> | | SNDA | condition due in 60 days to update lease via amendment to resolve the following inconsistencies:<br>a.    The rent does not match. The estoppel states it is $360,000. The rent roll states $276,000.<br>b.    The termination dates do not match. The estoppel states April 1, 2029. The rent roll states March 1, 2029.<br>c.    When will EASL be made available/When will rent return to $360k?  - Construction Completion |
| 17. | Office Lease Agreement dated October 5, 2015 for Suite 400 (14,133 rentable square feet) | RGN-Jenkintown I, LLC | Rec'd | |
| 18. | Parking Space Rental Agreement dated March 21, 2022 | Trumark | Rec'd; | |
| 19. | <mark>Lease effective August 17, 2023</mark> | Tiny Town | **Please Provide SNDA** | |
| 20. | Lease Agreement dated April 1, 2017<br><br>Letter Memorializing Agreement dated February 15, 2022<br><br>Missing Lease Amendment showing rent abatement/decrease | Luv2Knit | Rec'd<br><br>Rec'd Updated Estoppel 30k rent; | |

12

**Updated: 9/8/2023**

| | | | |
|---|---|---|---|
| 21. | | Nextel Sprint | Please Provide Estoppel |
| 22. | | Colum. Tele | Please Provide Estoppel |
| 23. | | GTP Towers Am. IX Metro | Please Provide Estoppel; Please Provide SNDA |
| 24. | Rec'd Letter extension dated February 15, 2022 | GTP Towers IX Zayo Group | Please Provide Estoppel; Please provide SNDA |
| 25. | | Verizon | Please Provide Estoppel |
| 26. | | Sprint PCS | Please Provide Estoppel; Please Provide SNDA |
| 27. | Agreement of Lease dated February 28, 2022 | Temple University Health System, Inc./Temple Fox Chase | Please Provide Updated Estoppel |
| 28. | Agreement of Lease dated July 8, 2021 | Temple University Health System, Inc. | Please Provide Updated Estoppel |
| 29. | Office Lease Agreement dated January 2007<br><br>First Amendment to Office Lease Agreement dated November 3, 2009<br><br>Second Amendment to Office Lease Agreement dated March 11, 2013 | Kaplan Nathan & Genter | Rec'd |

13

**Updated: 9/8/2023**

| | | | | |
|---|---|---|---|---|
| | Third Amendment to Office Lease Agreement dated April 12, 2016<br><br>Fourth Amendment to Lease Agreement dated March 29, 2018<br><br>Sixth Amendment to Lease Agreement dated March 30, 2022 | | | |
| 30. | Letter Memorializing Agreement dated March 9, 2020<br><br>Missing First Amendment<br><br>Second Amendment dated February 1, 2022 reflecting Termination Date of 3/1/2027; Under Review | Sezai Saran | Rec'd | |
| 31. | Letter Memorializing Agreement dated January 18, 2022 | Grab and Go | Rec'd | |
| 32. | Display Lease Agreement dated December 6, 2020 | Catalyst | Rec'd; Under Review | |

14

# EXHIBIT "E"

Case 2:25-cv-00044-GAM    Document 34-7    Filed 06/16/25    Page 2 of 19

  

| | **DEED BK 6342 PG 01110 to 01118** |
|---|---|
| | INSTRUMENT # : 2023054790 |
| | RECORDED DATE: 10/13/2023 08:29:21 AM |

6260831-0027S

RECORDER OF DEEDS
MONTGOMERY COUNTY
*Jeanne Sorg*

One Montgomery Plaza
Swede and Airy Streets ~ Suite 303
P.O. Box 311 ~ Norristown, PA 19404
Office: (610) 278-3289 ~ Fax: (610) 278-3869

**MONTGOMERY COUNTY ROD**

| OFFICIAL RECORDING COVER PAGE | | | Page 1 of 9 |
|---|---|---|---|
| **Document Type:** Deed Miscellaneous | | **Transaction #:** | 6837952 - 3 Doc(s) |
| **Document Date:** 08/11/2023 | | **Document Page Count:** | 8 |
| **Reference Info:** | | **Operator Id:** | smassie |

**RETURN TO:** (Simplifile)
Elkins Park Abstract Company
721 Dresher Road
Horsham, PA 19044
(215) 830-1100

**PAID BY:**
ELKINS PARK ABSTRACT COMPANY

**\* PROPERTY DATA:**
Parcel ID #:          10-00-05364-00-8
Address:              610 YORK RD

                      PA
Municipality:         Jenkintown Borough (100%)
School District:      Jenkintown

**\* ASSOCIATED DOCUMENT(S):**

**FEES / TAXES:**
| | |
|---|---|
| Recording Fee:Deed Miscellaneous | $52.50 |
| Additional Pages Fee | $8.00 |
| Additional Names Fee | $1.00 |
| **Total:** | **$61.50** |

DEED BK 6342 PG 01110 to 01118
Recorded Date: 10/13/2023 08:29:21 AM

I hereby CERTIFY that this document is
recorded in the Recorder of Deeds Office in
Montgomery County, Pennsylvania.



**Jeanne Sorg**
**Recorder of Deeds**

Rev1 2016-01-29

# PLEASE DO NOT DETACH
## THIS PAGE IS NOW PART OF THIS LEGAL DOCUMENT
NOTE: If document data differs from cover sheet, document data always supersedes.
\*COVER PAGE DOES NOT INCLUDE ALL DATA, PLEASE SEE INDEX AND DOCUMENT FOR ANY ADDITIONAL INFORMATION

RECORDING REQUESTED BY
AND WHEN RECORDED MAIL TO:

Elkins Park Abstract Co
721 Dresher Road, Suite 1000
Horsham, PA 19044
215-830-1100

Tax ID Number: [-]    10-00-05364-00-8

Space above for Recorder's Use

## SUBORDINATION, NONDISTURBANCE AND ATTORNMENT AGREEMENT

This Subordination, Nondisturbance and Attornment Agreement ("**Agreement**") is dated as of  August 11  , 2023, and effective as of  August 25,  , 2023, by **PSG LENDING, LLC**, a [-] limited liability company ("**Lender**"), **JENKINS COURT REALTY CO., L.P.**, a Pennsylvania limited partnership ("**Landlord**"), and  SBG Management Services Inc.  , a  Pennsylvania Corporation  ("**Tenant**").

## RECITALS

A.  Landlord and Tenant have entered into that certain [Lease Agreement] with an effective date of  November 1, 2017  (as amended, restated, supplemented or otherwise modified to date, the "**Lease**"), covering certain premises located at  610 Old York Road, Suite 375, Jenkintown, PA 19046  ("**Property**").  The Property is more particularly described in Exhibit A attached hereto and incorporated herein. The property is assessed as 610 York Road and is also known as 610 Old York Road (mailing address)

B.  Lender is the beneficiary under a mortgage ("**Mortgage**"), dated as of  August 25  , 2023, which Mortgage will be recorded concurrently herewith in the [Official Records of  Deeds  ], encumbering the Property.  The Mortgage secures certain obligations to Lender as more particularly described therein.

C.  On the terms and conditions in this Agreement, the parties desire to subordinate Tenant's leasehold interest in the Property to the lien of the Mortgage and to assure Tenant possession of the Property for the entire term of the Lease, even though Lender may foreclose the lien of the Mortgage before expiration of the Lease.

Therefore, in consideration of the mutual covenants and agreements contained in this Agreement, the parties agree as follows:

**Section 1. Subordination.**  The Lease, the leasehold estate created thereby, and all rights and privileges of Tenant thereunder shall be subject and subordinate to the lien of the Mortgage and to any renewals, modifications, consolidations, replacements and extensions of the Mortgage to the full extent of the obligations now or hereafter secured by the Mortgage.

**Section 2. Nondisturbance.**  So long as Tenant is not in default, beyond any period given to Tenant to cure a default, in the payment of rent or in the performance of any of the terms, covenants, or conditions of the Lease, Tenant's possession of the Property and Tenant's rights and privileges under the Lease,

168215.00401/132073540v.1

including any extensions or renewals, shall not be diminished or interfered with by Lender during the term of the Lease or any extensions or renewals. So long as Tenant is not in default, beyond any period given Tenant to cure such default, in the payment of rent or in the performance of any of the terms, covenants, or conditions of the Lease, Lender will not join Tenant as a party for the purpose of terminating or otherwise affecting Tenant's interest under the Lease, in any action of foreclosure or other proceeding brought by Lender to enforce any rights arising because of any default under the Mortgage. Lender may, however, join Tenant as a party if joinder is necessary under any statute or law to secure the remedies available to Lender under the Mortgage, but joinder shall be for that purpose only and not for the purpose of terminating the Lease or affecting Tenant's right to possession of the Property.

**Section 3. Attornment.** If Landlord's interest is transferred to and owned by Lender or any successor of Lender ("**Acquiring Party**") because of foreclosure or other proceedings brought by Lender, or by any other manner, and Acquiring Party succeeds to Landlord's interest under the Lease, Tenant shall be bound to the Acquiring Party, and Acquiring Party shall be bound to Tenant under all of the terms, covenants and conditions of the Lease for the balance of the remaining term, including any extensions or renewals, with the same effect as if Acquiring Party were Landlord under the Lease. Tenant agrees to attorn to Acquiring Party as Landlord, with the attornment being effective and self-operable immediately upon Acquiring Party succeeding to the interest of Landlord under the Lease, all without the execution by the parties of any further instruments. However, Tenant shall not be obligated to pay rent to Acquiring Party until Tenant receives written notice from Acquiring Party, together with evidence satisfactory to Tenant, demonstrating that Acquiring Party has succeeded to Landlord's interest under the Lease and directing where rent should be mailed. The respective rights and obligations of Tenant and Acquiring Party upon attornment, to the extent of the then-remaining balance of the term of the Lease, shall be the same as in the Lease, which is incorporated by reference in this Agreement. If Acquiring Party succeeds to Landlord's interest in the Lease, Acquiring Party shall be bound to Tenant under all the terms, covenants and conditions of the Lease, and Tenant shall, after Acquiring Party's succession to Landlord's interest, have the same remedies against Acquiring Party for the breach of any agreement in the Lease that Tenant might have had against Landlord; provided, however, Acquiring Party shall not be:

(i)     Liable for any act or omission of any prior landlord (including Landlord) which occurred prior to the date that the Acquiring Party succeeded to the interest of such prior landlord under the Lease.

(ii)    Obligated to cure any defaults of any prior landlord (including Landlord).

(iii)   Subject to any offsets or defenses which Tenant may be entitled to assert against any prior landlord (including Landlord) with respect to events occurring prior to the date the Acquiring Party succeeded to Landlord's interest.

(iv)    Bound by any rent or other amounts paid by Tenant to any prior landlord (including Landlord) more than one (1) month in advance of the date that the Acquiring Party succeeded to the interest of such prior landlord under the Lease.

(v)     Bound by any amendment or modification of the Lease or any supplemental agreement made without the consent of Lender (to the extent that such consent is required by the Mortgage or the Loan Agreement, as defined in the Mortgage).

(vi)    Liable for any security deposit Tenant shall have given any prior landlord (including Landlord) which was not transferred to the Acquiring Party. Tenant agrees that in the event it seeks or is entitled to a return of a security deposit upon

2

168215.00401/132073540v.1

expiration of the Lease or otherwise, it will look only to the landlord to which the security deposit was given and not to the Acquiring Party for the return of the security deposit and will not assert any offset against obligations owed to the Acquiring Party for any security deposit.

**Section 4. [Reserved].**

**Section 5. Tenant's Purchase Option.** The lien of the Mortgage shall unconditionally be and remain at all times a lien on the Property prior and superior to any existing or future option or right of first refusal of Tenant to purchase the Property or any portion thereof. In the event of any transfer of Landlord's interest in the Property by foreclosure or other action or proceeding for the enforcement of the Mortgage or by deed in lieu thereof, Tenant specifically waives any right, whether arising out of the Lease or otherwise, to exercise any such purchase option or right of first refusal which remains unexercised at the time of such transfer.

**Section 6. Lease Modifications; Conflicts.** Landlord and Tenant agree not to change, alter, amend or otherwise modify the Lease without the prior written consent of Lender. Any change, alteration, amendment, or other modification to the Lease without the prior written consent of Lender shall be void as to Lender, at the option of Lender. In the event of a conflict between this Agreement and the Lease, this Agreement shall control.

**Section 7. Notices.** In this Agreement, wherever it is required or permitted that notice and demand be given by any party to another party, that notice or demand shall be given in writing and forwarded by certified mail, addressed as follows:

Landlord:  Jenkins Court Realty Co. L.P.
610 Old York Road, Suite 375
Jenkintown, PA  19046
Attention:  Philip Pulley

For Tenant:  SBG Management Services Inc.
610 Old York Road, Suite 375
Jenkintown, PA  19046
Attention:  Philip Pulley

For Lender:  PSG Lending, LLC
6711 Columbia Gateway Drive, Suite 130
Columbia, MD 21046
Attention:  _____

Any party may change an address given for notice by giving written notice of that change by certified mail to all other parties.

**Section 8. Authority.** If any party is a corporation, limited liability company, or a partnership, such party represents and warrants to the other parties hereto that all individuals executing this Agreement on behalf of such corporation, limited liability company, or partnership are authorized to execute and deliver this Agreement on behalf of such corporation, limited liability company, or partnership and that this Agreement is binding upon such corporation, limited liability company, or partnership.

3

168215.00401/132073540v.1

**Section 9. Collateral Assignment.** Tenant hereby consents to the collateral assignment, by Landlord to Lender, of the Lease (including, without limitation, all of the rights and remedies of Landlord thereunder, and all of the security interests granted to Landlord thereunder or in connection therewith) and any guaranty of Tenant's obligations under the Lease.

**Section 10. Notices under Lease.** Tenant hereby acknowledges that Tenant has been furnished with Lender's address, and Tenant hereby agrees to give notices directly to Lender, as required by the Lease (including, without limitation, as may be required in the Lease with respect to damage to the Property).

**Section 11. Miscellaneous.** This Agreement may not be modified other than by an agreement in writing signed by the parties or by their respective successors in interest. If any party commences any action against any other party based on this Agreement, the prevailing party shall be entitled to recover reasonable attorney fees, expenses, and costs of suit. This Agreement shall be binding on and inure to the benefit of the parties and their respective heirs, successors and assigns. The headings of this Agreement are for reference only and shall not limit or define any meaning of this Agreement. This Agreement may be executed in one or more counterparts, each of which is an original, but all of which shall constitute one and the same instrument. This Agreement shall be construed in accordance with and governed by the law of the state where the Property is located.

[Signature page follows]

168215.00401/132073540v.1

4

The parties have duly executed this Agreement as of the date first above written.

**LENDER**:

**PSG LENDING, LLC**,
a Maryland limited liability company

By: _____

Name: Cameron Lawson

Title: Authorized Person

STATE OF _Maryland_ :

COUNTY OF _Howard_ :          ss

On this, the 21st day of _September_, 2023, before me the undersigned officer, personally appeared Cameron Lawson, who acknowledged himself to be the Authorized Person of **PSG LENDING, LLC**, a Maryland limited liability company, and that he as such Authorized Person being authorized to do so, executed the foregoing instrument for the purposes therein contained by signing the name of the company by himself as an Authorized Person.

Notary Public _____

Printed Name: _Vladimir Popik_

My Commission Expires:

_12/21/2026_

> **VLADIMIR POPIK**
> NOTARY PUBLIC
> HARFORD COUNTY
> MARYLAND
> MY COMMISSION EXPIRES DECEMBER 21, 2026

Signature Page- SBG Management SNDA

**LANDLORD**:

JENKINS COURT REALTY CO., L.P.,
a Pennsylvania limited partnership

By:_____
Name:_____ Philip Pulley
Title:_____ President and
                                            General Partner

STATE OF __PENNSYLVANIA__   :
                                    :  ss
COUNTY OF __Montgomery__   :

On this, the _11ᵗʰ_ day of _August_, 2023, before me the undersigned officer, personally appeared _Philip Pulley_, who acknowledged himself/herself/themselves to be the __President and Its General Partner__ of **JENKINS COURT REALTY CO., L.P.**, a Pennsylvania limited partnership, and that he/she/they as such _President + General Partner_ being authorized to do so, executed the foregoing instrument for the purposes therein contained by signing the name of the limited partnership by himself/herself/themselves as __President__ __and__ __Its__ __General Partner__.

Notary Public_____

Printed Name: _Jacqueline S, Werman_

My Commission Expires:
_3-27-2027_

Commonwealth of Pennsylvania - Notary Seal
JACQUELINE SILVERMAN - Notary Public
Montgomery County
My Commission Expires March 27, 2027
Commission Number 1348827

168215.00401/132073540v.1

**TENANT:**

SBG Management Services Inc.

By: _____

Name: _____ Philip Pulley

Title: _____ President

STATE OF Pennsylvania

COUNTY OF Montgomery ss

On this, the 11 day of August, 2023, before me the undersigned officer, personally appeared Philip Pulley, who acknowledged himself/herself/themselves to be the President of SBG management services the Pennsylvania Corp, and that he/she/they as such President being authorized to do so, executed the foregoing instrument for the purposes therein contained by signing the name of the corporation by himself/herself/themselves as a President

Notary Public _____

Printed Name: Jacqueline Silverman

My Commission Expires:

3-27-2027

Commonwealth of Pennsylvania - Notary Seal
JACQUELINE SILVERMAN - Notary Public
Montgomery County
My Commission Expires March 27, 2027
Commission Number 1348827

7

168215.00401/132073540v.1

## EXHIBIT A

### (LEGAL DESCRIPTION)

ALL THAT CERTAIN lot or piece or tract of land, Situate in the Borough of Jenkintown, County of Montgomery, Commonwealth of Pennsylvania, bounded and described according to a plan thereof made January 4, 1989 and last revised January 9, 1989, by Charles E. Shoemaker, Inc., Engineers and Surveyors of Abington, Pennsylvania as follows:

BEGINNING at a point on the present Easterly PennDot legal right of way line of Old York Road (80 feet wide) said point being at the distance of 162.66 feet measured North 9 degrees 54 minutes 00 seconds East from the point formed by the intersection which the said present Easterly PennDot legal right of way line of Old York Road makes with the Northwesterly side of Rydal Road (33 feet wide at this point): Thence extending from the place of beginning along the present Easterly PennDot legal right of way line of Old York Road North 09 degrees 54 minutes 00 seconds East, 1,091.04 feet to a point; thence North 23 degrees 4 minutes 30 seconds East 34.98 feet to a point; thence extending Northeastwardly on the arc of a circle curing to the left with a radius of 55.00 feet the arc distance of 50.71 feet to a point of compound curvature; thence extending Northeastwardly on the arc of a circle curving to the left with a radius of 140.00 feet the arc distance of 31.49 feet to a point of reverse curvature; thence extending Northeastwardly, Eastwardly, and Southeastwardly on the arc of a circle curving to the right with a radius of 5.00 feet the arc distance of 11.57 feet to a point on the Southwesterly side of Spring Avenue (50 feet wide) thence extending along the same South 32 Degrees 36 minutes 43 seconds East 239.02 feet to a point; thence extending South 57 degrees 23 minutes 17 seconds West 105.14 feet to a point; thence extending South 19 degrees 42 minutes 6 seconds East 600.54 feet to a point; thence extending South 57 degrees 21 minutes 34 seconds West 50.06 feet to a point; thence extending South 19 Degrees 44 minutes 3 seconds East 141.21 feet to a point on the aforementioned Northwesterly side of Rydal Road 40 feet wide at this point; thence extending along the same South 57 degrees 26 minutes 20 seconds West 477.50 feet to a point; thence extending North 55 degrees 23 minutes 34 seconds West 130.20 feet to a point on the aforementioned present Easterly PennDot legal right of way line of Old York Road the first mentioned point and place of beginning.

168215.00401/132073540v.1

 

RECORDER OF DEEDS
MONTGOMERY COUNTY
*Jeanne Sorg*

One Montgomery Plaza
Swede and Airy Streets ~ Suite 303
P.O. Box 311 ~ Norristown, PA 19404
Office: (610) 278-3289 ~ Fax: (610) 278-3869

**DEED BK 6342 PG 01524 to 01532**
INSTRUMENT # : 2023055041
RECORDED DATE: 10/16/2023 10:33:35 AM



6261160-0035N

**MONTGOMERY COUNTY ROD**

## OFFICIAL RECORDING COVER PAGE

Page 1 of 9

| | | | |
|---|---|---|---|
| **Document Type:** | Deed Miscellaneous | **Transaction #:** | 6838542 - 3 Doc(s) |
| **Document Date:** | 08/10/2023 | **Document Page Count:** | 8 |
| **Reference Info:** | | **Operator Id:** | dawhitner |

**RETURN TO:** (Simplifile)
Elkins Park Abstract Company
721 Dresher Road
Horsham, PA 19044
(215) 830-1100

**PAID BY:**
ELKINS PARK ABSTRACT COMPANY

**\* PROPERTY DATA:**
Parcel ID #:        10-00-05364-00-8
Address:            610 YORK RD

                    PA
Municipality:       Jenkintown Borough (100%)
School District:    Jenkintown

**\* ASSOCIATED DOCUMENT(S):**

**FEES / TAXES:**

| | |
|---|---|
| Recording Fee:Deed Miscellaneous | $52.50 |
| Additional Pages Fee | $8.00 |
| **Total:** | $60.50 |

DEED BK 6342 PG 01524 to 01532
Recorded Date: 10/16/2023 10:33:35 AM

I hereby CERTIFY that this document is
recorded in the Recorder of Deeds Office in
Montgomery County, Pennsylvania.



**Jeanne Sorg**
**Recorder of Deeds**

Rev1 2016-01-29

# PLEASE DO NOT DETACH

THIS PAGE IS NOW PART OF THIS LEGAL DOCUMENT
NOTE: If document data differs from cover sheet, document data always supersedes.
\*COVER PAGE DOES NOT INCLUDE ALL DATA, PLEASE SEE INDEX AND DOCUMENT FOR ANY ADDITIONAL INFORMATION

RECORDING REQUESTED BY
AND WHEN RECORDED MAIL TO:

Elkins Park Abstract Co

721 Dresher Road, Suite 1000
Horsham, PA 19044
215-830-1100

Tax ID Number: [-]
          10-00-05364-00-8

|  | Space above for Recorder's Use |
|---|---|

## SUBORDINATION, NONDISTURBANCE AND ATTORNMENT AGREEMENT

This Subordination, Nondisturbance and Attornment Agreement ("**Agreement**") is dated as of ___August 10,___, 2023, and effective as of _____August 25_____, 2023, by **PSG LENDING, LLC**, a [-] limited liability company ("**Lender**"), **JENKINS COURT REALTY CO., L.P.**, a Pennsylvania limited partnership ("**Landlord**"), and _Jenkins Storage LLC_____, a _LLC_____ ("**Tenant**").

## RECITALS

A. Landlord and Tenant have entered into that certain [Lease Agreement] with an effective date of _February 1, 2019 with a Commencement date of March1, 2019_____ (as amended, restated, supplemented or otherwise modified to date, the "**Lease**"), covering certain premises located at _610 Old York Road, G100, Jenkintown, PA  19046_ ("**Property**"). The Property is more particularly described in Exhibit A attached hereto and incorporated herein. The property is assessed as 610 York Road and is also known as 610 Old York Road (mailing address)

B. Lender is the beneficiary under a mortgage ("**Mortgage**"), dated as of _August 25_____, 2023, which Mortgage will be recorded concurrently herewith in the [Official Records of _Deeds_____ ], encumbering the Property. The Mortgage secures certain obligations to Lender as more particularly described therein.

C. On the terms and conditions in this Agreement, the parties desire to subordinate Tenant's leasehold interest in the Property to the lien of the Mortgage and to assure Tenant possession of the Property for the entire term of the Lease, even though Lender may foreclose the lien of the Mortgage before expiration of the Lease.

Therefore, in consideration of the mutual covenants and agreements contained in this Agreement, the parties agree as follows:

**Section 1. Subordination.** The Lease, the leasehold estate created thereby, and all rights and privileges of Tenant thereunder shall be subject and subordinate to the lien of the Mortgage and to any renewals, modifications, consolidations, replacements and extensions of the Mortgage to the full extent of the obligations now or hereafter secured by the Mortgage.

**Section 2. Nondisturbance.** So long as Tenant is not in default, beyond any period given to Tenant to cure a default, in the payment of rent or in the performance of any of the terms, covenants, or conditions of the Lease, Tenant's possession of the Property and Tenant's rights and privileges under the Lease, including any extensions or renewals, shall not be diminished or interfered with by Lender during the

168215.00401/132073540v.1

term of the Lease or any extensions or renewals. So long as Tenant is not in default, beyond any period given Tenant to cure such default, in the payment of rent or in the performance of any of the terms, covenants, or conditions of the Lease, Lender will not join Tenant as a party for the purpose of terminating or otherwise affecting Tenant's interest under the Lease, in any action of foreclosure or other proceeding brought by Lender to enforce any rights arising because of any default under the Mortgage. Lender may, however, join Tenant as a party if joinder is necessary under any statute or law to secure the remedies available to Lender under the Mortgage, but joinder shall be for that purpose only and not for the purpose of terminating the Lease or affecting Tenant's right to possession of the Property.

**Section 3. Attornment.** If Landlord's interest is transferred to and owned by Lender or any successor of Lender ("**Acquiring Party**") because of foreclosure or other proceedings brought by Lender, or by any other manner, and Acquiring Party succeeds to Landlord's interest under the Lease, Tenant shall be bound to the Acquiring Party, and Acquiring Party shall be bound to Tenant under all of the terms, covenants and conditions of the Lease for the balance of the remaining term, including any extensions or renewals, with the same effect as if Acquiring Party were Landlord under the Lease. Tenant agrees to attorn to Acquiring Party as Landlord, with the attornment being effective and self-operable immediately upon Acquiring Party succeeding to the interest of Landlord under the Lease, all without the execution by the parties of any further instruments. However, Tenant shall not be obligated to pay rent to Acquiring Party until Tenant receives written notice from Acquiring Party, together with evidence satisfactory to Tenant, demonstrating that Acquiring Party has succeeded to Landlord's interest under the Lease and directing where rent should be mailed. The respective rights and obligations of Tenant and Acquiring Party upon attornment, to the extent of the then-remaining balance of the term of the Lease, shall be the same as in the Lease, which is incorporated by reference in this Agreement. If Acquiring Party succeeds to Landlord's interest in the Lease, Acquiring Party shall be bound to Tenant under all the terms, covenants and conditions of the Lease, and Tenant shall, after Acquiring Party's succession to Landlord's interest, have the same remedies against Acquiring Party for the breach of any agreement in the Lease that Tenant might have had against Landlord; provided, however, Acquiring Party shall not be:

       (i)     Liable for any act or omission of any prior landlord (including Landlord) which occurred prior to the date that the Acquiring Party succeeded to the interest of such prior landlord under the Lease.

       (ii)     Obligated to cure any defaults of any prior landlord (including Landlord).

       (iii)     Subject to any offsets or defenses which Tenant may be entitled to assert against any prior landlord (including Landlord) with respect to events occurring prior to the date the Acquiring Party succeeded to Landlord's interest.

       (iv)     Bound by any rent or other amounts paid by Tenant to any prior landlord (including Landlord) more than one (1) month in advance of the date that the Acquiring Party succeeded to the interest of such prior landlord under the Lease.

       (v)     Bound by any amendment or modification of the Lease or any supplemental agreement made without the consent of Lender (to the extent that such consent is required by the Mortgage or the Loan Agreement, as defined in the Mortgage).

       (vi)     Liable for any security deposit Tenant shall have given any prior landlord (including Landlord) which was not transferred to the Acquiring Party. Tenant agrees that in the event it seeks or is entitled to a return of a security deposit upon expiration of the Lease or otherwise, it will look only to the landlord to which the

2

168215.00401/132073540v.1

security deposit was given and not to the Acquiring Party for the return of the security deposit and will not assert any offset against obligations owed to the Acquiring Party for any security deposit.

**Section 4. [Reserved].**

**Section 5. Tenant's Purchase Option.** The lien of the Mortgage shall unconditionally be and remain at all times a lien on the Property prior and superior to any existing or future option or right of first refusal of Tenant to purchase the Property or any portion thereof. In the event of any transfer of Landlord's interest in the Property by foreclosure or other action or proceeding for the enforcement of the Mortgage or by deed in lieu thereof, Tenant specifically waives any right, whether arising out of the Lease or otherwise, to exercise any such purchase option or right of first refusal which remains unexercised at the time of such transfer.

**Section 6. Lease Modifications; Conflicts.** Landlord and Tenant agree not to change, alter, amend or otherwise modify the Lease without the prior written consent of Lender. Any change, alteration, amendment, or other modification to the Lease without the prior written consent of Lender shall be void as to Lender, at the option of Lender. In the event of a conflict between this Agreement and the Lease, this Agreement shall control.

**Section 7. Notices.** In this Agreement, wherever it is required or permitted that notice and demand be given by any party to another party, that notice or demand shall be given in writing and forwarded by certified mail, addressed as follows:

| | |
|---|---|
| Landlord: | Jenkins Court Realty Co. L.P. |
| | 610 Old York Road, Suite 375 |
| | Jenkintown, PA  19046 |
| | Attention:  Philip Pulley |
| | |
| For Tenant: | Jenkins Storage LLC |
| | 610 Old York Road, G100 |
| | Jenkintown, PA  19046 |
| | Attention:  Michael Yanoff, Esquire |
| | |
| For Lender: | PSG Lending, LLC |
| | 6711 Columbia Gateway Drive, Suite 130 |
| | Columbia, MD 21046 |
| | Attention: _____ |

Any party may change an address given for notice by giving written notice of that change by certified mail to all other parties.

**Section 8. Authority.** If any party is a corporation, limited liability company, or a partnership, such party represents and warrants to the other parties hereto that all individuals executing this Agreement on behalf of such corporation, limited liability company, or partnership are authorized to execute and deliver this Agreement on behalf of such corporation, limited liability company, or partnership and that this Agreement is binding upon such corporation, limited liability company, or partnership.

**Section 9. Collateral Assignment.** Tenant hereby consents to the collateral assignment, by Landlord to Lender, of the Lease (including, without limitation, all of the rights and remedies of Landlord thereunder,

3

168215.00401/132073540v.1

and all of the security interests granted to Landlord thereunder or in connection therewith) and any guaranty of Tenant's obligations under the Lease.

**Section 10. Notices under Lease.** Tenant hereby acknowledges that Tenant has been furnished with Lender's address, and Tenant hereby agrees to give notices directly to Lender, as required by the Lease (including, without limitation, as may be required in the Lease with respect to damage to the Property).

**Section 11. Miscellaneous.** This Agreement may not be modified other than by an agreement in writing signed by the parties or by their respective successors in interest. If any party commences any action against any other party based on this Agreement, the prevailing party shall be entitled to recover reasonable attorney fees, expenses, and costs of suit. This Agreement shall be binding on and inure to the benefit of the parties and their respective heirs, successors and assigns. The headings of this Agreement are for reference only and shall not limit or define any meaning of this Agreement. This Agreement may be executed in one or more counterparts, each of which is an original, but all of which shall constitute one and the same instrument. This Agreement shall be construed in accordance with and governed by the law of the state where the Property is located.

[Signature page follows]

The parties have duly executed this Agreement as of the date first above written.

**LENDER**:

**PSG LENDING, LLC,**
a Maryland limited liability company

By: _____

Name: Cameron Lawson

Title: Authorized Person

STATE OF _Maryland_ :

COUNTY OF _Howard_ :     ss

On this, the 21st day of _September_, 2023, before me the undersigned officer, personally appeared Cameron Lawson , who acknowledged himself to be the Authorized Person of **PSG LENDING, LLC,** a Maryland limited liability company, and that he as such Authorized Person being authorized to do so, executed the foregoing instrument for the purposes therein contained by signing the name of the company by himself as an Authorized Person.

Notary Public

Printed Name: Vladimir Popik

My Commission Expires:

12/21/2026

VLADIMIR POPIK
NOTARY PUBLIC
HARFORD COUNTY
MARYLAND
MY COMMISSION EXPIRES DECEMBER 21, 2026

Signature Page- Precious One SNDA

**LANDLORD**:

JENKINS COURT REALTY CO., L.P.,
a Pennsylvania limited partnership

By: _____
Name: _____
Title: _____

Philip Pulley
President and
General Partner

STATE OF __PENNSYLVANIA__    :
                                                  :    ss
COUNTY OF __Montgomery__    :

On this, the 10 day of August, 2023, before me the undersigned officer, personally appeared _Philip Pulley_, who acknowledged himself/herself/themselves to be the __President and Its General Partner__ of **JENKINS COURT REALTY CO., L.P.**, a Pennsylvania limited partnership, and that he/she/they as such _President & General Partner_ being authorized to do so, executed the foregoing instrument for the purposes therein contained by signing the name of the limited partnership by himself/herself/themselves as __President__ and __Its__ __General Partner__.

Notary Public _____

Printed Name: Jacqueline Silverman

Commonwealth of Pennsylvania - Notary Seal
JACQUELINE SILVERMAN - Notary Public
Montgomery County
My Commission Expires March 27, 2027
Commission Number 1348827

My Commission Expires:
3-27-2027

168215.00401/132073540v.1

**TENANT**:    Jenkins Storage LLC

_____,

By:_____

Name: Warren B. Silverman

Title: Owner    Warren B. Silverman, Owner

STATE OF Pennsylvania

COUNTY OF Montgomery    ss

On this, the 10" day of August, 2023, before me the undersigned officer, personally appeared Warren B. Silverman, who acknowledged himself/herself/themselves to be the Owner of Jenkins Storage LLC and that he/she/they as such Owner being authorized to do so, executed the foregoing instrument for the purposes therein contained by signing the name of the LLC by himself/herself/themselves as Owner.

Notary Public

Printed Name: Jacqueline Silverman

My Commission Expires:

3-27-2027

Commonwealth of Pennsylvania - Notary Seal
JACQUELINE SILVERMAN - Notary Public
Montgomery County
My Commission Expires March 27, 2027
Commission Number 1348827

7

168215.00401/132073540v.1

## EXHIBIT A

### (LEGAL DESCRIPTION)

ALL THAT CERTAIN lot or piece or tract of land, Situate in the Borough of Jenkintown, County of Montgomery, Commonwealth of Pennsylvania, bounded and described according to a plan thereof made January 4, 1989 and last revised January 9, 1989, by Charles E. Shoemaker, Inc., Engineers and Surveyors of Abington, Pennsylvania as follows:

BEGINNING at a point on the present Easterly PennDot legal right of way line of Old York Road (80 feet wide) said point being at the distance of 162.66 feet measured North 9 degrees 54 minutes 00 seconds East from the point formed by the intersection which the said present Easterly PennDot legal right of way line of Old York Road makes with the Northwesterly side of Rydal Road (33 feet wide at this point): Thence extending from the place of beginning along the present Easterly PennDot legal right of way line of Old York Road North 09 degrees 54 minutes 00 seconds East, 1,091.04 feet to a point; thence North 23 degrees 4 minutes 30 seconds East 34.98 feet to a point; thence extending Northeastwardly on the arc of a circle curing to the left with a radius of 55.00 feet the arc distance of 50.71 feet to a point of compound curvature; thence extending Northeastwardly on the arc of a circle curving to the left with a radius of 140.00 feet the arc distance of 31.49 feet to a point of reverse curvature; thence extending Northeastwardly, Eastwardly, and Southeastwardly on the arc of a circle curving to the right with a radius of 5.00 feet the arc distance of 11.57 feet to a point on the Southwesterly side of Spring Avenue (50 feet wide) thence extending along the same South 32 Degrees 36 minutes 43 seconds East 239.02 feet to a point; thence extending South 57 degrees 23 minutes 17 seconds West 105.14 feet to a point; thence extending South 19 degrees 42 minutes 6 seconds East 600.54 feet to a point; thence extending South 57 degrees 21 minutes 34 seconds West 50.06 feet to a point; thence extending South 19 Degrees 44 minutes 3 seconds East 141.21 feet to a point on the aforementioned Northwesterly side of Rydal Road 40 feet wide at this point; thence extending along the same South 57 degrees 26 minutes 20 seconds West 477.50 feet to a point; thence extending North 55 degrees 23 minutes 34 seconds West 130.20 feet to a point on the aforementioned present Easterly PennDot legal right of way line of Old York Road the first mentioned point and place of beginning.

168215.00401/132073540v.1

UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| In re | : |
| | : CIVIL ACTION |
| ICON PSG 1 FL, LLC, | : |
| | : No.: 2:25-cv-44 |
| Plaintiff, | : |
| | : |
| v. | : |
| | : |
| JENKINS COURT REALTY CO., LP. | : |
| | : |
| Defendant. | : |

## CERTIFICATE OF SERVICE

I, Albert A. Ciardi, III, Esquire, hereby caused on this 16th Day of June, 2025, a true and correct copy of *Defendants Response to Motion to Modify Leases* was served via electronic case filing (ecf) and United States first class mail, postage prepaid upon the following:

Raymond A. Quaglia, Esquire
Brian N. Kearney, Esquire
Ballard Spahr LLP
1735 Market Street, 51st Floor
Philadelphia, PA  19103
quaglia@ballardspahr.com
kearneyb@ballardspahr.com
*Counsel to Plaintiff, ICON PSG 1 FL, LLC*

**CIARDI CIARDI & ASTIN**

By:    */s/ Albert A. Ciardi, III*
Albert A. Ciardi, III, Esquire
1905 Spruce Street
Philadelphia, PA 19103
Telephone: (215) 557-3550
Facsimile: (215) 557-3551
aciardi1@ciardilaw.com

7

UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| In re | : | |
| | : | CIVIL ACTION |
| ICON PSG 1 FL, LLC, | : | |
| | : | No.: 2:25-cv-44 |
| Plaintiff, | : | |
| | : | |
| v. | : | |
| | : | |
| JENKINS COURT REALTY CO., LP. | : | |
| | : | |
| Defendant. | : | |

**JENKINS COURT REALTY CO., LP'S RESPONSE IN OPPOSITION TO RECEIVER'S MOTION TO HOLD DEFENDANT AND ITS PRINCIPAL IN CONTEMPT OF THE COURT'S COMPLIANCE ORDER**

Jenkins Court Realty Co., LP, by and through the undersigned counsel, hereby files its

Response to Opposition to the Motion for Contempt filed by the Reciever for the reasons set

forth in its Decleration of Phillip J. Pulley and Memorandum of Law in Support of its

Opposition.

Respectfully submitted,

CIARDI CIARDI & ASTIN

1905 Spruce Street
Philadelphia, PA 19103
Telephone: (215) 557-3550

BY:_____
       Albert A. Ciardi, III
       Email: aciardi@ciardilaw.com
       Daniel S. Siedman, Esq.
       Email: dsiedman@ciardilaw.com

Attorneys for Defendant

## UNITED STATES DISTRICT COURT
## FOR THE EASTERN DISTRICT OF PENNSYLVANIA

In re                                          :
                                               :    CIVIL ACTION
ICON PSG 1 FL, LLC,                            :
                                               :    No.:  2:25-cv-44
        Plaintiff,          :
                                               :
    v.                                     :
                                               :
                                               :
JENKINS COURT REALTY CO., LP.                  :
                                               :
        Defendant.          :

## DECLARATION OF PHILLIP PULLEY ON BEHALF OF JENKINS COURT REALTY CO., LP

Pursuant to 28 U.S.C. § 1746, Phillip Pulley hereby declares as follows:

1.      I am an Officer of Old Jenkins Corporation which is an authorized representative for the above-named Defendant, Jenkins Court Realty Co., LP ("Jenkins").

2.      On or about February 21, 2025, the Court appointed Trigild IVL, LLC as a receiver for the improved real property owned by the Defendant in this action (the "Property") pursuant to the Court's Order filed on February 21, 2025 (D.N. 13) (the "Receiver Order").

3.      On or about June 6, 2025, the Receiver filed a Motion to Hold Defendant and its Principal in Contempt of the Court's Compliance Order (the "Motion").

4.      I respectfully submit this declaration in opposition to the Receiver's Motion.

5.      The Receiver seeks to hold Defendant and its principal, Philip Pulley in contempt of the Court's Order entered on May 12, 2025 (D.N. 28), compelling compliance with the Court's prior Order entered February 21, 2025 (D.N. 13) (the "Compliance Order").

6.      The Compliance Order required the Defendant to provide an accounting and ten (10) enumerated categories of information, comprising of (a) Financial Reports for the years

1

2024 and 2025; (b) General Ledgers for the years 2024 and 2025; (c) Tenant Ledgers for the years 2024 and 2025; (d) A current Rent Roll; (e) Annual Testing documentation for the fire alarm and sprinkler system for the years 2024 and 2025; (f) Bank Statements for the operating account for the years 2024 and 2025; (g) Access to the building access control systems; (h) admin password to the DVR / camera system; (i) Verizon phone line account information for the base building system communication; and (j) CAM reconciliations for 2023 and 2022. *See* Compliance Order at pp 1-2.

7.    On May 16, 2025, Defendant filed a Response in Compliance with the May 12, 2025 Order (the "May 16[th] Response"). *See* D.N. 29. Defendant attaches a copy of the Response hereto as Exhibit "A" and incorporates it herein as if fully set forth.

8.    Defendant provided all the information in its possession and provided detailed responses as to each of the ten (10) enumerated categories.

9.    Specifically, Defendant provided the accounting records in its possession.

10.    On March 10, 2025, Defendant provided the Plaintiff and Receiver with 8,400 pages of documents in response to the Receiver's request. The Receiver received nearly 280 documents and receipt was acknowledged by Ava Stapp, Manager of Receivership Services at the Receiver. A true and correct copy of the Log of documents is attached as Exhibit "B".

11.    Furthermore, the Defendant sent additional documents, including the General Ledger, in response to the Compliance Order. The Defendant also sent bank information and other documents directly to Chris Neilson, Managing Partner of the Receiver (starting on February 27, 2025)

12.    The Defendant has provided everything in its possession.

2

13. Unfortunately, due to a pipe break in 2022, a lot of historical data and documents were destroyed.

14. Despite producing nearly 280 documents, the Receiver sets forth that they are still require the following: (1) Financial Reports for 2023[1] and 2024; (2) Tenant Ledgers showing rents as of February 21, 2025; (3) Rent Rolls as of February 21, 2025; (4) Bank Statements as of February 21, 2025; (5) Access and Login Information for control system and DVR; (6) Phone line account information for line serving the elevators; and (7) CAM Reconciliations for 2023.

15. Counsel for Receiver sent a letter dated May 28, 2025 seeking a demand for formal compliance.

16. The Receiver continues to seek information that is not in the possession of the Defendant and/or Defendant's principal. Additionally, the Receiver is seeking information already provided to the Receiver (for example, the bank statements).

17. For example, Receiver asks for access and login information for the control system and DVR, yet Defendant responded in the May 16th Response that Defendant has been disconnected from the system and does not have access. *See* May 16th Response at Paragraph 8.

18. Similarly, Receiver seeks phone line account information for the elevators, yet Defendant provided this information to the Receiver.

19. The problem in this situation is that the Receiver wants the Defendant to continue to operate the building, yet the Receiver was employed for that specific purpose and the Defendant does not have access to any information that is not in the possession of the Receiver and the Receiver's counsel.

---

[1] This was not part of the original request by the Receiver and/or set forth in the Receiver's Order.

3

20. Additionally, it should be noted, that Defendant has made a request of the Receiver on nearly ten (10) occasions for information that is in the possession of the Receiver to permit the Defendants to fully comply with the reporting requests. Plaintiff and Receiver have rebuffed all requests made by Defendant.

21. Defendant opposed the Receiver Motion and now the Receiver, on the behest of the Plaintiff, seeks to hold the Defendant in contempt despite the fact that Defendant does not have access to the building or any of the information that Receiver continues to seek.

22. Neither the Plaintiff nor the Receiver can hold the Defendant and/or Defendant's principal in contempt for information that is not in their possession.

23. The Receiver cannot establish that Defendant disobeyed a Court Order. Defendant responded to the Compliance Order. Defendant provided the information in its possession. That is not failure to obey a Court Order.

Philip Pulley as an authorized
Representative of Jenkins Court Realty Co.,
LP

4

UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| In re | : |
| | : CIVIL ACTION |
| ICON PSG 1 FL, LLC, | : |
| | : No.: 2:25-cv-44 |
| Plaintiff, | : |
| | : |
| v. | : |
| | : |
| JENKINS COURT REALTY CO., LP. | : |
| | : |
| Defendant. | : |

**JENKINS COURT REALTY CO., LP'S MEMORANDUM OF LAW
IN SUPPORT OF ITS OBJECTION TO RECEIVER'S MOTION FOR CONTEMPT**

Jenkins Court Realty Co., LP, by and through its undersigned counsel, hereby submits the following Memorandum of Law in support of its objection to Receiver's Motion for Contempt.

**I.      INTRODUCTION**

On or about February 21, 2025, the Court appointed Trigild IVL, LLC as a receiver for the improved real property owned by the Defendant in this action (the "Property") pursuant to the Court's Order filed on February 21, 2025 (D.N. 13) (the "Receiver Order"). On or about June 6, 2025, the Receiver filed a Motion for Contempt against the Defendant for failure of Defendant to comply of the Court's Order entered on May 12, 2025 (D.N. 28), compelling compliance with the Court's prior Order entered February 21, 2025 (D.N. 13) (the "Compliance Order") (the "Motion"). The Compliance Order required the Defendant to provide an accounting and ten (10) enumerated categories of information, comprising of (a) Financial Reports for the years 2024 and 2025; (b) General Ledgers for the years 2024 and 2025; (c) Tenant Ledgers for the years 2024 and 2025; (d) A current Rent Roll; (e) Annual Testing documentation for the fire alarm and sprinkler system for the years 2024 and 2025; (f) Bank

Statements for the operating account for the years 2024 and 2025; (g) Access to the building access control systems; (h) admin password to the DVR / camera system; (i) Verizon phone line account information for the base building system communication; and (j) CAM reconciliations for 2023 and 2022. *See* Compliance Order at pp 1-2.  On May 16, 2025, Defendant filed a Response in Compliance with the May 12, 2025 Order (the "May 16th Response").  *See* D.N. 29.  Defendant attaches a copy of the Response hereto as Exhibit "A" and incorporates it herein as if fully set forth.

Defendant provided all the information in its possession and provided detailed responses as to each of the ten (10) enumerated categories.

## II.    RELEVANT FACTS

On March 10, 2025, Defendant provided the Plaintiff and Receiver with 8,400 pages of documents in response to the Receiver's request.  The Receiver received nearly 280 documents and receipt was acknowledged by Ava Stapp, Manager of Receivership Services at the Receiver.  A true and correct copy of the Log of documents is attached as Exhibit "B". The Defendant has provided everything in its possession.  Unfortunately, due to a pipe break in 2022, a lot of historical data and documents were destroyed.

Despite producing nearly 280 documents, the Receiver sets forth that they are still require the following: (1) Financial Reports for 2023 and 2024; (2) Tenant Ledgers showing rents as of February 21, 2025; (3) Rent Rolls as of February 21, 2025; (4) Bank Statements as of February 21, 2025; (5) Access and Login Information for control system and DVR; (6) Phone line account information for line serving the elevators; and (7) CAM Reconciliations for 2023.  Counsel for Receiver sent a letter dated May 28, 2025 seeking a demand for formal compliance.  The Receiver continues to seek information that is not in the possession of the Defendant and/or Defendant's principal.

For example, Receiver asks for access and login information for the control system and DVR, yet Defendant responded in the May 16th Response that Defendant has been disconnected from the system and does not have access. *See* May 16th Response at Paragraph 8. Similarly, Receiver seeks phone line account information for the elevators, yet Defendant provided this information to the Receiver.

Additionally, it should be noted, that Defendant has made a request of the Receiver on nearly ten (10) occasions for information that is in the possession of the Receiver to permit the Defendants to fully comply with the reporting requests. Plaintiff and Receiver have rebuffed all requests made by Defendant.

As more fully argued below, the Defendant should not be held in contempt.

## III.    ARGUMENT

### A.    Defendant Should Not Be Held in Contempt

Defendants should not be held in contempt of the Compliance Order. As set forth in Receiver's Motion, Proof of contempt requires a movant to demonstrate "(1) that a valid order of the court existed; (2) that the defendants had knowledge of the order; and (3) that the defendants disobeyed the order." *F.T.C. v. Lane Labs-USA, Inc.*, 624 F.3d 575, 582 (3d Cir. 2010) *citing Marshak,* 595 F.3d at 485 (internal quotations omitted); *Roe,* 919 F.2d at 871. That said, Receiver fails to acknowledge that these elements "must be proven by 'clear and convincing' evidence, and ambiguities must be resolved in favor of the party charged with contempt." *Id. citing John T. v. Del. Cnty. Intermediate Unit,* 318 F.3d 545, 552 (3d Cir.2003).

An alleged contemnor may, however, establish a defense of substantial compliance by showing that he **"(1) has taken all reasonable steps to comply with the valid court order, and (2) has violated the order in a manner that is merely technical or inadvertent."** *In re*

*Linerboard Antitrust Litig.*, No. CIV.A. 98-5055, 2012 WL 2912332, at *26 (E.D. Pa. July 16, 2012) *citing Lane Labs–USA,* 624 F.3d at 591 (quotations omitted).

Here, Defendant did not disobey any Order. Defendant provided all the documents in its possession and responsive to the initial Receiver's Order on March 10, 2025. The Defendant continued to supplement and provide information to the Receiver. Thereafter, Defendant promptly provided a response to the Compliance Order in the May 16th Response. Defendant provided all the documents in its possession responsive to the Receiver Order and Compliance Order. As set forth in the Decleration of Philip Pulley, the Defendant has taken all reasonable steps to comply with the Receiver Order and Compliance Order. Defendant does not have access to any additional records to create the reconciliations and/or information that Receiver is requesting of the Defendant. Additionally, the Defendant has asked the Receiver for information in its possession so that the Defendant can assist in reconciling the records, but the Receiver has ignored all requests. Any failure to comply is inadvertent as the Defendant does not have access to the records or the historical data was destroyed in a pipe break.

## IV.    CONCLUSION

For the reasons set forth above, Defendant respectfully requests this Court deny the Motion and to order such additional relief as is just and proper under the circumstances.

Dated: June 20, 2025                           Respectfully submitted,

CIARDI CIARDI & ASTIN

By:_____
Albert A. Ciardi, III, Esquire
Daniel S. Siedman, Esquire
1905 Spruce Street,
Philadelphia, PA 19103
(215) 557-3550 Phone
(215) 557-3551 Fax
*Attorneys for Defendant*

# EXHIBIT A

**UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA**

| | |
|---|---|
| In re | : |
| | : CIVIL ACTION |
| ICON PSG 1 FL, LLC, | : |
| | : No.: 2:25-cv-44 |
| Plaintiff, | : |
| | : |
| v. | : |
| | : |
| JENKINS COURT REALTY CO., LP. | : |
| | : |
| Defendant. | : |

**DEFENDANT'S RESPONSE IN COMPLIANCE WITH THE MAY 12, 2025 ORDER**

Jenkins Court Realty Co., LP. ("Jenkins") submits the following Response in Compliance with the Order of this Court (ECF 28) granting the Court-appointed Receiver Trigild IVL, LLC's Motion to Compel (ECF 22). Jenkins as required to provide and file the following:

1. **Financial Reports for 2024 and 2025**. Attached are the accounting records in Jenkins' possession. Please note that these are not reports nor complete ledgers for fiscal year 2024 or 2025. They have not been reviewed or adjusted. Since we have not been collecting rents, CAM, Real Estate Taxes or insurance beginning approximately November 2024, we estimate that 20% of the information is not included. The absence of this requested information from the lender, their counsel and receiver are precluding us from the full competition any reports.

2. **General Ledgers for 2024 and 2025**. Attached are the accounting records in Jenkins' possession. Please note that these are not reports nor complete ledgers for fiscal year 2024 or 2025. They have not been reviewed or adjusted. Since we have not been collecting rents, CAM, Real Estate Taxes or insurance beginning approximately November 2024, we estimate that 20% of the information is not included. The absence of this requested information from the lender, their counsel and receiver are precluding us from the full competition any reports.

3.      **Tenant ledgers for 2024 and 2025**. Attached are the accounting records in Jenkins' possession. Please note that these are not reports nor complete ledgers for fiscal year 2024 or 2025. They have not been reviewed or adjusted. Since we have not been collecting rents, CAM, Real Estate Taxes or insurance beginning approximately November 2024, we estimate that 20% of the information is not included. The absence of this requested information from the lender, their counsel and receiver are precluding us from the full competition any reports.

4.      **Current rent roll**. This information is unchanged from the prior responsive pleading and the square footages are contained in the Leases.

5.      **Annual Testing**. This information is unchanged from the prior responsive pleading and Jenkins has spoken to Fire Marshall Keyin Lynch and he doesn't need anything at this time as the system is compliant. Also, Jenkins' has spoken to the insurance Agent Devin Shewell at MDP and they don't require any information currently.

6.      **Bank Accounts**. Attached are the accounting records in Jenkins' possession. Please note that these are not reports nor complete ledgers for fiscal year 2024 or 2025. They have not been reviewed or adjusted. Since we have not been collecting rents, CAM, Real Estate Taxes or insurance beginning approximately November 2024, we estimate that 20% of the information is not included. The absence of this requested information from the lender, their counsel and receiver are precluding us from the full competition any reports.

7.      **Access to Building Control and DVR System**. This information is unchanged from the prior responsive pleading. Moreover, someone has disconnected the data lines from the system. The security schedule is based upon the requirements of the leases.

8.    **Admin Password to the DVR / Camera System.** This information is unchanged from the prior responsive pleading. Moreover, someone has disconnected access to the system.

9.    **Verizon Phone Line Account Information.** This information is unchanged from the prior responsive pleading. Moreover, this information was previously provided as to Granite communication. The elevator communications are from the elevator company (talk to Sam in the office).

10.   **CAM Reconciliations for 2022 and 2023.** This information is unchanged from the prior responsive pleading. Moreover, the information for 2022 and prior was destroyed by a flood in the Building that took place on December 26, 2022.

**CIARDI CIARDI & ASTIN**

Date: May 16, 2025      By:    ___*/s/ Albert A. Ciardi, III*___
                                        Albert A. Ciardi, III, Esquire
                                        1905 Spruce Street
                                        Philadelphia, PA 19103
                                         Telephone: (215) 557-3550
                                         Facsimile: (215) 557-3551
                                         aciardi1@ciardilaw.com

## UNITED STATES DISTRICT COURT
## FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| In re | : |
| | : CIVIL ACTION |
| ICON PSG 1 FL, LLC, | : |
| | : No.: 2:25-cv-44 |
| Plaintiff, | : |
| | : |
| v. | : |
| | : |
| JENKINS COURT REALTY CO., LP. | : |
| | : |
| Defendant. | : |

### AFFIDAVIT OF PHILIP PULLEY ON BEHALF OF DEFENDANT

Philip Pulley, by and through his counsel Ciardi Ciardi & Astin, hereby states under oath as follows:

1.    I am an Officer of Old Jenkins Corporation which is an authorized representative for the above-named Defendant, Jenkins Court Realty Co., LP ("Jenkins").

2.    The Defendant's Responses to the May 12, 2025 Order are true and correct under penalty of perjury.


_/s/ Philip Pulley_____
Philip Pulley

Case 2:25-cv-00044-GAM    Document 35-4    Filed 06/20/25    Page 1 of 6

# EXHIBIT B

| Name |
| --- |
| Jemkins Re tax bill 2023.pdf |
| Jenkins  Dr. Kress  1st Amendement to Lease.pdf |
| Jenkins Bethany Christian Services Lease.pdf |
| Jenkins Cell American Tower Lease 033022.pdf |
| Jenkins Dogtopia  1st Amendement to Lease Agreement.pdf |
| jenkins Dogtopia 2nd admendment.pdf |
| Jenkins Dogtopia First Amendment Lease.pdf |
| Jenkins Dogtopia Lease.pdf |
| Jenkins Dr. Kress  2nd Amendement to Lease.pdf |
| Jenkins enviormental Phase 1- Part 1 of 3 2022.msg |
| Jenkins Enviormental Phase 1- Part 2 of 3 2022.msg |
| Jenkins Helping Hand Commencement letter10-26-2022.pdf |
| jenkins Helping Hand plan 4-5-2022.pdf |
| Jenkins Helping Hands Family Lease executed 3-2022.pdf |
| jenkins Jersey CO 4-2023.pdf |
| jenkins Jersey college 1st ademendment.pdf |
| Jenkins Jersey Lease 1-11-2022.pdf |
| Jenkins JERSEY plans 2-8-2022.pdf |
| Jenkins jersey plans Electrical signed and sealed 2-17-2022.msg |
| Jenkins Jersey plans Mech Signed and Sealed 2-17-2022.pdf |
| Jenkins Jersey Signage exhibit D.pdf |
| Jenkins lease Temple suite 250.pdf |
| Jenkins Marc Kress Lease Agreement.pdf |
| Jenkins Outback 1st Addendum to Lease.pdf |
| Jenkins Outback 2nd Amendment to Lease.pdf |
| Jenkins Outback 3rd Amendment to Lease.pdf |
| jenkins Outback Lease.pdf |
| Jenkins Outback Option Letter till 2025.pdf |
| Jenkins Outback Steakhouse Lease and admendments.msg |
| Jenkins PCA 2022.msg |
| Jenkins Permits 6-15-2023.pdf |
| Jenkins Permits To date 7-30-2023.pdf |
| jenkins Photo american Flag.jpg |
| JENKINS REAL ESTATE TAX bills 2023-2024.msg |
| Jenkins SBG Lease Agreement.pdf |
| Jenkins SBG Managment  First admendment of lease  2023.pdf |
| jenkins Sezai Saran- Lease 2020.pdf |
| jenkins Starbucks $$$$ email 3-28-2023.msg |
| jenkins Starbucks Commercial Lease 1-10-23 JES handwritten comments (01641215xA68C5).pdf |
| Jenkins Starbucks CU application 6-2023.msg |

Jenkins Starbucks Email 7-28-2023.pdf

Jenkins Starbucks Jenkintown email submissions 4-10-2023.msg

Jenkins Starbucks rental increase 3-21-2023.msg

Jenkins Starbucks Ritas Plan 3-9-2023.pdf

jenkins Starbucls LOI Fully Exec 011222.pdf

Jenkins Storage Agreement letter 4-20-22.pdf

Jenkins Storage- lease signed LL yellow.pdf

Jenkins Storage- lease signed LL.pdf

Jenkins Storage- lease.pdf

Jenkins Storage-Plan.pdf

Jenkins Temple call center executed LOI 2.23.21 (Fully Executed 3.3.21).pdf

Jenkins Temple FCCC comencement letter5-1-2022.pdf

Jenkins Temple Fox chase Lease 030122.pdf

Jenkins Temple Lease suite 250.pdf

jenkins Temple plan call center 5-2021 lease.pdf

Jenkins TruMark Financial Lease.pdf

Jenkins Trumark PARKING SPACE RENTAL AGREEMENT 8YRS 3-2022.docx

Jenkins Zoning Report 2022.msg

Jenkins Zoning report 9-2022.pdf

Lease Agreement - Outback Steakhouse.pdf

Regus Commencement Date Letter executed.PDF

Regus executed lease Oct 2015.pdf

Temple Fox Chase Lease 2022.pdf

Jenkins Sbg Lease

Jenkins SBG Lease 1st admend ment

Jenkins SBG 2nd admendment

Jenkins  Dogtopia 3 and 4 admendments

Jenkins Appraiser Wells Fargo 12-2020

jenkins Jersery PLans_files

Jenkins Starbuck Carroll Land Development 3-29-2024

jenkins starbucks Tech Criteria_files

Jenkins Tiny Town PLans 4-1-2024

JenkinsCourt3rdPartyReports

JenkinsCourt3rdPartyReports

Marchwood Buyer

Third Party Reports

Third Party Reports

03-29-24 First LD Response Review.pdf

03-29-24 Letter of Waiver Requests.pdf

2013 FINAL PCA - Jenkins Court.pdf

2014 FINAL Asbestos O&M - Jenkins Court.pdf

2014 FINAL ESA-Jenkins Court.pdf

2024-03-29_Township Submission Letter.pdf

610 Old York Road Brochure.pdf

610 York Road - Final Land Development Plans - 2024-03-29.pdf

Jenkins  PSG Assignment of Leases and Rents(133189501.1).pdf

Jenkins 1st floor w sf.pdf

Jenkins 3rd floor plan Goldstien 5-14-2019.msg

Jenkins American Cell Towers Agreement 4-1-2024.pdf

Jenkins Appraisal 7-13-2023 CBRE.pdf

Jenkins appraisal Re Taxes 12-9-2020.pdf

Jenkins Bank Statemets 6-6-2025_0001.pdf

Jenkins basement storage.msg

Jenkins Bethany Christian Services Lease.pdf

Jenkins Bethany Christian Services Lease.pdf

JENKINS Christmas photo 2018.msg

Jenkins Condo Bylaws Revised  2 6 2025- pcp comments.docx

jenkins condo dec draft 1-26-2025 2 of 2.pdf

Jenkins Court  Plan- 1st Floor Square Footage Plan.pdf

Jenkins Court final survey scan.pdf

Jenkins Court Plans 1-2-3 CAD.msg

Jenkins Cypher leaase.pdf

jenkins David Machek Lease Agreement.pdf

Jenkins deeds 2018.msg

jenkins Display lease.pdf

Jenkins Dogtopia Lease.pdf

Jenkins Dogtopia SBA plans_0001.pdf

Jenkins enviormaental Phase I 8-19-2022.pdf

Jenkins Enviormental Asbestos O&M Plan 8-2022.pdf

Jenkins enviormental Phase 1- Part 1 of 3 2022 (1).msg

Jenkins enviormental Phase 1- Part 1 of 3 2022.msg

Jenkins Enviormental Phase 1- Part 2 of 3 2022.msg

Jenkins Event Final  10-3-2024.docx

Jenkins Event LOI draft 11-7-2024_0001.pdf

Jenkins Event Plan 12-2-2024_0001.pdf

Jenkins Event Space (Givens) Lease_0001.pdf

Jenkins FCCC execited lease 2-28-2022.pdf

Jenkins Goldstein Estoppel 2023.pdf

Jenkins Goldstein First Admendment 1-1-2022 and Estopple 2023.pdf

jenkins Goldstein Law Lease.pdf

jenkins GTP Towers -Metro PCS Lease.pdf

jenkins GTPTowers -Zayo Group Lease.pdf

Jenkins Hanukah Photo 2018.msg
Jenkins Helping Hand Commencement letter10-26-2022.pdf
Jenkins HELPING HANDS draft 3.4 dated 3-10.docx
Jenkins Helping Hands Family Lease executed 3-2022.pdf
Jenkins Historical application.msg
Jenkins Historical Garage plans 8-13-2024_0001.pdf
Jenkins HIstorical NPS admendment 1 9-13-2024.msg
Jenkins Historical package 3-25-2021.pdf
Jenkins Historical tax credits letters 12-1-2021.pdf
Jenkins Jersey Lease 1-11-2022.pdf
Jenkins Jersey Lease Executed 1.10.22.pdf
jenkins kaplan admendment.pdf
jenkins Kaplan Nathan and Genter Lease.pdf
Jenkins Kress corrected Estoppel 5-23.pdf
Jenkins Kress lease 2023.pdf
jenkins Loanabiity Inc. Lease.pdf
jenkins Luv2Knit and more signed lease.pdf
jenkins Management agreement 2021 -2026.pdf
Jenkins Marc Kress Lease Agreement.pdf
Jenkins Marketing CoStar Center Report 12.14.20.pdf
jenkins Nextel Lease Agreement.pdf
Jenkins North Court master plan.pdf
Jenkins Outback 1st Addendum to Lease.pdf
Jenkins Outback 2nd Amendment to Lease.pdf
Jenkins Outback 3rd Amendment to Lease.pdf
Jenkins Outback extention till 4-30-2030_0001.pdf
jenkins Outback Lease.pdf
Jenkins Outback plan.pdf
Jenkins Outback Retail Gross Sales Information 2023-2024.msg
Jenkins Outback Retail Gross Sales Information7-2023.msg
Jenkins Outback Steakhouse Lease and admendments.msg
Jenkins Outback Steakhouse Lease.pdf
Jenkins Parking Plans 7-22-2024_0001.pdf
Jenkins PCA 8-19-2022.pdf
jenkins Phase 1 2-10-2025.pdf
Jenkins Photos - Regus - Temple - Jersey College 9-4-2024.msg
Jenkins Photos Deck repair 1.msg
Jenkins Photos Deck repair 2.msg
Jenkins Photos Deck repair 3.msg
Jenkins Photos Lobby and Outback 9-4-2024.msg
Jenkins Plans apartments 5-8-2021 3 floor.pdf

Jenkins plans drop box orginals.msg
Jenkins plans -EXISTING PARKING garage .pdf
Jenkins Plans Historic Roller 12-2020.pdf
Jenkins Plans North Court AS is.msg
jenkins plans North Court old.msg
Jenkins plans old north court and main builging.msg
jenkins Precious Ones 1st Amendment.pdf
Jenkins Precious Ones Lease.pdf
Jenkins Proforma with commercial tenants info 3-11-2022.xls
jenkins Public storage sf.msg
Jenkins RE tax appeal notice.pdf
Jenkins reflection green 2018.msg
jenkins RGN Office Lease Agreement.pdf
Jenkins SBG Lease Agreement.pdf
Jenkins SBG Personnel Billing Spreadsheet 2-25-2025.xlsx
Jenkins Second floor as is.pdf
Jenkins Sewer sketch 1-16-2025_0001.pdf
jenkins Sezai Saran- Lease.pdf
jenkins Sprint PCS Agreement lease.pdf
Jenkins Stacking Plan.pdf
Jenkins Starbucks and Condo Docs 2-10-2025.msg
Jenkins Starbucks LOI attachments Fully Exec WL.011222.pdf
Jenkins Starbucks plan site 11-2021.pdf
Jenkins Storage Agreement letter 4-20-22.pdf
Jenkins Storage- lease signed LL yellow.pdf
Jenkins Storage- lease.pdf
Jenkins Storage LOI 5-6-2021.pdf
Jenkins Storage plan Photo 4-7-2024.jpg
Jenkins Storage.msg
Jenkins Survey 7-7-2023 ALTA.pdf
Jenkins survey plan W Starbucks-Condo 10-3-2024.pdf
Jenkins Temple call center executed LOI 2.23.21 (Fully Executed 3.3.21).pdf
jenkins Temple plan call center 5-2021 lease.pdf
Jenkins Title 2018.msg
Jenkins TruMark  Estoppel 2023.pdf
Jenkins Trumark PARKING SPACE RENTAL AGREEMENT 8YRS 3-2022.docx
Jenkins Verizon zoning plans.pdf
Jenkins Zoning_Report_9-2022.pdf
JenkinsCourt3rdPartyReports.zip
JEnkinsCourthInvestigations.zip
Jenkintown Starbucks-2024-03-29.pdf

UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| In re | : | |
| | : | CIVIL ACTION |
| ICON PSG 1 FL, LLC, | : | |
| | : | No.: 2:25-cv-44 |
| Plaintiff, | : | |
| | : | |
| v. | : | |
| | : | |
| | : | |
| JENKINS COURT REALTY CO., LP. | : | |
| | : | |
| Defendant. | : | |

## CERTIFICATE OF SERVICE

I, Albert A. Ciardi, III, Esquire, hereby caused on this 20th Day of June, a true and correct copy of *Defendants Response to Motion for Contempt* was served via electronic case filing (ecf) and United States first class mail, postage prepaid upon the following:

Raymond A. Quaglia, Esquire
Brian N. Kearney, Esquire
Ballard Spahr LLP
1735 Market Street, 51st Floor
Philadelphia, PA 19103
quaglia@ballardspahr.com
kearneyb@ballardspahr.com
*Counsel to Plaintiff, ICON PSG 1 FL, LLC*

**CIARDI CIARDI & ASTIN**

By:    */s/ Albert A. Ciardi, III*
Albert A. Ciardi, III, Esquire
1905 Spruce Street
Philadelphia, PA 19103
Telephone: (215) 557-3550
Facsimile: (215) 557-3551
aciardi1@ciardilaw.com

5

**IN THE UNITED STATES DISTRICT COURT**
**FOR THE EASTERN DISTRICT OF PENNSYLVANIA**

| | | |
|---|---|---|
| ICON PSG 1 FL, LLC | : | |
| | : | **CIVIL ACTION** |
| v. | : | **No. 25-44** |
| | : | |
| JENKINS COURT REALTY CO., L.P. | : | |

## ORDER

This 24th day of June, 2025, it is hereby **ORDERED** that oral argument on Plaintiff's Request for Default Judgment (ECF 30), Trigild IVL LLC's Motion to Modify Certain Leases (ECF 32), and Trigild IVL LLC's Motion for Contempt (ECF 33) is scheduled for Tuesday, **July 1, 2025**, at **10:00 a.m.**  Argument will be held in Courtroom 9-B of the United States Courthouse, 601 Market Street, Philadelphia, PA.

  /s/ Gerald Austin McHugh
United States District Judge

UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| In re | : | |
| | : | CIVIL ACTION |
| ICON PSG 1 FL, LLC, | : | |
| | : | No.: 2:25-cv-44 |
| Plaintiff, | : | |
| | : | |
| v. | : | |
| | : | |
| JENKINS COURT REALTY CO., LP. | : | |
| | : | |
| Defendant. | : | |

**DECLARATION OF PHILLIP PULLEY ON BEHALF OF JENKINS COURT REALTY CO., LP**

Pursuant to 28 U.S.C. § 1746, Phillip Pulley hereby declares as follows:

1.      I am an Officer of Old Jenkins Corporation which is an authorized representative for the above-named Defendant, Jenkins Court Realty Co., LP ("Jenkins").

2.      On or about February 21, 2025, the Court appointed Trigild IVL, LLC as a receiver for the improved real property owned by the Defendant in this action (the "Property") pursuant to the Court's Order filed on February 21, 2025 (D.N. 13) (the "Receiver Order").

3.      On May 27, 2025, the Plaintiff filed a Request for Default Judgment (the "Request for Default Judgment").  In support of the Request for Default Judgment, the Plaintiff incorporated the Declaration of Gleb Epelbaum, Esquire and Cameron Lawson.

4.      I respectfully submit this declaration in opposition to the amount of the default judgment set forth in the Request for Default Judgment.

5.      Furthermore, I request that the Court have a separate hearing on damages as the Receiver and Lender must account for Rents ("Rents" shall be defined as Based Rent plus Additional Rent, CAM, Real Estate Taxes and Insurance) received since the date of the

1

Assignment of Rents in December of 2024. Additionally, the Defendant disputes the interest alleged to be charged on the Loan.

6.      As set forth in the Decleration of Cameron Lawson in support of the Request for Default Judgment, the Plaintiff seeks additional interest in the amount of $1,599,848.12 based on the Default Rate on the outstanding balance of the loan from January 26, 2025 through May 27, 2025.

7.      Per the Declaration of Gleb Epelbaum, Plaintiff sought a foreclosure judgment against Defendant, Jenkins Court Realty Co., L.P. in the amount of $20,456,811.14—the amount due to Plaintiff under the applicable loan documents at the time of the filing of the Complaint— plus, *inter alia*, contractual interest that would continue to accrue on such amount

8.      Now, Plaintiff is seeking additional default interest without any legal justification.

9.      Furthermore, the Declaration of Mr. Epelbaum asserts that the contractual rate would accrue and not the default rate.

10.      More concerning is the fact that neither the Plaintiff nor the Receiver is providing any credit for Rent received to the debt of Jenkins since the date of the Assignment of Rents.

11.      Attached hereto as Exhibit A is a spreadsheet showing the estimated Rent collected.

12.      The Plaintiff must provide Jenkins with a credit for any Rent received that is in excess of the expenses of the Property.

13.      Neither Plaintiff nor Receiver should receive a windfall at the expense of Jenkins.

2

14. Defendant respectfully requests an evidentiary hearing to permit the Lender and Receiver to account for the actual expenses and rent collected so that a credit can be applied to the amount of the Judgment sought in this Request for a Default Judgment.

_____
Philip Pulley as an authorized
Representative of Jenkins Court Realty Co.,
LP

3

6/25/2025

JENKINS COURT REALTY CO LP - SCHEDULE A

JENKINS COURT REALTY CO LP

** PER LINCOLN PROPERTY COMPANY

| ADDRESS | UNIT | TENANT | RENT ROLL PER JENKINS COURT | | | ** RENT ROLL 4/30/25 per LPC | | | JAN 2025 | FEB 2025 | MAR 2025 | APR 2025 | MAY 2025 | JUNE 2025 | TOTALS |
|---------|------|--------|------|------|------|------|------|------|------|------|------|------|------|------|------|
| | | | RENT | COST RECOVERY | TOTAL | RENT | COST RECOVERY | TOTAL | | | | | | | |
| | | | PER JENKINS | PER LPC | | | | | | | | | | | |
| 610 | PKG | TRU MARK | 1,500.00 | | 1,500.00 | 1,500.00 | - | 1,500.00 | - | 1,500.00 | 1,500.00 | 1,500.00 | 1,500.00 | 1,500.00 | 7,500.00 |
| 610 | G100 | STORAGE | 8,000.00 | | 8,000.00 | 40,000.00 | 12,071.84 | 52,071.84 | - | - | - | - | - | - | - |
| | | METRO PCS | 4,373.02 | | 4,373.02 | - | | - | - | 4,373.02 | 4,373.02 | 4,373.02 | 4,373.02 | 4,373.02 | 21,865.10 |
| 610 | 114 | SARAN | 400.00 | | 400.00 | 500.00 | 150.90 | 650.90 | - | - | 400.00 | 400.00 | 400.00 | 400.00 | 1,600.00 |
| 610 | 116 | OUTBACK | 15,285.52 | | 15,285.52 | 11,400.42 | 4,760.70 | 16,161.12 | - | 15,285.52 | 15,285.52 | 15,285.52 | 15,285.52 | 15,285.52 | 76,427.60 |
| 610 | 210 | CYPHER | 2,125.58 | | 2,125.58 | 2,125.58 | 754.49 | 2,880.07 | - | - | 2,125.58 | 2,125.58 | 2,125.58 | 2,125.58 | 8,502.32 |
| 610 | 201 | BETHANY | 17,141.10 | | 17,141.10 | 17,561.23 | 4,074.25 | 21,635.48 | - | 17,141.10 | 17,141.10 | 17,141.10 | 17,141.10 | 17,141.10 | 85,705.50 |
| 610 | 250 | TEMPLE UNIV HEALTH | 14,583.33 | | 14,583.33 | 22,825.83 | 14,248.11 | 37,073.94 | - | 14,583.33 | 14,583.33 | 14,583.33 | 14,583.33 | 14,583.33 | 72,916.65 |
| 610 | 400 | REGUS | 30,117.77 | | 30,117.77 | 28,560.00 | 4,828.74 | 33,388.74 | - | 30,117.77 | 30,117.77 | 30,117.77 | 30,117.77 | 30,117.77 | 150,588.85 |
| 610 | 640 | HELPING HANDS | 8,371.86 | | 8,371.86 | 8,371.86 | 1,237.36 | 9,609.22 | - | 8,371.86 | 8,371.86 | 8,371.86 | 8,371.86 | 8,371.86 | 41,859.30 |
| 610 | 340 | GOLDSTEIN    N2 | - | | - | 10,000.00 | 1,207.18 | 11,207.18 | - | - | - | - | - | - | - |
| 610 | 670 | DR KRESS | 8,341.70 | | 8,341.70 | 8,038.33 | 303.37 | 8,341.70 | 8,341.70 | 8,341.70 | 8,341.70 | 8,341.70 | 8,341.70 | 8,341.70 | 50,050.20 |
| 610 | 680 | TEMPLE-FCC | 29,033.58 | | 29,033.58 | 29,033.58 | 16,641.79 | 45,675.37 | - | 29,033.58 | 29,033.58 | 29,033.58 | 29,033.58 | 29,033.58 | 145,167.90 |
| 610 | 375 | SBG    N3 | 10,000.00 | | 10,000.00 | 10,000.00 | 1,207.18 | 11,207.18 | - | - | - | - | - | - | - |
| 610 | 100 | JERSEY COLLEGE | 64,837.38 | | 64,837.38 | 66,335.51 | 11,468.25 | 77,803.76 | 64,837.38 | 64,837.38 | 64,837.38 | 64,837.38 | 64,837.38 | 64,837.38 | 389,024.28 |
| 610 | 300 | JERSEY COLLEGE | - | | - | - | | - | | | | | | | |
| 610 | 650 | EVENT SPACE    N4 | 11,000.00 | | 11,000.00 | 11,000.00 | 1,267.54 | 12,267.54 | - | - | 5,500.00 | 5,500.00 | 5,500.00 | 5,500.00 | 22,000.00 |
| | | | | | - | | | - | | | | | | | - |
| | | | | | | | | | N1 | N1 | N1 | N1 | N1 | N1 | |
| | | TOTALS | 225,110.84 | - | 225,110.84 | 267,252.34 | 74,221.70 | 341,474.04 | 73,179.08 | 193,585.26 | 201,610.84 | 201,610.84 | 201,610.84 | 201,610.84 | 1,073,207.70 |

| | | | | | | | | |
|---|---|---|---|---|---|---|---|---|
| N5 | Monthly Cost Recovery | 53,403.89 | 53,403.89 | 53,403.89 | 53,403.89 | 53,403.89 | 53,403.89 | 320,423.34 |
| | TOTAL ESTIMATED COLLECTED | 126,582.97 | 246,989.15 | 255,014.73 | 255,014.73 | 255,014.73 | 255,014.73 | 1,393,631.04 |
| N6 | Less: Estimated Monthly Expenses | - | (25,000.00) | (25,000.00) | (25,000.00) | (25,000.00) | (25,000.00) | (125,000.00) |
| | ESTIMATED FUNDS AVAILABLE | 126,582.97 | 221,989.15 | 230,014.73 | 230,014.73 | 230,014.73 | 230,014.73 | 1,268,631.04 |

Accounts Receivable:

| | |
|---|---|
| Balance due to Jenkins Court Realty at 12/31/2024 from RGN-Jenkintown LLC for electric | 57,572.58 |
| Balance due to Jenkins Court Realty at 12/31/2024 from Helping Hands for prior years CAM & Late Charges | 389,747.36 |
| N7   2024 CAM calculation | 164,965.52 |
| **ESTIMATED TOTAL FUNDS AVAILABLE** | **1,880,916.50** |

N1 - For purposes of this worksheet - using Rent Roll & Collection information from Jenkins Court Realty. Actual info for the months was not provided.

N2 - Goldstein moved out 2024 as reported to Lender/Plaintiff and Receiver

N3 - SBG rent offset to monies due for damages and unpaid charges

N4 - Event Space rent payment not commence until 3/1/25 per agreement at 50%

N5 - Amount of monthly Cost Recovery provided by Lincoln Property Company (Receiver) adjusted for highlighted items

N6 - Jenkins Court Realty paid operating expenses through January 2025

N7 - Estmated 2024 CAM charges are calculated using 2023 CAM billings plus 5% escalation (157,110.02 x 1.05=164,965.52)

Appx1374

6/25/2025

JENKINS COURT REALTY CO LP

RECONCILIATION OF AMOUNTS CLAIMED BY PLAINTIFF

MEMO TO SCHEDULE A SPREADSHEET

Purpose of spread sheet is to calculate approximate funds collected and retained by
Lender/Plaintiff and Receiver. Jenkins Court Realty has received very limited accounting
information.

Funds Collected:

1  (N1)Rent Collected utilizing historical rent roll from Jenkins Court Realty
to determine amounts collected by Lender/Plaintiff and Receiver

2 (N5)Monthly Cost Recovery from information provided by Lincoln Property
Company (Receiver) adjusted for uncollectible or already included in historical data

3 Accounts Receivable - Included these items as they were billed and due
when Lender/Plaintiff and Receiver took over collections

4 (N7) 2024 CAM estimated from information provided to Lender/Plaintiff and Receiver utilizing
2023 CAM billing plus 5% escalation

Expenditures:

1- (N6) Deducted from calculation -  estimated monthly expenses paid by
Lender/Plaintiff and Receiver on  behalf of Jenkins Court Realty
This was calculated using the limited accounting information provided by
Lender/Plaintiff and Receiver, and the historical information from Jenkins Court
Realty records.
Jenkins Court Realty paid expenses through January 2025.

Summary: Estimated funds retained by Lender/Plaintiff and Receiver was determined
using funds collected (see above) less expenditures (see above)

Other Notes:

N2 - Goldstein Law Partners LLC moved out 2024 and this was reported to Lender/Plaintiff
and Receiver - see attached

N3 - SBG Management rent was offset against monies due from Jenkins Court Realty  for
damages and unpaid charges

N4 - Event Space rental payments did not commence until 3/1/2025 and per lease at 50%

6/25/2025

**JENKINS COURT REALTY CO LP**

**RECONCILIATION OF AMOUNTS CLAIMED BY PLAINTIFF**

| | |
|---|---|
| UNPAID PRINCIPAL PER PLAINTIFF'S COMPAINT 5/27/2025 | 20,500,000.00 |
| ACCRUED INTEREST THROUGH 5/27/2025 PER PLAINTIFF'S COMPLAINT | 1,408,741.66 |
| ESTIMATED JUNE 2025 INTEREST DUE - DID NOT RECEIVE BILL | 201,249.00 *N1* |
| | 22,109,990.66 |
| Less: Construction Escrow Balance per Plaintiff's complaint 5/27/2025 | (1,493,052.88) |
| Less: Estimated Funds from Collections per schedule A | (1,880,919.50) *N2* |
| Calculated amount due Lender/Plaintiff | 18,736,018.28 |

*N1* - Calculated as the average of 7 months accrued interest per Plaintiff's complaint

*N2* - See schedule attached

# UNITED STATES DISTRICT COURT
## FOR THE EASTERN DISTRICT OF PENNSYLVANIA

|  |  |
|---|---|
| In re | : |
|  | : CIVIL ACTION |
| ICON PSG 1 FL, LLC, | : |
|  | : No.: 2:25-cv-44 |
| Plaintiff, | : |
|  | : |
| v. | : |
|  | : |
| JENKINS COURT REALTY CO., LP. | : |
|  | : |
| Defendant. | : |

## CERTIFICATE OF SERVICE

I, Daniel S. Siedman, Esquire, hereby caused on this 26th Day of June, a true and correct copy of ***Defendant's Declaration in Response to Request for Default*** was served via electronic case filing (ecf) upon the following:

Raymond A. Quaglia, Esquire
Brian N. Kearney, Esquire
Ballard Spahr LLP
1735 Market Street, 51st Floor
Philadelphia, PA 19103
quaglia@ballardspahr.com
kearneyb@ballardspahr.com
*Counsel to Plaintiff, ICON PSG 1 FL, LLC*

**CIARDI CIARDI & ASTIN**

By:     */s/ Daniel S. Siedman*
Albert A. Ciardi, III, Esquire
Daniel S. Siedman, Esq.
1905 Spruce Street
Philadelphia, PA 19103
Telephone: (215) 557-3550
Facsimile: (215) 557-3551
aciardil@ciardilaw.com
dsiedman@ciardilaw.com

4

**IN THE UNITED STATES DISTRICT COURT FOR THE
EASTERN DISTRICT OF PENNSYLVANIA**

| | | |
|---|---|---|
| ICON PSG 1 FL, LLC,<br><br>    Plaintiff,<br><br>    v.<br><br>JENKINS COURT REALTY CO., L.P.,<br><br>    Defendant. | : : : : : : : : : : : | CIVIL ACTION<br><br>NO. 2:25-cv-00044-GAM |

**RECEIVER'S REPLY MEMORANDUM IN FURTHER
SUPPORT OF ITS MOTION TO MODIFY CERTAIN LEASES**

Trigild IVL, LLC, the Court-appointed receiver (the "Receiver"), by its counsel, respectfully submits this Reply in support of its motion to modify the notice and cure provisions of certain leases at the subject property.

Borrower's opposition to this motion consists of two arguments: (1) that the tenants in question, SBG Management and Jenkins Storage, have not received notice of this motion (or even the Receiver Order), and (2) that the Receiver is constrained by certain Subordination, Nondisturbance and Attornment Agreements ("SNDAs") to which the Receiver was not a party to leave the unconscionable terms of those tenants' leases undisturbed. But underlying both arguments is the issue of identity. Borrower contends that SBG Management and Jenkins Storage are independent entities unconnected to and even unaware of the above-captioned litigation or the Receiver Order, rather than alter egos of Borrower's principal, Phillip Pulley. And Borrower also posits that the Receiver is an agent of the Lender and must be bound by Lender's alleged acquiescence in the SNDAs to Mr. Pulley's self-dealing in the drafting of the relevant lease provisions. Both claims are wrong.

**A.     SBG Management and Jenkins Storage received notice via their mutual counsel of record as well as their mutual principal, Mr. Pulley.**

On February 24, 2025, the Receiver sent a letter to Michael Yanoff, Esq., and Mr. Pulley via both overnight mail and e-mail, notifying them of the Receiver Order and noting that it covered "independent contractors and agents, and all persons in active concert and participation with them."[1] *See* Exhibit A to Receiver 's 4/23/25 Motion to Compel Borrower's Compliance at 1. As attested by, *inter alia*, the documents filed as exhibits to Borrower's Opposition to the instant Motion, Mr. Yanoff has acted and continues to act as an attorney for Mr. Pulley in multiple capacities, including as attorney for both SBG Management and Jenkins Storage. *See*, *e.g.*, Exhibit E to Borrower's Opposition at 14 (Jenkins Storage SNDA listing Michael Yanoff, Esq. as proper recipient of notice for Jenkins Storage LLC). Via that letter, Mr. Yanoff was officially put on notice of the Receiver Order and its applicability to these two client entities, whether they style themselves as agents, contractors, or otherwise. Moreover, Mr. Yanoff has received and continues to receive notice via ECF of all filings on the docket of the above-captioned matter – including the instant Motion. Mr. Pulley, as principal of Borrower, receives (at minimum legally via his counsel) the same notices. Mr. Pulley is also the signatory on the leases for both SBG Management and Jenkins Storage – again, as attested by Borrower's own filings in opposition to this Motion. *See, e.g.,* Exhibit A to Borrower's Opposition at 31 (SBG Management lease, with tenant signatory listed as "Philip Pulley, President"); Exhibit B to Borrower's Opposition at 28 (Jenkins Storage lease, with tenant's first co-signatory line bearing Pulley's signature). The notion that these entities lacked adequate notice or opportunity to respond is risible – not least because Borrower, which

---

[1]     Notably, Mr. Pulley received the email at his SBG Management business account (phil@sbgmanagement.com).

should have no stake in this issue if these are truly independent entities, *has* responded on behalf of their interests.

**B.      The Receiver is an agent of the Court, not of the Lender.**

Borrower claims that "the Receiver step[ped] into the shoes of the Plaintiff and is bound by the terms of the Leases" because of the Lender's alleged prior approval of the unconscionable notice and cure provisions of the leases at issue. This fundamentally misstates the nature of a receivership, in which the Receiver is not a proxy for the Lender, but an "arm of the court." *See Trinh v. Fineman*, 9 F.4th 235, 238 (3d Cir. 2021) (quoting *Hughes v. Long*, 242 F.3d 121, 127 (3d Cir. 2001)); *see also* 42 Pa. Cons. Stat. Ann. Section 102 (defining court-appointed receiver as "judicial officer"). As such, the Receiver should not be bound by either Mr. Pulley's self-serving lease terms or Lender's alleged acquiescence thereto. Instead, the Receiver should be empowered to effect the goals of the Receiver Order – to demand and collet all rents from the property, and in so doing to preserve the value of the estate.

For the foregoing reasons, and for those set forth in its original Motion, the Receiver respectfully reiterates its request that the Court enter an Order modifying the Leases to delete the phrase "one thousand (1000) days" from Section 17.01 and replace it with "ten (10) days."

Respectfully submitted,

Dated:  June 30, 2025

/s/ *Raymond A. Quaglia*
Raymond A. Quaglia, Esq.
Brian N. Kearney, Esq.
BALLARD SPAHR LLP
1735 Market Street, 51st Floor
Philadelphia, PA 10103
Mt. Laurel, New Jersey 08054-0015
(215) 665-8500
quaglia@ballardspahr.com
kearneyb@ballardspahr.com

Counsel for Plaintiff

## CERTIFICATE OF SERVICE

I hereby certify that I caused a copy of the Reply Memorandum in Further Support of Receiver's Motion to Modify Certain Leases to be served via ECF upon all counsel of record.

Dated:  June 30, 2025

/s/ Raymond A. Quaglia

Raymond A. Quaglia

**IN THE UNITED STATES DISTRICT COURT FOR THE
EASTERN DISTRICT OF PENNSYLVANIA**

| | | |
|---|---|---|
| **ICON PSG 1 FL, LLC,**<br><br>      **Plaintiff,**<br><br>      **v.**<br><br>**JENKINS COURT REALTY CO., L.P.,**<br><br>      **Defendant.** | :<br>:<br>:<br>:<br>:<br>:<br>:<br>:<br>:<br>:<br>:<br>: | **CIVIL ACTION**<br><br>**NO. 2:25-cv-00044-GAM** |

**REPLY DECLARATION OF JONATHAN LAKNER**

Pursuant to 28 U.S.C. § 1746, Jonathan Lakner hereby declares as follows:

1.      I am over the age of 18 years old and competent to testify in a court of law.

2.      I am Senior Vice President at Trigild IVL, LLC ("Trigild," or the "Receiver"), the court-appointed receiver for the improved real property owned by the Defendant in this action (the "Property") pursuant to the Court's Order filed on February 21, 2025 (ECF Doc. No. 13) (the "Receiver Order").  Trigild has successfully handled more than 1,500 court-appointed fiduciary assignments throughout the country, including as receiver and bankruptcy trustee.  I have more than 20 years of experience with the management of commercial properties.

3.      I respectfully submit this Declaration in reply to the Declaration of Phillip Pulley (ECF Doc. No. 35-1) in response to the Receiver's Motion to Hold Defendant and its Principal in Contempt of the Court's Compliance Order (ECF Doc. No. 33), which is scheduled for argument/hearing on July 1, 2025 (the "Contempt Hearing").

4.      For purposes of narrowing the scope of the Contempt Hearing, we assessed the current status of the receivership to determine the  items among those not produced for which the Receiver has the most compelling need.

**A.    Accounting Required by the Receiver Order**

5.    Section 5 of the Receiver Order, entitled "Accounting by Defendant," provides that, "[w]ithin thirty (30) days from the date hereof, Defendant shall prepare and file with the Court and serve on all parties hereto a detailed accounting of all income, expenses, receivables, and payables relating to the Property from the date of the most recent audited financial statement to the present." Although Defendant's 30 days to file and serve its detailed accounting expired on Monday, March 24, 2025, Defendant did not timely file or serve any such accounting.

6.    By its subsequent Order dated May 12, 2025 (the "Compliance Order") (ECF Doc. No. 28), the Court "**ORDERED** that, that, within **five (5) days** of the entry of this Order, Defendant shall file with the Court and serve on all parties the accounting required by Section 5 of the Receiver Order."

7.    To date, Defendant has still not filed or served the accounting required by the Receiver Order and the Compliance Order and does not appear to have any intention to do so.

8.    The Receiver would benefit from knowing the income, expenses, receivables, and payables relating to the Property for the period immediately preceding the receivership, particularly since Defendant did not turn over any funds to the Receiver, and we do not believe that Defendant should be allowed just to ignore the Court's multiple Orders.

**B.    Additional Items Not Produced by Defendant**

9.    While Mr. Pulley has claimed that various information for the years before 2023 was destroyed "due to a pipe break in 2022" and that "Defendant provided the information in its possession," we have confirmed that Defendant has not produced the following information that was enumerated in the Compliance Order and should be in Defendant's possession, custody or control:

(a)    **Financials (income/expense statements)** for the periods (i) from August 1, 2023, to December 1, 2023, and (ii) from April 1, 2024, through December 31,2024;

(b)    **General Ledger** for the period from January 1, 2025, through February 20, 2025;

(c)    **Tenant Ledgers** as of the date of the Receivership.  Tenant Ledgers are separate and distinct from a General Ledger and reflects payments charged to and received from each tenant at the Property.  Defendant necessarily maintained Tenant Ledgers for the Property in order to keep track of what the tenants owed.  While Mr. Pulley has previously said that Defendant was not collecting rents after PSG sent rent redirection letters to the tenants in December 2024, Defendant should still have Tenant Ledgers up to that point;

(d)    **Rent Roll** as of the date of the Receivership;

(e)    **Access and security camera information**.  The Receiver has been unable to determine what kind of system Defendant maintained and how is it accessed (via online portal or local computer).  Mr. Pulley has asserted that Defendant owns the access system and that it has been "disconnected," but we cannot delete the existing system or issue new building access cards;

(f)    **2023 CAM reconciliation calculations** for all tenants who are billed reconciliations for CAM and/or taxes annually.  It is standard practice for a commercial building that the landlord assesses periodic charges to the tenants for estimated "common area maintenance," or CAM, then conducts a year-end "reconciliation" of the estimated amounts paid against the CAM charges actually incurred.  The calculations should reflect tenant base years for CAM and taxes as applicable.  Defendant has provided the bills sent to five of the Property's 14 tenants, but not the backup calculations for all Tenants billed CAM.

**C.    Tax Appeal Information**

10.    Section 6(m) ("Actions to Preserve the Estate") of the Receiver Order provides in part that "[t]he Receiver is authorized to institute, prosecute, defend, compromise, intervene in, and settle such suits, actions, and proceedings as the Receiver deems necessary in its reasonable judgment, relating to the protection, maintenance, operation, enhancement, or preservation of the Receivership Estate."

11.    Section 6(m) of the Receiver Order further provides that the Receiver is "authorized to challenge the validity, enforcement, and amount of any taxes accruing on the Property, including any assessment or claim of taxes due by Defendant or any third-party," and shall have the exclusive right and power to assert and prosecute any and all claims, counterclaims, and crossclaims that Defendant ever had, now has, or may in the future have, whether known or unknown, against any and all parties related in any way to the Loan Documents and/or the Property."

12.    On June 25, 2025, the Receiver's counsel learned that, unbeknownst to the Receiver, Defendant has been litigating a tax appeal in the Montgomery County Court of Common Pleas since November 2023 captioned *Jenkins Court Realty Co LP v. Montgomery County Board of Assessment Appeals*, Case No. 2023-24837 (the "Tax Appeal").

13.    On March 18, 2025, counsel for the School District of Jenkintown (the "School District"), an Intervenor in the Tax Appeal, served a Request for Production and Interrogatories Directed to Property Owner, a copy of which is attached hereto as *Exhibit A*.

14.    Absent a response, the School District filed a motion to compel, to which Defendant filed a response with "New Matter."  Copies of the School District's motion and Defendant's response are attached hereto as *Exhibits B and C*.

15. In its New Matter, Defendant blames the Receiver for its nonresponsiveness, averring in paragraph 14 that "Respondent's failure to answer the discovery requests is not willful nor intentional and is purely as a result of the actions of the Receiver."

16. The Receiver is currently assessing whether to assume control and direction of the Tax Appeal, but, given the Contempt Hearing, we are respectfully requesting that Defendant be required to produce to us the information requested by the School District in the Tax Appeal.

I declare under penalty of perjury that the foregoing is true and correct.

Dated: June 30, 2025                    _Jon Lakner_____
                                        Jonathan Lakner

**WISLER PEARLSTINE, LLP**
**MARGARETE P. CHOKSI, ESQUIRE**
Attorney I.D. No. 51468
Blue Bell Executive Campus
460 Norristown Road, Suite 110
Blue Bell, Pennsylvania 19422            Attorneys for Intervenor,
(610) 825-8400                           School District of Jenkintown

| | | |
|---|---|---|
| **JENKINS COURT REALTY CO LP** | : | **IN THE COURT OF COMMON PLEAS** |
| | : | **MONTGOMERY COUNTY, PENNSYLVANIA** |
| | : | |
| **v.** | : | **No. 2023-24837** |
| | : | |
| **MONTGOMERY COUNTY BOARD OF** | : | **CIVIL ACTION – LAW** |
| **ASSESSMENT APPEALS, ET AL.** | : | **Parcel No.  10-00-05364-00-8** |

### REQUEST FOR PRODUCTION OF DOCUMENTS AND INTERROGATORIES
### DIRECTED TO PROPERTY OWNER

Pursuant to Pennsylvania Rule of Civil Procedure 4005, 4009.1, *et seq.* and the following "Instructions" and "Definitions," Intervenor, the School District of Jenkintown requests that Jenkins Court Realty Co., LP (the "Property Owner"), serve verified answers and produce the documents specified herein for inspection and copying by Intervenor within thirty (30) days of service hereof at the law offices of Wisler Pearlstine, LLP, Blue Bell Executive Campus, 460 Norristown Road, Suite 110, Blue Bell, Pennsylvania 19422.

### INSTRUCTIONS

In responding to these Interrogatories and Document Requests, respondent shall follow the instructions set forth below:

1.      These requests for production seek the production of any and all responsive documents that are in your possession, custody or control, as well as documents that are in the possession, custody or control of your attorneys, accountants, employees, representatives, agents or other persons or entities acting or purporting to act on your behalf or under your control or otherwise in possession of documents that are subject to delivery to you upon demand, request or instruction.

2.      If you contend that information sought by these interrogatories and document requests is exempt from discovery because it falls within the attorney/client privilege or some other privilege or protection, you are to provide the following information with respect to each such document: (a) the privilege or protection you contend applies; (b) the subject matter of the information that you contend is privileged or protected from discovery; (c) every fact upon which you rely in support of your contention that the privilege or protection applies; (d) the form in which the information is contained (e.g. document, recollection of plaintiff); and (e) the information that is contained in the document, the author, the recipient, the date of the document;

if the information is not contained in the document, the person involved in and the place of the communication giving rise to the privilege or protection that you claim.

3. If any requested document was but is no longer in your possession or subject to your control, or is no longer in existence, state whether any such document is: (a) missing or lost; (b) destroyed; (c) transferred to others; or (d) otherwise disposed of. Additionally, in any such instance, set forth the surrounding circumstances and any authorization of any of the latter three dispositions; state the date of any such disposition; state, if known, the current location and custodian of any such document; and summarize the contents of such document in as much detail as possible.

4. If you delete or redact anything from a document produced in response to a request for production, state the reason for the deletion or redaction and the subject matter of the deletion or redaction.

5. These requests include the production of all nonidentical copies inclusive of drafts and of copies upon which any notes or notations have been made.

6. Whenever any objection is made to any part of any request, an answer shall be furnished to the remaining parts of such request as to which there is no objection.

7. The fact that investigation is continuing or that discovery is not complete is not a reason or justification for, and shall not excuse, any failure to produce documents based on the documents that you currently have.

8. The connectives "and" and "or" shall be construed either disjunctively or conjunctively as necessary to bring within the scope of the request all responses that might otherwise be construed to be outside of its scope. Any request propounded in the disjunctive shall also be read as if it is propounded in the conjunctive and vice versa.

9. The terms "all" and "each" shall be construed conjunctively as all and each.

10. All references to gender, in pronouns or otherwise, are to be disregarded unless the context of the request clearly indicates the contrary; thus, all references to the masculine gender shall be read as if propounded in the feminine and vice versa.

11. These interrogatories and document requests shall be deemed to be continuing and supplements to your answers shall be provided in accordance with the Pennsylvania Rules of Civil Procedure. These Requests must be promptly modified or supplemented as further or additional information is received by you, or if it comes to your attention that an answer previously given is incomplete or incorrect.

**DEFINITIONS**

As used in these Interrogatories and Document Requests, the following terms, whether capitalized or not, shall have the following meanings:

1.      The term "and" shall include the term "or," and the term "or" shall include the term "and."

2.      "Document" shall mean and include any printed, written, recorded, typed, drawn, taped, electronic, electromagnetic, graphic, photographic or other tangible matter, documentary material from whatever source, however produced or reproduced, whether sent or received or neither, whether originals, copies, drafts, translations or otherwise, including the original and any non-identical copy (whether different from the original because of notes made on or attached to such copy or the presence of signatures indicating execution or otherwise), including, without limitation, any and all writings, correspondence, letters, opinions, notes, notations, papers, memoranda, minutes or meetings, recordings, or other memorials or any type of personal or telephone conversation, meeting or conference, reports, studies, charts, analyses, evaluations, estimates, diaries, calendars, desk pads, appointment books, business records, transcripts, bills, statements of account, canceled checks, check stubs and check books.

3.      "Identify" shall mean and include:

a.      when used in reference to a natural person or individual, to state such person's name, present residence address and telephone number (or if not known or ascertainable, the last residence address and telephone number, indicating that it is the last known), present place of business and present business address (or if not known or ascertainable, the last known place of business and business address, indicating that it is the last known) and present employer, or if not known or ascertainable, the last known employer, indicating that it is the last known;

b.      when used in reference to any other person or individual, to state its name, the nature of the person (e.g., corporation, partnership, government department, etc.) and the location of its principal office; and

c.      when used in reference to a document, to state the date it was prepared or created, the identity of its author or originator, the type of document (e.g., letter, telegram, chart, photograph, sound recording, etc.), the identity of its addressee, its present location, the identity of its present or last known custodian.

4.      "List," "describe," "specify," "provide" and/or "state" shall mean and include to set forth fully and unambiguously each and every fact of which you have knowledge which is relevant to the answer called for by the interrogatory.

5.   The terms "you," "yours," "Jenkins Court Realty Co., LP," and "Property Owner" as used herein, refer to Jenkins Court Realty Co., LP, together with its accountants, agents, assigns, attorneys, appraisers, brokers, contractors, directors, members, officers, partners, successors, subsidiaries and other representatives.

6. The term "Property" as used herein means and includes the property, including all structures and improvements thereto, located at 610 York Road, Jenkintown Borough, Montgomery County, and bearing Parcel No. 10-00-05364-00-8 on the records of the Montgomery County Assessor.

## REQUESTS AND INTERROGATORIES

1. Provide detailed rent rolls as of July 12, 2023 and January 1, 2025.

2. Provide copies of all leases (or lease abstracts) and lease amendments for each tenant, including suite or unit number, tenant name, leased area in square feet, lease commencement and expiration dates, base rent, renewal options, expense contributions, and rent escalations. If a tenant pays increases in operating expenses over a base year, provide base year and expense stops for real estate taxes and CAM charges for each tenant.

3.      Provide information regarding expected move-ins, move-outs, leases out for signing, and letters of intent.

4.      Provide complete year 2022 through 2024 operating statements.

5.      Provide a year-to-date 2025 income and expense statement.

6.      Provide an operating budget for 2025.

7.      Provide documentation regarding the description and costs of all capital improvements made on the subject property over the last five (5) years.

8.      Provide documentation regarding a description and estimated cost of all necessary capital improvement projects.

9.      Provide the status of any development plans for the parking garage/parking lot at the north end of the Property.

10.      Provide a detailed self-storage rent roll as of July 12, 2023 and January 1, 2025. Lease information should include leased area (square feet), unit type, and monthly rental rate.

11.      Provide self-storage operating statement for complete year 2022 through 2024.

12.    Provide a year-to-date self-storage income and expense statement.

13.    Provide a 2025 self-storage operating budget.

14.    Provide a copy of the self-storage management agreement.

15.    List the name and address of each expert witness whom you intend to call to testify on your behalf in this appeal.

       a.    As to any person identified in response to Interrogatory No. 15, state the person's title and the subject matter upon which each person is expected to testify;

       b.    The bases for support for each opinion offered by the expert identified; and

       c.    A description of the expert's academic and professional background.

16.     List the name and address of each person you expect to call as a trial witness, excluding any expert witnesses identified in response to Interrogatory No. 15.

a.     As to any person identified in response to Interrogatory No. 16, state the person's title and the subject matter upon which each person is expected to testify.

17.     Identify all exhibits you intend to introduce at trial.

18.    Have there been any offers to buy or sell the Property since this assessment appeal was initiated?

19.    If your answer to Interrogatory No. 18 is in the affirmative, please state the amount of the offer, the party who made the offer, the date of the offer and the status of the offer.

20.    Is the Property currently under an agreement of sale?

21.    Identify and provide any and all appraisals relating to the Property performed from 2020 through the present.

22.    Provide contact information for the purposes of property inspection.

WISLER PEARLSTINE, LLP

BY: _____
MARGARETE P. CHOKSI, ESQUIRE
Blue Bell Executive Campus
460 Norristown Road, Suite 110
Blue Bell, PA  19422-2323
Attorneys for Intervenor,
School District of Jenkintown

**WISLER PEARLSTINE, LLP**
**MARGARETE P. CHOKSI, ESQUIRE**
Attorney I.D. No. 51468
Blue Bell Executive Campus
460 Norristown Road, Suite 110
Blue Bell, Pennsylvania 19422                        Attorneys for Intervenor,
(610) 825-8400                                              School District of Jenkintown

| | | |
|---|---|---|
| **JENKINS COURT REALTY CO LP** | : | **IN THE COURT OF COMMON PLEAS** |
| | : | **MONTGOMERY COUNTY, PENNSYLVANIA** |
| | : | |
| **v.** | : | **No. 2023-24837** |
| | : | |
| **MONTGOMERY COUNTY BOARD OF** | : | **CIVIL ACTION – LAW** |
| **ASSESSMENT APPEALS, ET AL.** | : | **Parcel No.  10-00-05364-00-8** |

### CERTIFICATE OF SERVICE

I certify that on March 18, 2025, a true and correct copy of the Request for Production of Documents and Interrogatories of the School District of Jenkintown Directed to Property Owner was served by email upon:

Samantha A. Magee, Esquire                 Brian O. Phillips, Esquire
Montgomery County Board of Assessments     Solicitor's Office
Montgomery County Courthouse               Montgomery County Courthouse
P.O. Box 311                               P.O. Box 311
Norristown, PA  19404-0311                 Norristown, PA  19404-0311

Patrick M. Hitchens, Esquire               Michael Yanoff, Esquire
Kilkenny Law, LLC                          Goldstein Law Partners LLC
519 Swede Street                           610 Old York Road, Suite 340
Norristown, PA 19401                       Jenkintown, PA 19046

MARGARETE P. CHOKSI, ESQUIRE
Blue Bell Executive Campus
460 Norristown Road, Suite 110
Blue Bell, PA  19422-2323

**WISLER PEARLSTINE, LLP**
**MARGARETE P. CHOKSI, ESQUIRE**
Attorney I.D. No. 51468
Blue Bell Executive Campus
460 Norristown Road, Suite 110
Blue Bell, Pennsylvania 19422          Attorneys for Intervenor,
(610) 825-8400                         School District of Jenkintown

| | | |
|---|---|---|
| **JENKINS COURT REALTY CO LP** | : | **IN THE COURT OF COMMON PLEAS** |
| | : | **MONTGOMERY COUNTY, PENNSYLVANIA** |
| | : | |
| **v.** | : | **No. 2023-24837** |
| | : | |
| **MONTGOMERY COUNTY BOARD OF** | : | **CIVIL ACTION – LAW** |
| **ASSESSMENT APPEALS, ET AL.** | : | **Parcel No.  10-00-05364-00-8** |

<u>**MOTION OF THE SCHOOL DISTRICT OF JENKINTOWN**</u>
<u>**TO COMPEL DISCOVERY**</u>

The School District of Jenkintown (the "District"), by and through its attorneys, hereby moves the Court for an order to Compel Discovery in connection with the above referenced matter and in support thereof, aver as follows:

1.      Jenkins Court Realty Co. LP (the "Property Owner") filed this appeal on November 8, 2023.

2.      The District intervened in this appeal on December 12, 2023.

3.      On March 18, 2025, Property Owner was served with the District's Request for Production of Documents and Interrogatories. A true and correct copy of the District's Request for Production of Documents and Interrogatories is attached hereto and incorporated herein by reference as Exhibit "A."

4.      The Pennsylvania Rules of Civil Procedure require a party to answer a request for production of documents within thirty (30) days after the party is served with such request. *See* Pa. R.C.P. 4009.

5.      To date, Property Owner has failed to produce the information and documents requested in the District's Request for Production of Documents and Interrogatories.

6.     By emails dated May 9 and May 20, 2025, counsel for the District made a good faith effort to confer with Property Owner's counsel in order to resolve the subject discovery dispute. True and correct copies of the emails dated May 9 and May 20, 2025 from counsel for the District are attached hereto and incorporated herein by reference as Exhibit "B."

7.     The requested information and documents are proper discovery requests under the Pennsylvania Rules of Civil Procedure and seek information that is relevant to this proceeding and are reasonably calculated to lead to the discovery of admissible evidence. *See* Pa. R.C.P. 4003.1(a).

8.     Pursuant to Pennsylvania Rule of Civil Procedure 4019, the District respectfully requests the Court to enter an Order compelling Property Owner to produce all requested documents and to answer the District's interrogatories within twenty (20) days of the date of the Order.

**WHEREFORE**, the School District of Jenkintown respectfully requests that the court grant this Motion to Compel Discovery and enter an order in the form submitted herewith.

**WISLER PEARLSTINE, LLP**

By: _____

**MARGARETE P. CHOKSI, ESQUIRE**
**Blue Bell Executive Campus**
**460 Norristown Road, Suite 110**
**Blue Bell, Pennsylvania 19422-2323**
**Attorneys for School District of Jenkintown**

**IN THE COURT OF COMMON PLEAS OF MONTGOMERY COUNTY, PENNSYLVANIA**
**CIVIL ACTION-LAW**

**JENKINS COURT REALTY CO. L.P.**      : NO. 2023-24837

           **VS.**                  :

**MONTGOMERY COUNTY BOARD OF**      :
**ASSESSMENT APPEALS**

                                       :

## <u>ORDER</u>

AND NOW, this   day of          , upon consideration of the Motion to Comple

and the Response thereto, it is hereby ORDERED AND DECREED that the Motion is DENIED

without prejudice.

BY THE COURT:

_____J.

Goldstein Law Partners LLC
BY: Michael Yanoff, Esquire
ID # 19384
610 Old York Road Suite 340
Jenkintown, PA 19046
267-627-2485
myanoff@goldsteinlp.com

TO:  Montg BAA YOU ARE HEREBY NOTIFIED TO
FILE A WRITTEN RESPONSE TO THE ENCLOSED
New Matter WITHIN TWENTY (20)
DAYS FROM SERVICE HEREOF OR A JUDGMENT MAY
BE ENTERED AGAINST YOU.

_____

## IN THE COURT OF COMMON PLEAS OF MONTGOMERY COUNTY, PENNSYLVANIA
### CIVIL ACTION-LAW

JENKINS COURT REALTY CO. L.P.      : NO. 2023-24837

VS.                                :

MONTGOMERY COUNTY BOARD OF         :
ASSESSMENT APPEALS

                                   :

### ANSWER AND NEW MATTER OF RESPONDENT JENKINS COURT RELATY CO., L.P. TO THE MOTION TO COMPEL DISCOVERY

AND NOW, comes Jenkins Court Realty Co. L.P., by its attorney Michael Yanoff, Esquire and makes the following Answer and New Matter to the Motion to Compel Discovery and in support thereof, avers as follows:

1-4.   Admitted.

5.    Admitted in part. denied in part for the reasons more fully set forth below.

6.    Admitted.

7-8.   Denied as conclusions of law requiring no further Answer under the Rules of Civil Procedure.

WHEREFORE, Respondent respectfully requests that the Motion to Compel be DENIED.

## NEW MATTER

9.    Respondent hereby incorporates by reference the averments of paragraphs 1 through 8 above as fully as though set forth herein at length.

10.    On February 21, 2025, upon Motion for Expedited Appointment of a Receiver filed by ICON PSG 1 FL, LLC, ("ICON) the Honorable Gerald Austin McHugh, Judge of the United States District Court for the Easten District of Pennsylvania, entered an Order appointing a receiver for the subject property.  A true and correct copy of that Order is attached hereto, made a part hereof and marked as Exhibit "A."

11.    As a result of said Order, respondent no longer has access to or control over the information requested by the Movant, as all access to such information has been foreclosed and denied by the Receiver.

12.    Prior to the entry of that Order, ICON notified all tenants that it was exercising is Assignment of Rents and demanded that all rents and additional rents be paid directly to ICON.

13.    As a result, unless and until the receivership is terminated, Respondent cannot truthfully or completely respond to the discovery requests.

14,    Respondent's failure to answer the discovery requests is not willful nor intentional and is purely as a result of the actions of the Receiver.

15.    Movant already has much of the information sought by these discovery requests, which was produced in the prior Assessment Appeal matter tried before the Honorable Thomas Branca of this Court.

16.    In addition, the discovery requests seek information that is considered to be attorney work-product and is therefore not discoverable.

WHEREFORE, Respondent respectfully requests that the Motion to Compel be DENIED.

Respectfully submitted,

GOLDSTEIN LAW PARTNERS, LLC

BY: _____

MICHAEL YANOFF, ESQUIRE

**UNITED STATES DISTRICT COURT**
**EASTERN DISTRICT OF PENNSYLVANIA**

| | |
|---|---|
| ICON PSG 1 FL, LLC, | |
| Plaintiff, | Civ. No. 2:25-cv-00044-GAM |
| v. | |
| JENKINS COURT REALTY CO., L.P. | |
| Defendants. | |

**NOTICE OF APPEAL**

Notice is hereby given that Jenkins Court Realty Co., L.P., Defendant in the above named case, appeals to the United States Court of Appeals for the Third Circuit pursuant to 28 U.S.C. §1291 and Fed. R. App. P. 4(A)(1)(a) from the order and judgment (Dkt. No. 45)[1] entered in this action on the 18th day of July, 2025[2] (1) granting the Request for Entry of Default Judgment and entering judgment against Defendant in the amount of $22,056,659.26.  This amount incorporates the full amount owed to Plaintiff under the Loan Agreement at the time of filing the Complaint, $20,456,811.14, plus contractual interest calculated in total as $1,599,848.12 as of May 27, 2025.[3]  *See* Ex. A (Final Order and Entry of Default Judgment, 7/18/25 (Dkt. No. 45) and Memorandum, 7/28/23 (Dkt. No. 43)).

---

[1] Also on the 18th day of July, 2025, the District Court issued a memorandum (Dkt. No. 43) in support of the order and entry of default judgment.

[2] The deadline to file a notice of appeal after a final order and/or entry of judgment is thirty (30) days, which was Sunday August 17, 2025.  The deadline falls to the next business day, which is Monday August 18, 2025.  Plaintiff's notice of appeal is timely filed.

[3] On July 18, 2025, as part of the decision to enter Default Judgment, the District Court ordered (i) Plaintiff held in contempt, and (ii) the terms of the Lease Agreement modified. *See* Ex. B (Dkt. No. 46 (Order Modifying Lease Agreement); Dkt. No. 44 (Order Holding Plaintiff in Contempt)). These orders, issued the same day as entry of default judgment, are included in this appeal.

GOLDSTEIN LAW PARTNERS, LLC

BY: /s/        Shawn M. Rodgers
      Michael Yanoff, Esquire (ID No. 19384)
      Shawn M. Rodgers, Esquire (ID No. 307598)
      610 Old York Road Suite 340
      Jenkintown, PA 19046
      (267) 627-2485
      myanoff@goldsteinlp.com
      srodgers@goldsteinlp.com

      *Attorneys for Defendant*

## CERTIFICATE OF SERVICE

I, Shawn M. Rodgers, Esquire, do hereby certify that on August 18, 2025, I electronically filed the foregoing Notice of Appeal with the Clerk of the Court for the United States District Court for the Eastern District of Pennsylvania using the CM/ECF system. Counsel of record for all parties are registered CM/ECF users and will be served by the District Court's CM/ECF system.

/s/ *Shawn M. Rodgers*
SHAWN M. RODGERS, ESQUIRE

**IN THE UNITED STATES DISTRICT COURT**
**FOR THE EASTERN DISTRICT OF PENNSYLVANIA**

| | | |
|---|---|---|
| ICON PSG 1 FL, LLC | : | |
| | : | **CIVIL ACTION** |
| v. | : | **No. 25-44** |
| | : | |
| JENKINS COURT REALTY CO., L.P. | : | |

## ORDER

This 18th day of July, 2025, it is hereby **ORDERED** that Plaintiff ICON PSG 1 FL, LLC's Request for Entry of Default Judgment, ECF 30, is **GRANTED** in the amount of $22,056,659.26, the full payment due pursuant to the terms of the Loan Agreement.  This value incorporates the full amount due to Plaintiff under the Loan Agreement at the time of the filing of the Complaint, $20,456,811.14, as well as contractual interest calculated to total $1,599,848.12 as of Plaintiff's May 27 Declaration, ECF 30-2.[1]  Any credits or offsets shall be appropriate for resolution at a later stage of this litigation.

 /s/ Gerald Austin McHugh
United States District Judge

---

[1] Pursuant to the Loan Agreement, contractual interest has accrued at a rate of $13,199.27 per diem on the outstanding Loan Balance starting on January 26, 2025, the date on which the actual interest that had accrued on the Loan exceeded the Minimum Earned Interest.  ECF 30-2.

# IN THE UNITED STATES DISTRICT COURT
## FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| **ICON PSG 1 FL, LLC** | : | |
| | : | **CIVIL ACTION** |
| **v.** | : | **No. 25-44** |
| | : | |
| **JENKINS COURT REALTY CO., L.P.** | : | |

## MEMORANDUM

**McHUGH, J.**                                                                                    **July 18, 2025**

This is a foreclosure action where the Court previously held that the appointment of a receiver was warranted, as authorized by the controlling loan documents and based upon a showing that the Plaintiff's interest could not be adequately protected if Defendant continued to manage the property at issue.

Defendant was ordered to render an accounting and transfer records when the receivership was established in February, 2025, ECF 13, and when it failed to comply a second order was entered in May, 2025 again directing Defendant to render an accounting and transfer records. ECF 28. The Receiver now returns with a motion seeking a finding of contempt against Defendant and its principal, Phillip Pulley, because no accounting has been rendered, and the records it has received are inadequate to allow for competent management of the property.

"Proof of contempt requires a movant to demonstrate '(1) that a valid order of the court existed; (2) that the defendants had knowledge of the order; and (3) that the defendants disobeyed the order.'" *FTC v. Lane Labs-USA, Inc.*, 624 F.3d 575, 582 (3d Cir. 2010) (citations omitted). These elements must be proven by clear and convincing evidence, but "an alleged contemnor's behavior need not be willful in order to contravene the applicable decree . . . In other words, good

faith is not a defense to civil contempt." *Id.* Here, following an evidentiary hearing, Defendant's contempt is self-evident. There is no dispute about the validity of the order requiring an accounting, Defendant's knowledge of it, or the fact that no accounting has been rendered. Defendant's vague excuse that it requires information from the Receiver makes no sense, both because it would appear to have electronic versions of whatever it previously produced, and it has not even attempted to prepare an accounting. Separately, it is clear that critical information was withheld from the Receiver, because there is a pending tax appeal that affects the subject property, and that information was never disclosed. Counsel's attempt to deflect blame from his client by claiming that he viewed the matter inconsequential because it was "dormant" is nonsensical.

Beyond that, from the Court's review of what has been produced, approximately 280 documents, there is substantial reason to believe that critical management documents have been withheld. Among the items identified by the Receiver, it has not received (1) financial reports for 2023 and 2024; (2) tenant ledgers showing rents as of February 21, 2025; (3) rent rolls as of February 21, 2025; (4) bank statements as of February 21, 2025; (5) access and login information for the control system and DVR; (6) phone line account information for the line serving the elevators; and (7) CAM (Common Area Maintenance) Reconciliations for 2023. It is inconceivable that such records do not exit, and vague explanations about records lost because of a plumbing leak in 2022 sheds no light on documents that logically would have existed at a later point in time.

I found Mr. Pulley to be an evasive witness who offered no credible explanation for how the property could have been operated if in fact the documents requested by the Receiver did not exist. And the tone and tenor of his testimony was that the Receiver should have been able to obtain necessary information from what was produced, such as a General Ledger, which strongly

2

implies that he is being selective in his compliance with this Court's order.  In evaluating the credibility of Mr. Pulley's testimony, I also take judicial notice that he is a convicted felon, having pleaded guilty in this Court to one count of voter registration fraud, two counts of voter fraud, and one count of voting more than once in the same federal election.  *See United States of America v. Philip C. Pulley*, No. 24-cr-288, ECF 8, 20 (E.D. Pa. 2024).

The contempt order accompanying this memorandum is mild, considering the blatant lack of cooperation on Mr. Pulley's part.  In adjusting his behavior, he should take note of the Court's growing impatience with his conduct.

 /s/ Gerald Austin McHugh
United States District Judge

Case 2:25-cv-00044-GAM Document 42 Filed 07/18/25 Page 1 of 4

**IN THE UNITED STATES DISTRICT COURT**
**FOR THE EASTERN DISTRICT OF PENNSYLVANIA**

| | | |
|---|---|---|
| **ICON PSG 1 FL, LLC** | : | |
| | : | **CIVIL ACTION** |
| **v.** | : | **No. 25-44** |
| | : | |
| **JENKINS COURT REALTY CO., L.P.** | : | |

## <u>ORDER</u>

This 18th day of July, 2025, it is hereby **ORDERED** that the Receiver's Motion to Hold Defendant and its Principal in Contempt, ECF 33, is **GRANTED** in part, as follows:

1) Jenkins Court Realty through its principal Phillip Pulley shall provide a full accounting as required by this Court's prior orders within 5 days, irrespective of Mr. Pulley's contention that he lacks information to complete the accounting. As to necessary information as to which he purportedly lacks access, he shall identify with precision the nature of such information, where such information was located, either in physical or electronic form when he last had access to it, and where, to the best of his knowledge such information currently is.

2) Within 5 days of this Order, Mr. Pulley shall admit representatives of the Receiver into the offices of Jenkins Court Realty and any other location where records pertinent to 610 Old York Road may exist and provide direct access to all paper and electronic files pertaining to 610 Old York Road.

3) Within 5 days of this Order, Mr. Pulley shall admit representatives of the Receiver into the offices of SBG Management and any other location where records pertinent to security, access and video surveillance of 610 Old York Road may exist and provide direct access to all paper and electronic files pertinent to security, access and video

surveillance of 610 Old York Road.  Mr. Pulley shall also cooperate in sharing passwords and explaining the operation of any SBG system of service pertinent to security, access and video surveillance of 610 Old York Road.

4) Within 5 days of this Order, Mr. Pulley shall provide all documents and records pertinent to *Jenkins Court Realty Co LP v. Montgomery County Board of Assessment Appeals*, Case No. 2023-24837, and any other action by a governmental entity affecting the subject property.

5) As of July 26, 2025, failure to comply with any aspect of this Order will result in monetary sanctions commencing at $500 per day.

 /s/ Gerald Austin McHugh  
United States District Judge

Appx1414

Case 2:25-cv-00044-GAM   Document 62   Filed 07/18/25   Page 1 of 4

IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA

ICON PSG 1 FL, LLC                    :
                                      :        CIVIL ACTION
        v.                            :        No. 25-44
                                      :
JENKINS COURT REALTY CO., L.P.        :

### ORDER

This 18th day of July, 2025, upon consideration of the Receiver's Motion to Modify Certain Lease Terms, ECF 32, it is hereby **ORDERED** as follows:

The Receiver is **ORDERED** to properly serve Jenkins Storage, LLC with their Motion to comport with due process notice requirements.

The Motion is **GRANTED** as to SBG Management Services, Inc.[1]  Mr. Pulley is the signatory as both landlord and tenant on the SBG Management lease, which allows for a striking 1000-day period of default before the landlord is permitted to seek any recourse for noncompliance.  This is particularly concerning here, where SBG Management has refused to make any payment to the Receiver yet expects impunity, hindering the Receiver's ability to comply with the Receivership Order prescribed by the Court.  ECF 13.

"A contract may be set aside or rescinded if it can be proven that, at the time of formation of the agreement, the parties did not bargain at an arm's length." *Biddle v. Johnsonbaugh*, 664 A.2d 159, 161 (Pa. Super. 1995); *See also Tech One Assoc. v. Bd. of Prop. Assessment, Appeals, & Rev. of Allegheny Cnty.*, 53 A.3d 685, 703 n.30 (Pa. 2012) (characterizing an "arm's length transaction" as one "untainted by any collusion or fraud.").  It is impossible to negotiate at an arms-

---

[1] Because Mr. Pulley is a Principal of both SBG Management and Jenkins Court Realty, I deem notice on SBG Management sufficient.

length and to protect the interests of two distinct parties where the same principal simultaneously represents both sides, rendering the lease ripe for judicial intervention.  Here, the 1000-day term is also unconscionable because it unreasonably favors the tenant, and there can be limited meaningful choice or deliberation to protect the disparate interests of distinct entities in contractual terms where Pulley represents both parties.  *Harris v. Green Tree Financial Corp.*, 183 F.3d 173, 181 (3d Cir. 1999).  And inherent to any lease contract is a duty of good faith and fair dealing, which would have been breached by virtue of Pulley having signed both the landlord and tenant sides of the contract.

The Attornment clause is also not binding here.  Although some leases were purportedly reviewed by the lender's counsel, there is no indication that the attornment clauses were made known to or reviewed by them.  Finally, the Receiver acts as an arm of the Court, rather than as a successor to the landlord, the party that would ostensibly be bound by a valid attornment clause.  The unique circumstances warranting the receivership also warrant modification of the lease term to accomplish the purposes of the Court's Receivership Order.  The Receiver is hereby **AUTHORIZED** to void the 1000-day grace period in the SBG Management Lease and substitute the ten-day period standard for commercial leases.

         /s/ Gerald Austin McHugh
         United States District Judge

**C/A No. 2-25-cv-00044-GAM**

**JENKINS COURT REALTY CO., L.P.**

**610 Old York**

**610 Old York Road**
**Jenkintown, Pennsylvania 19046**



**RECEIVER REPORT**

*For the period*
**May 1, 2025 *through* July 31, 2025**

## TABLE OF CONTENTS

OVERVIEW OF PROPERTY

OPERATIONAL UPDATE AND FINANCIALS

      RECEIVER

      LINCOLN PROPERTY COMMERCIAL, LLC

**OVERVIEW OF PROPERTY**

On February 21, 2025, the United States District Court for the Eastern District of Pennsylvania entered that certain Order (Appointment Order"), appointing Trigild IVL, LLC (the "Receiver") for the property located at 610 Old York Road, Jenkintown, Pennsylvania 19046 (the "Property"). The Receiver engaged Lincoln Property Commercial, LLC to manage the property on February 27, 2025. The Property consists of a 20-unit, 185,863 SF office building.

*This Space Intentionally Left Blank*

## TABLE OF CONTENTS

### RECEIVER

EXECUTIVE SUMMARY

    CERTIFICATE OF LIABILITY INSURANCE

    EVIDENCE OF COMMERCIAL PROPERTY INSURANCE

RECEIVER ACCOUNT

    CASH RECONCILIATION

**EXECUTIVE SUMMARY**

**Property Insurance**

The Property has current general liability coverage through Cincinnati Insurance Companies with a coverage period of November 4, 2024, to December 7, 2025. The Property commercial property insurance coverage through Cincinnati Insurance Companies with a coverage period of November 4, 2024, to December 7, 2025. A copy of the Property and Liability certificates attached herewith.

**Monthly Distributions/Funding Requests**

Receiver made distributions to Bank of America in May, June, and July 2025.

In May 2025, Receiver made two distributions totaling $181,231.49. First distribution was on May 7th for $20,480.05. Second distribution was on May 16th for $160,751.44.

In June 2025, Receiver made two distributions totaling $246,310.28. First distribution was on June 2nd for $169,694.71. Second distribution was on June 17th for $76,615.57.

In July 2025, Receiver made two distributions totaling $125,004.94. First distribution was on July 1st for $83,411.91. Second distribution was on July 17th for $41,593.03.

**Operations**

Receiver reviewed weekly operations with the Property Manager.

Receiver reviewed and approved service contracts.

Receiver reviewed monthly payables and financials.

**ACORD®** CERTIFICATE OF LIABILITY INSURANCE

| DATE (MM/DD/YYYY) |
|---|
| 12/10/2024 |

THIS CERTIFICATE IS ISSUED AS A MATTER OF INFORMATION ONLY AND CONFERS NO RIGHTS UPON THE CERTIFICATE HOLDER. THIS CERTIFICATE DOES NOT AFFIRMATIVELY OR NEGATIVELY AMEND, EXTEND OR ALTER THE COVERAGE AFFORDED BY THE POLICIES BELOW. THIS CERTIFICATE OF INSURANCE DOES NOT CONSTITUTE A CONTRACT BETWEEN THE ISSUING INSURER(S), AUTHORIZED REPRESENTATIVE OR PRODUCER, AND THE CERTIFICATE HOLDER.

IMPORTANT: If the certificate holder is an ADDITIONAL INSURED, the policy(ies) must have ADDITIONAL INSURED provisions or be endorsed. If SUBROGATION IS WAIVED, subject to the terms and conditions of the policy, certain policies may require an endorsement. A statement on this certificate does not confer rights to the certificate holder in lieu of such endorsement(s).

| PRODUCER | CONTACT NAME: Kelly Cooper | | |
|---|---|---|---|
| Maury, Donnelly & Parr, Inc. | PHONE (A/C, No, Ext): 443-330-7437 | | FAX (A/C, No): 410-685-3071 |
| 24 Commerce St. Baltimore MD 21202 | E-MAIL ADDRESS: kelly-cooper@mdpins.com | | |
| License#: 67 | INSURER(S) AFFORDING COVERAGE | | NAIC # |
| JENKCOU-01 | INSURER A : Cincinnati Insurance Companies | | 10677 |
| **INSURED** | INSURER B : Starstone National Insurance Company | | |
| Jenkins Court Realty Co., L.P. | INSURER C : Evanston Insurance Company | | 35378 |
| PO Box 549 | INSURER D : Selective Insurance Co of America# | | 12572 |
| Abington PA 19001 | INSURER E : | | |
| | INSURER F : | | |

**COVERAGES**   **CERTIFICATE NUMBER:** 211445165   **REVISION NUMBER:**

THIS IS TO CERTIFY THAT THE POLICIES OF INSURANCE LISTED BELOW HAVE BEEN ISSUED TO THE INSURED NAMED ABOVE FOR THE POLICY PERIOD INDICATED. NOTWITHSTANDING ANY REQUIREMENT, TERM OR CONDITION OF ANY CONTRACT OR OTHER DOCUMENT WITH RESPECT TO WHICH THIS CERTIFICATE MAY BE ISSUED OR MAY PERTAIN, THE INSURANCE AFFORDED BY THE POLICIES DESCRIBED HEREIN IS SUBJECT TO ALL THE TERMS, EXCLUSIONS AND CONDITIONS OF SUCH POLICIES. LIMITS SHOWN MAY HAVE BEEN REDUCED BY PAID CLAIMS.

| INSR LTR | TYPE OF INSURANCE | ADDL INSD | SUBR WVD | POLICY NUMBER | POLICY EFF (MM/DD/YYYY) | POLICY EXP (MM/DD/YYYY) | LIMITS | |
|---|---|---|---|---|---|---|---|---|
| A | X COMMERCIAL GENERAL LIABILITY | Y | | EPP0701829 | 11/4/2024 | 12/7/2025 | EACH OCCURRENCE | $ 1,000,000 |
| | CLAIMS-MADE X OCCUR | | | | | | DAMAGE TO RENTED PREMISES (Ea occurrence) | $ 0 |
| | X 1,000 | | | | | | MED EXP (Any one person) | $ 10,000 |
| | | | | | | | PERSONAL & ADV INJURY | $ 1,000,000 |
| | GEN'L AGGREGATE LIMIT APPLIES PER: | | | | | | GENERAL AGGREGATE | $ 2,000,000 |
| | POLICY PRO-JECT X LOC | | | | | | PRODUCTS - COMP/OP AGG | $ 2,000,000 |
| | OTHER: | | | | | | | $ |
| A | AUTOMOBILE LIABILITY | | | EPP0701829 | 11/4/2024 | 12/7/2025 | COMBINED SINGLE LIMIT (Ea accident) | $ 1,000,000 |
| | ANY AUTO | | | | | | BODILY INJURY (Per person) | $ |
| | OWNED AUTOS ONLY SCHEDULED AUTOS | | | | | | BODILY INJURY (Per accident) | $ |
| | X HIRED AUTOS ONLY X NON-OWNED AUTOS ONLY | | | | | | PROPERTY DAMAGE (Per accident) | $ |
| | | | | | | | | $ |
| B | UMBRELLA LIAB X OCCUR | Y | | 76503W230ALI | 11/4/2024 | 12/7/2025 | EACH OCCURRENCE | $ 5,000,000 |
| | X EXCESS LIAB CLAIMS-MADE | | | | | | AGGREGATE | $ 5,000,000 |
| | DED X RETENTION $ 0 | | | | | | | $ |
| | WORKERS COMPENSATION AND EMPLOYERS' LIABILITY ANY PROPRIETOR/PARTNER/EXECUTIVE OFFICER/MEMBER EXCLUDED? (Mandatory in NH) If yes, describe under DESCRIPTION OF OPERATIONS below | Y/N N/A | | | | | PER STATUTE OTH-ER | |
| | | | | | | | E.L. EACH ACCIDENT | $ |
| | | | | | | | E.L. DISEASE - EA EMPLOYEE | $ |
| | | | | | | | E.L. DISEASE - POLICY LIMIT | $ |
| C D | Excess Over Umbrella Builders Risk | Y Y | | EZXS3178367 S2654044 | 11/4/2024 1/23/2024 | 12/7/2025 1/23/2025 | Occ/Aggregate Renovation Limit | 5,000,000 2,000,000 |

DESCRIPTION OF OPERATIONS / LOCATIONS / VEHICLES (ACORD 101, Additional Remarks Schedule, may be attached if more space is required)
ICON PSG 1 FL, LLC ISAOA ATIMA  is additional insured as required per written contract with respect to: 610 Old York Rd. Jenkintown PA 19046
ICON PSG 1 FL, LLC ISAOA ATIMA  is included as loss payee and mortgagee on the Builders Risk policy.

| CERTIFICATE HOLDER | CANCELLATION |
|---|---|
| ICON PSG 1 FL, LLC ISAOA ATIMA 6711 Columbia Gateway Dr. Ste. 130 Columbia MD 21046 | SHOULD ANY OF THE ABOVE DESCRIBED POLICIES BE CANCELLED BEFORE THE EXPIRATION DATE THEREOF, NOTICE WILL BE DELIVERED IN ACCORDANCE WITH THE POLICY PROVISIONS. AUTHORIZED REPRESENTATIVE  |

© 1988-2015 ACORD CORPORATION. All rights reserved.

ACORD 25 (2016/03)        The ACORD name and logo are registered marks of ACORD

# ACORD® CERTIFICATE OF LIABILITY INSURANCE

| | DATE (MM/DD/YYYY) |
|---|---|
| | 3/19/2025 |

THIS CERTIFICATE IS ISSUED AS A MATTER OF INFORMATION ONLY AND CONFERS NO RIGHTS UPON THE CERTIFICATE HOLDER. THIS CERTIFICATE DOES NOT AFFIRMATIVELY OR NEGATIVELY AMEND, EXTEND OR ALTER THE COVERAGE AFFORDED BY THE POLICIES BELOW. THIS CERTIFICATE OF INSURANCE DOES NOT CONSTITUTE A CONTRACT BETWEEN THE ISSUING INSURER(S), AUTHORIZED REPRESENTATIVE OR PRODUCER, AND THE CERTIFICATE HOLDER.

IMPORTANT: If the certificate holder is an ADDITIONAL INSURED, the policy(ies) must have ADDITIONAL INSURED provisions or be endorsed. If SUBROGATION IS WAIVED, subject to the terms and conditions of the policy, certain policies may require an endorsement. A statement on this certificate does not confer rights to the certificate holder in lieu of such endorsement(s).

| PRODUCER | CONTACT NAME: Robyn Garrison-Shipp | |
|---|---|---|
| Maury, Donnelly & Parr, Inc.<br>24 Commerce St.<br>Baltimore MD 21202 | PHONE (A/C, No, Ext): 443-541-0575 | FAX (A/C, No): 443-536-4783 |
| | E-MAIL ADDRESS: robyn-garrison-shipp@mdpins.com | |

| | | INSURER(S) AFFORDING COVERAGE | NAIC # |
|---|---|---|---|
| | License#: 67 | INSURER A : Cincinnati Insurance Companies | 10677 |
| | JENKCOU-01 | INSURER B : Starstone National Insurance Company | |
| INSURED | | INSURER C : Evanston Insurance Company | 35378 |
| Jenkins Court Realty Co LP<br>PO Box 549<br>Abington PA 19001 | | INSURER D : | |
| | | INSURER E : | |
| | | INSURER F : | |

## COVERAGES     CERTIFICATE NUMBER: 869526145     REVISION NUMBER:

THIS IS TO CERTIFY THAT THE POLICIES OF INSURANCE LISTED BELOW HAVE BEEN ISSUED TO THE INSURED NAMED ABOVE FOR THE POLICY PERIOD INDICATED. NOTWITHSTANDING ANY REQUIREMENT, TERM OR CONDITION OF ANY CONTRACT OR OTHER DOCUMENT WITH RESPECT TO WHICH THIS CERTIFICATE MAY BE ISSUED OR MAY PERTAIN, THE INSURANCE AFFORDED BY THE POLICIES DESCRIBED HEREIN IS SUBJECT TO ALL THE TERMS, EXCLUSIONS AND CONDITIONS OF SUCH POLICIES. LIMITS SHOWN MAY HAVE BEEN REDUCED BY PAID CLAIMS.

| INSR LTR | TYPE OF INSURANCE | ADDL INSD | SUBR WVD | POLICY NUMBER | POLICY EFF (MM/DD/YYYY) | POLICY EXP (MM/DD/YYYY) | LIMITS | |
|---|---|---|---|---|---|---|---|---|
| A | X COMMERCIAL GENERAL LIABILITY | Y | | EPP0701829 | 11/4/2024 | 12/7/2025 | EACH OCCURRENCE | $ 1,000,000 |
| | ☐ CLAIMS-MADE  X OCCUR | | | | | | DAMAGE TO RENTED PREMISES (Ea occurrence) | $ 500,000 |
| | X 1,000 | | | | | | MED EXP (Any one person) | $ 10,000 |
| | | | | | | | PERSONAL & ADV INJURY | $ 1,000,000 |
| | GEN'L AGGREGATE LIMIT APPLIES PER: | | | | | | GENERAL AGGREGATE | $ 2,000,000 |
| | POLICY ☐ PRO-JECT ☐ X LOC | | | | | | PRODUCTS - COMP/OP AGG | $ 2,000,000 |
| | OTHER: | | | | | | | $ |
| | AUTOMOBILE LIABILITY | | | | | | COMBINED SINGLE LIMIT (Ea accident) | $ |
| | ☐ ANY AUTO | | | | | | BODILY INJURY (Per person) | $ |
| | ☐ OWNED AUTOS ONLY ☐ SCHEDULED AUTOS | | | | | | BODILY INJURY (Per accident) | $ |
| | ☐ HIRED AUTOS ONLY ☐ NON-OWNED AUTOS ONLY | | | | | | PROPERTY DAMAGE (Per accident) | $ |
| | | | | | | | | $ |
| B | UMBRELLA LIAB X OCCUR | Y | | 76503W230ALI | 11/4/2024 | 12/7/2025 | EACH OCCURRENCE | $ 5,000,000 |
| | X EXCESS LIAB ☐ CLAIMS-MADE | | | | | | AGGREGATE | $ 5,000,000 |
| | DED X RETENTION $ 0 | | | | | | | $ |
| | WORKERS COMPENSATION AND EMPLOYERS' LIABILITY | | N/A | | | | ☐ PER STATUTE ☐ OTHER | |
| | ANYPROPRIETOR/PARTNER/EXECUTIVE OFFICER/MEMBER EXCLUDED? Y/N (Mandatory in NH) | | | | | | E.L. EACH ACCIDENT | $ |
| | | | | | | | E.L. DISEASE - EA EMPLOYEE | $ |
| | If yes, describe under DESCRIPTION OF OPERATIONS below | | | | | | E.L. DISEASE - POLICY LIMIT | $ |
| C | Excess Over Umbrella | | | EZXS3178367 | 11/4/2024 | 12/7/2025 | Occurrence<br>Aggregate<br>Retention | 5,000,000<br>5,000,000<br>0 |

DESCRIPTION OF OPERATIONS / LOCATIONS / VEHICLES (ACORD 101, Additional Remarks Schedule, may be attached if more space is required)
Trigild IVL LLC (Receiver) and the Receivership Estate Over the Specific Assets of Jenkins Court Realty Co., L.P. are additional insured with respect to 610 Old York Rd. Jenkintown PA.

| CERTIFICATE HOLDER | CANCELLATION |
|---|---|
| Jenkins Court Realty Co., LP c/o Trigild IVL LLC<br>8111 Douglas Avenue, Suite 600<br>Dallas TX 75225 | SHOULD ANY OF THE ABOVE DESCRIBED POLICIES BE CANCELLED BEFORE THE EXPIRATION DATE THEREOF, NOTICE WILL BE DELIVERED IN ACCORDANCE WITH THE POLICY PROVISIONS.<br><br>AUTHORIZED REPRESENTATIVE<br> |

© 1988-2015 ACORD CORPORATION. All rights reserved.

ACORD 25 (2016/03)     The ACORD name and logo are registered marks of ACORD



# EVIDENCE OF COMMERCIAL PROPERTY INSURANCE

| | DATE (MM/DD/YYYY) |
|---|---|
| | 12/10/2024 |

THIS EVIDENCE OF COMMERCIAL PROPERTY INSURANCE IS ISSUED AS A MATTER OF INFORMATION ONLY AND CONFERS NO RIGHTS UPON THE ADDITIONAL INTEREST NAMED BELOW. THIS EVIDENCE DOES NOT AFFIRMATIVELY OR NEGATIVELY AMEND, EXTEND OR ALTER THE COVERAGE AFFORDED BY THE POLICIES BELOW. THIS EVIDENCE OF INSURANCE DOES NOT CONSTITUTE A CONTRACT BETWEEN THE ISSUING INSURER(S), AUTHORIZED REPRESENTATIVE OR PRODUCER, AND THE ADDITIONAL INTEREST.

| PRODUCER NAME, CONTACT PERSON AND ADDRESS | PHONE (A/C, No, Ext): 410-685-4625 | COMPANY NAME AND ADDRESS | NAIC NO: 10677 |
|---|---|---|---|
| Maury, Donnelly & Parr, Inc.<br>24 Commerce St.<br>Baltimore, MD 21202 | | Cincinnati Insurance Companies<br>PO Box 145496<br>Cincinnati, OH 45250-5496<br>, | |
| | License#: 67 | | |
| FAX (A/C, No): 410-685-3071 | E-MAIL ADDRESS: | IF MULTIPLE COMPANIES, COMPLETE SEPARATE FORM FOR EACH | |
| CODE: | SUB CODE: | POLICY TYPE | |
| AGENCY CUSTOMER ID #: | | | |

| NAMED INSURED AND ADDRESS | LOAN NUMBER | POLICY NUMBER |
|---|---|---|
| Jenkins Court Realty Co., L.P.<br>PO Box 549<br>Abington PA 19001 | | EPP0701829 |

| | EFFECTIVE DATE | EXPIRATION DATE | |
|---|---|---|---|
| | 11/04/2024 | 12/07/2025 | ☐ CONTINUED UNTIL TERMINATED IF CHECKED |

| ADDITIONAL NAMED INSURED(S) | THIS REPLACES PRIOR EVIDENCE DATED: |
|---|---|

**PROPERTY INFORMATION** (ACORD 101 may be attached if more space is required) ☒ BUILDING OR ☒ BUSINESS PERSONAL PROPERTY

LOCATION / DESCRIPTION
610 Old York Road Jenkintown PA 19046
610 Old York Rd., Jenkintown, PA 19046, USA

THE POLICIES OF INSURANCE LISTED BELOW HAVE BEEN ISSUED TO THE INSURED NAMED ABOVE FOR THE POLICY PERIOD INDICATED. NOTWITHSTANDING ANY REQUIREMENT, TERM OR CONDITION OF ANY CONTRACT OR OTHER DOCUMENT WITH RESPECT TO WHICH THIS EVIDENCE OF PROPERTY INSURANCE MAY BE ISSUED OR MAY PERTAIN, THE INSURANCE AFFORDED BY THE POLICIES DESCRIBED HEREIN IS SUBJECT TO ALL THE TERMS, EXCLUSIONS AND CONDITIONS OF SUCH POLICIES. LIMITS SHOWN MAY HAVE BEEN REDUCED BY PAID CLAIMS.

**COVERAGE INFORMATION**    PERILS INSURED   ☐ BASIC   ☐ BROAD   ☒ SPECIAL

| COMMERCIAL PROPERTY COVERAGE AMOUNT OF INSURANCE: | $ 56,960,175 | | | DED: 25,000 |
|---|---|---|---|---|

| | YES | NO | N/A | |
|---|---|---|---|---|
| ☒ BUSINESS INCOME   ☒ RENTAL VALUE | X | | | If YES, LIMIT: 1,872,000   X Actual Loss Sustained; # of months: 12 |
| BLANKET COVERAGE | | X | | If YES, indicate value(s) reported on property identified above: $ |
| TERRORISM COVERAGE | X | | | Attach Disclosure Notice / DEC |
| IS THERE A TERRORISM-SPECIFIC EXCLUSION? | | X | | |
| IS DOMESTIC TERRORISM EXCLUDED? | | X | | |
| LIMITED FUNGUS COVERAGE | X | | | If YES, LIMIT: 25,000   DED: |
| FUNGUS EXCLUSION (If "YES", specify organization's form used) | | X | | |
| REPLACEMENT COST | X | | | |
| AGREED VALUE | | X | | |
| COINSURANCE | X | | | If YES, 80 % |
| EQUIPMENT BREAKDOWN (If Applicable) | X | | | If YES, LIMIT: 56,960,175   DED: 25,000 |
| ORDINANCE OR LAW  - Coverage for loss to undamaged portion of bldg | X | | | If YES, LIMIT: 56,960,175   DED: 0 |
| - Demolition Costs | X | | | If YES, LIMIT: 150,000   DED: 0 |
| - Incr. Cost of Construction | X | | | If YES, LIMIT: 150,000   DED: 0 |
| EARTH MOVEMENT (If Applicable) | | X | | If YES, LIMIT:   DED: |
| FLOOD (If Applicable) | | X | | If YES, LIMIT:   DED: |
| WIND / HAIL INCL  ☒ YES ☐ NO  Subject to Different Provisions: | | X | | If YES, LIMIT: 57,194,175   DED: 25,000 |
| NAMED STORM INCL  ☒ YES ☐ NO  Subject to Different Provisions: | | X | | If YES, LIMIT: 57,194,175   DED: 25,000 |
| PERMISSION TO WAIVE SUBROGATION IN FAVOR OF MORTGAGE HOLDER PRIOR TO LOSS | | | X | |

**CANCELLATION**

SHOULD ANY OF THE ABOVE DESCRIBED POLICIES BE CANCELLED BEFORE THE EXPIRATION DATE THEREOF, NOTICE WILL BE DELIVERED IN ACCORDANCE WITH THE POLICY PROVISIONS.

**ADDITIONAL INTEREST**

| ☐ CONTRACT OF SALE | ☐ LENDER'S LOSS PAYABLE | X LOSS PAYEE | LENDER SERVICING AGENT NAME AND ADDRESS |
|---|---|---|---|
| X MORTGAGEE | X Additional Insured | | |

NAME AND ADDRESS

ICON PSG 1 FL, LLC ISAOA ATIMA
6711 Columbia Gateway Dr. Ste. 130
Columbia, MD 21046

| AUTHORIZED REPRESENTATIVE |
|---|
| |

© 2003-2015 ACORD CORPORATION. All rights reserved.

ACORD 28 (2016/03)    The ACORD name and logo are registered marks of ACORD



# EVIDENCE OF COMMERCIAL PROPERTY INSURANCE

**DATE (MM/DD/YYYY)**
3/19/2025

THIS EVIDENCE OF COMMERCIAL PROPERTY INSURANCE IS ISSUED AS A MATTER OF INFORMATION ONLY AND CONFERS NO RIGHTS UPON THE ADDITIONAL INTEREST NAMED BELOW. THIS EVIDENCE DOES NOT AFFIRMATIVELY OR NEGATIVELY AMEND, EXTEND OR ALTER THE COVERAGE AFFORDED BY THE POLICIES BELOW. THIS EVIDENCE OF INSURANCE DOES NOT CONSTITUTE A CONTRACT BETWEEN THE ISSUING INSURER(S), AUTHORIZED REPRESENTATIVE OR PRODUCER, AND THE ADDITIONAL INTEREST.

| PRODUCER NAME, CONTACT PERSON AND ADDRESS | PHONE (A/C, No, Ext): 410-685-4625 | COMPANY NAME AND ADDRESS | NAIC NO: 10677 |
|---|---|---|---|
| Maury, Donnelly & Parr, Inc.<br>24 Commerce St.<br>Baltimore, MD 21202 | | Cincinnati Insurance Companies<br>PO Box 145496<br>Cincinnati, OH  45250-5496<br>, | |
| | License#: 67 | IF MULTIPLE COMPANIES, COMPLETE SEPARATE FORM FOR EACH | |

| FAX (A/C, No): 410-685-3071 | E-MAIL ADDRESS: | POLICY TYPE |
|---|---|---|
| CODE: | SUB CODE: | |
| AGENCY CUSTOMER ID #: | | |

| NAMED INSURED AND ADDRESS | LOAN NUMBER | POLICY NUMBER |
|---|---|---|
| Jenkins Court Realty Co., L.P.<br>PO Box 549<br>Abington PA 19001 | | EPP0701829 |

| | EFFECTIVE DATE | EXPIRATION DATE | CONTINUED UNTIL TERMINATED IF CHECKED |
|---|---|---|---|
| | 11/04/2024 | 12/07/2025 | |

| ADDITIONAL NAMED INSURED(S) | THIS REPLACES PRIOR EVIDENCE DATED: |
|---|---|

**PROPERTY INFORMATION**   (ACORD 101 may be attached if more space is required)   ☒ BUILDING   OR ☒ BUSINESS PERSONAL PROPERTY

**LOCATION / DESCRIPTION**
610 Old York Road Jenkintown PA 19046
610 Old York Road, Jenkintown, PA 19046, USA

THE POLICIES OF INSURANCE LISTED BELOW HAVE BEEN ISSUED TO THE INSURED NAMED ABOVE FOR THE POLICY PERIOD INDICATED. NOTWITHSTANDING ANY REQUIREMENT, TERM OR CONDITION OF ANY CONTRACT OR OTHER DOCUMENT WITH RESPECT TO WHICH THIS EVIDENCE OF PROPERTY INSURANCE MAY BE ISSUED OR MAY PERTAIN, THE INSURANCE AFFORDED BY THE POLICIES DESCRIBED HEREIN IS SUBJECT TO ALL THE TERMS, EXCLUSIONS AND CONDITIONS OF SUCH POLICIES. LIMITS SHOWN MAY HAVE BEEN REDUCED BY PAID CLAIMS.

**COVERAGE INFORMATION**    PERILS INSURED    ☐ BASIC    ☐ BROAD    ☒ SPECIAL

COMMERCIAL PROPERTY COVERAGE AMOUNT OF INSURANCE:    $                              DED: 25,000

| | YES | NO | N/A | |
|---|---|---|---|---|
| ☒ BUSINESS INCOME   ☒ RENTAL VALUE | X | | | If YES, LIMIT: 1,872,000   ☒ Actual Loss Sustained; # of months: 12 |
| BLANKET COVERAGE | | X | | If YES, indicate value(s) reported on property identified above: $ |
| TERRORISM COVERAGE | X | | | Attach Disclosure Notice / DEC |
| IS THERE A TERRORISM-SPECIFIC EXCLUSION? | | X | | |
| IS DOMESTIC TERRORISM EXCLUDED? | | X | | |
| LIMITED FUNGUS COVERAGE | X | | | If YES, LIMIT: 25,000    DED: |
| FUNGUS EXCLUSION (If "YES", specify organization's form used) | | X | | |
| REPLACEMENT COST | X | | | |
| AGREED VALUE | | X | | |
| COINSURANCE | X | | | If YES,    80 % |
| EQUIPMENT BREAKDOWN (If Applicable) | X | | | If YES, LIMIT: 56,960,175    DED: 25,000 |
| ORDINANCE OR LAW   - Coverage for loss to undamaged portion of bldg | X | | | If YES, LIMIT: 56,960,175    DED: 0 |
| - Demolition Costs | X | | | If YES, LIMIT: 150,000    DED: 0 |
| - Incr. Cost of Construction | X | | | If YES, LIMIT: 150,000    DED: 0 |
| EARTH MOVEMENT (If Applicable) | | X | | If YES, LIMIT:    DED: |
| FLOOD (If Applicable) | | X | | If YES, LIMIT:    DED: |
| WIND / HAIL INCL   ☒ YES ☐ NO   Subject to Different Provisions: | | X | | If YES, LIMIT: 57,194,175    DED: 25,000 |
| NAMED STORM INCL   ☒ YES ☐ NO   Subject to Different Provisions: | | X | | If YES, LIMIT: 57,194,175    DED: 25,000 |
| PERMISSION TO WAIVE SUBROGATION IN FAVOR OF MORTGAGE HOLDER PRIOR TO LOSS | | | X | |

**CANCELLATION**

SHOULD ANY OF THE ABOVE DESCRIBED POLICIES BE CANCELLED BEFORE THE EXPIRATION DATE THEREOF, NOTICE WILL BE DELIVERED IN ACCORDANCE WITH THE POLICY PROVISIONS.

**ADDITIONAL INTEREST**

| ☐ CONTRACT OF SALE    ☐ LENDER'S LOSS PAYABLE    ☐ LOSS PAYEE<br>☐ MORTGAGEE | LENDER SERVICING AGENT NAME AND ADDRESS |
|---|---|
| **NAME AND ADDRESS**<br><br>Jenkins Court Realty Co., LP c/o Trigild IVL LLC<br>8111 Douglas Avenue, Suite 600<br>Dallas, TX 75225 | |
| | **AUTHORIZED REPRESENTATIVE** |

© 2003-2015 ACORD CORPORATION.  All rights reserved.

**ACORD 28 (2016/03)**          The ACORD name and logo are registered marks of ACORD

Appx1425

Cash Reconciliation

For the Month Ended May 31, 2025

| PROPERTY | : | Jenkins Court Realty Co., L. P. |
|---|---|---|

**Benchmark Bank Receiver Account #6980**

| | | |
|---|---|---:|
| Beginning Cash Balance | $ | 252,700.19 |
| Disbursement from Check Register | $ | (7,801.05) |
| Receipts | $ | 131,924.07 |
| Wire to Operating Account | $ | (181,261.49) |
| Ending Cash Balance | $ | 195,561.72 |
| Less: Expense Reserve | | - |
| Security Deposits | | |
| Receiver Reserve | | |
| Available Cash | $ | 195,561.72 |

Cash Reconciliation

For the Month Ended June 30, 2025

| PROPERTY | : | Jenkins Court Realty Co., L. P. |
|---|---|---|

**Benchmark Bank Receiver Account #6980**

| | | |
|---|---|---:|
| Beginning Cash Balance | $ | 195,561.72 |
| Disbursement from Check Register | $ | - |
| Receipts | $ | 924,871.14 |
| Wire to Operating Account | $ | (246,340.28) |
| Ending Cash Balance | $ | 874,092.58 |
| Less: Expense Reserve | | - |
| Security Deposits | | |
| Receiver Reserve | | |
| Available Cash | $ | 874,092.58 |

Appx1427

Cash Reconciliation

For the Month Ended July 31, 2025

| PROPERTY | : | Jenkins Court Realty Co., L. P. |
|---|---|---|

**Benchmark Bank Receiver Account #6980**

| | | |
|---|---|---:|
| Beginning Cash Balance | $ | 874,092.58 |
| Disbursement from Check Register | $ | - |
| Receipts | $ | 247,336.76 |
| Wire to Operating Account | $ | (757,936.91) |
| Ending Cash Balance | $ | 363,492.43 |
| Less: Expense Reserve | | - |
| Security Deposits | | |
| Receiver Reserve | | |
| Available Cash | $ | 363,492.43 |

Appx1428

## TABLE OF CONTENTS

## LINCOLN PROPERTY COMPANY COMMERCIAL, LLC - FINANCIAL CONTENTS

EXECUTIVE SUMMARY

INCOME STATEMENT

BALANCE SHEET

STATEMENT OF CASH FLOW

TRIAL BALANCE

GENERAL LEDGER

RENT ROLL

OPERATING ACCOUNT

      BANK RECONCILIATION

      BANK STATEMENT

      GENERAL LEDGER

RECEIVER ACCOUNT

      BANK RECONCILIATION

      BANK STATEMENT

      GENERAL LEDGER

RECEIVABLES LEDGER

AGED DELINQUENCIES

CHECK REGISTER

OPEN STATUS REPORT

MANAGEMENT FEE CALCULATION

CASH RECEIPTS

**Jenkins Court**
**Jenkintown, PA**
**STATUS REPORT**
**May-July 2025**

## FINANCIAL SUMMARY

| | Current | | | | Year to Date | | | |
|---|---|---|---|---|---|---|---|---|
| | Actual | Budget | Variance | % | Actual | Budget | Variance | % |
| Income | 1,304,069 | 1,006,583 | 297,486 | 29.55% | 3,489,938 | 5,904,228 | 2,414,290 | (40.89%) |
| Expense | 509,860 | 502,020 | (7,841) | (1.56%) | 1,138,509 | 2,152,806 | 1,014,297 | 47.12% |
| Net Income/Loss | 794,209 | 504,563 | (289,646) | (57.41%) | 1,091,975 | 1,422,385 | 330,410 | 23.23% |
| Capital Expense | 84,596 | 125,900 | 252,396 | 32,81% | 252,396 | 209,800 | (42,596) | (20.30%) |
| Net Income/Loss with Capital | 709,613 | 378,663 | (330,950) | (87.40%) | 839,579 | 1,212,585 | 373,006 | 30.76% |

## INCOME AND EXPENSE

The 2025 budget was approved by Trigild and Lincoln, then loaded into MRI in August for the July financial report.

The current positive income variance is due to the collection of rent resulting from the Default notice sent to Regus; received $150K and the collection of past due rent from Temple; received $331K. Both payments were received in May.

The year-to-date income variance is due to the CAM and R/E Tax adjustments retroactive to March 2025 completed in July for August billing.

Expenses are in line with the budget for the current quarter; however, the year-to-date expense variance is due to the timing in processing related expenses. We expect the year-to-date variance to be reduced with the recent processing of the remaining invoices from Temple's sewer line repair (phase 1 and phase 2); $52K ($75K total), and other significant expenses for HVAC repairs/replacements and roof repairs, detailed below in the operations section.

The current period's positive capital variance is due to the timing of processing invoices for the related capital projects—elevator modernization and garage restoration projects which will reduce this variance for the next quarter.

## NET OPERATING INCOME/LOSS

Current and YTD NOI variances are due to net results of the above-referenced contributing factors.

## TENANT

5/23 – Sewer drain line repairs completed for Temple Fox Chase.

5/30 - The Certificate of Occupancy was received for Kristen and Dante Givens/Events Space, suites 650 & 676.

6/2 - Rabinowitz Glass completed recaulking/sealant work to address the window leak for Temple, suite 680.

6/29 - Caliber completed concrete repairs for the Jersey College entrance. The repairs were well received by the Tenant.

7/7 – Management shared with Jonathan Lakner at Trigild an email from Bethany Christian Services. The Tenant is looking to downsize/sublet part of their space. The lease permits for assignment/subletting pending Landlord review/ approval.

7/15 – The management team met with Bethany Christian Services to review their request to downsize.

7/15 & 7/16 – Lincoln management met with Phil Pulley/SBG in his office to receive financial reports as requested by the court.

7/17 – Steven Kriz, CBRE broker, toured all vacant suites to provide a leasing proposal to Trigild.

Lincoln management has continued regular calls with Temple/MRA and Jersey College contacts to review any pertinent building matters.

## OPERATIONS

A new landscaping contract was executed with Ruppert Landscaping; $22K/yr. in May.

An exterminating contract was executed with Moyer Pest Control; $6K/yr. in May.

### Roofing

6/3 - Tri-County Roofing addressed roof leaks for suites 250, 407, 409, 453, 454, 455, and completed a survey for Temple Health, suite 680.

7/8 - Trigild approved the $4,750 proposal from RSC (Roof Consulting Services) to complete a roof inspection. The initial step is to determine the current roof condition, which will then allow them to make recommendations on how to proceed. RSC will create a scope of work based on their recommendations. Lincoln can then use this scope to obtain bids for the recommended work. The contract with RSC is in progress. Once fully executed, the inspection will be scheduled.

7/11 - Tri County Roofing surveyed the condition of the main roof and extension roof, where we have repeated leaks. Tri County provided a quote for $35K to temporarily address leaks reported in suites: 407, 453, 454, 455, 678, 680/Temple Health front entrance, kitchen, & Temple, outside office 122. The quote was shared with Jon/Trigild. Repeat leaks may occur without further temporary repairs being completed. Tri County Roofing also provided estimates for roof replacements (main roof $583,500; rear extension roof $348,500).

### Plumbing

6/6 - Completed garage pipe survey to see what existing and new piping we have that requires freeze protection, pending receipt of final report.

7/29 - Received quote from SSH for $157,125 for garage piping freeze protection.

7/31 – Lincoln management is in contact with Herman Goldner; pending site visit to receive a 2nd quote for garage pipe freeze protection.

### HVAC

7/1 – Air Tech released for $15,890 (quote 1039) for new Lobby Unit; contract executed; unit on order/not available until the end of August. We will continue to monitor if the lobby needs a temporary AC unit.

7/11 - Air Tech released for $15,512.58 (quote 1064) for AC required for elevator machine room. Installation is in progress, 8/13-8/15.

7/24 - Air Tech completed $15,890 (quote 1023) HVAC repairs for units 6 &12 and replacement for unit 8 for Temple spaces 678/680.

**Security/Fire Monitoring/Elevator Phone Monitoring**

7/22 – Received approval to proceed with Datawatch to take over the existing access control system; pending contract execution.

7/28 – Met on site with AES Security to provide access to fob system and learned SBG had terminated the Comcast agreement for internet service. Following that meeting we learned through AES that Jersey College and Temple, due to their partitioned domains, cannot make any fob changes. We need the Comcast internet service restored asap. Comcast was on property 8/15 to restore internet service; waiting on confirmation job has been completed 100%.

**Garage Project**

O&S Associates survey report expected to be received on 7/9. The report will be reviewed and shared with the receiver and lender. Plans will be put out to bid and should be received within 3 weeks with a plan to mobilize by late September.

A parking contingency plan is required. We obtained a quote to restripe the west and north parking lots for $2,816.65. Management is also looking into the possibility of providing valet service.

**Elevators**

7/1 - Elevator Construction & Repair commenced modernization project for passenger cars. The project is expected to take 4 weeks for each elevator. Work will be performed on one elevator at a time. Tenants were notified of the work and schedule via email blast.

7/8 – Received approval for $12K ADD cabling work required for car #2 to pass State inspection.

7/23 – Received approval for $4K ADD electrical work required in pit.

**<u>VACANT SUITES</u>**

The following suites are currently vacant:

- Suite 105 – 500 SF
- Suite 107 – 2,500 SF
- Suite 200 – 4,000 SF
- Suite 205 – 1,500 SF
- Suite 668 – 2,000 SF

| Database: | MSDE_CB | Income Statement | Page: | 1 |
|---|---|---|---|---|
| ENTITY: | 610 | Quarterly Income Statement | Date: | 8/18/2025 |
| | | Lincoln Property Company | Time: | 8:45 AM |
| | | Jenkins Court Realty Co LP | | |

Cash

Report includes an open period.  Entries are not final.

| | Current Quarter 3 Month Thru: Jul 2025 | Year-To-Date 7 Months Jul 2025 |
|---|---|---|
| **REVENUES:** | | |
| COMMERCIAL RENTAL INCOME | | |
| Base Rent Income | 1,107,352.25 | 1,450,756.44 |
| Concessions Rental Income | (16,500.00) | (27,500.00) |
| TOTAL COMMERCIAL RENTAL INCOME | 1,090,852.25 | 1,423,256.44 |
| OPERATING EXPENSE REIMBURSEMENTS | | |
| Recoveries Billing - CY Estimate | 124,020.18 | 124,020.18 |
| Real Estate Taxes Recoveries | 80,196.75 | 80,196.75 |
| TOTAL OPERATING EXPENSE REIMBURSEMENTS | 204,216.93 | 204,216.93 |
| OTHER INCOME | | |
| Garage and Parking Rental Income | 9,000.00 | 9,000.00 |
| TOTAL OTHER INCOME | 9,000.00 | 9,000.00 |
| TOTAL REVENUES | 1,304,069.18 | 1,636,473.37 |
| **EXPENSES:** | | |
| CONTRACT SERVICES | | |
| Elevator - Contract | 871.20 | 871.20 |
| Janitorial - Contract | 38,736.03 | 38,736.03 |
| Janitorial - Day Porter/Other Contract | 19,832.80 | 19,832.80 |
| Cleaning - Other | 3,830.12 | 3,830.12 |
| Extermination - Contract | 2,333.50 | 2,333.50 |
| Landscaping - Exterior Contract | 3,338.85 | 3,338.85 |
| Trash Removal - Waste Contract | 14,833.23 | 14,833.23 |
| HVAC - Water Treatment Contract | 3,955.15 | 3,955.15 |
| Other Contract Services | 3,322.59 | 3,322.59 |
| TOTAL CONTRACT SERVICES | 91,053.47 | 91,053.47 |
| REPAIRS AND MAINTENANCE | | |
| Janitorial - Repairs And Supplies | 4,935.02 | 4,935.02 |
| Electrical - Repairs | 4,320.00 | 4,320.00 |
| Electrical - Supplies | 482.37 | 4,044.66 |
| Hvac - Repairs | 52,216.00 | 52,216.00 |
| Energy Management System - Repairs | 125.00 | 125.00 |
| Window/Glass/Mirror - Repairs | 2,200.00 | 2,200.00 |
| Key And Lock - Repairs | 2,911.39 | 2,911.39 |
| Plumbing - Repairs | 5,097.00 | 5,097.00 |
| Roof - Repairs and Supplies | 7,010.00 | 7,010.00 |
| General Repairs And Supplies | 1,564.50 | 1,564.50 |
| TOTAL REPAIRS AND MAINTENANCE | 80,861.28 | 84,423.57 |

| Database: | MSDE_CB | Income Statement | Page: | 2 |
|---|---|---|---|---|
| ENTITY: | 610 | Quarterly Income Statement | Date: | 8/18/2025 |
| | | Lincoln Property Company | Time: | 8:45 AM |
| | | Jenkins Court Realty Co LP | | |

Cash

Report includes an open period. Entries are not final.

| | Current Quarter<br>3 Month<br>Thru: Jul 2025 | Year-To-Date<br>7 Months<br>Jul 2025 |
|---|---|---|
| UTILITIES | | |
| Electricity | 24,188.24 | 33,039.10 |
| Water | 11,950.18 | 14,948.78 |
| Gas | 785.86 | 785.86 |
| TOTAL UTILITIES | 36,924.28 | 48,773.74 |
| | | |
| PERSONNEL | | |
| Payroll, Engineer Salaries | 29,718.21 | 29,718.21 |
| Management Salaries | 32,919.55 | 32,919.55 |
| TOTAL PERSONNEL | 62,637.76 | 62,637.76 |
| | | |
| MANAGEMENT FEES | | |
| Management Fees | 15,000.00 | 15,000.00 |
| TOTAL MANAGEMENT FEES | 15,000.00 | 15,000.00 |
| | | |
| OFFICE & ADMINISTRATIVE | | |
| Bank Fees | 550.00 | 550.00 |
| Postage and Courier Fees | 366.03 | 366.03 |
| Technology - Computer Hardware | 1,917.30 | 1,917.30 |
| Technology - Wan/Internet/Cable | 643.78 | 643.78 |
| TOTAL OFFICE & ADMINISTRATIVE | 3,477.11 | 3,477.11 |
| | | |
| RECEIVER EXPENSE | | |
| Receiver Fee | 26,250.00 | 26,250.00 |
| Receiver Other Expenses | 2,000.00 | 2,000.00 |
| TOTAL RECEIVER EXPENSE | 28,250.00 | 28,250.00 |
| | | |
| REAL ESTATE & INSURANCE | | |
| Insurance - Commercial | 45,633.26 | 64,523.26 |
| Real Estate Taxes | 126,342.03 | 126,342.03 |
| TOTAL REAL ESTATE & INSURANCE | 171,975.29 | 190,865.29 |
| | | |
| NON RECOVERABLE EXPENSES | | |
| Travel | 879.28 | 879.28 |
| Professional Fees | 19,092.75 | 19,092.75 |
| Bank Service Charges | 30.00 | 45.00 |
| Technology - Wan/Internet/Cable | (320.89) | 0.00 |
| TOTAL NON RECOVERABLE EXPENSES | 19,681.14 | 20,017.03 |
| | | |
| TOTAL OPERATING EXPENSES | 509,860.33 | 544,497.97 |
| | | |
| NET OPERATING INCOME | 794,208.85 | 1,091,975.40 |

Appx1434

| Database: MSDE_CB | **Income Statement** | Page: | 3 |
| ENTITY: 610 | **Quarterly Income Statement** | Date: | 8/18/2025 |
| | **Lincoln Property Company** | Time: | 8:45 AM |
| | **Jenkins Court Realty Co LP** | | |

Cash

Report includes an open period.  Entries are not final.

| | **Current Quarter** | **Year-To-Date** |
| | 3  Month | 7  Months |
| Thru: | Jul 2025 | Jul 2025 |

| | Current Quarter | Year-To-Date |
|---|---|---|
| NET INCOME/LOSS | 794,208.85 | 1,091,975.40 |
| CAPITAL EXPENSES | | |
| Building Improvements | 84,596.00 | 84,596.00 |
| TOTAL CAPITAL EXPENSES | 84,596.00 | 84,596.00 |
| NET INCOME/LOSS LESS CAPITAL EXP | 709,612.85 | 1,007,379.40 |

| Database: | MSDE_CB | **Balance Sheet** | Page: | 1 |
|---|---|---|---|---|
| ENTITY: | 610 | | Date: | 8/18/2025 |
| Report ID: | MP_BALST | **Jenkins Court Realty Co LP** | Time: | 6:43 AM |
| Format ID: | BALSTGWP | Lincoln Property Company | User ID: | CPARNELL |

Cash                                                                 *Report includes an open period.  Entries are not final.*

| Acct # | Account Description | May 2025 |
|---|---|---|
| | ASSETS | |
| | CASH AND CASH EQUIVALENTS | |
| 10810-0000 | Cash - Operating | 11,000.00 |
| 10825-0000 | Cash - Lockbox- Wells Fargo | 195,561.72 |
| | TOTAL CASH AND CASH EQUIVALENTS | 206,561.72 |
| | RECEIVABLES & OTHER ASSETS | |
| 11066-0000 | Utility Deposit | 43,255.00 |
| | TOTAL  RECEIVABLES & OTHER ASSETS | 43,255.00 |
| | REAL ESTATE RELATED INVESTMENTS | |
| 10380-0000 | Building Improvements | 83,900.00 |
| | TOTAL REAL ESTATE RELATED INVESTI | 83,900.00 |
| | TOTAL ASSETS | 333,716.72 |
| | | |
| | LIABILITIES AND EQUITY | |
| | LIABILITIES | |
| | TOTAL LIABILITIES | 0.00 |
| | EQUITY | |
| 30040-0000 | Owner Contributions | 43,255.00 |
| 36011-0000 | Current Earnings | 290,461.72 |
| | TOTAL EQUITY | 333,716.72 |
| | TOTAL LIABILITIES & CAPITAL | 333,716.72 |

Appx1436

| Database: | MSDE_CB | **Balance Sheet** | Page: | 1 |
|---|---|---|---|---|
| ENTITY: | 610 | | Date: | 7/9/2025 |
| Report ID: | MP_BALST | **Jenkins Court Realty Co LP** | Time: | 10:26 AM |
| Format ID: | BALSTGWP | Lincoln Property Company | User ID: | CPARNELL |

Cash                                                      *Report includes an open period.  Entries are not final.*

| Acct # | Account Description | Jun 2025 |
|---|---|---|
| | ASSETS | |
| | CASH AND CASH EQUIVALENTS | |
| 10810-0000 | Cash - Operating | 11,000.00 |
| 10825-0000 | Cash - Lockbox | 874,092.58 |
| | TOTAL CASH AND CASH EQUIVALENTS | 885,092.58 |
| | RECEIVABLES & OTHER ASSETS | |
| 11066-0000 | Utility Deposit | 43,255.00 |
| | TOTAL  RECEIVABLES & OTHER ASSETS | 43,255.00 |
| | REAL ESTATE RELATED INVESTMENTS | |
| 10380-0000 | Building Improvements | 83,900.00 |
| | TOTAL REAL ESTATE RELATED INVESTN | 83,900.00 |
| | TOTAL ASSETS | 1,012,247.58 |
| | LIABILITIES AND EQUITY | |
| | LIABILITIES | |
| | TOTAL LIABILITIES | 0.00 |
| | EQUITY | |
| 30040-0000 | Contributions | 43,255.00 |
| 36011-0000 | Current Earnings | 968,992.58 |
| | TOTAL EQUITY | 1,012,247.58 |
| | TOTAL LIABILITIES & CAPITAL | 1,012,247.58 |

Appx1437

| Database: | MSDE_CB | **Balance Sheet** | Page: | 1 |
|---|---|---|---|---|
| ENTITY: | 610 | | Date: | 8/18/2025 |
| Report ID: | MP_BALST | **Jenkins Court Realty Co LP** | Time: | 6:43 AM |
| Format ID: | BALSTGWP | Lincoln Property Company | User ID: | CPARNELL |

Cash

*Report includes an open period. Entries are not final.*

| Acct # | Account Description | Jul 2025 |
|---|---|---|
| | ASSETS | |
| | CASH AND CASH EQUIVALENTS | |
| 10810-0000 | Cash - Operating | 11,000.00 |
| 10911-0000 | Cash- Lockbox -Benchmark | 363,492.43 |
| | TOTAL CASH AND CASH EQUIVALENTS | 374,492.43 |
| | RECEIVABLES & OTHER ASSETS | |
| 11066-0000 | Utility Deposit | 43,255.00 |
| | TOTAL  RECEIVABLES & OTHER ASSETS | 43,255.00 |
| | REAL ESTATE RELATED INVESTMENTS | |
| 10380-0000 | Building Improvements | 84,596.00 |
| | TOTAL REAL ESTATE RELATED INVESTM | 84,596.00 |
| | TOTAL ASSETS | 502,343.43 |
| | LIABILITIES AND EQUITY | |
| | LIABILITIES | |
| | TOTAL LIABILITIES | 0.00 |
| | EQUITY | |
| 30040-0000 | Owner Contributions | 43,255.00 |
| 30060-0000 | Distributions - Current Year | (632,886.97) |
| 36011-0000 | Current Earnings | 1,091,975.40 |
| | TOTAL EQUITY | 502,343.43 |
| | TOTAL LIABILITIES & CAPITAL | 502,343.43 |

Appx1438

Case: 25-2598    Document: 20    Page: 248    Date Filed: 11/24/2025

| Database: | MSDE_CB | | | Page: | 1 |
|---|---|---|---|---|---|
| ENTITY: | 610 | **Statement of Cash Flow** | | Date: | 8/18/2025 |
| | | **Lincoln Property Company** | | Time: | 9:09 AM |
| | | **Jenkins Court Realty Co LP** | | | |
| Cash | | | | | |

Report includes an open period.  Entries are not final.

| | **Current Quarter** | **Year-To-Date** |
|---|---|---|
| | Actual | Actual |
| Thru: | Jul 2025 | Jul 2025 |

| | Current Quarter | Year-To-Date |
|---|---|---|
| CASH BALANCE, BEGINNING OF MONTH: | 297,766.55 | 0.00 |
| **OPERATING CASH FLOW:** | | |
| Net Operating Income | 794,208.85 | 1,091,975.40 |
| **ADJUST FOR:** | | |
| Change in Accounts Receivable | 0.00 | (43,255.00) |
| Net Operating Cash Flow | 0.00 | (43,255.00) |
| **CAPITAL EXPENDITURES** | | |
| Building & Building Improvements | (84,596.00) | (84,596.00) |
| Net Cash Used for Capital Expenditures | (84,596.00) | (84,596.00) |
| **FINANCING ACTIVITY** | | |
| Equity Contributions | 0.00 | 43,255.00 |
| Equity Distributions | (632,886.97) | (632,886.97) |
| Net Cash Used for Financing Activity | (632,886.97) | (589,631.97) |
| NET CHANGE IN CASH | 76,725.88 | 374,492.43 |
| | 0.00 | 0.00 |
| ENDING CASH BALANCE | 374,492.43 | 374,492.43 |

Appx1439

| Database: | MSDE_CB | Trial Balance | Page: | 1 |
|---|---|---|---|---|
| ENTITY: | 610 | **Lincoln Property Company** | Date: | 8/18/2025 |
| | | **Jenkins Court Realty Co LP** | Time: | 6:46 AM |

Cash

Year to Date Balances for period 07/25

Report includes an open period.  Entries are not final.

| Account | Description | Debit | Credit |
|---|---|---:|---:|
| 10380-0000 | Building Improvements | 84,596.00 | |
| 10810-0000 | Cash - Operating | 11,000.00 | |
| 10911-0000 | Cash- Lockbox -Benchmark | 363,492.43 | |
| 11066-0000 | Utility Deposit | 43,255.00 | |
| 30040-0000 | Owner Contributions | | 43,255.00 |
| 30060-0000 | Distributions - Current Year | 632,886.97 | |
| 41115-0000 | Base Rent Income | | 1,450,756.44 |
| 41145-0000 | Concessions Rental Income | 27,500.00 | |
| 42110-0000 | Recoveries Billing - CY Estimate | | 124,020.18 |
| 42111-0000 | Real Estate Taxes Recoveries | | 80,196.75 |
| 43110-0000 | Garage and Parking Rental Income | | 9,000.00 |
| 51015-0000 | Elevator - Contract | 871.20 | |
| 51020-0000 | Janitorial - Contract | 38,736.03 | |
| 51025-0000 | Janitorial - Day Porter/Other Contract | 19,832.80 | |
| 51026-0000 | Cleaning - Other | 3,830.12 | |
| 51030-0000 | Extermination - Contract | 2,333.50 | |
| 51045-0000 | Landscaping - Exterior Contract | 3,338.85 | |
| 51055-0000 | Trash Removal - Waste Contract | 14,833.23 | |
| 51075-0000 | HVAC - Water Treatment Contract | 3,955.15 | |
| 51110-0000 | Other Contract Services | 3,322.59 | |
| 51220-0000 | Janitorial - Repairs And Supplies | 4,935.02 | |
| 51235-0000 | Electrical - Repairs | 4,320.00 | |
| 51240-0000 | Electrical - Supplies | 4,044.66 | |
| 51245-0000 | Hvac - Repairs | 52,216.00 | |
| 51260-0000 | Energy Management System - Repairs | 125.00 | |
| 51275-0000 | Window/Glass/Mirror - Repairs | 2,200.00 | |
| 51285-0000 | Key And Lock - Repairs | 2,911.39 | |
| 51310-0000 | Plumbing - Repairs | 5,097.00 | |
| 51340-0000 | Roof - Repairs and Supplies | 7,010.00 | |
| 51380-0000 | General Repairs And Supplies | 1,564.50 | |
| 51510-0000 | Electricity | 33,039.10 | |
| 51515-0000 | Water | 14,948.78 | |
| 51530-0000 | Gas | 785.86 | |
| 51609-0000 | Payroll, Engineer Salaries | 29,718.21 | |
| 51610-0000 | Management Salaries | 32,919.55 | |
| 51633-0000 | Bank Fees | 550.00 | |
| 51715-0000 | Management Fees | 15,000.00 | |
| 52023-0000 | Insurance - Commercial | 64,523.26 | |
| 52035-0000 | Postage and Courier Fees | 366.03 | |
| 52050-0000 | Technology - Computer Hardware | 1,917.30 | |
| 52075-0000 | Technology - Wan/Internet/Cable | 643.78 | |
| 52091-0000 | Receiver Fee | 26,250.00 | |
| 52093-0000 | Receiver Other Expenses | 2,000.00 | |
| 53010-0000 | Real Estate Taxes | 126,342.03 | |
| 54050-0000 | Travel | 879.28 | |
| 54070-0000 | Professional Fees | 19,092.75 | |
| 54090-0000 | Bank Service Charges | 45.00 | |
| | Total: | 1,707,228.37 | 1,707,228.37 |

Appx1440

| Database: | MSDE_CB | | | | **General Ledger** | Page: | 1 |
|---|---|---|---|---|---|---|---|
| ENTITY: | 610 | | | | Lincoln Property Company | Date: | 8/18/2025 |
| | | | | | Jenkins Court Realty Co LP | Time: | 6:48 AM |

Cash

05/25 - 07/25
Report includes an open period. Entries are not final.

| Account Entity | Period | Entry Date | Src Reference | Site Id | Job Code | Dept | Description | Debit | Credit | Balance |
|---|---|---|---|---|---|---|---|---|---|---|
| **10380-0000** | | | **Building Improvements** | | | | *Balance Forward* | | | *0.00* |
| 610 | 05/25 | 5/31/2025 | AP 027793 | @ | | | 26 5/19/2025 Elevator Repair and Maintenanc       Elevator Construction & Repair Co. Inc | 68,000.00 | 0.00 | 68,000.00 |
| 610 | 05/25 | 5/31/2025 | AP 027793 | @ | | | 26 5/19/2025 CapEx Elevator Repairs       Elevator Construction & Repair Co. Inc | 15,900.00 | 0.00 | 83,900.00 |
| 610 | 07/25 | 7/31/2025 | AP 028475 | @ | | | 85 7/7/2025 6/23/25 CM Fee Lincoln Property Company Commercial, LLC | 696.00 | 0.00 | 84,596.00 |
| | | | | | | | **\*\* Account Totals** | 84,596.00 | 0.00 | **84,596.00** |
| **10810-0000** | | | **Cash - Operating** | | | | *Balance Forward* | | | *45,066.36* |
| 610 | 05/25 | 5/31/2025 | AP 027793 | @ | | | A/P Cash Disbursed for checks  3-34 | 0.00 | 210,297.85 | -165,231.49 |
| 610 | 05/25 | 5/31/2025 | AP 027798 | @ | | | A/P Cash Disbursed for checks  0-0 | 0.00 | 5,000.00 | -170,231.49 |
| 610 | 05/25 | 5/31/2025 | CM 021021 | @ | | | Cash Recpt PPD  Prepaid Rental Income | 52,825.93 | 0.00 | -117,405.56 |
| 610 | 05/25 | 5/31/2025 | CM 021114 | @ | | | Cash Recpt BRT  Base Rent | 400.00 | 0.00 | -117,005.56 |
| 610 | 05/25 | 5/31/2025 | LD 000021810 | @ | | | 5/7 OPEX Funding - From LB 6980 | 20,480.05 | 0.00 | -96,525.51 |
| 610 | 05/25 | 5/31/2025 | LD 000021810 | @ | | | 5/16 OPEX Funding - From LB 6980 | 160,751.44 | 0.00 | 64,225.93 |
| 610 | 05/25 | 5/31/2025 | LD 000021810 | @ | | | Recl 5/25 Base Rent | 0.00 | 400.00 | 63,825.93 |
| 610 | 05/25 | 5/31/2025 | LD 000021810 | @ | | | Recl 5/25 Prepaid Rent | 0.00 | 52,825.93 | 11,000.00 |
| 610 | 06/25 | 6/30/2025 | AP 028212 | @ | | | A/P Cash Disbursed for checks  35-67 | 0.00 | 246,310.28 | -235,310.28 |
| 610 | 06/25 | 6/30/2025 | CP 625OYB | @ | | | 6/2/25 Funding Request | 169,694.71 | 0.00 | -65,615.57 |
| 610 | 06/25 | 6/30/2025 | CP 625OYB | @ | | | 6/17/25 Funding Request | 76,615.57 | 0.00 | 11,000.00 |
| 610 | 07/25 | 7/31/2025 | AP 028475 | @ | | | A/P Cash Disbursed for checks  68-99 | 0.00 | 125,004.94 | -114,004.94 |
| 610 | 07/25 | 7/31/2025 | CP 725OYB | @ | | | 7/1/25 Funding Request | 83,411.91 | 0.00 | -30,593.03 |
| 610 | 07/25 | 7/31/2025 | CP 725OYB | @ | | | 7/17/25 Funding Request | 41,593.03 | 0.00 | 11,000.00 |
| | | | | | | | **\*\* Account Totals** | 605,772.64 | 639,839.00 | **11,000.00** |
| **10825-0000** | | | **Cash - Lockbox- Wells Fargo** | | | | *Balance Forward* | | | *252,700.19* |
| 610 | 05/25 | 5/31/2025 | CM 021322 | @ | | | Cash Recpt PPD  Prepaid Rental Income | 78,698.14 | 0.00 | 331,398.33 |
| 610 | 05/25 | 5/31/2025 | LD 000021810 | @ | | | 5/7 OPEX Funding - From LB 6980 | 0.00 | 20,480.05 | 310,918.28 |
| 610 | 05/25 | 5/31/2025 | LD 000021810 | @ | | | 5/7 Bank Fee | 0.00 | 15.00 | 310,903.28 |
| 610 | 05/25 | 5/31/2025 | LD 000021810 | @ | | | 5/16 OPEX Funding - From LB 6980 | 0.00 | 160,751.44 | 150,151.84 |
| 610 | 05/25 | 5/31/2025 | LD 000021810 | @ | | | 5/16  Bank Fee | 0.00 | 15.00 | 150,136.84 |
| 610 | 05/25 | 5/31/2025 | LD 000021810 | @ | | | 5/5 Maury Donnelly & Parr - Insurance | 0.00 | 7,786.05 | 142,350.79 |

Appx1441

* Balance Forward Period

Date Filed: 11/24/2025    Page: 250    Document: 20    Case: 25-2598

Case: 25-2598    Document: 20    Page: 251    Date Filed: 11/24/2025

| Database: | MSDE_CB | | | | | **General Ledger** | | | Page: | 2 |
|---|---|---|---|---|---|---|---|---|---|---|
| ENTITY: | 610 | | | | | Lincoln Property Company | | | Date: | 8/18/2025 |
| | | | | | | Jenkins Court Realty Co LP | | | Time: | 6:48 AM |

Cash

05/25 - 07/25
Report includes an open period.  Entries are not final.

| Account Entity | Period | Entry Date | Src Reference | Site Id | Job Code | Dept | Description | Debit | Credit | Balance |
|---|---|---|---|---|---|---|---|---|---|---|
| **10825-0000 - Cash - Lockbox- Wells Fargo  (Continued)** | | | | | | | | | | |
| 610 | 05/25 | 5/31/2025 | LD  000021810 | @ | | | 5/5 Bank Fee | 0.00 | 15.00 | 142,335.79 |
| 610 | 05/25 | 5/31/2025 | LD  000021810 | @ | | | Recl 5/13 Base Rent -  Sezai Saran | 400.00 | 0.00 | 142,735.79 |
| 610 | 05/25 | 5/31/2025 | LD  000021810 | @ | | | Recl 5/8 Outback Steakhouse PPD Rent | 16,425.56 | 0.00 | 159,161.35 |
| 610 | 05/25 | 5/31/2025 | LD  000021810 | @ | | | Recl 5/8 Marc Kress, M.D. PPD Rent | 8,341.70 | 0.00 | 167,503.05 |
| 610 | 05/25 | 5/31/2025 | LD  000021810 | @ | | | Recl 5/8 Cypher Group PPD Rent | 2,125.58 | 0.00 | 169,628.63 |
| 610 | 05/25 | 5/31/2025 | LD  000021810 | @ | | | Recl 5/2 Bethany Christian PPD Rent | 17,561.23 | 0.00 | 187,189.86 |
| 610 | 05/25 | 5/31/2025 | LD  000021810 | @ | | | Recl 5/1 Helping Hands PPD Rent | 8,371.86 | 0.00 | 195,561.72 |
| 610 | 06/25 | 6/30/2025 | CM  021620 | @ | | | Cash Recpt BRT  Base Rent | 706,668.61 | 0.00 | 902,230.33 |
| 610 | 06/25 | 6/30/2025 | CM  021620 | @ | | | Cash Recpt OPE  Operating Expenses | 96,708.41 | 0.00 | 998,938.74 |
| 610 | 06/25 | 6/30/2025 | CM  021620 | @ | | | Cash Recpt PAR  Parking | 4,500.00 | 0.00 | 1,003,438.74 |
| 610 | 06/25 | 6/30/2025 | CM  021620 | @ | | | Cash Recpt PPD  Prepaid Rental Income | 335,652.90 | 0.00 | 1,339,091.64 |
| 610 | 06/25 | 6/30/2025 | CM  021620 | @ | | | Cash Recpt RET  Real Estate Taxes | 61,358.37 | 0.00 | 1,400,450.01 |
| 610 | 06/25 | 6/30/2025 | CM  021620 | @ | | | Paymnt Rev ABA  Abatement - Base Rent | 0.00 | 16,500.00 | 1,383,950.01 |
| 610 | 06/25 | 6/30/2025 | CM  021620 | @ | | | Paymnt Rev PPD  Prepaid Rental Income | 0.00 | 271,951.80 | 1,111,998.21 |
| 610 | 06/25 | 6/30/2025 | CM  021659 | @ | | | Cash Recpt PPD  Prepaid Rental Income | 8,371.86 | 0.00 | 1,120,370.07 |
| 610 | 06/25 | 6/30/2025 | CP  625OYB | @ | | | 6/2/25 Funding Request | 0.00 | 169,694.71 | 950,675.36 |
| 610 | 06/25 | 6/30/2025 | CP  625OYB | @ | | | 6/17/25 Funding Request | 0.00 | 76,615.57 | 874,059.79 |
| 610 | 06/25 | 6/30/2025 | CP  625OYB | @ | | | 6/2/25 Bank Fee | 0.00 | 15.00 | 874,044.79 |
| 610 | 06/25 | 6/30/2025 | CP  625OYB | @ | | | 6/17/25 Bank Fee | 0.00 | 15.00 | 874,029.79 |
| 610 | 06/25 | 6/30/2025 | CP  625OYB | @ | | | Insurance Refund | 62.79 | 0.00 | 874,092.58 |
| 610 | 07/25 | 7/31/2025 | CM  021894 | @ | | | Cash Recpt BRT  Base Rent | 246,434.29 | 0.00 | 1,120,526.87 |
| 610 | 07/25 | 7/31/2025 | CM  021894 | @ | | | Cash Recpt OPE  Operating Expenses | 27,311.77 | 0.00 | 1,147,838.64 |
| 610 | 07/25 | 7/31/2025 | CM  021894 | @ | | | Cash Recpt PAR  Parking | 4,500.00 | 0.00 | 1,152,338.64 |
| 610 | 07/25 | 7/31/2025 | CM  021894 | @ | | | Cash Recpt PPD  Prepaid Rental Income | 2,461.50 | 0.00 | 1,154,800.14 |
| 610 | 07/25 | 7/31/2025 | CM  021894 | @ | | | Cash Recpt RET  Real Estate Taxes | 18,838.38 | 0.00 | 1,173,638.52 |
| 610 | 07/25 | 7/31/2025 | CM  021894 | @ | | | Paymnt Rev PPD  Prepaid Rental Income | 0.00 | 235,667.19 | 937,971.33 |
| 610 | 07/25 | 7/31/2025 | CM  021978 | @ | | | Cash Recpt PPD  Prepaid Rental Income | 149,471.22 | 0.00 | 1,087,442.55 |
| 610 | 07/25 | 7/31/2025 | CM  022124 | @ | | | Cash Recpt PPD  Prepaid Rental Income | 33,986.79 | 0.00 | 1,121,429.34 |
| 610 | 07/25 | 7/31/2025 | CP  725Rc610 | @ | | | Rcl 6/25 Beginning Balance | 0.00 | 874,092.58 | 247,336.76 |
| 610 | 07/25 | 7/31/2025 | CP  725Rc610 | @ | | | Rcl 7/25 Cash Activities | 0.00 | 247,336.76 | 0.00 |
| | | | | | | | **\*\* Account Totals** | 1,828,250.96 | 2,080,951.15 | **0.00** |
| **10911-0000** | | | **Cash- Lockbox -Benchmark** | | | | *Balance Forward* | | | *0.00* |
| 610 | 07/25 | 7/31/2025 | CP  725OYB | @ | | | 7/1/25 Funding Request | 0.00 | 83,411.91 | -83,411.91 |
| 610 | 07/25 | 7/31/2025 | CP  725OYB | @ | | | 7/17/25 Funding Request | 0.00 | 41,593.03 | -125,004.94 |

Appx1442

\* Balance Forward Period

Case: 25-2598    Document: 20    Page: 252    Date Filed: 11/24/2025

| Database: | MSDE_CB | | | | | **General Ledger** | | | Page: | 3 |
| ENTITY: | 610 | | | | | Lincoln Property Company | | | Date: | 8/18/2025 |
| | | | | | | Jenkins Court Realty Co LP | | | Time: | 6:48 AM |

Cash

05/25 - 07/25

Report includes an open period.  Entries are not final.

| Account Entity | Period | Entry Date | Src Reference | Site Id | Job Code | Dept | Description | Debit | Credit | Balance |
|---|---|---|---|---|---|---|---|---|---|---|
| 10911-0000 - Cash- Lockbox -Benchmark  (Continued) | | | | | | | | | | |
| 610 | 07/25 | 7/31/2025 | CP 725OYB | @ | | | 7/1/25 Bank Fee | 0.00 | 15.00 | -125,019.94 |
| 610 | 07/25 | 7/31/2025 | CP 725OYB | @ | | | 7/17/25 Bank Fee | 0.00 | 15.00 | -125,034.94 |
| 610 | 07/25 | 7/31/2025 | CP 725OYB | @ | | | 7/22/25 Bank Fee | 0.00 | 15.00 | -125,049.94 |
| 610 | 07/25 | 7/31/2025 | CP 725OYB | @ | | | 7/22/25 Owner Distribution | 0.00 | 632,886.97 | -757,936.91 |
| 610 | 07/25 | 7/31/2025 | CP 725Rc610 | @ | | | Rcl 6/25 Beginning Balance | 874,092.58 | 0.00 | 116,155.67 |
| 610 | 07/25 | 7/31/2025 | CP 725Rc610 | @ | | | Rcl 7/25 Cash Activities | 247,336.76 | 0.00 | 363,492.43 |
| | | | | | | **** Account Totals** | | 1,121,429.34 | 757,936.91 | **363,492.43** |
| **11066-0000** | | | **Utility Deposit** | | | | *Balance Forward* | | | *43,255.00* |
| **30040-0000** | | | **Owner Contributions** | | | | *Balance Forward* | | | *-43,255.00* |
| **30060-0000** | | | **Distributions - Current Year** | | | | *Balance Forward* | | | *0.00* |
| 610 | 07/25 | 7/31/2025 | CP 725OYB | @ | | | 7/22/25 Owner Distribution | 632,886.97 | 0.00 | 632,886.97 |
| | | | | | | **** Account Totals** | | 632,886.97 | 0.00 | **632,886.97** |
| **41115-0000** | | | **Base Rent Income** | | | | *Balance Forward* | | | *-343,404.19* |
| 610 | 05/25 | 5/31/2025 | CM 021021 | @ | | | Cash Recpt PPD  Prepaid Rental Income | 0.00 | 52,825.93 | -396,230.12 |
| 610 | 05/25 | 5/31/2025 | CM 021114 | @ | | | Cash Recpt BRT  Base Rent | 0.00 | 400.00 | -396,630.12 |
| 610 | 05/25 | 5/31/2025 | CM 021322 | @ | | | Cash Recpt PPD  Prepaid Rental Income | 0.00 | 78,698.14 | -475,328.26 |
| 610 | 06/25 | 6/30/2025 | CM 021620 | @ | | | Cash Recpt BRT  Base Rent | 0.00 | 706,668.61 | -1,181,996.87 |
| 610 | 06/25 | 6/30/2025 | CM 021620 | @ | | | Cash Recpt PPD  Prepaid Rental Income | 0.00 | 335,652.90 | -1,517,649.77 |
| 610 | 06/25 | 6/30/2025 | CM 021620 | @ | | | Paymnt Rev PPD  Prepaid Rental Income | 271,951.80 | 0.00 | -1,245,697.97 |
| 610 | 06/25 | 6/30/2025 | CM 021659 | @ | | | Cash Recpt PPD  Prepaid Rental Income | 0.00 | 8,371.86 | -1,254,069.83 |
| 610 | 07/25 | 7/31/2025 | CM 021894 | @ | | | Cash Recpt BRT  Base Rent | 0.00 | 246,434.29 | -1,500,504.12 |
| 610 | 07/25 | 7/31/2025 | CM 021894 | @ | | | Cash Recpt PPD  Prepaid Rental Income | 0.00 | 2,461.50 | -1,502,965.62 |
| 610 | 07/25 | 7/31/2025 | CM 021894 | @ | | | Paymnt Rev PPD  Prepaid Rental Income | 235,667.19 | 0.00 | -1,267,298.43 |
| 610 | 07/25 | 7/31/2025 | CM 021978 | @ | | | Cash Recpt PPD  Prepaid Rental Income | 0.00 | 149,471.22 | -1,416,769.65 |
| 610 | 07/25 | 7/31/2025 | CM 022124 | @ | | | Cash Recpt PPD  Prepaid Rental Income | 0.00 | 33,986.79 | -1,450,756.44 |
| | | | | | | **** Account Totals** | | 507,618.99 | 1,614,971.24 | **-1,450,756.44** |

Appx1443

* Balance Forward Period

Case: 25-2598    Document: 20    Page: 253    Date Filed: 11/24/2025

| Database: | MSDE_CB | | | | **General Ledger** | | Page: | 4 |
| ENTITY: | 610 | | | | Lincoln Property Company | | Date: | 8/18/2025 |
| | | | | | Jenkins Court Realty Co LP | | Time: | 6:48 AM |

Cash

05/25 - 07/25

Report includes an open period. Entries are not final.

| Account Entity | Period | Entry Date | Src Reference | Site Id | Job Code | Dept | Description | Debit | Credit | Balance |
|---|---|---|---|---|---|---|---|---|---|---|
| **41145-0000** | | | **Concessions Rental Income** | | | | *Balance Forward* | | | *11,000.00* |
| 610 | 06/25 | 6/30/2025 | CM 021620 | @ | | | Paymnt Rev ABA  Abatement - Base Rent | 16,500.00 | 0.00 | 27,500.00 |
| | | | | | | | ** Account Totals | 16,500.00 | 0.00 | **27,500.00** |
| **42110-0000** | | | **Recoveries Billing - CY Estimate** | | | | *Balance Forward* | | | *0.00* |
| 610 | 06/25 | 6/30/2025 | CM 021620 | @ | | | Cash Recpt OPE  Operating Expenses | 0.00 | 96,708.41 | -96,708.41 |
| 610 | 07/25 | 7/31/2025 | CM 021894 | @ | | | Cash Recpt OPE  Operating Expenses | 0.00 | 27,311.77 | -124,020.18 |
| | | | | | | | ** Account Totals | 0.00 | 124,020.18 | **-124,020.18** |
| **42111-0000** | | | **Real Estate Taxes Recoveries** | | | | *Balance Forward* | | | *0.00* |
| 610 | 06/25 | 6/30/2025 | CM 021620 | @ | | | Cash Recpt RET  Real Estate Taxes | 0.00 | 61,358.37 | -61,358.37 |
| 610 | 07/25 | 7/31/2025 | CM 021894 | @ | | | Cash Recpt RET  Real Estate Taxes | 0.00 | 18,838.38 | -80,196.75 |
| | | | | | | | ** Account Totals | 0.00 | 80,196.75 | **-80,196.75** |
| **42112-0000** | | | **Opex Recovery-CY** | | | | *Balance Forward* | | | *0.00* |
| **43110-0000** | | | **Garage and Parking Rental Income** | | | | *Balance Forward* | | | *0.00* |
| 610 | 06/25 | 6/30/2025 | CM 021620 | @ | | | Cash Recpt PAR  Parking | 0.00 | 4,500.00 | -4,500.00 |
| 610 | 07/25 | 7/31/2025 | CM 021894 | @ | | | Cash Recpt PAR  Parking | 0.00 | 4,500.00 | -9,000.00 |
| | | | | | | | ** Account Totals | 0.00 | 9,000.00 | **-9,000.00** |
| **43160-0000** | | | **Other Income** | | | | *Balance Forward* | | | *0.00* |
| **51015-0000** | | | **Elevator - Contract** | | | | *Balance Forward* | | | *0.00* |
| 610 | 07/25 | 7/31/2025 | AP 028475 | @ | | | N00000002 7/7/2025 04/2025 - 04/2026 Elevator Monitoring    Electronic Security Solutions | 871.20 | 0.00 | 871.20 |
| | | | | | | | ** Account Totals | 871.20 | 0.00 | **871.20** |

Appx1444

* Balance Forward Period

Case 2:25-cv-00044-GAM    Document 51    Filed 08/21/25    Page 29 of 130

Date Filed: 11/24/2025    Page: 254    Document: 20    Case: 25-2598

| Database: | MSDE_CB | | | | | **General Ledger** | Page: | 5 |
|---|---|---|---|---|---|---|---|---|
| ENTITY: | 610 | | | | | Lincoln Property Company | Date: | 8/18/2025 |
| | | | | | | Jenkins Court Realty Co LP | Time: | 6:48 AM |

Cash

05/25 - 07/25
Report includes an open period. Entries are not final.

| Account Entity | Period | Entry Date | Src Reference | Site Id | Job Code | Dept | Description | Debit | Credit | Balance |
|---|---|---|---|---|---|---|---|---|---|---|
| **51020-0000** | | | **Janitorial - Contract** | | | | *Balance Forward* | | | *0.00* |
| 610 | 05/25 | 5/31/2025 | AP 027793 | @ | | | 23 5/19/2025 11/2024 Janitorial Services          BCS Facilities Group | 4,099.55 | 0.00 | 4,099.55 |
| 610 | 05/25 | 5/31/2025 | AP 027793 | @ | | | 23 5/19/2025 12/2024 Janitorial Services          BCS Facilities Group | 4,099.55 | 0.00 | 8,199.10 |
| 610 | 05/25 | 5/31/2025 | AP 027793 | @ | | | 23 5/19/2025 01/2025 Janitorial Services          BCS Facilities Group | 4,099.55 | 0.00 | 12,298.65 |
| 610 | 05/25 | 5/31/2025 | AP 027793 | @ | | | 23 5/19/2025 02/2025 Janitorial Services          BCS Facilities Group | 4,099.55 | 0.00 | 16,398.20 |
| 610 | 05/25 | 5/31/2025 | AP 027793 | @ | | | 23 5/19/2025 03/2025 Janitorial Services          BCS Facilities Group | 4,099.55 | 0.00 | 20,497.75 |
| 610 | 06/25 | 6/30/2025 | AP 028212 | @ | | | 56 6/23/2025 5/28/25 Janitorial Supplies          BCS Facilities Group | 314.22 | 0.00 | 20,811.97 |
| 610 | 06/25 | 6/30/2025 | AP 028212 | @ | | | 56 6/23/2025 05/2025 Night Cleaning Services          BCS Facilities Group | 4,802.52 | 0.00 | 25,614.49 |
| 610 | 06/25 | 6/30/2025 | AP 028212 | @ | | | 56 6/23/2025 06/2025 Nightly Janitorial Services          BCS Facilities Group | 4,823.00 | 0.00 | 30,437.49 |
| 610 | 07/25 | 7/31/2025 | AP 028475 | @ | | | 75 7/7/2025 07/2025 Night Cleaning          BCS Facilities Group | 4,120.03 | 0.00 | 34,557.52 |
| 610 | 07/25 | 7/31/2025 | AP 028475 | @ | | | 75 7/7/2025 04/2025 Night Cleaning          BCS Facilities Group | 4,178.51 | 0.00 | 38,736.03 |
| | | | | | | **** Account Totals** | | 38,736.03 | 0.00 | **38,736.03** |
| **51025-0000** | | | **Janitorial - Day Porter/Other Contra** | | | | *Balance Forward* | | | *0.00* |
| 610 | 06/25 | 6/30/2025 | AP 028212 | @ | | | 56 6/23/2025 05/2025 Day Porter Services          BCS Facilities Group | 4,120.03 | 0.00 | 4,120.03 |
| 610 | 06/25 | 6/30/2025 | AP 028212 | @ | | | 56 6/23/2025 06/2025 Day Porter Services          BCS Facilities Group | 4,099.55 | 0.00 | 8,219.58 |
| 610 | 07/25 | 7/31/2025 | AP 028475 | @ | | | 75 7/7/2025 04/2025 Day Porter BCS Facilities Group | 6,810.70 | 0.00 | 15,030.28 |
| 610 | 07/25 | 7/31/2025 | AP 028475 | @ | | | 75 7/7/2025 07/2025 Day Porter BCS Facilities Group | 4,802.52 | 0.00 | 19,832.80 |
| | | | | | | **** Account Totals** | | 19,832.80 | 0.00 | **19,832.80** |

Appx1445

* Balance Forward Period

Case: 25-2598    Document: 20    Page: 255    Date Filed: 11/24/2025

| Database: | MSDE_CB | | | | | **General Ledger** | | Page: | 6 |
|---|---|---|---|---|---|---|---|---|---|
| ENTITY: | 610 | | | | | Lincoln Property Company | | Date: | 8/18/2025 |
| | | | | | | Jenkins Court Realty Co LP | | Time: | 6:48 AM |

Cash

05/25 - 07/25

Report includes an open period.  Entries are not final.

| Account Entity | Period | Entry Date | Src Reference | Site Id | Job Code | Dept | Description | Debit | Credit | Balance |
|---|---|---|---|---|---|---|---|---|---|---|
| **51026-0000** | | | **Cleaning - Other** | | | | *Balance Forward* | | | *0.00* |
| 610 | 05/25 | 5/31/2025 | AP 027793 | @ | | | 12 5/13/2025 01/2025 Floor Mat Service          Health Mats Co | 547.16 | 0.00 | 547.16 |
| 610 | 05/25 | 5/31/2025 | AP 027793 | @ | | | 12 5/13/2025 02/2025 Floor Mat Service          Health Mats Co | 547.16 | 0.00 | 1,094.32 |
| 610 | 05/25 | 5/31/2025 | AP 027793 | @ | | | 12 5/13/2025 03/2025 Floor Mat Service          Health Mats Co | 547.16 | 0.00 | 1,641.48 |
| 610 | 05/25 | 5/31/2025 | AP 027793 | @ | | | 12 5/13/2025 12/2024 Monthly Floor Mat Service          Health Mats Co | 547.16 | 0.00 | 2,188.64 |
| 610 | 05/25 | 5/31/2025 | AP 027793 | @ | | | 12 5/13/2025 04/2025 Floor Mat Service          Health Mats Co | 547.16 | 0.00 | 2,735.80 |
| 610 | 05/25 | 5/31/2025 | LD 000021811 | @ | | | Recl 5/2025 Floor Mats ->51110 | 547.16 | 0.00 | 3,282.96 |
| 610 | 07/25 | 7/31/2025 | CP 725Rc610 | @ | | | Rcl 6/25 Monthly Floor Mats | 547.16 | 0.00 | 3,830.12 |
| | | | | | | | **\*\* Account Totals** | 3,830.12 | 0.00 | **3,830.12** |
| **51030-0000** | | | **Extermination - Contract** | | | | *Balance Forward* | | | *0.00* |
| 610 | 07/25 | 7/31/2025 | AP 028475 | @ | | | 77 7/7/2025 6/10/25 Initial Pest Control Setup          Moyer and Son, Inc. | 821.50 | 0.00 | 821.50 |
| 610 | 07/25 | 7/31/2025 | AP 028475 | @ | | | 77 7/7/2025 6/10/25 Pest Initial Setup          Moyer and Son, Inc. | 530.00 | 0.00 | 1,351.50 |
| 610 | 07/25 | 7/31/2025 | AP 028475 | @ | | | 90 7/7/2025 04/2025 Pest Services          Western Pest Services | 452.00 | 0.00 | 1,803.50 |
| 610 | 07/25 | 7/31/2025 | AP 028475 | @ | | | 96 7/21/2025 6/24/25 Semi Monthly Pest Control          Moyer and Son, Inc. | 265.00 | 0.00 | 2,068.50 |
| 610 | 07/25 | 7/31/2025 | AP 028475 | @ | | | 96 7/21/2025 07/2025 Semi-Monthly Pest Control          Moyer and Son, Inc. | 265.00 | 0.00 | 2,333.50 |
| | | | | | | | **\*\* Account Totals** | 2,333.50 | 0.00 | **2,333.50** |
| **51045-0000** | | | **Landscaping - Exterior Contract** | | | | *Balance Forward* | | | *0.00* |
| 610 | 07/25 | 7/31/2025 | AP 028475 | @ | | | N00000005 7/21/2025 5/24/25 Landscaping Ruppert Landscape Inc. | 281.25 | 0.00 | 281.25 |
| 610 | 07/25 | 7/31/2025 | AP 028475 | @ | | | N00000005 7/21/2025 7/9/25 Landscaping Ruppert Landscape Inc. | 3,057.60 | 0.00 | 3,338.85 |
| | | | | | | | **\*\* Account Totals** | 3,338.85 | 0.00 | **3,338.85** |

Appx1446

\* Balance Forward Period

Case: 25-2598    Document: 20    Page: 256    Date Filed: 11/24/2025

| Database: | MSDE_CB | | | | General Ledger | | Page: | 7 |
|---|---|---|---|---|---|---|---|---|
| ENTITY: | 610 | | | | Lincoln Property Company | | Date: | 8/18/2025 |
| | | | | | Jenkins Court Realty Co LP | | Time: | 6:48 AM |

Cash

05/25 - 07/25

Report includes an open period.  Entries are not final.

| Account Entity | Period | Entry Date | Src Reference | Site Id | Job Code | Dept | Description | Debit | Credit | Balance |
|---|---|---|---|---|---|---|---|---|---|---|
| **51055-0000** | | | **Trash Removal - Waste Contract** | | | | *Balance Forward* | | | *0.00* |
| 610 | 06/25 | 6/30/2025 | AP  028212 | @ | | | 62 6/23/2025 03/18/25 Waste Removal            Republic Services | 689.90 | 0.00 | 689.90 |
| 610 | 06/25 | 6/30/2025 | AP  028212 | @ | | | 63 6/23/2025 04/15/25 Waste Removal            Republic Services | 1,802.01 | 0.00 | 2,491.91 |
| 610 | 06/25 | 6/30/2025 | AP  028212 | @ | | | 64 6/23/2025 04/29/25 Waste Removal            Republic Services | 1,752.77 | 0.00 | 4,244.68 |
| 610 | 06/25 | 6/30/2025 | AP  028212 | @ | | | 65 6/23/2025 05/12/25 Waste Removal            Republic Services | 2,147.54 | 0.00 | 6,392.22 |
| 610 | 06/25 | 6/30/2025 | AP  028212 | @ | | | 66 6/23/2025 5/23/25 Waste Removal            Republic Services | 1,773.47 | 0.00 | 8,165.69 |
| 610 | 07/25 | 7/31/2025 | AP  028475 | @ | | | 84 7/7/2025 06/02/2025 Waste Removal            Republic Services | 1,742.96 | 0.00 | 9,908.65 |
| 610 | 07/25 | 7/31/2025 | AP  028475 | @ | | | 97 7/21/2025 6/20-6/27/25 Waste Removal            Republic Services | 3,803.49 | 0.00 | 13,712.14 |
| 610 | 07/25 | 7/31/2025 | CP  725Rc610 | @ | | | Rcl 3/25 Compactor | 421.42 | 0.00 | 14,133.56 |
| 610 | 07/25 | 7/31/2025 | CP  725Rc610 | @ | | | Rcl 5/25 Compactor | 699.67 | 0.00 | 14,833.23 |
| | | | | | | | **\*\* Account Totals** | 14,833.23 | 0.00 | **14,833.23** |
| **51075-0000** | | | **HVAC - Water Treatment Contract** | | | | *Balance Forward* | | | *0.00* |
| 610 | 07/25 | 7/31/2025 | AP  028475 | @ | | | N00000003 7/21/2025 7/2/25 Water Treatment Supplies         NALCO COMPANY | 3,095.57 | 0.00 | 3,095.57 |
| 610 | 07/25 | 7/31/2025 | AP  028475 | @ | | | N00000003 7/21/2025 7/2/25 Water Treatment            NALCO COMPANY | 859.58 | 0.00 | 3,955.15 |
| | | | | | | | **\*\* Account Totals** | 3,955.15 | 0.00 | **3,955.15** |
| **51110-0000** | | | **Other Contract Services** | | | | *Balance Forward* | | | *0.00* |
| 610 | 05/25 | 5/31/2025 | AP  027793 | @ | | | 27 5/19/2025 05/2025 Floor Mats Health Mats Co | 547.16 | 0.00 | 547.16 |
| 610 | 05/25 | 5/31/2025 | LD  000021811 | @ | | | Recl 5/2025 Floor Mats ->51026 | 0.00 | 547.16 | 0.00 |
| 610 | 06/25 | 6/30/2025 | AP  028212 | @ | | | 59 6/23/2025 06/2025 Monthly Floor Mats            Health Mats Co | 547.16 | 0.00 | 547.16 |
| 610 | 06/25 | 6/30/2025 | AP  028212 | @ | | | N00000001 6/23/2025 3/12/25 Compactor Service            National Equipment Solutions, LP | 421.42 | 0.00 | 968.58 |

Appx1447

\* Balance Forward Period

| Database: | MSDE_CB | | | | | General Ledger | | Page: | 8 |
|---|---|---|---|---|---|---|---|---|---|
| ENTITY: | 610 | | | | | Lincoln Property Company | | Date: | 8/18/2025 |
| | | | | | | Jenkins Court Realty Co LP | | Time: | 6:48 AM |

Cash                                       05/25 - 07/25
                    Report includes an open period.  Entries are not final.

| Account Entity | Period | Entry Date | Src Reference | Site Id | Job Code | Dept | Description | Debit | Credit | Balance |
|---|---|---|---|---|---|---|---|---|---|---|

**51110-0000 - Other Contract Services  (Continued)**

| 610 | 06/25 | 6/30/2025 | AP  028212 | @ | | | N00000001 6/23/2025 5/14/25 Compactor Services        National Equipment Solutions, LP | 699.67 | 0.00 | 1,668.25 |
| 610 | 07/25 | 7/31/2025 | AP  028475 | @ | | | 59 7/7/2025 Lost in Mail Health Mats Co | 0.00 | 547.16 | 1,121.09 |
| 610 | 07/25 | 7/31/2025 | AP  028475 | @ | | | 91 7/7/2025 06/2025 Monthly Floor Mats            Health Mats Co | 547.16 | 0.00 | 1,668.25 |
| 610 | 07/25 | 7/31/2025 | AP  028475 | @ | | | 95 7/21/2025 07/25 Floor Mat Service            Health Mats Co | 547.16 | 0.00 | 2,215.41 |
| 610 | 07/25 | 7/31/2025 | AP  028475 | @ | | | N00000004 7/21/2025 7/7/25 Compactor Services        National Equipment Solutions, LP | 333.97 | 0.00 | 2,549.38 |
| 610 | 07/25 | 7/31/2025 | CP  725Rc610 | @ | | | Rcl 6/25 Monthly Floor Mats | 0.00 | 547.16 | 2,002.22 |
| 610 | 07/25 | 7/31/2025 | CP  725Rc610 | @ | | | Rcl 3/25 Compactor | 0.00 | 421.42 | 1,580.80 |
| 610 | 07/25 | 7/31/2025 | CP  725Rc610 | @ | | | Rcl 5/25 Compactor | 0.00 | 699.67 | 881.13 |
| 610 | 07/25 | 7/31/2025 | CP  725Rc610 | @ | | | Rcl 5/11-6/30/25 WS Sub | 875.56 | 0.00 | 1,756.69 |
| 610 | 07/25 | 7/31/2025 | CP  725Rc610 | @ | | | Rcl 7/1-9/30/25 WS Sub | 1,565.90 | 0.00 | 3,322.59 |
| | | | | | | | **\*\* Account Totals** | 6,085.16 | 2,762.57 | **3,322.59** |

| **51220-0000** | | | **Janitorial - Repairs And Supplies** | | | | *Balance Forward* | | | *0.00* |
|---|---|---|---|---|---|---|---|---|---|---|
| 610 | 06/25 | 6/30/2025 | AP  028212 | @ | | | 56 6/23/2025 6/5/25 Janitorial Supplies            BCS Facilities Group | 178.05 | 0.00 | 178.05 |
| 610 | 06/25 | 6/30/2025 | AP  028212 | @ | | | 56 6/23/2025 5/6/2025 Janitorial Supplies            BCS Facilities Group | 281.94 | 0.00 | 459.99 |
| 610 | 06/25 | 6/30/2025 | AP  028212 | @ | | | 56 6/23/2025 5/19/25 Janitorial Supplies            BCS Facilities Group | 536.30 | 0.00 | 996.29 |
| 610 | 07/25 | 7/31/2025 | AP  028475 | @ | | | 75 7/7/2025 6/9/25 Janitorial Supplies            BCS Facilities Group | 326.44 | 0.00 | 1,322.73 |
| 610 | 07/25 | 7/31/2025 | AP  028475 | @ | | | 75 7/7/2025 6/16/25 Janitorial Supplies            BCS Facilities Group | 325.59 | 0.00 | 1,648.32 |
| 610 | 07/25 | 7/31/2025 | AP  028475 | @ | | | 75 7/7/2025 6/25/25 Janitorial Supplies            BCS Facilities Group | 192.90 | 0.00 | 1,841.22 |
| 610 | 07/25 | 7/31/2025 | AP  028475 | @ | | | 75 7/7/2025 3/18/25 Janitorial Supplies            BCS Facilities Group | 661.63 | 0.00 | 2,502.85 |
| 610 | 07/25 | 7/31/2025 | AP  028475 | @ | | | 75 7/7/2025 3/28/25 Janitorial Supplies            BCS Facilities Group | 652.80 | 0.00 | 3,155.65 |
| 610 | 07/25 | 7/31/2025 | AP  028475 | @ | | | 75 7/7/2025 4/4/25 Janitorial Supplies            BCS Facilities Group | 289.35 | 0.00 | 3,445.00 |

Appx1448

\* Balance Forward Period

Date Filed: 11/24/2025    Page: 258    Document: 20    Case: 25-2598

| Database: | MSDE_CB | | | | | **General Ledger** | | | Page: | 9 |
|---|---|---|---|---|---|---|---|---|---|---|
| ENTITY: | 610 | | | | | Lincoln Property Company | | | Date: | 8/18/2025 |
| | | | | | | Jenkins Court Realty Co LP | | | Time: | 6:48 AM |

Cash

05/25 - 07/25
Report includes an open period.  Entries are not final.

| Account Entity | Period | Entry Date | Src Reference | Site Id | Job Code | Dept | Description | Debit | Credit | Balance |
|---|---|---|---|---|---|---|---|---|---|---|
| \*\*\* 51220-0000 - Janitorial - Repairs And Supplies  (Continued) | | | | | | | | | | |
| 610 | 07/25 | 7/31/2025 | AP 028475 | @ | | | 75 7/7/2025 4/18/2025 Janitorial Supplies          BCS Facilities Group | 604.36 | 0.00 | 4,049.36 |
| 610 | 07/25 | 7/31/2025 | AP 028475 | @ | | | 75 7/7/2025 4/22/25 Janitorial Supplies          BCS Facilities Group | 206.00 | 0.00 | 4,255.36 |
| 610 | 07/25 | 7/31/2025 | AP 028475 | @ | | | 93 7/21/2025 7/9/25 Janitorial Supplies          BCS Facilities Group | 679.66 | 0.00 | 4,935.02 |
| | | | | | | | \*\* Account Totals | 4,935.02 | 0.00 | **4,935.02** |
| **51235-0000** | | | **Electrical - Repairs** | | | | *Balance Forward* | | | *0.00* |
| 610 | 05/25 | 5/31/2025 | AP 027793 | @ | | | 30 5/19/2025 4/1/25 - 4/2/25 Electrical Repairs          RW Electrical, LLC | 2,440.00 | 0.00 | 2,440.00 |
| 610 | 05/25 | 5/31/2025 | AP 027793 | @ | | | 30 5/19/2025 4/8/25 Electrical Repairs          RW Electrical, LLC | 220.00 | 0.00 | 2,660.00 |
| 610 | 05/25 | 5/31/2025 | AP 027793 | @ | | | 30 5/19/2025 4/11/25 Electrical Repairs          RW Electrical, LLC | 430.00 | 0.00 | 3,090.00 |
| 610 | 05/25 | 5/31/2025 | AP 027793 | @ | | | 30 5/19/2025 4/16/25 Electrical Repairs          RW Electrical, LLC | 290.00 | 0.00 | 3,380.00 |
| 610 | 05/25 | 5/31/2025 | AP 027793 | @ | | | 30 5/19/2025 4/17/25 Electrical Repairs          RW Electrical, LLC | 360.00 | 0.00 | 3,740.00 |
| 610 | 05/25 | 5/31/2025 | AP 027793 | @ | | | 30 5/19/2025 4/17/25 Electrical Repairs          RW Electrical, LLC | 290.00 | 0.00 | 4,030.00 |
| 610 | 05/25 | 5/31/2025 | AP 027793 | @ | | | 30 5/19/2025 4/25/25 Electrical Repairs          RW Electrical, LLC | 290.00 | 0.00 | 4,320.00 |
| | | | | | | | \*\* Account Totals | 4,320.00 | 0.00 | **4,320.00** |
| **51240-0000** | | | **Electrical - Supplies** | | | | *Balance Forward* | | | *3,562.29* |
| 610 | 05/25 | 5/31/2025 | AP 027793 | @ | | | 14 5/13/2025 03/26/2025 electrical Supplies          National Equipment Solutions, LP | 482.37 | 0.00 | 4,044.66 |
| | | | | | | | \*\* Account Totals | 482.37 | 0.00 | **4,044.66** |
| **51245-0000** | | | **Hvac - Repairs** | | | | *Balance Forward* | | | *0.00* |
| 610 | 05/25 | 5/31/2025 | AP 027793 | @ | | | 3 5/13/2025 Temple Health HVAC Air Tech Services Inc. | 930.00 | 0.00 | 930.00 |

Appx1449

* Balance Forward Period

| Database: | MSDE_CB | | | | General Ledger | | Page: | 10 |
|---|---|---|---|---|---|---|---|---|
| ENTITY: | 610 | | | | Lincoln Property Company | | Date: | 8/18/2025 |
| | | | | | Jenkins Court Realty Co LP | | Time: | 6:48 AM |

Cash

05/25 - 07/25
Report includes an open period.  Entries are not final.

| Account Entity | Period | Entry Date | Src Reference | Site Id | Job Code | Dept | Description | Debit | Credit | Balance |
|---|---|---|---|---|---|---|---|---|---|---|

**51245-0000 - Hvac - Repairs  (Continued)**

| Account Entity | Period | Entry Date | Src Reference | Site Id | Description | Debit | Credit | Balance |
|---|---|---|---|---|---|---|---|---|
| 610 | 05/25 | 5/31/2025 | AP 027793 | @ | 3 5/13/2025 04/22/2025 HVAC Services         Air Tech Services Inc. | 1,240.00 | 0.00 | 2,170.00 |
| 610 | 05/25 | 5/31/2025 | AP 027793 | @ | 3 5/13/2025 04/16/25 Cooling Tower Repairs        Air Tech Services Inc. | 3,495.00 | 0.00 | 5,665.00 |
| 610 | 05/25 | 5/31/2025 | AP 027793 | @ | 3 5/13/2025 4/16/2025 HVAC Services         Air Tech Services Inc. | 290.00 | 0.00 | 5,955.00 |
| 610 | 05/25 | 5/31/2025 | AP 027793 | @ | 3 5/13/2025 Suite 640 HVAC Repairs 4/3/25        Air Tech Services Inc. | 2,235.00 | 0.00 | 8,190.00 |
| 610 | 05/25 | 5/31/2025 | AP 027793 | @ | 22 5/19/2025 04/25/25 HVAC Repairs - Thermostat        Air Tech Services Inc. | 810.00 | 0.00 | 9,000.00 |
| 610 | 05/25 | 5/31/2025 | AP 027793 | @ | 22 5/19/2025 04/23/2025 HVAC Repairs         Air Tech Services Inc. | 915.00 | 0.00 | 9,915.00 |
| 610 | 06/25 | 6/30/2025 | AP 028212 | @ | 54 6/23/2025 3/19/25 Thermostat Wires HVAC Repairs       Air Tech Services Inc. | 725.00 | 0.00 | 10,640.00 |
| 610 | 06/25 | 6/30/2025 | AP 028212 | @ | 54 6/23/2025 5/1/25 Condenser Wires HVAC Repairs        Air Tech Services Inc. | 3,597.00 | 0.00 | 14,237.00 |
| 610 | 06/25 | 6/30/2025 | AP 028212 | @ | 54 6/23/2025 5/9/25 IT Room HVAC Repairs         Air Tech Services Inc. | 1,450.00 | 0.00 | 15,687.00 |
| 610 | 06/25 | 6/30/2025 | AP 028212 | @ | 54 6/23/2025 5/9/25 Blower Motor Repairs         Air Tech Services Inc. | 2,340.00 | 0.00 | 18,027.00 |
| 610 | 06/25 | 6/30/2025 | AP 028212 | @ | 54 6/23/2025 5/15/25 Roof HVAC Assessment        Air Tech Services Inc. | 975.00 | 0.00 | 19,002.00 |
| 610 | 06/25 | 6/30/2025 | AP 028212 | @ | 54 6/23/2025 4/30/25 Cooling Tower Repairs        Air Tech Services Inc. | 14,472.00 | 0.00 | 33,474.00 |
| 610 | 06/25 | 6/30/2025 | AP 028212 | @ | 54 6/23/2025 3/24/25 Breaker Repairs         Air Tech Services Inc. | 1,478.00 | 0.00 | 34,952.00 |
| 610 | 06/25 | 6/30/2025 | AP 028212 | @ | 54 6/23/2025 6/2/25 Spare Unit Replacement        Air Tech Services Inc. | 4,170.00 | 0.00 | 39,122.00 |
| 610 | 06/25 | 6/30/2025 | AP 028212 | @ | 54 6/23/2025 6/3/25 HVAC Repairs Air Tech Services Inc. | 2,970.00 | 0.00 | 42,092.00 |
| 610 | 07/25 | 7/31/2025 | AP 028475 | @ | 68 7/7/2025 6/12/25 Suite 105 HVAC         Air Tech Services Inc. | 1,982.00 | 0.00 | 44,074.00 |
| 610 | 07/25 | 7/31/2025 | AP 028475 | @ | 68 7/7/2025 6/12/25 HVAC Maintenance        Air Tech Services Inc. | 780.00 | 0.00 | 44,854.00 |
| 610 | 07/25 | 7/31/2025 | AP 028475 | @ | 68 7/7/2025 6/16/25 HVAC Repairs Jersey Co        Air Tech Services Inc. | 1,908.00 | 0.00 | 46,762.00 |
| 610 | 07/25 | 7/31/2025 | AP 028475 | @ | 68 7/7/2025 6/12/25 HVAC Repair Jersey Co         Air Tech Services Inc. | 780.00 | 0.00 | 47,542.00 |

Appx1450

* Balance Forward Period

| Database: | MSDE_CB | | | | | | **General Ledger** | | | Page: | 11 |
|---|---|---|---|---|---|---|---|---|---|---|---|
| ENTITY: | 610 | | | | | | Lincoln Property Company | | | Date: | 8/18/2025 |
| | | | | | | | Jenkins Court Realty Co LP | | | Time: | 6:48 AM |

Cash

05/25 - 07/25

Report includes an open period.  Entries are not final.

| Account Entity | Period | Entry Date | Src Reference | Site Id | Job Code | Dept | Description | Debit | Credit | Balance |
|---|---|---|---|---|---|---|---|---|---|---|

**51245-0000 - Hvac - Repairs  (Continued)**

| Account Entity | Period | Entry Date | Src Reference | Site Id | Job Code | Dept | Description | Debit | Credit | Balance |
|---|---|---|---|---|---|---|---|---|---|---|
| 610 | 07/25 | 7/31/2025 | AP  028475 | @ | | | 92 7/21/2025 6/23/25 HVAC Repairs           Air Tech Services Inc. | 975.00 | 0.00 | 48,517.00 |
| 610 | 07/25 | 7/31/2025 | AP  028475 | @ | | | 92 7/21/2025 6/23/25 HVAC Repairs           Air Tech Services Inc. | 460.00 | 0.00 | 48,977.00 |
| 610 | 07/25 | 7/31/2025 | AP  028475 | @ | | | 92 7/21/2025 6/23/25 HVAC Repairs Units #4, 5, 2       Air Tech Services Inc. | 625.00 | 0.00 | 49,602.00 |
| 610 | 07/25 | 7/31/2025 | AP  028475 | @ | | | 92 7/21/2025 6/26/25 HVAC Repairs Ceiling Unit        Air Tech Services Inc. | 585.00 | 0.00 | 50,187.00 |
| 610 | 07/25 | 7/31/2025 | AP  028475 | @ | | | 92 7/21/2025 6/24/25 HVAC Repairs Corner Office        Air Tech Services Inc. | 390.00 | 0.00 | 50,577.00 |
| 610 | 07/25 | 7/31/2025 | AP  028475 | @ | | | 92 7/21/2025 6/24/25 HVAC Repairs           Air Tech Services Inc. | 585.00 | 0.00 | 51,162.00 |
| 610 | 07/25 | 7/31/2025 | AP  028475 | @ | | | 92 7/21/2025 5/5/2025 HVAC Repairs           Air Tech Services Inc. | 1,054.00 | 0.00 | 52,216.00 |
| | | | | | | | ** Account Totals | 52,216.00 | 0.00 | **52,216.00** |

| Account Entity | Period | Entry Date | Src Reference | Site Id | Job Code | Dept | Description | Debit | Credit | Balance |
|---|---|---|---|---|---|---|---|---|---|---|
| **51260-0000** | | | | | | | **Energy Management System - Rep** | *Balance Forward* | | *0.00* |
| 610 | 07/25 | 7/31/2025 | AP  028475 | @ | | | 76 7/7/2025 5/22/25 - 6/25/25 EMS Fee           Energy Management Systems | 125.00 | 0.00 | 125.00 |
| | | | | | | | ** Account Totals | 125.00 | 0.00 | **125.00** |

| Account Entity | Period | Entry Date | Src Reference | Site Id | Job Code | Dept | Description | Debit | Credit | Balance |
|---|---|---|---|---|---|---|---|---|---|---|
| **51275-0000** | | | | | | | **Window/Glass/Mirror - Repairs** | *Balance Forward* | | *0.00* |
| 610 | 06/25 | 6/30/2025 | AP  028212 | @ | | | 61 6/23/2025 5/30/25 Window Repairs           Paul Rabinowitz Glass Co., Inc | 2,200.00 | 0.00 | 2,200.00 |
| | | | | | | | ** Account Totals | 2,200.00 | 0.00 | **2,200.00** |

| Account Entity | Period | Entry Date | Src Reference | Site Id | Job Code | Dept | Description | Debit | Credit | Balance |
|---|---|---|---|---|---|---|---|---|---|---|
| **51285-0000** | | | | | | | **Key And Lock - Repairs** | *Balance Forward* | | *0.00* |
| 610 | 05/25 | 5/31/2025 | AP  027793 | @ | | | 24 5/19/2025 03/07/25 Re-Keying Brass Lock and Key Corp | 713.01 | 0.00 | 713.01 |
| 610 | 05/25 | 5/31/2025 | AP  027793 | @ | | | 24 5/19/2025 03/13/2025 Lock Repairs           Brass Lock and Key Corp | 337.66 | 0.00 | 1,050.67 |
| 610 | 06/25 | 6/30/2025 | AP  028212 | @ | | | 57 6/23/2025 3/20/2025 Re-Keying Brass Lock and Key Corp | 1,860.72 | 0.00 | 2,911.39 |

Appx1451

* Balance Forward Period

Date Filed: 11/24/2025     Page: 260     Document: 20     Case: 25-2598

| Database: | MSDE_CB | | | | **General Ledger** | | Page: | 12 |
|---|---|---|---|---|---|---|---|---|
| ENTITY: | 610 | | | | Lincoln Property Company | | Date: | 8/18/2025 |
| | | | | | Jenkins Court Realty Co LP | | Time: | 6:48 AM |

Cash

05/25 - 07/25

Report includes an open period.  Entries are not final.

| Account Entity | Period | Entry Date | Src Reference | Site Id | Job Code | Dept | Description | Debit | Credit | Balance |
|---|---|---|---|---|---|---|---|---|---|---|

51285-0000 - Key And Lock - Repairs  (Continued)

| | | | | | | | ** Account Totals | 2,911.39 | 0.00 | **2,911.39** |

**51310-0000**          **Plumbing - Repairs**                              *Balance Forward*                                                                          *0.00*

| 610 | 05/25 | 5/31/2025 | AP  027793 | @ | | | 13 5/13/2025 2/20/25 - 03/03/25 Plumbing          K2B Enterprises, LLC | 2,959.00 | 0.00 | 2,959.00 |
| 610 | 05/25 | 5/31/2025 | AP  027793 | @ | | | 13 5/13/2025 04/07/25 Plumbing Suite 680          K2B Enterprises, LLC | 1,083.50 | 0.00 | 4,042.50 |
| 610 | 05/25 | 5/31/2025 | AP  027793 | @ | | | 13 5/13/2025 04/14/25 Plumbing Repairs          K2B Enterprises, LLC | 599.50 | 0.00 | 4,642.00 |
| 610 | 05/25 | 5/31/2025 | AP  027793 | @ | | | 28 5/19/2025 4/24/25 Plumbing Repairs          K2B Enterprises, LLC | 455.00 | 0.00 | 5,097.00 |

| | | | | | | | ** Account Totals | 5,097.00 | 0.00 | **5,097.00** |

**51340-0000**          **Roof - Repairs and Supplies**                    *Balance Forward*                                                                          *0.00*

| 610 | 06/25 | 6/30/2025 | AP  028212 | @ | | | 49 6/3/2025 03/07/2025 Roof Repairs          Tri-County Roofing & Sheet Metal, Inc. | 1,260.00 | 0.00 | 1,260.00 |
| 610 | 07/25 | 7/31/2025 | AP  028475 | @ | | | 86 7/7/2025 6/3/25 Roof Maintenance          Tri-County Roofing & Sheet Metal, Inc. | 5,750.00 | 0.00 | 7,010.00 |

| | | | | | | | ** Account Totals | 7,010.00 | 0.00 | **7,010.00** |

**51380-0000**          **General Repairs And Supplies**                   *Balance Forward*                                                                          *0.00*

| 610 | 07/25 | 7/31/2025 | AP  028475 | @ | | | 98 7/21/2025 6/16/25-6/30/25 Computer Supplies          Lincoln Property Company Commercial, LLC | 1,564.50 | 0.00 | 1,564.50 |

| | | | | | | | ** Account Totals | 1,564.50 | 0.00 | **1,564.50** |

**51510-0000**          **Electricity**                                    *Balance Forward*                                                                          *8,850.86*

| 610 | 05/25 | 5/31/2025 | AP  027793 | @ | | | 15 5/13/2025 #0100 Electric 03/21-04/22/2025          Peco | 216.54 | 0.00 | 9,067.40 |
| 610 | 05/25 | 5/31/2025 | AP  027793 | @ | | | 17 5/13/2025 #2000 Electric 03/21-04/22/2025          Peco | 7,373.67 | 0.00 | 16,441.07 |

Appx1452

* Balance Forward Period

| Database: | MSDE_CB | | | | | | General Ledger | | | | Page: | 13 |
|---|---|---|---|---|---|---|---|---|---|---|---|---|
| ENTITY: | 610 | | | | | | Lincoln Property Company | | | | Date: | 8/18/2025 |
| | | | | | | | Jenkins Court Realty Co LP | | | | Time: | 6:48 AM |

Cash

05/25 - 07/25
Report includes an open period.  Entries are not final.

| Account Entity | Period | Entry Date | Src Reference | Site Id | Job Code | Dept | Description | Debit | Credit | Balance |
|---|---|---|---|---|---|---|---|---|---|---|
| 51510-0000 - Electricity  (Continued) | | | | | | | | | | |
| 610 | 05/25 | 5/31/2025 | AP 027793 | @ | | | 18 5/13/2025 #13000 Electric 3/21-4/22/25            Peco | 96.90 | 0.00 | 16,537.97 |
| 610 | 05/25 | 5/31/2025 | AP 027793 | @ | | | 19 5/13/2025 #97000 Electric 03/21-04/22/25           Peco | 177.59 | 0.00 | 16,715.56 |
| 610 | 05/25 | 5/31/2025 | AP 027793 | @ | | | 20 5/13/2025 #8000 Electric 03/21-04/22/25           Peco | 123.37 | 0.00 | 16,838.93 |
| 610 | 06/25 | 6/30/2025 | AP 028212 | @ | | | 47 6/3/2025 #8000 4/22 - 5/22 Electric            Peco | 96.54 | 0.00 | 16,935.47 |
| 610 | 06/25 | 6/30/2025 | AP 028212 | @ | | | 46 6/3/2025 #7000 4/22-5/22 Electric            Peco | 201.66 | 0.00 | 17,137.13 |
| 610 | 06/25 | 6/30/2025 | AP 028212 | @ | | | 42 6/3/2025 #0100 4/22 - 5/22 Electric            Peco | 291.59 | 0.00 | 17,428.72 |
| 610 | 06/25 | 6/30/2025 | AP 028212 | @ | | | 44 6/3/2025 #13000 4/22 - 5/22 Electric            Peco | 96.81 | 0.00 | 17,525.53 |
| 610 | 06/25 | 6/30/2025 | AP 028212 | @ | | | 45 6/3/2025 #2000 4/22 - 5/22 Electric            Peco | 7,061.44 | 0.00 | 24,586.97 |
| 610 | 07/25 | 7/31/2025 | AP 028475 | @ | | | 82 7/7/2025 5/22/25-6/23/25 Electric #7000           Peco | 231.42 | 0.00 | 24,818.39 |
| 610 | 07/25 | 7/31/2025 | AP 028475 | @ | | | 83 7/7/2025 5/22/25-6/23/25 Electric #8000           Peco | 96.46 | 0.00 | 24,914.85 |
| 610 | 07/25 | 7/31/2025 | AP 028475 | @ | | | 78 7/7/2025 5/22/25-6/23/25 Electric #0100           Peco | 350.88 | 0.00 | 25,265.73 |
| 610 | 07/25 | 7/31/2025 | AP 028475 | @ | | | 79 7/7/2025 5/22/25-6/23/25 Electric #13000          Peco | 96.76 | 0.00 | 25,362.49 |
| 610 | 07/25 | 7/31/2025 | AP 028475 | @ | | | 80 7/7/2025 5/22/25-6/23/25 Electric #2000           Peco | 7,676.61 | 0.00 | 33,039.10 |
| | | | | | | | ** Account Totals | 24,188.24 | 0.00 | 33,039.10 |
| 51515-0000 | | | Water | | | | Balance Forward | | | 2,998.60 |
| 610 | 05/25 | 5/31/2025 | AP 027793 | @ | | | 5 5/13/2025 03/14/25 - 04/11/25 Water #7390        Aqua Pennsylvania, Inc. | 2,668.69 | 0.00 | 5,667.29 |
| 610 | 05/25 | 5/31/2025 | AP 027793 | @ | | | 6 5/13/2025 03/14/25 - 04/11/25 Water #9893        Aqua Pennsylvania, Inc. | 259.45 | 0.00 | 5,926.74 |
| 610 | 05/25 | 5/31/2025 | AP 027793 | @ | | | 7 5/13/2025 03/14/25 - 04/11/25 Water #9895        Aqua Pennsylvania, Inc. | 259.45 | 0.00 | 6,186.19 |

Appx1453

* Balance Forward Period

| Database: | MSDE_CB | | | | | | **General Ledger** | | | Page: | 14 |
|---|---|---|---|---|---|---|---|---|---|---|---|
| ENTITY: | 610 | | | | | | Lincoln Property Company | | | Date: | 8/18/2025 |
| | | | | | | | Jenkins Court Realty Co LP | | | Time: | 6:48 AM |

Cash

05/25 - 07/25
Report includes an open period.  Entries are not final.

| Account Entity | Period | Entry Date | Src Reference | Site Id | Job Code | Dept | Description | Debit | Credit | Balance |
|---|---|---|---|---|---|---|---|---|---|---|
| 51515-0000 - Water  (Continued) | | | | | | | | | | |
| 610 | 05/25 | 5/31/2025 | AP  027793 | @ | | | 4 5/13/2025 03/14/25 - 04/11/25 Water #7244          Aqua Pennsylvania, Inc. | 469.83 | 0.00 | 6,656.02 |
| 610 | 06/25 | 6/30/2025 | AP  028212 | @ | | | 35 6/3/2025 #7244 04.11.2025 - 05.13.2025 Water          Aqua Pennsylvania, Inc. | 498.06 | 0.00 | 7,154.08 |
| 610 | 06/25 | 6/30/2025 | AP  028212 | @ | | | 38 6/3/2025 #9895 04.11.2025 - 05.13.2025 Water          Aqua Pennsylvania, Inc. | 260.28 | 0.00 | 7,414.36 |
| 610 | 06/25 | 6/30/2025 | AP  028212 | @ | | | 36 6/3/2025 #7390 04.11.2025 - 05.13.2025 Water          Aqua Pennsylvania, Inc. | 2,942.10 | 0.00 | 10,356.46 |
| 610 | 06/25 | 6/30/2025 | AP  028212 | @ | | | 37 6/3/2025 #9893 04.11.2025 - 05.13.2025 Water          Aqua Pennsylvania, Inc. | 260.28 | 0.00 | 10,616.74 |
| 610 | 07/25 | 7/31/2025 | AP  028475 | @ | | | 69 7/7/2025 5/13/25-6/12/25 Water #7244          Aqua Pennsylvania, Inc. | 523.31 | 0.00 | 11,140.05 |
| 610 | 07/25 | 7/31/2025 | AP  028475 | @ | | | 70 7/7/2025 5/13/25-6/12/25 Water #7390          Aqua Pennsylvania, Inc. | 3,029.55 | 0.00 | 14,169.60 |
| 610 | 07/25 | 7/31/2025 | AP  028475 | @ | | | 71 7/7/2025 5/13/25-6/12/25 Water #9893          Aqua Pennsylvania, Inc. | 518.90 | 0.00 | 14,688.50 |
| 610 | 07/25 | 7/31/2025 | AP  028475 | @ | | | 72 7/7/2025 5/13/25-6/12/25 Water #9895          Aqua Pennsylvania, Inc. | 260.28 | 0.00 | 14,948.78 |
| | | | | | | | **\*\* Account Totals** | 11,950.18 | 0.00 | **14,948.78** |
| \multicolumn{7}{l}{**51530-0000            Gas**} | | | | | *Balance Forward* | | | *0.00* |
| 610 | 05/25 | 5/31/2025 | AP  027793 | @ | | | 16 5/13/2025 #03000 Electric 03/21-04/22/2025          Peco | 444.62 | 0.00 | 444.62 |
| 610 | 05/25 | 5/31/2025 | AP  027793 | @ | | | 19 5/13/2025 #97000 Gas 03/21-04/22/25          Peco | 175.22 | 0.00 | 619.84 |
| 610 | 06/25 | 6/30/2025 | AP  028212 | @ | | | 46 6/3/2025 #7000 04/22-05/22 Gas          Peco | 38.64 | 0.00 | 658.48 |
| 610 | 06/25 | 6/30/2025 | AP  028212 | @ | | | 43 6/3/2025 #03000 4/22 - 5/22 Gas          Peco | 38.64 | 0.00 | 697.12 |
| 610 | 07/25 | 7/31/2025 | AP  028475 | @ | | | 81 7/7/2025 5/22/25-6/23/25 Gas #3000          Peco | 38.64 | 0.00 | 735.76 |
| 610 | 07/25 | 7/31/2025 | AP  028475 | @ | | | 82 7/7/2025 5/22/25-6/23/25 Gas #7000          Peco | 50.10 | 0.00 | 785.86 |

Appx1454

\* Balance Forward Period

Date Filed: 11/24/2025    Page: 263    Document: 20    Case: 25-2598

Date Filed: 11/24/2025    Page: 264    Document: 20    Case: 25-2598

| Database: | MSDE_CB | | | | | General Ledger | | Page: | 15 |
| ENTITY: | 610 | | | | | Lincoln Property Company | | Date: | 8/18/2025 |
| | | | | | | Jenkins Court Realty Co LP | | Time: | 6:48 AM |

Cash

05/25 - 07/25

Report includes an open period.  Entries are not final.

| Account Entity | Period | Entry Date | Src Reference | Site Id | Job Code | Dept | Description | Debit | Credit | Balance |
|---|---|---|---|---|---|---|---|---|---|---|
| 51530-0000 - Gas  (Continued) | | | | | | | | | | |
| | | | | | | | ** Account Totals | 785.86 | 0.00 | **785.86** |
| **51609-0000** | | | **Payroll, Engineer Salaries** | | | | *Balance Forward* | | | *0.00* |
| 610 | 05/25 | 5/31/2025 | AP  027793 | @ | | | 34 5/27/2025 4/1/2025 - 4/15/2025 Eng BU Related Expense   Lincoln Property Company Commercial, LLC | 482.68 | 0.00 | 482.68 |
| 610 | 05/25 | 5/31/2025 | AP  027793 | @ | | | 34 5/27/2025 4/1/2025 - 4/15/2025 Eng BU Gross Pay        Lincoln Property Company Commercial, LLC | 1,918.13 | 0.00 | 2,400.81 |
| 610 | 05/25 | 5/31/2025 | AP  027793 | @ | | | 34 5/27/2025 3/16/25 - 3/31/25 Eng Rcls Sal          Lincoln Property Company Commercial, LLC | 10,114.16 | 0.00 | 12,514.97 |
| 610 | 05/25 | 5/31/2025 | AP  027793 | @ | | | 34 5/27/2025 3/16/25 - 3/31/25 Eng Rcls Sal          Lincoln Property Company Commercial, LLC | 3,641.09 | 0.00 | 16,156.06 |
| 610 | 05/25 | 5/31/2025 | AP  027793 | @ | | | 34 5/27/2025 4/16/2025 - 4/30/2025 Eng BU Related Expense  Lincoln Property Company Commercial, LLC | 475.30 | 0.00 | 16,631.36 |
| 610 | 05/25 | 5/31/2025 | AP  027793 | @ | | | 34 5/27/2025 4/16/2025 - 4/30/2025 Eng BU Gross Pay        Lincoln Property Company Commercial, LLC | 1,997.06 | 0.00 | 18,628.42 |
| 610 | 06/25 | 6/30/2025 | AP  028212 | @ | | | 48 6/3/2025 5/1/2025 - 5/15/2025 Eng BU Related Expense   Lincoln Property Company Commercial, LLC | 490.60 | 0.00 | 19,119.02 |
| 610 | 06/25 | 6/30/2025 | AP  028212 | @ | | | 48 6/3/2025 5/1/2025 - 5/15/2025 Eng BU Gross Pay        Lincoln Property Company Commercial, LLC | 1,951.38 | 0.00 | 21,070.40 |
| 610 | 06/25 | 6/30/2025 | AP  028212 | @ | | | 52 6/6/2025 5/16/2025 - 5/31/2025 Eng BU Related Expense  Lincoln Property Company Commercial, LLC | 420.36 | 0.00 | 21,490.76 |
| 610 | 06/25 | 6/30/2025 | AP  028212 | @ | | | 52 6/6/2025 5/16/2025 - 5/31/2025 Eng BU Gross Pay        Lincoln Property Company Commercial, LLC | 1,766.21 | 0.00 | 23,256.97 |
| 610 | 07/25 | 7/31/2025 | AP  028475 | @ | | | 85 7/7/2025 6/1/25 - 6/20/25 Eng BU Gross Pay        Lincoln Property Company Commercial, LLC | 1,815.21 | 0.00 | 25,072.18 |
| 610 | 07/25 | 7/31/2025 | AP  028475 | @ | | | 85 7/7/2025 6/1/25 - 6/20/25 Eng. BU Related Expense     Lincoln Property Company Commercial, LLC | 458.19 | 0.00 | 25,530.37 |
| 610 | 07/25 | 7/31/2025 | AP  028475 | @ | | | 98 7/21/2025 6/16/25-6/30/25 Eng. BU Gross Pay          Lincoln Property Company Commercial, | 3,382.75 | 0.00 | 28,913.12 |

Appx1455

* Balance Forward Period

| Database: | MSDE_CB | | | | | General Ledger | | Page: | 16 |
|---|---|---|---|---|---|---|---|---|---|
| ENTITY: | 610 | | | | | Lincoln Property Company | | Date: | 8/18/2025 |
| | | | | | | Jenkins Court Realty Co LP | | Time: | 6:48 AM |

Cash

05/25 - 07/25
Report includes an open period.  Entries are not final.

| Account Entity | Period | Entry Date | Src Reference | Site Id | Job Code | Dept | Description | Debit | Credit | Balance |
|---|---|---|---|---|---|---|---|---|---|---|

**51609-0000 - Payroll, Engineer Salaries  (Continued)**

| | | | | | | | LLC | | | |
|---|---|---|---|---|---|---|---|---|---|---|
| 610 | 07/25 | 7/31/2025 | AP  028475 | @ | | | 98 7/21/2025 6/16/25-6/30/25 Eng. BU Related Expense      Lincoln Property Company Commercial, LLC | 805.09 | 0.00 | 29,718.21 |

| | | | | | | | ** Account Totals | 29,718.21 | 0.00 | **29,718.21** |
|---|---|---|---|---|---|---|---|---|---|---|

| **51610-0000** | | | **Management Salaries** | | | | *Balance Forward* | | | *0.00* |
|---|---|---|---|---|---|---|---|---|---|---|
| 610 | 05/25 | 5/31/2025 | AP  027793 | @ | | | 34 5/27/2025 4/16/2025 - 4/30/2025 PM BU Gross Pay      Lincoln Property Company Commercial, LLC | 4,090.91 | 0.00 | 4,090.91 |
| 610 | 05/25 | 5/31/2025 | AP  027793 | @ | | | 34 5/27/2025 4/16/2025 - 4/30/2025 PM BU Related Expense   Lincoln Property Company Commercial, LLC | 973.64 | 0.00 | 5,064.55 |
| 610 | 06/25 | 6/30/2025 | AP  028212 | @ | | | 48 6/3/2025 5/1/2025 - 5/15/2025 PM BU Gross Pay      Lincoln Property Company Commercial, LLC | 5,625.00 | 0.00 | 10,689.55 |
| 610 | 06/25 | 6/30/2025 | AP  028212 | @ | | | 48 6/3/2025 5/1/2025 - 5/15/2025 PM BU Related Expense   Lincoln Property Company Commercial, LLC | 1,338.75 | 0.00 | 12,028.30 |
| 610 | 06/25 | 6/30/2025 | AP  028212 | @ | | | 52 6/6/2025 5/16/2025 - 5/31/2025 PM BU Gross Pay      Lincoln Property Company Commercial, LLC | 5,625.00 | 0.00 | 17,653.30 |
| 610 | 06/25 | 6/30/2025 | AP  028212 | @ | | | 52 6/6/2025 5/16/2025 - 5/31/2025 PM BU Related Expense   Lincoln Property Company Commercial, LLC | 1,338.75 | 0.00 | 18,992.05 |
| 610 | 07/25 | 7/31/2025 | AP  028475 | @ | | | 85 7/7/2025 6/1/25 - 6/20/25 PM BU Related Expense      Lincoln Property Company Commercial, LLC | 1,338.75 | 0.00 | 20,330.80 |
| 610 | 07/25 | 7/31/2025 | AP  028475 | @ | | | 85 7/7/2025 6/1/25 - 6/20/25 PM BU Gross Pay      Lincoln Property Company Commercial, LLC | 5,625.00 | 0.00 | 25,955.80 |
| 610 | 07/25 | 7/31/2025 | AP  028475 | @ | | | 98 7/21/2025 6/16/25-6/30/25 PM BU Related Expense      Lincoln Property Company Commercial, LLC | 1,338.75 | 0.00 | 27,294.55 |
| 610 | 07/25 | 7/31/2025 | AP  028475 | @ | | | 98 7/21/2025 6/16/25-6/30/25 PM BU Gross Pay      Lincoln Property Company Commercial, LLC | 5,625.00 | 0.00 | 32,919.55 |

Appx1456

* Balance Forward Period

Date Filed: 11/24/2025    Page: 266    Document: 20    Case: 25-2598

| Database: | MSDE_CB | | | | General Ledger | | Page: | 17 |
| ENTITY: | 610 | | | | Lincoln Property Company | | Date: | 8/18/2025 |
| | | | | | Jenkins Court Realty Co LP | | Time: | 6:48 AM |

Cash

05/25 - 07/25
Report includes an open period. Entries are not final.

| Account Entity | Period | Entry Date | Src Reference | Site Id | Job Code | Dept | Description | Debit | Credit | Balance |
|---|---|---|---|---|---|---|---|---|---|---|
| 51610-0000 - Management Salaries (Continued) | | | | | | | | | | |
| | | | | | | | ** Account Totals | 32,919.55 | 0.00 | **32,919.55** |
| **51625-0000** | | | **Dues And Subscriptions** | | | | *Balance Forward* | | | *0.00* |
| 610 | 05/25 | 5/31/2025 | AP 027793 | @ | | | 32 5/19/2025 5/11-6/30/25 Quarterly Subscription    WORKSPACE, LLC | 875.56 | 0.00 | 875.56 |
| 610 | 07/25 | 7/31/2025 | AP 028475 | @ | | | 99 7/21/2025 7/1/25 - 9/30/25 Workspace Subscription    WORKSPACE, LLC | 1,565.90 | 0.00 | 2,441.46 |
| 610 | 07/25 | 7/31/2025 | CP 725Rc610 | @ | | | Rcl 5/11-6/30/25 WS Sub | 0.00 | 875.56 | 1,565.90 |
| 610 | 07/25 | 7/31/2025 | CP 725Rc610 | @ | | | Rcl 7/1-9/30/25 WS Sub | 0.00 | 1,565.90 | 0.00 |
| | | | | | | | ** Account Totals | 2,441.46 | 2,441.46 | **0.00** |
| **51633-0000** | | | **Bank Fees** | | | | *Balance Forward* | | | *0.00* |
| 610 | 07/25 | 7/31/2025 | CP 725Rc610 | @ | | | Rcl Bank Fee | 435.00 | 0.00 | 435.00 |
| 610 | 07/25 | 7/31/2025 | CP 725Rc610 | @ | | | Rcl Bank Fee | 115.00 | 0.00 | 550.00 |
| | | | | | | | ** Account Totals | 550.00 | 0.00 | **550.00** |
| **51715-0000** | | | **Management Fees** | | | | *Balance Forward* | | | *0.00* |
| 610 | 05/25 | 5/31/2025 | AP 027793 | @ | | | 29 5/19/2025 04/2025 Mgmt. Fee Lincoln Property Company Commercial, LLC | 5,000.00 | 0.00 | 5,000.00 |
| 610 | 05/25 | 5/31/2025 | AP 027798 | @ | | | M03312025 5/29/2025 03/2025 Mgmt. Fee Lincoln Property Company Commercial, LLC | 5,000.00 | 0.00 | 10,000.00 |
| 610 | 06/25 | 6/30/2025 | AP 028212 | @ | | | 67 6/23/2025 05/2025 Mgmt. Fee Lincoln Property Company Commercial, LLC | 5,000.00 | 0.00 | 15,000.00 |
| | | | | | | | ** Account Totals | 15,000.00 | 0.00 | **15,000.00** |
| **52023-0000** | | | **Insurance - Commercial** | | | | *Balance Forward* | | | *18,890.00* |
| 610 | 05/25 | 5/31/2025 | AP 027793 | @ | | | M05012025 5/8/2025 Insurance Installment 05/2025    The Cincinnati Insurance Company | 9,440.00 | 0.00 | 28,330.00 |
| 610 | 05/25 | 5/31/2025 | LD 000021810 | @ | | | 5/5 Maury Donnelly & Parr - Insurance | 7,786.05 | 0.00 | 36,116.05 |
| 610 | 05/25 | 5/31/2025 | LD 000021811 | @ | | | Recl 6/1/25 Cincinnati Insruance ->52025 | 9,440.00 | 0.00 | 45,556.05 |

Appx1457

* Balance Forward Period

Case: 25-2598    Document: 20    Page: 267    Date Filed: 11/24/2025

| Database: | MSDE_CB | | | | General Ledger | | Page: | 18 |
|---|---|---|---|---|---|---|---|---|
| ENTITY: | 610 | | | | Lincoln Property Company | | Date: | 8/18/2025 |
| | | | | | Jenkins Court Realty Co LP | | Time: | 6:48 AM |

Cash

05/25 - 07/25

Report includes an open period. Entries are not final.

| Account Entity | Period | Entry Date | Src Reference | Site Id | Job Code | Dept | Description | Debit | Credit | Balance |
|---|---|---|---|---|---|---|---|---|---|---|
| 52023-0000 - Insurance - Commercial  (Continued) | | | | | | | | | | |
| 610 | 06/25 | 6/30/2025 | AP 028212 | @ | | | 58 6/23/2025 7/1/25 Ins Premium Installment        The Cincinnati Insurance Company | 9,440.00 | 0.00 | 54,996.05 |
| 610 | 06/25 | 6/30/2025 | CP 625OYB | @ | | | Insurance Refund | 0.00 | 62.79 | 54,933.26 |
| 610 | 06/25 | 6/30/2025 | CP 6Rcl610 | @ | | | Rcl Ins Bond | 150.00 | 0.00 | 55,083.26 |
| 610 | 07/25 | 7/31/2025 | AP 028475 | @ | | | 94 7/21/2025 8/1/25 Ins Premium Installment        The Cincinnati Insurance Company | 9,440.00 | 0.00 | 64,523.26 |
| | | | | | | | ** Account Totals | 45,696.05 | 62.79 | **64,523.26** |
| **52025-0000** | | | **Property Insurance** | | | | *Balance Forward* | | | *0.00* |
| 610 | 05/25 | 5/31/2025 | AP 027793 | @ | | | 25 5/19/2025 06/01/25 Insurance Premium Installment      The Cincinnati Insurance Company | 9,440.00 | 0.00 | 9,440.00 |
| 610 | 05/25 | 5/31/2025 | LD 000021811 | @ | | | Recl 6/1/25 Cincinnati Insruance->52023 | 0.00 | 9,440.00 | 0.00 |
| | | | | | | | ** Account Totals | 9,440.00 | 9,440.00 | **0.00** |
| **52035-0000** | | | **Postage and Courier Fees** | | | | *Balance Forward* | | | *0.00* |
| 610 | 05/25 | 5/31/2025 | AP 027793 | @ | | | 34 5/27/2025 4/1/2025 - 4/15/2025 Postage Fees        Lincoln Property Company Commercial, LLC | 17.33 | 0.00 | 17.33 |
| 610 | 06/25 | 6/30/2025 | AP 028212 | @ | | | 48 6/3/2025 5/1/2025 - 5/15/2025 Postage & Delivery Fees  Lincoln Property Company Commercial, LLC | 54.98 | 0.00 | 72.31 |
| 610 | 06/25 | 6/30/2025 | AP 028212 | @ | | | 52 6/6/2025 5/16/2025 - 5/31/2025 Postage Fees        Lincoln Property Company Commercial, LLC | 5.74 | 0.00 | 78.05 |
| 610 | 06/25 | 6/30/2025 | AP 028212 | @ | | | 60 6/23/2025 6/6/25 Overnight Delivery                Federal Express | 52.24 | 0.00 | 130.29 |
| 610 | 07/25 | 7/31/2025 | AP 028475 | @ | | | 85 7/7/2025 6/1/25 - 6/20/25 Postage Fees        Lincoln Property Company Commercial, LLC | 8.70 | 0.00 | 138.99 |
| 610 | 07/25 | 7/31/2025 | AP 028475 | @ | | | 88 7/7/2025 5/24/2025 Shipping Fees                UPS | 52.90 | 0.00 | 191.89 |
| 610 | 07/25 | 7/31/2025 | AP 028475 | @ | | | 88 7/7/2025 06/14/25 Shipping Fees                UPS | 165.38 | 0.00 | 357.27 |

Appx1458

* Balance Forward Period

Date Filed: 11/24/2025    Page: 268    Document: 20    Case: 25-2598

| Database: | MSDE_CB | | | | | **General Ledger** | | Page: | 19 |
| ENTITY: | 610 | | | | | Lincoln Property Company | | Date: | 8/18/2025 |
| | | | | | | Jenkins Court Realty Co LP | | Time: | 6:48 AM |

Cash                                                    05/25 - 07/25
Report includes an open period.  Entries are not final.

| Account Entity | Period | Entry Date | Src Reference | Site Id | Job Code | Dept | Description | Debit | Credit | Balance |
|---|---|---|---|---|---|---|---|---|---|---|

**52035-0000 - Postage and Courier Fees  (Continued)**

| 610 | 07/25 | 7/31/2025 | AP  028475 | @ | | | 98 7/21/2025 6/16/25-6/30/25 | 8.76 | 0.00 | 366.03 |
| | | | | | | | Postage Fees        Lincoln Property Company Commercial, LLC | | | |
| | | | | | | | ** Account Totals | 366.03 | 0.00 | **366.03** |

| **52050-0000** | | | **Technology - Computer Hardware** | | | | *Balance Forward* | | | *0.00* |
| 610 | 06/25 | 6/30/2025 | AP  028212 | @ | | | 48 6/3/2025 5/1/2025 - 5/15/2025 | 1,917.30 | 0.00 | 1,917.30 |
| | | | | | | | New Laptop        Lincoln Property Company Commercial, LLC | | | |
| | | | | | | | ** Account Totals | 1,917.30 | 0.00 | **1,917.30** |

| **52075-0000** | | | **Technology - Wan/Internet/Cable** | | | | *Balance Forward* | | | *0.00* |
| 610 | 06/25 | 6/30/2025 | AP  028212 | @ | | | 51 6/3/2025 #4781 05/30 - 06/29 | 103.63 | 0.00 | 103.63 |
| | | | | | | | Internet            COMCAST | | | |
| 610 | 07/25 | 7/31/2025 | AP  028475 | @ | | | 89 7/7/2025 #4781 06/30 - 07/29 | 103.63 | 0.00 | 207.26 |
| | | | | | | | Internet            COMCAST | | | |
| 610 | 07/25 | 7/31/2025 | CP  725Rc610 | @ | | | Rcl Comcast Internet | 436.52 | 0.00 | 643.78 |
| | | | | | | | ** Account Totals | 643.78 | 0.00 | **643.78** |

| **52091-0000** | | | **Receiver Fee** | | | | *Balance Forward* | | | *0.00* |
| 610 | 06/25 | 6/30/2025 | CP  6Rcl610 | @ | | | Rcl 3/25 Receiver Fee | 9,800.00 | 0.00 | 9,800.00 |
| 610 | 06/25 | 6/30/2025 | CP  6Rcl610 | @ | | | Rcl 2/25 Receiver Fee | 3,500.00 | 0.00 | 13,300.00 |
| 610 | 06/25 | 6/30/2025 | CP  6Rcl610 | @ | | | Rcl 4/25 Receiver Fee | 5,950.00 | 0.00 | 19,250.00 |
| 610 | 07/25 | 7/31/2025 | AP  028475 | @ | | | 87 7/7/2025 05/2025 Receiver Fees        Trigild IVL, LLC | 7,000.00 | 0.00 | 26,250.00 |
| | | | | | | | ** Account Totals | 26,250.00 | 0.00 | **26,250.00** |

| **52093-0000** | | | **Receiver Other Expenses** | | | | *Balance Forward* | | | *0.00* |
| 610 | 06/25 | 6/30/2025 | CP  6Rcl610 | @ | | | Rcl 3/25 Accouning Fee | 500.00 | 0.00 | 500.00 |
| 610 | 06/25 | 6/30/2025 | CP  6Rcl610 | @ | | | Rcl 2/25 Accounting Fee | 500.00 | 0.00 | 1,000.00 |

Appx1459

* Balance Forward Period

Date Filed: 11/24/2025    Page: 269    Document: 20    Case: 25-2598

| Database: | MSDE_CB | General Ledger | Page: | 20 |
|---|---|---|---|---|
| ENTITY: | 610 | Lincoln Property Company | Date: | 8/18/2025 |
| | | Jenkins Court Realty Co LP | Time: | 6:48 AM |

Cash                                05/25 - 07/25

Report includes an open period.  Entries are not final.

| Account Entity | Period | Entry Date | Src Reference | Site Id | Job Code | Dept | Description | Debit | Credit | Balance |
|---|---|---|---|---|---|---|---|---|---|---|
| 52093-0000 - Receiver Other Expenses  (Continued) | | | | | | | | | | |
| 610 | 06/25 | 6/30/2025 | CP 6Rcl610 | @ | | | Rcl 4/25 Accounting Fee | 500.00 | 0.00 | 1,500.00 |
| 610 | 07/25 | 7/31/2025 | AP 028475 | @ | | | 87 7/7/2025 05/2025 Accounting Fees        Trigild IVL, LLC | 500.00 | 0.00 | 2,000.00 |
| | | | | | | | ** Account Totals | 2,000.00 | 0.00 | **2,000.00** |
| 53010-0000 | | | Real Estate Taxes | | | | *Balance Forward* | | | *0.00* |
| 610 | 06/25 | 6/30/2025 | AP 028212 | @ | | | 39 6/3/2025 2025 Real Estate Taxes        Elizabeth Wolff, Tax Collector | 116,055.81 | 0.00 | 116,055.81 |
| 610 | 06/25 | 6/30/2025 | AP 028212 | @ | | | 40 6/3/2025 610 OYR 2025 Sewer Tax        Elizabeth Wolff, Tax Collector | 1,013.77 | 0.00 | 117,069.58 |
| 610 | 06/25 | 6/30/2025 | AP 028212 | @ | | | 41 6/3/2025 680 OYR 2025 Sewer Tax        Elizabeth Wolff, Tax Collector | 9,272.45 | 0.00 | 126,342.03 |
| | | | | | | | ** Account Totals | 126,342.03 | 0.00 | **126,342.03** |
| 54050-0000 | | | Travel | | | | *Balance Forward* | | | *0.00* |
| 610 | 05/25 | 5/31/2025 | AP 027793 | @ | | | 10 5/13/2025 03/2025 Chris Reed Mileage Reimbursement     Christopher Reed | 508.20 | 0.00 | 508.20 |
| 610 | 05/25 | 5/31/2025 | AP 027793 | @ | | | 21 5/13/2025 03/02-03/05 J Lakner Travel        Trigild IVL, LLC | 371.08 | 0.00 | 879.28 |
| | | | | | | | ** Account Totals | 879.28 | 0.00 | **879.28** |
| 54070-0000 | | | Professional Fees | | | | *Balance Forward* | | | *0.00* |
| 610 | 05/25 | 5/31/2025 | AP 027793 | @ | | | 8 5/13/2025 03/25/25 - 03/31/25 Professional Fees     BALLARD SPAHR LLP | 5,346.00 | 0.00 | 5,346.00 |
| 610 | 07/25 | 7/31/2025 | AP 028475 | @ | | | 73 7/7/2025 5/2/25 - 2/30/25 Prof. Fees        BALLARD SPAHR LLP | 13,746.75 | 0.00 | 19,092.75 |
| | | | | | | | ** Account Totals | 19,092.75 | 0.00 | **19,092.75** |
| 54090-0000 | | | Bank Service Charges | | | | *Balance Forward* | | | *15.00* |

Appx1460

* Balance Forward Period

Case: 25-2598    Document: 20    Page: 270    Date Filed: 11/24/2025

| Database: | MSDE_CB | | | | | | **General Ledger** | | | | Page: | 21 |
|---|---|---|---|---|---|---|---|---|---|---|---|---|
| ENTITY: | 610 | | | | | | Lincoln Property Company | | | | Date: | 8/18/2025 |
| | | | | | | | Jenkins Court Realty Co LP | | | | Time: | 6:48 AM |
| Cash | | | | | | | 05/25 - 07/25 | | | | | |
| | | | | | | | Report includes an open period. Entries are not final. | | | | | |

| Account Entity | Period | Entry Date | Src Reference | Site Id | Job Code | Dept | Description | Debit | Credit | Balance |
|---|---|---|---|---|---|---|---|---|---|---|
|  | 54090-0000 - Bank Service Charges  (Continued) |
| 610 | 05/25 | 5/31/2025 | AP 027793 | @ | | | 34 5/27/2025 3/16/25 - 3/31/25 Bank Service Charge      Lincoln Property Company Commercial, LLC | 115.00 | 0.00 | 130.00 |
| 610 | 05/25 | 5/31/2025 | AP 027793 | @ | | | 34 5/27/2025 4/1/2025 - 4/15/2025 Bank Service Charges     Lincoln Property Company Commercial, LLC | 115.00 | 0.00 | 245.00 |
| 610 | 05/25 | 5/31/2025 | LD 000021810 | @ | | | 5/7 Bank Fee | 15.00 | 0.00 | 260.00 |
| 610 | 05/25 | 5/31/2025 | LD 000021810 | @ | | | 5/16  Bank Fee | 15.00 | 0.00 | 275.00 |
| 610 | 05/25 | 5/31/2025 | LD 000021810 | @ | | | 5/5 Bank Fee | 15.00 | 0.00 | 290.00 |
| 610 | 06/25 | 6/30/2025 | AP 028212 | @ | | | 48 6/3/2025 5/1/2025 - 5/15/2025 Bank Service Charges    Lincoln Property Company Commercial, LLC | 115.00 | 0.00 | 405.00 |
| 610 | 06/25 | 6/30/2025 | CP 625OYB | @ | | | 6/2/25 Bank Fee | 15.00 | 0.00 | 420.00 |
| 610 | 06/25 | 6/30/2025 | CP 625OYB | @ | | | 6/17/25 Bank Fee | 15.00 | 0.00 | 435.00 |
| 610 | 07/25 | 7/31/2025 | AP 028475 | @ | | | 85 7/7/2025 6/1/25 - 6/20/25 Bank Charges          Lincoln Property Company Commercial, LLC | 115.00 | 0.00 | 550.00 |
| 610 | 07/25 | 7/31/2025 | CP 725OYB | @ | | | 7/1/25 Bank Fee | 15.00 | 0.00 | 565.00 |
| 610 | 07/25 | 7/31/2025 | CP 725OYB | @ | | | 7/17/25 Bank Fee | 15.00 | 0.00 | 580.00 |
| 610 | 07/25 | 7/31/2025 | CP 725OYB | @ | | | 7/22/25 Bank Fee | 15.00 | 0.00 | 595.00 |
| 610 | 07/25 | 7/31/2025 | CP 725Rc610 | @ | | | Rcl Bank Fee | 0.00 | 435.00 | 160.00 |
| 610 | 07/25 | 7/31/2025 | CP 725Rc610 | @ | | | Rcl Bank Fee | 0.00 | 115.00 | 45.00 |
| | | | | | | | ** Account Totals | 580.00 | 550.00 | **45.00** |
| **63090-0000** | | | Technology - Wan/Internet/Cable | | | | *Balance Forward* | | | *320.89* |
| 610 | 05/25 | 5/31/2025 | AP 027793 | @ | | | 11 5/13/2025 #4781 Internet 04/30-05/29/2025              Comcast | 115.63 | 0.00 | 436.52 |
| 610 | 07/25 | 7/31/2025 | CP 725Rc610 | @ | | | Rcl Comcast Internet | 0.00 | 436.52 | 0.00 |
| | | | | | | | ** Account Totals | 115.63 | 436.52 | **0.00** |
| **63284-0000** | | | Receiver fees & Other-NR | | | | *Balance Forward* | | | *0.00* |
| 610 | 05/25 | 5/31/2025 | AP 027793 | @ | | | 9 5/13/2025 02/21/25 - 02/21/26 Bond Premium         Bond Services of California, LLC | 150.00 | 0.00 | 150.00 |

Appx1461

* Balance Forward Period

| Database: | MSDE_CB | | | | | | | **General Ledger** | | | Page: | 22 |
| ENTITY: | 610 | | | | | | | Lincoln Property Company | | | Date: | 8/18/2025 |
| | | | | | | | | Jenkins Court Realty Co LP | | | Time: | 6:48 AM |

Cash

05/25 - 07/25

Report includes an open period.  Entries are not final.

| Account Entity | Period | Entry Date | Src | Reference | Site Id | Job Code | Dept | Description | Debit | Credit | Balance |
|---|---|---|---|---|---|---|---|---|---|---|---|
| **63284-0000 - Receiver fees & Other-NR  (Continued)** | | | | | | | | | | | |
| 610 | 05/25 | 5/31/2025 | AP | 027793 | @ | | | 21 5/13/2025 03/2025 Receiver Fees           Trigild IVL, LLC | 9,800.00 | 0.00 | 9,950.00 |
| 610 | 05/25 | 5/31/2025 | AP | 027793 | @ | | | 21 5/13/2025 03/2025 Accounting Fees           Trigild IVL, LLC | 500.00 | 0.00 | 10,450.00 |
| 610 | 05/25 | 5/31/2025 | AP | 027793 | @ | | | 31 5/19/2025 02/2025 Receiver Fees           Trigild IVL, LLC | 3,500.00 | 0.00 | 13,950.00 |
| 610 | 05/25 | 5/31/2025 | AP | 027793 | @ | | | 31 5/19/2025 02/2025 Accounting Fees           Trigild IVL, LLC | 500.00 | 0.00 | 14,450.00 |
| 610 | 06/25 | 6/30/2025 | AP | 028212 | @ | | | 50 6/3/2025 04/2025 Receiver Fees           Trigild IVL, LLC | 5,950.00 | 0.00 | 20,400.00 |
| 610 | 06/25 | 6/30/2025 | AP | 028212 | @ | | | 50 6/3/2025 04/2025 Accounting Fees           Trigild IVL, LLC | 500.00 | 0.00 | 20,900.00 |
| 610 | 06/25 | 6/30/2025 | CP | 6Rcl610 | @ | | | Rcl Ins Bond | 0.00 | 150.00 | 20,750.00 |
| 610 | 06/25 | 6/30/2025 | CP | 6Rcl610 | @ | | | Rcl 3/25 Receiver Fee | 0.00 | 9,800.00 | 10,950.00 |
| 610 | 06/25 | 6/30/2025 | CP | 6Rcl610 | @ | | | Rcl 3/25 Accouning Fee | 0.00 | 500.00 | 10,450.00 |
| 610 | 06/25 | 6/30/2025 | CP | 6Rcl610 | @ | | | Rcl 2/25 Receiver Fee | 0.00 | 3,500.00 | 6,950.00 |
| 610 | 06/25 | 6/30/2025 | CP | 6Rcl610 | @ | | | Rcl 2/25 Accounting Fee | 0.00 | 500.00 | 6,450.00 |
| 610 | 06/25 | 6/30/2025 | CP | 6Rcl610 | @ | | | Rcl 4/25 Receiver Fee | 0.00 | 5,950.00 | 500.00 |
| 610 | 06/25 | 6/30/2025 | CP | 6Rcl610 | @ | | | Rcl 4/25 Accounting Fee | 0.00 | 500.00 | 0.00 |
| | | | | | | | | **** Account Totals** | 20,900.00 | 20,900.00 | **0.00** |
| | | | | | | | | **** Grand Totals** | **5,343,508.57** | **5,343,508.57** | |

Appx1462

* Balance Forward Period

| Database: | MSDE_CB | Rent Roll | Page: | 1 |
| Bldg Status: | All | 610 Old York Road J | Date: | 8/18/2025 |
| | | 7/31/2025 | Time: | 8:19 AM |

| Bldg Id | Suit Id | Occupant Name | Rent Start | Expiration | GLA Sqft | Monthly Base Rent | Annual Rate PSF | Monthly Cost Recovery | Expense Stop | Monthly Other Income | Cat | Date | Monthly Amount | PSF |
|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|
| **Vacant Suites** | | | | | | | | | | | | | | |
| 610 | 105 | Vacant | | | 500 | | | | | | | | | |
| 610 | 107 | Vacant | | | 2,500 | | | | | | | | | |
| 610 | 200 | Vacant | | | 4,000 | | | | | | | | | |
| 610 | 205 | Vacant | | | 1,500 | | | | | | | | | |
| 610 | 668 | Vacant | | | 2,000 | | | | | | | | | |
| **Occupied Suites** | | | | | | | | | | | | | | |
| 610 | 100 | Jersey College | 2/1/2024 | 1/31/2042 | 20,000 | 33,483.34 | 20.09 | 14,233.00 | | | BRT | 2/1/2026 | 34,483.34 | 20.69 |
| | | | | | | | | | | | BRT | 2/1/2027 | 35,516.66 | 21.31 |
| | | | | | | | | | | | BRT | 2/1/2028 | 36,583.33 | 21.95 |
| | | | | | | | | | | | BRT | 2/1/2029 | 37,683.34 | 22.61 |
| | | | | | | | | | | | BRT | 2/1/2030 | 38,800.00 | 23.28 |
| | | | | | | | | | | | BRT | 2/1/2031 | 39,966.67 | 23.98 |
| | | | | | | | | | | | BRT | 2/1/2032 | 41,166.67 | 24.70 |
| | | | | | | | | | | | BRT | 2/1/2033 | 42,400.00 | 25.44 |
| | | | | | | | | | | | BRT | 2/1/2034 | 43,683.33 | 26.21 |
| | | | | | | | | | | | BRT | 2/1/2035 | 44,983.33 | 26.99 |
| | | | | | | | | | | | BRT | 2/1/2036 | 46,333.33 | 27.80 |
| | | | | | | | | | | | BRT | 2/1/2037 | 47,733.33 | 28.64 |
| | | | | | | | | | | | BRT | 2/1/2038 | 49,166.67 | 29.50 |
| | | | | | | | | | | | BRT | 2/1/2039 | 50,633.33 | 30.38 |
| | | | | | | | | | | | BRT | 2/1/2040 | 52,149.99 | 31.29 |
| | | | | | | | | | | | BRT | 2/1/2041 | 53,716.66 | 32.23 |
| 610 | 114 | Sezai Saran | 3/16/2020 | 3/1/2027 | 600 | 500.00 | 10.00 | | | | | | | |
| 610 | 116 | Outback Steakhouse | 10/1/1992 | 4/30/2030 | 7,347 | 12,540.46 | 20.48 | 7,913.00 | | | | | | |
| 610 | 201 | Bethany Christian Services of Greater | 3/1/2018 | 2/29/2028 | 10,083 | 17,561.23 | 20.90 | 12,459.40 | | | BRT | 3/1/2026 | 17,981.35 | 21.40 |
| | | | | | | | | | | | BRT | 3/1/2027 | 18,401.48 | 21.90 |
| 610 | 210 | Cypher Group Holdings | 8/1/2024 | 7/31/2027 | 1,109 | 2,125.58 | 23.00 | 2.00 | | | BRT | 8/1/2027 | 2,338.14 | 25.30 |
| 610 | 250 | Temple University Health System | 8/1/2021 | 1/1/2031 | 15,652 | 22,825.83 | 17.50 | 5,140.19 | | | BRT | 8/1/2025 | 22,825.83 | 17.50 |
| | | | | | | | | | | | BRT | 8/1/2026 | 23,282.35 | 17.85 |
| | | | | | | | | | | | BRT | 8/1/2027 | 23,748.00 | 18.21 |
| | | | | | | | | | | | BRT | 8/1/2028 | 24,222.96 | 18.57 |

| Database: | MSDE_CB | Rent Roll | Page: | 2 |
| Bldg Status: | All | 610 Old York Road J | Date: | 8/18/2025 |
| | | 7/31/2025 | Time: | 8:19 AM |

| Bldg Id | Suit Id | Occupant Name | Rent Start | Expiration | GLA Sqft | Monthly Base Rent | Annual Rate PSF | Monthly Cost Recovery | Expense Stop | Monthly Other Income | Cat | Date | Monthly Amount | PSF |
|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|
| | | | | | | | | | | | BRT | 8/1/2029 | 24,707.42 | 18.94 |
| | | | | | | | | | | | BRT | 8/1/2030 | 25,201.56 | 19.32 |
| 610 | 300 | Jersey College | 2/1/2024 | 1/31/2042 | 19,623 | 32,852.17 | 20.09 | 13,964.00 | | | BRT | 2/1/2026 | 33,833.32 | 20.69 |
| | | | | | | | | | | | BRT | 2/1/2027 | 34,847.18 | 21.31 |
| | | | | | | | | | | | BRT | 2/1/2028 | 35,893.74 | 21.95 |
| | | | | | | | | | | | BRT | 2/1/2029 | 36,973.00 | 22.61 |
| | | | | | | | | | | | BRT | 2/1/2030 | 38,068.62 | 23.28 |
| | | | | | | | | | | | BRT | 2/1/2031 | 39,213.29 | 23.98 |
| | | | | | | | | | | | BRT | 2/1/2032 | 40,390.67 | 24.70 |
| | | | | | | | | | | | BRT | 2/1/2033 | 41,600.76 | 25.44 |
| | | | | | | | | | | | BRT | 2/1/2034 | 42,859.90 | 26.21 |
| | | | | | | | | | | | BRT | 2/1/2035 | 44,135.40 | 26.99 |
| | | | | | | | | | | | BRT | 2/1/2036 | 45,459.95 | 27.80 |
| | | | | | | | | | | | BRT | 2/1/2037 | 46,833.56 | 28.64 |
| | | | | | | | | | | | BRT | 2/1/2038 | 48,239.87 | 29.50 |
| | | | | | | | | | | | BRT | 2/1/2039 | 49,678.90 | 30.38 |
| | | | | | | | | | | | BRT | 2/1/2040 | 51,166.97 | 31.29 |
| | | | | | | | | | | | BRT | 2/1/2041 | 52,704.10 | 32.23 |
| 610 | 340 | Goldstein Law Partners, LLC | 12/15/2018 | 1/31/2029 | 4,000 | 10,000.00 | 30.00 | 1,530.82 | | | | | | |
| 610 | 375 | SBG Management Services, Inc. | 11/1/2017 | 1/30/2028 | 8,000 | 10,000.00 | 15.00 | 107.00 | | | | | | |
| 610 | 400 | Regus Corporation | 10/1/2015 | 9/30/2026 | 14,133 | 30,621.50 | 26.00 | 3,553.61 | | | BRT | 10/1/2025 | 31,210.38 | 26.50 |
| 610 | 640 | Helping Hands Family | 7/1/2022 | 9/30/2032 | 4,069 | 8,581.16 | 25.31 | 7,652.19 | | | BRT | 7/1/2026 | 8,795.69 | 25.94 |
| | | | | | | | | | | | BRT | 7/1/2027 | 9,015.58 | 26.59 |
| | | | | | | | | | | | BRT | 7/1/2028 | 9,240.97 | 27.25 |
| | | | | | | | | | | | BRT | 7/1/2029 | 9,471.99 | 27.93 |
| | | | | | | | | | | | BRT | 7/1/2030 | 9,708.79 | 28.63 |
| | | | | | | | | | | | BRT | 7/1/2031 | 9,951.51 | 29.35 |
| | | | | | | | | | | | BRT | 7/1/2032 | 10,200.30 | 30.08 |
| 610 | 650 | Kristen Givens and Dante Givens | 3/1/2025 | 3/31/2035 | 6,410 | 11,000.00 | 20.59 | 1,555.00 | | -11,000.00 | ABA | 9/1/2025 | -5,500.00 | -10.30 |
| | | | | | | | | | | | BRT | 9/1/2025 | 11,000.00 | 20.59 |
| | | | | | | | | | | | BRT | 3/1/2026 | 11,330.00 | 21.21 |
| | | | | | | | | | | | BRT | 3/1/2027 | 11,669.90 | 21.85 |
| | | | | | | | | | | | BRT | 3/1/2028 | 12,020.00 | 22.50 |
| | | | | | | | | | | | BRT | 3/1/2029 | 12,380.60 | 23.18 |
| | | | | | | | | | | | BRT | 3/1/2030 | 12,752.02 | 23.87 |
| | | | | | | | | | | | BRT | 3/1/2031 | 13,134.58 | 24.59 |
| | | | | | | | | | | | BRT | 3/1/2032 | 13,528.61 | 25.33 |
| | | | | | | | | | | | BRT | 3/1/2033 | 13,934.47 | 26.09 |
| | | | | | | | | | | | BRT | 3/1/2034 | 14,352.51 | 26.87 |

Case: 25-2598    Document: 20    Page: 274    Date Filed: 11/24/2025

| | | | | | | | | | | | | | | |
|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|
| Database: | MSDE_CB | | | | | Rent Roll | | | | | | | Page: | 3 |
| Bldg Status: | All | | | | | 610 Old York Road J | | | | | | | Date: | 8/18/2025 |
| | | | | | | 7/31/2025 | | | | | | | Time: | 8:19 AM |

| Bldg Id | Suit Id | Occupant Name | Rent Start | Expiration | GLA Sqft | Monthly Base Rent | Annual Rate PSF | Monthly Cost Recovery | Expense Stop | Monthly Other Income | Cat | Date | Monthly Amount | PSF |
|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|
| | | | | | | | | | | | BRT | 3/1/2035 | 14,783.08 | 27.68 |
| 610 | 670 | Marc Kress, M.D. | 10/1/1993 | 9/30/2023 | 6,000 | 8,341.70 | 16.68 | 2,839.85 | | | | | | |
| 610 | 680 | Temple University Health System, Inc. | 2/1/2022 | 10/1/2032 | 18,337 | 29,033.58 | 19.00 | 3,523.45 | | | | | | |
| 610 | G100 | Jenkins Storage, LLC | 3/1/2019 | 2/28/2029 | 40,000 | 40,000.00 | 12.00 | 1,530.82 | | | | | | |
| 610 | PARKING | Trumark Financial Credit Union | 4/1/2022 | 3/31/2030 | 0 | | | | | 1,500.00 | | | | |

**Totals:**

| | | | | | | | | | |
|---|---|---|---|---|---|---|---|---|---|
| Occupied Sqft: | 94.35% | 15 Units | 175,363 | 269,466.55 | | 76,004.33 | | -9,500.00 | |
| Leased/Unoccupied Sqft: | | 0 Units | 0 | | | | | | |
| Vacant Sqft: | 5.65% | 5 Units | 10,500 | | | | | | |
| Total Sqft: | | 20 Units | 185,863 | 269,466.55 | | | | | |

**Total 610 Old York Road J:**

| | | | | | | | | | |
|---|---|---|---|---|---|---|---|---|---|
| Occupied Sqft: | 94.35% | 15 Units | 175,363 | 269,466.55 | | 76,004.33 | | -9,500.00 | |
| Leased/Unoccupied Sqft: | | 0 Units | 0 | | | | | | |
| Vacant Sqft: | 5.65% | 5 Units | 10,500 | | | | | | |
| Total Sqft: | | 20 Units | 185,863 | 269,466.55 | | | | | |

**Grand Total:**

| | | | | | | | | | |
|---|---|---|---|---|---|---|---|---|---|
| Occupied Sqft: | 94.35% | 15 Units | 175,363 | 269,466.55 | | 76,004.33 | | -9,500.00 | |
| Leased/Unoccupied Sqft: | | 0 Units | 0 | | | | | | |
| Vacant Sqft: | 5.65% | 5 Units | 10,500 | | | | | | |
| Total Sqft: | | 20 Units | 185,863 | 269,466.55 | | | | | |

**Bank Reconciliation**
**Old York - Operating Account**
**Bank of America**
**May 31, 2025**

Prepared By: _Lensa Daniel_ LD          Date: _6/11/2025_

Reviewed By: CP _Christian Parnell_          Date: _6/11/2025_

**Bank of America # 6484**                    **G/L Account#  10810-0000**

**BALANCE PER BANK STATEMENT:**                    25,671.08

**Less:** Outstanding Checks (see below)                    (14,671.08)

**Add:** Deposit in Transit

**BALANCE PER GENERAL LEDGER:**                    $    11,000.00

| Outstanding Checks | | | |
|---|---|---|---|
| Check # | Date | Vendor Name | Amount |
| 21 | 5/13/2025 | Trigild IVL, LLC | 10,671.08 |
| 31 | 5/19/2025 | Trigild IVL, LLC | 4,000.00 |
| | | **Total O/S Checks** | **14,671.08** |

Appx1466



P.O. Box 15284
Wilmington, DE 19850

**Customer service information**

📱 Customer service: 1.888.400.9009

✉ bankofamerica.com

✉ Bank of America, N.A.
P.O. Box 25118
Tampa, FL 33622-5118

LINCOLN PROPERTY COMPANY COMMERCIAL LLC
AAF/JENKINS COURT REALTY CO. LP
8111 DOUGLAS AVE APT 600
DALLAS, TX  75225-6599

🔔 | Please see the **Important Messages - Please Read** section of your statement for important details that could impact you.

# Your Analyzed Checking

for May 1, 2025 to May 31, 2025                    Account number: 3830 1142 6484

**LINCOLN PROPERTY COMPANY COMMERCIAL LLC    AAF/JENKINS COURT REALTY CO. LP**

## Account summary

| | | |
|---|---|---|
| Beginning balance on May 1, 2025 | $45,066.36 | # of deposits/credits: 4 |
| Deposits and other credits | 181,231.73 | # of withdrawals/debits: 32 |
| Withdrawals and other debits | -26,604.66 | # of days in cycle: 31 |
| Checks | -174,022.35 | Average ledger balance: $89,626.67 |
| Service fees | -0.00 | |
| **Ending balance on May 31, 2025** | **$25,671.08** | |

Appx1467

LINCOLN PROPERTY COMPANY COMMERCIAL LLC  |  Account # 3830 1142 6484  |  May 1, 2025 to May 31, 2025

# IMPORTANT INFORMATION:
## BANK DEPOSIT ACCOUNTS

**How to Contact Us** - You may call us at the telephone number listed on the front of this statement.

**Updating your contact information** - We encourage you to keep your contact information up-to-date. This includes address, email and phone number. If your information has changed, the easiest way to update it is by visiting the Help & Support tab of Online Banking.

**Deposit agreement** - When you opened your account, you received a deposit agreement and fee schedule and agreed that your account would be governed by the terms of these documents, as we may amend them from time to time. These documents are part of the contract for your deposit account and govern all transactions relating to your account, including all deposits and withdrawals. Copies of both the deposit agreement and fee schedule which contain the current version of the terms and conditions of your account relationship may be obtained at our financial centers.

**Electronic transfers: In case of errors or questions about your electronic transfers** - If you think your statement or receipt is wrong or you need more information about an electronic transfer (e.g., ATM transactions, direct deposits or withdrawals, point-of-sale transactions) on the statement or receipt, telephone or write us at the address and number listed on the front of this statement as soon as you can. We must hear from you no later than 60 days after we sent you the FIRST statement on which the error or problem appeared.

- Tell us your name and account number.
- Describe the error or transfer you are unsure about, and explain as clearly as you can why you believe there is an error or why you need more information.
- Tell us the dollar amount of the suspected error.

For consumer accounts used primarily for personal, family or household purposes, we will investigate your complaint and will correct any error promptly. If we take more than 10 business days (10 calendar days if you are a Massachusetts customer) (20 business days if you are a new customer, for electronic transfers occurring during the first 30 days after the first deposit is made to your account) to do this, we will provisionally credit your account for the amount you think is in error, so that you will have use of the money during the time it will take to complete our investigation.

For other accounts, we investigate, and if we find we have made an error, we credit your account at the conclusion of our investigation.

**Reporting other problems** - You must examine your statement carefully and promptly. You are in the best position to discover errors and unauthorized transactions on your account. If you fail to notify us in writing of suspected problems or an unauthorized transaction within the time period specified in the deposit agreement (which periods are no more than 60 days after we make the statement available to you and in some cases are 30 days or less), we are not liable to you and you agree to not make a claim against us, for the problems or unauthorized transactions.

**Direct deposits** - If you have arranged to have direct deposits made to your account at least once every 60 days from the same person or company, you may call us to find out if the deposit was made as scheduled. You may also review your activity online or visit a financial center for information.

© 2025 Bank of America Corporation

**Bank of America, N.A. Member FDIC and**  🏠  **Equal Housing Lender**

Appx1468



**Your checking account**

**LINCOLN PROPERTY COMPANY COMMERCIAL LLC**  |  Account # 3830 1142 6484  |  May 1, 2025 to May 31, 2025

## Deposits and other credits

| Date | Transaction description | Customer reference | Bank reference | Amount |
|---|---|---|---|---|
| 05/07/25 | WIRE TYPE:WIRE IN DATE: 250507 TIME:1519 ET TRN:2025050700496120 SEQ:1119020550414247/024975 ORIG:JENKINS COURT REALTY CO L ID:254236980 SND BK:BENCHMARK BANK ID:111902055 PMT DET:5/7 FUN DING | | 903705070496120 | 20,480.05 |
| 05/08/25 | WORKSPACE VIRTUA DES:ACCTVERIFY ID:ST-B3E0S3E4J6F2  INDN:LINCOLN PROPERTY COMPA  CO ID:4270465600 CCD | | 902527014684931 | 0.14 |
| 05/08/25 | WORKSPACE VIRTUA DES:ACCTVERIFY ID:ST-Y0B4N5M0U1Y0  INDN:LINCOLN PROPERTY COMPA  CO ID:1800948598 CCD | | 906627021641057 | 0.10 |
| 05/16/25 | WIRE TYPE:WIRE IN DATE: 250516 TIME:1511 ET TRN:2025051600501925 SEQ:1119020550415256/028873 ORIG:JENKINS COURT REALTY CO L ID:254236980 SND BK:BENCHMARK BANK ID:111902055 PMT DET:5/16 FU NDING | | 903705160501925 | 160,751.44 |

**Total deposits and other credits**                                                                                                    **$181,231.73**

## Withdrawals and other debits

| Date | Transaction description | Customer reference | Bank reference | Amount |
|---|---|---|---|---|
| 05/08/25 | WORKSPACE VIRTUA DES:ACCTVERIFY ID:ST-D5A7Q6Q4A8U8  INDN:LINCOLN PROPERTY COMPA  CO ID:4270465600 CCD | | 902527016622088 | -0.24 |
| 05/09/25 | THE CINCINNATI I DES:BILLPAY    ID:THE CINCINNATI  INDN:JENKINS COURT REALTY C  CO ID:0000000160 WEB | | 906629005438920 | -9,440.00 |
| 05/15/25 | PECO ENERGY COMP DES:BILLPAY    ID:PECO ENERGY COM  INDN:JENKINS COURT REALTY C CO ID:0000000160 WEB | | 906635006305104 | -7,373.67 |

*continued on the next page*

Appx1469

LINCOLN PROPERTY COMPANY COMMERCIAL LLC   |   Account # 3830 1142 6484   |   May 1, 2025 to May 31, 2025

## Withdrawals and other debits - continued

| Date | Transaction description | Customer reference | Bank reference | Amount |
|---|---|---|---|---|
| 05/15/25 | PECO ENERGY COMP DES:BILLPAY    ID:PECO ENERGY COM  INDN:JENKINS COURT REALTY C CO ID:0000000160 WEB | | 906635006305103 | -444.62 |
| 05/15/25 | PECO ENERGY COMP DES:BILLPAY    ID:PECO ENERGY COM  INDN:JENKINS COURT REALTY C CO ID:0000000160 WEB | | 906635006305095 | -352.81 |
| 05/15/25 | PECO ENERGY COMP DES:BILLPAY    ID:PECO ENERGY COM  INDN:JENKINS COURT REALTY C CO ID:0000000160 WEB | | 906635006305094 | -123.37 |
| 05/15/25 | PECO ENERGY COMP DES:BILLPAY    ID:PECO ENERGY COM  INDN:JENKINS COURT REALTY C CO ID:0000000160 WEB | | 906635006305100 | -96.90 |
| 05/16/25 | AQUA        DES:AQUA SERVI ID:002326652027739  INDN:JENKINS COURT REALTY C  CO ID:1023940101 WEB | | 906635020477169 | -2,668.69 |
| 05/16/25 | AQUA        DES:AQUA SERVI ID:002326652027724  INDN:JENKINS COURT REALTY C  CO ID:1023940101 WEB | | 906635020477170 | -469.83 |
| 05/16/25 | AQUA        DES:AQUA SERVI ID:002326652027989  INDN:JENKINS COURT REALTY C  CO ID:1023940101 WEB | | 906635020477168 | -259.45 |
| 05/16/25 | AQUA        DES:AQUA SERVI ID:002326652027989  INDN:JENKINS COURT REALTY C  CO ID:1023940101 WEB | | 906635020477167 | -259.45 |
| 05/16/25 | COMCAST        DES:CABLE     ID:5168853 INDN:JENKINS COURT *REALTY   CO ID:0000213249 WEB | | 906635008096700 | -115.63 |
| 05/29/25 | WIRE TYPE:BOOK OUT DATE:250529 TIME:1611 ET TRN:2025052900571447 RELATED REF:T0P5Y1HR6UCUA6P1 BNF:LPC COMMERCIAL SERVICES LL ID:004130250292 PMT DET:3/25 LPC Mgmt. Fee | | 903705290571447 | -5,000.00 |

**Total withdrawals and other debits**                                                                **-$26,604.66**

## Checks

| Date | Check # | Bank reference | Amount | Date | Check # | Bank reference | Amount |
|---|---|---|---|---|---|---|---|
| 05/22 | 3 | 813004692527693 | -8,190.00 | 05/30 | 22* | 813004892824246 | -1,725.00 |
| 05/27 | 8* | 813008592807160 | -5,346.00 | 05/30 | 23 | 813009192152123 | -20,497.75 |
| 05/20 | 9 | 813008092019942 | -150.00 | 05/28 | 24 | 813008892005765 | -1,050.67 |
| 05/19 | 10 | 813009692073519 | -508.20 | 05/28 | 25 | 813008792881594 | -9,440.00 |
| 05/21 | 12* | 813008092407278 | -2,735.80 | 05/23 | 26 | 813008392376023 | -83,900.00 |
| 05/22 | 13 | 813004692475996 | -4,642.00 | 05/27 | 28* | 813004792311187 | -455.00 |
| 05/22 | 14 | 813008292452274 | -482.37 | 05/20 | 29 | 813008452206368 | -5,000.00 |
| 05/27 | 15 | 813008492707141 | -216.54 | 05/23 | 30 | 813008392523050 | -4,320.00 |

*continued on the next page*

Appx1470

 **BANK OF AMERICA**

**Your checking account**

**LINCOLN PROPERTY COMPANY COMMERCIAL LLC | Account # 3830 1142 6484 | May 1, 2025 to May 31, 2025**

## Checks - continued

| Date | Check # | Bank reference | Amount | Date | Check # | Bank reference | Amount |
|------|---------|----------------|--------|------|---------|----------------|--------|
| 05/28 | 32* | 813007392178360 | -875.56 | 05/28 | 4000027* | 813008792290702 | -547.16 |
| 05/27 | 34* | 813008152303977 | -23,940.30 | | | | |

| | |
|---|---|
| **Total checks** | **-$174,022.35** |
| **Total # of checks** | **19** |

\* *There is a gap in sequential check numbers*

## Daily ledger balances

| Date | Balance ($) | Date | Balance($) | Date | Balance ($) |
|------|-------------|------|------------|------|-------------|
| 05/01 | 45,066.36 | 05/19 | 204,185.23 | 05/27 | 64,807.22 |
| 05/07 | 65,546.41 | 05/20 | 199,035.23 | 05/28 | 52,893.83 |
| 05/09 | 56,106.41 | 05/21 | 196,299.43 | 05/29 | 47,893.83 |
| 05/15 | 47,715.04 | 05/22 | 182,985.06 | 05/30 | 25,671.08 |
| 05/16 | 204,693.43 | 05/23 | 94,765.06 | | |

## Important Messages - Please Read

We want to make sure you stay up-to-date on changes, reminders, and other important details that could impact you.

**CLIENT ADVISORY:**

To help you to safeguard against the potential misuse of your account, your deposit account agreement sets forth a number of ways for you to protect against such misuse. In addition, Bank of America continues to recommend your use of certain products and services that are designed to detect and/or deter check fraud, including Positive Pay, Teller Positive Pay, and Payee Positive Pay, which it previously made, and continues to make, available to you. Your failure to use such products and services could substantially increase the likelihood of fraud on your accounts. You have agreed that your failure to implement any of these products or services, or your failure to follow precautions reasonable for your particular circumstances, would preclude you from asserting any claims against Bank of America, for paying any unauthorized, altered, counterfeit or other fraudulent item(s) that such products, service or precaution was designed to detect or deter, and Bank of America will not be required to re-credit your account or otherwise have any liability for paying such item(s). This statement applies to all of your accounts opened with Bank of America, now or in the future. Continued use of your account(s) indicates your continued agreement to be bound by the terms and conditions contained in your deposit account agreement, including this statement. Please consult your deposit account agreement for more information on the risk of loss due to check fraud. Should you wish to implement any of the products and services that the Bank has offered to you that you previously chose not to implement, please reach out to your Relationship Manager.

For more information about Positive Pay, please access the following URL www.bofa.com/positivepay.

| Database: | MSDE_CB | General Ledger | Page: | 1 |
| ENTITY: | 610 | Lincoln Property Company | Date: | 6/11/2025 |
| | | Jenkins Court Realty Co LP | Time: | 2:10 PM |

Cash

05/25 - 05/25

Report includes an open period.  Entries are not final.

| Account Entity | Period | Entry Date | Src | Reference | Site Id | Job Code | Dept | Description | Debit | Credit | Balance |
|---|---|---|---|---|---|---|---|---|---|---|---|
| **10810-0000** | | | | | | | | *Cash - Operating* | | | |
| | | | | | | | | *Balance Forward* | | | *45,066.36* |
| 610 | 05/25 | 5/31/2025 | AP | 027793 | @ | | | A/P Cash Disbursed for checks  3-34 | 0.00 | 210,297.85 | -165,231.49 |
| 610 | 05/25 | 5/31/2025 | AP | 027798 | @ | | | A/P Cash Disbursed for checks  0-0 | 0.00 | 5,000.00 | -170,231.49 |
| 610 | 05/25 | 5/31/2025 | CM | 021021 | @ | | | Cash Recpt PPD  Prepaid Rental Income | 52,825.93 | 0.00 | -117,405.56 |
| 610 | 05/25 | 5/31/2025 | CM | 021114 | @ | | | Cash Recpt BRT  Base Rent | 400.00 | 0.00 | -117,005.56 |
| 610 | 05/25 | 5/31/2025 | LD | 000021810 | @ | | | 5/7 OPEX Funding - From LB 6980 | 20,480.05 | 0.00 | -96,525.51 |
| 610 | 05/25 | 5/31/2025 | LD | 000021810 | @ | | | 5/16 OPEX Funding - From LB 6980 | 160,751.44 | 0.00 | 64,225.93 |
| 610 | 05/25 | 5/31/2025 | LD | 000021810 | @ | | | Recl 5/25 Base Rent | 0.00 | 400.00 | 63,825.93 |
| 610 | 05/25 | 5/31/2025 | LD | 000021810 | @ | | | Recl 5/25 Prepaid Rent | 0.00 | 52,825.93 | 11,000.00 |
| | | | | | | | | **** Account Totals** | 234,457.42 | 268,523.78 | **11,000.00** |
| | | | | | | | **** Grand Totals** | | 234,457.42 | 268,523.78 | |

Appx1473

**Bank Reconciliation**
**Old York - Operating Account**
**Bank of America**
**June 30, 2025**

| | | | |
|---|---|---|---|
| Prepared By: | *CP Christian Parnell* | Date: | *7/6/2025* |
| Reviewed By: | *Feben Ambaye FA* | Date: | *7/6/2025* |

**Bank of America # 6484**                                    **G/L Account#  10810-0000**

| | |
|---|---|
| **BALANCE PER BANK STATEMENT:** | 76,006.20 |
| **Less:** Outstanding Checks (see below) | (65,006.20) |
| **Add:** Deposit in Transit | |
| **BALANCE PER GENERAL LEDGER:** | $   11,000.00 |

| Outstanding Checks | | | |
|---|---|---|---|
| **Check #** | **Date** | **Vendor Name** | **Amount** |
| 54 | 6/23/2025 | Air Tech Services Inc. | 32,177.00 |
| 56 | 6/23/2025 | BCS Facilities Group | 19,155.61 |
| 57 | 6/23/2025 | Brass Lock and Key Co| | 1,860.72 |
| 58 | 6/23/2025 | The Cincinnati Insuran | 9,440.00 |
| 59 | 6/23/2025 | Health Mats Co | 547.16 |
| 60 | 6/23/2025 | Federal Express | 52.24 |
| 66 | 6/23/2025 | Republic Services | 1,773.47 |
| | | **Total O/S Checks** | **65,006.20** |

Case 2:25-cv-00044-GAM   Document 51   Filed 08/21/25   Page 59 of 130


**BANK OF AMERICA**

P.O. Box 15284
Wilmington, DE 19850

**Customer service information**

📱 Customer service: 1.888.400.9009

✉ bankofamerica.com

✉ Bank of America, N.A.
P.O. Box 25118
Tampa, FL 33622-5118

LINCOLN PROPERTY COMPANY COMMERCIAL LLC
AAF/JENKINS COURT REALTY CO. LP
8111 DOUGLAS AVE APT 600
DALLAS, TX  75225-6599

# Your Analyzed Checking

for June 1, 2025 to June 30, 2025 Account number: 3830 1142 6484

**LINCOLN PROPERTY COMPANY COMMERCIAL LLC     AAF/JENKINS COURT REALTY CO. LP**

## Account summary

| | | |
|---|---|---|
| Beginning balance on June 1, 2025 | $25,671.08 | # of deposits/credits: 2 |
| Deposits and other credits | 246,310.28 | # of withdrawals/debits: 27 |
| Withdrawals and other debits | -7,513.31 | # of days in cycle: 30 |
| Checks | -188,461.85 | Average ledger balance: $156,700.13 |
| Service fees | -0.00 | |
| **Ending balance on June 30, 2025** | **$76,006.20** | |

Appx1475

LINCOLN PROPERTY COMPANY COMMERCIAL LLC  |  Account # 3830 1142 6484  |  June 1, 2025 to June 30, 2025

## IMPORTANT INFORMATION:
## BANK DEPOSIT ACCOUNTS

How to Contact Us - You may call us at the telephone number listed on the front of this statement.

Updating your contact information - We encourage you to keep your contact information up-to-date. This includes address, email and phone number. If your information has changed, the easiest way to update it is by visiting the Help & Support tab of Online Banking.

Deposit agreement - When you opened your account, you received a deposit agreement and fee schedule and agreed that your account would be governed by the terms of these documents, as we may amend them from time to time. These documents are part of the contract for your deposit account and govern all transactions relating to your account, including all deposits and withdrawals. Copies of both the deposit agreement and fee schedule which contain the current version of the terms and conditions of your account relationship may be obtained at our financial centers.

Electronic transfers: In case of errors or questions about your electronic transfers - If you think your statement or receipt is wrong or you need more information about an electronic transfer (e.g., ATM transactions, direct deposits or withdrawals, point-of-sale transactions) on the statement or receipt, telephone or write us at the address and number listed on the front of this statement as soon as you can. We must hear from you no later than 60 days after we sent you the FIRST statement on which the error or problem appeared.

- Tell us your name and account number.
- Describe the error or transfer you are unsure about, and explain as clearly as you can why you believe there is an error or why you need more information.
- Tell us the dollar amount of the suspected error.

For consumer accounts used primarily for personal, family or household purposes, we will investigate your complaint and will correct any error promptly. If we take more than 10 business days (10 calendar days if you are a Massachusetts customer) (20 business days if you are a new customer, for electronic transfers occurring during the first 30 days after the first deposit is made to your account) to do this, we will provisionally credit your account for the amount you think is in error, so that you will have use of the money during the time it will take to complete our investigation.

For other accounts, we investigate, and if we find we have made an error, we credit your account at the conclusion of our investigation.

Reporting other problems - You must examine your statement carefully and promptly. You are in the best position to discover errors and unauthorized transactions on your account. If you fail to notify us in writing of suspected problems or an unauthorized transaction within the time period specified in the deposit agreement (which periods are no more than 60 days after we make the statement available to you and in some cases are 30 days or less), we are not liable to you and you agree to not make a claim against us, for the problems or unauthorized transactions.

Direct deposits - If you have arranged to have direct deposits made to your account at least once every 60 days from the same person or company, you may call us to find out if the deposit was made as scheduled. You may also review your activity online or visit a financial center for information.

© 2025 Bank of America Corporation

**Bank of America, N.A. Member FDIC and** **Equal Housing Lender**

Case 2:25-cv-00044-GAM   Document 51   Filed 08/21/25   Page 61 of 130



**Your checking account**

LINCOLN PROPERTY COMPANY COMMERCIAL LLC   |   Account # 3830 1142 6484   |   June 1, 2025 to June 30, 2025

## Deposits and other credits

| Date | Transaction description | Customer reference | Bank reference | Amount |
|---|---|---|---|---|
| 06/02/25 | WIRE TYPE:WIRE IN DATE: 250602 TIME:1635 ET TRN:2025060200651688 SEQ:1119020550416703/039772 ORIG:JENKINS COURT REALTY CO L ID:254236980 SND BK:BENCHMARK BANK ID:111902055 PMT DET:6/2 FUN DING | | 903706020651688 | 169,694.71 |
| 06/17/25 | WIRE TYPE:WIRE IN DATE: 250617 TIME:1655 ET TRN:2025061700528589 SEQ:1119020550418510/033196 ORIG:JENKINS COURT REALTY CO L ID:254236980 SND BK:BENCHMARK BANK ID:111902055 PMT DET:6/17 FU NDING | | 903706170528589 | 76,615.57 |
| **Total deposits and other credits** | | | | **$246,310.28** |

## Withdrawals and other debits

| Date | Transaction description | Customer reference | Bank reference | Amount |
|---|---|---|---|---|
| 06/20/25 | REPUBLICSERVICES DES:RSIBILLPAY ID:303200049131  INDN:JENKINS COURT REALTY C  CO ID:7860843596 WEB | | 902369009576506 | -2,147.54 |
| 06/20/25 | REPUBLICSERVICES DES:RSIBILLPAY ID:303200049131  INDN:JENKINS COURT REALTY C  CO ID:7860843596 WEB | | 902369009576521 | -1,802.01 |
| 06/20/25 | REPUBLICSERVICES DES:RSIBILLPAY ID:303200049131  INDN:JENKINS COURT REALTY C  CO ID:7860843596 WEB | | 902369009576507 | -1,752.77 |
| 06/20/25 | REPUBLICSERVICES DES:RSIBILLPAY ID:303200049131  INDN:JENKINS COURT REALTY C  CO ID:7860843596 WEB | | 902369009576504 | -689.90 |
| 06/25/25 | WORKSPACE VIRTUA DES:N00000001 ID:ST-B8O8E7C9Y4O9  INDN:WORKSPACE VIRTUAL PAYM  CO ID:1800948598 WEB | | 906675023895733 | -1,121.09 |
| **Total withdrawals and other debits** | | | | **-$7,513.31** |

Appx1477

**LINCOLN PROPERTY COMPANY COMMERCIAL LLC  |  Account # 3830 1142 6484  |  June 1, 2025 to June 30, 2025**

## Checks

| Date | Check # | Bank reference | Amount | Date | Check # | Bank reference | Amount |
|------|---------|----------------|--------|------|---------|----------------|--------|
| 06/04 | 21 | 813009692541152 | -10,671.08 | 06/16 | 44 | 813009092029163 | -96.81 |
| 06/02 | 31* | 813009392459718 | -4,000.00 | 06/16 | 45 | 813009092029164 | -7,061.44 |
| 06/17 | 35* | 813009292446779 | -498.06 | 06/16 | 46 | 813009092029159 | -240.30 |
| 06/17 | 36 | 813009292200627 | -2,942.10 | 06/16 | 47 | 813009092029161 | -96.54 |
| 06/17 | 37 | 813009292200625 | -260.28 | 06/05 | 48 | 813008352431850 | -11,493.01 |
| 06/17 | 38 | 813009292446776 | -260.28 | 06/12 | 49 | 813008792776005 | -1,260.00 |
| 06/25 | 39 | 813008292826914 | -116,055.81 | 06/16 | 50 | 813009192486277 | -6,450.00 |
| 06/25 | 40 | 813008292826915 | -1,013.77 | 06/13 | 51 | 813006392109460 | -103.63 |
| 06/25 | 41 | 813008292826916 | -9,272.45 | 06/10 | 52 | 813008452334608 | -9,156.06 |
| 06/16 | 42 | 813009092029162 | -291.59 | 06/30 | 61* | 813008892858912 | -2,200.00 |
| 06/16 | 43 | 813009092029160 | -38.64 | 06/24 | 67* | 813008352151795 | -5,000.00 |

| **Total checks** | **-$188,461.85** |
|------------------|------------------|
| **Total # of checks** | **22** |

*\* There is a gap in sequential check numbers*

## Daily ledger balances

| Date | Balance ($) | Date | Balance($) | Date | Balance ($) |
|------|-------------|------|------------|------|-------------|
| 06/01 | 25,671.08 | 06/12 | 158,785.64 | 06/20 | 210,669.32 |
| 06/02 | 191,365.79 | 06/13 | 158,682.01 | 06/24 | 205,669.32 |
| 06/04 | 180,694.71 | 06/16 | 144,406.69 | 06/25 | 78,206.20 |
| 06/05 | 169,201.70 | 06/17 | 217,061.54 | 06/30 | 76,006.20 |
| 06/10 | 160,045.64 | | | | |

Appx1478

Case 2:25-cv-00044-GAM    Document 51    Filed 08/21/25    Page 63 of 130

Case: 25-2598    Document: 20    Page: 288    Date Filed: 11/24/2025

| Database: | MSDE_CB | | | | | | General Ledger | | | Page: | 1 |
| ENTITY: | 610 | | | | | | Lincoln Property Company | | | Date: | 7/7/2025 |
| | | | | | | | Jenkins Court Realty Co LP | | | Time: | 12:29 PM |

Cash

06/25 - 06/25
Report includes an open period.  Entries are not final.

| Account Entity | Period | Entry Date | Src Reference | Site Id | Job Code | Dept | Description | Debit | Credit | Balance |
|---|---|---|---|---|---|---|---|---|---|---|
| **10810-0000** | | | **Cash - Operating** | | | | *Balance Forward* | | | *11,000.00* |
| 610 | 06/25 | 6/30/2025 | AP  028212 | @ | | | A/P Cash Disbursed for checks  35-67 | 0.00 | 246,310.28 | -235,310.28 |
| 610 | 06/25 | 6/30/2025 | CP  625OYB | @ | | | 6/2/25 Funding Request | 169,694.71 | 0.00 | -65,615.57 |
| 610 | 06/25 | 6/30/2025 | CP  625OYB | @ | | | 6/17/25 Funding Request | 76,615.57 | 0.00 | 11,000.00 |
| | | | | | | | **\*\* Account Totals** | 246,310.28 | 246,310.28 | **11,000.00** |
| | | | | | | | **\*\* Grand Totals** | **246,310.28** | **246,310.28** | |

Appx1479

\* Balance Forward Period

**Bank Reconciliation**
**Old York - Operating Account**
**Bank of America**
**July 31, 2025**

Prepared By:    *CP*    *Christian Parnell*          Date:    *8/6/2025*

Reviewed By:              *Feben Ambaye*  *FA*        Date:    *8/6/2025*

| **Bank of America # 6484** | **G/L Account#  10810-0000** |
|---|---|

**BALANCE PER BANK STATEMENT:**                     12,131.66

**Less:** Outstanding Checks (see below)              (1,131.66)

**Add:** Deposit in Transit

**BALANCE PER GENERAL LEDGER:**              $    11,000.00

| Outstanding Checks | | | |
|---|---|---|---|
| **Check #** | **Date** | **Vendor Name** | **Amount** |
| 90 | 7/7/2025 | Western Pest Services | 452.00 |
| 93 | 7/21/2025 | BCS Facilities Group | 679.66 |
| | | **Total O/S Checks** | **1,131.66** |

Appx1480



P.O. Box 15284
Wilmington, DE 19850

**Customer service information**

☐ Customer service: 1.888.400.9009

✉ bankofamerica.com

✉ Bank of America, N.A.
P.O. Box 25118
Tampa, FL 33622-5118

LINCOLN PROPERTY COMPANY COMMERCIAL LLC
AAF/JENKINS COURT REALTY CO. LP
8111 DOUGLAS AVE APT 600
DALLAS, TX  75225-6599

# Your Analyzed Checking

for July 1, 2025 to July 31, 2025                    Account number: 3830 1142 6484

**LINCOLN PROPERTY COMPANY COMMERCIAL LLC    AAF/JENKINS COURT REALTY CO. LP**

## Account summary

| | | |
|---|---|---|
| Beginning balance on July 1, 2025 | $76,006.20 | # of deposits/credits: 2 |
| Deposits and other credits | 125,004.94 | # of withdrawals/debits: 40 |
| Withdrawals and other debits | -8,717.45 | # of days in cycle: 31 |
| Checks | -180,162.03 | Average ledger balance: $75,982.92 |
| Service fees | -0.00 | |
| **Ending balance on July 31, 2025** | **$12,131.66** | |

Appx1481

LINCOLN PROPERTY COMPANY COMMERCIAL LLC  |  Account # 3830 1142 6484  |  July 1, 2025 to July 31, 2025

# IMPORTANT INFORMATION:
## BANK DEPOSIT ACCOUNTS

**How to Contact Us** - You may call us at the telephone number listed on the front of this statement.

**Updating your contact information** - We encourage you to keep your contact information up-to-date. This includes address, email and phone number. If your information has changed, the easiest way to update it is by visiting the Help & Support tab of Online Banking.

**Deposit agreement** - When you opened your account, you received a deposit agreement and fee schedule and agreed that your account would be governed by the terms of these documents, as we may amend them from time to time. These documents are part of the contract for your deposit account and govern all transactions relating to your account, including all deposits and withdrawals. Copies of both the deposit agreement and fee schedule which contain the current version of the terms and conditions of your account relationship may be obtained at our financial centers.

**Electronic transfers: In case of errors or questions about your electronic transfers** - If you think your statement or receipt is wrong or you need more information about an electronic transfer (e.g., ATM transactions, direct deposits or withdrawals, point-of-sale transactions) on the statement or receipt, telephone or write us at the address and number listed on the front of this statement as soon as you can. We must hear from you no later than 60 days after we sent you the FIRST statement on which the error or problem appeared.

- Tell us your name and account number.
- Describe the error or transfer you are unsure about, and explain as clearly as you can why you believe there is an error or why you need more information.
- Tell us the dollar amount of the suspected error.

For consumer accounts used primarily for personal, family or household purposes, we will investigate your complaint and will correct any error promptly. If we take more than 10 business days (10 calendar days if you are a Massachusetts customer) (20 business days if you are a new customer, for electronic transfers occurring during the first 30 days after the first deposit is made to your account) to do this, we will provisionally credit your account for the amount you think is in error, so that you will have use of the money during the time it will take to complete our investigation.

For other accounts, we investigate, and if we find we have made an error, we credit your account at the conclusion of our investigation.

**Reporting other problems** - You must examine your statement carefully and promptly. You are in the best position to discover errors and unauthorized transactions on your account. If you fail to notify us in writing of suspected problems or an unauthorized transaction within the time period specified in the deposit agreement (which periods are no more than 60 days after we make the statement available to you and in some cases are 30 days or less), we are not liable to you and you agree to not make a claim against us, for the problems or unauthorized transactions.

**Direct deposits** - If you have arranged to have direct deposits made to your account at least once every 60 days from the same person or company, you may call us to find out if the deposit was made as scheduled. You may also review your activity online or visit a financial center for information.

© 2025 Bank of America Corporation

**Bank of America, N.A. Member FDIC and**      **Equal Housing Lender**

Appx1482

 **BANK OF AMERICA**

**Your checking account**

LINCOLN PROPERTY COMPANY COMMERCIAL LLC  |  Account # 3830 1142 6484  |  July 1, 2025 to July 31, 2025

## Deposits and other credits

| Date | Transaction description | Customer reference | Bank reference | Amount |
|---|---|---|---|---|
| 07/01/25 | WIRE TYPE:WIRE IN DATE: 250701 TIME:1619 ET TRN:2025070100614965 SEQ:1119020550420209/042390 ORIG:JENKINS COURT REALTY CO L ID:254236980 SND BK:BENCHMARK BANK ID:111902055 PMT DET:7/1 FUN DING | | 903707010614965 | 83,411.91 |
| 07/17/25 | WIRE TYPE:WIRE IN DATE: 250717 TIME:1313 ET TRN:2025071700425028 SEQ:1119020550421874/017131 ORIG:JENKINS COURT REALTY CO L ID:254236980 SND BK:BENCHMARK BANK ID:111902055 PMT DET:7/17 Fu nnding /LOCINS/CTRC | | 903707170425028 | 41,593.03 |
| **Total deposits and other credits** | | | | **$125,004.94** |

## Withdrawals and other debits

| Date | Transaction description | Customer reference | Bank reference | Amount |
|---|---|---|---|---|
| 07/09/25 | UPSBILLCTR        DES:PAYMENT    ID:0000Y659D3 INDN:Jenkins Court Realty C  CO ID:5193070436 CCD  PMT INFO:Log in to the UPS Billing Center for pay  ment details. | | 906689027803021 | -165.38 |
| 07/09/25 | UPSBILLCTR        DES:PAYMENT    ID:0000Y659D3 INDN:Jenkins Court Realty C  CO ID:5193070436 CCD  PMT INFO:Log in to the UPS Billing Center for pay  ment details. | | 906689027803019 | -52.90 |
| 07/10/25 | WORKSPACE VIRTUA DES:N00000002 ID:ST-R5O3X2N5L8Q3  INDN:WORKSPACE VIRTUAL PAYM  CO ID:1800948598 WEB | | 906690025024222 | -871.20 |
| 07/23/25 | WORKSPACE VIRTUA DES:N00000003 ID:ST-K3P5L0V1Y3D3  INDN:WORKSPACE VIRTUAL PAYM  CO ID:1800948598 WEB | | 906603024409837 | -3,955.15 |

*continued on the next page*

Appx1483

LINCOLN PROPERTY COMPANY COMMERCIAL LLC   |   Account # 3830 1142 6484   |   July 1, 2025 to July 31, 2025

## Withdrawals and other debits - continued

| Date | Transaction description | Customer reference | Bank reference | Amount |
|---|---|---|---|---|
| 07/23/25 | WORKSPACE VIRTUA DES:N00000005 ID:ST-O7S0K5Q8L5Y7  INDN:WORKSPACE VIRTUAL PAYM  CO ID:4270465600 WEB | | 902503012459957 | -3,338.85 |
| 07/23/25 | WORKSPACE VIRTUA DES:N00000004 ID:ST-L7F2E2O4M1V7  INDN:WORKSPACE VIRTUAL PAYM  CO ID:1800948598 WEB | | 906603024409843 | -333.97 |
| **Total withdrawals and other debits** | | | | **-$8,717.45** |

## Checks

| Date | Check # | Bank reference | Amount | Date | Check # | Bank reference | Amount |
|---|---|---|---|---|---|---|---|
| 07/22 | | 813008452693061 | -12,724.85 | 07/15 | 78 | 813008692792461 | -350.88 |
| 07/23 | | 813005192440550 | -5,750.00 | 07/15 | 79 | 813008692792458 | -96.76 |
| 07/02 | 54 | 813005992900811 | -32,177.00 | 07/15 | 80 | 813008692792462 | -7,676.61 |
| 07/08 | 56* | 813009692925854 | -19,155.61 | 07/15 | 81 | 813008692792463 | -38.64 |
| 07/07 | 57 | 813009692557264 | -1,860.72 | 07/15 | 82 | 813008692792460 | -281.52 |
| 07/02 | 58 | 813009192739877 | -9,440.00 | 07/15 | 83 | 813008692792459 | -96.46 |
| 07/03 | 60* | 813009392019788 | -52.24 | 07/21 | 84 | 813004592243411 | -1,742.96 |
| 07/08 | 66* | 813009792509940 | -1,773.47 | 07/08 | 85 | 813008152881878 | -10,056.85 |
| 07/21 | 68* | 813004692799912 | -5,450.00 | 07/25 | 87* | 813005492196126 | -7,500.00 |
| 07/21 | 69 | 813004592780697 | -523.31 | 07/17 | 89* | 813006892270414 | -103.63 |
| 07/21 | 70 | 813004792499317 | -3,029.55 | 07/16 | 91* | 813008792911941 | -547.16 |
| 07/21 | 71 | 813004792499318 | -518.90 | 07/30 | 92 | 813005692450412 | -4,674.00 |
| 07/21 | 72 | 813004792499316 | -260.28 | 07/28 | 94* | 813009392412426 | -9,440.00 |
| 07/21 | 73 | 813004692933697 | -13,746.75 | 07/29 | 95 | 813009492777928 | -547.16 |
| 07/18 | 75* | 813009192401266 | -23,170.83 | 07/29 | 96 | 813009492163229 | -530.00 |
| 07/15 | 76 | 813008692576923 | -125.00 | 07/30 | 97 | 813009692007594 | -3,803.49 |
| 07/16 | 77 | 813008892312840 | -1,351.50 | 07/28 | 99* | 813001292693795 | -1,565.90 |
| | | | | **Total checks** | | | **-$180,162.03** |
| | | | | **Total # of checks** | | | **34** |

\*  *There is a gap in sequential check numbers*

## Daily ledger balances

| Date | Balance ($) | Date | Balance($) | Date | Balance ($) |
|---|---|---|---|---|---|
| 07/01 | 159,418.11 | 07/10 | 83,812.74 | 07/22 | 53,570.18 |
| 07/02 | 117,801.11 | 07/15 | 75,146.87 | 07/23 | 40,192.21 |
| 07/03 | 117,748.87 | 07/16 | 73,248.21 | 07/25 | 32,692.21 |
| 07/07 | 115,888.15 | 07/17 | 114,737.61 | 07/28 | 21,686.31 |
| 07/08 | 84,902.22 | 07/18 | 91,566.78 | 07/29 | 20,609.15 |
| 07/09 | 84,683.94 | 07/21 | 66,295.03 | 07/30 | 12,131.66 |

| Database: | MSDE_CB | | | | | **General Ledger** | | | | |
|---|---|---|---|---|---|---|---|---|---|---|
| ENTITY: | 610 | | | | | Lincoln Property Company | | | | |
| | | | | | | Jenkins Court Realty Co LP | | | | |

Page: 1
Date: 8/6/2025
Time: 1:07 PM

Cash

07/25 - 07/25
Report includes an open period.  Entries are not final.

| Account Entity | Period | Entry Date | Src Reference | Site Id | Job Code | Dept | Description | Debit | Credit | Balance |
|---|---|---|---|---|---|---|---|---|---|---|
| **10810-0000** | | | **Cash - Operating** | | | | *Balance Forward* | | | *11,000.00* |
| 610 | 07/25 | 7/31/2025 | AP  028475 | @ | | | A/P Cash Disbursed for checks  68-99 | 0.00 | 125,004.94 | -114,004.94 |
| 610 | 07/25 | 7/31/2025 | CP  725OYB | @ | | | 7/1/25 Funding Request | 83,411.91 | 0.00 | -30,593.03 |
| 610 | 07/25 | 7/31/2025 | CP  725OYB | @ | | | 7/17/25 Funding Request | 41,593.03 | 0.00 | 11,000.00 |
| | | | | | | | **\*\* Account Totals** | 125,004.94 | 125,004.94 | **11,000.00** |
| | | | | | | | **\*\* Grand Totals** | **125,004.94** | **125,004.94** | |

Appx1485

\* Balance Forward Period

Case: 25-2598     Document: 20     Page: 294     Date Filed: 11/24/2025

**Bank Reconciliation**
**Old York - Lockbox Account**
**Benchmark**
**May 31, 2025**

| Prepared By: | *Lensa Daniel* | Date: | *6/10/2025* |
|---|---|---|---|
| Reviewed By: | *CP Christian Parnell* | Date: | *6/10/2025* |

**Benchmark # 6980**                                           **G/L Account#  10825-0000**

**BALANCE PER BANK STATEMENT:**                                          195,561.72

**BALANCE PER GENERAL LEDGER:**                               $    195,561.72

**BENCHMARK BANK**

5700 Legacy Drive
Suite 10
Plano, Texas 75024

JENKINS COURT REALTY CO., L.P.
8111 DOUGLAS AVE STE 600
DALLAS TX 75225
TRIGILD RECEIVERSHIP

| | |
|---|---|
| Account Number | *****6980 |
| Statement Date | 05/01/25-05/31/25 |
| Page | 1 of 3 |
| Beginning Balance | $252,700.19 |
| Deposits/Credits | $131,924.07 |
| Checks/Debits | $189,062.54 |
| Ending Balance | $195,561.72 |
| Days in Statement Period | 31 |

**FAMILY BORN • FAMILY OWNED • FAMILY OPERATED**

**SINCE 1964**

## COMMERCIAL CKG

### DEPOSITS/OTHER CREDITS

| TRANSACTION DATE | DESCRIPTION | AMOUNT |
|---|---|---|
| 05/01/25 | ACH Deposit Helping Hands Fa 015TACJMZDH0AL3 Helping Han | 8,371.86 |
| 05/01/25 | ACH Deposit CYPHER GROUP HOL SENDER | 2,125.58 |
| 05/02/25 | ACH Deposit BETHANY CHRISTIA ACH 0025001124 | 17,561.23 |
| 05/08/25 | Deposit | 24,767.26 |
| 05/13/25 | Deposit | 400.00 |
| 05/21/25 | Deposit | 3,813.32 |
| 05/29/25 | ACH Deposit Helping Hands Fa 015VOPBBOJIAPJF Helping Han | 8,371.86 |
| 05/30/25 | ACH Deposit SSS EDUCATION IN 16387437 Rent Jenkintown Ju | 64,387.38 |
| 05/30/25 | ACH Deposit CYPHER GROUP HOL SENDER | 2,125.58 |

### CHECK RECAP

| NUMBER | DATE | AMOUNT | NUMBER | DATE | AMOUNT |
|---|---|---|---|---|---|

---No Checks Paid in this statement cycle---

### WITHDRAWALS/OTHER DEBITS

| TRANSACTION DATE | DESCRIPTION | AMOUNT |
|---|---|---|
| 05/05/25 | Wire Payment Maury Donnelly & Parr Inc Wires | 7,786.05- |
| 05/05/25 | Wire Payment Fee Maury Donnelly & Parr Inc Wires | 15.00- |
| 05/07/25 | Wire Payment Lincoln Property Company-610OldYork Wires | 20,480.05- |
| 05/07/25 | Wire Payment Fee Lincoln Property Company-610OldYork Wires | 15.00- |
| 05/16/25 | Wire Payment Lincoln Property Company-610OldYork Wires | 160,751.44- |

Appx1487

| Account Number | Statement Ending | Page |
|---|---|---|
| *****6980 | 05/31/25 | 2 of 3 |

05/16/25        Wire Payment Fee Lincoln Property Company-610OldYork Wires                    15.00-

## DAILY ENDING BALANCE

| DATE | AMOUNT | DATE | AMOUNT | DATE | AMOUNT |
|---|---|---|---|---|---|
| 05/01/2025 | 263,197.63 | 05/08/2025 | 277,230.02 | 05/29/2025 | 129,048.76 |
| 05/02/2025 | 280,758.86 | 05/13/2025 | 277,630.02 | 05/30/2025 | 195,561.72 |
| 05/05/2025 | 272,957.81 | 05/16/2025 | 116,863.58 | | |
| 05/07/2025 | 252,462.76 | 05/21/2025 | 120,676.90 | | |

## OVERDRAFT AND RETURN ITEM FEES

| | TOTAL FOR THIS PERIOD | TOTAL YEAR TO DATE |
|---|---|---|
| **TOTAL OVERDRAFT FEES** | 0.00 | 0.00 |
| **TOTAL RETURN ITEM FEES** | 0.00 | 0.00 |

**ERROR RESOLUTION NOTICE**

In Case of Errors or Questions About Your Electronic Transfers, Call or Write us at the telephone number or address listed in this disclosure, as soon as you can, if you think your statement or receipt is wrong or if you need more information about a transfer listed on the statement or receipt. We must hear from you no later than 60 days after we sent the FIRST statement on which the problem or error appeared.

(1) Tell us your name and account number (if any).
(2) Describe the error or the transfer you are unsure about, and explain as clearly as you can why you believe it is an error or why you need more information.
(3) Tell us the dollar amount of the suspected error.

If you tell us orally, we may require that you send us your complaint or question in writing within 10 business days.

We will determine whether an error occurred within 10 business days (5 business days for Visa® Check Card point-of-sale transactions processed by Visa and 20 business days if the transfer involved a new account) after we hear from you and will correct any error promptly. If we need more time, however, we may take up to 45 days (90 days if the transfer involved a new account, a point-of-sale transaction, or a foreign-initiated transfer) to investigate your complaint or question. If we decide to do this, we will credit your account within 10 business days (5 business days for Visa® Check Card point-of-sale transactions processed by Visa and 20 business days if the transfer involved a new account) for the amount you think is in error, so that you will have the use of the money during the time it takes us to complete our investigation. If we ask you to put your complaint or question in writing and we do not receive it within 10 business days, we may not credit your account. Your account is considered a new account for the first 30 days after the first deposit is made, unless each of you already has an established account with us before this account is opened.  We will tell you the results within three business days after completing our investigation. If we decide that there was no error, we will send you a written explanation.  You may ask for copies of the documents that we used in our investigation.

Benchmark Bank
Operations
5700 Legacy Drive, Suite A10
Plano, Texas 75024
Business Days: Monday through Friday
Excluding Federal Holidays
Phone: (972)673-4000
MORE DETAILED INFORMATION IS AVAILABLE ON REQUEST

*Member FDIC*



| Account Number | Statement Ending | Page |
|---|---|---|
| *****6980 | 05/31/25 | 3 of 3 |

**Remote Deposit**                                **Credit**

**Trigild Holdings LLC**
*JENKINS COURT REALTY CO LP 6980*
4131 N Central Expwy Ste 775
Dallas, TX 75204
214-770-3357

Date:        5/8/2025
Items:       2
Amount:   $24,767.26
Batch ID:  23922729734
Account ID: 943837 13369370
Acct Num:  254236980

05/08/2025     0     $24,767.26

**Remote Deposit**                                **Credit**

**Trigild Holdings LLC**
*JENKINS COURT REALTY CO LP 6980*
4131 N Central Expwy Ste 775
Dallas, TX 75204
214-770-3357

Date:        5/13/2025
Items:       1
Amount:   $400.00
Batch ID:  23956511542
Account ID: 943837 13369370
Acct Num:  254236980

05/13/2025     0     $400.00

**Remote Deposit**                                **Credit**

**Trigild Holdings LLC**
*JENKINS COURT REALTY CO LP 6980*
4131 N Central Expwy Ste 775
Dallas, TX 75204
214-770-3357

Date:        5/21/2025
Items:       1
Amount:   $3,813.32
Batch ID:  24009138322
Account ID: 943837 13369370
Acct Num:  254236980

05/21/2025     0     $3,813.32

Date Filed: 11/24/2025   Page: 299   Document: 20   Case: 25-2598

| Database: | MSDE_CB | | General Ledger | | Page: | 1 |
|---|---|---|---|---|---|---|
| ENTITY: | 610 | | Lincoln Property Company | | Date: | 6/11/2025 |
| | | | Jenkins Court Realty Co LP | | Time: | 2:11 PM |

Cash

05/25 - 05/25

Report includes an open period.  Entries are not final.

| Account Entity | Period | Entry Date | Src Reference | Site Id | Job Code | Dept | Description | Debit | Credit | Balance |
|---|---|---|---|---|---|---|---|---|---|---|
| **10825-0000** | | | **Cash - Lockbox** | | | | *Balance Forward* | | | *252,700.19* |
| 610 | 05/25 | 5/31/2025 | CM 021322 @ | | | | Cash Recpt PPD  Prepaid Rental Income | 78,698.14 | 0.00 | 331,398.33 |
| 610 | 05/25 | 5/31/2025 | LD 000021810 @ | | | | 5/7 OPEX Funding - From LB 6980 | 0.00 | 20,480.05 | 310,918.28 |
| 610 | 05/25 | 5/31/2025 | LD 000021810 @ | | | | 5/7 Bank Fee | 0.00 | 15.00 | 310,903.28 |
| 610 | 05/25 | 5/31/2025 | LD 000021810 @ | | | | 5/16 OPEX Funding - From LB 6980 | 0.00 | 160,751.44 | 150,151.84 |
| 610 | 05/25 | 5/31/2025 | LD 000021810 @ | | | | 5/16  Bank Fee | 0.00 | 15.00 | 150,136.84 |
| 610 | 05/25 | 5/31/2025 | LD 000021810 @ | | | | 5/5 Maury Donnelly & Parr - Insurance | 0.00 | 7,786.05 | 142,350.79 |
| 610 | 05/25 | 5/31/2025 | LD 000021810 @ | | | | 5/5 Bank Fee | 0.00 | 15.00 | 142,335.79 |
| 610 | 05/25 | 5/31/2025 | LD 000021810 @ | | | | Recl 5/13 Base Rent -  Sezai Saran | 400.00 | 0.00 | 142,735.79 |
| 610 | 05/25 | 5/31/2025 | LD 000021810 @ | | | | Recl 5/8 Outback Steakhouse PPD Rent | 16,425.56 | 0.00 | 159,161.35 |
| 610 | 05/25 | 5/31/2025 | LD 000021810 @ | | | | Recl 5/8 Marc Kress, M.D. PPD Rent | 8,341.70 | 0.00 | 167,503.05 |
| 610 | 05/25 | 5/31/2025 | LD 000021810 @ | | | | Recl 5/8 Cypher Group PPD Rent | 2,125.58 | 0.00 | 169,628.63 |
| 610 | 05/25 | 5/31/2025 | LD 000021810 @ | | | | Recl 5/2 Bethany Christian PPD Rent | 17,561.23 | 0.00 | 187,189.86 |
| 610 | 05/25 | 5/31/2025 | LD 000021810 @ | | | | Recl 5/1 Helping Hands PPD Rent | 8,371.86 | 0.00 | 195,561.72 |
| | | | | | | | **  Account Totals | 131,924.07 | 189,062.54 | **195,561.72** |
| | | | **  Grand Totals | | | | | **131,924.07** | **189,062.54** | |

Appx1490

**Bank Reconciliation**
**Old York - Lockbox Account**
**Benchmark**
**June 30, 2025**

Prepared By:    *CP Christian Parnell*              Date:    *7/6/2025*

Reviewed By:    *Feben Ambaye FA*              Date:    *7/6/2025*

**Benchmark # 6980**                                    **G/L Account#  10825-0000**

**BALANCE PER BANK STATEMENT:**                          874,092.58

**BALANCE PER GENERAL LEDGER:**                    $    874,092.58

Appx1491

**BENCHMARK BANK**

5700 Legacy Drive
Suite 10
Plano, Texas 75024

JENKINS COURT REALTY CO., L.P.
8111 DOUGLAS AVE STE 600
DALLAS TX 75225
TRIGILD RECEIVERSHIP

| Account Number | *****6980 |
|---|---|
| Statement Date | 06/01/25-06/30/25 |
| Page | 1 of 3 |
| Beginning Balance | $195,561.72 |
| Deposits/Credits | $924,871.14 |
| Checks/Debits | $246,340.28 |
| Ending Balance | $874,092.58 |
| Days in Statement Period | 30 |

## FAMILY BORN • FAMILY OWNED • FAMILY OPERATED
### SINCE 1964

## COMMERCIAL CKG

### DEPOSITS/OTHER CREDITS

| TRANSACTION DATE | DESCRIPTION | AMOUNT |
|---|---|---|
| 06/04/25 | Deposit | 26,830.35 |
| 06/09/25 | ACH Deposit DESIGN LAB RENTA DPAAAFVDSC JUNE RENT FOR DE | 5,000.00 |
| 06/10/25 | ACH Deposit DESIGN LAB RENTA DPAAAFWIWJ JUNE RENT DESIGN | 500.00 |
| 06/10/25 | Wire Deposit REGUS MANAGEMENT GROUP, LLC Wires | 150,314.46 |
| 06/11/25 | ACH Deposit TEMPLE UNIV HEAL 0000056487  XXXXXXXXX PAYME | 330,997.24 |
| 06/13/25 | Deposit | 62.79 |
| 06/20/25 | ACH Deposit OSI RESTAURANT 1001090415  2593061413 AP PAY | 0.01 |
| 06/24/25 | Deposit | 18,446.08 |
| 06/26/25 | ACH Deposit SSS EDUCATION IN 16526911 July Rent 92700658 | 64,387.38 |
| 06/27/25 | Wire Deposit ICON PSG 1 FL LLC Wires | 319,960.97 |
| 06/30/25 | ACH Deposit Helping Hands Fa 015BREDHIVJTL4I Helping Han | 8,371.86 |

### CHECK RECAP

| NUMBER | DATE | AMOUNT | NUMBER | DATE | AMOUNT |
|---|---|---|---|---|---|

---No Checks Paid in this statement cycle---

### WITHDRAWALS/OTHER DEBITS

| TRANSACTION DATE | DESCRIPTION | AMOUNT |
|---|---|---|
| 06/02/25 | Wire Payment Lincoln Property Company-610OldYork Wires | 169,694.71- |
| 06/02/25 | Wire Payment Fee Lincoln Property Company-610OldYork Wires | 15.00- |
| 06/17/25 | Wire Payment Lincoln Property Company-610OldYork Wires | 76,615.57- |

Appx1492

Case 2:25-cv-00044-GAM    Document 51    Filed 08/21/25    Page 77 of 130

| Account Number | Statement Ending | Page |
|---|---|---|
| *****6980 | 06/30/25 | 2 of 3 |

| 06/17/25 | Wire Payment Fee Lincoln Property Company-610OldYork Wires | 15.00- |

## DAILY ENDING BALANCE

| DATE | AMOUNT | DATE | AMOUNT | DATE | AMOUNT |
|---|---|---|---|---|---|
| 06/01/2025 | 195,561.72 | 06/11/2025 | 539,494.06 | 06/26/2025 | 545,759.75 |
| 06/02/2025 | 25,852.01 | 06/13/2025 | 539,556.85 | 06/27/2025 | 865,720.72 |
| 06/04/2025 | 52,682.36 | 06/17/2025 | 462,926.28 | 06/30/2025 | 874,092.58 |
| 06/09/2025 | 57,682.36 | 06/20/2025 | 462,926.29 | | |
| 06/10/2025 | 208,496.82 | 06/24/2025 | 481,372.37 | | |

## OVERDRAFT AND RETURN ITEM FEES

| | TOTAL FOR THIS PERIOD | TOTAL YEAR TO DATE |
|---|---|---|
| **TOTAL OVERDRAFT FEES** | 0.00 | 0.00 |
| **TOTAL RETURN ITEM FEES** | 0.00 | 0.00 |

**ERROR RESOLUTION NOTICE**

In Case of Errors or Questions About Your Electronic Transfers, Call or Write us at the telephone number or address listed in this disclosure, as soon as you can, if you think your statement or receipt is wrong or if you need more information about a transfer listed on the statement or receipt. We must hear from you no later than 60 days after we sent the FIRST statement on which the problem or error appeared.

(1) Tell us your name and account number (if any).
(2) Describe the error or the transfer you are unsure about, and explain as clearly as you can why you believe it is an error or why you need more information.
(3) Tell us the dollar amount of the suspected error.

If you tell us orally, we may require that you send us your complaint or question in writing within 10 business days.

We will determine whether an error occurred within 10 business days (5 business days for Visa® Check Card point-of-sale transactions processed by Visa and 20 business days if the transfer involved a new account) after we hear from you and will correct any error promptly. If we need more time, however, we may take up to 45 days (90 days if the transfer involved a new account, a point-of-sale transaction, or a foreign-initiated transfer) to investigate your complaint or question. If we decide to do this, we will credit your account within 10 business days (5 business days for Visa® Check Card point-of-sale transactions processed by Visa and 20 business days if the transfer involved a new account) for the amount you think is in error, so that you will have the use of the money during the time it takes us to complete our investigation. If we ask you to put your complaint or question in writing and we do not receive it within 10 business days, we may not credit your account. Your account is considered a new account for the first 30 days after the first deposit is made, unless each of you already has an established account with us before this account is opened.  We will tell you the results within three business days after completing our investigation. If we decide that there was no error, we will send you a written explanation.  You may ask for copies of the documents that we used in our investigation.

Benchmark Bank
Operations
5700 Legacy Drive, Suite A10
Plano, Texas 75024
Business Days: Monday through Friday
Excluding Federal Holidays
Phone: (972)673-4000
MORE DETAILED INFORMATION IS AVAILABLE ON REQUEST

*Member FDIC*



| Account Number | Statement Ending | Page |
|---|---|---|
| *****6980 | 06/30/25 | 3 of 3 |

**Remote Deposit** — **Credit**

Trigild Holdings LLC
*JENKINS COURT REALTY CO LP 6980*
4131 N Central Expwy Ste 775
Dallas, TX 75204
214-770-3357

Date: 6/4/2025
Items: 3
Amount: $26,830.35
Batch ID: 24143591330
Account ID: 943837 13369370
Acct Num: 254236980

06/04/2025    0    $26,830.35

**Remote Deposit** — **Credit**

Trigild Holdings LLC
*JENKINS COURT REALTY CO LP 6980*
4131 N Central Expwy Ste 775
Dallas, TX 75204
214-770-3357

Date: 6/13/2025
Items: 1
Amount: $62.79
Batch ID: 24215378258
Account ID: 943837 13369370
Acct Num: 254236980

06/13/2025    0    $62.79

**Remote Deposit** — **Credit**

Trigild Holdings LLC
*JENKINS COURT REALTY CO LP 6980*
4131 N Central Expwy Ste 775
Dallas, TX 75204
214-770-3357

Date: 6/24/2025
Items: 2
Amount: $18,446.08
Batch ID: 24283620474
Account ID: 943837 13369370
Acct Num: 254236980

06/24/2025    0    $18,446.08

Case: 25-2598    Document: 20    Page: 304    Date Filed: 11/24/2025

| Database: | MSDE_CB | | | | | **General Ledger** | | Page: | 1 |
|---|---|---|---|---|---|---|---|---|---|
| ENTITY: | 610 | | | | | Lincoln Property Company | | Date: | 7/9/2025 |
| | | | | | | Jenkins Court Realty Co LP | | Time: | 9:13 AM |

Cash

06/25 - 06/25

Report includes an open period.  Entries are not final.

| Account Entity | Period | Entry Date | Src Reference | Site Id | Job Code | Dept | Description | Debit | Credit | Balance |
|---|---|---|---|---|---|---|---|---|---|---|
| **10825-0000** | | | **Cash - Lockbox** | | | | *Balance Forward* | | | *195,561.72* |
| 610 | 06/25 | 6/30/2025 | CM 021620 | @ | | | Cash Recpt BRT  Base Rent | 706,668.61 | 0.00 | 902,230.33 |
| 610 | 06/25 | 6/30/2025 | CM 021620 | @ | | | Cash Recpt OPE  Operating Expenses | 96,708.41 | 0.00 | 998,938.74 |
| 610 | 06/25 | 6/30/2025 | CM 021620 | @ | | | Cash Recpt PAR  Parking | 4,500.00 | 0.00 | 1,003,438.74 |
| 610 | 06/25 | 6/30/2025 | CM 021620 | @ | | | Cash Recpt PPD  Prepaid Rental Income | 335,652.90 | 0.00 | 1,339,091.64 |
| 610 | 06/25 | 6/30/2025 | CM 021620 | @ | | | Cash Recpt RET  Real Estate Taxes | 61,358.37 | 0.00 | 1,400,450.01 |
| 610 | 06/25 | 6/30/2025 | CM 021620 | @ | | | Paymnt Rev ABA  Abatement - Base Rent | 0.00 | 16,500.00 | 1,383,950.01 |
| 610 | 06/25 | 6/30/2025 | CM 021620 | @ | | | Paymnt Rev PPD  Prepaid Rental Income | 0.00 | 271,951.80 | 1,111,998.21 |
| 610 | 06/25 | 6/30/2025 | CM 021659 | @ | | | Cash Recpt PPD  Prepaid Rental Income | 8,371.86 | 0.00 | 1,120,370.07 |
| 610 | 06/25 | 6/30/2025 | CP 625OYB | @ | | | 6/2/25 Funding Request | 0.00 | 169,694.71 | 950,675.36 |
| 610 | 06/25 | 6/30/2025 | CP 625OYB | @ | | | 6/17/25 Funding Request | 0.00 | 76,615.57 | 874,059.79 |
| 610 | 06/25 | 6/30/2025 | CP 625OYB | @ | | | 6/2/25 Bank Fee | 0.00 | 15.00 | 874,044.79 |
| 610 | 06/25 | 6/30/2025 | CP 625OYB | @ | | | 6/17/25 Bank Fee | 0.00 | 15.00 | 874,029.79 |
| 610 | 06/25 | 6/30/2025 | CP 625OYB | @ | | | Insurance Refund | 62.79 | 0.00 | 874,092.58 |
| | | | | | | | **\*\* Account Totals** | 1,213,322.94 | 534,792.08 | **874,092.58** |
| | | | | | | | **\*\* Grand Totals** | **1,213,322.94** | **534,792.08** | |

Appx1495

\* Balance Forward Period

**Bank Reconciliation**
**Old York - Lockbox Account**
**Benchmark**
**July 31, 2025**

Prepared By:  *CP Christian Parnell*           Date: *8/6/2025*

Reviewed By:  *Feben Ambaye* *FA*           Date: *8/6/2025*

**Benchmark # 6980**                                    **G/L Account# 10911-0000**

| | |
|---|---|
| **BALANCE PER BANK STATEMENT:** | 363,492.43 |
| **BALANCE PER GENERAL LEDGER:** | $   363,492.43 |

Appx1496

**BENCHMARK BANK**

5700 Legacy Drive
Suite 10
Plano, Texas 75024

JENKINS COURT REALTY CO., L.P.
8111 DOUGLAS AVE STE 600
DALLAS TX 75225
TRIGILD RECEIVERSHIP

| Account Number | *****6980 |
|---|---|
| Statement Date | 07/01/25-07/31/25 |
| Page | 1 of 3 |
| Beginning Balance | $874,092.58 |
| Deposits/Credits | $247,336.76 |
| Checks/Debits | $757,936.91 |
| Ending Balance | $363,492.43 |
| Days in Statement Period | 31 |

**FAMILY BORN • FAMILY OWNED • FAMILY OPERATED**

— SINCE 1964 —

## COMMERCIAL CKG

### DEPOSITS/OTHER CREDITS

| TRANSACTION DATE | DESCRIPTION | AMOUNT |
|---|---|---|
| 07/01/25 | ACH Deposit BETHANY PAYABLES VJENK00040  9381405282 ACH | 17,561.23 |
| 07/07/25 | Deposit | 400.00 |
| 07/08/25 | ACH Deposit CYPHER GROUP HOL SENDER | 2,125.58 |
| 07/08/25 | Wire Deposit REGUS MANAGEMENT GROUP, LLC Wires | 35,450.24 |
| 07/10/25 | Deposit | 8,341.70 |
| 07/25/25 | ACH Deposit TEMPLE UNIV HEAL 0000056487  XXXXXXXXX PAYME | 82,749.31 |
| 07/25/25 | ACH Deposit OSI RESTAURANT 1001102207  2593061413 AP PAY | 2,334.53 |
| 07/28/25 | ACH Deposit SSS EDUCATION IN 16690724 Rent for Jenkintow | 64,387.38 |
| 07/31/25 | ACH Deposit PAYABLES VJENK00040  5381405282 BETHANY | 17,561.23 |
| 07/31/25 | ACH Deposit OSI RESTAURANT 1001103915  2593061413 AP PAY | 16,425.56 |

### CHECK RECAP

| NUMBER | DATE | AMOUNT | NUMBER | DATE | AMOUNT |
|---|---|---|---|---|---|

---No Checks Paid in this statement cycle---

### WITHDRAWALS/OTHER DEBITS

| TRANSACTION DATE | DESCRIPTION | AMOUNT |
|---|---|---|
| 07/01/25 | Wire Payment Lincoln Property Company-610OldYork Wires | 83,411.91- |
| 07/01/25 | Wire Payment Fee Lincoln Property Company-610OldYork Wires | 15.00- |
| 07/17/25 | Wire Payment Lincoln Property Company-610OldYork Wires | 41,593.03- |
| 07/17/25 | Wire Payment Fee Lincoln Property Company-610OldYork Wires | 15.00- |

Appx1497

Case 2:25-cv-00044-GAM    Document 51    Filed 08/21/25    Page 82 of 130

| Account Number | Statement Ending | Page |
|---|---|---|
| *****6980 | 07/31/25 | 2 of 3 |

| | | |
|---|---|---|
| 07/22/25 | Wire Payment ICON PSG 1 FL LLC Wires | 632,886.97- |
| 07/22/25 | Wire Payment Fee ICON PSG 1 FL LLC Wires | 15.00- |

## DAILY ENDING BALANCE

| DATE | AMOUNT | DATE | AMOUNT | DATE | AMOUNT |
|---|---|---|---|---|---|
| 07/01/2025 | 808,226.90 | 07/10/2025 | 854,544.42 | 07/25/2025 | 265,118.26 |
| 07/07/2025 | 808,626.90 | 07/17/2025 | 812,936.39 | 07/28/2025 | 329,505.64 |
| 07/08/2025 | 846,202.72 | 07/22/2025 | 180,034.42 | 07/31/2025 | 363,492.43 |

## OVERDRAFT AND RETURN ITEM FEES

| | TOTAL FOR THIS PERIOD | TOTAL YEAR TO DATE |
|---|---|---|
| **TOTAL OVERDRAFT FEES** | 0.00 | 0.00 |
| **TOTAL RETURN ITEM FEES** | 0.00 | 0.00 |

**ERROR RESOLUTION NOTICE**

In Case of Errors or Questions About Your Electronic Transfers, Call or Write us at the telephone number or address listed in this disclosure, as soon as you can, if you think your statement or receipt is wrong or if you need more information about a transfer listed on the statement or receipt. We must hear from you no later than 60 days after we sent the FIRST statement on which the problem or error appeared.

(1) Tell us your name and account number (if any).

(2) Describe the error or the transfer you are unsure about, and explain as clearly as you can why you believe it is an error or why you need more information.

(3) Tell us the dollar amount of the suspected error.

If you tell us orally, we may require that you send us your complaint or question in writing within 10 business days.

We will determine whether an error occurred within 10 business days (5 business days for Visa® Check Card point-of-sale transactions processed by Visa and 20 business days if the transfer involved a new account) after we hear from you and will correct any error promptly. If we need more time, however, we may take up to 45 days (90 days if the transfer involved a new account, a point-of-sale transaction, or a foreign-initiated transfer) to investigate your complaint or question. If we decide to do this, we will credit your account within 10 business days (5 business days for Visa® Check Card point-of-sale transactions processed by Visa and 20 business days if the transfer involved a new account) for the amount you think is in error, so that you will have the use of the money during the time it takes us to complete our investigation. If we ask you to put your complaint or question in writing and we do not receive it within 10 business days, we may not credit your account. Your account is considered a new account for the first 30 days after the first deposit is made, unless each of you already has an established account with us before this account is opened.  We will tell you the results within three business days after completing our investigation. If we decide that there was no error, we will send you a written explanation.  You may ask for copies of the documents that we used in our investigation.

Benchmark Bank
Operations
5700 Legacy Drive, Suite A10
Plano, Texas 75024
Business Days: Monday through Friday
Excluding Federal Holidays
Phone: (972)673-4000
MORE DETAILED INFORMATION IS AVAILABLE ON REQUEST

*Member FDIC*

| Account Number | Statement Ending | Page |
|---|---|---|
| *****6980 | 07/31/25 | 3 of 3 |

**Remote Deposit**        **Credit**

**Trigild Holdings LLC**
*JENKINS COURT REALTY CO LP 6980*
4131 N Central Expwy Ste 775
Dallas, TX 75204
214-770-3357

Date: 7/7/2025
Items: 1
Amount: $400.00
Batch ID: 24419003818
Account ID: 943837 13369370
Acct Num: 254236980

07/07/2025     0     $400.00

**Remote Deposit**        **Credit**

**Trigild Holdings LLC**
*JENKINS COURT REALTY CO LP 6980*
4131 N Central Expwy Ste 775
Dallas, TX 75204
214-770-3357

Date: 7/10/2025
Items: 1
Amount: $8,341.70
Batch ID: 24445092286
Account ID: 943837 13369370
Acct Num: 254236980

07/10/2025     0     $8,341.70

Case: 25-2598    Document: 20    Page: 309    Date Filed: 11/24/2025

| Database: | MSDE_CB | | | General Ledger | | Page: | 1 |
| ENTITY: | 610 | | | Lincoln Property Company | | Date: | 8/11/2025 |
| | | | | Jenkins Court Realty Co LP | | Time: | 1:04 PM |

Cash

07/25 - 07/25

Report includes an open period.  Entries are not final.

| Account Entity | Period | Entry Date | Src Reference | Site Id | Job Code | Dept | Description | Debit | Credit | Balance |
|---|---|---|---|---|---|---|---|---|---|---|
| **10911-0000** | | | **Cash- Lockbox -Benchmark** | | | | *Balance Forward* | | | *0.00* |
| 610 | 07/25 | 7/31/2025 | CP 725OYB | @ | | | 7/1/25 Funding Request | 0.00 | 83,411.91 | -83,411.91 |
| 610 | 07/25 | 7/31/2025 | CP 725OYB | @ | | | 7/17/25 Funding Request | 0.00 | 41,593.03 | -125,004.94 |
| 610 | 07/25 | 7/31/2025 | CP 725OYB | @ | | | 7/1/25 Bank Fee | 0.00 | 15.00 | -125,019.94 |
| 610 | 07/25 | 7/31/2025 | CP 725OYB | @ | | | 7/17/25 Bank Fee | 0.00 | 15.00 | -125,034.94 |
| 610 | 07/25 | 7/31/2025 | CP 725OYB | @ | | | 7/22/25 Bank Fee | 0.00 | 15.00 | -125,049.94 |
| 610 | 07/25 | 7/31/2025 | CP 725OYB | @ | | | 7/22/25 Owner Distribution | 0.00 | 632,886.97 | -757,936.91 |
| 610 | 07/25 | 7/31/2025 | CP 725Rc610 | @ | | | Rcl 6/25 Beginning Balance | 874,092.58 | 0.00 | 116,155.67 |
| 610 | 07/25 | 7/31/2025 | CP 725Rc610 | @ | | | Rcl 7/25 Cash Activities | 247,336.76 | 0.00 | 363,492.43 |
| | | | | | | | **\*\* Account Totals** | 1,121,429.34 | 757,936.91 | **363,492.43** |
| | | | | | | | **\*\* Grand Totals** | **1,121,429.34** | **757,936.91** | |

Appx1500

\* Balance Forward Period

| Database: | MSDE_CB | CM Receivables Ledger | Page: | 1 |
|---|---|---|---|---|
| BLDG: | 610 | Lincoln Property Company | Date: | 8/18/2025 |
| | | 610 Old York Road J | Time: | 7:09 AM |
| Occupancy Status: Current Inactive New | | 05/25 Through 07/25 | | |
| | | Security Deposit Ending Balance through 07/25 | | |

| Building | Lease | Date | Category | | SR | Description | Debit | Credit | Balance | Receipt Desc. | Invoice | Receipt Type |
|---|---|---|---|---|---|---|---|---|---|---|---|---|

**610-009473    Bethany Christian Services of Greater Del    Heather N. Bert    (215) 870-7044    Master Occp Id:  000000001828-1**

Balance Forward — 43,270.96

| Building | Lease | Date | Category | | SR | Description | Debit | Credit | Balance | Receipt Desc. | Invoice | Receipt Type |
|---|---|---|---|---|---|---|---|---|---|---|---|---|
| 610 | 009473 | 5/1/2025 | BRT | Base Rent | CH | AUTOCHRG @T5/31/2025 | 17,561.23 | | 60,832.19 | | | |
| 610 | 009473 | 5/1/2025 | OPE | Operating Expenses | CH | AUTOCHRG @T5/31/2025 | 4,074.25 | | 64,906.44 | | | |
| 610 | 009473 | 5/2/2025 | PPD | Prepaid Rental Income | CR | 05/2025 Ppd Rent | | 17,561.23 | 47,345.21 | 5001124 | | EFT |
| 610 | 009473 | 6/1/2025 | BRT | Base Rent | CH | AUTOCHRG @T6/30/2025 | 17,561.23 | | 64,906.44 | | | |
| 610 | 009473 | 6/1/2025 | OPE | Operating Expenses | CH | AUTOCHRG @T6/30/2025 | 4,074.25 | | 68,980.69 | | | |
| 610 | 009473 | 6/10/2025 | BRT | Base Rent | CR | CreditApply | | 17,561.23 | 51,419.46 | 5001124 | | APL |
| 610 | 009473 | 6/10/2025 | PPD | Prepaid Rental Income | PR | CreditApply | 17,561.23 | | 68,980.69 | 5001124 | | APL |
| 610 | 009473 | 6/27/2025 | BRT | Base Rent | CR | Receipt | | 17,561.23 | 51,419.46 | PSG0325 | | EFT |
| 610 | 009473 | 6/27/2025 | BRT | Base Rent | CR | Receipt | | 17,561.23 | 33,858.23 | PSG0425 | | EFT |
| 610 | 009473 | 6/27/2025 | BRT | Base Rent | CR | Receipt | | 17,561.23 | 16,297.00 | PSG0625 | | EFT |
| 610 | 009473 | 6/27/2025 | PPD | Prepaid Rental Income | CR | 02/25 PPD Rent | | 17,141.10 | -844.10 | PSG0225 | | EFT |
| 610 | 009473 | 6/30/2025 | BRT | Base Rent | CH | 02/2025 Base Rent | 17,141.10 | | 16,297.00 | | | |
| 610 | 009473 | 7/1/2025 | BRT | Base Rent | CH | AUTOCHRG @T7/31/2025 | 17,561.23 | | 33,858.23 | | | |
| 610 | 009473 | 7/1/2025 | BRT | Base Rent | CR | Receipt | | 17,561.23 | 16,297.00 | 1405282 | | EFT |
| 610 | 009473 | 7/1/2025 | OPE | Operating Expenses | CH | AUTOCHRG @T7/31/2025 | 4,074.25 | | 20,371.25 | | | |
| 610 | 009473 | 7/9/2025 | BRT | Base Rent | CR | CreditApply | | 17,141.10 | 3,230.15 | PSG0225 | | APL |
| 610 | 009473 | 7/9/2025 | PPD | Prepaid Rental Income | PR | CreditApply | 17,141.10 | | 20,371.25 | PSG0225 | | APL |
| 610 | 009473 | 7/31/2025 | PPD | Prepaid Rental Income | CR | 08/25 PPD Rent | | 17,561.23 | 2,810.02 | 5381405 | | EFT |

| Category | | Mo. Rep Charges | Beg Balance | Charges | Cash Receipts | N/C Credits | Refunds | End Balance | Sec Dep Bal |
|---|---|---|---|---|---|---|---|---|---|
| BRT | Base Rent | 17,561.23 | 35,122.46 | 69,824.79 | 104,947.25 | 0.00 | 0.00 | 0.00 | |
| CAM | Common Area Maintenance | 12,418.40 | 0.00 | 0.00 | 0.00 | 0.00 | 0.00 | 0.00 | |
| OPE | Operating Expenses | 0.00 | 8,148.50 | 12,222.75 | 0.00 | 0.00 | 0.00 | 20,371.25 | |
| PPD | Prepaid Rental Income | 0.00 | 0.00 | 0.00 | 17,561.23 | 0.00 | 0.00 | -17,561.23 | |
| RET | Real Estate Taxes | 41.00 | 0.00 | 0.00 | 0.00 | 0.00 | 0.00 | 0.00 | |
| | Total: | 30,020.63 | 43,270.96 | 82,047.54 | 122,508.48 | 0.00 | 0.00 | 2,810.02 | 0.00 |

**610-009474    Cypher Group Holdings    Scott Taitleman    (877) 297-4376    Master Occp Id:  000000001829-1**

Balance Forward — 3,634.56

Appx1501

| Database: | MSDE_CB | CM Receivables Ledger | Page: | 2 |
| BLDG: | 610 | Lincoln Property Company | Date: | 8/18/2025 |
| | | 610 Old York Road J | Time: | 7:09 AM |
| Occupancy Status: Current Inactive New | | 05/25 Through 07/25 | | |
| | | Security Deposit Ending Balance through 07/25 | | |

| Building | Lease | Date | Category | | SR | Description | Debit | Credit | Balance | Receipt Desc. | Invoice | Receipt Type |
|---|---|---|---|---|---|---|---|---|---|---|---|---|
| 610 | 009474 | 5/1/2025 | BRT | Base Rent | CH | AUTOCHRG @T5/31/2025 | 2,125.58 | | 5,760.14 | | | |
| 610 | 009474 | 5/1/2025 | OPE | Operating Expenses | CH | AUTOCHRG @T5/31/2025 | 754.49 | | 6,514.63 | | | |
| 610 | 009474 | 5/1/2025 | PPD | Prepaid Rental Income | CR | 05/2025 Ppd Rent | | 2,125.58 | 4,389.05 | 050125 | | EFT |
| 610 | 009474 | 5/30/2025 | PPD | Prepaid Rental Income | CR | 06/25 PPD Rent | | 2,125.58 | 2,263.47 | 053025 | | EFT |
| 610 | 009474 | 6/1/2025 | BRT | Base Rent | CH | AUTOCHRG @T6/30/2025 | 2,125.58 | | 4,389.05 | | | |
| 610 | 009474 | 6/1/2025 | OPE | Operating Expenses | CH | AUTOCHRG @T6/30/2025 | 754.49 | | 5,143.54 | | | |
| 610 | 009474 | 6/10/2025 | BRT | Base Rent | CR | CreditApply | | 2,125.58 | 3,017.96 | 050125 | | APL |
| 610 | 009474 | 6/10/2025 | BRT | Base Rent | CR | CreditApply | | 2,125.58 | 892.38 | Cyph425 | | APL |
| 610 | 009474 | 6/10/2025 | BRT | Base Rent | CR | CreditApply | | 2,125.58 | -1,233.20 | 053025 | | APL |
| 610 | 009474 | 6/10/2025 | PPD | Prepaid Rental Income | PR | CreditApply | 2,125.58 | | 892.38 | 053025 | | APL |
| 610 | 009474 | 6/10/2025 | PPD | Prepaid Rental Income | PR | CreditApply | 2,125.58 | | 3,017.96 | 050125 | | APL |
| 610 | 009474 | 6/10/2025 | PPD | Prepaid Rental Income | PR | CreditApply | 2,125.58 | | 5,143.54 | Cyph425 | | APL |
| 610 | 009474 | 7/1/2025 | BRT | Base Rent | CH | AUTOCHRG @T7/31/2025 | 2,125.58 | | 7,269.12 | | | |
| 610 | 009474 | 7/1/2025 | OPE | Operating Expenses | CH | AUTOCHRG @T7/31/2025 | 754.49 | | 8,023.61 | | | |
| 610 | 009474 | 7/8/2025 | BRT | Base Rent | CR | Receipt | | 2,125.58 | 5,898.03 | 070825 | | EFT |

| Category | | Mo. Rep Charges | Beg Balance | Charges | Cash Receipts | N/C Credits | Refunds | End Balance | Sec Dep Bal |
|---|---|---|---|---|---|---|---|---|---|
| BRT | Base Rent | 2,125.58 | 4,251.16 | 6,376.74 | 8,502.32 | 0.00 | 0.00 | 2,125.58 | |
| CAM | Common Area Maintenance | 2.00 | 0.00 | 0.00 | 0.00 | 0.00 | 0.00 | 0.00 | |
| OPE | Operating Expenses | 0.00 | 1,508.98 | 2,263.47 | 0.00 | 0.00 | 0.00 | 3,772.45 | |
| PPD | Prepaid Rental Income | 0.00 | -2,125.58 | 0.00 | -2,125.58 | 0.00 | 0.00 | 0.00 | |
| | Total: | 2,127.58 | 3,634.56 | 8,640.21 | 6,376.74 | 0.00 | 0.00 | 5,898.03 | 0.00 |

**610-009475**    **Kristen Givens and Dante Givens**    **Kristin Givens**    **(267) 670-0288**    **Master Occp Id:  000000001830-1**

| | Balance Forward | | | | | | | 8,035.08 | |

| Building | Lease | Date | Category | | SR | Description | Debit | Credit | Balance | Receipt Desc. | Invoice | Receipt Type |
|---|---|---|---|---|---|---|---|---|---|---|---|---|
| 610 | 009475 | 5/1/2025 | ABA | Abatement - Base Rent | NC | AUTOCRDT @T5/31/2025 | | 5,500.00 | 2,535.08 | | | |
| 610 | 009475 | 5/1/2025 | BRT | Base Rent | CH | AUTOCHRG @T5/31/2025 | 11,000.00 | | 13,535.08 | | | |
| 610 | 009475 | 5/1/2025 | OPE | Operating Expenses | CH | AUTOCHRG @T5/31/2025 | 1,267.54 | | 14,802.62 | | | |
| 610 | 009475 | 6/1/2025 | ABA | Abatement - Base Rent | NC | AUTOCRDT @T6/30/2025 | | 5,500.00 | 9,302.62 | | | |
| 610 | 009475 | 6/1/2025 | BRT | Base Rent | CH | AUTOCHRG @T6/30/2025 | 11,000.00 | | 20,302.62 | | | |
| 610 | 009475 | 6/1/2025 | OPE | Operating Expenses | CH | AUTOCHRG @T6/30/2025 | 1,267.54 | | 21,570.16 | | | |
| 610 | 009475 | 6/9/2025 | PPD | Prepaid Rental Income | CR | 06/2025 PPD Rent | | 5,000.00 | 16,570.16 | 060925 | | EFT |
| 610 | 009475 | 6/10/2025 | ABA | Abatement - Base Rent | PR | CreditApply | 5,500.00 | | 22,070.16 | | | APL |
| 610 | 009475 | 6/10/2025 | ABA | Abatement - Base Rent | PR | CreditApply | 5,500.00 | | 27,570.16 | | | APL |
| 610 | 009475 | 6/10/2025 | ABA | Abatement - Base Rent | PR | CreditApply | 5,500.00 | | 33,070.16 | | | APL |

Appx1502

| Database: | MSDE_CB | | | CM Receivables Ledger | | | | | Page: | | 3 |
|---|---|---|---|---|---|---|---|---|---|---|---|
| BLDG: | 610 | | | Lincoln Property Company | | | | | Date: | | 8/18/2025 |
| | | | | 610 Old York Road J | | | | | Time: | | 7:09 AM |
| Occupancy Status: Current Inactive New | | | | 05/25 Through 07/25 | | | | | | | |
| | | | | Security Deposit Ending Balance through 07/25 | | | | | | | |

| Building | Lease | Date | Category | | SR | Description | Debit | Credit | Balance | Receipt Desc. | Invoice | Receipt Type |
|---|---|---|---|---|---|---|---|---|---|---|---|---|
| 610 | 009475 | 6/10/2025 | BRT | Base Rent | CR | Receipt | | 500.00 | 32,570.16 | 061025 | | EFT |
| 610 | 009475 | 6/10/2025 | BRT | Base Rent | CR | CreditApply | | 5,500.00 | 27,070.16 | | | APL |
| 610 | 009475 | 6/10/2025 | BRT | Base Rent | CR | CreditApply | | 5,500.00 | 21,570.16 | | | APL |
| 610 | 009475 | 6/10/2025 | BRT | Base Rent | CR | CreditApply | | 5,500.00 | 16,070.16 | | | APL |
| 610 | 009475 | 6/11/2025 | BRT | Base Rent | CR | CreditApply | | 5,000.00 | 11,070.16 | 060925 | | APL |
| 610 | 009475 | 6/11/2025 | PPD | Prepaid Rental Income | PR | CreditApply | 5,000.00 | | 16,070.16 | 060925 | | APL |
| 610 | 009475 | 7/1/2025 | ABA | Abatement - Base Rent | NC | AUTOCRDT @T7/31/2025 | | 5,500.00 | 10,570.16 | | | |
| 610 | 009475 | 7/1/2025 | BRT | Base Rent | CH | AUTOCHRG @T7/31/2025 | 11,000.00 | | 21,570.16 | | | |
| 610 | 009475 | 7/1/2025 | OPE | Operating Expenses | CH | AUTOCHRG @T7/31/2025 | 1,267.54 | | 22,837.70 | | | |

| Category | | Mo. Rep Charges | Beg Balance | Charges | Cash Receipts | N/C Credits | Refunds | End Balance | Sec Dep Bal |
|---|---|---|---|---|---|---|---|---|---|
| ABA | Abatement - Base Rent | -11,000.00 | -5,500.00 | 0.00 | -16,500.00 | 16,500.00 | 0.00 | -5,500.00 | |
| BRT | Base Rent | 11,000.00 | 11,000.00 | 33,000.00 | 22,000.00 | 0.00 | 0.00 | 22,000.00 | |
| OPE | Operating Expenses | 0.00 | 2,535.08 | 3,802.62 | 0.00 | 0.00 | 0.00 | 6,337.70 | |
| RET | Real Estate Taxes | 1,555.00 | 0.00 | 0.00 | 0.00 | 0.00 | 0.00 | 0.00 | |
| | Total: | 1,555.00 | 8,035.08 | 36,802.62 | 5,500.00 | 16,500.00 | 0.00 | 22,837.70 | 0.00 |

| 610-009476 | Goldstein Law Partners, LLC | | Goldstein Law Partners, LLC | | (267) 627-2485 | Master Occp Id: 000000001831-1 |
|---|---|---|---|---|---|---|

Balance Forward                                                                    22,414.36

| Building | Lease | Date | Category | | SR | Description | Debit | Credit | Balance |
|---|---|---|---|---|---|---|---|---|---|
| 610 | 009476 | 5/1/2025 | BRT | Base Rent | CH | AUTOCHRG @T5/31/2025 | 10,000.00 | | 32,414.36 |
| 610 | 009476 | 5/1/2025 | OPE | Operating Expenses | CH | AUTOCHRG @T5/31/2025 | 1,207.18 | | 33,621.54 |
| 610 | 009476 | 6/1/2025 | BRT | Base Rent | CH | AUTOCHRG @T6/30/2025 | 10,000.00 | | 43,621.54 |
| 610 | 009476 | 6/1/2025 | OPE | Operating Expenses | CH | AUTOCHRG @T6/30/2025 | 1,207.18 | | 44,828.72 |
| 610 | 009476 | 7/1/2025 | BRT | Base Rent | CH | AUTOCHRG @T7/31/2025 | 10,000.00 | | 54,828.72 |
| 610 | 009476 | 7/1/2025 | OPE | Operating Expenses | CH | AUTOCHRG @T7/31/2025 | 1,207.18 | | 56,035.90 |

| Category | | Mo. Rep Charges | Beg Balance | Charges | Cash Receipts | N/C Credits | Refunds | End Balance | Sec Dep Bal |
|---|---|---|---|---|---|---|---|---|---|
| BRT | Base Rent | 10,000.00 | 20,000.00 | 30,000.00 | 0.00 | 0.00 | 0.00 | 50,000.00 | |
| CAM | Common Area Maintenance | 1,530.82 | 0.00 | 0.00 | 0.00 | 0.00 | 0.00 | 0.00 | |
| OPE | Operating Expenses | 0.00 | 2,414.36 | 3,621.54 | 0.00 | 0.00 | 0.00 | 6,035.90 | |
| | Total: | 11,530.82 | 22,414.36 | 33,621.54 | 0.00 | 0.00 | 0.00 | 56,035.90 | 0.00 |

| 610-009477 | Helping Hands Family | | Helping Hands Family | | (267) 772-6006 | Master Occp Id: 000000001832-1 |
|---|---|---|---|---|---|---|

Appx1503

| Database: | MSDE_CB | | CM Receivables Ledger | | | Page: | 4 |
| BLDG: | 610 | | Lincoln Property Company | | | Date: | 8/18/2025 |
| | | | 610 Old York Road J | | | Time: | 7:09 AM |
| Occupancy Status: Current Inactive New | | | 05/25 Through 07/25 | | | | |
| | | | Security Deposit Ending Balance through 07/25 | | | | |

| Building | Lease | Date | Category | | SR | Description | Debit | Credit | Balance | Receipt Desc. | Invoice | Receipt Type |
|---|---|---|---|---|---|---|---|---|---|---|---|---|
| | | | | Balance Forward | | | | | 19,218.43 | | | |
| 610 | 009477 | 5/1/2025 | BRT | Base Rent | CH | AUTOCHRG @T5/31/2025 | 8,371.86 | | 27,590.29 | | | |
| 610 | 009477 | 5/1/2025 | OPE | Operating Expenses | CH | AUTOCHRG @T5/31/2025 | 1,237.36 | | 28,827.65 | | | |
| 610 | 009477 | 5/1/2025 | PPD | Prepaid Rental Income | CR | 05/2025 Ppd Rent | | 8,371.86 | 20,455.79 | ZDH0AL3 | | EFT |
| 610 | 009477 | 5/29/2025 | PPD | Prepaid Rental Income | CR | 06/2025 PPD Rent | | 8,371.86 | 12,083.93 | OJIAPJF | | EFT |
| 610 | 009477 | 6/1/2025 | BRT | Base Rent | CH | AUTOCHRG @T6/30/2025 | 8,371.86 | | 20,455.79 | | | |
| 610 | 009477 | 6/1/2025 | OPE | Operating Expenses | CH | AUTOCHRG @T6/30/2025 | 1,237.36 | | 21,693.15 | | | |
| 610 | 009477 | 6/10/2025 | BRT | Base Rent | CR | CreditApply | | 8,371.86 | 13,321.29 | ZDH0AL3 | | APL |
| 610 | 009477 | 6/10/2025 | BRT | Base Rent | CR | CreditApply | | 8,371.86 | 4,949.43 | OJIAPJF | | APL |
| 610 | 009477 | 6/10/2025 | OPE | Operating Expenses | CR | CreditApply | | 0.01 | 4,949.42 | 4895317 | | APL |
| 610 | 009477 | 6/10/2025 | PPD | Prepaid Rental Income | PR | CreditApply | 8,371.86 | | 13,321.28 | ZDH0AL3 | | APL |
| 610 | 009477 | 6/10/2025 | PPD | Prepaid Rental Income | PR | CreditApply | 0.01 | | 13,321.29 | 4895317 | | APL |
| 610 | 009477 | 6/10/2025 | PPD | Prepaid Rental Income | PR | CreditApply | 8,371.86 | | 21,693.15 | OJIAPJF | | APL |
| 610 | 009477 | 6/27/2025 | BRT | Base Rent | CR | Receipt | | 8,371.86 | 13,321.29 | PSG0325 | | EFT |
| 610 | 009477 | 6/27/2025 | BRT | Base Rent | CR | Receipt | | 8,371.86 | 4,949.43 | PSG0425 | | EFT |
| 610 | 009477 | 6/27/2025 | PPD | Prepaid Rental Income | CR | 02/25 PPD Rent | | 8,371.86 | -3,422.43 | PSG0225 | | EFT |
| 610 | 009477 | 6/30/2025 | BRT | Base Rent | CH | 02/2025 Base Rent | 8,371.86 | | 4,949.43 | | | |
| 610 | 009477 | 6/30/2025 | PPD | Prepaid Rental Income | CR | 07/25 PPD Rent | | 8,371.86 | -3,422.43 | IVJTL4I | | EFT |
| 610 | 009477 | 7/1/2025 | BRT | Base Rent | CH | AUTOCHRG @T7/31/2025 @ | 8,581.16 | | 5,158.73 | | | |
| 610 | 009477 | 7/1/2025 | OPE | Operating Expenses | CH | AUTOCHRG @T7/31/2025 | 1,237.36 | | 6,396.09 | | | |
| 610 | 009477 | 7/7/2025 | BRT | Base Rent | CR | CreditApply | | 8,371.86 | -1,975.77 | IVJTL4I | | APL |
| 610 | 009477 | 7/7/2025 | PPD | Prepaid Rental Income | PR | CreditApply | 8,371.86 | | 6,396.09 | IVJTL4I | | APL |
| 610 | 009477 | 7/9/2025 | BRT | Base Rent | CR | CreditApply | | 8,371.86 | -1,975.77 | PSG0225 | | APL |
| 610 | 009477 | 7/9/2025 | PPD | Prepaid Rental Income | PR | CreditApply | 8,371.86 | | 6,396.09 | PSG0225 | | APL |

| Category | | Mo. Rep Charges | Beg Balance | Charges | Cash Receipts | N/C Credits | Refunds | End Balance | Sec Dep Bal |
|---|---|---|---|---|---|---|---|---|---|
| BRT | Base Rent | 8,581.16 | 16,743.72 | 33,696.74 | 50,231.16 | 0.00 | 0.00 | 209.30 | |
| CAM | Common Area Maintenance | 1,538.19 | 0.00 | 0.00 | 0.00 | 0.00 | 0.00 | 0.00 | |
| OPE | Operating Expenses | 0.00 | 2,474.72 | 3,712.08 | 0.01 | 0.00 | 0.00 | 6,186.79 | |
| PPD | Prepaid Rental Income | 0.00 | -0.01 | 0.00 | -0.01 | 0.00 | 0.00 | 0.00 | |
| RET | Real Estate Taxes | 6,114.00 | 0.00 | 0.00 | 0.00 | 0.00 | 0.00 | 0.00 | |
| | Total: | 16,233.35 | 19,218.43 | 37,408.82 | 50,231.16 | 0.00 | 0.00 | 6,396.09 | 0.00 |

| 610-009478 | Jenkins Storage, LLC | Jenkins Storage | (215) 277-1367 | Master Occp Id: 000000001833-1 |

Appx1504

| Database: | MSDE_CB | | | CM Receivables Ledger | | | | Page: | 5 |
| BLDG: | 610 | | | Lincoln Property Company | | | | Date: | 8/18/2025 |
| | | | | 610 Old York Road J | | | | Time: | 7:09 AM |
| Occupancy Status: Current Inactive New | | | | 05/25 Through 07/25 | | | | | |
| | | | | Security Deposit Ending Balance through 07/25 | | | | | |

| Building | Lease | Date | Category | | SR | Description | Debit | Credit | Balance | Receipt Desc. | Invoice | Receipt Type |
|---|---|---|---|---|---|---|---|---|---|---|---|---|
| | | | | **Balance Forward** | | | | | 104,143.68 | | | |
| 610 | 009478 | 5/1/2025 | BRT | Base Rent | CH | AUTOCHRG @T5/31/2025 | 40,000.00 | | 144,143.68 | | | |
| 610 | 009478 | 5/1/2025 | OPE | Operating Expenses | CH | AUTOCHRG @T5/31/2025 | 12,071.84 | | 156,215.52 | | | |
| 610 | 009478 | 6/1/2025 | BRT | Base Rent | CH | AUTOCHRG @T6/30/2025 | 40,000.00 | | 196,215.52 | | | |
| 610 | 009478 | 6/1/2025 | OPE | Operating Expenses | CH | AUTOCHRG @T6/30/2025 | 12,071.84 | | 208,287.36 | | | |
| 610 | 009478 | 7/1/2025 | BRT | Base Rent | CH | AUTOCHRG @T7/31/2025 | 40,000.00 | | 248,287.36 | | | |
| 610 | 009478 | 7/1/2025 | OPE | Operating Expenses | CH | AUTOCHRG @T7/31/2025 | 12,071.84 | | 260,359.20 | | | |

| Category | | Mo. Rep Charges | Beg Balance | Charges | Cash Receipts | N/C Credits | Refunds | End Balance | Sec Dep Bal |
|---|---|---|---|---|---|---|---|---|---|
| BRT | Base Rent | 40,000.00 | 80,000.00 | 120,000.00 | 0.00 | 0.00 | 0.00 | 200,000.00 | |
| CAM | Common Area Maintenance | 1,530.82 | 0.00 | 0.00 | 0.00 | 0.00 | 0.00 | 0.00 | |
| OPE | Operating Expenses | 0.00 | 24,143.68 | 36,215.52 | 0.00 | 0.00 | 0.00 | 60,359.20 | |
| | **Total:** | **41,530.82** | **104,143.68** | **156,215.52** | **0.00** | **0.00** | **0.00** | **260,359.20** | **0.00** |

**610-009479**  **Jersey College**  **Greg Karzhevsky**  **(201) 839-6211**  **Master Occp Id:  000000001834-1**

| Building | Lease | Date | Category | | SR | Description | Debit | Credit | Balance | Receipt Desc. | Invoice | Receipt Type |
|---|---|---|---|---|---|---|---|---|---|---|---|---|
| | | | | **Balance Forward** | | | | | -166,329.38 | | | |
| 610 | 009479 | 5/1/2025 | BRT | Base Rent | CH | AUTOCHRG @T5/31/2025 | 66,335.51 | | -99,993.87 | | | |
| 610 | 009479 | 5/1/2025 | OPE | Operating Expenses | CH | AUTOCHRG @T5/31/2025 | 11,468.25 | | -88,525.62 | | | |
| 610 | 009479 | 5/30/2025 | PPD | Prepaid Rental Income | CR | 06/25 PPD Rent | | 64,387.38 | -152,913.00 | 6387437 | | EFT |
| 610 | 009479 | 6/1/2025 | BRT | Base Rent | CH | AUTOCHRG @T6/30/2025 | 66,335.51 | | -86,577.49 | | | |
| 610 | 009479 | 6/1/2025 | OPE | Operating Expenses | CH | AUTOCHRG @T6/30/2025 | 11,468.25 | | -75,109.24 | | | |
| 610 | 009479 | 6/10/2025 | BRT | Base Rent | CR | CreditApply | | 64,386.38 | -139,495.62 | 1622018 | | APL |
| 610 | 009479 | 6/10/2025 | BRT | Base Rent | CR | CreditApply | | 64,387.38 | -203,883.00 | 6387437 | | APL |
| 610 | 009479 | 6/10/2025 | BRT | Base Rent | CR | CreditApply | | 64,387.38 | -268,270.38 | 0107303 | | APL |
| 610 | 009479 | 6/10/2025 | PPD | Prepaid Rental Income | PR | CreditApply | 64,387.38 | | -203,883.00 | 0107303 | | APL |
| 610 | 009479 | 6/10/2025 | PPD | Prepaid Rental Income | PR | CreditApply | 64,387.38 | | -139,495.62 | 6387437 | | APL |
| 610 | 009479 | 6/10/2025 | PPD | Prepaid Rental Income | PR | CreditApply | 64,386.38 | | -75,109.24 | 1622018 | | APL |
| 610 | 009479 | 6/26/2025 | PPD | Prepaid Rental Income | CR | 07/25 PPD Rent | | 64,387.38 | -139,496.62 | 2700658 | | EFT |
| 610 | 009479 | 7/1/2025 | BRT | Base Rent | CH | AUTOCHRG @T7/31/2025 | 66,335.51 | | -73,161.11 | | | |
| 610 | 009479 | 7/1/2025 | OPE | Operating Expenses | CH | AUTOCHRG @T7/31/2025 | 11,468.25 | | -61,692.86 | | | |
| 610 | 009479 | 7/7/2025 | BRT | Base Rent | CR | CreditApply | | 64,387.38 | -126,080.24 | 2700658 | | APL |

Appx1505

Case: 25-2598    Document: 20    Page: 315    Date Filed: 11/24/2025

| | | | | | | | | | | Receipt | | Receipt |
|---|---|---|---|---|---|---|---|---|---|---|---|---|
| Database: | MSDE_CB | | | | | CM Receivables Ledger | | | | | Page: | 6 |
| BLDG: | 610 | | | | | Lincoln Property Company | | | | | Date: | 8/18/2025 |
| | | | | | | 610 Old York Road J | | | | | Time: | 7:09 AM |
| Occupancy Status: Current Inactive New | | | | | | 05/25 Through 07/25 | | | | | | |
| | | | | | | Security Deposit Ending Balance through 07/25 | | | | | | |

| Building | Lease | Date | Category | | SR | Description | Debit | Credit | Balance | Receipt Desc. | Invoice | Receipt Type |
|---|---|---|---|---|---|---|---|---|---|---|---|---|
| 610 | 009479 | 7/7/2025 | PPD | Prepaid Rental Income | PR | CreditApply | 64,387.38 | | -61,692.86 | 2700658 | | APL |
| 610 | 009479 | 7/28/2025 | PPD | Prepaid Rental Income | CR | 08/25 PPD Rent | | 64,387.38 | -126,080.24 | 6690724 | | EFT |

| Category | | Mo. Rep Charges | Beg Balance | Charges | Cash Receipts | N/C Credits | Refunds | End Balance | Sec Dep Bal |
|---|---|---|---|---|---|---|---|---|---|
| BRT | Base Rent | 33,483.34 | 132,671.02 | 199,006.53 | 257,548.52 | 0.00 | 0.00 | 74,129.03 | |
| CAM | Common Area Maintenance | 14,233.00 | 0.00 | 0.00 | 0.00 | 0.00 | 0.00 | 0.00 | |
| OPE | Operating Expenses | 0.00 | 22,936.50 | 34,404.75 | 0.00 | 0.00 | 0.00 | 57,341.25 | |
| PPD | Prepaid Rental Income | 0.00 | -321,936.90 | 0.00 | -64,386.38 | 0.00 | 0.00 | -257,550.52 | |
| | Total: | 47,716.34 | -166,329.38 | 233,411.28 | 193,162.14 | 0.00 | 0.00 | -126,080.24 | 0.00 |

| 610-009480 | Jersey College | | Greg Karzhevsky | | (201) 839-6211 | Master Occp Id: 000000001835-1 |
|---|---|---|---|---|---|---|

Balance Forward    0.00

| Category | | Mo. Rep Charges | Beg Balance | Charges | Cash Receipts | N/C Credits | Refunds | End Balance | Sec Dep Bal |
|---|---|---|---|---|---|---|---|---|---|
| BRT | Base Rent | 32,852.17 | 0.00 | 0.00 | 0.00 | 0.00 | 0.00 | 0.00 | |
| CAM | Common Area Maintenance | 13,964.00 | 0.00 | 0.00 | 0.00 | 0.00 | 0.00 | 0.00 | |
| | Total: | 46,816.17 | 0.00 | 0.00 | 0.00 | 0.00 | 0.00 | 0.00 | 0.00 |

| 610-009481 | Marc Kress, M.D. | | Marc Kress | | (215) 887-3100 ext. 107 | Master Occp Id: 000000001836-1 |
|---|---|---|---|---|---|---|

Balance Forward    8,341.70

| Building | Lease | Date | Category | | SR | Description | Debit | Credit | Balance | Invoice | Receipt Type |
|---|---|---|---|---|---|---|---|---|---|---|---|
| 610 | 009481 | 5/1/2025 | BRT | Base Rent | CH | AUTOCHRG @T5/31/2025 | 8,038.33 | | 16,380.03 | | |
| 610 | 009481 | 5/1/2025 | OPE | Operating Expenses | CH | AUTOCHRG @T5/31/2025 | 303.37 | | 16,683.40 | | |
| 610 | 009481 | 5/8/2025 | PPD | Prepaid Rental Income | CR | 05/25 PPD Rent | | 8,341.70 | 8,341.70 | 13504 | CHK |
| 610 | 009481 | 6/1/2025 | BRT | Base Rent | CH | AUTOCHRG @T6/30/2025 | 8,038.33 | | 16,380.03 | | |
| 610 | 009481 | 6/1/2025 | OPE | Operating Expenses | CH | AUTOCHRG @T6/30/2025 | 303.37 | | 16,683.40 | | |
| 610 | 009481 | 6/4/2025 | BRT | Base Rent | CR | Receipt | | 8,038.33 | 8,645.07 | 13531 | CHK |
| 610 | 009481 | 6/4/2025 | OPE | Operating Expenses | CR | Receipt | | 303.37 | 8,341.70 | 13531 | CHK |
| 610 | 009481 | 6/10/2025 | BRT | Base Rent | CR | CreditApply | | 8,038.33 | 303.37 | 13473 | APL |
| 610 | 009481 | 6/10/2025 | BRT | Base Rent | CR | CreditApply | | 8,038.33 | -7,734.96 | 13504 | APL |
| 610 | 009481 | 6/10/2025 | OPE | Operating Expenses | CR | CreditApply | | 303.37 | -8,038.33 | 13473 | APL |

Appx1506

Database:     MSDE_CB

BLDG:     610

Occupancy Status: Current Inactive New

CM Receivables Ledger
Lincoln Property Company
610 Old York Road J
05/25 Through 07/25
Security Deposit Ending Balance through 07/25

Page:          7
Date:      8/18/2025
Time:        7:09 AM

| Building | Lease | Date | Category | | SR | Description | Debit | Credit | Balance | Receipt Desc. | Invoice | Receipt Type |
|---|---|---|---|---|---|---|---|---|---|---|---|---|
| 610 | 009481 | 6/10/2025 | OPE | Operating Expenses | CR | CreditApply | | 303.37 | -8,341.70 | 13504 | | APL |
| 610 | 009481 | 6/10/2025 | PPD | Prepaid Rental Income | PR | CreditApply | 8,341.70 | | 0.00 | 13504 | | APL |
| 610 | 009481 | 6/10/2025 | PPD | Prepaid Rental Income | PR | CreditApply | 8,341.70 | | 8,341.70 | 13473 | | APL |
| 610 | 009481 | 6/27/2025 | PPD | Prepaid Rental Income | CR | 01/25 PPD Rent | | 8,341.70 | 0.00 | PSG0125 | | EFT |
| 610 | 009481 | 6/27/2025 | PPD | Prepaid Rental Income | CR | 02/25 PPD Rent | | 8,341.70 | -8,341.70 | PSG0225 | | EFT |
| 610 | 009481 | 6/30/2025 | BRT | Base Rent | CH | 01/2025 Base Rent | 8,038.33 | | -303.37 | | | |
| 610 | 009481 | 6/30/2025 | BRT | Base Rent | CH | 02/2025 Base Rent | 8,038.33 | | 7,734.96 | | | |
| 610 | 009481 | 6/30/2025 | OPE | Operating Expenses | CH | 02/2025 CAM | 303.37 | | 8,038.33 | | | |
| 610 | 009481 | 6/30/2025 | OPE | Operating Expenses | CH | 01/2025 CAM | 303.37 | | 8,341.70 | | | |
| 610 | 009481 | 7/1/2025 | BRT | Base Rent | CH | AUTOCHRG @T7/31/2025 | 8,038.33 | | 16,380.03 | | | |
| 610 | 009481 | 7/1/2025 | OPE | Operating Expenses | CH | AUTOCHRG @T7/31/2025 | 303.37 | | 16,683.40 | | | |
| 610 | 009481 | 7/9/2025 | BRT | Base Rent | CR | CreditApply | | 8,038.33 | 8,645.07 | PSG0125 | | APL |
| 610 | 009481 | 7/9/2025 | BRT | Base Rent | CR | CreditApply | | 8,038.33 | 606.74 | PSG0225 | | APL |
| 610 | 009481 | 7/9/2025 | OPE | Operating Expenses | CR | CreditApply | | 303.37 | 303.37 | PSG0225 | | APL |
| 610 | 009481 | 7/9/2025 | OPE | Operating Expenses | CR | CreditApply | | 303.37 | 0.00 | PSG0125 | | APL |
| 610 | 009481 | 7/9/2025 | PPD | Prepaid Rental Income | PR | CreditApply | 8,341.70 | | 8,341.70 | PSG0125 | | APL |
| 610 | 009481 | 7/9/2025 | PPD | Prepaid Rental Income | PR | CreditApply | 8,341.70 | | 16,683.40 | PSG0225 | | APL |
| 610 | 009481 | 7/10/2025 | BRT | Base Rent | CR | Receipt | | 8,038.33 | 8,645.07 | 13552 | | CHK |
| 610 | 009481 | 7/10/2025 | OPE | Operating Expenses | CR | Receipt | | 303.37 | 8,341.70 | 13552 | | CHK |

| Category | | Mo. Rep Charges | Beg Balance | Charges | Cash Receipts | N/C Credits | Refunds | End Balance | Sec Dep Bal |
|---|---|---|---|---|---|---|---|---|---|
| BRT | Base Rent | 8,341.70 | 16,076.66 | 40,191.65 | 48,229.98 | 0.00 | 0.00 | 8,038.33 | |
| CAM | Common Area Maintenance | 1,532.30 | 0.00 | 0.00 | 0.00 | 0.00 | 0.00 | 0.00 | |
| OPE | Operating Expenses | 0.00 | 606.74 | 1,516.85 | 1,820.22 | 0.00 | 0.00 | 303.37 | |
| PPD | Prepaid Rental Income | 0.00 | -8,341.70 | 0.00 | -8,341.70 | 0.00 | 0.00 | 0.00 | |
| RET | Real Estate Taxes | 1,307.55 | 0.00 | 0.00 | 0.00 | 0.00 | 0.00 | 0.00 | |
| | Total: | 11,181.55 | 8,341.70 | 41,708.50 | 41,708.50 | 0.00 | 0.00 | 8,341.70 | 0.00 |

**610-009482     Outback Steakhouse     Outback Steakhouse of Florida     (215) 886-5120     Master Occp Id:  000000001837-1**

Balance Forward                                                                32,322.24

| Building | Lease | Date | Category | | SR | Description | Debit | Credit | Balance | Receipt Desc. | Invoice | Receipt Type |
|---|---|---|---|---|---|---|---|---|---|---|---|---|
| 610 | 009482 | 5/1/2025 | BRT | Base Rent | CH | AUTOCHRG @T5/31/2025 @ | 12,540.46 | | 44,862.70 | | | |
| 610 | 009482 | 5/1/2025 | OPE | Operating Expenses | CH | AUTOCHRG @T5/31/2025 | 1,961.67 | | 46,824.37 | | | |
| 610 | 009482 | 5/1/2025 | RET | Real Estate Taxes | CH | AUTOCHRG @T5/31/2025 | 2,799.03 | | 49,623.40 | | | |
| 610 | 009482 | 5/8/2025 | PPD | Prepaid Rental Income | CR | 05/25 PPD Rent | | 16,425.56 | 33,197.84 | 0572724 | | CHK |
| 610 | 009482 | 5/21/2025 | PPD | Prepaid Rental Income | CR | 06/25 PPD Rent | | 3,813.32 | 29,384.52 | 0573338 | | CHK |

Appx1507

Case: 25-2598    Document: 20    Page: 317    Date Filed: 11/24/2025

| Database: | MSDE_CB | CM Receivables Ledger | Page: | 8 |
| BLDG: | 610 | Lincoln Property Company | Date: | 8/18/2025 |
| | | 610 Old York Road J | Time: | 7:09 AM |
| Occupancy Status: Current Inactive New | | 05/25 Through 07/25 | | |
| | | Security Deposit Ending Balance through 07/25 | | |

| Building | Lease | Date | Category | | SR | Description | Debit | Credit | Balance | Receipt Desc. | Invoice | Receipt Type |
|---|---|---|---|---|---|---|---|---|---|---|---|---|
| 610 | 009482 | 6/1/2025 | BRT | Base Rent | CH | AUTOCHRG @T6/30/2025 | 12,540.46 | | 41,924.98 | | | |
| 610 | 009482 | 6/1/2025 | OPE | Operating Expenses | CH | AUTOCHRG @T6/30/2025 | 1,961.67 | | 43,886.65 | | | |
| 610 | 009482 | 6/1/2025 | RET | Real Estate Taxes | CH | AUTOCHRG @T6/30/2025 | 2,799.03 | | 46,685.68 | | | |
| 610 | 009482 | 6/4/2025 | BRT | Base Rent | CR | Receipt | | 12,540.46 | 34,145.22 | 0573976 | | CHK |
| 610 | 009482 | 6/4/2025 | OPE | Operating Expenses | CR | Receipt | | 1,961.67 | 32,183.55 | 0573976 | | CHK |
| 610 | 009482 | 6/4/2025 | PPD | Prepaid Rental Income | CR | 06/25 PPD Rent | | 787.49 | 31,396.06 | 0573976 | | CHK |
| 610 | 009482 | 6/4/2025 | RET | Real Estate Taxes | CR | Receipt | | 2,799.03 | 28,597.03 | 0573976 | | CHK |
| 610 | 009482 | 6/10/2025 | BRT | Base Rent | CR | CreditApply | | 11,664.86 | 16,932.17 | 0572724 | | APL |
| 610 | 009482 | 6/10/2025 | OPE | Operating Expenses | CR | CreditApply | | 1,961.67 | 14,970.50 | 0572724 | | APL |
| 610 | 009482 | 6/10/2025 | PPD | Prepaid Rental Income | PR | CreditApply | 16,425.56 | | 31,396.06 | 0572724 | | APL |
| 610 | 009482 | 6/10/2025 | RET | Real Estate Taxes | CR | CreditApply | | 2,799.03 | 28,597.03 | 0572724 | | APL |
| 610 | 009482 | 6/20/2025 | PPD | Prepaid Rental Income | CR | Prepaid Rent | | 0.01 | 28,597.02 | 3061413 | | EFT |
| 610 | 009482 | 6/24/2025 | PPD | Prepaid Rental Income | CR | Prepaid Rent | | 2,020.52 | 26,576.50 | 0575415 | | CHK |
| 610 | 009482 | 6/24/2025 | PPD | Prepaid Rental Income | CR | Prepaid Rent | | 16,425.56 | 10,150.94 | 0576060 | | CHK |
| 610 | 009482 | 6/27/2025 | BRT | Base Rent | CR | Receipt | | 11,400.42 | -1,249.48 | PSG0325 | | EFT |
| 610 | 009482 | 6/27/2025 | OPE | Operating Expenses | CR | Receipt | | 1,961.67 | -3,211.15 | PSG0325 | | EFT |
| 610 | 009482 | 6/27/2025 | PPD | Prepaid Rental Income | CR | 02/25 PPD Rent | | 16,726.40 | -19,937.55 | PSG0225 | | EFT |
| 610 | 009482 | 6/27/2025 | PPD | Prepaid Rental Income | CR | Prepaid Rent | | 951.06 | -20,888.61 | PSG0325 | | EFT |
| 610 | 009482 | 6/27/2025 | RET | Real Estate Taxes | CR | Receipt | | 2,799.03 | -23,687.64 | PSG0325 | | EFT |
| 610 | 009482 | 6/30/2025 | BRT | Base Rent | CH | 02/2025 Base Rent | 11,400.42 | | -12,287.22 | | | |
| 610 | 009482 | 6/30/2025 | OPE | Operating Expenses | CH | 02/2025 Operating Expenses | 1,961.67 | | -10,325.55 | | | |
| 610 | 009482 | 6/30/2025 | RET | Real Estate Taxes | CH | 02/2025 Real Estate Taxes | 2,799.03 | | -7,526.52 | | | |
| 610 | 009482 | 7/1/2025 | BRT | Base Rent | CH | AUTOCHRG @T7/31/2025 | 12,540.46 | | 5,013.94 | | | |
| 610 | 009482 | 7/1/2025 | OPE | Operating Expenses | CH | AUTOCHRG @T7/31/2025 | 1,961.67 | | 6,975.61 | | | |
| 610 | 009482 | 7/1/2025 | RET | Real Estate Taxes | CH | AUTOCHRG @T7/31/2025 | 2,799.03 | | 9,774.64 | | | |
| 610 | 009482 | 7/7/2025 | BRT | Base Rent | CR | CreditApply | | 12,540.46 | -2,765.82 | 0576060 | | APL |
| 610 | 009482 | 7/7/2025 | OPE | Operating Expenses | CR | CreditApply | | 875.60 | -3,641.42 | 0575415 | | APL |
| 610 | 009482 | 7/7/2025 | OPE | Operating Expenses | CR | CreditApply | | 1,086.07 | -4,727.49 | 0576060 | | APL |
| 610 | 009482 | 7/7/2025 | PPD | Prepaid Rental Income | PR | CreditApply | 16,425.56 | | 11,698.07 | 0576060 | | APL |
| 610 | 009482 | 7/7/2025 | PPD | Prepaid Rental Income | PR | CreditApply | 875.60 | | 12,573.67 | 0575415 | | APL |
| 610 | 009482 | 7/7/2025 | RET | Real Estate Taxes | CR | CreditApply | | 2,799.03 | 9,774.64 | 0576060 | | APL |
| 610 | 009482 | 7/9/2025 | BRT | Base Rent | CR | CreditApply | | 11,400.42 | -1,625.78 | PSG0225 | | APL |
| 610 | 009482 | 7/9/2025 | OPE | Operating Expenses | CR | CreditApply | | 1,961.67 | -3,587.45 | PSG0225 | | APL |
| 610 | 009482 | 7/9/2025 | PPD | Prepaid Rental Income | PR | CreditApply | 16,161.12 | | 12,573.67 | PSG0225 | | APL |
| 610 | 009482 | 7/9/2025 | RET | Real Estate Taxes | CR | CreditApply | | 2,799.03 | 9,774.64 | PSG0225 | | APL |
| 610 | 009482 | 7/25/2025 | PPD | Prepaid Rental Income | CR | 08/25 PPD Rent | | 2,334.53 | 7,440.11 | 1102207 | | EFT |
| 610 | 009482 | 7/31/2025 | PPD | Prepaid Rental Income | CR | 08/25 PPD Rent | | 16,425.56 | -8,985.45 | 1001103 | | EFT |

| Database: | MSDE_CB | CM Receivables Ledger | Page: | 9 |
|---|---|---|---|---|
| BLDG: | 610 | Lincoln Property Company | Date: | 8/18/2025 |
| | | 610 Old York Road J | Time: | 7:09 AM |
| Occupancy Status: Current Inactive New | | 05/25 Through 07/25 | | |
| | | Security Deposit Ending Balance through 07/25 | | |

| Building | Lease | Date | Category | SR | Description | Debit | Credit | Balance | Receipt Desc. | Invoice | Receipt Type |
|---|---|---|---|---|---|---|---|---|---|---|---|

| Category | | Mo. Rep Charges | Beg Balance | Charges | Cash Receipts | N/C Credits | Refunds | End Balance | Sec Dep Bal |
|---|---|---|---|---|---|---|---|---|---|
| BRT | Base Rent | 12,540.46 | 22,800.84 | 49,021.80 | 59,546.62 | 0.00 | 0.00 | 12,276.02 | |
| CAM | Common Area Maintenance | 4,875.00 | 0.00 | 0.00 | 0.00 | 0.00 | 0.00 | 0.00 | |
| OPE | Operating Expenses | 0.00 | 3,923.34 | 7,846.68 | 9,808.35 | 0.00 | 0.00 | 1,961.67 | |
| PPD | Prepaid Rental Income | 0.00 | 0.00 | 0.00 | 26,022.17 | 0.00 | 0.00 | -26,022.17 | |
| RET | Real Estate Taxes | 3,038.00 | 5,598.06 | 11,196.12 | 13,995.15 | 0.00 | 0.00 | 2,799.03 | |
| | Total: | 20,453.46 | 32,322.24 | 68,064.60 | 109,372.29 | 0.00 | 0.00 | -8,985.45 | 0.00 |

**610-009483    SBG Management Services, Inc.    Philip C. Pulley    (215) 938-6665 ext. 2001  Master Occp Id:  000000001838-1**

Balance Forward                                                                              22,414.36

| Building | Lease | Date | Category | | SR | Description | Debit | Balance |
|---|---|---|---|---|---|---|---|---|
| 610 | 009483 | 5/1/2025 | BRT | Base Rent | CH | AUTOCHRG @T5/31/2025 | 10,000.00 | 32,414.36 |
| 610 | 009483 | 5/1/2025 | OPE | Operating Expenses | CH | AUTOCHRG @T5/31/2025 | 1,207.18 | 33,621.54 |
| 610 | 009483 | 6/1/2025 | BRT | Base Rent | CH | AUTOCHRG @T6/30/2025 | 10,000.00 | 43,621.54 |
| 610 | 009483 | 6/1/2025 | OPE | Operating Expenses | CH | AUTOCHRG @T6/30/2025 | 1,207.18 | 44,828.72 |
| 610 | 009483 | 7/1/2025 | BRT | Base Rent | CH | AUTOCHRG @T7/31/2025 | 10,000.00 | 54,828.72 |
| 610 | 009483 | 7/1/2025 | OPE | Operating Expenses | CH | AUTOCHRG @T7/31/2025 | 1,207.18 | 56,035.90 |

| Category | | Mo. Rep Charges | Beg Balance | Charges | Cash Receipts | N/C Credits | Refunds | End Balance | Sec Dep Bal |
|---|---|---|---|---|---|---|---|---|---|
| BRT | Base Rent | 10,000.00 | 20,000.00 | 30,000.00 | 0.00 | 0.00 | 0.00 | 50,000.00 | |
| CAM | Common Area Maintenance | 107.00 | 0.00 | 0.00 | 0.00 | 0.00 | 0.00 | 0.00 | |
| OPE | Operating Expenses | 0.00 | 2,414.36 | 3,621.54 | 0.00 | 0.00 | 0.00 | 6,035.90 | |
| | Total: | 10,107.00 | 22,414.36 | 33,621.54 | 0.00 | 0.00 | 0.00 | 56,035.90 | 0.00 |

**610-009484    Regus Corporation    Regus Corporation    (267) 627-3400    Master Occp Id:  000000001839-1**

Balance Forward                                                                              66,777.48

| Building | Lease | Date | Category | | SR | Description | Debit | Balance |
|---|---|---|---|---|---|---|---|---|
| 610 | 009484 | 5/1/2025 | BRT | Base Rent | CH | AUTOCHRG @T5/31/2025 | 28,560.00 | 95,337.48 |
| 610 | 009484 | 5/1/2025 | OPE | Operating Expenses | CH | AUTOCHRG @T5/31/2025 | 4,828.74 | 100,166.22 |
| 610 | 009484 | 6/1/2025 | BRT | Base Rent | CH | AUTOCHRG @T6/30/2025 | 28,560.00 | 128,726.22 |

Appx1509

Case: 25-2598    Document: 20    Page: 318    Date Filed: 11/24/2025

Date Filed: 11/24/2025    Page: 319    Document: 20    Case: 25-2598

| | | | | | | | | | Receipt | | Receipt |
|---|---|---|---|---|---|---|---|---|---|---|---|
| Database: | MSDE_CB | | | | | | | | | | Page: 10 |
| BLDG: | 610 | | | | | | | | | | Date: 8/18/2025 |
| | | | | | | | | | | | Time: 7:09 AM |

CM Receivables Ledger
Lincoln Property Company
610 Old York Road J
Occupancy Status: Current Inactive New
05/25 Through 07/25
Security Deposit Ending Balance through 07/25

| Building | Lease | Date | Category | | SR | Description | Debit | Credit | Balance | Receipt Desc. | Invoice | Receipt Type |
|---|---|---|---|---|---|---|---|---|---|---|---|---|
| 610 | 009484 | 6/1/2025 | OPE | Operating Expenses | CH | AUTOCHRG @T6/30/2025 | 4,828.74 | | 133,554.96 | | | |
| 610 | 009484 | 6/10/2025 | BRT | Base Rent | CR | Receipt | | 28,560.00 | 104,994.96 | 061025 | | EFT |
| 610 | 009484 | 6/10/2025 | BRT | Base Rent | CR | Receipt | | 28,560.00 | 76,434.96 | 061025 | | EFT |
| 610 | 009484 | 6/10/2025 | BRT | Base Rent | CR | Receipt | | 28,560.00 | 47,874.96 | 061025 | | EFT |
| 610 | 009484 | 6/10/2025 | BRT | Base Rent | CR | Receipt | | 28,560.00 | 19,314.96 | 061025 | | EFT |
| 610 | 009484 | 6/10/2025 | OPE | Operating Expenses | CR | Receipt | | 4,828.74 | 14,486.22 | 061025 | | EFT |
| 610 | 009484 | 6/10/2025 | OPE | Operating Expenses | CR | Receipt | | 4,828.74 | 9,657.48 | 061025 | | EFT |
| 610 | 009484 | 6/10/2025 | OPE | Operating Expenses | CR | Receipt | | 4,828.74 | 4,828.74 | 061025 | | EFT |
| 610 | 009484 | 6/10/2025 | OPE | Operating Expenses | CR | Receipt | | 4,828.74 | 0.00 | 061025 | | EFT |
| 610 | 009484 | 6/10/2025 | PPD | Prepaid Rental Income | CR | Prepaid Rent | | 16,759.50 | -16,759.50 | 061025 | | EFT |
| 610 | 009484 | 7/1/2025 | BRT | Base Rent | CH | AUTOCHRG @T7/31/2025 | 28,560.00 | | 11,800.50 | | | |
| 610 | 009484 | 7/1/2025 | OPE | Operating Expenses | CH | AUTOCHRG @T7/31/2025 | 4,828.74 | | 16,629.24 | | | |
| 610 | 009484 | 7/8/2025 | BRT | Base Rent | CR | Receipt | | 28,560.00 | -11,930.76 | 070825 | | EFT |
| 610 | 009484 | 7/8/2025 | OPE | Operating Expenses | CR | Receipt | | 4,828.74 | -16,759.50 | 070825 | | EFT |
| 610 | 009484 | 7/8/2025 | PPD | Prepaid Rental Income | CR | 07/25 PPD Rent | | 2,061.50 | -18,821.00 | 070825 | | EFT |

| Category | | Mo. Rep Charges | Beg Balance | Charges | Cash Receipts | N/C Credits | Refunds | End Balance | Sec Dep Bal |
|---|---|---|---|---|---|---|---|---|---|
| BRT | Base Rent | 30,621.50 | 57,120.00 | 85,680.00 | 142,800.00 | 0.00 | 0.00 | 0.00 | |
| CAM | Common Area Maintenance | 3,553.61 | 0.00 | 0.00 | 0.00 | 0.00 | 0.00 | 0.00 | |
| OPE | Operating Expenses | 0.00 | 9,657.48 | 14,486.22 | 24,143.70 | 0.00 | 0.00 | 0.00 | |
| PPD | Prepaid Rental Income | 0.00 | 0.00 | 0.00 | 18,821.00 | 0.00 | 0.00 | -18,821.00 | |
| | Total: | 34,175.11 | 66,777.48 | 100,166.22 | 185,764.70 | 0.00 | 0.00 | -18,821.00 | 0.00 |

**610-009485**    **Sezai Saran**    **Sezai Saran**    **(215) 449-9808**    **Master Occp Id: 000000001840-1**

Balance Forward    1,301.80

| Building | Lease | Date | Category | | SR | Description | Debit | Credit | Balance | Receipt Desc. | Invoice | Receipt Type |
|---|---|---|---|---|---|---|---|---|---|---|---|---|
| 610 | 009485 | 5/1/2025 | BRT | Base Rent | CH | AUTOCHRG @T5/31/2025 | 500.00 | | 1,801.80 | | | |
| 610 | 009485 | 5/1/2025 | OPE | Operating Expenses | CH | AUTOCHRG @T5/31/2025 | 150.90 | | 1,952.70 | | | |
| 610 | 009485 | 5/13/2025 | BRT | Base Rent | CR | Receipt | | 400.00 | 1,552.70 | 1041 | | CHK |
| 610 | 009485 | 6/1/2025 | BRT | Base Rent | CH | AUTOCHRG @T6/30/2025 | 500.00 | | 2,052.70 | | | |
| 610 | 009485 | 6/1/2025 | OPE | Operating Expenses | CH | AUTOCHRG @T6/30/2025 | 150.90 | | 2,203.60 | | | |
| 610 | 009485 | 6/4/2025 | PPD | Prepaid Rental Income | CR | 06/25 PPD Rent | | 400.00 | 1,803.60 | 1042 | | CHK |
| 610 | 009485 | 7/1/2025 | BRT | Base Rent | CH | AUTOCHRG @T7/31/2025 | 500.00 | | 2,303.60 | | | |
| 610 | 009485 | 7/1/2025 | OPE | Operating Expenses | CH | AUTOCHRG @T7/31/2025 | 150.90 | | 2,454.50 | | | |
| 610 | 009485 | 7/7/2025 | PPD | Prepaid Rental Income | CR | 07/25 PPD Rent | | 400.00 | 2,054.50 | 1031 | | CHK |

Appx1510

Date Filed: 11/24/2025    Page: 320    Document: 20    Case: 25-2598

| Database: | MSDE_CB | CM Receivables Ledger | Page: | 11 |
| BLDG: | 610 | Lincoln Property Company | Date: | 8/18/2025 |
| | | 610 Old York Road J | Time: | 7:09 AM |
| Occupancy Status: Current Inactive New | | 05/25 Through 07/25 | | |
| | | Security Deposit Ending Balance through 07/25 | | |

| Building | Lease | Date | Category | SR | Description | Debit | Credit | Balance | Receipt Desc. | Invoice | Receipt Type |
|---|---|---|---|---|---|---|---|---|---|---|---|

| Category | | Mo. Rep Charges | Beg Balance | Charges | Cash Receipts | N/C Credits | Refunds | End Balance | Sec Dep Bal |
|---|---|---|---|---|---|---|---|---|---|
| BRT | Base Rent | 500.00 | 1,000.00 | 1,500.00 | 400.00 | 0.00 | 0.00 | 2,100.00 | |
| OPE | Operating Expenses | 0.00 | 301.80 | 452.70 | 0.00 | 0.00 | 0.00 | 754.50 | |
| PPD | Prepaid Rental Income | 0.00 | 0.00 | 0.00 | 800.00 | 0.00 | 0.00 | -800.00 | |
| | Total: | 500.00 | 1,301.80 | 1,952.70 | 1,200.00 | 0.00 | 0.00 | 2,054.50 | 0.00 |

**610-009486    Temple University Health System    Shane McDevitt    Master Occp Id: 000000001841-1**

| Building | Lease | Date | Category | | SR | Description | Debit | Credit | Balance | Receipt Desc. | Receipt Type |
|---|---|---|---|---|---|---|---|---|---|---|---|
| | | | | Balance Forward | | | | | 74,147.88 | | |
| 610 | 009486 | 5/1/2025 | BRT | Base Rent | CH | AUTOCHRG @T5/31/2025 | 22,825.83 | | 96,973.71 | | |
| 610 | 009486 | 5/1/2025 | OPE | Operating Expenses | CH | AUTOCHRG @T5/31/2025 | 8,140.95 | | 105,114.66 | | |
| 610 | 009486 | 5/1/2025 | RET | Real Estate Taxes | CH | AUTOCHRG @T5/31/2025 | 6,107.16 | | 111,221.82 | | |
| 610 | 009486 | 6/1/2025 | BRT | Base Rent | CH | AUTOCHRG @T6/30/2025 | 22,825.83 | | 134,047.65 | | |
| 610 | 009486 | 6/1/2025 | OPE | Operating Expenses | CH | AUTOCHRG @T6/30/2025 | 8,140.95 | | 142,188.60 | | |
| 610 | 009486 | 6/1/2025 | RET | Real Estate Taxes | CH | AUTOCHRG @T6/30/2025 | 6,107.16 | | 148,295.76 | | |
| 610 | 009486 | 6/11/2025 | BRT | Base Rent | CR | Receipt | | 22,825.83 | 125,469.93 | 2825881 | EFT |
| 610 | 009486 | 6/11/2025 | BRT | Base Rent | CR | Receipt | | 22,825.83 | 102,644.10 | 2825881 | EFT |
| 610 | 009486 | 6/11/2025 | BRT | Base Rent | CR | Receipt | | 22,825.83 | 79,818.27 | 2825881 | EFT |
| 610 | 009486 | 6/11/2025 | BRT | Base Rent | CR | Receipt | | 22,825.83 | 56,992.44 | 2825881 | EFT |
| 610 | 009486 | 6/11/2025 | OPE | Operating Expenses | CR | Receipt | | 8,140.95 | 48,851.49 | 2825881 | EFT |
| 610 | 009486 | 6/11/2025 | OPE | Operating Expenses | CR | Receipt | | 8,140.95 | 40,710.54 | 2825881 | EFT |
| 610 | 009486 | 6/11/2025 | OPE | Operating Expenses | CR | Receipt | | 8,140.95 | 32,569.59 | 2825881 | EFT |
| 610 | 009486 | 6/11/2025 | OPE | Operating Expenses | CR | Receipt | | 8,140.95 | 24,428.64 | 2825881 | EFT |
| 610 | 009486 | 6/11/2025 | RET | Real Estate Taxes | CR | Receipt | | 6,107.16 | 18,321.48 | 2825881 | EFT |
| 610 | 009486 | 6/11/2025 | RET | Real Estate Taxes | CR | Receipt | | 6,107.16 | 12,214.32 | 2825881 | EFT |
| 610 | 009486 | 6/11/2025 | RET | Real Estate Taxes | CR | Receipt | | 6,107.16 | 6,107.16 | 2825881 | EFT |
| 610 | 009486 | 6/11/2025 | RET | Real Estate Taxes | CR | Receipt | | 6,107.16 | 0.00 | 2825881 | EFT |
| 610 | 009486 | 6/27/2025 | PPD | Prepaid Rental Income | CR | 02/25 Prepaid Rent | | 37,073.94 | -37,073.94 | PSG0225 | EFT |
| 610 | 009486 | 6/27/2025 | PPD | Prepaid Rental Income | CR | 03/25 PPD Rent | | 37,073.94 | -74,147.88 | PSG0325 | EFT |
| 610 | 009486 | 6/30/2025 | BRT | Base Rent | CH | 02/2025 Base Rent | 22,825.83 | | -51,322.05 | | |
| 610 | 009486 | 6/30/2025 | OPE | Operating Expenses | CH | 02/2025 Operating Expenses | 8,140.95 | | -43,181.10 | | |
| 610 | 009486 | 6/30/2025 | RET | Real Estate Taxes | CH | 02/2025 Real Estate Taxes | 6,107.16 | | -37,073.94 | | |
| 610 | 009486 | 7/1/2025 | BRT | Base Rent | CH | AUTOCHRG @T7/31/2025 | 22,825.83 | | -14,248.11 | | |
| 610 | 009486 | 7/1/2025 | OPE | Operating Expenses | CH | AUTOCHRG @T7/31/2025 | 8,140.95 | | -6,107.16 | | |

Appx1511

| Database: | MSDE_CB | | CM Receivables Ledger | | | | Page: | 12 |
|---|---|---|---|---|---|---|---|---|
| BLDG: | 610 | | Lincoln Property Company | | | | Date: | 8/18/2025 |
| | | | 610 Old York Road J | | | | Time: | 7:09 AM |
| Occupancy Status: Current Inactive New | | | 05/25 Through 07/25 | | | | | |
| | | | Security Deposit Ending Balance through 07/25 | | | | | |

| Building | Lease | Date | Category | | SR | Description | Debit | Credit | Balance | Receipt Desc. | Invoice | Receipt Type |
|---|---|---|---|---|---|---|---|---|---|---|---|---|
| 610 | 009486 | 7/1/2025 | RET | Real Estate Taxes | CH | AUTOCHRG @T7/31/2025 | 6,107.16 | | 0.00 | | | APL |
| 610 | 009486 | 7/9/2025 | BRT | Base Rent | CR | CreditApply | | 22,825.83 | -22,825.83 | PSG0225 | | APL |
| 610 | 009486 | 7/9/2025 | OPE | Operating Expenses | CR | CreditApply | | 8,140.95 | -30,966.78 | PSG0225 | | APL |
| 610 | 009486 | 7/9/2025 | PPD | Prepaid Rental Income | PR | CreditApply | 37,073.94 | | 6,107.16 | PSG0225 | | APL |
| 610 | 009486 | 7/9/2025 | RET | Real Estate Taxes | CR | CreditApply | | 6,107.16 | 0.00 | PSG0225 | | APL |
| 610 | 009486 | 7/25/2025 | PPD | Prepaid Rental Income | CR | 08/25 PPD Rent | | 37,073.94 | -37,073.94 | 0056487 | | EFT |

| Category | | Mo. Rep Charges | Beg Balance | Charges | Cash Receipts | N/C Credits | Refunds | End Balance | Sec Dep Bal |
|---|---|---|---|---|---|---|---|---|---|
| BRT | Base Rent | 22,825.83 | 45,651.66 | 91,303.32 | 114,129.15 | 0.00 | 0.00 | 22,825.83 | |
| CAM | Common Area Maintenance | 4,585.26 | 0.00 | 0.00 | 0.00 | 0.00 | 0.00 | 0.00 | |
| OPE | Operating Expenses | 0.00 | 16,281.90 | 32,563.80 | 40,704.75 | 0.00 | 0.00 | 8,140.95 | |
| PPD | Prepaid Rental Income | 0.00 | 0.00 | 0.00 | 74,147.88 | 0.00 | 0.00 | -74,147.88 | |
| RET | Real Estate Taxes | 554.93 | 12,214.32 | 24,428.64 | 30,535.80 | 0.00 | 0.00 | 6,107.16 | |
| | Total: | 27,966.02 | 74,147.88 | 148,295.76 | 259,517.58 | 0.00 | 0.00 | -37,073.94 | 0.00 |

| 610-009487 | Temple University Health System, Inc. | Shane McDevitt | (215) 449-9808 | Master Occp Id: 000000001842-1 |
|---|---|---|---|---|

| | | | | | | Balance Forward | | | 91,350.74 | | | |
|---|---|---|---|---|---|---|---|---|---|---|---|---|

| Building | Lease | Date | Category | | SR | Description | Debit | Credit | Balance | Receipt Desc. | Invoice | Receipt Type |
|---|---|---|---|---|---|---|---|---|---|---|---|---|
| 610 | 009487 | 5/1/2025 | BRT | Base Rent | CH | AUTOCHRG @T5/31/2025 | 29,033.58 | | 120,384.32 | | | |
| 610 | 009487 | 5/1/2025 | OPE | Operating Expenses | CH | AUTOCHRG @T5/31/2025 | 9,508.63 | | 129,892.95 | | | |
| 610 | 009487 | 5/1/2025 | RET | Real Estate Taxes | CH | AUTOCHRG @T5/31/2025 | 7,133.16 | | 137,026.11 | | | |
| 610 | 009487 | 6/1/2025 | BRT | Base Rent | CH | AUTOCHRG @T6/30/2025 | 29,033.58 | | 166,059.69 | | | |
| 610 | 009487 | 6/1/2025 | OPE | Operating Expenses | CH | AUTOCHRG @T6/30/2025 | 9,508.63 | | 175,568.32 | | | |
| 610 | 009487 | 6/1/2025 | RET | Real Estate Taxes | CH | AUTOCHRG @T6/30/2025 | 7,133.16 | | 182,701.48 | | | |
| 610 | 009487 | 6/11/2025 | BRT | Base Rent | CR | Receipt | | 29,033.58 | 153,667.90 | 825881 | | EFT |
| 610 | 009487 | 6/11/2025 | BRT | Base Rent | CR | Receipt | | 29,033.58 | 124,634.32 | 825881 | | EFT |
| 610 | 009487 | 6/11/2025 | BRT | Base Rent | CR | Receipt | | 29,033.58 | 95,600.74 | 825881 | | EFT |
| 610 | 009487 | 6/11/2025 | BRT | Base Rent | CR | Receipt | | 29,033.58 | 66,567.16 | 825881 | | EFT |
| 610 | 009487 | 6/11/2025 | OPE | Operating Expenses | CR | Receipt | | 9,508.63 | 57,058.53 | 825881 | | EFT |
| 610 | 009487 | 6/11/2025 | OPE | Operating Expenses | CR | Receipt | | 9,508.63 | 47,549.90 | 825881 | | EFT |
| 610 | 009487 | 6/11/2025 | OPE | Operating Expenses | CR | Receipt | | 9,508.63 | 38,041.27 | 825881 | | EFT |
| 610 | 009487 | 6/11/2025 | OPE | Operating Expenses | CR | Receipt | | 9,508.63 | 28,532.64 | 825881 | | EFT |
| 610 | 009487 | 6/11/2025 | RET | Real Estate Taxes | CR | Receipt | | 7,133.16 | 21,399.48 | 825881 | | EFT |
| 610 | 009487 | 6/11/2025 | RET | Real Estate Taxes | CR | Receipt | | 7,133.16 | 14,266.32 | 825881 | | EFT |
| 610 | 009487 | 6/11/2025 | RET | Real Estate Taxes | CR | Receipt | | 7,133.16 | 7,133.16 | 825881 | | EFT |

Appx1512

Case: 25-2598    Document: 20    Page: 322    Date Filed: 11/24/2025

| | | | | | | | | | Receipt | | Receipt |
|---|---|---|---|---|---|---|---|---|---|---|---|
| Database: | MSDE_CB | | | | CM Receivables Ledger | | | | | Page: | 13 |
| BLDG: | 610 | | | | Lincoln Property Company | | | | | Date: | 8/18/2025 |
| | | | | | 610 Old York Road J | | | | | Time: | 7:09 AM |
| Occupancy Status: Current Inactive New | | | | | 05/25 Through 07/25 | | | | | | |
| | | | | | Security Deposit Ending Balance through 07/25 | | | | | | |

| Building | Lease | Date | Category | | SR | Description | Debit | Credit | Balance | Receipt Desc. | Invoice | Receipt Type |
|---|---|---|---|---|---|---|---|---|---|---|---|---|
| 610 | 009487 | 6/11/2025 | RET | Real Estate Taxes | CR | Receipt | | 7,133.16 | 0.00 | 825881 | | EFT |
| 610 | 009487 | 6/27/2025 | PPD | Prepaid Rental Income | CR | 02/25 PPD Rent | | 45,675.37 | -45,675.37 | PSG0225 | | EFT |
| 610 | 009487 | 6/27/2025 | PPD | Prepaid Rental Income | CR | 03/25 PPD Rent | | 45,675.37 | -91,350.74 | PSG0325 | | EFT |
| 610 | 009487 | 6/30/2025 | BRT | Base Rent | CH | 02/2025 Base Rent | 29,033.58 | | -62,317.16 | | | |
| 610 | 009487 | 6/30/2025 | OPE | Operating Expenses | CH | 02/2025 Operating Expenses | 9,508.63 | | -52,808.53 | | | |
| 610 | 009487 | 6/30/2025 | RET | Real Estate Taxes | CH | 02/2025 Real Estate Taxes | 7,133.16 | | -45,675.37 | | | |
| 610 | 009487 | 7/1/2025 | BRT | Base Rent | CH | AUTOCHRG @T7/31/2025 | 29,033.58 | | -16,641.79 | | | |
| 610 | 009487 | 7/1/2025 | OPE | Operating Expenses | CH | AUTOCHRG @T7/31/2025 | 9,508.63 | | -7,133.16 | | | |
| 610 | 009487 | 7/1/2025 | RET | Real Estate Taxes | CH | AUTOCHRG @T7/31/2025 | 7,133.16 | | 0.00 | | | |
| 610 | 009487 | 7/9/2025 | BRT | Base Rent | CR | CreditApply | | 29,033.58 | -29,033.58 | PSG0225 | | APL |
| 610 | 009487 | 7/9/2025 | OPE | Operating Expenses | CR | CreditApply | | 9,508.63 | -38,542.21 | PSG0225 | | APL |
| 610 | 009487 | 7/9/2025 | PPD | Prepaid Rental Income | PR | CreditApply | 45,675.37 | | 7,133.16 | PSG0225 | | APL |
| 610 | 009487 | 7/9/2025 | RET | Real Estate Taxes | CR | CreditApply | | 7,133.16 | 0.00 | PSG0225 | | APL |
| 610 | 009487 | 7/25/2025 | PPD | Prepaid Rental Income | CR | 08/25 PPD Rent | | 45,675.37 | -45,675.37 | 0056487 | | EFT |

| Category | | Mo. Rep Charges | Beg Balance | Charges | Cash Receipts | N/C Credits | Refunds | End Balance | Sec Dep Bal |
|---|---|---|---|---|---|---|---|---|---|
| BRT | Base Rent | 29,033.58 | 58,067.16 | 116,134.32 | 145,167.90 | 0.00 | 0.00 | 29,033.58 | |
| CAM | Common Area Maintenance | 3,468.77 | 0.00 | 0.00 | 0.00 | 0.00 | 0.00 | 0.00 | |
| OPE | Operating Expenses | 0.00 | 19,017.26 | 38,034.52 | 47,543.15 | 0.00 | 0.00 | 9,508.63 | |
| PPD | Prepaid Rental Income | 0.00 | 0.00 | 0.00 | 91,350.74 | 0.00 | 0.00 | -91,350.74 | |
| RET | Real Estate Taxes | 54.68 | 14,266.32 | 28,532.64 | 35,665.80 | 0.00 | 0.00 | 7,133.16 | |
| | Total: | 32,557.03 | 91,350.74 | 182,701.48 | 319,727.59 | 0.00 | 0.00 | -45,675.37 | 0.00 |

**610-009497        Trumark Financial Credit Union        Trumark Financial                                Master Occp Id:  000000001852-1**

| | | | | | | | | | |
|---|---|---|---|---|---|---|---|---|---|
| | Balance Forward | | | | | | | 1,500.00 | |

| Building | Lease | Date | Category | | SR | Description | Debit | Credit | Balance | Receipt Desc. | Receipt Type |
|---|---|---|---|---|---|---|---|---|---|---|---|
| 610 | 009497 | 5/1/2025 | PAR | Parking | CH | AUTOCHRG @T5/31/2025 | 1,500.00 | | 3,000.00 | | |
| 610 | 009497 | 6/1/2025 | PAR | Parking | CH | AUTOCHRG @T6/30/2025 | 1,500.00 | | 4,500.00 | | |
| 610 | 009497 | 6/27/2025 | PAR | Parking | CR | Receipt | | 1,500.00 | 3,000.00 | PSG0425 | EFT |
| 610 | 009497 | 6/27/2025 | PAR | Parking | CR | Receipt | | 1,500.00 | 1,500.00 | PSG0525 | EFT |
| 610 | 009497 | 6/27/2025 | PAR | Parking | CR | Receipt | | 1,500.00 | 0.00 | PSG0625 | EFT |
| 610 | 009497 | 6/27/2025 | PPD | Prepaid Rental Income | CR | 07/25 PPD Rent | | 1,500.00 | -1,500.00 | PSG0725 | EFT |
| 610 | 009497 | 6/27/2025 | PPD | Prepaid Rental Income | CR | 02/25 PPD Rent | | 1,500.00 | -3,000.00 | PSG0225 | EFT |
| 610 | 009497 | 6/27/2025 | PPD | Prepaid Rental Income | CR | 03/25 PPD Rent | | 1,500.00 | -4,500.00 | PSG0325 | EFT |
| 610 | 009497 | 6/30/2025 | PAR | Parking | CH | 02/2025 Parking Rent | 1,500.00 | | -3,000.00 | | |
| 610 | 009497 | 6/30/2025 | PAR | Parking | CH | 03/2025 Parking Rent | 1,500.00 | | -1,500.00 | | |

Appx1513

Date Filed: 11/24/2025    Page: 323    Document: 20    Case: 25-2598

| Database: | MSDE_CB | | CM Receivables Ledger | | | | Page: | 14 |
| --- | --- | --- | --- | --- | --- | --- | --- | --- |
| BLDG: | 610 | | Lincoln Property Company | | | | Date: | 8/18/2025 |
| | | | 610 Old York Road J | | | | Time: | 7:09 AM |
| Occupancy Status: Current Inactive New | | | 05/25 Through 07/25 | | | | | |
| | | | Security Deposit Ending Balance through 07/25 | | | | | |

| Building | Lease | Date | Category | | SR | Description | Debit | Credit | Balance | Receipt Desc. | Invoice | Receipt Type |
| --- | --- | --- | --- | --- | --- | --- | --- | --- | --- | --- | --- | --- |
| 610 | 009497 | 7/1/2025 | PAR | Parking | CH | AUTOCHRG @T7/31/2025 | 1,500.00 | | 0.00 | | | APL |
| 610 | 009497 | 7/7/2025 | PAR | Parking | CR | CreditApply | | 1,500.00 | -1,500.00 | PSG0725 | | APL |
| 610 | 009497 | 7/7/2025 | PPD | Prepaid Rental Income | PR | CreditApply | 1,500.00 | | 0.00 | PSG0725 | | APL |
| 610 | 009497 | 7/9/2025 | PAR | Parking | CR | CreditApply | | 1,500.00 | -1,500.00 | PSG0225 | | APL |
| 610 | 009497 | 7/9/2025 | PAR | Parking | CR | CreditApply | | 1,500.00 | -3,000.00 | PSG0325 | | APL |
| 610 | 009497 | 7/9/2025 | PPD | Prepaid Rental Income | PR | CreditApply | 1,500.00 | | -1,500.00 | PSG0225 | | APL |
| 610 | 009497 | 7/9/2025 | PPD | Prepaid Rental Income | PR | CreditApply | 1,500.00 | | 0.00 | PSG0325 | | APL |

| Category | | Mo. Rep Charges | Beg Balance | Charges | Cash Receipts | N/C Credits | Refunds | End Balance | Sec Dep Bal |
| --- | --- | --- | --- | --- | --- | --- | --- | --- | --- |
| PAR | Parking | 1,500.00 | 1,500.00 | 7,500.00 | 9,000.00 | 0.00 | 0.00 | 0.00 | |
| | **Total:** | **1,500.00** | **1,500.00** | **7,500.00** | **9,000.00** | **0.00** | **0.00** | **0.00** | **0.00** |

**Totals for 610:**

| Category | | Mo. Rep Charges | Beg Balance | Charges | Cash Receipts | N/C Credits | Refunds | End Balance | Sec Dep Bal |
| --- | --- | --- | --- | --- | --- | --- | --- | --- | --- |
| ABA | Abatement - Base Rent | -11,000.00 | -5,500.00 | 0.00 | -16,500.00 | 16,500.00 | 0.00 | -5,500.00 | |
| BRT | Base Rent | 269,466.55 | 520,504.68 | 905,735.89 | 953,502.90 | 0.00 | 0.00 | 472,737.67 | |
| CAM | Common Area Maintenance | 63,339.17 | 0.00 | 0.00 | 0.00 | 0.00 | 0.00 | 0.00 | |
| OPE | Operating Expenses | 0.00 | 116,364.70 | 194,765.04 | 124,020.18 | 0.00 | 0.00 | 187,109.56 | |
| PAR | Parking | 1,500.00 | 1,500.00 | 7,500.00 | 9,000.00 | 0.00 | 0.00 | 0.00 | |
| PPD | Prepaid Rental Income | 0.00 | -332,404.19 | 0.00 | 153,849.35 | 0.00 | 0.00 | -486,253.54 | |
| RET | Real Estate Taxes | 12,665.16 | 32,078.70 | 64,157.40 | 80,196.75 | 0.00 | 0.00 | 16,039.35 | |
| | **BLDG Total:** | **335,970.88** | **332,543.89** | **1,172,158.33** | **1,304,069.18** | **16,500.00** | **0.00** | **184,133.04** | **0.00** |

**Grand Totals:**

| Category | | Mo. Rep Charges | Beg Balance | Charges | Cash Receipts | N/C Credits | Refunds | End Balance | Sec Dep Bal |
| --- | --- | --- | --- | --- | --- | --- | --- | --- | --- |
| ABA | Abatement - Base Rent | -11,000.00 | -5,500.00 | 0.00 | -16,500.00 | 16,500.00 | 0.00 | -5,500.00 | |
| BRT | Base Rent | 269,466.55 | 520,504.68 | 905,735.89 | 953,502.90 | 0.00 | 0.00 | 472,737.67 | |
| CAM | Common Area Maintenance | 63,339.17 | 0.00 | 0.00 | 0.00 | 0.00 | 0.00 | 0.00 | |
| OPE | Operating Expenses | 0.00 | 116,364.70 | 194,765.04 | 124,020.18 | 0.00 | 0.00 | 187,109.56 | |
| PAR | Parking | 1,500.00 | 1,500.00 | 7,500.00 | 9,000.00 | 0.00 | 0.00 | 0.00 | |
| PPD | Prepaid Rental Income | 0.00 | -332,404.19 | 0.00 | 153,849.35 | 0.00 | 0.00 | -486,253.54 | |
| RET | Real Estate Taxes | 12,665.16 | 32,078.70 | 64,157.40 | 80,196.75 | 0.00 | 0.00 | 16,039.35 | |
| | **Grand Total:** | **335,970.88** | **332,543.89** | **1,172,158.33** | **1,304,069.18** | **16,500.00** | **0.00** | **184,133.04** | **0.00** |

Appx1514

| Database: | MSDE_CB | | | **Aged Delinquencies** | | | | Page: | 1 |
|---|---|---|---|---|---|---|---|---|---|
| Report ID: | MP_CMAGEDEL1 | | | Period: 07/25 | | | | Date: | 8/18/2025 |
| BLDG: | 610 | | | | | | | Time: | 7:10 AM |
| | | | | **610 Old York Road J** | | | | | |
| | | | | Lincoln Property Company | | | | User ID: | CPARNELL |

| Invoice Date | Category | Description | Source | Amount | Current | 1 Month | 2 Months | 3 Months | 4 Months |
|---|---|---|---|---|---|---|---|---|---|
| 610-009473 | | **Bethany Christian Services of Greater D** | | Master Occupant Id: 000000001828-1 | | | Day Due: 0 | Delq Day: | 0 |
| | | Heather N. Bert | | 201 Current | | | | Last Payment: | 7/31/2025 17,561.23 |
| | | (215) 870-7044 | | | | | | | |
| 3/1/2025 | OPE | AUTOCHRG @T3/31/2025 @R | CH | 4,074.25 | 0.00 | 0.00 | 0.00 | 0.00 | 4,074.25 |
| 4/1/2025 | OPE | AUTOCHRG @T4/30/2025 | CH | 4,074.25 | 0.00 | 0.00 | 0.00 | 4,074.25 | 0.00 |
| 5/1/2025 | OPE | AUTOCHRG @T5/31/2025 | CH | 4,074.25 | 0.00 | 0.00 | 4,074.25 | 0.00 | 0.00 |
| 6/1/2025 | OPE | AUTOCHRG @T6/30/2025 | CH | 4,074.25 | 0.00 | 4,074.25 | 0.00 | 0.00 | 0.00 |
| 7/1/2025 | OPE | AUTOCHRG @T7/31/2025 | CH | 4,074.25 | 4,074.25 | 0.00 | 0.00 | 0.00 | 0.00 |
| 7/31/2025 | PPD | 08/25 PPD Rent | CR | -17,561.23 | -17,561.23 | 0.00 | 0.00 | 0.00 | 0.00 |
| | OPE | Operating Expenses | | 20,371.25 | 4,074.25 | 4,074.25 | 4,074.25 | 4,074.25 | 4,074.25 |
| | PPD | Prepaid Rental Income | | -17,561.23 | -17,561.23 | 0.00 | 0.00 | 0.00 | 0.00 |
| | | **Bethany Christian Services of Greater Dela** | | 2,810.02 | -13,486.98 | 4,074.25 | 4,074.25 | 4,074.25 | 4,074.25 |
| 610-009474 | | **Cypher Group Holdings** | | Master Occupant Id: 000000001829-1 | | | Day Due: 1 | Delq Day: | |
| | | Scott Taitleman | | 210 Current | | | | Last Payment: | 8/5/2025 2,125.58 |
| | | (877) 297-4376 | | | | | | | |
| 3/1/2025 | BRT | AUTOCHRG @T3/31/2025 @R | CH | 2,125.58 | 0.00 | 0.00 | 0.00 | 0.00 | 2,125.58 |
| 3/1/2025 | OPE | AUTOCHRG @T3/31/2025 @R | CH | 754.49 | 0.00 | 0.00 | 0.00 | 0.00 | 754.49 |
| 4/1/2025 | OPE | AUTOCHRG @T4/30/2025 | CH | 754.49 | 0.00 | 0.00 | 0.00 | 754.49 | 0.00 |
| 5/1/2025 | OPE | AUTOCHRG @T5/31/2025 | CH | 754.49 | 0.00 | 0.00 | 754.49 | 0.00 | 0.00 |
| 6/1/2025 | OPE | AUTOCHRG @T6/30/2025 | CH | 754.49 | 0.00 | 754.49 | 0.00 | 0.00 | 0.00 |
| 7/1/2025 | OPE | AUTOCHRG @T7/31/2025 | CH | 754.49 | 754.49 | 0.00 | 0.00 | 0.00 | 0.00 |
| | BRT | Base Rent | | 2,125.58 | 0.00 | 0.00 | 0.00 | 0.00 | 2,125.58 |
| | OPE | Operating Expenses | | 3,772.45 | 754.49 | 754.49 | 754.49 | 754.49 | 754.49 |
| | | **Cypher Group Holdings Total:** | | 5,898.03 | 754.49 | 754.49 | 754.49 | 754.49 | 2,880.07 |
| 610-009475 | | **Kristen Givens and Dante Givens** | | Master Occupant Id: 000000001830-1 | | | Day Due: 1 | Delq Day: | |
| | | Kristin Givens | | 650 Current | | | | Last Payment: | 6/10/2025 500.00 |
| | | (267) 670-0288 | | | | | | | |
| 3/1/2025 | OPE | AUTOCHRG @T3/31/2025 @R | CH | 1,267.54 | 0.00 | 0.00 | 0.00 | 0.00 | 1,267.54 |
| 4/1/2025 | BRT | AUTOCHRG @T4/30/2025 @R | CH | 5,500.00 | 0.00 | 0.00 | 0.00 | 5,500.00 | 0.00 |
| 4/1/2025 | OPE | AUTOCHRG @T4/30/2025 | CH | 1,267.54 | 0.00 | 0.00 | 0.00 | 1,267.54 | 0.00 |
| 5/1/2025 | BRT | AUTOCHRG @T5/31/2025 | CH | 5,500.00 | 0.00 | 0.00 | 5,500.00 | 0.00 | 0.00 |
| 5/1/2025 | OPE | AUTOCHRG @T5/31/2025 | CH | 1,267.54 | 0.00 | 0.00 | 1,267.54 | 0.00 | 0.00 |
| 6/1/2025 | OPE | AUTOCHRG @T6/30/2025 | CH | 1,267.54 | 0.00 | 1,267.54 | 0.00 | 0.00 | 0.00 |
| 7/1/2025 | ABA | AUTOCRDT @T7/31/2025 | NC | -5,500.00 | -5,500.00 | 0.00 | 0.00 | 0.00 | 0.00 |
| 7/1/2025 | BRT | AUTOCHRG @T7/31/2025 | CH | 11,000.00 | 11,000.00 | 0.00 | 0.00 | 0.00 | 0.00 |
| 7/1/2025 | OPE | AUTOCHRG @T7/31/2025 | CH | 1,267.54 | 1,267.54 | 0.00 | 0.00 | 0.00 | 0.00 |
| | ABA | Abatement - Base Rent | | -5,500.00 | -5,500.00 | 0.00 | 0.00 | 0.00 | 0.00 |
| | BRT | Base Rent | | 22,000.00 | 11,000.00 | 0.00 | 5,500.00 | 5,500.00 | 0.00 |
| | OPE | Operating Expenses | | 6,337.70 | 1,267.54 | 1,267.54 | 1,267.54 | 1,267.54 | 1,267.54 |
| | | **Kristen Givens and Dante Givens Total:** | | 22,837.70 | 6,767.54 | 1,267.54 | 6,767.54 | 6,767.54 | 1,267.54 |
| 610-009476 | | **Goldstein Law Partners, LLC** | | Master Occupant Id: 000000001831-1 | | | Day Due: 1 | Delq Day: | |
| | | Goldstein Law Partners, LLC | | 340 Current | | | | Last Payment: | |
| | | (267) 627-2485 | | | | | | | |
| 3/1/2025 | BRT | AUTOCHRG @T3/31/2025 @R | CH | 10,000.00 | 0.00 | 0.00 | 0.00 | 0.00 | 10,000.00 |
| 3/1/2025 | OPE | AUTOCHRG @T3/31/2025 @R | CH | 1,207.18 | 0.00 | 0.00 | 0.00 | 0.00 | 1,207.18 |
| 4/1/2025 | BRT | AUTOCHRG @T4/30/2025 | CH | 10,000.00 | 0.00 | 0.00 | 0.00 | 10,000.00 | 0.00 |
| 4/1/2025 | OPE | AUTOCHRG @T4/30/2025 | CH | 1,207.18 | 0.00 | 0.00 | 0.00 | 1,207.18 | 0.00 |
| 5/1/2025 | BRT | AUTOCHRG @T5/31/2025 | CH | 10,000.00 | 0.00 | 0.00 | 10,000.00 | 0.00 | 0.00 |
| 5/1/2025 | OPE | AUTOCHRG @T5/31/2025 | CH | 1,207.18 | 0.00 | 0.00 | 1,207.18 | 0.00 | 0.00 |

Appx1515

| Database: | MSDE_CB | | **Aged Delinquencies** | | | | Page: | 2 |
|---|---|---|---|---|---|---|---|---|
| Report ID: | MP_CMAGEDEL1 | | Period: 07/25 | | | | Date: | 8/18/2025 |
| BLDG: | 610 | | | | | | Time: | 7:10 AM |
| | | | **610 Old York Road J** | | | | | |
| | | | Lincoln Property Company | | | | User ID: | CPARNELL |

| Invoice Date | Category | Description | Source | Amount | Current | 1 Month | 2 Months | 3 Months | 4 Months |
|---|---|---|---|---|---|---|---|---|---|
| 6/1/2025 | BRT | AUTOCHRG @T6/30/2025 | CH | 10,000.00 | 0.00 | 10,000.00 | 0.00 | 0.00 | 0.00 |
| 6/1/2025 | OPE | AUTOCHRG @T6/30/2025 | CH | 1,207.18 | 0.00 | 1,207.18 | 0.00 | 0.00 | 0.00 |
| 7/1/2025 | BRT | AUTOCHRG @T7/31/2025 | CH | 10,000.00 | 10,000.00 | 0.00 | 0.00 | 0.00 | 0.00 |
| 7/1/2025 | OPE | AUTOCHRG @T7/31/2025 | CH | 1,207.18 | 1,207.18 | 0.00 | 0.00 | 0.00 | 0.00 |
| | BRT | Base Rent | | 50,000.00 | 10,000.00 | 10,000.00 | 10,000.00 | 10,000.00 | 10,000.00 |
| | OPE | Operating Expenses | | 6,035.90 | 1,207.18 | 1,207.18 | 1,207.18 | 1,207.18 | 1,207.18 |
| **Goldstein Law Partners, LLC Total:** | | | | 56,035.90 | 11,207.18 | 11,207.18 | 11,207.18 | 11,207.18 | 11,207.18 |

| 610-009477 | | **Helping Hands Family** | | Master Occupant Id: 000000001832-1 | | | Day Due: 1 | Delq Day: | |
|---|---|---|---|---|---|---|---|---|---|
| | | Helping Hands Family | | 640 Current | | | Last Payment: | 8/1/2025 | 8,371.86 |
| | | (267) 772-6006 | | | | | | | |
| 3/1/2025 | OPE | AUTOCHRG @T3/31/2025 @R | CH | 1,237.36 | 0.00 | 0.00 | 0.00 | 0.00 | 1,237.36 |
| 4/1/2025 | OPE | AUTOCHRG @T4/30/2025 | CH | 1,237.36 | 0.00 | 0.00 | 0.00 | 1,237.36 | 0.00 |
| 5/1/2025 | OPE | AUTOCHRG @T5/31/2025 | CH | 1,237.35 | 0.00 | 0.00 | 1,237.35 | 0.00 | 0.00 |
| 6/1/2025 | OPE | AUTOCHRG @T6/30/2025 | CH | 1,237.36 | 0.00 | 1,237.36 | 0.00 | 0.00 | 0.00 |
| 7/1/2025 | BRT | AUTOCHRG @T7/31/2025 @R | CH | 209.30 | 209.30 | 0.00 | 0.00 | 0.00 | 0.00 |
| 7/1/2025 | OPE | AUTOCHRG @T7/31/2025 | CH | 1,237.36 | 1,237.36 | 0.00 | 0.00 | 0.00 | 0.00 |
| | BRT | Base Rent | | 209.30 | 209.30 | 0.00 | 0.00 | 0.00 | 0.00 |
| | OPE | Operating Expenses | | 6,186.79 | 1,237.36 | 1,237.36 | 1,237.35 | 1,237.36 | 1,237.36 |
| **Helping Hands Family Total:** | | | | 6,396.09 | 1,446.66 | 1,237.36 | 1,237.35 | 1,237.36 | 1,237.36 |

| 610-009478 | | **Jenkins Storage, LLC** | | Master Occupant Id: 000000001833-1 | | | Day Due: 1 | Delq Day: | |
|---|---|---|---|---|---|---|---|---|---|
| | | Jenkins Storage | | G100 Current | | | Last Payment: | | |
| | | (215) 277-1367 | | | | | | | |
| 3/1/2025 | BRT | AUTOCHRG @T3/31/2025 @R | CH | 40,000.00 | 0.00 | 0.00 | 0.00 | 0.00 | 40,000.00 |
| 3/1/2025 | OPE | AUTOCHRG @T3/31/2025 @R | CH | 12,071.84 | 0.00 | 0.00 | 0.00 | 0.00 | 12,071.84 |
| 4/1/2025 | BRT | AUTOCHRG @T4/30/2025 | CH | 40,000.00 | 0.00 | 0.00 | 0.00 | 40,000.00 | 0.00 |
| 4/1/2025 | OPE | AUTOCHRG @T4/30/2025 | CH | 12,071.84 | 0.00 | 0.00 | 0.00 | 12,071.84 | 0.00 |
| 5/1/2025 | BRT | AUTOCHRG @T5/31/2025 | CH | 40,000.00 | 0.00 | 0.00 | 40,000.00 | 0.00 | 0.00 |
| 5/1/2025 | OPE | AUTOCHRG @T5/31/2025 | CH | 12,071.84 | 0.00 | 0.00 | 12,071.84 | 0.00 | 0.00 |
| 6/1/2025 | BRT | AUTOCHRG @T6/30/2025 | CH | 40,000.00 | 0.00 | 40,000.00 | 0.00 | 0.00 | 0.00 |
| 6/1/2025 | OPE | AUTOCHRG @T6/30/2025 | CH | 12,071.84 | 0.00 | 12,071.84 | 0.00 | 0.00 | 0.00 |
| 7/1/2025 | BRT | AUTOCHRG @T7/31/2025 | CH | 40,000.00 | 40,000.00 | 0.00 | 0.00 | 0.00 | 0.00 |
| 7/1/2025 | OPE | AUTOCHRG @T7/31/2025 | CH | 12,071.84 | 12,071.84 | 0.00 | 0.00 | 0.00 | 0.00 |
| | BRT | Base Rent | | 200,000.00 | 40,000.00 | 40,000.00 | 40,000.00 | 40,000.00 | 40,000.00 |
| | OPE | Operating Expenses | | 60,359.20 | 12,071.84 | 12,071.84 | 12,071.84 | 12,071.84 | 12,071.84 |
| **Jenkins Storage, LLC Total:** | | | | 260,359.20 | 52,071.84 | 52,071.84 | 52,071.84 | 52,071.84 | 52,071.84 |

| 610-009479 | | **Jersey College** | | Master Occupant Id: 000000001834-1 | | | Day Due: 1 | Delq Day: | |
|---|---|---|---|---|---|---|---|---|---|
| | | Greg Karzhevsky | | 100 Current | | | Last Payment: | 7/28/2025 | 64,387.38 |
| | | (201) 839-6211 | | | | | | | |
| 3/1/2025 | BRT | AUTOCHRG @T3/31/2025 @R | CH | 66,335.51 | 0.00 | 0.00 | 0.00 | 0.00 | 66,335.51 |
| 3/1/2025 | OPE | AUTOCHRG @T3/31/2025 @R | CH | 11,468.25 | 0.00 | 0.00 | 0.00 | 0.00 | 11,468.25 |
| 3/5/2025 | PPD | Prepaid Rent | CR | -193,162.14 | 0.00 | 0.00 | 0.00 | 0.00 | -193,162.14 |
| 4/1/2025 | BRT | AUTOCHRG @T4/30/2025 | CH | 1,948.13 | 0.00 | 0.00 | 0.00 | 1,948.13 | 0.00 |
| 4/1/2025 | OPE | AUTOCHRG @T4/30/2025 | CH | 11,468.25 | 0.00 | 0.00 | 0.00 | 11,468.25 | 0.00 |
| 4/22/2025 | PPD | 04/25 PPD Rent | CR | -1.00 | 0.00 | 0.00 | 0.00 | -1.00 | 0.00 |
| 5/1/2025 | BRT | AUTOCHRG @T5/31/2025 | CH | 1,949.13 | 0.00 | 0.00 | 1,949.13 | 0.00 | 0.00 |
| 5/1/2025 | OPE | AUTOCHRG @T5/31/2025 | CH | 11,468.25 | 0.00 | 0.00 | 11,468.25 | 0.00 | 0.00 |
| 6/1/2025 | BRT | AUTOCHRG @T6/30/2025 | CH | 1,948.13 | 0.00 | 1,948.13 | 0.00 | 0.00 | 0.00 |
| 6/1/2025 | OPE | AUTOCHRG @T6/30/2025 | CH | 11,468.25 | 0.00 | 11,468.25 | 0.00 | 0.00 | 0.00 |
| 7/1/2025 | BRT | AUTOCHRG @T7/31/2025 | CH | 1,948.13 | 1,948.13 | 0.00 | 0.00 | 0.00 | 0.00 |
| 7/1/2025 | OPE | AUTOCHRG @T7/31/2025 | CH | 11,468.25 | 11,468.25 | 0.00 | 0.00 | 0.00 | 0.00 |

| Database: | MSDE_CB | | **Aged Delinquencies** | | | | | Page: | 3 |
|---|---|---|---|---|---|---|---|---|---|
| Report ID: | MP_CMAGEDEL1 | | Period: 07/25 | | | | | Date: | 8/18/2025 |
| BLDG: | 610 | | | | | | | Time: | 7:10 AM |
| | | | **610 Old York Road J** | | | | | | |
| | | | Lincoln Property Company | | | | | User ID: | CPARNELL |

| Invoice Date | Category | Description | Source | Amount | Current | 1 Month | 2 Months | 3 Months | 4 Months |
|---|---|---|---|---|---|---|---|---|---|
| 7/28/2025 | PPD | 08/25 PPD Rent | CR | -64,387.38 | -64,387.38 | 0.00 | 0.00 | 0.00 | 0.00 |
| | BRT | Base Rent | | 74,129.03 | 1,948.13 | 1,948.13 | 1,949.13 | 1,948.13 | 66,335.51 |
| | OPE | Operating Expenses | | 57,341.25 | 11,468.25 | 11,468.25 | 11,468.25 | 11,468.25 | 11,468.25 |
| | PPD | Prepaid Rental Income | | -257,550.52 | -64,387.38 | 0.00 | 0.00 | -1.00 | -193,162.14 |
| **Jersey College Total:** | | | | -126,080.24 | -50,971.00 | 13,416.38 | 13,417.38 | 13,415.38 | -115,358.38 |

610-009481    **Marc Kress, M.D.**    Master Occupant Id: 000000001836-1    Day Due: 1   Delq Day:
Marc Kress    670    Current    Last Payment: 7/10/2025   8,341.70
(215) 887-3100 ext. 107

| Invoice Date | Category | Description | Source | Amount | Current | 1 Month | 2 Months | 3 Months | 4 Months |
|---|---|---|---|---|---|---|---|---|---|
| 3/1/2025 | BRT | AUTOCHRG @T3/31/2025 @R | CH | 8,038.33 | 0.00 | 0.00 | 0.00 | 0.00 | 8,038.33 |
| 3/1/2025 | OPE | AUTOCHRG @T3/31/2025 @R | CH | 303.37 | 0.00 | 0.00 | 0.00 | 0.00 | 303.37 |
| | BRT | Base Rent | | 8,038.33 | 0.00 | 0.00 | 0.00 | 0.00 | 8,038.33 |
| | OPE | Operating Expenses | | 303.37 | 0.00 | 0.00 | 0.00 | 0.00 | 303.37 |
| **Marc Kress, M.D. Total:** | | | | 8,341.70 | 0.00 | 0.00 | 0.00 | 0.00 | 8,341.70 |

610-009482    **Outback Steakhouse**    Master Occupant Id: 000000001837-1    Day Due: 1   Delq Day:
Outback Steakhouse of Florida    116    Current    Last Payment: 7/31/2025   16,425.56
(215) 886-5120

| Invoice Date | Category | Description | Source | Amount | Current | 1 Month | 2 Months | 3 Months | 4 Months |
|---|---|---|---|---|---|---|---|---|---|
| 4/1/2025 | BRT | AUTOCHRG @T4/30/2025 | CH | 11,400.42 | 0.00 | 0.00 | 0.00 | 11,400.42 | 0.00 |
| 4/1/2025 | OPE | AUTOCHRG @T4/30/2025 | CH | 1,961.67 | 0.00 | 0.00 | 0.00 | 1,961.67 | 0.00 |
| 4/1/2025 | RET | AUTOCHRG @T4/30/2025 | CH | 2,799.03 | 0.00 | 0.00 | 0.00 | 2,799.03 | 0.00 |
| 5/1/2025 | BRT | AUTOCHRG @T5/31/2025 @R | CH | 875.60 | 0.00 | 0.00 | 875.60 | 0.00 | 0.00 |
| 5/21/2025 | PPD | 06/25 PPD Rent | CR | -3,813.32 | 0.00 | 0.00 | -3,813.32 | 0.00 | 0.00 |
| 6/4/2025 | PPD | 06/25 PPD Rent | CR | -787.49 | 0.00 | -787.49 | 0.00 | 0.00 | 0.00 |
| 6/20/2025 | PPD | Prepaid Rent | CR | -0.01 | 0.00 | -0.01 | 0.00 | 0.00 | 0.00 |
| 6/24/2025 | PPD | Prepaid Rent | CR | -1,144.92 | 0.00 | -1,144.92 | 0.00 | 0.00 | 0.00 |
| 6/27/2025 | PPD | 02/25 PPD Rent | CR | -565.28 | 0.00 | -565.28 | 0.00 | 0.00 | 0.00 |
| 6/27/2025 | PPD | Prepaid Rent | CR | -951.06 | 0.00 | -951.06 | 0.00 | 0.00 | 0.00 |
| 7/25/2025 | PPD | 08/25 PPD Rent | CR | -2,334.53 | -2,334.53 | 0.00 | 0.00 | 0.00 | 0.00 |
| 7/31/2025 | PPD | 08/25 PPD Rent | CR | -16,425.56 | -16,425.56 | 0.00 | 0.00 | 0.00 | 0.00 |
| | BRT | Base Rent | | 12,276.02 | 0.00 | 0.00 | 875.60 | 11,400.42 | 0.00 |
| | OPE | Operating Expenses | | 1,961.67 | 0.00 | 0.00 | 0.00 | 1,961.67 | 0.00 |
| | PPD | Prepaid Rental Income | | -26,022.17 | -18,760.09 | -3,448.76 | -3,813.32 | 0.00 | 0.00 |
| | RET | Real Estate Taxes | | 2,799.03 | 0.00 | 0.00 | 0.00 | 2,799.03 | 0.00 |
| **Outback Steakhouse Total:** | | | | -8,985.45 | -18,760.09 | -3,448.76 | -2,937.72 | 16,161.12 | 0.00 |

610-009483    **SBG Management Services, Inc.**    Master Occupant Id: 000000001838-1    Day Due: 1   Delq Day:
Philip C. Pulley    375    Current    Last Payment:
(215) 938-6665 ext. 2001

| Invoice Date | Category | Description | Source | Amount | Current | 1 Month | 2 Months | 3 Months | 4 Months |
|---|---|---|---|---|---|---|---|---|---|
| 3/1/2025 | BRT | AUTOCHRG @T3/31/2025 @R | CH | 10,000.00 | 0.00 | 0.00 | 0.00 | 0.00 | 10,000.00 |
| 3/1/2025 | OPE | AUTOCHRG @T3/31/2025 @R | CH | 1,207.18 | 0.00 | 0.00 | 0.00 | 0.00 | 1,207.18 |
| 4/1/2025 | BRT | AUTOCHRG @T4/30/2025 | CH | 10,000.00 | 0.00 | 0.00 | 0.00 | 10,000.00 | 0.00 |
| 4/1/2025 | OPE | AUTOCHRG @T4/30/2025 | CH | 1,207.18 | 0.00 | 0.00 | 0.00 | 1,207.18 | 0.00 |
| 5/1/2025 | BRT | AUTOCHRG @T5/31/2025 | CH | 10,000.00 | 0.00 | 0.00 | 10,000.00 | 0.00 | 0.00 |
| 5/1/2025 | OPE | AUTOCHRG @T5/31/2025 | CH | 1,207.18 | 0.00 | 0.00 | 1,207.18 | 0.00 | 0.00 |
| 6/1/2025 | BRT | AUTOCHRG @T6/30/2025 | CH | 10,000.00 | 0.00 | 10,000.00 | 0.00 | 0.00 | 0.00 |
| 6/1/2025 | OPE | AUTOCHRG @T6/30/2025 | CH | 1,207.18 | 0.00 | 1,207.18 | 0.00 | 0.00 | 0.00 |
| 7/1/2025 | BRT | AUTOCHRG @T7/31/2025 | CH | 10,000.00 | 10,000.00 | 0.00 | 0.00 | 0.00 | 0.00 |
| 7/1/2025 | OPE | AUTOCHRG @T7/31/2025 | CH | 1,207.18 | 1,207.18 | 0.00 | 0.00 | 0.00 | 0.00 |
| | BRT | Base Rent | | 50,000.00 | 10,000.00 | 10,000.00 | 10,000.00 | 10,000.00 | 10,000.00 |
| | OPE | Operating Expenses | | 6,035.90 | 1,207.18 | 1,207.18 | 1,207.18 | 1,207.18 | 1,207.18 |

| Database: | MSDE_CB | | Aged Delinquencies | | | | Page: | 4 |
|---|---|---|---|---|---|---|---|---|
| Report ID: | MP_CMAGEDEL1 | | Period: 07/25 | | | | Date: | 8/18/2025 |
| BLDG: | 610 | | | | | | Time: | 7:10 AM |
| | | | **610 Old York Road J** | | | | | |
| | | | Lincoln Property Company | | | | User ID: | CPARNELL |

| Invoice Date | Category | Description | Source | Amount | Current | 1 Month | 2 Months | 3 Months | 4 Months |
|---|---|---|---|---|---|---|---|---|---|
| | | **SBG Management Services, Inc. Total:** | | 56,035.90 | 11,207.18 | 11,207.18 | 11,207.18 | 11,207.18 | 11,207.18 |
| | | | | | | | | | |
| 610-009484 | | **Regus Corporation** | | Master Occupant Id: 000000001839-1 | | | Day Due:  1 | Delq Day: | |
| | | Regus Corporation | | 400 | Current | | Last Payment: | 8/1/2025 | 35,450.24 |
| | | (267) 627-3400 | | | | | | | |
| 6/10/2025 | PPD | Prepaid Rent | CR | -16,759.50 | 0.00 | -16,759.50 | 0.00 | 0.00 | 0.00 |
| 7/8/2025 | PPD | 07/25 PPD Rent | CR | -2,061.50 | -2,061.50 | 0.00 | 0.00 | 0.00 | 0.00 |
| | | | | | | | | | |
| | PPD | Prepaid Rental Income | | -18,821.00 | -2,061.50 | -16,759.50 | 0.00 | 0.00 | 0.00 |
| | | **Regus Corporation Total:** | | -18,821.00 | -2,061.50 | -16,759.50 | 0.00 | 0.00 | 0.00 |
| | | | | | | | | | |
| 610-009485 | | **Sezai Saran** | | Master Occupant Id: 000000001840-1 | | | Day Due:  1 | Delq Day: | |
| | | Sezai Saran | | 114 | Current | | Last Payment: | 8/7/2025 | 400.00 |
| | | (215) 449-9808 | | | | | | | |
| 3/1/2025 | BRT | AUTOCHRG @T3/31/2025 @R | CH | 500.00 | 0.00 | 0.00 | 0.00 | 0.00 | 500.00 |
| 3/1/2025 | OPE | AUTOCHRG @T3/31/2025 @R | CH | 150.90 | 0.00 | 0.00 | 0.00 | 0.00 | 150.90 |
| 4/1/2025 | BRT | AUTOCHRG @T4/30/2025 | CH | 100.00 | 0.00 | 0.00 | 0.00 | 100.00 | 0.00 |
| 4/1/2025 | OPE | AUTOCHRG @T4/30/2025 | CH | 150.90 | 0.00 | 0.00 | 0.00 | 150.90 | 0.00 |
| 5/1/2025 | BRT | AUTOCHRG @T5/31/2025 | CH | 500.00 | 0.00 | 0.00 | 500.00 | 0.00 | 0.00 |
| 5/1/2025 | OPE | AUTOCHRG @T5/31/2025 | CH | 150.90 | 0.00 | 0.00 | 150.90 | 0.00 | 0.00 |
| 6/1/2025 | BRT | AUTOCHRG @T6/30/2025 | CH | 500.00 | 0.00 | 500.00 | 0.00 | 0.00 | 0.00 |
| 6/1/2025 | OPE | AUTOCHRG @T6/30/2025 | CH | 150.90 | 0.00 | 150.90 | 0.00 | 0.00 | 0.00 |
| 6/4/2025 | PPD | 06/25 PPD Rent | CR | -400.00 | 0.00 | -400.00 | 0.00 | 0.00 | 0.00 |
| 7/1/2025 | BRT | AUTOCHRG @T7/31/2025 | CH | 500.00 | 500.00 | 0.00 | 0.00 | 0.00 | 0.00 |
| 7/1/2025 | OPE | AUTOCHRG @T7/31/2025 | CH | 150.90 | 150.90 | 0.00 | 0.00 | 0.00 | 0.00 |
| 7/7/2025 | PPD | 07/25 PPD Rent | CR | -400.00 | -400.00 | 0.00 | 0.00 | 0.00 | 0.00 |
| | | | | | | | | | |
| | BRT | Base Rent | | 2,100.00 | 500.00 | 500.00 | 500.00 | 100.00 | 500.00 |
| | OPE | Operating Expenses | | 754.50 | 150.90 | 150.90 | 150.90 | 150.90 | 150.90 |
| | PPD | Prepaid Rental Income | | -800.00 | -400.00 | -400.00 | 0.00 | 0.00 | 0.00 |
| | | **Sezai Saran Total:** | | 2,054.50 | 250.90 | 250.90 | 650.90 | 250.90 | 650.90 |
| | | | | | | | | | |
| 610-009486 | | **Temple University Health System** | | Master Occupant Id: 000000001841-1 | | | Day Due:  1 | Delq Day: | |
| | | Shane McDevitt | | 250 | Current | | Last Payment: | 7/25/2025 | 37,073.94 |
| | | | | | | | | | |
| 6/27/2025 | PPD | 03/25 PPD Rent | CR | -37,073.94 | 0.00 | -37,073.94 | 0.00 | 0.00 | 0.00 |
| 7/1/2025 | BRT | AUTOCHRG @T7/31/2025 | CH | 22,825.83 | 22,825.83 | 0.00 | 0.00 | 0.00 | 0.00 |
| 7/1/2025 | OPE | AUTOCHRG @T7/31/2025 | CH | 8,140.95 | 8,140.95 | 0.00 | 0.00 | 0.00 | 0.00 |
| 7/1/2025 | RET | AUTOCHRG @T7/31/2025 | CH | 6,107.16 | 6,107.16 | 0.00 | 0.00 | 0.00 | 0.00 |
| 7/25/2025 | PPD | 08/25 PPD Rent | CR | -37,073.94 | -37,073.94 | 0.00 | 0.00 | 0.00 | 0.00 |
| | | | | | | | | | |
| | BRT | Base Rent | | 22,825.83 | 22,825.83 | 0.00 | 0.00 | 0.00 | 0.00 |
| | OPE | Operating Expenses | | 8,140.95 | 8,140.95 | 0.00 | 0.00 | 0.00 | 0.00 |
| | PPD | Prepaid Rental Income | | -74,147.88 | -37,073.94 | -37,073.94 | 0.00 | 0.00 | 0.00 |
| | RET | Real Estate Taxes | | 6,107.16 | 6,107.16 | 0.00 | 0.00 | 0.00 | 0.00 |
| | | **Temple University Health System Total:** | | -37,073.94 | 0.00 | -37,073.94 | 0.00 | 0.00 | 0.00 |
| | | | | | | | | | |
| 610-009487 | | **Temple University Health System, Inc.** | | Master Occupant Id: 000000001842-1 | | | Day Due:  1 | Delq Day: | |
| | | Shane McDevitt | | 680 | Current | | Last Payment: | 7/25/2025 | 45,675.37 |
| | | (215) 449-9808 | | | | | | | |
| 6/27/2025 | PPD | 03/25 PPD Rent | CR | -45,675.37 | 0.00 | -45,675.37 | 0.00 | 0.00 | 0.00 |
| 7/1/2025 | BRT | AUTOCHRG @T7/31/2025 | CH | 29,033.58 | 29,033.58 | 0.00 | 0.00 | 0.00 | 0.00 |
| 7/1/2025 | OPE | AUTOCHRG @T7/31/2025 | CH | 9,508.63 | 9,508.63 | 0.00 | 0.00 | 0.00 | 0.00 |
| 7/1/2025 | RET | AUTOCHRG @T7/31/2025 | CH | 7,133.16 | 7,133.16 | 0.00 | 0.00 | 0.00 | 0.00 |
| 7/25/2025 | PPD | 08/25 PPD Rent | CR | -45,675.37 | -45,675.37 | 0.00 | 0.00 | 0.00 | 0.00 |

| Database: | MSDE_CB | | **Aged Delinquencies** | | | | Page: | 5 |
|---|---|---|---|---|---|---|---|---|
| Report ID: | MP_CMAGEDEL1 | | Period: 07/25 | | | | Date: | 8/18/2025 |
| BLDG: | 610 | | | | | | Time: | 7:10 AM |
| | | | **610 Old York Road J** | | | | | |
| | | | Lincoln Property Company | | | | User ID: | CPARNELL |

| Invoice Date | Category | Description | Source | Amount | Current | 1 Month | 2 Months | 3 Months | 4 Months |
|---|---|---|---|---|---|---|---|---|---|
| | BRT | Base Rent | | 29,033.58 | 29,033.58 | 0.00 | 0.00 | 0.00 | 0.00 |
| | OPE | Operating Expenses | | 9,508.63 | 9,508.63 | 0.00 | 0.00 | 0.00 | 0.00 |
| | PPD | Prepaid Rental Income | | -91,350.74 | -45,675.37 | -45,675.37 | 0.00 | 0.00 | 0.00 |
| | RET | Real Estate Taxes | | 7,133.16 | 7,133.16 | 0.00 | 0.00 | 0.00 | 0.00 |
| **Temple University Health System, Inc. Tota** | | | | **-45,675.37** | **0.00** | **-45,675.37** | **0.00** | **0.00** | **0.00** |
| | ABA | Abatement - Base Rent | | -5,500.00 | -5,500.00 | 0.00 | 0.00 | 0.00 | 0.00 |
| | BRT | Base Rent | | 472,737.67 | 125,516.84 | 62,448.13 | 68,824.73 | 78,948.55 | 136,999.42 |
| | OPE | Operating Expenses | | 187,109.56 | 51,088.57 | 33,438.99 | 33,438.98 | 35,400.66 | 33,742.36 |
| | PPD | Prepaid Rental Income | | -486,253.54 | -185,919.51 | -103,357.57 | -3,813.32 | -1.00 | -193,162.14 |
| | RET | Real Estate Taxes | | 16,039.35 | 13,240.32 | 0.00 | 0.00 | 2,799.03 | 0.00 |
| **BLDG 610 Total:** | | | | **184,133.04** | **-1,573.78** | **-7,470.45** | **98,450.39** | **117,147.24** | **-22,420.36** |
| | ABA | Abatement - Base Rent | | -5,500.00 | -5,500.00 | 0.00 | 0.00 | 0.00 | 0.00 |
| | BRT | Base Rent | | 472,737.67 | 125,516.84 | 62,448.13 | 68,824.73 | 78,948.55 | 136,999.42 |
| | OPE | Operating Expenses | | 187,109.56 | 51,088.57 | 33,438.99 | 33,438.98 | 35,400.66 | 33,742.36 |
| | PPD | Prepaid Rental Income | | -486,253.54 | -185,919.51 | -103,357.57 | -3,813.32 | -1.00 | -193,162.14 |
| | RET | Real Estate Taxes | | 16,039.35 | 13,240.32 | 0.00 | 0.00 | 2,799.03 | 0.00 |
| **Grand Total:** | | | | **184,133.04** | **-1,573.78** | **-7,470.45** | **98,450.39** | **117,147.24** | **-22,420.36** |

Appx1519

| Database: | MSDE_CB | | Check Register | | | | | Page: | 1 |
| ENTITY: | 610 | | Lincoln Property Company | | | | | Date: | 8/18/2025 |
| | | | Jenkins Court Realty Co LP | | | | | Time: | 7:11 AM |

05/25 Through 07/25

| Check #<br>Entity | Check Date<br>Reference | Check Pd | Vendor/Alternate<br>Address ID<br>P.O. Number | Vendor Name<br>Account Number | Invoice Number | Invoice<br>Date | Due Date | Invoice<br>Amount | Discount<br>Amount | Check<br>Amount |
|---|---|---|---|---|---|---|---|---|---|---|
| 3 | 5/13/2025 | 05/25 | AIRTEC | Air Tech Services Inc. | | | | | | |
| 610 | Temple Health HVAC | | | 51245-0000 | 12446 | 4/28/2025 | 4/28/2025 | 930.00 | 0.00 | 930.00 |
| 610 | 04/22/2025 HVAC Servi | | | 51245-0000 | 124476 | 4/22/2025 | 5/22/2025 | 1,240.00 | 0.00 | 1,240.00 |
| 610 | 04/16/25 Cooling Tower | | | 51245-0000 | 12469 | 4/22/2025 | 5/22/2025 | 3,495.00 | 0.00 | 3,495.00 |
| 610 | 4/16/2025 HVAC Servic | | | 51245-0000 | 12472 | 4/22/2025 | 5/22/2025 | 290.00 | 0.00 | 290.00 |
| 610 | Suite 640 HVAC Repairs | | | 51245-0000 | 12480 | 4/28/2025 | 4/28/2025 | 2,235.00 | 0.00 | 2,235.00 |
| | | | | | | | Check Total: | 8,190.00 | 0.00 | 8,190.00 |
| 4 | 5/13/2025 | 05/25 | AQUAPA | Aqua Pennsylvania, Inc. | | | | | | |
| 610 | 03/14/25 - 04/11/25 Wat | | | 51515-0000 | 7244-04152025 | 4/15/2025 | 5/7/2025 | 469.83 | 0.00 | 469.83 |
| | | | | | | | Check Total: | 469.83 | 0.00 | 469.83 |
| 5 | 5/13/2025 | 05/25 | AQUAPA | Aqua Pennsylvania, Inc. | | | | | | |
| 610 | 03/14/25 - 04/11/25 Wat | | | 51515-0000 | 7390-04152025 | 4/15/2025 | 5/7/2025 | 2,668.69 | 0.00 | 2,668.69 |
| | | | | | | | Check Total: | 2,668.69 | 0.00 | 2,668.69 |
| 6 | 5/13/2025 | 05/25 | AQUAPA | Aqua Pennsylvania, Inc. | | | | | | |
| 610 | 03/14/25 - 04/11/25 Wat | | | 51515-0000 | 9893-04152025 | 4/15/2025 | 5/7/2025 | 259.45 | 0.00 | 259.45 |
| | | | | | | | Check Total: | 259.45 | 0.00 | 259.45 |
| 7 | 5/13/2025 | 05/25 | AQUAPA | Aqua Pennsylvania, Inc. | | | | | | |
| 610 | 03/14/25 - 04/11/25 Wat | | | 51515-0000 | 9895-04152025 | 4/15/2025 | 5/7/2025 | 259.45 | 0.00 | 259.45 |
| | | | | | | | Check Total: | 259.45 | 0.00 | 259.45 |
| 8 | 5/13/2025 | 05/25 | ARA BAL | BALLARD SPAHR LLP | | | | | | |
| 610 | 03/25/25 - 03/31/25 Prof | | | 54070-0000 | 20250404691 | 4/17/2025 | 5/17/2025 | 5,346.00 | 0.00 | 5,346.00 |
| | | | | | | | Check Total: | 5,346.00 | 0.00 | 5,346.00 |
| 9 | 5/13/2025 | 05/25 | BONDSE | Bond Services of California, LLC | | | | | | |
| 610 | 02/21/25 - 02/21/26 Bon | | | 63284-0000 | 1110996 | 2/26/2025 | 2/26/2025 | 150.00 | 0.00 | 150.00 |
| | | | | | | | Check Total: | 150.00 | 0.00 | 150.00 |
| 10 | 5/13/2025 | 05/25 | CHREED | Christopher Reed | | | | | | |
| 610 | 03/2025 Chris Reed Mile | | | 54050-0000 | REED-03112025 | 3/11/2025 | 4/11/2025 | 508.20 | 0.00 | 508.20 |

Appx1520

Date Filed: 11/24/2025    Page: 330    Document: 20    Case: 25-2598

| Database: | MSDE_CB | | | Check Register | | | | | | Page: | 2 |
| ENTITY: | 610 | | | Lincoln Property Company | | | | | | Date: | 8/18/2025 |
| | | | | Jenkins Court Realty Co LP | | | | | | Time: | 7:11 AM |

05/25 Through 07/25

| Check # Entity | Check Date Reference | Check Pd | Vendor/Alternate Address ID P.O. Number | Vendor Name Account Number | Invoice Number | Invoice Date | Due Date | Invoice Amount | Discount Amount | Check Amount |
|---|---|---|---|---|---|---|---|---|---|---|
| | | | | | | | Check Total: | 508.20 | 0.00 | 508.20 |
| **11** | **5/13/2025** | **05/25** | **COM3001** | **Comcast** | | | | | | |
| 610 | #4781 Internet 04/30-05 | | | 63090-0000 | 4781-04172025 | 4/17/2025 | 5/10/2025 | 115.63 | 0.00 | 115.63 |
| | | | | | | | Check Total: | 115.63 | 0.00 | 115.63 |
| **12** | **5/13/2025** | **05/25** | **HEMACO** | **Health Mats Co** | | | | | | |
| 610 | 04/2025 Floor Mat Servi | | | 51026-0000 | 33013 | 4/1/2025 | 5/1/2025 | 547.16 | 0.00 | 547.16 |
| 610 | 12/2024 Monthly Floor M | | | 51026-0000 | 327689 | 12/1/2024 | 1/1/2025 | 547.16 | 0.00 | 547.16 |
| 610 | 03/2025 Floor Mat Servi | | | 51026-0000 | 31539 | 3/1/2025 | 4/1/2025 | 547.16 | 0.00 | 547.16 |
| 610 | 02/2025 Floor Mat Servi | | | 51026-0000 | 30078 | 2/1/2025 | 3/1/2025 | 547.16 | 0.00 | 547.16 |
| 610 | 01/2025 Floor Mat Servi | | | 51026-0000 | 28476 | 1/1/2025 | 2/1/2025 | 547.16 | 0.00 | 547.16 |
| | | | | | | | Check Total: | 2,735.80 | 0.00 | 2,735.80 |
| **13** | **5/13/2025** | **05/25** | **K2BENT** | **K2B Enterprises, LLC** | | | | | | |
| 610 | 2/20/25 - 03/03/25 Plum | | | 51310-0000 | 300374 | 4/3/2025 | 5/3/2025 | 2,959.00 | 0.00 | 2,959.00 |
| 610 | 04/07/25 Plumbing Suite | | | 51310-0000 | 300477 | 4/7/2025 | 5/7/2025 | 1,083.50 | 0.00 | 1,083.50 |
| 610 | 04/14/25 Plumbing Repa | | | 51310-0000 | 300541 | 4/14/2025 | 5/14/2025 | 599.50 | 0.00 | 599.50 |
| | | | | | | | Check Total: | 4,642.00 | 0.00 | 4,642.00 |
| **14** | **5/13/2025** | **05/25** | **NATEQU** | **National Equipment Solutions, LP** | | | | | | |
| 610 | 03/26/2025 electrical Su | | | 51240-0000 | 121899 | 3/26/2025 | 4/5/2025 | 482.37 | 0.00 | 482.37 |
| | | | | | | | Check Total: | 482.37 | 0.00 | 482.37 |
| **15** | **5/13/2025** | **05/25** | **PECOPR** | **Peco** | | | | | | |
| 610 | #0100 Electric 03/21-04 | | | 51510-0000 | 0100-04222025 | 4/22/2025 | 5/8/2025 | 216.54 | 0.00 | 216.54 |
| | | | | | | | Check Total: | 216.54 | 0.00 | 216.54 |
| **16** | **5/13/2025** | **05/25** | **PECOPR** | **Peco** | | | | | | |
| 610 | #03000 Electric 03/21-0 | | | 51530-0000 | 03000-04222025 | 4/22/2025 | 5/8/2025 | 444.62 | 0.00 | 444.62 |
| | | | | | | | Check Total: | 444.62 | 0.00 | 444.62 |
| **17** | **5/13/2025** | **05/25** | **PECOPR** | **Peco** | | | | | | |
| 610 | #2000 Electric 03/21-04 | | | 51510-0000 | 2000-04222025 | 4/22/2025 | 5/8/2025 | 7,373.67 | 0.00 | 7,373.67 |

Appx1521

| Database: | MSDE_CB | | | Check Register | | | | | Page: | 3 |
| ENTITY: | 610 | | | Lincoln Property Company | | | | | Date: | 8/18/2025 |
| | | | | Jenkins Court Realty Co LP | | | | | Time: | 7:11 AM |

05/25 Through 07/25

| Check #<br>Entity | Check Date<br>Reference | Check Pd | Vendor/Alternate<br>Address ID<br>P.O. Number | Vendor Name<br>Account Number | Invoice Number | Invoice<br>Date | Due Date | Invoice<br>Amount | Discount<br>Amount | Check<br>Amount |
|---|---|---|---|---|---|---|---|---|---|---|
| | | | | | | | Check Total: | 7,373.67 | 0.00 | 7,373.67 |
| 18 | 5/13/2025 | 05/25 | PECOPR | Peco | | | | | | |
| 610 | #13000 Electric 3/21-4/2 | | | 51510-0000 | 3000-04222025 | 4/22/2025 | 5/8/2025 | 96.90 | 0.00 | 96.90 |
| | | | | | | | Check Total: | 96.90 | 0.00 | 96.90 |
| 19 | 5/13/2025 | 05/25 | PECOPR | Peco | | | | | | |
| 610 | #97000 Electric 03/21-0 | | | 51510-0000 | 7000-04222025 | 4/22/2025 | 5/8/2025 | 177.59 | 0.00 | 177.59 |
| 610 | #97000 Gas 03/21-04/2 | | | 51530-0000 | 7000-04222025 | 4/22/2025 | 5/8/2025 | 175.22 | 0.00 | 175.22 |
| | | | | | | | Check Total: | 352.81 | 0.00 | 352.81 |
| 20 | 5/13/2025 | 05/25 | PECOPR | Peco | | | | | | |
| 610 | #8000 Electric 03/21-04/ | | | 51510-0000 | 8000-04222025 | 4/22/2025 | 5/8/2025 | 123.37 | 0.00 | 123.37 |
| | | | | | | | Check Total: | 123.37 | 0.00 | 123.37 |
| 21 | 5/13/2025 | 05/25 | TRIIVL | Trigild IVL, LLC | | | | | | |
| 610 | 03/2025 Accounting Fee | | | 63284-0000 | IVL-RR7577 | 3/31/2025 | 4/30/2025 | 500.00 | 0.00 | 500.00 |
| 610 | 03/2025 Receiver Fees | | | 63284-0000 | IVL-RR7393 | 3/31/2025 | 4/30/2025 | 9,800.00 | 0.00 | 9,800.00 |
| 610 | 03/02-03/05 J Lakner Tr | | | 54050-0000 | IVL-BB4930 | 4/28/2025 | 4/28/2025 | 371.08 | 0.00 | 371.08 |
| | | | | | | | Check Total: | 10,671.08 | 0.00 | 10,671.08 |
| 22 | 5/19/2025 | 05/25 | AIRTEC | Air Tech Services Inc. | | | | | | |
| 610 | 04/23/2025 HVAC Repa | | | 51245-0000 | 12512 | 5/13/2025 | 5/13/2025 | 915.00 | 0.00 | 915.00 |
| 610 | 04/25/25 HVAC Repairs | | | 51245-0000 | 12487 | 5/12/2025 | 5/12/2025 | 810.00 | 0.00 | 810.00 |
| | | | | | | | Check Total: | 1,725.00 | 0.00 | 1,725.00 |
| 23 | 5/19/2025 | 05/25 | BCSFGR | BCS Facilities Group | | | | | | |
| 610 | 03/2025 Janitorial Servi | | | 51020-0000 | 12516 | 3/1/2025 | 4/15/2025 | 4,099.55 | 0.00 | 4,099.55 |
| 610 | 02/2025 Janitorial Servi | | | 51020-0000 | 12282 | 2/1/2025 | 3/18/2025 | 4,099.55 | 0.00 | 4,099.55 |
| 610 | 01/2025 Janitorial Servi | | | 51020-0000 | 12103 | 1/1/2025 | 2/15/2025 | 4,099.55 | 0.00 | 4,099.55 |
| 610 | 12/2024 Janitorial Servi | | | 51020-0000 | 11921 | 12/1/2024 | 1/1/2025 | 4,099.55 | 0.00 | 4,099.55 |
| 610 | 11/2024 Janitorial Servi | | | 51020-0000 | 11705 | 11/1/2024 | 12/1/2024 | 4,099.55 | 0.00 | 4,099.55 |
| | | | | | | | Check Total: | 20,497.75 | 0.00 | 20,497.75 |
| 24 | 5/19/2025 | 05/25 | BLKCOR | Brass Lock and Key Corp | | | | | | |

Appx1522

Date Filed: 11/24/2025    Page: 331    Document: 20    Case: 25-2598

| Database: | MSDE_CB | | Check Register | | Page: | 4 |
| ENTITY: | 610 | | Lincoln Property Company | | Date: | 8/18/2025 |
| | | | Jenkins Court Realty Co LP | | Time: | 7:11 AM |

05/25 Through 07/25

| Check #<br>Entity | Check Date<br>Reference | Check Pd | Vendor/Alternate<br>Address ID<br>P.O. Number | Vendor Name<br>Account Number | Invoice Number | Invoice<br>Date | Due Date | Invoice<br>Amount | Discount<br>Amount | Check<br>Amount |
|---|---|---|---|---|---|---|---|---|---|---|
| 610 | 03/13/2025 Lock Repair | | | 51285-0000 | 85534 | 3/13/2025 | 4/12/2025 | 337.66 | 0.00 | 337.66 |
| 24 | 5/19/2025 | 05/25 | BLKCOR | **Brass Lock and Key Corp** | | | | | | |
| 610 | 03/07/25 Re-Keying | | | 51285-0000 | 85488 | 3/7/2025 | 4/6/2025 | 713.01 | 0.00 | 713.01 |
| | | | | | | | Check Total: | 1,050.67 | 0.00 | 1,050.67 |
| **25** | **5/19/2025** | **05/25** | **CININS** | **The Cincinnati Insurance Company** | | | | | | |
| 610 | 06/01/25 Insurance Prem | | | 52025-0000 | 5190-05082025 | 5/8/2025 | 6/1/2025 | 9,440.00 | 0.00 | 9,440.00 |
| | | | | | | | Check Total: | 9,440.00 | 0.00 | 9,440.00 |
| **26** | **5/19/2025** | **05/25** | **ECRCI** | **Elevator Construction & Repair Co. Inc** | | | | | | |
| 610 | Elevator Repair and Mai | | | 10380-0000 | 22-4341 | 5/26/2022 | 6/5/2022 | 68,000.00 | 0.00 | 68,000.00 |
| 610 | CapEx Elevator Repairs | | | 10380-0000 | 22-9554 | 10/31/2022 | 11/10/2022 | 15,900.00 | 0.00 | 15,900.00 |
| | | | | | | | Check Total: | 83,900.00 | 0.00 | 83,900.00 |
| **27** | **5/19/2025** | **05/25** | **HEMACO** | **Health Mats Co** | | | | | | |
| 610 | 05/2025 Floor Mats | | | 51110-0000 | 34559 | 5/1/2025 | 5/31/2025 | 547.16 | 0.00 | 547.16 |
| | | | | | | | Check Total: | 547.16 | 0.00 | 547.16 |
| **28** | **5/19/2025** | **05/25** | **K2BENT** | **K2B Enterprises, LLC** | | | | | | |
| 610 | 4/24/25 Plumbing Repair | | | 51310-0000 | 300661 | 4/29/2025 | 5/29/2025 | 455.00 | 0.00 | 455.00 |
| | | | | | | | Check Total: | 455.00 | 0.00 | 455.00 |
| **29** | **5/19/2025** | **05/25** | **RPCLPC** | **Lincoln Property Company Commercial, LLC** | | | | | | |
| 610 | 04/2025 Mgmt. Fee | | | 51715-0000 | MF-042025 | 4/30/2025 | 5/30/2025 | 5,000.00 | 0.00 | 5,000.00 |
| | | | | | | | Check Total: | 5,000.00 | 0.00 | 5,000.00 |
| **30** | **5/19/2025** | **05/25** | **RWELEC** | **RW Electrical, LLC** | | | | | | |
| 610 | 4/25/25 Electrical Repair | | | 51235-0000 | 1110 | 4/25/2025 | 4/25/2025 | 290.00 | 0.00 | 290.00 |
| 610 | 4/1/25 - 4/2/25 Electrical | | | 51235-0000 | 1098 | 4/6/2025 | 4/6/2025 | 2,440.00 | 0.00 | 2,440.00 |
| 610 | 4/8/25 Electrical Repairs | | | 51235-0000 | 1099 | 4/8/2025 | 4/8/2025 | 220.00 | 0.00 | 220.00 |
| 610 | 4/11/25 Electrical Repair | | | 51235-0000 | 1100 | 4/11/2025 | 4/11/2025 | 430.00 | 0.00 | 430.00 |
| 610 | 4/16/25 Electrical Repair | | | 51235-0000 | 1105 | 4/16/2025 | 4/16/2025 | 290.00 | 0.00 | 290.00 |
| 610 | 4/17/25 Electrical Repair | | | 51235-0000 | 1106 | 4/17/2025 | 4/17/2025 | 360.00 | 0.00 | 360.00 |
| 610 | 4/17/25 Electrical Repair | | | 51235-0000 | 1107 | 4/17/2025 | 4/17/2025 | 290.00 | 0.00 | 290.00 |

Appx1523

Case: 25-2598    Document: 20    Page: 332    Date Filed: 11/24/2025

Case: 25-2598    Document: 20    Page: 333    Date Filed: 11/24/2025

| Database: | MSDE_CB | | | Check Register | | | | Page: | 5 |
| ENTITY: | 610 | | | Lincoln Property Company | | | | Date: | 8/18/2025 |
| | | | | Jenkins Court Realty Co LP | | | | Time: | 7:11 AM |

05/25 Through 07/25

| Check #<br>Entity | Check Date<br>Reference | Check Pd | Vendor/Alternate<br>Address ID<br>P.O. Number | Vendor Name<br>Account Number | Invoice Number | Invoice<br>Date | Due Date | Invoice<br>Amount | Discount<br>Amount | Check<br>Amount |
|---|---|---|---|---|---|---|---|---|---|---|
| | | | | | | | *Check Total:* | *4,320.00* | *0.00* | *4,320.00* |
| **31** | **5/19/2025** | **05/25** | **TRIIVL** | **Trigild IVL, LLC** | | | | | | |
| 610 | 02/2025 Accounting Fee | | | 63284-0000 | IVL-RR7122 | 2/28/2025 | 2/28/2025 | 500.00 | 0.00 | 500.00 |
| 610 | 02/2025 Receiver Fees | | | 63284-0000 | IVL-RR6952 | 2/28/2025 | 2/28/2025 | 3,500.00 | 0.00 | 3,500.00 |
| | | | | | | | *Check Total:* | *4,000.00* | *0.00* | *4,000.00* |
| **32** | **5/19/2025** | **05/25** | **WORKSL** | **WORKSPACE, LLC** | | | | | | |
| 610 | 5/11-6/30/25 Quarterly S | | | 51625-0000 | WS-015136 | 5/12/2025 | 6/11/2025 | 875.56 | 0.00 | 875.56 |
| | | | | | | | *Check Total:* | *875.56* | *0.00* | *875.56* |
| **33** | **5/27/2025** | **05/25** | **RPCLPC** | **Lincoln Property Company Commercial, LLC** | | | *Unused - Continued Check* | | | |
| 610 | Carried to 34 | | | 51609-0000 | 70760.4/22/2025 | 4/22/2025 | 5/22/2025 | 0.00 | 0.00 | 0.00 |
| | | | | | | | *Check Total:* | *0.00* | *0.00* | *0.00* |
| **34** | **5/27/2025** | **05/25** | **RPCLPC** | **Lincoln Property Company Commercial, LLC** | | | | | | |
| 610 | 3/16/25 - 3/31/25 Eng R | | | 51609-0000 | 70760.4/7/2025 | 4/7/2025 | 5/7/2025 | 10,114.16 | 0.00 | 10,114.16 |
| 610 | 4/1/2025 - 4/15/2025 En | | | 51609-0000 | 70760.4/22/2025 | 4/22/2025 | 5/22/2025 | 482.68 | 0.00 | 482.68 |
| 610 | 4/16/2025 - 4/30/2025 E | | | 51609-0000 | 70760.5/7/2025 | 5/7/2025 | 6/7/2025 | 475.30 | 0.00 | 475.30 |
| 610 | 3/16/25 - 3/31/25 Eng R | | | 51609-0000 | 70760.4/7/2025 | 4/7/2025 | 5/7/2025 | 3,641.09 | 0.00 | 3,641.09 |
| 610 | 4/16/2025 - 4/30/2025 E | | | 51609-0000 | 70760.5/7/2025 | 5/7/2025 | 6/7/2025 | 1,997.06 | 0.00 | 1,997.06 |
| 610 | 4/1/2025 - 4/15/2025 En | | | 51609-0000 | 70760.4/22/2025 | 4/22/2025 | 5/22/2025 | 1,918.13 | 0.00 | 1,918.13 |
| 610 | 4/1/2025 - 4/15/2025 Ba | | | 54090-0000 | 70760.4/22/2025 | 4/22/2025 | 5/22/2025 | 115.00 | 0.00 | 115.00 |
| 610 | 4/16/2025 - 4/30/2025 P | | | 51610-0000 | 70760.5/7/2025 | 5/7/2025 | 6/7/2025 | 4,090.91 | 0.00 | 4,090.91 |
| 610 | 3/16/25 - 3/31/25  Bank | | | 54090-0000 | 70760.4/7/2025 | 4/7/2025 | 5/7/2025 | 115.00 | 0.00 | 115.00 |
| 610 | 4/16/2025 - 4/30/2025 P | | | 51610-0000 | 70760.5/7/2025 | 5/7/2025 | 6/7/2025 | 973.64 | 0.00 | 973.64 |
| 610 | 4/1/2025 - 4/15/2025 Po | | | 52035-0000 | 70760.4/22/2025 | 4/22/2025 | 5/22/2025 | 17.33 | 0.00 | 17.33 |
| | | | | | | | *Check Total:* | *23,940.30* | *0.00* | *23,940.30* |
| **35** | **6/3/2025** | **06/25** | **AQUAPA** | **Aqua Pennsylvania, Inc.** | | | | | | |
| 610 | #7244 04.11.2025 - 05.1 | | | 51515-0000 | 7244-05152025 | 5/15/2025 | 6/6/2025 | 498.06 | 0.00 | 498.06 |
| | | | | | | | *Check Total:* | *498.06* | *0.00* | *498.06* |
| **36** | **6/3/2025** | **06/25** | **AQUAPA** | **Aqua Pennsylvania, Inc.** | | | | | | |
| 610 | #7390 04.11.2025 - 05.1 | | | 51515-0000 | 7390-05152025 | 5/15/2025 | 6/6/2025 | 2,942.10 | 0.00 | 2,942.10 |

| | | | | | | | | | | |
|---|---|---|---|---|---|---|---|---|---|---|
| Database: | MSDE_CB | | | | Check Register | | | Page: | | 6 |
| ENTITY: | 610 | | | | Lincoln Property Company | | | Date: | | 8/18/2025 |
| | | | | | Jenkins Court Realty Co LP | | | Time: | | 7:11 AM |

05/25 Through 07/25

| Check #<br>Entity | Check Date<br>Reference | Check Pd | Vendor/Alternate<br>Address ID<br>P.O. Number | Vendor Name<br>Account Number | Invoice Number | Invoice<br>Date | Due Date | Invoice<br>Amount | Discount<br>Amount | Check<br>Amount |
|---|---|---|---|---|---|---|---|---|---|---|
| | | | | | | | Check Total: | 2,942.10 | 0.00 | 2,942.10 |
| 37<br>610 | 6/3/2025<br>#9893 04.11.2025 - 05.1 | 06/25 | AQUAPA | Aqua Pennsylvania, Inc.<br>51515-0000 | 9893-05152025 | 5/15/2025 | 6/6/2025 | 260.28 | 0.00 | 260.28 |
| | | | | | | | Check Total: | 260.28 | 0.00 | 260.28 |
| 38<br>610 | 6/3/2025<br>#9895 04.11.2025 - 05.1 | 06/25 | AQUAPA | Aqua Pennsylvania, Inc.<br>51515-0000 | 9895-05152025 | 5/15/2025 | 6/6/2025 | 260.28 | 0.00 | 260.28 |
| | | | | | | | Check Total: | 260.28 | 0.00 | 260.28 |
| 39<br>610 | 6/3/2025<br>2025 Real Estate Taxes | 06/25 | ELIZAWOL | Elizabeth Wolff, Tax Collector<br>53010-0000 | 00387 | 3/1/2025 | 6/30/2025 | 116,055.81 | 0.00 | 116,055.81 |
| | | | | | | | Check Total: | 116,055.81 | 0.00 | 116,055.81 |
| 40<br>610 | 6/3/2025<br>610 OYR 2025 Sewer T: | 06/25 | ELIZAWOL | Elizabeth Wolff, Tax Collector<br>53010-0000 | 01938 | 3/1/2025 | 6/30/2025 | 1,013.77 | 0.00 | 1,013.77 |
| | | | | | | | Check Total: | 1,013.77 | 0.00 | 1,013.77 |
| 41<br>610 | 6/3/2025<br>680 OYR 2025 Sewer T: | 06/25 | ELIZAWOL | Elizabeth Wolff, Tax Collector<br>53010-0000 | 01939 | 3/1/2025 | 6/30/2025 | 9,272.45 | 0.00 | 9,272.45 |
| | | | | | | | Check Total: | 9,272.45 | 0.00 | 9,272.45 |
| 42<br>610 | 6/3/2025<br>#0100 4/22 - 5/22 Electr | 06/25 | PECOPR | Peco<br>51510-0000 | 0100-05222025 | 5/22/2025 | 6/9/2025 | 291.59 | 0.00 | 291.59 |
| | | | | | | | Check Total: | 291.59 | 0.00 | 291.59 |
| 43<br>610 | 6/3/2025<br>#03000 4/22 - 5/22 Gas | 06/25 | PECOPR | Peco<br>51530-0000 | 03000-05222025 | 5/22/2025 | 6/9/2025 | 38.64 | 0.00 | 38.64 |
| | | | | | | | Check Total: | 38.64 | 0.00 | 38.64 |
| 44<br>610 | 6/3/2025<br>#13000 4/22 - 5/22 Elec | 06/25 | PECOPR | Peco<br>51510-0000 | 13000-05222025 | 5/22/2025 | 6/9/2025 | 96.81 | 0.00 | 96.81 |
| | | | | | | | Check Total: | 96.81 | 0.00 | 96.81 |

Appx1525

Case: 25-2598    Document: 20    Page: 334    Date Filed: 11/24/2025

| Database: | MSDE_CB | | Check Register | | | | Page: | 7 |
| ENTITY: | 610 | | Lincoln Property Company | | | | Date: | 8/18/2025 |
| | | | Jenkins Court Realty Co LP | | | | Time: | 7:11 AM |

05/25 Through 07/25

| Check #<br>Entity | Check Date<br>Reference | Check Pd | Vendor/Alternate<br>Address ID<br>P.O. Number | Vendor Name<br>Account Number | Invoice Number | Invoice<br>Date | Due Date | Invoice<br>Amount | Discount<br>Amount | Check<br>Amount |
|---|---|---|---|---|---|---|---|---|---|---|
| 45 | 6/3/2025 | 06/25 | PECOPR | Peco | | | | | | |
| 610 | #2000 4/22 - 5/22 Electr | | | 51510-0000 | 2000-05222025 | 5/22/2025 | 6/9/2025 | 7,061.44 | 0.00 | 7,061.44 |
| | | | | | | | Check Total: | 7,061.44 | 0.00 | 7,061.44 |
| 46 | 6/3/2025 | 06/25 | PECOPR | Peco | | | | | | |
| 610 | #7000 4/22-5/22 Electric | | | 51510-0000 | 7000-05222025 | 5/22/2025 | 6/9/2025 | 201.66 | 0.00 | 201.66 |
| 610 | #7000 04/22-05/22 Gas | | | 51530-0000 | 7000-05222025 | 5/22/2025 | 6/9/2025 | 38.64 | 0.00 | 38.64 |
| | | | | | | | Check Total: | 240.30 | 0.00 | 240.30 |
| 47 | 6/3/2025 | 06/25 | PECOPR | Peco | | | | | | |
| 610 | #8000 4/22 - 5/22 Electr | | | 51510-0000 | 8000-05222025 | 5/22/2025 | 6/9/2025 | 96.54 | 0.00 | 96.54 |
| | | | | | | | Check Total: | 96.54 | 0.00 | 96.54 |
| 48 | 6/3/2025 | 06/25 | RPCLPC | Lincoln Property Company Commercial, LLC | | | | | | |
| 610 | 5/1/2025 - 5/15/2025 Ne | | | 52050-0000 | 70760.5/22/2025 | 5/22/2025 | 6/22/2025 | 1,917.30 | 0.00 | 1,917.30 |
| 610 | 5/1/2025 - 5/15/2025 En | | | 51609-0000 | 70760.5/22/2025 | 5/22/2025 | 6/22/2025 | 490.60 | 0.00 | 490.60 |
| 610 | 5/1/2025 - 5/15/2025 En | | | 51609-0000 | 70760.5/22/2025 | 5/22/2025 | 6/22/2025 | 1,951.38 | 0.00 | 1,951.38 |
| 610 | 5/1/2025 - 5/15/2025 PN | | | 51610-0000 | 70760.5/22/2025 | 5/22/2025 | 6/22/2025 | 5,625.00 | 0.00 | 5,625.00 |
| 610 | 5/1/2025 - 5/15/2025 PN | | | 51610-0000 | 70760.5/22/2025 | 5/22/2025 | 6/22/2025 | 1,338.75 | 0.00 | 1,338.75 |
| 610 | 5/1/2025 - 5/15/2025 Ba | | | 54090-0000 | 70760.5/22/2025 | 5/22/2025 | 6/22/2025 | 115.00 | 0.00 | 115.00 |
| 610 | 5/1/2025 - 5/15/2025 Po | | | 52035-0000 | 70760.5/22/2025 | 5/22/2025 | 6/22/2025 | 54.98 | 0.00 | 54.98 |
| | | | | | | | Check Total: | 11,493.01 | 0.00 | 11,493.01 |
| 49 | 6/3/2025 | 06/25 | TRCRSM | Tri-County Roofing & Sheet Metal, Inc. | | | | | | |
| 610 | 03/07/2025 Roof Repair | | | 51340-0000 | 14153 | 3/7/2025 | 4/6/2025 | 1,260.00 | 0.00 | 1,260.00 |
| | | | | | | | Check Total: | 1,260.00 | 0.00 | 1,260.00 |
| 50 | 6/3/2025 | 06/25 | TRIIVL | Trigild IVL, LLC | | | | | | |
| 610 | 04/2025 Receiver Fees | | | 63284-0000 | IVL-RR7691 | 4/30/2025 | 5/30/2025 | 5,950.00 | 0.00 | 5,950.00 |
| 610 | 04/2025 Accounting Fee | | | 63284-0000 | IVL-RR7894 | 4/30/2025 | 5/30/2025 | 500.00 | 0.00 | 500.00 |
| | | | | | | | Check Total: | 6,450.00 | 0.00 | 6,450.00 |
| 51 | 6/3/2025 | 06/25 | V23633 | COMCAST | | | | | | |
| 610 | #4781 05/30 - 06/29 Inte | | | 52075-0000 | 4781-05172025 | 5/17/2025 | 6/9/2025 | 103.63 | 0.00 | 103.63 |

Appx1526

Case: 25-2598    Document: 20    Page: 335    Date Filed: 11/24/2025

| Database: | MSDE_CB | | | Check Register | | | | | | Page: | 8 |
| ENTITY: | 610 | | | Lincoln Property Company | | | | | | Date: | 8/18/2025 |
| | | | | Jenkins Court Realty Co LP | | | | | | Time: | 7:11 AM |

05/25 Through 07/25

| Check #<br>Entity | Check Date<br>Reference | Check Pd | Vendor/Alternate<br>Address ID<br>P.O. Number | Vendor Name<br>Account Number | Invoice Number | Invoice<br>Date | Due Date | Invoice<br>Amount | Discount<br>Amount | Check<br>Amount |
|---|---|---|---|---|---|---|---|---|---|---|
| | | | | | | | *Check Total:* | *103.63* | *0.00* | *103.63* |
| **52** | **6/6/2025** | **06/25** | **RPCLPC** | **Lincoln Property Company Commercial, LLC** | | | | | | |
| 610 | 5/16/2025 - 5/31/2025 E | | | 51609-0000 | 70760.6/6/2025 | 6/6/2025 | 7/6/2025 | 420.36 | 0.00 | 420.36 |
| 610 | 5/16/2025 - 5/31/2025 E | | | 51609-0000 | 70760.6/6/2025 | 6/6/2025 | 7/6/2025 | 1,766.21 | 0.00 | 1,766.21 |
| 610 | 5/16/2025 - 5/31/2025 P | | | 51610-0000 | 70760.6/6/2025 | 6/6/2025 | 7/6/2025 | 5,625.00 | 0.00 | 5,625.00 |
| 610 | 5/16/2025 - 5/31/2025 P | | | 51610-0000 | 70760.6/6/2025 | 6/6/2025 | 7/6/2025 | 1,338.75 | 0.00 | 1,338.75 |
| 610 | 5/16/2025 - 5/31/2025 P | | | 52035-0000 | 70760.6/6/2025 | 6/6/2025 | 7/6/2025 | 5.74 | 0.00 | 5.74 |
| | | | | | | | *Check Total:* | *9,156.06* | *0.00* | *9,156.06* |
| **53** | **6/23/2025** | **06/25** | **AIRTEC** | **Air Tech Services Inc.** | | | ***Unused - Continued Check*** | | | |
| 610 | Carried to 54 | | | 51245-0000 | 12416 | 3/19/2025 | 3/19/2025 | 0.00 | 0.00 | 0.00 |
| | | | | | | | *Check Total:* | *0.00* | *0.00* | *0.00* |
| **54** | **6/23/2025** | **06/25** | **AIRTEC** | **Air Tech Services Inc.** | | | | | | |
| 610 | 3/19/25 Thermostat Wire | | | 51245-0000 | 12416 | 3/19/2025 | 3/19/2025 | 725.00 | 0.00 | 725.00 |
| 610 | 5/1/25 Condenser Wires | | | 51245-0000 | 12511 | 5/15/2025 | 5/15/2025 | 3,597.00 | 0.00 | 3,597.00 |
| 610 | 5/9/25 IT Room HVAC F | | | 51245-0000 | 12540 | 5/15/2025 | 5/15/2025 | 1,450.00 | 0.00 | 1,450.00 |
| 610 | 5/9/25 Blower Motor Rep | | | 51245-0000 | 12541 | 5/15/2025 | 5/15/2025 | 2,340.00 | 0.00 | 2,340.00 |
| 610 | 5/15/25 Roof HVAC Ass | | | 51245-0000 | 12546 | 5/20/2025 | 5/20/2025 | 975.00 | 0.00 | 975.00 |
| 610 | 4/30/25 Cooling Tower F | | | 51245-0000 | 12551 | 5/21/2025 | 5/21/2025 | 14,472.00 | 0.00 | 14,472.00 |
| 610 | 3/24/25 Breaker Repairs | | | 51245-0000 | 12568 | 5/27/2025 | 5/27/2025 | 1,478.00 | 0.00 | 1,478.00 |
| 610 | 6/3/25 HVAC Repairs | | | 51245-0000 | 12601 | 6/5/2025 | 6/5/2025 | 2,970.00 | 0.00 | 2,970.00 |
| 610 | 6/2/25 Spare Unit Repla | | | 51245-0000 | 12598 | 6/5/2025 | 6/5/2025 | 4,170.00 | 0.00 | 4,170.00 |
| | | | | | | | *Check Total:* | *32,177.00* | *0.00* | *32,177.00* |
| **55** | **6/23/2025** | **06/25** | **BCSFGR** | **BCS Facilities Group** | | | ***Unused - Continued Check*** | | | |
| 610 | Carried to 56 | | | 51025-0000 | 12911 | 5/1/2025 | 6/1/2025 | 0.00 | 0.00 | 0.00 |
| | | | | | | | *Check Total:* | *0.00* | *0.00* | *0.00* |
| **56** | **6/23/2025** | **06/25** | **BCSFGR** | **BCS Facilities Group** | | | | | | |
| 610 | 05/2025 Day Porter Ser | | | 51025-0000 | 12911 | 5/1/2025 | 6/1/2025 | 4,120.03 | 0.00 | 4,120.03 |
| 610 | 06/2025 Day Porter Ser | | | 51025-0000 | 13150 | 6/1/2025 | 7/1/2025 | 4,099.55 | 0.00 | 4,099.55 |
| 610 | 5/6/2025 Janitorial Supp | | | 51220-0000 | 13248 | 5/6/2025 | 6/5/2025 | 281.94 | 0.00 | 281.94 |
| 610 | 5/19/25 Janitorial Suppli | | | 51220-0000 | 13261 | 5/19/2025 | 6/18/2025 | 536.30 | 0.00 | 536.30 |
| 610 | 5/28/25 Janitorial Suppli | | | 51020-0000 | 13286 | 5/28/2025 | 6/27/2025 | 314.22 | 0.00 | 314.22 |

Case: 25-2598    Document: 20    Page: 336    Date Filed: 11/24/2025

| | | | Database: | MSDE_CB | | | Check Register | | | | | Page: | 9 |
| ENTITY: | 610 | | | | | | Lincoln Property Company | | | | | Date: | 8/18/2025 |
| | | | | | | | Jenkins Court Realty Co LP | | | | | Time: | 7:11 AM |

05/25 Through 07/25

| Check #<br>Entity | Check Date<br>Reference | Check Pd | Vendor/Alternate<br>Address ID<br>P.O. Number | Vendor Name<br>Account Number | Invoice Number | Invoice<br>Date | Due Date | Invoice<br>Amount | Discount<br>Amount | Check<br>Amount |
|---|---|---|---|---|---|---|---|---|---|---|
| 610 | 6/5/25 Janitorial Supplie | | | 51220-0000 | 13297 | 6/5/2025 | 7/5/2025 | 178.05 | 0.00 | 178.05 |
| 610 | 05/2025 Night Cleaning | | | 51020-0000 | 12911 | 5/1/2025 | 6/1/2025 | 4,802.52 | 0.00 | 4,802.52 |
| 610 | 06/2025 Nightly Janitoria | | | 51020-0000 | 13150 | 6/1/2025 | 7/1/2025 | 4,823.00 | 0.00 | 4,823.00 |
| | | | | | | | Check Total: | 19,155.61 | 0.00 | 19,155.61 |
| **57** | **6/23/2025** | **06/25** | **BLKCOR** | **Brass Lock and Key Corp** | | | | | | |
| 610 | 3/20/2025 Re-Keying | | | 51285-0000 | 85556 | 3/20/2025 | 4/19/2025 | 1,860.72 | 0.00 | 1,860.72 |
| | | | | | | | Check Total: | 1,860.72 | 0.00 | 1,860.72 |
| **58** | **6/23/2025** | **06/25** | **CININS** | **The Cincinnati Insurance Company** | | | | | | |
| 610 | 7/1/25 Ins Premium Inst | | | 52023-0000 | 5190-06092025 | 6/9/2025 | 7/1/2025 | 9,440.00 | 0.00 | 9,440.00 |
| | | | | | | | Check Total: | 9,440.00 | 0.00 | 9,440.00 |
| **59** | **6/23/2025** | **06/25** | **HEMACO** | **Health Mats Co**   *** VOID *** | | | *Voided Check* | | | |
| 610 | 06/2025 Monthly Floor N | | | 51110-0000 | 36030 | 6/1/2025 | 7/1/2025 | 547.16 | 0.00 | 547.16 |
| 610 | Lost in Mail | | | 51110-0000 | 36030 | 6/1/2025 | 7/1/2025 | -547.16 | 0.00 | -547.16 |
| | | | | | | | Check Total: | 0.00 | 0.00 | 0.00 |
| **60** | **6/23/2025** | **06/25** | **LBFEDE** | **Federal Express** | | | | | | |
| 610 | 6/6/25 Overnight Deliver | | | 52035-0000 | 8-889-22168 | 6/10/2025 | 6/25/2025 | 52.24 | 0.00 | 52.24 |
| | | | | | | | Check Total: | 52.24 | 0.00 | 52.24 |
| **61** | **6/23/2025** | **06/25** | **PRGCIN** | **Paul Rabinowitz Glass Co., Inc** | | | | | | |
| 610 | 5/30/25 Window Repairs | | | 51275-0000 | 107414 | 5/30/2025 | 5/30/2025 | 2,200.00 | 0.00 | 2,200.00 |
| | | | | | | | Check Total: | 2,200.00 | 0.00 | 2,200.00 |
| **62** | **6/23/2025** | **06/25** | **RESERV** | **Republic Services** | | | | | | |
| 610 | 03/18/25 Waste Remova | | | 51055-0000 | 0320-004524686 | 3/31/2025 | 4/20/2025 | 689.90 | 0.00 | 689.90 |
| | | | | | | | Check Total: | 689.90 | 0.00 | 689.90 |
| **63** | **6/23/2025** | **06/25** | **RESERV** | **Republic Services** | | | | | | |
| 610 | 04/15/25 Waste Remova | | | 51055-0000 | 0320-004532867 | 4/15/2025 | 5/5/2025 | 1,802.01 | 0.00 | 1,802.01 |
| | | | | | | | Check Total: | 1,802.01 | 0.00 | 1,802.01 |

| | | | | | | | | | | |
|---|---|---|---|---|---|---|---|---|---|---|
| Database: | MSDE_CB | | | Check Register | | | | | Page: | 10 |
| ENTITY: | 610 | | | Lincoln Property Company | | | | | Date: | 8/18/2025 |
| | | | | Jenkins Court Realty Co LP | | | | | Time: | 7:11 AM |

05/25 Through 07/25

| Check # / Entity | Check Date / Reference | Check Pd | Vendor/Alternate Address ID / P.O. Number | Vendor Name / Account Number | Invoice Number | Invoice Date | Due Date | Invoice Amount | Discount Amount | Check Amount |
|---|---|---|---|---|---|---|---|---|---|---|
| 64 | 6/23/2025 | 06/25 | RESERV | Republic Services | | | | | | |
| 610 | 04/29/25 Waste Removal | | | 51055-0000 | 0320-004533853 | 4/30/2025 | 5/20/2025 | 1,752.77 | 0.00 | 1,752.77 |
| | | | | | | | Check Total: | 1,752.77 | 0.00 | 1,752.77 |
| 65 | 6/23/2025 | 06/25 | RESERV | Republic Services | | | | | | |
| 610 | 05/12/25 Waste Removal | | | 51055-0000 | 0320-004546172 | 5/15/2025 | 6/4/2025 | 2,147.54 | 0.00 | 2,147.54 |
| | | | | | | | Check Total: | 2,147.54 | 0.00 | 2,147.54 |
| 66 | 6/23/2025 | 06/25 | RESERV | Republic Services | | | | | | |
| 610 | 5/23/25 Waste Removal | | | 51055-0000 | 0320-004554871 | 5/31/2025 | 6/20/2025 | 1,773.47 | 0.00 | 1,773.47 |
| | | | | | | | Check Total: | 1,773.47 | 0.00 | 1,773.47 |
| 67 | 6/23/2025 | 06/25 | RPCLPC | Lincoln Property Company Commercial, LLC | | | | | | |
| 610 | 05/2025 Mgmt. Fee | | | 51715-0000 | MF-052025 | 5/31/2025 | 7/1/2025 | 5,000.00 | 0.00 | 5,000.00 |
| | | | | | | | Check Total: | 5,000.00 | 0.00 | 5,000.00 |
| 68 | 7/7/2025 | 07/25 | AIRTEC | Air Tech Services Inc. | | | | | | |
| 610 | 6/12/25 Suite 105 HVAC | | | 51245-0000 | 12643 | 6/18/2025 | 6/18/2025 | 1,982.00 | 0.00 | 1,982.00 |
| 610 | 6/12/25 HVAC Maintena | | | 51245-0000 | 12644 | 6/23/2025 | 6/23/2025 | 780.00 | 0.00 | 780.00 |
| 610 | 6/16/25 HVAC Repairs | | | 51245-0000 | 12669 | 6/30/2025 | 6/30/2025 | 1,908.00 | 0.00 | 1,908.00 |
| 610 | 6/12/25 HVAC Repair Je | | | 51245-0000 | 12670 | 6/30/2025 | 6/30/2025 | 780.00 | 0.00 | 780.00 |
| | | | | | | | Check Total: | 5,450.00 | 0.00 | 5,450.00 |
| 69 | 7/7/2025 | 07/25 | AQUAPA | Aqua Pennsylvania, Inc. | | | | | | |
| 610 | 5/13/25-6/12/25 Water # | | | 51515-0000 | 7244-06132025 | 6/13/2025 | 7/7/2025 | 523.31 | 0.00 | 523.31 |
| | | | | | | | Check Total: | 523.31 | 0.00 | 523.31 |
| 70 | 7/7/2025 | 07/25 | AQUAPA | Aqua Pennsylvania, Inc. | | | | | | |
| 610 | 5/13/25-6/12/25 Water # | | | 51515-0000 | 7390-06132025 | 6/13/2025 | 7/7/2025 | 3,029.55 | 0.00 | 3,029.55 |
| | | | | | | | Check Total: | 3,029.55 | 0.00 | 3,029.55 |
| 71 | 7/7/2025 | 07/25 | AQUAPA | Aqua Pennsylvania, Inc. | | | | | | |
| 610 | 5/13/25-6/12/25 Water # | | | 51515-0000 | 9893-06132025 | 6/13/2025 | 7/7/2025 | 518.90 | 0.00 | 518.90 |

Case: 25-2598    Document: 20    Page: 338    Date Filed: 11/24/2025

Case: 25-2598    Document: 20    Page: 339    Date Filed: 11/24/2025

| Database: | MSDE_CB | | | Check Register | | | | Page: | 11 |
| ENTITY: | 610 | | | Lincoln Property Company | | | | Date: | 8/18/2025 |
| | | | | Jenkins Court Realty Co LP | | | | Time: | 7:11 AM |

05/25 Through 07/25

| Check #<br>Entity | Check Date<br>Reference | Check Pd | Vendor/Alternate<br>Address ID<br>P.O. Number | Vendor Name<br>Account Number | Invoice Number | Invoice<br>Date | Due Date | Invoice<br>Amount | Discount<br>Amount | Check<br>Amount |
|---|---|---|---|---|---|---|---|---|---|---|
| | | | | | | | *Check Total:* | *518.90* | *0.00* | *518.90* |
| **72** | **7/7/2025** | **07/25** | **AQUAPA** | **Aqua Pennsylvania, Inc.** | | | | | | |
| 610 | 5/13/25-6/12/25 Water # | | | 51515-0000 | 9895-06132025 | 6/13/2025 | 7/7/2025 | 260.28 | 0.00 | 260.28 |
| | | | | | | | *Check Total:* | *260.28* | *0.00* | *260.28* |
| **73** | **7/7/2025** | **07/25** | **ARA BAL** | **BALLARD SPAHR LLP** | | | | | | |
| 610 | 5/2/25 - 2/30/25 Prof. Fe | | | 54070-0000 | 20250604644 | 6/18/2025 | 6/18/2025 | 13,746.75 | 0.00 | 13,746.75 |
| | | | | | | | *Check Total:* | *13,746.75* | *0.00* | *13,746.75* |
| **74** | **7/7/2025** | **07/25** | **BCSFGR** | **BCS Facilities Group** | | | ***Unused - Continued Check*** | | | |
| 610 | Carried to 75 | | | 51220-0000 | 12783 | 3/18/2025 | 3/18/2025 | 0.00 | 0.00 | 0.00 |
| | | | | | | | *Check Total:* | *0.00* | *0.00* | *0.00* |
| **75** | **7/7/2025** | **07/25** | **BCSFGR** | **BCS Facilities Group** | | | | | | |
| 610 | 3/18/25 Janitorial Suppli | | | 51220-0000 | 12783 | 3/18/2025 | 3/18/2025 | 661.63 | 0.00 | 661.63 |
| 610 | 04/2025 Day Porter | | | 51025-0000 | 12788 | 4/1/2025 | 5/1/2025 | 6,810.70 | 0.00 | 6,810.70 |
| 610 | 3/28/25 Janitorial Suppli | | | 51220-0000 | 12794 | 3/28/2025 | 4/27/2025 | 652.80 | 0.00 | 652.80 |
| 610 | 4/4/25 Janitorial Supplie | | | 51220-0000 | 12819 | 4/4/2025 | 5/4/2025 | 289.35 | 0.00 | 289.35 |
| 610 | 4/18/2025 Janitorial Sup | | | 51220-0000 | 13029 | 4/18/2025 | 5/18/2025 | 604.36 | 0.00 | 604.36 |
| 610 | 4/22/25 Janitorial Suppli | | | 51220-0000 | 13035 | 4/22/2025 | 5/22/2025 | 206.00 | 0.00 | 206.00 |
| 610 | 07/2025 Day Porter | | | 51025-0000 | 13392 | 7/1/2025 | 7/31/2025 | 4,802.52 | 0.00 | 4,802.52 |
| 610 | 6/9/25 Janitorial Supplie | | | 51220-0000 | 13488 | 6/9/2025 | 7/9/2025 | 326.44 | 0.00 | 326.44 |
| 610 | 6/16/25 Janitorial Suppli | | | 51220-0000 | 13496 | 6/16/2025 | 7/16/2025 | 325.59 | 0.00 | 325.59 |
| 610 | 6/25/25 Janitorial Suppli | | | 51220-0000 | 13515 | 6/25/2025 | 7/25/2025 | 192.90 | 0.00 | 192.90 |
| 610 | 04/2025 Night Cleaning | | | 51020-0000 | 12788 | 4/1/2025 | 5/1/2025 | 4,178.51 | 0.00 | 4,178.51 |
| 610 | 07/2025 Night Cleaning | | | 51020-0000 | 13392 | 7/1/2025 | 7/31/2025 | 4,120.03 | 0.00 | 4,120.03 |
| | | | | | | | *Check Total:* | *23,170.83* | *0.00* | *23,170.83* |
| **76** | **7/7/2025** | **07/25** | **ENMASY** | **Energy Management Systems** | | | | | | |
| 610 | 5/22/25 - 6/25/25 EMS F | | | 51260-0000 | EMS-FTI001532 | 6/29/2025 | 6/29/2025 | 125.00 | 0.00 | 125.00 |
| | | | | | | | *Check Total:* | *125.00* | *0.00* | *125.00* |
| **77** | **7/7/2025** | **07/25** | **MOYER** | **Moyer and Son, Inc.** | | | | | | |
| 610 | 6/10/25 Pest Initial Setu| | | | 51030-0000 | 734666 | 6/10/2025 | 7/10/2025 | 530.00 | 0.00 | 530.00 |
| 610 | 6/10/25 Initial Pest Contr | | | 51030-0000 | 734665 | 6/10/2025 | 7/10/2025 | 821.50 | 0.00 | 821.50 |

Appx1530

| Database: | MSDE_CB | | | Check Register | | | | | Page: | 12 |
| ENTITY: | 610 | | | Lincoln Property Company | | | | | Date: | 8/18/2025 |
| | | | | Jenkins Court Realty Co LP | | | | | Time: | 7:11 AM |

05/25 Through 07/25

| Check #<br>Entity | Check Date<br>Reference | Check Pd | Vendor/Alternate<br>Address ID<br>P.O. Number | Vendor Name<br>Account Number | Invoice Number | Invoice<br>Date | Due Date | Invoice<br>Amount | Discount<br>Amount | Check<br>Amount |
|---|---|---|---|---|---|---|---|---|---|---|
| | | | | | | | Check Total: | 1,351.50 | 0.00 | 1,351.50 |
| 78<br>610 | 7/7/2025<br>5/22/25-6/23/25 | 07/25<br>Electric | PECOPR | Peco<br>51510-0000 | 0100-06232025 | 6/23/2025 | 7/9/2025 | 350.88 | 0.00 | 350.88 |
| | | | | | | | Check Total: | 350.88 | 0.00 | 350.88 |
| 79<br>610 | 7/7/2025<br>5/22/25-6/23/25 | 07/25<br>Electric | PECOPR | Peco<br>51510-0000 | 13000-06232025 | 6/23/2025 | 7/9/2025 | 96.76 | 0.00 | 96.76 |
| | | | | | | | Check Total: | 96.76 | 0.00 | 96.76 |
| 80<br>610 | 7/7/2025<br>5/22/25-6/23/25 | 07/25<br>Electric | PECOPR | Peco<br>51510-0000 | 2000-06232025 | 6/23/2025 | 7/9/2025 | 7,676.61 | 0.00 | 7,676.61 |
| | | | | | | | Check Total: | 7,676.61 | 0.00 | 7,676.61 |
| 81<br>610 | 7/7/2025<br>5/22/25-6/23/25 | 07/25<br>Gas #3( | PECOPR | Peco<br>51530-0000 | 3000-06232025 | 6/23/2025 | 7/9/2025 | 38.64 | 0.00 | 38.64 |
| | | | | | | | Check Total: | 38.64 | 0.00 | 38.64 |
| 82<br>610<br>610 | 7/7/2025<br>5/22/25-6/23/25<br>5/22/25-6/23/25 | 07/25<br>Electric<br>Gas #7( | PECOPR | Peco<br>51510-0000<br>51530-0000 | 7000-06232025<br>7000-06232025 | 6/23/2025<br>6/23/2025 | 7/9/2025<br>7/9/2025 | 231.42<br>50.10 | 0.00<br>0.00 | 231.42<br>50.10 |
| | | | | | | | Check Total: | 281.52 | 0.00 | 281.52 |
| 83<br>610 | 7/7/2025<br>5/22/25-6/23/25 | 07/25<br>Electric | PECOPR | Peco<br>51510-0000 | 8000-06232025 | 6/23/2025 | 7/9/2025 | 96.46 | 0.00 | 96.46 |
| | | | | | | | Check Total: | 96.46 | 0.00 | 96.46 |
| 84<br>610 | 7/7/2025<br>06/02/2025 | 07/25<br>Waste Rem( | RESERV | Republic Services<br>51055-0000 | 0320-004558889 | 6/15/2025 | 7/5/2025 | 1,742.96 | 0.00 | 1,742.96 |
| | | | | | | | Check Total: | 1,742.96 | 0.00 | 1,742.96 |
| 85<br>610<br>610 | 7/7/2025<br>6/1/25 - 6/20/25<br>6/23/25 | 07/25<br>Eng BU<br>CM Fee | RPCLPC | Lincoln Property Company Commercial, LLC<br>51609-0000<br>10380-0000 | 70760.6/20.2025<br>4486.1 | 6/20/2025<br>6/23/2025 | 7/20/2025<br>7/23/2025 | 1,815.21<br>696.00 | 0.00<br>0.00 | 1,815.21<br>696.00 |

Appx1531

| Database: | MSDE_CB | Check Register | Page: | 13 |
| ENTITY: | 610 | Lincoln Property Company | Date: | 8/18/2025 |
| | | Jenkins Court Realty Co LP | Time: | 7:11 AM |

05/25 Through 07/25

| Check #<br>Entity | Check Date<br>Reference | Check Pd | Vendor/Alternate<br>Address ID<br>P.O. Number | Vendor Name<br>Account Number | Invoice Number | Invoice<br>Date | Due Date | Invoice<br>Amount | Discount<br>Amount | Check<br>Amount |
|---|---|---|---|---|---|---|---|---|---|---|
| 610 | 6/1/25 - 6/20/25 Eng. BL | | | 51609-0000 | 70760.6/20.2025 | 6/20/2025 | 7/20/2025 | 458.19 | 0.00 | 458.19 |
| 610 | 6/1/25 - 6/20/25 PM BU | | | 51610-0000 | 70760.6/20.2025 | 6/20/2025 | 7/20/2025 | 1,338.75 | 0.00 | 1,338.75 |
| 610 | 6/1/25 - 6/20/25 PM BU | | | 51610-0000 | 70760.6/20.2025 | 6/20/2025 | 7/20/2025 | 5,625.00 | 0.00 | 5,625.00 |
| 610 | 6/1/25 - 6/20/25 Bank Cl | | | 54090-0000 | 70760.6/20.2025 | 6/20/2025 | 7/20/2025 | 115.00 | 0.00 | 115.00 |
| 610 | 6/1/25 - 6/20/25 Postage | | | 52035-0000 | 70760.6/20.2025 | 6/20/2025 | 7/20/2025 | 8.70 | 0.00 | 8.70 |
| | | | | | | | Check Total: | 10,056.85 | 0.00 | 10,056.85 |
| **86** | **7/7/2025** | **07/25** | **TRCRSM** | **Tri-County Roofing & Sheet Metal, Inc.** | | | | | | |
| 610 | 6/3/25 Roof Maintenance | | | 51340-0000 | 14618 | 6/3/2025 | 7/3/2025 | 5,750.00 | 0.00 | 5,750.00 |
| | | | | | | | Check Total: | 5,750.00 | 0.00 | 5,750.00 |
| **87** | **7/7/2025** | **07/25** | **TRIIVL** | **Trigild IVL, LLC** | | | | | | |
| 610 | 05/2025 Accounting Fee | | | 52093-0000 | IVL-RR8228 | 5/31/2025 | 7/1/2025 | 500.00 | 0.00 | 500.00 |
| 610 | 05/2025 Receiver Fees | | | 52091-0000 | IVL-RR8010 | 5/31/2025 | 7/1/2025 | 7,000.00 | 0.00 | 7,000.00 |
| | | | | | | | Check Total: | 7,500.00 | 0.00 | 7,500.00 |
| **88** | **7/7/2025** | **07/25** | **V19006** | **UPS** | | | | | | |
| 610 | 5/24/2025 Shipping Fees | | | 52035-0000 | 0000Y659D3215 | 5/24/2025 | 6/2/2025 | 52.90 | 0.00 | 52.90 |
| 610 | 06/14/25 Shipping Fees | | | 52035-0000 | 0000Y659D3245 | 6/14/2025 | 6/23/2025 | 165.38 | 0.00 | 165.38 |
| | | | | | | | Check Total: | 218.28 | 0.00 | 218.28 |
| **89** | **7/7/2025** | **07/25** | **V23633** | **COMCAST** | | | | | | |
| 610 | #4781 06/30 - 07/29 Inte | | | 52075-0000 | 4781-06172025 | 6/17/2025 | 7/10/2025 | 103.63 | 0.00 | 103.63 |
| | | | | | | | Check Total: | 103.63 | 0.00 | 103.63 |
| **90** | **7/7/2025** | **07/25** | **WESPES** | **Western Pest Services** | | | | | | |
| 610 | 04/2025 Pest Services | | | 51030-0000 | 9581923 | 4/1/2025 | 4/1/2025 | 452.00 | 0.00 | 452.00 |
| | | | | | | | Check Total: | 452.00 | 0.00 | 452.00 |
| **91** | **7/7/2025** | **07/25** | **HEMACO** | **Health Mats Co** | | | | | | |
| 610 | 06/2025 Monthly Floor N | | | 51110-0000 | 36030 | 6/1/2025 | 7/1/2025 | 547.16 | 0.00 | 547.16 |
| | | | | | | | Check Total: | 547.16 | 0.00 | 547.16 |
| **92** | **7/21/2025** | **07/25** | **AIRTEC** | **Air Tech Services Inc.** | | | | | | |
| 610 | 5/5/2025 HVAC Repairs | | | 51245-0000 | 12579 | 7/2/2025 | 7/2/2025 | 1,054.00 | 0.00 | 1,054.00 |

Appx1532

Case: 25-2598     Document: 20     Page: 341     Date Filed: 11/24/2025

Case: 25-2598   Document: 20   Page: 342   Date Filed: 11/24/2025

| Database: | MSDE_CB | | | Check Register | | | | Page: | 14 |
| ENTITY: | 610 | | | Lincoln Property Company | | | | Date: | 8/18/2025 |
| | | | | Jenkins Court Realty Co LP | | | | Time: | 7:11 AM |

05/25 Through 07/25

| Check #<br>Entity | Check Date<br>Reference | Check Pd | Vendor/Alternate<br>Address ID<br>P.O. Number | Vendor Name<br>Account Number | Invoice Number | Invoice<br>Date | Due Date | Invoice<br>Amount | Discount<br>Amount | Check<br>Amount |
|---|---|---|---|---|---|---|---|---|---|---|
| 610 | 6/23/25 HVAC Repairs | | | 51245-0000 | 12702 | 7/2/2025 | 7/2/2025 | 975.00 | 0.00 | 975.00 |
| 610 | 6/23/25 HVAC Repairs | | | 51245-0000 | 12710 | 7/3/2025 | 8/2/2025 | 460.00 | 0.00 | 460.00 |
| 610 | 6/24/25 HVAC Repairs | | | 51245-0000 | 12720 | 7/3/2025 | 7/3/2025 | 585.00 | 0.00 | 585.00 |
| 610 | 6/24/25 HVAC Repairs ( | | | 51245-0000 | 12719 | 7/3/2025 | 8/2/2025 | 390.00 | 0.00 | 390.00 |
| 610 | 6/26/25 HVAC Repairs ( | | | 51245-0000 | 12712 | 7/3/2025 | 8/2/2025 | 585.00 | 0.00 | 585.00 |
| 610 | 6/23/25 HVAC Repairs l | | | 51245-0000 | 12711 | 7/3/2025 | 8/2/2025 | 625.00 | 0.00 | 625.00 |
| | | | | | | | Check Total: | 4,674.00 | 0.00 | 4,674.00 |
| **93** | **7/21/2025** | **07/25** | **BCSFGR** | **BCS Facilities Group** | | | | | | |
| 610 | 7/9/25 Janitorial Supplie | | | 51220-0000 | 13723 | 7/9/2025 | 8/8/2025 | 679.66 | 0.00 | 679.66 |
| | | | | | | | Check Total: | 679.66 | 0.00 | 679.66 |
| **94** | **7/21/2025** | **07/25** | **CININS** | **The Cincinnati Insurance Company** | | | | | | |
| 610 | 8/1/25 Ins Premium Inst: | | | 52023-0000 | 0701829 | 7/10/2025 | 8/1/2025 | 9,440.00 | 0.00 | 9,440.00 |
| | | | | | | | Check Total: | 9,440.00 | 0.00 | 9,440.00 |
| **95** | **7/21/2025** | **07/25** | **HEMACO** | **Health Mats Co** | | | | | | |
| 610 | 07/25 Floor Mat Service | | | 51110-0000 | 37463 | 7/1/2025 | 7/31/2025 | 547.16 | 0.00 | 547.16 |
| | | | | | | | Check Total: | 547.16 | 0.00 | 547.16 |
| **96** | **7/21/2025** | **07/25** | **MOYER** | **Moyer and Son, Inc.** | | | | | | |
| 610 | 6/24/25 Semi Monthly P( | | | 51030-0000 | 734668-1 | 6/24/2025 | 7/24/2025 | 265.00 | 0.00 | 265.00 |
| 610 | 07/2025 Semi-Monthly F | | | 51030-0000 | 734668-2 | 7/8/2025 | 8/8/2025 | 265.00 | 0.00 | 265.00 |
| | | | | | | | Check Total: | 530.00 | 0.00 | 530.00 |
| **97** | **7/21/2025** | **07/25** | **RESERV** | **Republic Services** | | | | | | |
| 610 | 6/20-6/27/25 Waste Rer | | | 51055-0000 | 0320-004565764 | 6/30/2025 | 7/20/2025 | 3,803.49 | 0.00 | 3,803.49 |
| | | | | | | | Check Total: | 3,803.49 | 0.00 | 3,803.49 |
| **98** | **7/21/2025** | **07/25** | **RPCLPC** | **Lincoln Property Company Commercial, LLC** | | | | | | |
| 610 | 6/16/25-6/30/25 Compu1 | | | 51380-0000 | 70760.7/7/2025 | 7/7/2025 | 8/7/2025 | 1,564.50 | 0.00 | 1,564.50 |
| 610 | 6/16/25-6/30/25 Eng. BL | | | 51609-0000 | 70760.7/7/2025 | 7/7/2025 | 8/7/2025 | 3,382.75 | 0.00 | 3,382.75 |
| 610 | 6/16/25-6/30/25 Eng. BL | | | 51609-0000 | 70760.7/7/2025 | 7/7/2025 | 8/7/2025 | 805.09 | 0.00 | 805.09 |
| 610 | 6/16/25-6/30/25 PM BU | | | 51610-0000 | 70760.7/7/2025 | 7/7/2025 | 8/7/2025 | 1,338.75 | 0.00 | 1,338.75 |
| 610 | 6/16/25-6/30/25 PM BU | | | 51610-0000 | 70760.7/7/2025 | 7/7/2025 | 8/7/2025 | 5,625.00 | 0.00 | 5,625.00 |
| 610 | 6/16/25-6/30/25 Postage | | | 52035-0000 | 70760.7/7/2025 | 7/7/2025 | 8/7/2025 | 8.76 | 0.00 | 8.76 |

Appx1533

Case: 25-2598    Document: 20    Page: 343    Date Filed: 11/24/2025

| Database: | MSDE_CB | | | Check Register | | | | | | Page: | 15 |
| ENTITY: | 610 | | | Lincoln Property Company | | | | | | Date: | 8/18/2025 |
| | | | | Jenkins Court Realty Co LP | | | | | | Time: | 7:11 AM |
| | | | | 05/25 Through 07/25 | | | | | | | |

| Check #<br>Entity | Check Date<br>Reference | Check Pd | Vendor/Alternate<br>Address ID<br>P.O. Number | Vendor Name<br>Account Number | Invoice Number | Invoice<br>Date | Due Date | Invoice<br>Amount | Discount<br>Amount | Check<br>Amount |
|---|---|---|---|---|---|---|---|---|---|---|
| | | | | | | | Check Total: | 12,724.85 | 0.00 | 12,724.85 |
| **99**<br>610 | **7/21/2025**<br>7/1/25 - 9/30/25 Worksp | **07/25** | **WORKSL** | **WORKSPACE, LLC**<br>51625-0000 | WS-015745 | 7/1/2025 | 7/31/2025 | 1,565.90 | 0.00 | 1,565.90 |
| | | | | | | | Check Total: | 1,565.90 | 0.00 | 1,565.90 |
| **M03312025**<br>610 | **5/29/2025**<br>03/2025 Mgmt. Fee | **05/25** | **RPCLPC** | **Lincoln Property Company Commercial, LLC**<br>51715-0000 | MF-032025A | 3/31/2025 | *Hand Check*<br>5/1/2025 | 5,000.00 | 0.00 | 5,000.00 |
| | | | | | | | Check Total: | 5,000.00 | 0.00 | 5,000.00 |
| **M05012025**<br>610 | **5/8/2025**<br>Insurance Installment 05 | **05/25** | **CININS** | **The Cincinnati Insurance Company**<br>52023-0000 | 5190-05012025 | 5/1/2025 | *Hand Check*<br>5/1/2025 | 9,440.00 | 0.00 | 9,440.00 |
| | | | | | | | Check Total: | 9,440.00 | 0.00 | 9,440.00 |
| **N00000001**<br>610<br>610 | **6/23/2025**<br>3/12/25 Compactor Serv<br>5/14/25 Compactor Serv | **06/25** | **NATEQU** | **National Equipment Solutions, LP**<br>51110-0000<br>51110-0000 | 121791<br>123923 | 3/12/2025<br>5/14/2025 | 3/22/2025<br>5/24/2025 | 421.42<br>699.67 | 0.00<br>0.00 | 421.42<br>699.67 |
| | | | | | | | Check Total: | 1,121.09 | 0.00 | 1,121.09 |
| **N00000002**<br>610 | **7/7/2025**<br>04/2025 - 04/2026 Eleva | **07/25** | **ELSECU** | **Electronic Security Solutions**<br>51015-0000 | 60733 | 4/25/2025 | 4/25/2025 | 871.20 | 0.00 | 871.20 |
| | | | | | | | Check Total: | 871.20 | 0.00 | 871.20 |
| **N00000003**<br>610<br>610 | **7/21/2025**<br>7/2/25 Water Treatment<br>7/2/25 Water Treatment | **07/25** | **NALCOC** | **NALCO COMPANY**<br>51075-0000<br>51075-0000 | 6660368414<br>6603497985 | 7/3/2025<br>7/11/2025 | 8/2/2025<br>8/10/2025 | 859.58<br>3,095.57 | 0.00<br>0.00 | 859.58<br>3,095.57 |
| | | | | | | | Check Total: | 3,955.15 | 0.00 | 3,955.15 |
| **N00000004**<br>610 | **7/21/2025**<br>7/7/25 Compactor Servi | **07/25** | **NATEQU** | **National Equipment Solutions, LP**<br>51110-0000 | 125980 | 7/7/2025 | 7/17/2025 | 333.97 | 0.00 | 333.97 |
| | | | | | | | Check Total: | 333.97 | 0.00 | 333.97 |
| **N00000005**<br>610 | **7/21/2025**<br>5/24/25 Landscaping | **07/25** | **RUPLAN** | **Ruppert Landscape Inc.**<br>51045-0000 | 732831 | 6/2/2025 | 6/17/2025 | 281.25 | 0.00 | 281.25 |

| Database: | MSDE_CB | | | | Check Register | | | | Page: | | 16 |
| ENTITY: | 610 | | | | Lincoln Property Company | | | | Date: | | 8/18/2025 |
| | | | | | Jenkins Court Realty Co LP | | | | Time: | | 7:11 AM |

05/25 Through 07/25

| Check #<br>Entity | Check Date<br>Reference | Check Pd | Vendor/Alternate<br>Address ID<br>P.O. Number | Vendor Name<br>Account Number | Invoice Number | Invoice<br>Date | Due Date | Invoice<br>Amount | Discount<br>Amount | Check<br>Amount |
|---|---|---|---|---|---|---|---|---|---|---|
| 610 | 7/9/25 Landscaping | | | 51045-0000 | 743603 | 7/9/2025 | 7/24/2025 | 3,057.60 | 0.00 | 3,057.60 |
| | | | | | | | *Check Total:* | *3,338.85* | *0.00* | *3,338.85* |
| | | | | | | | *Jenkins Court Realty Co LP Total:* | *586,613.07* | *0.00* | *586,613.07* |
| | | | | | | | *Grand Total:* | *586,613.07* | *0.00* | *586,613.07* |

Appx1535

| | | | | | | | | | | |
|---|---|---|---|---|---|---|---|---|---|---|
| Database: | MSDE_CB | | | Open Status Report | | | | | Page: | 1 |
| | | | | Lincoln Property Company | | | | | Date: | 8/20/2025 |
| ENTITY: | 610 | | | Jenkins Court Realty Co LP | | | | | Time: | 10:43 AM |

All Invoices open at End of Month thru Fiscal Period 07/25

| Invoice Number | Invoice Date | P.O. Number | Reference | Account Number | Invoice Amount | Discount Amount | Net Amount | Check Date | Check Number | Check Period |
|---|---|---|---|---|---|---|---|---|---|---|
| *Expense Period:* | *07/25* | | | | | | | | | |
| **Vendor: AIRTEC** | | **Air Tech Services Inc.** | | | | | | | | |
| 12774 | 7/18/2025 | | 7/10/25 HVAC Repairs | 51245-0000 | 2,134.00 | 0.00 | 2,134.00 | 8/5/2025 | 100 | 08/25 |
| 12795 | 7/22/2025 | | 6/18/25 HVAC Repairs | 51245-0000 | 780.00 | 0.00 | 780.00 | 8/5/2025 | 100 | 08/25 |
| **Vendor: AQUAPA** | | **Aqua Pennsylvania, Inc.** | | | | | | | | |
| 7244-07162025 | 7/16/2025 | | 6/12-7/14/25 Water | 51515-0000 | 518.85 | 0.00 | 518.85 | 8/5/2025 | 101 | 08/25 |
| 7390-07162025 | 7/16/2025 | | 6/12-7/14/25 Water | 51515-0000 | 4,168.97 | 0.00 | 4,168.97 | 8/5/2025 | 102 | 08/25 |
| 9893-07162025 | 7/16/2025 | | 6/12-7/14/25 Water | 51515-0000 | 260.28 | 0.00 | 260.28 | 8/5/2025 | 103 | 08/25 |
| 9895-07162025 | 7/16/2025 | | 6/12-7/14/25 Water | 51515-0000 | 260.28 | 0.00 | 260.28 | 8/5/2025 | 104 | 08/25 |
| **Vendor: ARA BAL** | | **BALLARD SPAHR LLP** | | | | | | | | |
| 20250702288 | 7/15/2025 | | 6/1/25 - 6/30/25 Prof. Fees | 54070-0000 | 37,370.50 | 0.00 | 37,370.50 | 8/5/2025 | 105 | 08/25 |
| **Vendor: BCSFGR** | | **BCS Facilities Group** | | | | | | | | |
| 13748 | 7/23/2025 | | 7/23/25 Janitorial Supplies | 51220-0000 | 370.46 | 0.00 | 370.46 | 8/5/2025 | 106 | 08/25 |
| **Vendor: BLKCOR** | | **Brass Lock and Key Corp** | | | | | | | | |
| 86312 | 7/17/2025 | | 7/17/25 Locksmith | 51285-0000 | 1,467.36 | 0.00 | 1,467.36 | 8/5/2025 | 107 | 08/25 |
| **Vendor: ECRCI** | | **Elevator Construction & Repair Co. Inc** | | | | | | | | |
| 24-11025 | 8/31/2024 | | 8/30/24 Elevator Maintenance | 51015-0000 | 243.80 | 0.00 | 243.80 | 8/5/2025 | 108 | 08/25 |
| 24-14556 | 11/15/2024 | | 11/1/24 Elevator Maintenance | 51015-0000 | 243.80 | 0.00 | 243.80 | 8/5/2025 | 108 | 08/25 |
| 24-16583 | 12/31/2024 | | 12/16/24 Elevator Maintenance | 51015-0000 | 121.90 | 0.00 | 121.90 | 8/5/2025 | 108 | 08/25 |
| 25-7108 | 6/30/2025 | | 6/30/25 Elevator Re-Cabling | 10380-0000 | 12,000.00 | 0.00 | 12,000.00 | 8/5/2025 | 108 | 08/25 |

Date Filed: 11/24/2025    Page: 346    Document: 20    Case: 25-2598

| Database: | MSDE_CB | | Open Status Report | | | Page: | | 2 |
|---|---|---|---|---|---|---|---|---|
| | | | Lincoln Property Company | | | Date: | | 8/20/2025 |
| ENTITY: | 610 | | Jenkins Court Realty Co LP | | | Time: | | 10:43 AM |

All Invoices open at End of Month thru Fiscal Period 07/25

| Invoice Number | Invoice Date | P.O. Number | Reference | Account Number | Invoice Amount | Discount Amount | Net Amount | Check Date | Check Number | Check Period |
|---|---|---|---|---|---|---|---|---|---|---|
| 25-7198 | 6/30/2025 | | 6/30/25 Elevator Modernization Installment | 10380-0000 | 37,000.00 | 0.00 | 37,000.00 | 8/5/2025 | 108 | 08/25 |
| **Vendor: ENMASY** | | **Energy Management Systems** | | | | | | | | |
| EMS-FTI003066 | 7/31/2025 | | 6/25-7/22/25 EMS Monthly Fee | 51260-0000 | 125.00 | 0.00 | 125.00 | 8/5/2025 | 110 | 08/25 |
| **Vendor: GROSE** | | **Ginger Rose** | | | | | | | | |
| ROSE07142025 | 7/14/2025 | | 6/30-7/14/25 Rose Reimbursement | 51634-0000 | 940.26 | 0.00 | 940.26 | 8/1/2025 | DELETED | 07/25 |
| *** This invoice was DELETED in Expense Period 07/25 *** | | | | | | | | | | |
| ROSE07142025 | 7/14/2025 | | 6/30-7/14/25 Rose Reimbursement | 51634-0000 | -940.26 | 0.00 | -940.26 | 8/1/2025 | DELETED | 07/25 |
| *** This invoice was DELETED in Expense Period 07/25 *** | | | | | | | | | | |
| **Vendor: LINALA** | | **Linked Alarm LLC** | | | | | | | | |
| 7496 | 11/16/2024 | | 11/16/24 Fire Alarm Monitoring | 51256-0000 | 327.00 | 0.00 | 327.00 | 8/5/2025 | 111 | 08/25 |
| 7499 | 11/16/2024 | | 11/16/24 Fire Alarm Monitoring | 51256-0000 | 327.00 | 0.00 | 327.00 | 8/5/2025 | 111 | 08/25 |
| 8439 | 4/24/2025 | | 4/24/25 Fire Alarm Monitoring | 51256-0000 | 376.82 | 0.00 | 376.82 | 8/5/2025 | 111 | 08/25 |
| 8553 | 5/16/2025 | | 5/16/25 Fire Alarm Monitoring | 51256-0000 | 300.00 | 0.00 | 300.00 | 8/5/2025 | 111 | 08/25 |
| 8554 | 5/16/2025 | | 5/16/25 Fire Alarm Monitoring | 51256-0000 | 300.00 | 0.00 | 300.00 | 8/5/2025 | 111 | 08/25 |
| 8811 | 7/3/2025 | | 7/3/25 Fire Alarm Monitoring | 51256-0000 | 135.00 | 0.00 | 135.00 | 8/5/2025 | 111 | 08/25 |
| 8942 | 7/30/2025 | | 7/20/25 Fire Alarm Service | 51256-0000 | 288.70 | 0.00 | 288.70 | 8/5/2025 | 111 | 08/25 |
| **Vendor: MOYER** | | **Moyer and Son, Inc.** | | | | | | | | |
| 734668-3 | 7/22/2025 | | 07/2025 Semi-Monthly Pest Control | 51030-0000 | 265.00 | 0.00 | 265.00 | 8/5/2025 | 112 | 08/25 |

| | | | | | | | | | | |
|---|---|---|---|---|---|---|---|---|---|---|
| Database: | MSDE_CB | | | Open Status Report | | | | | Page: | 3 |
| | | | | Lincoln Property Company | | | | | Date: | 8/20/2025 |
| ENTITY: | 610 | | | Jenkins Court Realty Co LP | | | | | Time: | 10:43 AM |

All Invoices open at End of Month thru Fiscal Period 07/25

| Invoice Number | Invoice Date | P.O. Number | Reference | Account Number | Invoice Amount | Discount Amount | Net Amount | Check Date | Check Number | Check Period |
|---|---|---|---|---|---|---|---|---|---|---|
| **Vendor: MPESOT** | | **McClain Pesot** | | | | | | | | |
| PESOT-07112025 | 7/11/2025 | | 7/11/25 Pesot Postage | 52035-0000 | 34.00 | 0.00 | 34.00 | 8/5/2025 | 113 | 08/25 |
| **Vendor: NALCOC** | | **NALCO COMPANY** | | | | | | | | |
| 6603516228 | 7/22/2025 | | 7/22/25 Water Treatment | 51075-0000 | 1,988.71 | 0.00 | 1,988.71 | 8/5/2025 | N00000006 | 08/25 |
| 6660371427 | 7/17/2025 | | 7/17/25 Water Treatment | 51075-0000 | 129.32 | 0.00 | 129.32 | 8/5/2025 | N00000006 | 08/25 |
| **Vendor: NATEQU** | | **National Equipment Solutions, LP** | | | | | | | | |
| 125936 | 6/26/2025 | | 6/23-6/30/25 Compactor Service | 51055-0000 | 4,001.68 | 0.00 | 4,001.68 | 8/5/2025 | N00000007 | 08/25 |
| **Vendor: OFPSEC** | | **Oliver Fire Protection Security** | | | | | | | | |
| 10033905 | 7/21/2025 | | 7/9-7/14/25 Sprinkler Services | 51255-0000 | 2,326.00 | 0.00 | 2,326.00 | 8/5/2025 | N00000008 | 08/25 |
| **Vendor: PECOPR** | | **Peco** | | | | | | | | |
| 13000-07232025 | 7/23/2025 | | 6/23-7/23/25 Electric | 51510-0000 | 98.01 | 0.00 | 98.01 | 8/5/2025 | 114 | 08/25 |
| 2000-07232025 | 7/23/2025 | | 6/23-7/23/25 Electric | 51510-0000 | 10,498.55 | 0.00 | 10,498.55 | 8/5/2025 | 115 | 08/25 |
| 8000-07232025 | 7/23/2025 | | 6/23-7/23/25 Electric | 51510-0000 | 97.63 | 0.00 | 97.63 | 8/5/2025 | 116 | 08/25 |
| **Vendor: RESERV** | | **Republic Services** | | | | | | | | |
| 0320-004575319 | 7/15/2025 | | 7/3/25 Waste Removal | 51055-0000 | 397.65 | 0.00 | 397.65 | 8/5/2025 | 117 | 08/25 |
| **Vendor: RPCLPC** | | **Lincoln Property Company Commercial, LLC** | | | | | | | | |
| 70760.7/22/2025 | 7/22/2025 | | 7/1/2025-7/15/2025 Bank Charges | 51633-0000 | 115.00 | 0.00 | 115.00 | 8/5/2025 | 118 | 08/25 |
| 70760.7/22/2025 | 7/22/2025 | | 7/1/2025-7/15/2025 ENG BU Gross Pay | 51609-0000 | 4,638.21 | 0.00 | 4,638.21 | 8/5/2025 | 118 | 08/25 |

Case: 25-2598    Document: 20    Page: 347    Date Filed: 11/24/2025

| Database: | MSDE_CB | | Open Status Report | | Page: | 4 |
|---|---|---|---|---|---|---|
| | | | Lincoln Property Company | | Date: | 8/20/2025 |
| ENTITY: | 610 | | Jenkins Court Realty Co LP | | Time: | 10:43 AM |

All Invoices open at End of Month thru Fiscal Period 07/25

| Invoice Number | Invoice Date | P.O. Number | Reference | Account Number | Invoice Amount | Discount Amount | Net Amount | Check Date | Check Number | Check Period |
|---|---|---|---|---|---|---|---|---|---|---|
| 70760.7/22/2025 | 7/22/2025 | | 7/1/2025-7/15/2025 ENG BU Related Expense | 51609-0000 | 1,130.06 | 0.00 | 1,130.06 | 8/5/2025 | 118 | 08/25 |
| 70760.7/22/2025 | 7/22/2025 | | 7/1/2025-7/15/2025 PM BU Gross Pay | 51610-0000 | 5,625.00 | 0.00 | 5,625.00 | 8/5/2025 | 118 | 08/25 |
| 70760.7/22/2025 | 7/22/2025 | | 7/1/2025-7/15/2025 PM BU Related Expense | 51610-0000 | 1,338.75 | 0.00 | 1,338.75 | 8/5/2025 | 118 | 08/25 |
| 70760.7/22/2025 | 7/22/2025 | | 7/1/2025-7/15/2025 Postage Fees | 52035-0000 | 8.80 | 0.00 | 8.80 | 8/5/2025 | 118 | 08/25 |

**Vendor: RUPLAN     Ruppert Landscape Inc.**

| Invoice Number | Invoice Date | P.O. Number | Reference | Account Number | Invoice Amount | Discount Amount | Net Amount | Check Date | Check Number | Check Period |
|---|---|---|---|---|---|---|---|---|---|---|
| 746113 | 8/1/2025 | | 08/2025 Exterior Landscaping | 51045-0000 | 3,621.33 | 0.00 | 3,621.33 | 8/5/2025 | N00000009 | 08/25 |
| 747190 | 7/30/2025 | | 07/2025 Landscaping Contract | 51045-0000 | 3,621.33 | 0.00 | 3,621.33 | 8/5/2025 | N00000009 | 08/25 |

**Vendor: TRIIVL     Trigild IVL, LLC**

| Invoice Number | Invoice Date | P.O. Number | Reference | Account Number | Invoice Amount | Discount Amount | Net Amount | Check Date | Check Number | Check Period |
|---|---|---|---|---|---|---|---|---|---|---|
| IVL-BB5406 | 7/29/2025 | | 7/29/25 Receiver Fees | 52093-0000 | 288.74 | 0.00 | 288.74 | 8/5/2025 | 119 | 08/25 |
| IVL-RR8349 | 7/1/2025 | | 06/2025 Receiver Fees | 52091-0000 | 7,000.00 | 0.00 | 7,000.00 | 8/5/2025 | 119 | 08/25 |
| IVL-RR8575 | 7/1/2025 | | 06/2025 Accounting Fees | 52093-0000 | 500.00 | 0.00 | 500.00 | 8/5/2025 | 119 | 08/25 |

**Vendor: V23633     COMCAST**

| Invoice Number | Invoice Date | P.O. Number | Reference | Account Number | Invoice Amount | Discount Amount | Net Amount | Check Date | Check Number | Check Period |
|---|---|---|---|---|---|---|---|---|---|---|
| 4781-07172025 | 7/17/2025 | | 7/30-8/29/25 Internet | 52075-0000 | 103.63 | 0.00 | 103.63 | 8/5/2025 | 120 | 08/25 |
| | | | Expense Period 07/25 Total: | | 146,947.12 | 0.00 | 146,947.12 | | | |
| | | | **Jenkins Court Realty Co LP Total:** | | **146,947.12** | **0.00** | **146,947.12** | | | |
| | | | **Grand Total:** | | **146,947.12** | **0.00** | **146,947.12** | | | |

Appx1539

**Jenkins Court**
**LPC Management Fees Invoice**
**Invoice Date**          May 31, 2025
**Invoice Number**        MF-052025
**AP Description**        5/25 LPC Mgmt Fees
**GL Account**           51715-0000

| Entity ID | Entity Name | 5/25 |
|-----------|-------------|------|
| 610 | Per Cash Receipt Report | 131,924.07 |
| | **Total Per Cash Receipt Report** | **131,924.07** |
| | **LPC- Management Fees 2.50%** | **3,298.10** |
| | **Minimum $5,000** | **5,000.00** |
| **Total LPC Management Fees - GL 51715-0000** | | **5,000.00** |

Management Fee

The monthly Management Fee shall be the greater of (i) two percent (2.50%) multiplied by the total monthly Gross Receipts derived from the Property's per month, or (ii) the sum of $5,000.00.

"**Gross Receipts**" shall mean all revenues received by Receiver from the operation of the Property during the term of this Agreement, but not limited to, rental and charges for space occupancy, signage, parking, laundries, and other amenities, *exclusive of* (i) proceeds of any insurance payment specifically paid to reimburse Receiver for loss of business revenue or rental income with respect to the Property, (ii) security or other deposits, to the extent the same are held for the benefit of, or required to be returned to, tenants of the Property, (iii) any allowance or compensation for any free rent concessions or credits against rent for tenant improvement costs paid by tenants, (iv) sums collected through litigation or paid to Receiver, (v) actual bad debts (and reserves therefor) provided that any recovered bad debt shall become part of Gross Receipts in the fiscal year in which recovered, (vi) payments for lease cancellations, and (vii) sales taxes collected by Manager. Gross Receipts shall be determined on a cash basis.

**Jenkins Court**
**LPC Management Fees Invoice**
**Invoice Date**        **June 30, 2025**
**Invoice Number**    **MF-062025**
**AP Description**     **6/25 LPC Mgmt Fees**
**GL Account**          **51715-0000**

| Entity ID | Entity Name | 6/25 |
|---|---|---|
| 610 | Per Cash Receipt Report | 924,808.35 |
| | Total Per Cash Receipt Report | 924,808.35 |
| | LPC- Management Fees 2.50% | 23,120.21 |
| | Minimum $5,000 | 5,000.00 |
| **Total LPC Management Fees - GL 51715-0000** | | 23,120.21 |

Management Fee

The monthly Management Fee shall be the greater of (i) two percent (2.50%) multiplied by the total monthly Gross Receipts derived from the Property's per month, or (ii) the sum of $5,000.00.

"Gross Receipts" shall mean all revenues received by Receiver from the operation of the Property during the term of this Agreement, but not limited to, rental and charges for space occupancy, signage, parking, laundries, and other amenities, *exclusive of* (i) proceeds of any insurance payment specifically paid to reimburse Receiver for loss of business revenue or rental income with respect to the Property, (ii) security or other deposits, to the extent the same are held for the benefit of, or required to be returned to, tenants of the Property, (iii) any allowance or compensation for any free rent concessions or credits against rent for tenant improvement costs paid by tenants, (iv) sums collected through litigation or paid to Receiver, (v) actual bad debts (and reserves therefor) provided that any recovered bad debt shall become part of Gross Receipts in the fiscal year in which recovered, (vi) payments for lease cancellations, and (vii) sales taxes collected by Manager. Gross Receipts shall be determined on a cash basis.

**Jenkins Court**
**LPC Management Fees Invoice**
**Invoice Date**     **July 31, 2025**
**Invoice Number**   **MF-072025**
**AP Description**   **7/25 LPC Mgmt Fees**
**GL Account**      **51715-0000**

| Entity ID | Entity Name | 7/25 |
|---|---|---|
| 610 | Per Cash Receipt Report | 247,336.76 |
| | **Total Per Cash Receipt Report** | **247,336.76** |
| | **LPC- Management Fees 2.50%** | **6,183.42** |
| | **Minimum $5,000** | **5,000.00** |
| **Total LPC Management Fees - GL 51715-0000** | | **6,183.42** |

Management Fee

The monthly Management Fee shall be the greater of (i) two percent (2.50%) multiplied by the total monthly Gross Receipts derived from the Property's per month, or (ii) the sum of $5,000.00.

"Gross Receipts" shall mean all revenues received by Receiver from the operation of the Property during the term of this Agreement, but not limited to, rental and charges for space occupancy, signage, parking, laundries, and other amenities, *exclusive of* (i) proceeds of any insurance payment specifically paid to reimburse Receiver for loss of business revenue or rental income with respect to the Property, (ii) security or other deposits, to the extent the same are held for the benefit of, or required to be returned to, tenants of the Property, (iii) any allowance or compensation for any free rent concessions or credits against rent for tenant improvement costs paid by tenants, (iv) sums collected through litigation or paid to Receiver, (v) actual bad debts (and reserves therefor) provided that any recovered bad debt shall become part of Gross Receipts in the fiscal year in which recovered, (vi) payments for lease cancellations, and (vii) sales taxes collected by Manager. Gross Receipts shall be determined on a cash basis.

| Database: | MSDE_CB | Cash Receipts | Page: | 1 |
| BLDG: | 610 | Lincoln Property Company | Date: | 6/11/2025 |
| | | 610 Old York Road J | Time: | 8:52 AM |
| | | 05/25 Thru 05/25 | | |

| Income Category | Amount |
|---|---|

**Master Occupant:    000000001828-1   Bethany Christian Services of Greater Delawa   Suite: 610 -201**

| PPD | Prepaid Rental Income | 17,561.23 |
| | **Total:** | **17,561.23** |

**Master Occupant:    000000001829-1   Cypher Group Holdings                          Suite: 610 -210**

| PPD | Prepaid Rental Income | 4,251.16 |
| | **Total:** | **4,251.16** |

**Master Occupant:    000000001832-1   Helping Hands Family                           Suite: 610 -640**

| PPD | Prepaid Rental Income | 16,743.72 |
| | **Total:** | **16,743.72** |

**Master Occupant:    000000001834-1   Jersey College                                Suite: 610 -100**

| PPD | Prepaid Rental Income | 64,387.38 |
| | **Total:** | **64,387.38** |

**Master Occupant:    000000001836-1   Marc Kress, M.D.                              Suite: 610 -670**

| PPD | Prepaid Rental Income | 8,341.70 |
| | **Total:** | **8,341.70** |

**Master Occupant:    000000001837-1   Outback Steakhouse                            Suite: 610 -116**

| PPD | Prepaid Rental Income | 20,238.88 |
| | **Total:** | **20,238.88** |

**Master Occupant:    000000001840-1   Sezai Saran                                   Suite: 610 -114**

| BRT | Base Rent | 400.00 |
| | **Total:** | **400.00** |

**Totals for BLDG 610**

| BRT | Base Rent | 400.00 |
| PPD | Prepaid Rental Income | 131,524.07 |
| | **Total:** | **131,924.07** |

**Grand Totals**

| BRT | Base Rent | 400.00 |
| PPD | Prepaid Rental Income | 131,524.07 |
| | **Total:** | **131,924.07** |

| Database: | MSDE_CB | Cash Receipts | | Page: | 1 |
|---|---|---|---|---|---|
| BLDG: | 610 | Lincoln Property Company | | Date: | 7/9/2025 |
| | | 610 Old York Road J | | Time: | 10:24 AM |
| | | 06/25 Thru 06/25 | | | |

| Income Category | | Amount |
|---|---|---|

**Master Occupant:    000000001828-1  Bethany Christian Services of Greater Delawa**    Suite: 610  -201

| BRT | Base Rent | 52,683.69 |
|---|---|---|
| PPD | Prepaid Rental Income | 17,141.10 |
| | **Total:** | **69,824.79** |

**Master Occupant:    000000001830-1  Kristen Givens and Dante Givens**    Suite: 610  -650

| BRT | Base Rent | 500.00 |
|---|---|---|
| PPD | Prepaid Rental Income | 5,000.00 |
| | **Total:** | **5,500.00** |

**Master Occupant:    000000001832-1  Helping Hands Family**    Suite: 610  -640

| BRT | Base Rent | 16,743.72 |
|---|---|---|
| PPD | Prepaid Rental Income | 16,743.72 |
| | **Total:** | **33,487.44** |

**Master Occupant:    000000001834-1  Jersey College**    Suite: 610  -100

| PPD | Prepaid Rental Income | 64,387.38 |
|---|---|---|
| | **Total:** | **64,387.38** |

**Master Occupant:    000000001836-1  Marc Kress, M.D.**    Suite: 610  -670

| BRT | Base Rent | 8,038.33 |
|---|---|---|
| OPE | Operating Expenses | 303.37 |
| PPD | Prepaid Rental Income | 16,683.40 |
| | **Total:** | **25,025.10** |

**Master Occupant:    000000001837-1  Outback Steakhouse**    Suite: 610  -116

| BRT | Base Rent | 23,940.88 |
|---|---|---|
| OPE | Operating Expenses | 3,923.34 |
| PPD | Prepaid Rental Income | 36,911.04 |
| RET | Real Estate Taxes | 5,598.06 |
| | **Total:** | **70,373.32** |

**Master Occupant:    000000001839-1  Regus Corporation**    Suite: 610  -400

| BRT | Base Rent | 114,240.00 |
|---|---|---|
| OPE | Operating Expenses | 19,314.96 |
| PPD | Prepaid Rental Income | 16,759.50 |
| | **Total:** | **150,314.46** |

**Master Occupant:    000000001840-1  Sezai Saran**    Suite: 610  -114

| PPD | Prepaid Rental Income | 400.00 |
|---|---|---|
| | **Total:** | **400.00** |

**Master Occupant:    000000001841-1  Temple University Health System**    Suite: 610  -250

| BRT | Base Rent | 91,303.32 |
|---|---|---|
| OPE | Operating Expenses | 32,563.80 |
| PPD | Prepaid Rental Income | 74,147.88 |
| RET | Real Estate Taxes | 24,428.64 |
| | **Total:** | **222,443.64** |

**Master Occupant:    000000001842-1  Temple University Health System, Inc.**    Suite: 610  -680

| BRT | Base Rent | 116,134.32 |
|---|---|---|
| OPE | Operating Expenses | 38,034.52 |
| PPD | Prepaid Rental Income | 91,350.74 |
| RET | Real Estate Taxes | 28,532.64 |
| | **Total:** | **274,052.22** |

**Master Occupant:    000000001852-1  Trumark Financial Credit Union**    Suite: 610  -PARKING

| PAR | Parking | 4,500.00 |
|---|---|---|

Appx1544

| Database: | MSDE_CB | Cash Receipts | Page: | 2 |
|---|---|---|---|---|
| BLDG: | 610 | Lincoln Property Company | Date: | 7/9/2025 |
| | | 610 Old York Road J | Time: | 10:24 AM |
| | | 06/25 Thru 06/25 | | |

| Income Category | | Amount |
|---|---|---|
| PPD | Prepaid Rental Income | 4,500.00 |
| | **Total:** | **9,000.00** |

**Totals for BLDG 610**

| | | |
|---|---|---|
| BRT | Base Rent | 423,584.26 |
| OPE | Operating Expenses | 94,139.99 |
| PAR | Parking | 4,500.00 |
| PPD | Prepaid Rental Income | 344,024.76 |
| RET | Real Estate Taxes | 58,559.34 |
| | **Total:** | **924,808.35** |

**Grand Totals**

| | | |
|---|---|---|
| BRT | Base Rent | 423,584.26 |
| OPE | Operating Expenses | 94,139.99 |
| PAR | Parking | 4,500.00 |
| PPD | Prepaid Rental Income | 344,024.76 |
| RET | Real Estate Taxes | 58,559.34 |
| | **Total:** | **924,808.35** |

Appx1545

| Database: | MSDE_CB | Cash Receipts | Page: | 1 |
|---|---|---|---|---|
| BLDG: | 610 | Lincoln Property Company | Date: | 8/11/2025 |
| | | 610 Old York Road J | Time: | 1:16 PM |
| | | 07/25 Thru 07/25 | | |

| Income Category | | Amount |
|---|---|---|

**Master Occupant:    000000001828-1  Bethany Christian Services of Greater Delawa**    Suite: 610 -201

| BRT | Base Rent | 17,561.23 |
|---|---|---|
| PPD | Prepaid Rental Income | 17,561.23 |
| | **Total:** | **35,122.46** |

**Master Occupant:    000000001829-1  Cypher Group Holdings**    Suite: 610 -210

| BRT | Base Rent | 2,125.58 |
|---|---|---|
| | **Total:** | **2,125.58** |

**Master Occupant:    000000001834-1  Jersey College**    Suite: 610 -100

| PPD | Prepaid Rental Income | 64,387.38 |
|---|---|---|
| | **Total:** | **64,387.38** |

**Master Occupant:    000000001836-1  Marc Kress, M.D.**    Suite: 610 -670

| BRT | Base Rent | 8,038.33 |
|---|---|---|
| OPE | Operating Expenses | 303.37 |
| | **Total:** | **8,341.70** |

**Master Occupant:    000000001837-1  Outback Steakhouse**    Suite: 610 -116

| PPD | Prepaid Rental Income | 18,760.09 |
|---|---|---|
| | **Total:** | **18,760.09** |

**Master Occupant:    000000001839-1  Regus Corporation**    Suite: 610 -400

| BRT | Base Rent | 28,560.00 |
|---|---|---|
| OPE | Operating Expenses | 4,828.74 |
| PPD | Prepaid Rental Income | 2,061.50 |
| | **Total:** | **35,450.24** |

**Master Occupant:    000000001840-1  Sezai Saran**    Suite: 610 -114

| PPD | Prepaid Rental Income | 400.00 |
|---|---|---|
| | **Total:** | **400.00** |

**Master Occupant:    000000001841-1  Temple University Health System**    Suite: 610 -250

| PPD | Prepaid Rental Income | 37,073.94 |
|---|---|---|
| | **Total:** | **37,073.94** |

**Master Occupant:    000000001842-1  Temple University Health System, Inc.**    Suite: 610 -680

| PPD | Prepaid Rental Income | 45,675.37 |
|---|---|---|
| | **Total:** | **45,675.37** |

**Totals for BLDG 610**

| BRT | Base Rent | 56,285.14 |
|---|---|---|
| OPE | Operating Expenses | 5,132.11 |
| PPD | Prepaid Rental Income | 185,919.51 |
| | **Total:** | **247,336.76** |

**Grand Totals**

| BRT | Base Rent | 56,285.14 |
|---|---|---|
| OPE | Operating Expenses | 5,132.11 |
| PPD | Prepaid Rental Income | 185,919.51 |
| | **Total:** | **247,336.76** |

Appx1546