# IN THE UNITED STATES COURT OF APPEALS FOR THE THIRD CIRCUIT

## NO. 25-2598

### ICON PSG 1 FL, LLC,

**Plaintiff-Appellee,**

**v.**

### JENKINS COURT REALTY CO., L.P.,

**Defendant-Appellant.**

On Appeal from the Order of the U.S. District
Court for the Eastern District of Pennsylvania
Entered July 18, 2025, in Civil Action
No. 2:25-cv-00044-GAM

### BRIEF OF RECEIVER-APPELLEE TRIGILD IVL, LLC

Raymond A. Quaglia, Esquire
Brian N. Kearney, Esquire
BALLARD SPAHR LLP
1735 Market Street, 51st Floor
Philadelphia, PA 19103-7599
(215) 665-8500

*Counsel for Receiver-Appellee
Trigild IVL, LLC*

Dated:  January 2, 2026

## CORPORATE DISCLOSURE STATEMENT

Pursuant to Rule 26.1 and Third Circuit LAR 26.1, Trigild IVL, LLC makes the following disclosure:

1.    For nongovernmental corporate parties please list all parent corporations: <u>NONE</u>.

2.    For nongovernmental corporate parties please list all publicly held companies that hold 10% or more of the party's stock: <u>NONE</u>.

3.    If there is a publicly held corporation which is not a party to the proceeding before this Court but which has a financial interest in the outcome of the proceeding, please identify all such parties and specify the nature of the financial interest or interests: <u>NONE</u>.

4.    In all bankruptcy appeals counsel for the debtor or trustee of the bankruptcy estate must list: 1) the debtor, if not identified in the case caption; 2) the members of the creditors' committee or the top 20 unsecured creditors; and 3) any entity not named in the caption which is an active participant in the bankruptcy proceeding.  If the debtor or trustee is not participating in the appeal, this information must be provided by appellant. <u>N/A</u>.

Dated:  January 2, 2026

*/s/ Brian N. Kearney*
Brian N. Kearney

## **TABLE OF CONTENTS**

**Page**

I.    COUNTER-STATEMENT OF THE ISSUES ..................................................1

II.   COUNTER-STATEMENT OF THE CASE ..................................................2

    A.    Nature of the Case ...............................................................................2

    B.    Background Relevant to This Appeal ..................................................2

III.  SUMMARY OF ARGUMENT..................................................................5

IV.   ARGUMENT..........................................................................................7

    A.    The District Court Did Not Err or Abuse Its Discretion in
        Finding Appellant and its Principal, Philip Pulley, in Contempt
        of the Court's Order Compelling Production.......................................7

        1.    Legal Standard ...........................................................................8

        2.    The District Court did not abuse its discretion in finding
            that Borrower disobeyed a valid court order of which it
            had knowledge. ...........................................................................9

        3.    The District Court did not abuse its discretion in finding
            that Borrower did not provide a valid reason why it
            should not be found in contempt of the Court's Order.............10

    B.    The District Court Did Not Err or Abuse Its Discretion in
        Ordering the Modification of SBG Management's Lease. .................13

        1.    Legal Standard .........................................................................15

        2.    The District Court did not commit reversible error in
            determining that SBG had sufficient notice of the Lease
            Motion and the Receiver Order...................................................16

        3.    The District Court did not commit reversible error in
            determining that the lease provision containing a 1,000
            day cure period was unconscionable. .......................................18

4.    The District Court did not abuse its discretion or commit reversible error in determining that the Receiver was not bound by the SNDA. ...............................................................20

5.    The District Court did not abuse its discretion or commit reversible error in determining that modification of the lease provision was warranted in order to accomplish the purposes of the Receiver Order. ...............................................22

V.    CONCLUSION..................................................................................24

# TABLE OF AUTHORITIES

**Page(s)**

**Cases**

*Am. Bd. of Surgery v. Lasko*,
    532 Fed. Appx. 66 (3d Cir. 2013)........................................................................8

*Biddle v. Johnsonbaugh*,
    664 A.2d 159 (Pa. Super. 1995) .........................................................................19

*DirecTV v. Leto*,
    467 F.3d 842 (3d Cir. 2006) ...............................................................................16

*FTC v. Lane Labs-USA, Inc.*,
    624 F.3d 575 (3d Cir. 2010) ........................................................................... 8-9

*Germantown Mfg. Co. v. Rawlinson,*
    491 A.2d 138 (Pa. Super. 1985) .........................................................................19

*Gordon v. Lewiston Hosp.,*
    423 F.3d 184 (3d Cir. 2005) ...............................................................................15

*Harris v. City of Phila.*,
    47 F.3d 1311 (3d Cir. 1995) ................................................................................8

*Harris v. Green Tree Financial Corp.*,
    183 F.3d 173 (3d Cir. 1999) ...............................................................................19

*Hughes v. Long,*
    242 F.3d 121 (3d Cir. 2001) ...............................................................................21

*In re Asbestos Prods. Liab. Litig.*,
    718 F.3d 236 (3d Cir. 2013) ...............................................................................16

*McCutcheon v. Am.'s Servicing Co.,*
    560 F.3d 143 (3d Cir. 2009) ...............................................................................15

*Robin Woods Inc. v. Woods*,
    28 F.3d 396 (3d Cir. 1994) ..................................................................................8

*Tech One Assoc. v. Bd. of Prop. Assessment, Appeals, & Rev. of*
*Allegheny Cnty.*,
53 A.3d 685 (Pa. 2012) ...................................................................19

*Travelers Cas. & Sur. Co. v. Ins. Co. of N. Am.*,
609 F.3d 143 (3d Cir. 1995) ...................................................... 15-16

*Trinh v. Fineman,*
9 F.4th 235 (3d Cir. 2021) ..............................................................21

*VICI Racing, LLC v. T-Mobile USA, Inc.*,
763 F.3d 273 (3d Cir. 2014) ...................................................... 15-16

*Wells Fargo Bank N.A. v. Ashley Bus. Park LLC*,
548 Fed. Appx. 791 (3d Cir. 2013)..................................................16

**Statutes**

42 Pa. Cons. Stat. Ann. Section 102 ........................................................21

## I.     <u>COUNTER-STATEMENT OF THE ISSUES</u>

1.     Whether the District Court erred or committed an abuse of discretion in holding Defendant-Appellant Jenkins Court Realty Co., L.P. ("<u>Borrower</u>") and its principal, Philip Pulley, in contempt of its May 12, 2025 Order compelling compliance with the Court's prior February 21, 2025 Order, after full briefing and a hearing at which Mr. Pulley gave sworn testimony?

Suggested answer in the negative.

2.     Whether the District Court erred or committed an abuse of discretion in holding that modification of a lease term, which permitted the tenant - Borrower's property management company - to withhold rent for up to one thousand days (i.e., more than 2.5 years) without penalty, was both authorized under the Court's Receiver Order and warranted in order to accomplish the purposes of that Order?

Suggested answer in the negative.

## II.    COUNTER-STATEMENT OF THE CASE

### A.    Nature of the Case

The matter before this Court is an appeal by Defendant-Appellant Jenkins Court Realty Co., L.P. ("Borrower") from the Order of the U.S. District Court for the Eastern District of Pennsylvania (McHugh, J.), dated July 18, 2025, in the mortgage foreclosure action captioned *Icon PSG 1 FL, LLC v. Jenkins Court Realty Co., L.P.*, Civil Action No. 2:25-cv-00044-GAM (the "Litigation"), granting Plaintiff-Appellee Icon PSG 1 FL, LLC's ("Lender's") motion for entry of default judgment.

Borrower has also appealed two Orders of the District Court which granted relief requested by Trigild IVL, LLC, the Court-appointed receiver ("Trigild," the "Receiver-Appellee," or simply the "Receiver") placed in charge of the property at the center of the Litigation, an office/mixed-use building located at 610 Old York Road in Jenkintown, Pennsylvania (the "Property").

### B.    Background Relevant to This Appeal

Lender commenced the Litigation by filing a foreclosure complaint in the U.S. District Court for the Eastern District of Pennsylvania on January 6, 2025. Appx0021-0155. Lender subsequently filed a motion on January 10, 2025, petitioning the District Court to appoint a receiver to oversee the Property (the "Receiver Motion"). Appx0156-0322. Borrower filed a response in opposition to the Receiver Motion on January 31, 2025. Appx0324-0348. Lender filed a Reply in

2

support of the Receiver Motion on February 11, 2025. Appx0349-0378. On

February 21, 2025, the District Court granted the Receiver Motion and entered an

Order appointing Trigild as the Receiver of the Property (the "Receiver Order").

SAppx003-016.

In its efforts to collect rents and otherwise oversee the Property, the

Receiver encountered several obstacles ultimately traceable to Borrower:

**First**, the Borrower failed to provide to the Receiver a detailed

accounting and various other records and information, despite being required to by

the terms of the Receiver Order. After trying and failing to obtain these materials

from Borrower for two months, the Receiver sought the District Court's aid, filing

a Motion to Compel Compliance on April 23, 2025 (the "Motion to Compel").

Appx0406-0407. Borrower filed a response in opposition to the Motion to Compel

on May 7, 2025. Appx0692-0747. On May 12, 2025, the Court entered an Order

granting the Receiver's Motion to Compel (the "Compliance Order"), ordering

Borrower to produce the requested materials within five days. Appx0748-0749. On

May 16, 2025, Borrower filed what it styled a "Response in Compliance with the

May 12, 2025 Order" – essentially rehashing its opposition arguments as to why it

either could not or should not have to make any further production,

notwithstanding the Compliance Order. Appx0750-0990. Receiver's counsel

served a Notice and Demand to Cure Noncompliance upon Borrower's counsel of

record on May 28, 2025 (to which Borrower and its counsel never responded).

Appx1208-1210. The Receiver then filed a motion on June 6, 2025, asking the

Court to hold Borrower and its principal, Mr. Pulley, in contempt for its failure to

obey the clear terms of both the Receiver Order and the Compliance Order (the

"Contempt Motion"). Appx1196-1212. Borrower filed its opposition to the

Contempt Motion on June 16, 2025. Appx1349-1370. The Receiver filed a Reply

Declaration in further support of the Contempt Motion on June 30, 2025.

Appx1382-1405.

**Second**, two commercial tenants at the Property refused to pay any

rent or other required payments. These tenants were confident that they could not

be evicted or otherwise be compelled to pay rent, due to a provision in each of their

leases which gave them **one thousand days** – i.e., more than **2.5 years** - to cure

any nonpayment or other default without penalty. Upon further investigation, the

Receiver concluded that each of these tenants were affiliates of Borrower's

principal Philip Pulley, and that Mr. Pulley had engaged in self-dealing in creating

the lease provisions at issue. Believing this issue to be a material obstacle to the

receivership, the Receiver filed a motion with the District Court on June 2, 2025,

asking the Court to modify the relevant provision in these leases to provide a

commercially reasonable "10 days" to cure nonpayment, rather than the original

one thousand day cure period (the "Lease Motion"). Appx1002-1195. Borrower,

despite claiming at the time to have no affiliation with either tenant, filed a response in opposition to the Lease Motion on June 16, 2025. Appx1213-1348. The Receiver filed a Reply in further support of the Lease Motion on June 30, 2025. Appx1378-1381.

The District Court held a hearing on July 1, 2025, regarding both the Contempt Motion and the Lease Motion, as well as a motion by the Lender for entry of default judgment. Besides hearing oral argument, the Court took live testimony both from Receiver representative Jon Lakner and from Mr. Pulley.

On July 18, 2025, the District Court issued an Order granting the Contempt Motion (the "Contempt Order") and another granting the Lease Motion (the "Lease Order"). Appx0004-0005; Appx0007-0009.

## III.    SUMMARY OF ARGUMENT

Borrower has challenged, *inter alia*, two orders of the District Court on motions made by the Court-appointed Receiver of the real property at issue: one finding Borrower and its principal, Philip Pulley, in contempt for failure to produce accountings and various other documents and records as ordered by the Court in both its Receiver Order and a subsequent Compliance Order; the other modifying an unconscionable provision of the lease of Borrower's property management firm, SBG Management Inc. (of which Mr. Pulley is the principal and President), to bring it in line with standard commercial leases and curtail an abuse by which the firm is

5

maintaining a rent-free foothold in the Property. Borrower's challenges to each of these Orders are without merit.

Borrower claims the District Court erred in finding it in contempt, because it substantially complied with the Court's prior order, and/or any failure to produce was the result of impossibility. The Court's review of the evidence, including testimony from Mr. Pulley which it deemed non-credible, led it to conclude otherwise. This was a valid exercise of the District Court's discretion which this Court should not overturn.

Borrower also claims the District Court erred in modifying SBG's lease to give it **ten** days to cure nonpayment or other potential events of default, rather than the previous **thousand** days (i.e., over 2.5 years) that SBG had and was making the most of, to its own advantage and to the Property's detriment. Despite Mr. Pulley's role on both sides of this transaction (as evidenced by his signatures on behalf of both landlord <u>and</u> tenant), Borrower claims that this was a good-faith transaction blessed by Lender's counsel and cemented by an attornment clause which ought to bind the Receiver. This both misinterprets the law as to the enforceability of unconscionable contractual terms, and fundamentally misunderstands the nature of the receivership and the authority it is granted by virtue of the District Court's Receiver Order. The Court determined that the term was indeed unconscionable – a legal determination which demonstrated no clear error

and which this Court should affirm – and that the Receiver was not bound by the attornment clause, and in fact was empowered to modify the lease in order to further the purposes of the Receivership – an interpretation of the Court's own order which constituted a valid exercise of the Court's discretion, or alternatively constituted a legal determination which demonstrated no clear error. However this Court wishes to characterize the District Court's decision, it was the correct one, and this Court should similarly affirm it.

## IV.    <u>ARGUMENT</u>

### A.    **The District Court Did Not Err or Abuse Its Discretion in Finding Appellant and its Principal, Philip Pulley, in Contempt of the Court's Order Compelling Production**

As it did before the District Court, Borrower offers a laundry list of alternative explanations for why it should not be held in contempt for its failure to comply with the Court's Order compelling it to turn over accounting and various other records to the Receiver: it actually <u>did</u> substantially comply; **or** such compliance was impossible because no such records existed; **or** it was impossible because the Receiver withheld materials already provided that would allow Borrower to create the accounting that Receiver requested. The District Court evaluated these arguments, compared what had been requested with what was actually produced, and conducted an evidentiary hearing at which it took – and made a finding as to the credibility of – Mr. Pulley's testimony. Ultimately, the Court

found Borrower's contempt "self-evident," its excuses of substantial compliance or impossibility unavailing, and Mr. Pulley "an evasive witness" whose testimony lacked credibility and "implie[d] that he is being selective in his compliance with this Court's order." Appx0002-0003. The subsequent Contempt Order was based on clear and convincing evidence and constituted a valid exercise of the District Court's discretion.

### 1. Legal Standard

The Third Circuit reviews a finding of civil contempt for abuse of discretion. *Am. Bd. of Surgery, Inc. v. Lasko*, 532 Fed. Appx. 66, 69 (3d Cir. 2013) (citing *Harris v. City of Phila.*, 47 F.3d 1311, 1321 (3d Cir. 1995)). A finding of civil contempt "must be supported by clear and convincing evidence but will otherwise 'only be disturbed if there is an error of law or a clearly erroneous finding of fact.'" *Lasko*, 532 Fed. Appx. at 69 (quoting *Harris*, 47 F.3d at 1321). "To prove civil contempt the court must find that (1) a valid court order existed, (2) the defendant had knowledge of the order, and (3) the defendant disobeyed the order." *Lasko*, 532 Fed. Appx. at 69-70 (quoting *Harris*, 47 F.3d at 1326). "Good faith is not a defense to civil contempt." *Lasko*, 532 Fed. Appx. at 70 (quoting *Robin Woods Inc. v. Woods*, 28 F.3d 396, 399 (3d Cir. 1994)) (internal marks omitted); *see also FTC v. Lane Labs-USA, Inc.*, 624 F.3d 575, 582 (3d Cir. 2010) (noting that "an

alleged contemnor's behavior need not be willful in order to contravene the applicable decree").

> **2.      The District Court did not abuse its discretion in finding that Borrower disobeyed a valid court order of which it had knowledge.**

Borrower did not contest below and does not contest here that the District Court's Compliance Order was valid, or that Borrower had knowledge of the Compliance Order. Nor does Borrower actually contest that it did not <u>fully</u> comply with the Order; indeed, it admits in its Brief that it did not produce "the accounting that the District Court instructed." Borrower's Brief at 41. Instead, Borrower insists that it "***substantially*** complied with the Receiver's Order[,]" that "[Borrower] and Mr. Pulley are not capable of producing any additional documents or the accounting that the District Court instructed[,]" and that "[f]urther compliance is impossible[.]" *Id.* (emphasis added).

Substantial compliance and impossibility are <u>defenses</u> to a finding of contempt, not a challenge to a finding of noncompliance with a valid court order. Borrower has acknowledged that it did not produce materials as instructed by the Court. The baseline test for civil contempt has been met.

9

**3.    The District Court did not abuse its discretion in finding that Borrower did not provide a valid reason why it should not be found in contempt of the Court's Order.**

Borrower presents two combined excuses for its clear contempt. It argues for a finding of substantial compliance – that Borrower and Mr. Pulley have "taken all reasonable steps to comply with the valid outstanding court orders" and that any violation was "in a manner that is merely technical or inadvertent." *See* Borrower's Brief at 43 (internal citation and insertion marks omitted). And it also argues impossibility, claiming that Borrower and Mr. Pulley "were incapable of compliance in spite of their best efforts." *See id.* (internal citation and insertion marks omitted). But the District Court, which reviewed the briefing and Borrower's deficient production, and had the benefit of taking and evaluating live testimony from Mr. Pulley, determined that this was not the case.

Borrower claims that it "cannot produce information that it does not possess" and "does not have access to any additional records to create the reconciliations, accountings or information the Receiver demanded." *See* Borrower's Brief at 44. Borrower separately claims that the Receiver has withheld certain information without which Borrower cannot prepare the required accounting. *See id.* These assertions simply don't pass the smell test.

As a preface, this information was not merely "demanded" by the Receiver; its preparation and production was mandated by the District Court more

10

than ten months ago in its Receiver Order, Section 5 of which stated in relevant part that "Defendant shall prepare and file with the Court and serve on all parties hereto a detailed accounting of all income, expenses, receivables, and payables relating to the Property from the date of the most recent audited financial statement to the present." SAppx004.

Borrower has certainly not "substantially complied" as to production of this accounting. As the Receiver noted in the June 30, 2025 Reply Declaration of Jon Lakner, Borrower did not file or serve any such accounting by March 24, 2025 (i.e., within the 30 days provided in the Receiver Order), nor by May 17, 2025 (i.e. within the five days required by the Compliance Order). Appx1383. **Nor has Borrower provided any such accounting to date.** And the District Court noted in its Memorandum accompanying the Contempt Order that "[Borrower] has not even attempted to prepare an accounting." *See* Appx0002.  This can in no way constitute a "merely technical or inadvertent" failure on Borrower's part.

Nor has Borrower demonstrated impossibility as to production of this accounting. The District Court noted that "[B]orrower's vague excuse that it requires information from the Receiver makes no sense, both because it would appear to have electronic versions of whatever it previously produced, and it has not even attempted to prepare an accounting." Appx0002. And the Court "found Mr. Pulley to be an evasive witness who offered no credible explanation for how

11

the property could have been operated if in fact the documents requested by the Receiver did not exist." Appx0002.[1]

Besides this accounting, Borrower also failed to turn over a number of records relating to the management of the Property. *See* Appx1383-1384. And, more egregiously, it failed to notify the Receiver of an ongoing tax appeal that it had been litigating in the Montgomery County Court of Common Pleas (the "Tax Appeal"), in the course of which Borrower's counsel (the same counsel as in the instant litigation) filed New Matter on behalf of Borrower blaming its failure to respond to discovery requests on the Receiver. *See* Appx1385.

Borrower did not demonstrate to the District Court, and cannot demonstrate, that the failure to provide these various records, and the information and documents associated with the Tax Appeal, somehow constitutes "merely technical and inadvertent" shortcomings attendant to "substantial compliance." And Borrower's claims of impossibility as to these records should be given no credence, even without accounting for Mr. Pulley's lack of credibility on the stand;

---

[1] The Court also noted in its Order that "the tone and tenor of [Mr. Pulley's] testimony was that the Receiver should have been able to obtain necessary information from what was produced, such as a General Ledger, which strongly implies that he is being selective in his compliance with this Court's order." Appx0002-0003. Such selective compliance would cut against Borrower's claims of both impossibility and mere technical or inadvertent failure to comply fully.

as the Court noted, "[i]t is inconceivable that such records do not exi[s]t, and vague explanations about records lost because of a plumbing leak in 2022 sheds no light on documents that logically would have existed at a later point in time." Appx0002. And Borrower has provided no rationale for why an impossibility defense would cover its failure to hand over information regarding the Tax Appeal.[2]

For these reasons, and for those laid out by the District Court, this Court should affirm the District Court and deny Borrower's appeal as to the Contempt Motion.

### B. The District Court Did Not Err or Abuse Its Discretion in Ordering the Modification of SBG Management's Lease.

Borrower also asks this Court to reverse the District Court's Order of July 18, 2025 (the "Lease Order"), which granted the Receiver's Motion to Modify Existing Lease Agreements (the "Lease Motion") and subsequently modified the lease of Borrower's erstwhile property manager, SBG Management Services ("SBG") – specifically, by revising a clause, which unconscionably gave SBG **one thousand (1,000) days (i.e., more than 2.5 years)** to cure any nonpayment or other

---

[2] Indeed, at the July 2025 hearing Borrower's counsel claimed that it was his decision not to alert Receiver of the Tax Appeal, on the basis that the matter was "dormant" – an explanation that the Court reasonably labeled "nonsensical," particularly given that counsel did not alert the Receiver upon submitting averments in the Tax Appeal blaming the Receiver for Borrower's inaction. *See* SAppx035-037.

breach before being deemed to be in default, to an objectively reasonable industry-standard **ten (10) days**.[3] Borrower argues here, as it did to the District Court below, (1) that SBG is not affiliated with Borrower and did not receive notice of the Motion, (2) that Lender reviewed the relevant provision and implicitly "blessed" it, and (3) that the Receiver is constrained by a Subordination, Nondisturbance and Attornment Agreement ("SNDA"), to which it was not a party, to leave that unconscionable term undisturbed, and allow SBG and its shared principal with Borrower, Mr. Pulley, to maintain a *de facto* rent-free foothold in the Property. *See* Borrower's Brief at 29-38.

The District Court correctly found that SBG had ample notice of the motion via its shared principal, Mr. Pulley, the signatory on its lease; that, because Mr. Pulley was on both sides of the transaction, the lease term in question was not negotiated at arm's length and violated the implied duty of good faith and fair

---

[3] Borrower makes consistent reference to Jenkins Storage, LLC ("Jenkins Storage"), a private storage facility and tenant of the Property whose lease the Receiver also sought to modify in its Lease Motion. *See, e.g.,* Borrower's Brief at 30, 33-34, 37-38. But the District Court did <u>not</u> grant the Lease Motion as to Jenkins Storage in the Lease Order; instead, it ordered the Receiver "to properly serve Jenkins Storage, LLC with [the Receiver's] Motion to comport with due process notice requirements." *See* Appx0007. The Lease Motion was only granted as to Jenkins Storage on December 3, 2025, after service was effected upon Jenkins Storage and its alleged principal, Warren Silverman, via certified mail and personal service, and after a hearing was held at which Mr. Silverman had an opportunity to be heard, and at which he indicated that he did not intend to contest the motion. *See* ECF No. 65 in the underlying docket. Crucially, Borrower has not appealed the District Court's December 3, 2025 Order, and it is not a proper subject of the instant Appeal.

dealing inherent in any lease contract; that the lease term was "also unconscionable because it unreasonably favor[ed] the tenant[;]" that, regardless of whether and to what extent Lender reviewed the lease, there was no evidence that it had reviewed or even known the existence of the SNDA; that, even if the SNDA *were* valid as to the Lender, the Receiver, as a creature of the District Court's Receiver Order, is an arm of the Court and is not similarly bound; and that modification of the lease term was warranted to accomplish the purposes of the Receiver Order. *See* Appx0007-0008. The District Court did not abuse its discretion or commit reversible error in making these findings, and this Court should affirm its reasoning and its ruling.

### 1.    Legal Standard

In an appeal of a District Court's Order involving both interpretation of law and findings of fact, the Third Circuit "reviews a district court's findings of fact for clear error and its conclusions of law *de novo*." *VICI Racing, LLC v. T-Mobile USA, Inc.*, 763 F.3d 273, 282-83 (3d Cir 2014) (citing *McCutcheon v. Am.'s Servicing Co.*, 560 F.3d 143, 147 (3d Cir. 2009). "For mixed questions of law and fact '[the Court] appl[ies] the clearly erroneous standard except that the District Court's choice and interpretation of legal precepts remain subject to plenary review.'" *VICI Racing*, 763 F.3d at 283 (quoting *Gordon v. Lewiston Hosp.*, 423 F.3d 184, 201 (3d Cir. 2005)). "To the extent that the District Court's conclusions rested on credibility determinations, our review is particularly deferential." *VICI*

15

*Racing, LLC*, 763 F.3d at 283 (quoting *Travelers Cas. & Sur. Co. v. Ins. Co. of N. Am.*, 609 F.3d 143, 156-57 (3d Cir. 2010)) (internal quotation marks omitted).

But an additional standard of review, not addressed by Borrower's brief, is also in play here. The Third Circuit "gives 'great deference' to a district court's interpretation of its own orders." *Wells Fargo Bank N.A. v. Ashley Bus. Park LLC*, 548 Fed. Appx. 791, 793-94 (3d Cir. 2013) (citing *In re Asbestos Prods. Liab. Litig.*, 718 F.3d 236, 244 (3d Cir. 2013)). "In affording such deference, we apply an abuse of discretion standard." *Wells Fargo*, 548 Fed. Appx. at 794 (citing *DirecTV, Inc. v. Leto*, 467 F.3d 842, 847 (3d Cir. 2006) (holding that district court abused its discretion in interpreting its own order)). The Third Circuit has previously applied the abuse of discretion standard when reviewing a District Court's interpretation of its own order appointing a Receiver. *See Wells Fargo*, 548 Fed. Appx. at 794 (citing *In re Absestos Prods. Liab. Litig.*, 718 F.3d at 244).

> **2.    The District Court did not commit reversible error in determining that SBG had sufficient notice of the Lease Motion and the Receiver Order.**

The District Court held in a footnote to the Lease Order that notice on SBG was sufficient "[b]ecause Mr. Pulley is a Principal of both SBG Management and Jenkins Court Realty." Appx0007.  Borrower halfheartedly argues that "there was no finding of fact that [SBG] is a related affiliate of [Borrower]" (Borrower's Brief at 37), though at the same time acknowledging "Mr. Pulley's ownership" of

16

SBG multiple times. *See* Borrower's Brief at 35 (referencing "Mr. Pulley's ownership interest in" and "connection to" SBG); *id.* at 37 (referencing "Mr. Pulley's ownership" of SBG). But Mr. Pulley acknowledged being the sole owner of SBG in his testimony at the July 1, 2025 hearing:

> [Court:] "Who is SBG? Who owns SBG?
>
> [Pulley:] "I own SBG Management Services of PA."

SAppx046. Borrower also conveniently fails to mention that its own filing in opposition to the Lease Motion included the SBG Lease signature page, which listed the tenant signatory as "Philip Pulley, President." Appx1258. And Mr. Pulley, as principal for Borrower, was on notice of both the Lease Motion and the underlying Receiver Order, his counsel having been served with both filings via the Court's ECF system. Appx1003; SAppx003-016. Moreover, both Mr. Pulley and his counsel, Mr. Yanoff, were sent a letter by the Receiver on February 24, 2025, via overnight mail and e-mail, notifying them of the Receiver Order and noting that it covered "independent contractors and agents, and all persons in active concert and participation with them."[4] Appx1379. Via that letter, both Mr. Pulley, SBG's principal and apparent President, and Mr. Yanoff, who also serves as SBG's counsel, were put on notice that the Receiver Order was applicable to

---

[4] Moreover, the email addressed to Mr. Pulley was received at his SBG business email (phil@sbgmanagement.com). *See* Appx1379.

17

SBG as both a tenant and an entity working with Mr. Pulley - whether SBG styled itself Mr. Pulley's agent, his independent contractor, or some other heretofore undisclosed label.

Most importantly for this Court's analysis, the purpose of a notice requirement for a motion is to give the party affected an opportunity to contest that motion. SBG received such opportunity. Its counsel and its principal, under the Borrower's aegis, filed an opposition advocating for SBG's interests, submitted evidence, and participated in a motion hearing. Borrower can point neither to any prejudice caused to SBG by the form of notice provided, nor to any benefit that would have accrued to SBG had notice been effected via some other method.

> **3.** **The District Court did not commit reversible error in determining that the lease provision containing a 1,000 day cure period was unconscionable.**

The District Court's finding that the provision of SBG's lease "which allows for a striking 1000-day period of default before the landlord is permitted to seek any recourse for noncompliance" constituted an unconscionable lease term is correct under the law and should be affirmed, because the provision was not the product of an arm's length transaction and unreasonably favors one party over the other, and in doing so stands as an inherent violation of the implicit duty of good faith and fair dealing.

18

"A contract may be set aside or rescinded if it can be proven that, at the time of formation of the agreement, the parties did not bargain at an arm's length." *Biddle v. Johnsonbaugh*, 664 A.2d 159, 161 (Pa. Super. 1995); *see also Tech One Assoc. v. Bd. of Prop. Assessment, Appeals, & Rev. of Allegheny Cnty.*, 53 A.3d 685, 703 n. 30 (Pa. 2012) (characterizing an "arm's length transaction" as a transaction "**untainted by any collusion** or fraud") (emphasis added). In this instance, the parties – the landlord at the inception, Borrower, and the tenant, SBG – were both represented by a single person, Mr. Pulley, the signatory on behalf of each entity. *See* Appx1258. And there was no evidence presented, either via Mr. Pulley's testimony or via the briefing of the parties, that *anyone* else was involved in the negotiation of this lease. Moreover, the lopsided nature of the terms render them substantively unconscionable in every situation *except* the one that Mr. Pulley constructed for himself, i.e., being on both sides of the deal. *See, e.g., Harris v. Green Tree Financial Corp*, 183 F.3d 173, 181 (3d Cir. 1999) (citing *Germantown Mfg. Co. v. Rawlinson*, 491 A.2d 138, 145-47 (Pa. Super. 1985)) (defining substantive unconscionability as "contractual terms that are unreasonably or grossly favorable to one side and to which the disfavored party does not assent"). The evidence presented to the District Court as to how SBG was abusing the lease provision for its own benefit only served to underline how grossly unfair

19

the continued preservation of that provision would be. The Court correctly found that this term was unconscionable.

> **4.    The District Court did not abuse its discretion or commit reversible error in determining that the Receiver was not bound by the SNDA.**

The District Court held that "[t]he Attornment clause is also not binding here[,]" and more specifically that the Receiver is not bound by such a clause, as "the Receiver acts as an arm of the Court, rather than as a successor to the landlord, the party that would ostensibly be bound by a valid attornment clause." Appx0008. This constituted an interpretation of the Receiver Order's terms and the applicability thereof, a valid exercise of the Court's discretion. Alternatively, if this Court considers this a question of law, it was a legal determination in which the District Court did not commit reversible error.

In the proceeding below, Borrower argued that "the Receiver step[ped] into the shoes of the [Lender] and is bound by the terms of the Leases" because of the Lender's alleged prior approval of the unconscionable notice and cure provision of the lease at issue. Appx1220. In its briefing for this Court, Borrower has abandoned that argument, now acknowledging that "Receiver may not be [Lender]'s agent" but insisting that "there is no basis to toss away well-established contract law when the Lease Agreement[] had been reviewed and accepted by an arm's length lender." Borrower's Brief at 35.

20

Setting aside the issue of whether Lender's counsel actually reviewed the attornment provision Borrower relies upon, Borrower's amended position still fundamentally fails to address the nature of the receivership. The Receiver is not a proxy for the Lender or a mere successor landlord – it is an "arm of the court." *See Trinh v. Fineman*, 9 F.4th 235, 238 (3d Cir. 2021) (quoting *Hughes v. Long*, 242 F.3d 121, 127 (3d Cir. 2001)); *see also* 42 Pa. Cons. Stat. Ann. Section 102 (defining court-appointed receiver as "judicial officer"). As such, the Receiver should not be bound by either self-dealing lease terms or Lender's alleged acquiescence thereto. Instead, the Receiver must remain free to effect the goals of the Receiver Order – to demand and collect all rents from the property in order to preserve the value of the estate. *See* Section IV.B.5 *infra*.

The District Court, interpreting its own Receiver Order to examine both its authorization of the Receiver's powers and its goals, determined that the Receiver was not bound by the attornment provision, regardless of its validity. This was a valid exercise of the Court's discretion and should not be disturbed. Alternatively, this was the correct analysis of the law regarding the limited applicability of an attornment provision and the inherent powers of a court-appointed receiver, and this Court should so affirm.

**5.     The District Court did not abuse its discretion or commit reversible error in determining that modification of the lease provision was warranted in order to accomplish the purposes of the Receiver Order.**

The District Court held that "[t]he unique circumstances warranting the receivership also warrant modification of the lease term to accomplish the purposes of the Court's Receivership Order." Appx0008. This constituted an interpretation of the Receiver Order's terms and the applicability thereof, a valid exercise of the Court's discretion. Alternatively, if this Court considers this a question of law, it was a legal determination in which the District Court did not commit reversible error. The Court's grant of the relief requested by the Receiver in the Lease Motion was consistent with both the letter and the spirit of the Receiver Order.

Section 6(b) of the Receiver Order, entitled "Exclusion of Defendant," provides in part that "[t]he Receiver is authorized to exclude Defendant, its agents, management companies, employees, representatives, owners, affiliates, subsidiaries, and parent companies from possessing or operating the Property." SAppx005.

Section 6(e) of the Receiver Order, entitled "Authority to Contract," provides in part that "[t]he Receiver may make, cancel, enforce, or modify contracts, leases, or licenses relating to any part of the Property or the Construction Projects." SAppx005.

22

Section 6(f) of the Receiver Order, entitled "Collection of Revenues," provides in part that "[t]he Receiver shall demand, collect, and receive any and all rents, sub-rents, lease and sublease payments, fees, debts, or other proceeds, profits, or income of any type or nature and however denominated that may arise from the use or operation of the Property or are generated from the Receivership Estate." SAppx005.

Section 25 of the Receiver Order, entitled "Retention of Jurisdiction," provides in part that "[t]his Court retains jurisdiction to modify the terms of this Order and to expand or contract the rights, duties, and obligations of the Receiver or any other party affected by this Order, and to enter such other orders as may from time to time, during the pendency of this action, be deemed necessary, just, and proper." SAppx016.

These provisions, read in conjunction, expressly authorize the Court and the Receiver to modify leases relating to the Property in service of the Receiver's obligation to demand and collect all rents from the Property. Conversely, allowing Borrower's property management company – an entity which Receiver is explicitly authorized to exclude from the Property under Section 6(b) – to operate its business and take up marketable space without making a single payment to the Receiver would defeat the purpose of the receivership, and render

23

the Receiver Order toothless. The District Court, interpreting the terms of its own Order, agreed. This Court should affirm.

## V.    <u>CONCLUSION</u>

For all of the foregoing reasons, it is respectfully submitted that Judge McHugh's Contempt Order and Lease Order, each entered on July 18, 2025, should be affirmed, and that the Receiver-Appellee should be awarded such other and further relief as the Court in its discretion may deem just and equitable.

Respectfully submitted,

Dated:  January 2, 2026

*/s/ Brian N. Kearney*
Raymond A. Quaglia, Esq.
Brian N. Kearney, Esq.
BALLARD SPAHR LLP
1735 Market Street, 51st Floor
Philadelphia, PA  19103
(215) 665-8500
quaglia@ballardspahr.com
kearneyb@ballardspahr.com

*Counsel for Receiver-Appellee*
*Trigild IVL, LLC*

## COMBINED CERTIFICATIONS OF BAR MEMBERSHIP, IDENTICAL PAPERS, VIRUS DETECTION, COMPLIANCE, AND SERVICE

I, Brian N. Kearney, hereby certify that:

(1) I am a member in good standing of the Bar of the United States Court of Appeals for the Third Circuit, as required by 3d Cir. L.A.R. 46.1(e);

(2) The text of this electronic Brief is identical to the text in the paper copies, as required by 3d Cir. L.A.R. 31.1(c);

(3) This Brief was analyzed for computer viruses using System Center Endpoint Protection, antivirus version 1.443.465.0 and antimalware client version 4.18.25110.6, and no virus was detected, as required by 3d Cir. L.A.R. 31.1(c);

(4) This Brief complies with the page limitation of Fed. R. App. P. 32(a)(7)(A) because it does not exceed 30 pages; and, alternatively, this Brief also complies with the type-volume limitation of Fed. R. App. P. 32(a)(7)(B) because it contains 5768 words, as counted by Microsoft Word;

(5) This Brief complies with the requirements of 3rd Cir. L.A.R. 32.1, the typeface requirements of Fed. R. App. P. 32(a)(5) and the type style requirements of Fed. R. App. P. 32(a)(6) as it has been prepared in 14-point font, Times New Roman, a proportionally spaced typeface; and

(6) Counsel of record for the other parties are Filing Users and are served electronically by the Notice of Docket Activity through ECF.

Dated:  January 2, 2026

/s/ Brian N. Kearney
Brian N. Kearney, Esq.
BALLARD SPAHR LLP
1735 Market Street, 51st Floor
Philadelphia, PA  19103
(215) 665-8500
kearneyb@ballardspahr.com

*Counsel for Receiver-Appellee*
*Trigild IVL, LLC*